AHILAN T. ARULANANTHAM (SBN 237841)
Email: aarulanantham@aclu-sc.org
JENNIFER STARK (SBN 267062)*
Email: jstark@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5211
Fax: (213) 417-2211

JUDY LONDON (SBN 149431)
Email: jlondon@publiccounsel.org
TALIA INLENDER (SBN 253796)
Email: tinlender@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
Phone: (213) 385-2977
Fax: (213) 385-9089

*pending admission to this Court

Attorneys for Petitioner

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, <br><br> Petitioner, <br><br> vs. <br><br> JANET NAPOLITANO, Secretary of Homeland Security; ERIC HOLDER, United States Attorney General; JOHN T. MORTON, Assistant Secretary, Immigration and Customs Enforcement (ICE); TREY LUND, Field Office Director, ICE, Los Angeles Field Office, <br><br> Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. CV10-02211 DMG (DTB)

**PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

1.     Petitioner, Jose Antonio Franco-Gonzalez, is a man suffering from mental retardation who has been detained by the government for nearly five years. Although the government purports to be detaining Mr. Franco under the immigration laws, for almost the entirety of the last five years there were no open removal proceedings against him, and the government's repeated delays have continued to prevent even the most preliminary steps in his recently re-calendared removal case from taking place.

2.     The government asserts authority to detain Mr. Franco under 8 U.S.C. 1226(c), which authorizes "mandatory" detention without bond hearings for people convicted of certain triggering offenses.  However, a large body of case law from both the Supreme Court and Ninth Circuit has held that detention under the immigration laws is only authorized when it serves the statute's basic purpose of facilitating removal. See generally Zadvydas v. Davis, 533 U.S. 678, 699-700 (2001) (explaining that the "statute's basic purpose [is] assuring the alien's presence at the moment of removal" and, when that purpose is not served, "the court should hold continued detention unreasonable and no longer authorized by statute."); Nadarajah v. Gonzales, 443 F.3d 1069, 1070, 1080-81 (9th Cir. 2006) (ordering the "immediate release" of detainee held for five years where his removal was not "reasonably foreseeable").  Whatever else may be said of Mr. Franco's atrocious five years of incarceration, it cannot be said that his detention has helped in any way to effect his removal.  Where, as here, the government incarcerates a non-citizen for years without holding removal proceedings against him, the detention is unlawful and the petitioner must be released.

3.     Alternatively, the government should at the very least be required to conduct a hearing to determine that Mr. Franco's detention remains warranted at this juncture.  The Ninth Circuit has already held that the mandatory detention

1

1   statute only authorizes detention where removal proceedings are "expeditious."

2   See Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942, 948 (9th Cir.

3   2008).  Given that these proceedings could not conceivably be characterized as

4   "expeditious," and that Mr. Franco suffers from a serious mental disability, he

5   should be afforded a hearing to determine if his continued detention is justified.

6        4.    Finally, the application of the mandatory detention statute to Mr.

7   Franco coupled with the absence of any procedures to deal with detainees with

8   mental disabilities in removal proceedings renders detainees like him uniquely

9   vulnerable to prolonged immigration detention.  Given this discriminatory effect,

10  the Rehabilitation Act requires that detainees with mental disabilities be afforded

11  individualized hearings to determine whether detention is appropriate in light of

12  their unique position.  See 29 U.S.C. 794; 6 C.F.R. 15.30(a-b), (d).  See generally

13  Alexander v. Choate, 469 U.S. 287 (1985).

14

15                    **JURISDICTION AND VENUE**

16        5.    In this Petition for Writ of Habeas Corpus, Petitioner challenges his

17  prolonged detention on federal statutory and constitutional grounds.  This Court

18  has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 2241 (habeas

19  corpus), 28 U.S.C. 1651 (All Writs Act), and the Suspension Clause of Article I of

20  the U.S. Constitution.  INS v. St. Cyr, 533 U.S. 289, 304 (2001).  This Court also

21  has jurisdiction to hear Petitioner's statutory and constitutional claims under 28

22  U.S.C. 1331, which confers jurisdiction to consider federal questions.  Walters v.

23  Reno, 145 F.3d 1032, 1052 (9th Cir. 1998).

24        6.    The federal district courts have jurisdiction under 28 U.S.C. 2241

25  over habeas petitions challenging the lawfulness of immigration detention.

26  Demore v. Kim, 538 U.S. 510, 516-17 (2003); Nadarajah v. Gonzales, 443 F.3d

27

28

                              2

1  1069, 1075-76 (9th Cir. 2006) (holding that cases not challenging final orders of

2  removal remain within the jurisdiction of the district court under 28 U.S.C. 2241).

3      7.    This Court may grant relief under 28 U.S.C. 1331 (federal question),

4  28 U.S.C. 1651 (All Writs Act), 28 U.S.C. 2241 and 2243 (habeas corpus), 28

5  U.S.C. 2201-02 (declaratory relief), and Federal Rule of Civil Procedure 65

6  (injunctive relief).

7      8.    Venue is proper in the Central District of California pursuant to 28

8  U.S.C. 2241(d) because all of Mr. Franco's legal custodians, including the field

9  office director in charge of his removal case, reside in Los Angeles.  Venue is also

10  proper under 28 U.S.C. 1391(e)(2) because most of the events relevant to this

11  action, including the majority of his prolonged detention and the removal

12  proceedings, took place in Los Angeles, and because most of the relevant

13  witnesses, including Mr. Franco's family, reside in Orange County.

14  **PARTIES**

15      9.    Petitioner, Jose Antonio Franco-Gonzalez, is a native and citizen of

16  Mexico who suffers from moderate mental retardation.  Mr. Franco has been

17  incarcerated by the Department of Homeland Security for nearly five years.

18      10.    Respondent Trey Lund is the Field Office Director for the Los

19  Angeles District of U.S. Immigration and Customs Enforcement ("ICE").  Mr.

20  Lund has authority to release Petitioner and has legal custody of him.  Mr. Lund is

21  being sued in his official capacity.[1]

22      11.    Respondent John Morton is the Assistant Secretary of ICE, the arm of

23  the U.S. Department of Homeland Security charged with detaining and removing

24  _____

25  [1] The government has taken the position in other habeas litigation in this district
that the Field Office Director is the appropriate custodian in an immigration

26  habeas petition.  See Exh.11 at 3 (Motion to Dismiss Petitioner's Petition for Writ
of Habeas Corpus, Bains v. Holder, Docket # 9, No. 09-04342 (C.D. Cal. Sept. 3,

27  2009)); see also Armentero v. INS, 412 F.3d 1088, 1090 (9th Cir. 2005) (Berzon,
J., dissenting on unrelated grounds) (arguing that the proper respondent in a

28  habeas petition challenging immigration detention is the Attorney General).

aliens pursuant to federal immigration law. Mr. Morton is a legal custodian of Petitioner. Mr. Morton is being sued in his official capacity.

12.     Respondent Janet Napolitano is the Secretary of Homeland Security and heads the Department of Homeland Security, the arm of the U.S. government responsible for enforcement of immigration laws. Ms. Napolitano is the ultimate legal custodian of Petitioner. Ms. Napolitano is being sued in her official capacity.

13.     Respondent Eric Holder is the Attorney General of the United States and the head of the Department of Justice. Mr. Holder shares responsibility for implementation and enforcement of the immigration laws along with Respondent Napolitano. Mr. Holder is a legal custodian of Petitioner. Mr. Holder is sued in his official capacity.

## FACTS AND PROCEDURAL HISTORY

14.     Petitioner, Jose Antonio Franco-Gonzalez, is a 29 year-old native and citizen of Mexico. He is the son of Maria and Francisco Franco, both lawful permanent residents of the United States. See Exh. 1 ¶ 2 (Declaration of Maria Franco). Mr. Franco is one of twelve siblings, eleven of whom live in the United States. Mr. Franco and all of his siblings who reside in the United States have, or are in the process of obtaining, legal status. Mr. Franco's three eldest brothers are United States citizens. Two of his sisters are lawful permanent residents. Mr. Franco and five of his siblings have pending family petitions which will ultimately permit them to adjust to lawful permanent resident status. Id. ¶ 3.

15.     Mr. Franco suffers from moderate mental retardation; a condition defined by an IQ level of between 35-55. He did not learn to speak until he was six or seven years old. Id. ¶ 4. He does not know his own birthday or age. He has trouble recognizing numbers and counting. He cannot tell time. Id. ¶ 5. Mr. Franco functions at the cognitive level of a child, by some measures as young as two years old. Exh. 4, at 5 (Psychological Report of Dr. Robert Patterson).

4

16.     On April 16, 2004, Mr. Franco was arrested in conjunction with a fight between two rival gangs. Mr. Franco met members of one of the gangs, Aztec Pride, at an apartment complex where his sister and her children used to live. Exh. 2 ¶ 4 (Declaration of Ruben Franco). Mr. Franco was accused of throwing a rock during the incident, causing an abrasion on the cheek of a victim. On August 10, 2004, Mr. Franco pled guilty to a charge of assault with a deadly weapon (non-firearm); although his counsel explicitly declined to join in the plea. Exh. 6 (Minute Order). He was sentenced to 365 days in jail. Id.[2]

17.     On or about April 12, 2005, the government transferred Mr. Franco from criminal to immigration custody. Removal proceedings commenced shortly thereafter. On May 23, 2005, a psychiatrist evaluated Mr. Franco and determined that "he had no clue as to what type of court Your Honor presided over, what the possible outcomes might be, or how to defend himself at trial. Diagnostically, he has a Severe Cognitive Disturbance, probably life-long, secondary to development disability. In view of this, it is impossible for him to stand trial." Exh. 5, at 2 (Psychological Evaluation of Dr. Claude T.H. Friedmann). On June 6, 2005, an immigration judge ordered the administrative closure of Mr. Franco's removal proceedings, citing his incompetence. Despite the fact that there were no open removal proceedings against him, Mr. Franco remained incarcerated for approximately four and a half years without so much as a hearing to determine whether he presents a danger or a flight risk sufficient to justify his lengthy detention.

18.     The government did not move to re-calendar Mr. Franco's removal proceedings until December 30, 2009. Exh. 7 (DHS's Motion to Re-Calendar). In its motion, the government provided no explanation for its extraordinarily long

---

[2] On information and belief, Mr. Franco has one additional criminal charge, a misdemeanor sexual battery, which was dismissed after Mr. Franco successfully completed a diversion program at the Regional Center of Orange County.

1  delay in prosecuting Mr. Franco's case.  Moreover, since the case's re-calendaring

2  in January 2010, the government has twice delayed proceedings: first by reversing

3  its position with respect to Mr. Franco's eligibility for relief, thereby necessitating

4  a re-scheduled hearing date, and then again by failing to transport Mr. Franco to

5  the re-scheduled hearing.  Exh. 8 (DHS's Motion to Continue); Exh. 9

6  (Respondent's Statement of Non-Opposition to DHS's Motion to Continue); Exh.

7  3 ¶¶ 9-10 (Declaration of Talia Inlender).  As a result of the government's

8  continued delays, Mr. Franco remains in custody, despite the passage of nearly

9  five years during which the government has failed to prosecute his immigration

10  case or to allow even the most preliminary steps in his case to take place. If found

11  inadmissible, Mr. Franco will seek withholding of removal and relief under the

12  Convention Against Torture ("CAT").  See 8 U.S.C. 1231(b)(3) (restricting

13  removal to a country where an alien's life or freedom would be threatened); U.N.

14  Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or

15  Punishment, opened for signature Feb. 4, 1985, G.A. Res. 39/46, 39 U.N. GAOR

16  Supp. No. 51 at 197, U.N. Doc. A/Res/39/708 (1984), reprinted in 23 I.L.M. 1027

17  (1984), modified in 24 I.L.M. 535 (1985).[3]

18      19.    The government delay in this case dwarfs the delay at issue in other

19  cases challenging prolonged immigration detention.  As of this time, the

20  government has detained Mr. Franco for nearly five years, during  the vast

21  majority of which it made no attempt to prosecute his case.  Even after it did re-

22  calendar his case, the government has continued repeatedly to delay proceedings.

23  Given Mr. Franco's strong claim for relief under the withholding of removal

24

25  [3] Mr. Franco is currently exploring the possibility of obtaining post-conviction relief in his 2004 criminal case. If such relief is granted, Mr. Franco will qualify

26  for, and intends to seek, asylum. See 8 U.S.C. 1158. Further, Mr. Franco has an approved family petition filed on his behalf by his U.S.-citizen brother. Should

27  that petition become current during the course of Mr. Franco's removal proceedings, he will also be eligible for, and intends to seek, adjustment to lawful

28  permanent resident status on the basis of that petition. See 8 U.S.C. 1255(i).

1   provisions, his case is likely to last several months, if not years, longer.  Cf.

2   Nadarajah, 443 F.3d at 1080 (citing six months as the "average" amount of time

3   required for the administrative review process); Tijani v. Willis, 430 F.3d 1241,

4   1242 (9th Cir. 2005) (noting that "foreseeable process" on a petition for review in

5   the Ninth Circuit "is a year or more"). Nevertheless, the government continues to

6   refuse to release Mr. Franco pending the resolution of his proceedings or to offer

7   him the basic procedural protection of a hearing to determine whether the

8   inordinate length of his detention, now approaching five years, is justified.

9        20.    Before his prolonged detention, Mr. Franco lived with his parents and

10  benefited from the love and care of his close-knit family. Exh. 1 ¶ 6. He also

11  benefited from specialized services, including vocational and English classes,

12  provided by the Regional Center of Orange County. Id. ¶ 9.  If he is released from

13  immigration detention, Mr. Franco could again live with his family in Costa Mesa,

14  California. Id. ¶ 7. Mr. Franco's parents have the financial resources to care for

15  him and are willing and able to ensure that he again receives support services from

16  the Regional Center of Orange County. Id. ¶ 9. See also Exh. 10 (Letter from

17  Regional Center of Orange County).

18  //

19  //

20

21                          **LEGAL BACKGROUND**

22       21.    Mr. Franco raises both statutory and constitutional challenges to his

23  detention. Mr. Franco's first legal claim is that he is entitled to release from

24  detention because the government's unreasonable delay in pursuing removal

25  proceedings against him shows that his detention does not serve the Immigration

26  and Nationality Act's ("INA") basic purpose of facilitating removal, thereby

27  rendering his detention unauthorized under the immigration statute and

28  unconstitutional under the Due Process Clause.  See Zadvydas v. Davis, 533 U.S.

678, 690 (2001); Nadarajah v. Gonzales, 443 F.3d 1069, 1080 (9th Cir. 2006) (finding detention of more than five years because of administrative delays "plainly unreasonable by any measure"); see also Demore v. Kim, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring) (authorizing brief detention without hearings, but stating that unreasonable delay would require inquiry whether detention continued to be reasonable).

22.    In the alternative, because Mr. Franco's removal proceedings have been (shockingly) prolonged rather than expeditious, he argues that the immigration statutes require that he be provided an individualized hearing to determine whether or not his detention is justified, and that they must be so construed so as to avoid a Due Process violation. See Casas-Castrillon v. DHS, 535 F.3d 942, 948 (9th Cir. 2008) (holding that "1226(c)'s mandatory detention provision applies only to 'expedited removal of criminal aliens.'").

23.    Finally, because Mr. Franco's ongoing detention is the result of DHS's failure to implement any procedures for dealing with detained noncitizens with mental disabilities, Mr. Franco asserts that the Rehabilitation Act and its implementing regulations require that he be afforded a hearing to determine whether his detention is appropriate in light of his disability, as a remedy to the otherwise-discriminatory impact caused by application of the immigration laws to people suffering from mental disabilities. See 29 U.S.C. 794; 6 C.F.R. 15.30(a-b), (d). See generally Alexander v. Choate, 469 U.S. 287 (1985); School Board of Nassau County, Fla. v. Arline, 480 U.S. 273 (1987).

**I.   Petitioner is Entitled to Release From Detention Because the Government's Inordinate Delay in Pursuing Removal Proceedings Renders his Detention Unreasonable in Relation to its Purpose of Effecting Removal.**

    **A.   Mr. Franco is entitled to release because his detention is not authorized by the INA.**

24.     The "basic purpose" of the immigration statute is to "assur[e] the alien's presence at the moment of removal." Zadvydas v. Davis, 533 U.S. 678, 699 (2001). When detention does not serve this purpose, "the court should hold continued detention unreasonable and no longer authorized by statute." Id. at 699-700.

25.     Following the Supreme Court's directive, the federal courts have uniformly rejected lengthy detention where  unreasonable government delay has undermined the statute's purpose of facilitating removal.  The Ninth Circuit has already found that a detention of four and a half years caused primarily by the government's delay was "plainly unreasonable by any measure." Nadarajah, 443 F.3d at 1080 (holding a six month period of detention during the pendency of removal proceedings presumptively reasonable and concluding that "[a] detention of nearly five years—ten times the amount of time the Supreme Court has considered acceptable absent a special showing—is plainly unreasonable under any measure."); see also Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003) (finding unreasonable delay because "the time taken without a decision was exceptional" and because "the INS [may not] drag its heels indefinitely in making a decision"); Hamdan v. Gonzales, Case No. CV 05-5144-TJH, slip. op. at 13-14 (C.D. Cal. 2006) (ordering release where alien was detained for twenty months in part due to the government's "dilatory conduct" during the course of removal proceedings). The circumstances of Mr. Franco's detention present just such a case.

26.     The government's nearly five year delay in pursuing and completing Mr. Franco's removal proceedings is "plainly unreasonable," both because of its duration and because of its causes.  As noted above, the Ninth Circuit has already found a four and a half year detention "plainly unreasonable" where the primary cause of the detention was the government's delay. Nadarajah, 443 F.3d at 1080. Here, the government is entirely to blame for the delay.  Other than suffering from

1  the unfortunate circumstance of his mental retardation, Mr. Franco has done
2  nothing to delay or prolong his removal proceedings. Rather, the
3  government—fully aware of Mr. Franco's incompetence to participate in removal
4  proceedings—waited four and a half years to determine what, if anything, it would
5  do about pursuing his removal. While the government did nothing, Mr. Franco
6  languished in jail. Such a delay is not only unreasonable, it is unconscionable.

7      27.    The government's unreasonable delay in this case makes plain that
8  Mr. Franco's detention fails to comport with the statute's basic purpose of
9  facilitating removal.  Mr. Franco's case was administratively closed on June 6,
10  2005.  With no open removal proceedings pending against him, there was no
11  possibility that Mr. Franco's removal would be effectuated at all, and certainly not
12  in the reasonably foreseeable future. Nadarajah, 443 F.3d at 1078 (holding,
13  consistent with Zadvydas, that the immigration statute "permit[s] detention only
14  while removal remains reasonably foreseeable."). Under these circumstances, the
15  purpose of Mr. Franco's detention is not—indeed could not—be to facilitate his
16  removal.

17      28.    The recently re-calendared proceedings in this case only serve to
18  reinforce the unreasonableness of the government's delay. The government
19  offered no justification for its decision to move to re-calendar removal
20  proceedings after four and a half years. Exh. 7 (DHS's Motion to Re-Calendar). If
21  the government was prepared to go forward despite Mr. Franco's incompetence, it
22  could have done so long ago. See, e.g., Ulysse v. DHS, 291 F. Supp. 2d 1318,
23  1326 (M.D. Fla. 2003) ("If Respondents are allowed the liberty to decide when
24  they will comply or even attempt compliance with the statutes they are charged
25  with enforcing, the statutory scheme will be rendered a nullity and Congress'
26  intent to remove illegal aliens as quickly as possible will be thwarted. Federal
27  agencies should not and do not have such power.") Moreover, since the re-
28  calendaring of the case, the government has now twice delayed proceedings, first

by reversing its position with respect to Mr. Franco's eligibility for relief, thereby necessitating re-scheduling a hearing date, and then again by failing to transport him to court on the day of the re-scheduled hearing. Exh. 8 (DHS's Motion to Continue); Exh. 9 (Respondent's Statement of Non-Opposition to DHS' Motion to Continue); Exh. 3 ¶¶ 9-10 (Declaration of Talia Inlender). As a result of the government's continued delays, Mr. Franco remains in custody after almost five years without so much as a finding of inadmissibility against him.

29.     Because Mr. Franco's detention does not comport with the basic purpose of the statute under which he is detained, "the court should hold continued detention unreasonable and no longer authorized by statute[,]" and should order Mr. Franco's immediate release. Zadvydas, 533 U.S. at 700 (directing habeas court to order release where detention was no longer authorized); Nadarajah, 443 F.3d at 1080, 1084 (ordering release where alien was detained nearly five years during the pendency of removal proceedings).

**B.     Petitioner is entitled to release because his prolonged detention violates the Constitution's Due Process Clause.**

30.     Mr. Franco's nearly five year detention also violates the Constitution. Mr. Franco, like "all 'persons' within the United States, including aliens," is protected by the Due Process Clause of the Fifth Amendment. Zadvydas, 533 U.S. at 693. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." Id. at 690. For that reason, detention must always "bear a reasonable relation" to its purpose. Id.  As explained supra, the purpose of the immigration detention statute is to facilitate removal. Zadvydas, 533 U.S. at 699. As Justice Kennedy explained in his concurrence in Demore, that purpose is undermined where removal proceedings are delayed. 538 U.S. 532-33 (Kennedy, J. concurring) ("since the Due Process Clause prohibits arbitrary deprivations of liberty. . . [w]ere there to be an unreasonable delay by the INS in pursuing and completing

1   deportation proceedings, it could become necessary then to inquire whether the

2   detention is not to facilitate deportation, or to protect against risk of flight or

3   dangerousness, but to incarcerate for other reasons."). See also Tijani, 430 F.3d at

4   1249 (Tashima, J., concurring) (finding that detention of thirty months violated

5   Due Process because "there exists a point at which the length of detention

6   becomes so egregious that it can no longer be said to be 'reasonably related' to an

7   alien's removal"). As a result, even those judges that have been disinclined to

8   authorize general limits on prolonged detention have acknowledged that excessive

9   government delay may nonetheless be unconstitutional. Tijani, 430 F.3d at 1253

10  n.7 (Callahan, J., dissenting) (noting that unreasonable government delay could

11  make detention unconstitutional because "[d]ifferent considerations would come

12  into play if there were any evidence that the government was unreasonably

13  prolonging the removal proceedings.").

14      31.   Here the government has unreasonably delayed pursuing removal

15  proceedings against a man with mental retardation for nearly five years, during

16  much of which he had no open removal case pending. When a man is incarcerated

17  ostensibly in the name of removal proceedings, but the government does almost

18  nothing to conduct those proceedings for almost five years, his continued

19  detention bears no relation, let alone a reasonable relation, to the goal of

20  effectuating removal. The Constitution forbids Mr. Franco's continued detention.

**II.    Alternatively the Immigration Statutes and Due Process Clause Require that Petitioner Be Afforded an Individualized Bond Hearing To Determine Whether Mr. Franco's Detention is Justified.**

22      32.   Alternatively, if the Court does not grant the release of Mr. Franco,

    Petitioner requests that the Court order a hearing at which the government must

    show that his lengthy and ongoing detention is justified.

26      33.   Although Mr. Franco was initially detained under 8 U.S.C. 1226(c),

27  which authorizes "mandatory" detention without bond hearings for people with

certain triggering criminal convictions, the Ninth Circuit has already held that Section 1226(c) only authorizes detention where removal proceedings are "expeditious." See Casas-Castrillon, 535 F.3d at 948 (holding that "§ 1226(c)'s mandatory detention provision applies only to 'expedited removal of criminal aliens.'"); Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) (construing 8 U.S.C. 1226(c) to authorize mandatory detention *only* where removal proceedings are "expeditious," and ordering hearing at which government bears the burden of proof when detention had become prolonged).

34.    Where proceedings are not expeditious, the Ninth Circuit has held that an alien detained for a prolonged period must be afforded a hearing at which the government bears the burden to show that continued detention is justified. See Casas-Castrillon, 535 F.3d at 944 ("prolonged detention must be accompanied by appropriate procedural safeguards, including a hearing to establish whether releasing the alien would pose a danger to the community or a flight risk"). The Ninth Circuit adopted this rule in order to comply with the Due Process Clause, which generally forbids prolonged detention without rigorous procedural protections. Id. at 950 ("prolonged detention without adequate procedural protections would raise serious constitutional concerns. . . . due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.") (internal citations omitted); see also Rodriguez v. Hayes, 591 F.3d 1105, 1115 (9th Cir. 2010) ("As we stated in Prieto-Romero, even when detention is authorized by statute, 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"). Thus, in several cases the Ninth Circuit has directed district courts to grant the writ of habeas corpus unless the government proved at a hearing before an immigration judge that the petitioner

presented a sufficiently serious risk of flight or danger to the community to justify prolonged detention.  Tijani, 430 F.3d at 1242; Casas-Castrillon, 535 F.3d at 951; cf. Aguilar-Ramos v. Holder, 594 F.3d 701, 704 n.3 (9th Cir. 2010) (encouraging petitioner to file habeas to challenge detention "[b]ecause Aguilar has been detained for over four years without a bond hearing, his detention qualifies as prolonged by any measure. . . . Accordingly, there is no question that Aguilar is entitled to a bond hearing under Casas-Castrillon.") (internal citations omitted).

35.    Here, there can be no serious dispute that Mr. Franco's proceedings have not been "expeditious."  As such, Section 1226(c) does not authorize his mandatory detention, and the government must afford him a bond hearing where it bears the burden of proof.  This minimal procedural protection is also required by the Due Process Clause.[4]

//
//
//

### III.  The Government's Detention of an Individual with a Serious Mental Health Condition without Procedures to Determine whether such Detention is Appropriate in Light of the Person's Mental Disability also Violates Section 504 of the Rehabilitation Act and its Implementing Regulations.

36.    Federal law also entitles Mr. Franco to an individualized hearing to determine whether his detention is appropriate in light of his disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (hereinafter "Section 504") and its implementing regulations. Specifically, DHS has violated Section 504, 6 C.F.R.15.30(a), and 6 C.F.R. 15.30(b)(4) by subjecting Mr. Franco to

---

[4] Although the facts of Casas-Castrillon involved a non-citizen whose proceedings were not expeditious because he had lost his immigration case before the BIA, won a remand from the Ninth Circuit, and then was back before the immigration courts, its rationale surely applies with even greater force here, where the government has hardly begun, let alone completed, the removal proceedings because of its own failure to adopt policies and procedures to deal with detainees who suffer from mental disabilities.  No one could seriously contend that Mr. Franco's removal proceedings have been "expeditious" under any conceivable definition of that term.

1   mandatory detention under Section 1226(c) without making reasonable
2   modifications to its detention policy so as to avoid discrimination.

3       37.   Section 504 applies to the Department of Homeland Security and its
4   subdivisions, including ICE, whether acting directly or through contractual
5   arrangements. 6 C.F.R. Part 15, 68 Fed. Reg. 10,886 (Mar. 6, 2003).

6       38.   Section 504 and its implementing regulations prohibit all sections of
7   DHS from discriminating against any individual on the basis of his disability. 29
8   U.S.C. 794; 6 C.F.R.15.30(a) ("No qualified individual with a disability in the
9   United States shall, by reason of his or her disability... be subjected to
10  discrimination under any program or activity conducted by the Department [of
11  Homeland Security]."). This limitation extends to disparate impact discrimination,
12  as DHS cannot utilize methods of administration that have the "*purpose or effect*"
13  of discriminating against individuals with disabilities. 6 C.F.R. 15.30(b)(4)(i).

14      39.   DHS's implementation of Section 1226(c) coupled with the absence
15  of any procedures to deal with mentally disabled detainees in removal proceedings
16  renders detainees with mental disabilities far more vulnerable than other detainees
17  to prolonged detention pending completion of removal proceedings.  Mr. Franco's
18  case presents a paradigmatic example.  Because DHS has not developed
19  procedures for dealing with mental health issues in removal proceedings, it
20  allowed Mr. Franco to remain lost in immigration detention while his case
21  remained in indefinite legal limbo for years, with literally no progress of any kind.
22  This could not have happened to someone without a mental disability.  DHS can
23  remedy this discrimination by affording Mr. Franco a hearing to determine
24  whether his detention remains appropriate in light of his mental disability, even
25  though such hearings are not generally afforded to detainees who do not suffer
26  from mental disabilities.

27      40.   Mr. Franco is a "qualified individual with a disability." He has
28  moderate mental retardation, 6 C.F.R. 15.3(d)(1)(ii), and is currently detained by

1  DHS, which subjects him to DHS's programs, services, and activities. 6 C.F.R.
2  15.3(e)(2).

3      41.    DHS has discriminated against Mr. Franco by mandatorily detaining
4  him for close to five years without taking into account his disability. Despite the
5  fact that an Immigration Judge closed Mr. Franco's case because he was
6  determined to be mentally incompetent, DHS has never afforded him a hearing to
7  determine whether his detention remains warranted given his mental disability.
8  Instead, DHS seemingly ignored Mr. Franco and his disability entirely.

9      42.    Because of DHS's failure to make any reasonable modifications in its
10  implementation of 1226(c) to avoid discrimination, Mr. Franco sat in detention for
11  years while other detainees moved ahead with their cases.  He did not understand
12  the reason for his detention, the status of his case, what the outcomes might be, or
13  have the means of advocating for himself. Exh. 5, at 2 (Psychological Evaluation
14  of Claude T.H. Friedmann).

15      43.    For Mr. Franco, a reasonable accommodation would be for DHS to
16  allow him to have a hearing concerning the appropriateness of his continued
17  detention in light of his mental disability. See generally, Alexander v. Choate, 469
18  U.S. 287, 302 n.21 (1985) (stating that "[t]he regulations implementing Section
19  504 are consistent with the view that reasonable adjustments in the nature of the
20  benefit must be made to assure meaningful access."); School Board of Nassau
21  County, Fla. v. Arline, 480 U.S. 273 (1987) (underscoring the importance of
22  individualized hearings under Section 504 of the Rehab Act to determine whether
23  an individual has a qualifying disability and, if so, whether  reasonable
24  accommodations can be made).

25      44.    Such a hearing to determine the appropriateness of Mr. Franco's
26  ongoing detention would not require a fundamental alteration of DHS's general
27  policy of detaining, without hearings, the overwhelming majority of non-citizens
28  with convictions that trigger mandatory detention under Section 1226(c).  Cf.

Galvez-Letona v. Kirkpatrick, 54 F.Supp.2d 1218, 1224 (C.D. Utah, July 15, 1999) (holding that Rehabilitation Act required waiver of INA's attachment and oath requirements to allow people with disabilities to naturalize); Southeastern Community College v. Davis, 442 U.S. 397 (1979) (finding a fundamental alteration when proposed modifications of an admissions program required a change in the entire design of the program and would not be successful). Furthermore, Congress has made it clear that there may be certain circumstances under which exceptions to 1226(c) are appropriate. See 1226(c)(2) (permitting release for certain detained non-citizens when necessary to protect witnesses or criminal investigations); see generally Galvez-Letona, 54 F.Supp.2d at 1225 (interpreting other exceptions written into the naturalization statute to mean that Congress did not intend all aspects of the statute to be essential in each case).

45.    This accommodation also would not place an undue financial or administrative burden on DHS, both because the burden of additional hearings for the small number of detained non-citizens with serious mental health conditions is small and because DHS would likely save resources if non-citizens with serious disabilities could be placed in outpatient settings.

46.    Consequently, the Rehabilitation Act and its implementing regulations require that DHS provide Mr. Franco with a bond hearing to determine whether his ongoing detention is appropriate in light of his disability.

## FIRST CAUSE OF ACTION

### Violation of Immigration and Nationality Act (Right to Release)

47.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

48.    Petitioner is entitled to immediate release from detention because the government's unreasonable delay in pursuing removal proceedings renders his detention unauthorized by the Immigration and Nationality Act.

## SECOND CAUSE OF ACTION

**<u>Violation of Fifth Amendment Substantive Due Process</u>**

**<u>(Prolonged Detention)</u>**

49.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

50.    Defendant-Respondents' continued detention of Petitioner has become so prolonged that it is no longer reasonably related to its purpose of effecting removal and therefore violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

**THIRD CAUSE OF ACTION**

**<u>Violation of Immigration and Nationality Act (Right to a Hearing)</u>**

51.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

52.    Defendant-Respondents' continued detention of Petitioner without a hearing violates the Immigration and Nationality Act, because no immigration detention statute authorizes his detention for a prolonged period of time absent a hearing where the government bears the burden to prove that his prolonged detention is justified.

//

//

//

**FOURTH CAUSE OF ACTION**

**<u>Violation of Fifth Amendment Procedural Due Process (Right to a Hearing)</u>**

53.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

54.    Defendant-Respondents' continued detention of Petitioner without a hearing to determine whether Mr. Franco's prolonged detention is justified violates his right to be free of prolonged non-criminal detention without adequate

18

1   justification and sufficient procedural safeguards, as guaranteed by the Due

2   Process Clause of the Fifth Amendment to the United States Constitution.

3   **FIFTH CAUSE OF ACTION**

4   **Violation of Section 504 of the Rehabilitation Act and**

5   **Implementing Regulations**

6   55.   Petitioner realleges and incorporates by reference each and every

7   allegation contained in the preceding paragraphs as if set forth fully herein.

8   56.   Defendant-Respondents' detention of an individual with a serious

9   mental health condition without procedures to determine whether such detention is

10  appropriate in light of the person's mental disability violates Section 504 of the

11  Rehabilitation Act and its implementing regulations.

12  **PRAYER FOR RELIEF**

13  WHEREFORE, Petitioner respectfully requests that the Court grant the

14  following relief:

15  a.   Assume jurisdiction of this matter;

16  b.   Grant the Order to Show Cause as requested in the application filed

17  herewith;

18  c.   Grant the writ of habeas corpus and order Petitioner's immediate

19  release from custody under reasonable conditions of supervision; or in the

20  alternative, order a constitutionally adequate hearing before an immigration judge,

21  at which Respondents will bear the burden to prove that Petitioner's continued

22  detention remains justified in light of his mental disability as well as any asserted

23  danger or flight risk;

24  d.   Declare that Respondents' failure to release Petitioner or, in the

25  alternative, to provide Petitioner with a hearing before an Immigration Judge, and

26  their failure to meet their burden of justifying continued detention, violates the

27  Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment,

28  and Section 504 of the Rehabilitation Act;

19

1         e.    Grant such other relief as the Court deems just and equitable,

2   including but not limited to fees under the Equal Access to Justice Act and any

3   other applicable statute.

4

5                                               Respectfully submitted,

6                                             ACLU OF SOUTHERN CALIFORNIA

7

8   Dated:  March 26, 2010               By

                                         AHILAN T. ARULANANTHAM

9                                            Attorney for Petitioner

10

11                                            PUBLIC COUNSEL

12

13                                        By

14                                            TALIA INLENDER
                                         Attorney for Petitioner

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT
# 1

# DECLARATION OF MARIA DE JESUS FRANCO GONZALEZ

I, Maria de Jesus Franco Gonzalez, declare as follows:

1. I am the mother of Jose Antonio Franco Gonzalez. I write this declaration in support of his petition for a writ of habeas corpus. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to such facts under oath.

2. My husband and I have been lawful permanent residents of the United States since 1998. I became a lawful permanent resident through my son, who is a United States citizen.

3. My husband and I are the parents of twelve children, eleven of whom live in the United States. Our three eldest sons are United States citizens. Two of our daughters are lawful permanent residents of this country. Six of our children, including Jose, have pending family petitions that will allow them to apply to become lawful permanent residents. Only one of our daughters lives in Mexico with her husband.

4. Jose was born on September 26, 1980 in San Miguel el Alto, Jalisco, Mexico. He has been different since he was born. Jose did not learn to speak until he was six or seven years old. After he learned to speak, my husband and I sent him to school for a little while but he was never able to learn. He was teased by the other children, and the teachers didn't want him there. We tried to send him to special needs classes for a short while as well, but the school closed down in our area and there was no other option for his education. Jose spent the rest of his

1

Exhibit 1 - Page 21

childhood at our home in Mexico. He helped care for the animals on our family's farm. He loved working with them.

5. Even though Jose is now an adult, he still has only the capacity of a young child. He does not know his age or his birthday. He has trouble recognizing numbers and counting. He can't tell the time or dial a phone number on his own.

6. Jose's long detention has been very difficult on our close-knit family. Before Jose was taken into custody almost five years ago, he always lived with us. We took care of him to make sure that he was happy and surrounded by people who love and care for him. He used to love to play with his nieces and nephews who live close by. They looked forward to his visits and miss being with him. Whenever we have family gatherings, everyone asks us how he is doing and when he is coming home. We miss him every day. We have visited him regularly over the many years he has been detained, although it has been more difficult to visit him since he was transferred to San Diego.

7. My husband and I currently live in Costa Mesa, California. If Jose is released from immigration custody, he can live with us in our home there.

8. We have the financial resources to support Jose if he is released to us. My husband works full-time providing maintenance services at a country club.

2

Exhibit 1 - Page 22

1  9. My husband and I are also committed to making sure that Jose gets the

2 help that he needs. Before his detention, Jose was taking vocational and English

3 classes at the Regional Center in Orange County. If released, we will help Jose to

4 enroll in classes at the Regional Center again.

5  This declaration was translated to me from English into Spanish. I declare

6 under penalty of perjury under the laws of the State of California that the

7 foregoing is true and correct to the best of my knowledge.

8

9  Executed on: March 25, 2010 in Los Angeles, California.

10

11

12       *Maria Franco*

        MARIA DE JESUS FRANCO GONZALEZ

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Exhibit 1 - Page 23

## CERTIFICATION OF TRANSLATION

My name is Teresa Cruz. If called upon to do so, I would testify as follows:

I am fluent in the English and Spanish languages. I read the above-listed declaration in English and accurately translated it into Spanish for Mrs. Maria de Jesus Franco Gonzalez. Based on that translation, Mrs. Franco affirmed in my presence that the contents of the declaration are accurate and complete statements, and indicated her affirmation of its contents by affixing her signature to the declaration.

I declare under penalty of perjury under to laws of the State of California that the foregoing is true and correct.

Executed on March 25, 2010 in Los Angeles, California.


_____
TERESA CRUZ

4

Exhibit 1 - Page 24

# EXHIBIT
# 2

## DECLARATION OF RUBEN FRANCO GONZALEZ

I, Ruben Franco Gonzalez, declare as follows:

1. I am the brother of Jose Antonio Franco Gonzalez. I write this declaration in support of his petition for a writ of habeas corpus. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to such facts under oath.

2. I am nine years older than Jose. I lived in Mexico with Jose until he was six or seven years old. Jose came to the United States around age nineteen and, before his detention, I lived with him for most of the time he has been in this country. Because of Jose's condition, it is hard for him to have real friends outside of the family. For that reason, I have tried not only to be Jose's brother, but his friend.

3. Jose was not like other children. He did not speak in full sentences until he was much older. He did not learn to use the restroom properly until a late age either. He peed in his bed at night. He went to the bathroom just about anywhere. When he went to play with other children in town, he sometimes came home crying because the other kids picked on him. The other kids called him "crazy," and sometimes adults would call him that too.

4. I have spoken with Jose a little bit about his trouble with the law in the United States. In 2000, the police came to our home looking for Jose in connection with a complaint filed by a woman. Jose wasn't home at the time but, when he returned, I asked him what happened. Jose told me that he tried to talk to a woman while crossing the street, and that she responded by calling him names. He

1

Exhibit 2 - Page 25

responded back and the two got into a verbal argument from across the street. I asked Jose if he was willing to go to the police to explain what happened. He agreed, and I took Jose to the police station to turn himself in. In 2004, I went to visit Jose in jail after he was arrested. He told me that he and some friends got into a fight with another group of guys. I know that the other men involved were accused of being in a gang. I believe that Jose met these men in the apartment complex where my sister, Victoria, used to live. Jose loved visiting Victoria and her children. I think that Jose met the men during these visits. As far as I know, Jose is not and has never been in a gang. Since Jose's arrest, my sister Victoria has moved twice and my parents have also moved in order to make sure that Jose does not come back into contact with them.

5. Jose's long detention has been really hard on him. Jose has trouble communicating. He told me that sometimes he doesn't understand the things that the guards or other people say to him and that he gets pushed around because people think he is ignoring them.

6. My family has also suffered a lot during Jose's detention. Some of the hardest times for my family are around the holidays. We get together for the holidays, and Jose used to always be with us. It has been really tough not having him there. We miss him so much.

2

Exhibit 2 - Page 26

7. Before his detention, Jose received services at the Regional Center of Orange County. If he is released, I will help him to enroll in their classes again.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on: March 25, 2010 in Los Angeles, California.

RUBEN FRANCO GONZALEZ

3

Exhibit 2 - Page 26

# EXHIBIT
# 3

## DECLARATION OF TALIA INLENDER

I, Talia Inlender, declare as follows:

1. I am a member of the State Bar of California and an attorney at Public Counsel, a non-profit agency that provides *pro bono* legal services. I am one of the attorneys representing Jose Antonio Franco-Gonzalez in his petition for a writ of habeas corpus before this Court. I also represent Mr. Franco in his proceedings before the Los Angeles Immigration Court. I submit this declaration in support of Mr. Franco's petition for a writ of habeas corpus. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to such facts under oath.

2. On November 19, 2009, I received a call from Immigration and Customs Enforcement's ("ICE") Office of Detention and Removal Operations ("DRO") in Santa Ana, California. ICE-DRO informed me that Jose Antonio Franco-Gonzalez, an immigration detainee at the Santa Ana City Jail, had been in their custody since April 2005 and that his case was administratively closed by an immigration judge due to mental health issues in June 2005. They requested my assistance. I agreed to meet with Mr. Franco.

3. On December 3, 2009, after meeting with Mr. Franco, I entered a notice of entry of appearance before the Department of Homeland Security ("DHS") for the sole purpose of facilitating Mr. Franco's release from prolonged detention and into a proper placement in the United States.

4. Over the next several weeks, I was in regular communication with ICE-DRO in Santa Ana as well as with Mr. Franco's family, who expressed a

1

Exhibit  3 - Page 28

1  willingness and desire to care for Jose upon his release from immigration

2  detention. On December 18, 2009, I received an email from ICE-DRO asking for

3  an affidavit from Mr. Franco's parents attesting to their willingness to care for

4  him, and stating that once that affidavit was provided, "we are going to try and get

5  him released as soon as we can."

6

7     5. On December 21, 2009, I sent via email a formal request for release along

8  with a declaration of support. The following morning, I hand delivered a copy of

9  the release request and supporting materials to ICE-DRO in Santa Ana. On

10  December 23, 2009, I received an email from an officer at ICE-DRO explaining

11  that the release request had gone up the chain of command and that he was hopeful

12  he would receive word soon. To date, I have not received a final response from

13  ICE-DRO regarding the request for release.

14

15     6. Rather, on December 30, 2009, I received a call from James Stolley, ICE

16  Chief Counsel in Los Angeles. Mr. Stolley informed me that DHS planned to

17  move to re-calendar Mr. Franco's immigration proceedings in Los Angeles. In the

18  meantime, he told me that Mr. Franco was being moved to a detention facility in

19  San Diego for a medical evaluation. Mr. Stolley requested that I or a family

20  member attend Mr. Franco's re-calendared proceedings. I explained that I had not

21  yet agreed to court representation and could make no promises on behalf of the

22  family.

23

24     7. On January 15, 2010, I again spoke with Mr. Stolley and inquired as to

25  Mr. Franco's current whereabouts. Mr. Stolley told me that Mr. Franco was now

26  being held in San Diego, having been found unfit to stay in the Santa Ana City Jail

27  where he had been held for the past several years. He explained that Mr. Franco's

28  court proceedings would remain in Los Angeles, and that it was the government's

2

Exhibit 3 - Page 29

1  position that he was subject to mandatory detention during the pendency of those

2  proceedings. On January 20, 2010, Mr. Stolley left me a phone message stating

3  that Mr. Franco had a court hearing scheduled for January 26, 2010.

4

5      8. On January 26, 2010, I filed a notice of entry of appearance on behalf of

6  Mr. Franco before the Executive Office of Immigration Review. Before the

7  hearing began that day, ICE Assistant Chief Counsel Michelle Myers represented

8  that the government was willing to stipulate to a grant of withholding of removal

9  in Mr. Franco's case. Based on that representation, the parties requested that the

10  case be set for a merits hearing date to resolve the matter with a joint stipulation to

11  relief. That hearing was scheduled for February 25, 2010.

12

13      9. On February 18, 2010, Ms. Myers informed me that DHS was retracting

14  its prior representation, and was no longer prepared to stipulate to a grant of relief.

15  On February 22, 2010, DHS filed a motion to continue proceedings so that Mr.

16  Franco could respond to the charges against him and file an application for relief

17  at a master calendar hearing. Given DHS's change of position, Mr. Franco did not

18  oppose a short continuance. The case was re-set for March 4, 2010.

19

20

21

22

23

24

25

26

27

28

3

Exhibit  3 - Page 30

10. On March 4, 2010, I appeared in the Los Angeles Immigration Court on behalf of Mr. Franco. However, DHS informed me and the immigration judge that it had failed to transport Mr. Franco for his court hearing. The immigration judge set the case over for another master calendar hearing on April 8, 2010. Since his case's re-calendaring, Mr. Franco has not had an opportunity to be present in court to respond to the charges against him or to file any application for relief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed at Los Angeles, California on March 25, 2010.

TALIA INLENDER

Exhibit 3 - Page 31

EXHIBIT

4

**Robert Patterson, Psy.D.**
**Licensed Psychologist**
**Psy 11835**
**17501 Irvine Blvd., Suite 4**
**Tustin, CA  92780**
**Telephone:  (714) 832-8870**

# PSYCHOLOGICAL REPORT

Name:  Jose Antonio Gonzalez

Date of Birth:  09-26-2000

C.A.:  20-3

Date of Assessment:  09-26-1980

Psychologist:  Robert Patterson, Psy.D.

## REASON FOR ASSESSMENT:

Jose was referred by staff from Regional Center to determine his current levels of functioning and also to determine his possible eligibility for services through the Regional Center of Orange County.

## HISTORY:

Jose's mother and brother were interviewed.  They indicated that Jose never really went to school.  He had gone to what would be the equivalent of a first grade classroom, other children made fun of him, and the school advised the parents not to send him back.  In Mexico he had some odd jobs working for people such as helping them load boxes on a truck or some task where they paid him in cash.  His parent indicated that he used to have friends in Mexico, but that they would often do things that got them into trouble and they would blame Jose and he would get very angry when he came home saying that he did not do it, but yet he would be held responsible.

In reviewing the birth history with his mother, it was a normal delivery.  There were no forceps used, but the physician was concerned because Jose would not cry.  His mother did not see him after the birth, so she was not sure whether or not he was a blue baby or if the cord was around his neck and no one indicated Apgars to her at that time.

Compared to the other 12 children in the family, Jose is the tenth child and his mother indicated that she did not feel well during the pregnancy and that it felt very different than it had with any of her other children.  When he was 20 months old he started walking, prior to that time he never crawled, he simply would pull himself and his legs just did not seem to move.  Compared to the other children in the family he was the slowest in every developmental level of all of her children.  When he was six years of age he started to talk, but he did not use the words correctly and his ability to speak seemed to fluctuate across time.  The family had originally felt that he never would talk.  They had taken him to a physician thinking that he was deaf, but he was labeled as having normal hearing.  They had taken him at nine years of age to see an optometrist and he was prescribed glasses, but would not wear them and he still appears to have a mild visual impairment.  There had been no prior difficulties with behavior, according to his mother.

Page 1 of 9

Exhibit  4 - Page 32

DEC 18 200

Jose Antonio Gonzalez

When Jose was seen by staff from Regional Center they indicated in their interview with the family that Jose lives with his parents and his siblings in the family home. His father is a maintenance worker and his mother is a full time homemaker. He has never resided in any out of home placement. He has been in jail and has lived moving back and forth between Mexico and the United States. According to the Regional Center report, he was born at home in Jalisco, Mexico and was the tenth pregnancy of his mother. She received no prenatal care during the pregnancy, but she did not smoke, drink alcohol, or take illegal substances. His mother was 41 years of age at the time of delivery and the father was 49. The labor lasted approximately four hours and the birth was difficult, but he was born normal with vaginal delivery, head first at full term. He was bottle fed for 14 months and did not appear to have any problems with feeding. He held his head up at about eight months, stood alone at about 18 months, walked at about 20 months, fed himself with a spoon at four months, drank from a cup at 14 months, and spoke in complete sentences at about six years of age, but the family indicated that they were very short, usually two to three word utterances. He made a number of unusual sounds as a child. He had been saying, "Mama, Dada" at three years of age and then seemed to lose the ability until gaining new words at about five years of age when he began to speak in sentences.

According to the Regional Center report Jose is able to cook simple foods, can use the stove, can make a bed, wash dishes, and perform household chores. He usually seeks aid in treatment of minor injuries but is able to care for his own personal hygiene, bathing, and dressing needs. He is unable to make or count change, but he does understand the function of money. Jose will initiate interactions with peers and others in familiar or previously successful situations. He initiates and maintains friendships in different environments, he does not need any encouragement to participate in social activities, but when he is frustrated he often resorts to verbal abuse, but has never caused injury to anybody. He does not damage property and he is not considered to be hyperactive. He is considered resistive in several different situations and changes in social situations or physical environments do not seem to have any effect on his functioning. He has been charged with sexually molesting a minor and he denies that the charges are correct. According to the Regional Center report, he is not able to read or write, does not count, has difficulty with memory, and has had no formal education.

PRESENT ASSESSMENT:

BEHAVIORAL OBSERVATIONS:

Jose arrived for the assessment accompanied by his brother who is English fluent and by his mother who speaks only Spanish. Jose is only speaks and understands Spanish. The assessment was conducted with a bilingual interpreter who is familiar with assessment procedures and is an employee of the local school district where she works as an English as a Second Language interpreter and translator. The current assessor is familiar with Hispanic customs and culture and does understand significant amounts of Spanish.

Exhibit 4 - Page 33

DEC 1 8 2009

Jose Antonio Gonzalez

Behavioral observations indicated that Jose arrived for the assessment neatly and cleanly attired. He is of medium stocky build. His eye contact was erratic. He was hypoactive during the assessment. He has an awkward gait and his fine motor skills are significantly impacted. He was responsive to questions, but usually produces one or two word responses and has an articulation defect. He was friendly and cooperative during the assessment and appeared appropriately related to his brother and mother. His attention and concentration were poor. He is highly distractible, but he was oriented to time, place, person, and purpose within his level of cognition. His memory was impaired for both recent and remote events. His cognition is extremely limited and impaired. His affect was within the normal range. His mood was anxious. Perceptual disturbances were denied such as hallucinations, illusions, depersonalizations, or derealizations. His thought content was appropriate within his level of cognition. His processes were generally goal directed within his level of cognition. His judgement is mildly impaired and his insight is impaired. He denied any behavioral disturbances, suicidal or self-destructive ideation, or physical manifestations such as somatic complaints, sleep dysfunction, weight, or appetite change.

TESTS USED:

Bateria Woodcock-Muñoz-Revisada
Pruebas de Habilidad Cognitiva
Selected Tests from the Bateria Pruebas de Aprovechamiento
Test of Nonverbal Intelligence-3 (TONI-3)
Comprehensive Tests of Nonverbal Intelligence (CTONI)
Bender Visual Motor Gestalt Test
Bender Memory for Designs Test
Index of Adaptive Behavior

TEST RESULTS:

Cognitive Functioning:

| | | | | |
|---|---|---|---|---|
| TONI-3 | 66 SS | Range: 62 – 70 | | 1 %ile |

C-TONI    Pictorial Nonverbal Intelligence

| Subtests | %ile | |
|---|---|---|
| Pictorial Analogies | < 1 | |
| Pictorial Categories | < 1 | |
| Pictorial Sequences | 5 | |
| Total Pictorial Intelligence | 51  SS | < 1 %ile |

| | | | |
|---|---|---|---|
| Bateria-R | Cognitive Ability | 23  SS | < 1 %ile |

Exhibit  4 - Page 34

DEC  1 8  20?

Jose Antonio Gonzalez

### Achievement Functioning:

Bateria-R

| Subtest | Age Score | SS | %ile |
|---|---|---|---|
| Applied Problems | 3-11 | 32 | < 1 |
| Letter-Word Identification | 2-5 | < 32 | < 1 |

### Processing Speed:

| Bateria-R | Visual Matching | Age Score: 4-0 | 0 SS | < 1 %ile |
|---|---|---|---|---|

### Visual Processing:

| Bateria-R | Visual Closure | Age Score: 2-5 | 0 SS | < 1 %ile |
|---|---|---|---|---|

### Auditory Processing:

| Bateria-R | Incomplete Words | Age Score: 3-6 | 29 SS | < 1 %ile |
|---|---|---|---|---|

### Language Functioning:

| Bateria-R | Picture Vocabulary | Age Score: 2-10 | 6 SS | < 1 %ile |
|---|---|---|---|---|

### Conceptualization:

| Bateria-R | Analysis-Synthesis | Age Score: 4-4 | 0 SS | < 1 %ile |
|---|---|---|---|---|

### Psychomotor Functioning:

Bender Visual Motor Gestalt Test

### Adaptive Behavior:

Index of Adaptive Behavior

| Domain | SS |
|---|---|
| Independent Functioning | 68 |
| Socialization | 78 |
| Communication | 58 |
| Total | 64 SS    1st %ile |

Exhibit 4 - Page 35

DEC 1 8 20␣␣

Jose Antonio Gonzalez

Cognitive Functioning:

Jose was administered the Test of Nonverbal Intelligence-3 (TONI-3) and it took two sets of trials through the preliminary training component of the test before Jose appeared to understand how the test worked. Once he understood the process, he was able to solve simple reasoning tasks on the Test of Nonverbal Intelligence-3 (TONI-3), performing with a standard score of 66, which is at the 1st percentile, but he had a great deal of difficulty with maintenance of focused attention span often asking if he was correct, but performing in the mild range of retardation.

He was administered the Pictorial Nonverbal Intelligence Test which consists of three subtests:  Pictorial Analogies, Pictorial Categories, and Pictorial Sequences.  Pictorial Analogies involves this is to this as that is to _____ and the individual must then select from a list of five pictures that are presented to complete the analogy and after the initial analogies, Jose did not seem to understand analogical reasoning, performing below the 1st percentile.

On the Pictorial Categories the pattern is set up so that two things alike in some way and then there is another item that needs to go into the empty box, again being presented with five choices.  On this type of task he was able to perform at a slightly higher level than on Pictorial Analogies, but still was performing below the 1st percentile.

On Pictorial Sequences the individual is shown a series of pictures that are sequenced and then must select from the five choices an item to complete the sequence, for example a series of balls gradually getting smaller and the individual selects a ball that is the smallest.  On this type of task he appeared to function at a much higher level and understand the concept of sequencing where he had difficulties with analogic and categorical reasoning, performing at the 5th percentile.

Overall, however, his Total Pictorial Intelligence is a standard score of 51, which is below the 1st percentile and is on the cusp between mild and moderate retardation.

The Bateria-Woodcock Muñoz-Revisada is a much more extensive intelligence test and Jose was administered the Memory for Names, Memory for Phrases, Visual Matching, Incomplete Words, Visual Closure, and the Vocabulary Subtests as well as the Concept Formation Subtest.  On this task he was performing with an IQ of around 23, which is below the 1st percentile, but tasks that significantly impacted his ability to function cognitively is the fact that he does not know numbers, has visual processing difficulties, and he does not understand abstract reasoning, all of which impact the scores on the Bateria-Woodcock Muñoz-Revisada.

Achievement Functioning:

Jose was administered the Identification of Letters and Words.  The first component of the test involves matching of symbols so that there are three pictures, a picture of a chair, a book, and a dog, and then there is a picture of a real chair, and the student must match the symbol which is a drawing of a chair to the real chair which measures the individual's ability to match symbols, a precursor to writing.  Then it moves to letters and finally to words.  Jose understood and could decode no words, one letter, the letter "o," and could only successfully match three of the simpler symbols, performing like an individual two years, five months of age, with a standard score of 32, which is below the 1st percentile, in the severe range of retardation.  He was unable to answer any of the questions on the Passage Comprehension Subtest.

Page 5 of 9

Exhibit 4 - Page 36

DEC 18 20X

Jose Antonio Gonzalez

On the Calculations Subtest, which is a page of just relatively simple numbers, he was unable to recognize or tell us any of the symbols for any of the numbers.

On the Applied Problems Subtest the student is shown pictures and asked questions, for example, "How many dogs are in the picture?" and they count them and tell you. On this type of task he is performing like an individual three years, eleven months of age, with a standard score of 32, which is below the 1st percentile and is in the severe range of academic retardation. He was able to solve one problem using five fingers, but could not count above 5 in any significant way.

Processing Speed:

Processing speed was measured with the Visual Matching Subtest where the student selects two numbers that are the same in a series of six numbers, going from single digit to multiple digit numbers. There was an extensive training with Jose. He was unable to successfully match any of the numbers, performing like a child four years of age, his scores being below the norms for the test which is below the 1st percentile.

Visual Processing:

Visual processing was measured using the Visual Closure Subtest of the Bateria-R, which is a task where the individual is shown a series of ink drawings with missing components or with distorted components that they must visually cloze to determine the nature of the object. On this type of task Jose is performing like an individual two years, five months of age, which is below the norms for the test, which is below the 1st percentile for individuals of his age.

Auditory Processing:

Auditory processing was measured using the Incomplete Words Subtest of the Bateria-R which is a task where the individual is presented with a series of words with a missing phoneme which they then must auditorially cloze to determine the nature of the word. This was a task that seemed to amuse Jose and he laughed several times about the odd sounds of some of the words and fully participated, but had a hard time with auditory closure functioning, performing like an individual three years, six months of age with a standard score of 29, which is below the 1st percentile, and is also in the severe range of retardation.

Language Functioning:

In an extensive interview with Jose the longest expressive utterance that was detected was a three word utterance, so that he has a tendency to parse his language. The family indicated that he does have a longer length of utterance and they indicated that it is not unusual to hear him use six word utterances, which is a mean length of utterance often seen in children about six years of age.

Jose was administered the Picture Vocabulary Subtest of the Bateria-R which is an expressive vocabulary subtest. He was unable to label a number of items that are pictured such as a helicopter, an octopus, a calculator, overall performing at about the five year, ten month level, with a standard score of 6, which is significantly below the 1st percentile appearing to have a very small pool of expressive vocabulary items that he can apply correctly.

Page 6 of 9

Exhibit  4 - Page 37

Jose Antonio Gonzalez

## Conceptualization:

Conceptualization was measured using the Analysis-Synthesis Subtest of the Bateria-R. On this test the individual is shown a series of colored equations and must use the colored equation keys to solve a series of problems. While Jose certainly attempted the task, he looked confused, asked many questions, and was able to solve only one of the problems, performing below the norms for the test, below the 1st percentile, like an individual four years, four months of age.

## Psychomotor Functioning:

Jose was administered the Bender Visual Motor Gestalt Test. He had two of the figures correct. His other figures were replete with distortions, rotations, and deletions of the figures, having a significant number of items that are consistent with significant organicity.

On the Bender Gestalt Memory for Designs Subtest he was unable to recall a single design.

An attempt was made to administer the Digit-Symbol Modalities Test, but Jose was unable to be trained for the task.

## Adaptive Functioning:

On the Index of Adaptive Behavior Jose and his mother were questioned extensively. Jose was also questioned, and then based on what was observed in the assessment, this allowed the completion of the test. At home Jose only uses a spoon; the family has never seen him use a fork or a knife. He is self-dressing and toilets independently, but his hygiene is something that the family has to monitor very carefully and the same thing is true of his grooming.

He observes safety rules such as traffic signals, but does require prompting. He does not demonstrate safety precautions, for example such as avoiding over exposure in the sun or using matches safely. He does have responsibilities in the home, but does require prompting to complete tasks there.

He does not have any practical economic knowledge other than knowing that you buy things with money. He cannot tell clock time, but seems to be reliable; if you get him to the place where he is to be on time to work, he follows through and knows that he is suppose to be ready prior to some time that he has internalized.

He is able to do simple cooking, but no complex meals. He does have prevocational skills and can repair things. He works well with others and is quite personable. He does accept authority most of the time and exhibits appropriate physical restraint and does have some assertiveness. He does not exhibit manners always, but seems to be polite within the family home and has acceptable social behavior there.

He is not flexible and it takes a significant amount of time for him to understand what is being asked of him in terms of a task. He plays no games, so the family is unable to indicate does he or does he not exhibit sportsmanship. He does not adhere to social rules based on his performance in Mexico. He does not establish close relationships, but he use to when he was in Mexico where he was accepted by others, although they got him into difficulty.

Page 7 of 9

Exhibit  4 - Page 38          DEC 18 20

Jose Antonio Gonzalez

His speech is coherent, but extremely short. He is unable to read or write or do math problems. His vocabulary seems, according to the family in terms of simple communication about things in the home and tasks, to be appropriate, but he does not converse effectively communicatively. He does seem to have appropriate receptive language when given directions, but has difficulty with memory, with academic skills, has a short attention span, cannot use the telephone, does not communicate emotional needs, and is not inquisitive.

## DIAGNOSIS:

| AXIS I | 307.9 | Communication Disorder NOS |
|---|---|---|
|  | 315.4 | Developmental Coordination Disorder (Visual motor integration and psychomotor difficulties) |
| AXIS II | 318.0 | Moderate Mental Retardation |
| AXIS III |  | General Medical Conditions – Requires glasses |
| AXIS IV |  | Psychosocial and Environmental Problems – Difficulty within community |
| AXIS V |  | Global Assessment of Functioning   -    58 |

## SUMMARY:

Jose is performing quite variably in terms of cognition, but appears to be performing on the borderline between moderate and mild retardation based on a number of different types of tasks. He has had no formal education, and as a result, is performing in the severely retarded range in terms of these types of skills, some of which may be due to lack of exposure. His processing speed was below the norms for the test, like a four year old. Visual closure function was like a two and half year old, but may be due to the fact that he has been labeled as having a visual impairment and was given glasses, but refused to wear them. His auditory processing is like a three and half year old and is significantly below the average range, in the severe range of retardation. Language functioning for practical items in the house appears to be an area of strength, but labeling and naming items in the real world is at about a three year old level or less, significantly below the average range, in the profoundly retarded range of language processing. Conceptualization skills are also significantly retarded.

The results of the Bender Visual Motor Gestalt Test are significant for psychomotor and visual motor integration difficulties as well as being highly significant for organicity. Other tests to measure organicity were attempted, but Jose could not be trained to complete then successfully.

The Adaptive Behavior Scale indicates functioning that is in the mild to moderate range of retardation.

Exhibit  4 - Page 39

DEC 1 8 200

Jose Antonio Gonzalez

RECOMMENDATIONS:

1. If Jose is accepted as a client at Regional Center he would appear to be an individual, based on his past history, that could benefit from a sheltered enclave type of employment eventually with training leading to the possibility of supported employment in the community.

2. Jose's family is unaware of any of the services that are currently available for Jose including functional living skills training through the community colleges so that Regional Center staff are encouraged to explore these options with the family.

3. Because of Jose's difficulty, which has occurred in the community, consideration could be given to placing him in a highly structured group home where his activities could be monitored, he could still work because he would be in a monitored situation and would be using group home or other supervised transportation to and from work and would be in a group whenever he was in the community which could provide some support for the family as well.


_____

Robert Patterson, Psy.D.
Licensed Psychologist
Licensed Educational Psychologist
Nationally Certified School Psychologist (NCSP)
Licensed Marriage, Family, and Child Therapist
Nationally Certified Counselor (NCC)
Nationally Certified Gerontological Counselor (NCGC)

December 11, 2000
Date

Page 9 of 9

Exhibit 4 - Page 40

DEC 1 8 2000

# EXHIBIT
# 5

May 23  2005


Presiding Judge
Immigration and Naturalization Service
2001 Seaside Avenue
San Pedro, California 90721


RE:      **JOSE ANTONIO FRANCO GONZALEZ**
No.:     **077119046**


Your Honor:

I evaluated Jose Antonio Franco Gonzalez at my office on May 23,
2005.  He received  a  full  mental  status  examination  and
psychiatric evaluation.

He is a 24 year old Mexican national, who is single and has no
children.  He has been in the United States for five years
living in Costa Mesa.

He was transferred from L.A. County Jail, where he had been
incarcerated for a fight in public.  He is currently on no
psychotropic medications.  He denies hallucinations or delusions
or depression or suicidality, and claims to have good sleep and
appetite.  He has never before made a suicide attempt.

His psychiatric history apparently includes some kind of
incarceration at a psychiatric hospital in Mexico in the past,
however, he is very vague regarding this.  He denies history of
chemical dependency.  He denies medical problems.

Apparently, he grew up with special schooling, having been
developmentally disabled from early life.

MENTAL STATUS EXAMINATION:    On mental status, when asked the
date, he kept saying Monday, and could not come up with a month
or year.   Both his long and short-term memory were poor.
Otherwise, he showed no hallucinations, delusions, depression or
suicidality.

Exhibit 5 - Page 41

RE:    JOSE ANTONIO FRANCO GONZALEZ
May 23, 2005
Page 2


When we discussed court issues, he had no clue as to what type
of court Your Honor presided over, what the possible outcomes
might be, or how to defend himself at trial.

Diagnostically, he has a Severe Cognitive Disturbance, probably
life-long, secondary to development disability. In view of this,
it is impossible for him to stand trial.

Should you have further questions, please do not hesitate to
write or call.

Sincerely yours,


Claude T.H. Friedmann, M.D.


CTHF:a

D:    5 23-05
T:    5 24-05

EXHIBIT
6

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

**Case Number  04HF0638 F A**

**People Vs Gonzalez-Franco, Jose Antonio**

```
┌─── Report Request Criteria ───────────────────┐
│  1. Docket Date Range     : Date filter         │
│  2. Sequnce Number Range  : Sequence filter     │
│  3. Docket Category       : Category filter     │
└────────────────────────────────────────────────┘
```

| Docket Dt | Seq | Text |
|---|---|---|
| 8/10/2004 | 1 | **Hearing held on 08/10/2004 at 08:30:00 AM in Department H2 for Preliminary Hearing.** |
| | 2 | Officiating Judge: Craig E. Robison, Judge |
| | 3 | Clerk: L. K. Mc Donald |
| | 4 | Bailiff: D. Cheli |
| | 5 | Court Reporter: Karen Lee |
| | 6 | People represented by Margaret Roper, Deputy District Attorney, present. |
| | 7 | Katherine Corrigan, Retained Attorney, makes a special appearance for Michael Molfetta. Defendant present. |
| | 8 | Sonia Baroni, Spanish Interpreter, present to interpret for the defendant. |
| | 9 | Defendant advised of legal and constitutional rights. |
| | 10 | Defendant advised of the possible consequences of plea affecting deportation and citizenship. |
| | 11 | Defendant advised of maximum possible sentence. |
| | 12 | Defendant advised of consequences of violating probation and parole. |
| | 13 | **Defendant's motion to WITHDRAW NOT GUILTY PLEA to count(s) 1 granted.** |
| | 14 | **To the Original Complaint defendant pleads GUILTY as to count(s) 1.** |
| | 15 | Court finds defendant intelligently and voluntarily waives legal and constitutional rights to jury trial, confront and examine witnesses, and to remain silent. |
| | 16 | Court finds factual basis and accepts plea. |
| | 17 | Defendant's written waiver of legal and constitutional rights for guilty plea received and ordered filed. |
| | 18 | Defendant waives arraignment for sentencing. |
| | 19 | Defendant waives statutory time for Sentencing. |
| | 20 | Probation report waived. |
| | 21 | Counsel joins in waivers. |
| | 22 | COUNSEL DOES NOT JOIN IN THE PLEA. |
| | 23 | Defendant applies for probation. |

---

Exhibit 6 - Page 43

SUPERIOR COURT THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

**Case Number  04HF0638 F A**

**People Vs Gonzalez-Franco, Jose Antonio**

| Report Request Criteria |
| --- |
| 1. Docket Date Range      : Date filter |
| 2. Sequnce Number Range : Sequence filter |
| 3. Docket Category        : Category filter |

| Docket Dt | Seq | Text |
| --- | --- | --- |
| 8/10/2004 | 24 | Defendant requests immediate sentencing. |
| | 25 | No legal cause why judgment should not be pronounced and defendant having Pled Guilty to count(s) 1, Imposition of sentence is suspended and defendant is placed on 5 Years FORMAL PROBATION on the following terms and conditions: |
| | 26 | Violate no law. |
| | 27 | Pay $200.00 Restitution Fine pursuant to Penal Code 1202.4 or Penal Code 1202.4(b). |
| | 28 | Pay $20.00 for Security Fee pursuant to Penal Code 1465.8. |
| | 29 | All fees payable through the Probation Department. |
| | 30 | Serve 365 Days  Orange County Jail as to count(s) 1. |
| | 31 | Credit for time served: 0 actual, 0 conduct, totaling 0 days. |
| | 32 | Defendant waives any actual and conduct credits received up until today's date. |
| | 33 | Pay restitution in the amount as determined and directed by Probation Officer as to count(s) 1. |
| | 34 | Defendant is ordered to make restitution on dismissed count(s) 2, 3, 4, 5, 6 pursuant to Harvey Waiver. |
| | 35 | Defendant agrees to Harvey Waiver. |
| | 36 | Use no unauthorized drugs, narcotics, or controlled substances. Submit to drug or narcotic testing as directed by Probation Officer or Police Officer. |
| | 37 | Submit your person and property including any residence, premises, container, or vehicle under your control to search and seizure at any time of the day or night by any law enforcement or probation officer with or without a warrant, and with or without reasonable cause or reasonable suspicion. |
| | 38 | Cooperate with Probation Officer in any plan for psychiatric, psychological, alcohol and/or drug treatment, or counseling. |
| | 39 | Seek training, schooling, or employment and maintain residence as approved by Probation Department. |
| | 40 | Do not associate with anyone disapproved of by your Probation Officer. |
| | 41 | Do not own, use, or possess any type of dangerous or deadly weapon. |

Exhibit  6 - Page 44

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

## MINUTE ORDER

Case Number  04HF0638 F A

People Vs Gonzalez-Franco, Jose Antonio

| Report Request Criteria |
| --- |
| 1. Docket Date Range     : Date filter |
| 2. Sequnce Number Range : Sequence filter |
| 3. Docket Category       : Category filter |

| Docket Dt | Seq | Text |
| --- | --- | --- |
| 8/10/2004 | 42 | Defendant provided a copy of "Prohibited Persons Notice Form and Power of Attorney for Firearms and Disposal" pursuant to Penal Code 12021(d)(2). |
| | 43 | Do not have any contact with Alicia Contreras, Anthony Macias, Israel Cortez, Eric Martinez, and Jorge Martinez directly, indirectly, or through a third party except by an Attorney of Record. |
| | 44 | Report to your Probation Officer in person as directed. Transportation problems or poor weather conditions are not acceptable reasons for not reporting. |
| | 45 | Comply with all direction of your Probation Officer. |
| | 46 | Obey all laws, including traffic rules and regulations. Do not operate a motor vehicle on any street or highway until properly licensed and insured. Report to your Probation Officer any arrests, law violations or police contacts immediately. |
| | 47 | Obey curfew as directed by your Probation Officer. |
| | 48 | Do not leave the State of California or change your residence without prior permission from your Probation Officer. Prior to change of residence, you are to notify your Probation Officer of the new address. Do not live with anyone unless they are approved by your Probation Officer. |
| | 49 | Do not be on any school campus where not enrolled without the permission of the school administration. |
| | 50 | Do not be present in any known gang gathering area of the Aztec Pride gang as directed by your Probation Officer; specifically the following location(s):.. |
| | 51 | Associates are to be approved by your Probation Officer. Do not associate with anyone whom you have met while in any of the County Institutions. Do not associate with any member of the Aztec Pride gang or any other gang as directed by your Probation Officer. |
| | 52 | Do not possess weapons of any description including but not limited to firearms, knives of any description, nunchakus, and martial arts weaponry. Do not possess ammunition or weapon replicas. Do not involve yourself in activities in which weapons are used including but not limited to hunting and target shooting. Do not remain in any vehicle wherein anyone possess a weapon, ammunition or weapon replica. |
| | 53 | Submit to a chemical test of blood, breath, or urine as directed by the Probation Officer or any other peace officer. |
| | 54 | Do not remain in any vehicle either as a passenger or driver which you know or suspect to be stolen. |

Exhibit  6 - Page 45

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

Case Number  04HF0638 F A

**People Vs Gonzalez-Franco, Jose Antonio**

| Report Request Criteria |
| --- |
| 1. Docket Date Range     : Date filter |
| 2. Sequnce Number Range : Sequence filter |
| 3. Docket Category       : Category filter |

| Docket Dt | Seq | Text |
| --- | --- | --- |
| 8/10/2004 | 55 | Do not possess nor remain in the presence of one you know possesses any master key, lock picks, dentpuller, "slim jim", slide hammer, or other device you know to be an auto theft or burglary tool. |
| | 56 | Do not appear at any Court proceeding unless you are a party, defendant in a criminal action, or subpoenaed as a witness. |
| | 57 | Do not possess a beeper, pager, cellular phone or any other cordless or otherwise wireless communication device. |
| | 58 | Do not own or possess, nor associate with anyone who is in possession of any aerosol paint tips or containers, paint sticks, felt-tip markers or marking pens, marking instruments, drill bits, grinding stones, scribers, glass cutters or etching tools or other implements capable of marking a surface to create graffiti or scarring glass, metal, concrete or wood. |
| | 59 | Carry valid picture identification at all times. |
| | 60 | Do not wear, display, use or possess any insignia, emblem, button, badge, cap, hat, scarf, bandana or any article of clothing which is evidence of affiliation with membership in Aztec Pride. |
| | 61 | Do not use or possess any intoxicants, narcotics, other controlled substances, related paraphernalia, poisons, or illegal drugs; including marijuana. Do not be with anyone who is using or possessing any illegal intoxicants, narcotics or drugs. Do not inhale or attempt to inhale or consume any substance of any type or nature, such as paint, glue, plant material, or any aerosol product. Do not inject anything into your body unless directed to do so by a medical doctor. |
| | 62 | Do not obtain tattoos except as permitted by your Probation Officer. |
| | 63 | Provide blood/saliva samples as required under Section 290.2 of the Penal Code. |
| | 64 | Do not have any contact with co-defendants Carlos Diaz and Jorge Arturo Vazquez Ramirez directly, indirectly, or through a third party except by an Attorney of Record. |
| | 65 | Obey all laws, orders, rules, and regulations of the Court, Jail, and Probation. |
| | 66 | Pay the costs of probation based on the ability to pay as directed by the Probation Officer. |
| | 67 | All terms and conditions to be directed and monitored through the Probation Department. |
| | 68 | Defendant accepts terms and conditions of probation. |
| | 69 | Defendant remanded to the custody of the Sheriff. |

Exhibit  6 - Page 46

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

**Case Number   04HF0638 F A**

**People Vs Gonzalez-Franco, Jose Antonio**

```
┌─ Report Request Criteria ──────────────────────┐
│ 1. Docket Date Range      : Date filter         │
│ 2. Sequnce Number Range : Sequence filter       │
│ 3. Docket Category        : Category filter      │
└─────────────────────────────────────────────────┘
```

| Docket Dt | Seq | Text |
|-----------|-----|------|
| 8/10/2004 | 70 | Notice to Sheriff issued. |
| | 71 | Defendant to report to Probation Officer within 72 hours of release. |
| | 72 | Court finds that the defendant has the ability to pay costs for counsel pursuant to Penal Code 987 in the amount of $95.00 to the County Tax Collector within 90 days. |
| | 73 | Count(s) 2, 3, 4, 5, 6 DISMISSED - Motion of People. |
| | 74 | All enhancements are DISMISSED. |

I hereby certify the foregoing instrument consisting of /4 page(s)
is a true and correct copy of the original on file in this court.

ATTEST: (DATE) **AUG 24 2004**
ALAN SLATER, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____ , DEPUTY
L. ANTONIO

Exhibit  6 - Page 47

# EXHIBIT
# 7

RCP
LJM
(LA3

JIM STOLLEY
Chief Counsel
CARLOS MAURY ~ 213-633-4331
Deputy Chief Counsel
MICHELLE P. MYERS
Assistant Chief Counsel
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Office of the Chief Counsel
300 N. Los Angeles Street, Rm. 7631
Los Angeles, CA 90012
(213) 830-7908

**DETAINED**

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## LOS ANGELES, CALIFORNIA

| | |
|---|---|
| In the Matter of: | **File No.**    A077 119 046 |
| **Jose Antonio Franco-Gonzalez** | **Immigration Judge Peters** |
| In Removal Proceedings | **Administratively Closed** |

## U.S. DEPARTMENT OF HOMELAND SECURITY'S MOTION TO RE-CALENDAR

Exhibit 7 - Page 48

The Department of Homeland Security (DHS) hereby moves the Court to re-calendar these proceedings. The case was administratively closed on June 6, 2005 before Immigration Judge Peters in San Pedro, California. DHS has been in contact with the respondent's family who are expected to appear before the Immigration Judge. The respondent is currently being housed in Santa Ana City Jail, 62 Civic Center Plaza. Santa Ana, CA 92701. Therefore, DHS requests that the case be re-calendared to the detained docket located at 300 N. Los Angeles Street, Los Angeles, CA 90012.

Respectfully submitted,

December 29, 2009
Date

Michelle P. Myers
Assistant Chief Counsel
U.S. Department of Homeland Security

2

A077 119 046

Exhibit 7 - Page 49



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
LOS ANGELES, CALIFORNIA

In the Matter of: **Jose Antonio Franco-Gonzalez**

**A77 119 046**

### ORDER OF THE IMMIGRATION JUDGE

Upon consideration of the **Department of Homeland Security's Motion to Re-Calendar,** it is HEREBY ORDERED THAT THE MOTION BE  [ ] **GRANTED** [ ] **DENIED** because:

[ ] DHS does not oppose the motion.
[ ] The respondent does not oppose the motion.
[ ] A response to the motion has not been filed with the court.
[ ] Good cause has been established for the motion.
[ ] The court agrees with the reasons stated in the opposition to the motion.
[ ] Other:

_____          _____
Date                                              Immigration Judge

_____

### Certificate of Service

This document was served by: [ ] Mail [ ] Personal Service
To:  [ ] Alien [ ] Alien c/o Custodial Officer [ ] Alien's Atty/Rep
     [ ] DHS

3

A077 119 046

Exhibit 7 - Page 50

## CERTIFICATE OF SERVICE

A077 119 046

Jose Antonio Franco-Gonzalez

I, <u>Michelle P. Myers,</u> served a copy of the **U.S. Department of Homeland Security's Motion to Re-Calendar** and any attached pages on the respondent and/or his attorney by first class mail at the following address:

**Jose Antonio Franco-Gonzalez**
Santa Ana City Jail
c/o DHS-ICE
62 Civic Center Plaza
Santa Ana, CA 92701

Date _____

Michelle P. Myers
Assistant Chief Counsel
U.S. Department of Homeland Security

4

A077 119 046

Exhibit 7 - Page 51

# EXHIBIT
# 8

JIM STOLLEY
Chief Counsel
Carlos Maury
Deputy Chief Counsel
Michelle P. Myers
Assistant Chief Counsel
U.S. Department of Homeland Security
300 N. Los Angeles Street Room 7631
Los Angeles, CA 90012
(213)830-7908

DETAINED

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## LOS ANGELES IMMIGRATION COURT

| In the Matter of: | ) |
| | ) |
| Gonzalez, Jose. | ) |
| A77 119 046 | ) |
| | ) | NHD: February 25, 2010 |
| | ) | IJ Munoz |

## DHS MOTION TO CONTINUE



Exhibit 8 - Page 52

## DHS MOTION TO CONTINUE

The Department of Homeland Security (DHS) does hereby move this court to grant a brief continuance. After discussion with opposing counsel, Talia Inlender, we are in agreement that additional time is necessary to prepare the case for pleadings, filing, and merits. The issues are not as streamlined and simple as initially anticipated by DHS counsel. DHS has discussed the case and issues with Ms. Inlender advising of our amended position on the case. Based upon the foregoing, DHS makes this motion to continue as good cause is shown. DHS requests that the case be continued for one week to a master calendar so that pleadings and filing can be made by respondent.

Respectfully Submitted,

Michelle P. Myers, Assistant Chief Counsel

February 22, 2010

Exhibit  8 - Page 53

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
LOS ANGELES, CALIFORNIA

In the Matter of: **Jose Franco Gonzalez**
**A77 119 046**

ORDER OF THE IMMIGRATION JUDGE

Upon consideration of the Department of Homeland Security's
Motion to Continue, it is HEREBY ORDERED THAT THE MOTION BE   [ ]
GRANTED [ ] DENIED because:

[ ]  The respondent does not oppose the motion.
[ ]  Good cause has been established for the motion.
[ ]  The court agrees with the reasons stated in the
     opposition to the motion.
[  ] Other:


_____          _____
Date                              Immigration Judge Munoz

_____

Certificate of Service

This document was served by:[ ] Mail [ ] Personal Service
To:  [ ] Alien [ ] Alien c/o Custodial Officer[ ] Alien's Atty/Rep
     [ ] DHS

Date:_____          By:  Court Staff _____

Exhibit 8 - Page 54

CERTIFICATE OF SERVICE

Jose Franco Gonzalez A 77 119 046

I hereby certify that I have caused a copy of the foregoing DHS Motion to Continue with all attachments to be served upon the respondent and/or his counsel of record by the undersigned via first class mail.

Talia Inlender Esq.
Public Counsel
610 South Ardmore Ave.
Los Angeles, CA 90005

February 22, 2010
Date

Michelle P. Myers Esq.

1

Exhibit 8 - Page 55

# EXHIBIT
# 9

Talia Inlender, Esq. (Bar No. 253796)                    **DETAINED**
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, California 90005
Tel: (213) 385-2977, ext. 235
Fax: (213) 385-9089

*Pro Bono Attorney for Respondent Jose Antonio Franco-Gonzalez*


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## LOS ANGELES, CALIFORNIA


In the Matter of:                    )
                                     )
Jose Antonio Franco-Gonzalez        )        File No.: A 077-119-046
                                     )
In Removal Proceedings              )
                                     )

Immigration Judge: Lorraine J. Munoz     Next Hearing Date: February 25, 2010


## RESPONDENT'S STATEMENT OF NON-OPPOSITION TO DHS'S MOTION TO CONTINUE


Exhibit 9 - Page 56

Respondent Jose Antonio Franco-Gonzalez ("Mr. Franco"), through *pro bono* counsel, files this statement of non-opposition to the Department of Homeland Security's ("DHS") motion to continue. On January 26, 2010, DHS, through Assistant Chief Counsel Michelle Myers, represented that it was prepared to stipulate to a grant of withholding of removal in Mr. Franco's case. On DHS's suggestion, Respondent and DHS counsel agreed to set the case for a merits hearing on February 25, 2010. On February 18, 2010, DHS informed present counsel that it was retracting its prior representation, and was no longer prepared to stipulate to a grant of relief.

Given DHS's change of position, Respondent does not oppose a short continuance so that the case can be re-set for a master calendar hearing to take pleadings, file an application for relief, and schedule a merits hearing for a date when witnesses can be present.

Dated:          February 22, 2010                    Respectfully Submitted,
                                                     PUBLIC COUNSEL


                                                     By: _____
                                                     TALIA INLENDER
                                                     *Pro Bono* Counsel for Respondent

Exhibit  9 - Page 57

**PROOF OF SERVICE**


In the Matter of:

Jose Antonio Franco-Gonzalez          A# 077-119-046

I, Talia Inlender, certify that on February 22, 2010, I served a copy of the attached Respondent's Statement of Non-Opposition to DHS's Motion to Continue on Michelle Myers, Esq., Department of Homeland Security, ICE Office of Chief Counsel, by email to: Michelle.P.Myers@dhs.gov.

Ms. Myers represented that DHS would accept service by email in lieu of mail.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Los Angeles, California on February 22, 2010.


By: _____
        Talia Inlender

Exhibit  9 - Page 58

# EXHIBIT
# 10

IN SERVICE TO PEOPLE WITH DEVELOPMENTAL DISABILITES



**REGIONAL CENTER
OF ORANGE COUNTY**

March 2, 2010

VIA FACSIMILE AND FIRST-CLASS MAIL
1-213-385-9089

Ms. Talia Inlender, Esq.
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005

Re:     Jose Antonio Franco Gonzalez

Dear Ms. Inlender:

At your request, the Regional Center of Orange County (RCOC) initiated a review of Mr. Gonzalez's case, which was inactivated effective 9/30/04, for current eligibility.

RCOC has determined that, should Mr. Gonzalez request to have his case reactivated, he would continue to be eligible for regional center services. Please note that regional center services are voluntary; a case can be inactivated at a consumer's request at any time. Please also note that the case managing regional center is determined by the physical county of residence of the consumer.

Should Mr. Gonzalez wish to reactivate his case, please have him contact RCOC at 714-796-5284.

Sincerely,

Leslie Walker
Manager, Risk/Information Services

Cc:     Executive Office
Dr. Janis B. White
Dr. Mary K. Parpal
Danny Escobedo

---

**Mailing Address:** P.O. Box 22010, Santa Ana, CA 92702-2010 • Tel 714/ 796-5100 (24 Hours) • Toll Free (800) 244-3177• www.rcocdd.com

| **Corporate Offices** | **East/Central Area Office** | **North Area Office** | **South Area Office** | **West Area Office** |
|---|---|---|---|---|
| Tel 714/ 796-5100 | Santa Ana | Orange | Irvine | Westminster |
| Fax 714/ 541-3021 | 714/ 796-5100 | 714/ 796-3700 | 714/ 796-4060 | 714/ 796-2900 |
| | TTY 714/ 667-6021 | TTY 714/ 282-7494 | TTY 949/ 585-9325 | TTY 714/ 889-5789 |
| | Fax 714/ 973-0336 | Fax 714/ 282-7910 | Fax 949/ 585-9366 | Fax 714/ 799-6485 |

Exhibit 10 - Page 59

# EXHIBIT
# 11

1   PAUL B. BEACH, State Bar No. 166265
     pbeach@lbaclaw.com
2   AARON M. FONTANA, State Bar No. 249540
     afontana@lbaclaw.com
3   LAWRENCE BEACH ALLEN & CHOI, PC
     100 West Broadway, Suite 1200
4   Glendale, California 91210-1219
     Telephone No. (818) 545-1925
5   Facsimile No. (818) 545-1937

6   Attorneys for Respondents
     SHERIFF LEE BACA and DENNIS BURNS
7

8               UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11   JASPREET SINGH BAINS                )   Case No. CV 09-04342 TJH (PJW)
      A# 95 454 375,                       )
12                                         )   Honorable Patrick J. Walsh
                 Petitioner Pro Se,         )
13                                         )   RESPONDENT'S NOTICE OF
            vs.                            )   MOTION AND MOTION TO
14                                         )   DISMISS PETITIONER'S
      Eric HOLDER, ATTORNEY                 )   PETITION FOR WRIT OF
15   GENERAL; Janet NAPOLITANO,            )   HABEAS CORPUS OR, IN THE
      SECRETARY FOR THE                     )   ALTERNATIVE, REQUEST THAT
16   DEPARTMENT OF HOMELAND                )   THIS COURT DIRECT THE REAL
      SECURITY; Michael T. Phillips,        )   PARTIES IN INTEREST TO
17   ACTING U.S. ICE FIELD OFFICE          )   RESPOND TO PETITIONER'S
      DIRECTOR FOR THE LOS                   )   HABEAS CORPUS PETITION;
18   ANGELES FIELD OFFICE; and Lee         )   MEMORANDUM OF POINTS AND
      BACA, SHERIFF OF LOS ANGELES          )   AUTHORITIES AND
19   COUNTY; and Dennis BURNS,             )   DECLARATIONS OF ROD
      CHIEF OF CUSTODY OPERATIONS           )   PENNER AND AARON M.
20   DIVISION, LOS ANGELES                  )   FONTANA IN SUPPORT
      SHERIFF'S DEPARTMENT,                 )   THEREOF
21                                         )
                 Respondents.               )   Date:   September 3, 2009
22                                         )   Time:   11:00 a.m.
                                           )   Courtroom:  827A
23                                         )

24   _____

25   TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR

26   ATTORNEYS OF RECORD:

27          PLEASE TAKE NOTICE that on September 3, 2009, at 11:00 a.m., or as

28   soon thereafter as counsel may be heard, in Courtroom 827A of the above-

                                    1

Bains, Jaspreet Singh\Motion to Dismiss

Exhibit  11 - Page 59

1   referenced Court, located at 312 North Spring Street, Los Angeles, California

2   90012-4793, Sheriff LEE BACA and DENNIS BURNS will move this Court for

3   dismissal of Petitioner JASPREET SINGH BAIN'S Petition for Writ of Habeas

4   Corpus by a Person in Federal Custody under 28 U.S.C. § 2241, upon the following

5   grounds:

6       1.    Sheriff Lee Baca and Dennis Burns are not proper respondents in this

7             matter; and

8       2.    In any case, named Respondents, Sheriff Lee Baca and Dennis Burns,

9             are not real parties in interest in this matter.

10  This Motion will be based upon this Notice, the attached Memorandum of

11  Points and Authorities, the Declarations of Rod Penner and Aaron M. Fontana, and

12  upon such further evidence as may be presented at or before the hearing. Due to

13  Petitioner's status as a party appearing *pro se*, pursuant to Central District of

14  California Local Rule 16-12, this case is exempt from the requirement of Local Rule

15  7-3.

16

17  Dated: August 10, 2009            LAWRENCE BEACH ALLEN & CHOI, PC

18

19

20                           By _____
                                      Aaron M. Fontana
21                                Attorneys for Respondents
22                                SHERIFF LEE BACA and DENNIS BURNS

23

24

25

26

27

28

Bains, Jaspreet Singh\Motion to Dismiss

2

20

Exhibit 11 - Page 60

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Petitioner Jaspreet Singh Bains ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") on June 17, 2009, in this Court. Petitioner, who is a native of India, claims that on June 23, 2008, he was detained by the United States office of Immigration and Customs Enforcement ("ICE") at Mira Loma Detention Center. (Petition, ¶ 12.) Prior to this date, Petitioner claims he was ordered removed to India by an immigration judge in November of 2002 and that his appeal was dismissed in February of 2004. (Petition, ¶ 14.) In his Petition, Petitioner seeks supervised release from Mira Loma Detention Center on the grounds that there is no significant likelihood that ICE will remove Petitioner to India in the reasonably foreseeable future and that removal to a third country is not reasonable. (Petition, ¶ 15.) Petitioner is currently a detainee at Mira Loma Detention Center. (*See* Declaration of Rod Penner (Hereafter "Penner Decl."), ¶ 4.)

Sheriff Lee Baca and Dennis Burns, who are County of Los Angeles employees overseeing Mira Loma Detention Facility, should not be required to respond to Petitioner's Petition because they are not the appropriate respondents here. The appropriate respondents here are ICE representatives who are in control of Peititioner's detainment. Moreover, the real parties in interest here are the federal government, ICE and Petitioner, who has been detained at the behest of ICE. As such, this Court should dismiss the Petition to the extent that the Petitioner urges Sheriff Baca or Dennis Burns to defend the real parties in interest in this matter. In the alternative, Sheriff Baca and Dennis Burns respectfully request that this Court direct the real parties in interest to respond to Petitioner's Petition as appropriate. For these reasons, Respondents should be dismissed or, in the alternative, not required to file an answer to Petitioner's Petition.

//

//

Bains, Jaspreet\Motion to Dismiss

1

Exhibit 11 - Page 61

II.   **SHERIFF BACA AND DENNIS BURNS ARE NOT THE PROPER RESPONDENTS IN THIS MATTER.**

Even though Petitioner is detained at Mira Loma Detention Center, of which Sheriff Baca and Dennis Burns are the custodians, these individuals are not the proper respondents here. Because immigration detainees at Mira Loma are overseen by ICE, the proper respondent is a representative or representatives of ICE, not County of Los Angeles employees. While in general the custodian or warden of a jail are the proper respondents, here the proper respondent is the ICE district director because ICE has control of Petitioner's day-to-day operations. *See Henderson v. INS*, 157 F.3d 106, 122-23 (2d. Cir. 1998) (holding that case law and attorney practice suggests that the district director of the federal organization overseeing the deportation proceedings is generally the custodian); *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003) (a detained alien should generally name as a respondent the person exercising daily control over his affairs); *see, also, Cabarle v. de More*, 2000 WL 1585265, *2 (N.D. Cal. 2000) (holding that the proper custodian is the director of the federal agency in the locale where the petitioner is held); *Santiago v. I.N.S.*, 134 F.Supp.2d 1102, 1104 (N.C. Cal. 2001) (the proper respondent in an immigration case is the district director for the district in which the petitioner is held); *Zabadi v. Chertoff*, 2005 WL 1514122, *3 (N.D. Cal. 2005) (noting that the district director of ICE "has full authority to direct the local warden to release" the petitioner).

In *Parlak v. Baker*, 374 F.Supp.2d 551, 556 (E.D. Mich. 2005), a case with nearly identical facts to the case at hand, the court held that the local director of ICE was the custodian, and thus the proper respondent, rather than the warden of the county jail in which the alien was detained pursuant to contract between ICE and the local facility. *Id.* The *Parlak* court held: "We conclude that although the warden of each detention facility technically has day-to-day control over alien detainees, the

2

Bains, Jaspreet\Motion to Dismiss

Exhibit 11 - Page 62

1   [ICE] District Director for the district where a detention facility is located 'has

2   power over' the alien habeas corpus petition." *Id.*

3        Here, while Petitioner was housed in a Los Angeles County jail, of which

4   Sheriff Baca and Dennis Burns are custodians, Petitioner was only a detainee of the

5   Mira Loma facility, which is under contract with ICE to house Petitioner and others

6   like him. (Penner Decl., ¶ 3.)  Under the contract, the Mira Loma Detention Center

7   houses illegal immigrants until they are deported.  (*Id.*)  Moreover, the individuals

8   housed pursuant to federal immigration law are identified as federal detainees as

9   opposed to County of Los Angeles inmates. (*Id.*)  Accordingly, ICE personnel

10  assigned to Mira Loma Detention Facility provide all transporting, releasing,

11  tracking and deporting of all immigration detainees assigned at Mira Loma.  (Penner

12  Decl., ¶ 3.)  Moreover, all of the detainees held by ICE in Mira Loma are tried under

13  federal immigration law.  (*Id.*)  Accordingly, all immigration detainees are detained

14  at or released from Mira Loma Detention Center at the behest of the federal

15  government and, thus, they are considered to be in federal custody.  (*Id.*)  Said

16  another way, the federal government in the form of the ICE district director, and

17  neither Sheriff Baca nor Dennis Burns, has power over Petitioner.  Accordingly

18  neither Sheriff Baca nor Dennis Burns could even be proper respondents here.

19  Sheriff Baca and Dennis Burns thus respectfully request dismissal from this matter.

20  III.   **IN ANY CASE, SHERIFF BACA AND DENNIS BURNS ARE NOT**

21        **REAL PARTIES IN INTEREST AND THUS SHOULD NOT BE**

22        **REQUIRED TO ANSWER PETITIONER'S PETITION.**

23        Moreover, even assuming, *arguendo*, that Sheriff Baca and Dennis Burns

24  were properly named as respondents, they are not real parties in interest in this

25  matter.  Accordingly they should be dismissed to the extent the Petitioner urges

26  them to substantively respond to the Petition.  In the alternative, Sheriff Baca and

27  Dennis Burns request that this Court direct the real parties in interest to respond to

28  Petitioner's Petition.

3

Bains, Jaspreet\Motion to Dismiss

23

Exhibit  11 - Page 63

1       Real parties in interest are those persons or entities possessing the right or
2   interest sought to be enforced through the litigation. *Karras v. Teleydyne Industries,*
3   *Inc.*, 191 F.Supp.2d 1162 (S.D. Cal. 2002). Real parties in interest are expected to
4   litigate their own matters. *Coalition of Clergy v. Bush*, 189 F.Supp.2d 1036, 1040-
5   41 (C.D. Cal. 2002); *see also, Wilson v. U.S. Dist. Court for the Eastern Dist. of*
6   *California*, 103 F.3d 828 (9th Cir. 1996) (in which the real parties submitted briefs
7   and there was no appearance as to the named respondent); *U-Haul Int'l, Inc. v.*
8   *Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986) (the real party in interest is the
9   person who has the right to sue under substantive law, rather than others who may
10  merely be interested in or benefit from the litigation). Clearly, since he has filed the
11  Petition, Petitioner is a real party in interest here. Also, since Petitioner is protesting
12  his continued detainment under the federal immigration laws, the other real parties
13  in interest are the following named Respondents: (1) Attorney General Eric Holder;
14  (2) Secretary for the Department of Homeland Security, Janet Napolitano; and (3)
15  Acting United States ICE Field Office Director for the Los Angeles Field Office,
16  Michael T. Phillips. This is because it is these parties who have sought to enforce or
17  will seek to enforce Petitioner's detainment and deportation hearings and
18  deportation from the United States. Indeed, while Petitioner requested to be
19  released from jail by Sheriff Baca and Dennis Burns, it is only by virtue of the
20  federal parties that Petitioner is in jail in the first place. Said another way, Petitioner
21  would not actually seek his redress from Sheriff Baca or Dennis Burns. Rather,
22  Petitioner would have to petition the above-named parties under federal law in order
23  to receive the redress he seeks, i.e. release from jail.
24      It should be noted that the Attorney General, the Secretary for the Department
25  of Homeland Security and the Acting United States ICE Field Office Director for
26  the Los Angeles Field Office are employees of the United States of America. As
27  such, these parties are represented by federal counsel. Sheriff Baca and Dennis
28  Burns, on the other hand, are contracted by the County of Los Angeles, not the

4

Exhibit 11 - Page 64

1   federal government.  Cal. Gov't Code § 53069.8; and *Streit v. County of Los*

2   *Angeles*, 236 F.3d 552, 562 (9th Cir. 2001).  Sheriff Baca and Dennis Burns are not

3   represented by federal employees, but by the County Counsel for the County of Los

4   Angeles and Lawrence Beach Allen & Choi, PC.  (*See* Declaration of Aaron M.

5   Fontana, (hereafter "Fontana Decl."), ¶ 2.)  Thus, in addition to the fact that Sheriff

6   Baca and Dennis Burns have nothing to do with the decision to actually incarcerate

7   Petitioner save housing Petitioner, neither Sheriff Baca, Dennis Burns or their

8   counsel are in the position to defend Petitioner's incarceration as a result of

9   immigration proceedings against him.  At most, Sheriff Baca and Dennis Burns are

10   only in a position to continue to detain Petitioner should this Court find that

11   Petitioner is rightly incarcerated, or release Petitioner should this Court find that

12   Petitioner is wrongfully incarcerated.

13       Sheriff Baca and Dennis Burns simply are not privy to the facts underlying

14   the immigration proceedings as to Petitioner and thus not in a position to respond to

15   the Petition.  Petitioner and the above-mentioned federal employees, meanwhile,

16   have such information, and, indeed, it appears that the counsel for these parties will

17   respond to this matter.  (Fontana Decl., ¶ 2.)  Accordingly, to the extent Petitioner

18   asserts Sheriff Baca and Dennis Burns should actually put forth a responsive brief as

19   to Petitioner's Petition, this matter should be dismissed.  Alternatively, Sheriff Baca

20   and Dennis Burns respectfully request that this Court order the real parties in

21   interest to file a response to Petitioner's Petition.

22   IV.   CONCLUSION.

23       As discussed above, Sheriff Lee Baca and Dennis Burns should not be

24   required to respond to Petitioner's Petition because they are not the appropriate

25   respondents here.  Moreover, the real parties in interest here are the federal

26   government, ICE and Petitioner, who is detained at the behest of ICE.  As such, this

27   Court should dismiss the Petition to the extent that the Petitioner urges Sheriff Baca

28   or Dennis Burns to defend the real parties in interest in this matter.  In the

5

Bains, Jaspreet\Motion to Dismiss

Exhibit  11 - Page 65

1    alternative, Sheriff Baca and Dennis Burns respectfully request that this Court direct

2    the real parties in interest to respond to Petitioner's Petition as appropriate.  For

3    these reasons, Respondents should be dismissed or, in the alternative, not required to

4    file an answer to Petitioner's Petition.

5

6

7    Dated:  August 10, 2009                    LAWRENCE BEACH ALLEN & CHOI, PC

8

9

10   By _____

11        Aaron M. Fontana
      Attorneys for Respondents
12   SHERIFF LEE BACA and DENNIS BURNS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit  11 - Page 66

<u>**DECLARATION OF AARON M. FONTANA**</u>

I, Aaron M. Fontana, declare as follows:

1.       I am an attorney at law duly licensed to practice before this Court and all the courts of the State of California. I am an associate with the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Sheriff Lee Baca ("Sheriff Baca") and Dennis Burns in the above-referenced matter. I have personal knowledge of the facts stated herein except those stated upon information and belief and as to those matters I believe them to be true. If called to testify to the matters herein, I could and would competently do so.

2.       Shortly after my firm was retained in this matter by the County Counsel for the County of Los Angeles, we received and reviewed Petitioner Jaspreet Singh Bains' ("Petititioner") Petition for Writ of Habeas Corpus ("Petition"). The Petition appears to name Sheriff Baca and Dennis Burns because Petitioner is incarcerated at Mira Loma Detention Center at the time of the filing and Sheriff Baca and Dennis Burns are the custodians of that jail. As discussed in the Declaration of Captain Rod Penner, however, Petitioner is considered to be in the custody of the federal government. This is because as is clear from the Petition, Petitioner is seeking release from his detainment stemming from his federal immigration proceedings pertaining to the United States office of Immigration and Customs Enforcement ("ICE"). Accordingly, neither Sheriff Baca nor Dennis Burns are in a position to substantively respond to Petitioner's Petition. This is because neither Sheriff Baca nor Dennis Burns were parties to the immigration proceedings that resulted in Petitioner's incarceration.

3.       Subsequent to receipt of this case, counsel for Sheriff Baca and Dennis Burns have been in contact with Jason K. Axe, Assistant United States Attorney, representing the following named Respondents in this matter: (1) Attorney General Eric Holder; (2) Janet Napolitano, Secretary for the Department of Homeland Security; and (3) Michael T. Phillips, Acting ICE Field Office Director. I

7

Bains, Jaspreet\Motion to Dismiss

27

Exhibit 11 - Page 67

1  understand that Mr. Axe is aware of this matter and intends to respond.  Indeed, on
2  July 29, 2009, Mr. Axe filed for an extension of time to answer on behalf of the
3  above-referenced federal Respondents.
4      I declare under penalty of perjury under the laws of the State of California
5  and the United States of America that the foregoing is true and correct.
6      Executed on August 10, 2009, at Glendale, California.

7

8                          _____
9                           Aaron M. Fontana

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bains, Jaspreet\Motion to Dismiss

Exhibit  11 - Page 68

1
2
3        **DECLARATION OF DEPUTY ROD PENNER**
4        I, ROD PENNER, declare as follows:
5        1.      The following is based upon my personal knowledge and if called
6   upon, I could and would testify competently thereto.  I am a captain with the Los
7   Angeles County Sheriff's Department ("LASD" or "Department") and my current
8   position is as Unit Commander for Mira Loma Detention Center.  I have held
9   this particular position since October 16, 2006 and have been employed with
10  the LASD for over 30 years.
11       2.      I am familiar with the policies and procedures of Mira Loma
12  Detention Center, including the policies and procedures related to the housing of
13  potentially illegal immigrants and illegal immigrants pursuant to federal law in
14  Mira Loma Detention Facility.
15       3.      The United States office of Immigration and Customs Enforcement
16  ("ICE"), an investigative arm of the United States Department of Homeland
17  Security, contracts with Mira Loma Detention Facility.  Pursuant to this contract,
18  the Mira Loma Detention Center houses potentially illegal immigrants until their
19  immigration case is decided under federal law.  Also, pursuant to the contract, the
20  Mira Loma Detention Center houses illegal immigrants subsequent to their
21  immigration proceedings and prior to deportation.  The individuals housed
22  pursuant to federal immigration law are identified as federal detainees as opposed
23  to County of Los Angeles inmates.  Accordingly, ICE personnel assigned to Mira
24  Loma Detention Facility provide all transporting, releasing, tracking and
25  deporting of all immigration detainees assigned at Mira Loma.  Moreover, all of
26  the detainees held by ICE in Mira Loma are tried under federal immigration law.
27  Accordingly, all immigration detainees are detained at or released from Mira
28

DECLARATION OF CAPTAIN ROD PENNER                                    9

Exhibit  11 - Page 69

1   Loma Detention Center at the behest of the federal government and, thus, they are

2   considered to be in federal custody.

3         4.    On or around August 6, 2009, I conducted an inquiry into the status of

4   Petitioner Jaspreet Singh Bains ("Petitioner"). I ascertained that Petitioner is

5   currently in custody of ICE as a Mira Loma detainee. This information can be

6   verified by ICE Deportation Officer, James R. Ramos, Badge Number DO4070,

7   who is, among other things, responsible for maintaining the docket series of ICE

8   detainees at Mira Loma. Officer Ramos can be reached telephonically at (661)

9   940-3555, extension 511.

10       I declare under penalty of perjury under the laws of the United States of

11   America and the State of California that the foregoing is true and correct.

12       Executed August 6, 2009, in Los Angeles, California.

13

14

15                                   Rod Penner

16

17

18

19

20

21

22

23

24

25

26

27

28

10

30

Exhibit 11 - Page 70

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4      I, Brooke Moyer, am employed in the aforesaid County, State of California; I
am over the age of 18 years and not a party to the within action; my business

5      address is 100 West Broadway, Suite 1200, Glendale, CA 91210.

6

7      On August 10, 2009, I served the foregoing **RESPONDENT'S NOTICE OF**
**MOTION AND MOTION TO DISMISS PETITIONER'S PETITION FOR**

8      **WRIT OF HABEAS CORPUS OR, IN THE ALTERNATIVE, REQUEST**
**THAT THIS COURT DIRECT THE REAL PARTIES IN INTEREST TO**

9      **RESPOND TO PETITIONER'S HABEAS CORPUS PETITION;**
**MEMORANDUM OF POINTS AND AUTHORITIES AND**

10     **DECLARATIONS OF ROD PENNER AND AARON M. FONTANA IN**

11     **SUPPORT THEREOF** on the interested parties in this action by placing a true
copy thereof, enclosed in a sealed envelope, addressed as follows:

12

13

14                 ## SEE ATTACHED SERVICE LIST

15     BY MAIL:  I am "readily familiar" with the firm's practice of collection and

16     processing correspondence for mailing.  Under that practice, it would be deposited
with the U.S. Postal Service on the same day with postage thereon fully prepaid at

17     Glendale, California, in the ordinary course of business.  I am aware that on motion

18     of the party service, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20     I declare under penalty of perjury that the foregoing is true and correct, and

21     that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

22

23     Executed on August 10, 2009, at Glendale, California.

24

25                                                    _____
                                                       Declarant

26

27

28

Bains, Jaspreet\Motion to Dismiss                                          11

Exhibit  11 - Page 71

1

**SERVICE LIST**

2

3   JASPREET SINGH BAINS                    Petitioner Pro Se
    A# 95 454 375,
4   Mira Loma Detention Facility
5   45100 60th West
    Lancaster, CA  93536
6

7   Jason K. Axe                            Attorneys for Respondents
    Assistant United States Attorney        Eric Holder, Janet Napolitano and
8   Civil Division                          Michael T. Phillips
9   300 North Los Angeles Street, # 7516
    Los Angeles, CA 90012
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

32

Exhibit  11 - Page 72



Office of Detention and Removal Operations
Los Angeles Field Office

U.S. Department of Homeland Security
300 N. Los Angeles, Street
Los Angeles, CA, 90012

## U.S. Immigration and Customs Enforcement

A95 454 375

BAINS, Jaspreet Singh
c/o US ICE Mira Loma Facility
45100 N. 60th Street West
Lancaster, CA 93536

### Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and of your personal interview and consideration of any information you submitted to ICE's reviewing officials.

A review of your criminal history indicates that on August 28, 2002, you were convicted in the State of Michigan, Ninth Judicial Circuit, Kalamazoo County for the offense of Criminal Sexual Conduct-Fourth Degree (Force or Coercion), in violation of Section 750.520E1A of MCL Code. For that offense, you were sentenced to 30 days in jail and 12 months probation.

On October 15, 2007, you were convicted in the United District Court, Southern District of New York for the offense of Conspiracy to Distribute and Possess With Intent to Distribute Ecstasy, in violation of Title 21 of the United States Code, Section 864. For that offense, you were sentenced to 24 months in Federal Prison.

A review of your criminal history leads me to the conclusion that you would be a danger to the community if released from ICE custody. Based on the above convictions and your pending travel document, you are to remain in ICE custody pending your removal from the United States.

You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

33

Exhibit  11 - Page 73

Page 2

Decision of Post Order Custody Review – Detain
A95 454 375, BAINS, Jaspreet Singh

If you have not been released or removed from the United States by November 7, 2009, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU), 801 I St. NW, Washington, DC 20536. HQPDU will make a final determination regarding your custody.

George H. Lund, III
Field Office Director

Date 8/6/9

34

Exhibit 11 - Page 74

FILED

2010 MAR 26  AM 10: 17

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JOSE ANTONIO FRANCO-GONZALEZ

PETITIONER(S)

V.

JANET NAPOLITANO, ETC., ET AL.

RESPONDENT(S)

CASE NUMBER

**CV10- 2211 DMG (DTB)**

**NOTICE OF REFERENCE TO A
UNITED STATES MAGISTRATE JUDGE
(Petition for Writ of Habeas Corpus / Motion
for Extension of Time to File Habeas Corpus
Petition)**

Pursuant to General Order 08-05, the within action has been assigned to the calendar of the Honorable Dolly Gee, U.S. District Judge.  Pursuant to General Order 05-07, the within action is referred to U.S. Magistrate Judge David T. Bristow, who is authorized to consider preliminary matters and conduct all further hearings as may be appropriate or necessary.  Thereafter, unless the Magistrate Judge determines that an evidentiary hearing is required, the Magistrate Judge shall prepare a report and recommendation and file it with the Clerk of the Court which may include proposed findings of fact and conclusions of law where necessary or appropriate, and may include a proposed written order or judgment, which shall be mailed to the parties for objections.

Pleadings, motions for extension of time and all other matters to be called to the Magistrate Judge's attention shall be formally submitted through the Clerk of the Court.

The Court must be notified within fifteen (15) days of any address change.  If mail directed by the clerk to your address of record is returned undelivered by the Post Office, and if the Court and opposing counsel are not notified in writing within fifteen (15) days thereafter of your current address, the Court may dismiss the petition with or without prejudice for want of prosecution.

Clerk, U.S. District Court

March 26, 2010

Date

By   AGRAGERA

Deputy Clerk

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JOSE FRANCO-GONZALEZ | see attached |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| see attached | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No      ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 2241, Habeas Corpus challenge to prolonged and indefinite detention

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☑ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

FOR OFFICE USE ONLY:     Case Number: **CV10-02211**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                      ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | San Diego |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _____3/25/10_____

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## ATTACHMENT TO CIVIL COVER SHEET

**DEFENDANTS**
JANET NAPOLITANO, Secretary of Homeland Security; ERIC HOLDER,
United States Attorney General; JOHN T. MORTON, Assistant Secretary,
Immigration and Customs Enforcement (ICE); TREY LUND, Field Office
Director, ICE, Los Angeles Field Office

**ATTORNEYS FOR PETITIONER**
AHILAN T. ARULANANTHAM (SBN 237841)
Email:  aarulanantham@aclu-sc.org
JENNIFER L. STARK (SBN 267062)*
Email:  jstark@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-5211
Fax: (213) 417-2211

*pending admission to this Court

JUDY LONDON (SBN 149431)
Email: jlondon@publiccounsel.org
TALIA INLENDER (SBN 253796)
Email: tinlender@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
Phone: (213) 385-2977
Fax: (213) 385-9089