TONY WEST
United States Department of Justice
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director, District Court Section
SAMUEL P. GO
Senior Litigation Counsel, District Court Section
NEELAM IHSANULLAH
Trial Attorney, District Court Section
Office of Immigration Litigation
     P.O. Box 868, Ben Franklin Station
     Washington, DC 20044
     Telephone: (202) 353-9923/(202) 532-4269
     Facsimile: (202) 616-8962
     E-mail: Samuel.Go@usdoj.gov
     Neelam.Ihsanullah@usdoj.gov

Attorneys for Defendants-Respondents

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE FRANCO-GONZALEZ, et al., | NO. CV 10-2211-DMG(DTB) |
| Plaintiffs-Petitioners, | DEFENDANTS' OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION |
| v. | [Filed contemporaneously with Defendants' Request for Judicial Notice & Accompanying Exhibits] |
| JANET NAPOLITANO, et al., | |
| Defendants-Respondents. | Judge: Hon. Dolly M. Gee |
| | Hearing Date: Dec. 8, 2010 |
| | Hearing Time: 2:00 p.m. |
| | Location: Courtroom 7 |

# TABLE OF CONTENTS

I.    INTRODUCTION. ........................................................................... 1

II.   FACTS AND COURSE OF PROCEEDING. ............................................... 1

     A.    PLAINTIFF MARTINEZ. ....................................................... 2

     B.    PLAINTIFF KHUKHRYANSKIY. ........................................... 6

III.  ARGUMENT. ................................................................................. 9

     A.    INJUNCTIVE RELIEF STANDARD. ......................................... 9

     B.    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION REQUIRING THE APPOINTMENT OF COUNSEL. ............ 10

          1.    The Safeguards Which Protect Mentally Incompetent Aliens in Removal Proceedings Are Constitutionally Adequate. .......................................................... 10

          2.    Plaintiffs' Motion for a Preliminary Injunction is Premature Because the BIA Has Yet to Adjudicate the Issue of Representation ................................. 15

          3.    There Is No Constitutional Right to Appointed Counsel for Mentally Ill Individuals in Removal Proceedings.... 18

               a.    The Right to a Full and Fair Hearing in Removal Proceedings Does not Encompass a Right to Appointed Counsel for Those Incompetent to Proceed Pro Se. .................................... 18

               b.    The Interests at Stake in Plaintiffs' Immigration Proceedings Do Not Support Plaintiffs' Claim to Appointed Counsel. ............................... 20

          4.    The Rehabilitation Act Does Not Apply to Mandate the Appointment of Counsel in Removal Proceedings. ...... 24

          5.    A Preliminary Injunction Would Be Contrary to the Public Interest. ................................................. 26

     C.    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION REQUIRING A BOND HEARING. ......................................... 27

          1.    Plaintiffs' Aggravated Felonies Subject Them to Mandatory Detention Under 8 U.S.C. § 1226(c) ......... 27

          2.    Plaintiffs' Mandatory Detention Under 8 U.S.C. § 1226(c) is Constitutional. ............................... 29

          3.    Plaintiffs' Detention is Reasonable and Constitutional Under the Circumstances. ............................... 30

i

4.    Plaintiffs Have Failed to Show That They Are Otherwise
Entitled to a Preliminary Injunction Requiring a Custody
Hearing. ......................................................................... 35

a.    Plaintiffs Will Not Suffer Irreparable Harm if the
Court Denies Their Motion for a Custody
Hearing. ............................................................. 35

b.    The Balance of Harm and Public Interest Weigh
Against Issuing a Preliminary Injunction. ........... 35

VI.    CONCLUSION. .......................................................................... 36

CERTIFICATE OF SERVICE

ii

1

## TABLE OF AUTHORITIES

2

### CASES

3

Allen v. Calderon,
    408 F.3d 1150 (9th Cir. 2005). ...................................................... 12

4

Alli v. Decker,
    644 F. Supp. 2d 535 (M.D. Pa. 2009). ........................................ 31, 32, 33, 34

5

6

Am. Trucking Ass'n, Inc. v. City of Los Angeles,
    559 F.3d 1046 (9th Cir. 2009). ...................................................... 9

7

8

Ardestani v. INS,
    502 U.S. 129 (1991). ...................................................................... 25

9

Argersinger v. Hamlin,
    407 U.S. 25 (1972). .......................................................... 21, 22, 23

10

11

Brue v. Gonzales,
    464 F.3d 1227 (10th Cir. 2006). .................................................. 11

12

Bulova Watch Co. v. United States,
    365 U.S. 753 (1961). ...................................................................... 26

13

14

Burgos-Abril v. INS,
    58 F.3d 475 (9th Cir. 1995). ........................................................ 19

15

16

Carlson v. Landon,
    342 U.S. 524 (1952). ...................................................................... 23

17

Casas-Castrillon v. DHS,
    535 F.3d 942 (9th Cir. 2008). ...................................................... 31

18

Colmenar v. INS,
    210 F.3d 967 (9th Cir. 2000). ...................................................... 19

19

20

De Leon-Lopez v. INS,
    1999 WL 993675 (9th Cir. Nov. 1, 1999)...................................... 20

21

Demore v. Kim,
    538 U.S. 510 (2003)................................................................ passim

22

23

Earth Island Inst. v. U.S. Forest Serv.,
    442 F.3d 1147 (9th Cir. 2006). .................................................... 9

Flores-Powell v. Chadbourne,
    677 F. Supp. 2d 455 (D. Mass. 2010). ........................................ 32

24

25

Freecycle Network, Inc. v. Oey,
    505 F.3d 898 (9th Cir. 2007). ...................................................... 9

26

27

Gideon v. Wainwright,
    372 U.S. 335 (1963)....................................................................... 21

28

iii

*Global Horizons, Inc. v. U.S. Dep't of Labor*,
    510 F.3d 1054 (9th Cir. 2007). ................................................................... 9, 10

*Heckler v. Lopez*,
    463 U.S. 1328 (1983). ................................................................................. 10

*Hernandez Ruiz v. Mukasey*,
    2007 WL 4553361 (9th Cir. Dec. 27, 2007). .............................................. 13

*Hong v. Mukasey*,
    518 F.3d 1030 (9th Cir. 2008). ................................................................... 20

*INS v. Lopez-Mendoza*,
    468 U.S. at 1038...................................................................................... 20

*Lassiter v. Dept. of Soc. Servs.*,
    452 U.S. 18 (1981)...................................................................... 21, 22, 23, 24

*Ly v. Hanson*,
    351 F.3d 263 (6th Cir. 2003). ................................................... 31, 32, 33

*Marcello v. Bonds*,
    349 U.S. 757 (1955)...................................................................................... 25

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009). ......................................................................... 9

*Martinez v. Gonzales*,
    504 F. Supp. 2d 887 (C.D. Cal. 2007) (quoting *Ly*, 351 F.3d at 272). ............. 32

*Massey v. Moore*,
    348 U.S. 105 (1954)...................................................................................... 19

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)...................................................................... 21, 22, 23

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)....................................................................................... 9

*Mohammed v. Gonzales*,
    400 F.3d 785 (9th Cir. 2005). ....................................................................... 14

*Morales v. Mukasey*,
    2008 U.S. Dist. LEXIS 118007 (D. Az. Feb. 11, 2008). .............................. 31

*Murgia-Melendrez v. INS*,
    407 F.2d 207 (9th Cir. 1969). ....................................................................... 14

*Mustanich v. Gonzales*,
    Case No. 07-1100, 2007 U.S. Dist. LEXIS 71401 (S.D. Cal. Sept. 26, 2007). ............... 33

*Nadarajah v. Gonzales*,
    443 F.3d 1069 (9th Cir. 2006). ............................................................. 31, 33

iv

Nee Hao Wong v. INS,
    550 F.2d 521 (9th Cir. 1977). .................................................. 11, 20

Palmer v. Ashe,
    342 U.S. 134 (1951). ................................................................ 19

Rendon v. Holder,
    588 F.3d 669 (9th Cir. 2009). .................................................... 19

Textile Unlimited v. A. BMH & Co.,
    240 F.3d 781 (9th Cir.  2001). .................................................... 9

Tijani v. Willis,
    430 F.3d 1241 (9th Cir. 2005). ........................................ 27, 31, 33

United States v. Gasca-Kraft,
    522 F.2d 149 (9th Cir. 1975). .............................................. 13, 20

Vitek v. Jones,
    445 U.S. 480 (1980). ................................................................ 22

Wade v. Mayo,
    334 U.S. 672 (1948). ................................................................ 19

Winter v. Natural Res. Def. Council, Inc.,
    555 U.S. 7 (2008). ..................................................................... 9

Wong Wing v. United States,
    163 U.S. 228 (1896). ................................................................ 23

Zadvydas v. Davis,
    533 U.S. 678 (2001). ........................................................ 29, 33, 34

## STATUTES

8 U.S.C. § 1101(a)(43)(F). ........................................................ 3, 28, 29

8 U.S.C. § 1159(a)(1)(B). ................................................................ 6, 7

8 U.S.C. § 1226(c). .................................................................... passim

8 U.S.C. § 1227(a)(2)(A)(iii). ....................................................... 3, 7, 28

8 U.S.C. § 1229(b)(3). ..................................................................... 25

8 U.S.C. § 1229a(b)(3). ......................................................... 11, 17, 19

8 U.S.C. § 1229a(b)(4)(A). ............................................................... 13

8 U.S.C. § 1229a(a)(3). ..................................................................... 25

8 U.S.C. § 1231(b)(3)(B)(ii). ......................................................... 3, 4, 5

8 U.S.C. § 1252(b) ...................................................................... 25, 26

v

8 U.S.C. § 1362......................................................................................... 13, 19, 26

**ADMINISTRATIVE DECISIONS**

In re Gault,
    387 U.S. 1 (1967)................................................................................. 21, 22

Matter of Magana,
    17 I. & N. Dec. 111 (BIA 1979)............................................................. 12

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 1, 81.................................................................................. 12

**Nicaraguan Adjustment and Central American Relief Act**

Pub. L. 105-100, 8 U.S.C. § 1101 (1997). .................................................. 22

**REGULATIONS**

8 C.F.R. § 103.5a(c)(2)(ii). .......................................................................... 12

8 C.F.R. § 236.1(c)(8)............................................................................... 27

8 C.F.R. § 1003.25(a)............................................................................... 25

8 C.F.R. § 1204.4...................................................................................... 5

8 C.F.R. § 1240.4.............................................................................. passim

8 C.F.R. § 1240.10(c)........................................................................ passim

8 C.F.R. §1241.1(a)................................................................................. 34

# I.  INTRODUCTION

Plaintiffs' motion asking this Court to provide them with appointment of counsel and a bond hearing is premature, meritless and contrary to the public interest. In Plaintiff Martinez's removal proceedings before the immigration court, the Department of Homeland Security (DHS) urged the immigration judge to determine whether a mentally competent individual could speak on behalf of Mr. Martinez, a remedy which would give him the same ability to defend himself as any other alien in immigration proceedings. This representation question in Mr. Martinez's case was certified to the Board of Immigration Appeals (BIA or Board) for review.  So, too, the representation question is before the Board in Mr. Khukhryanskiy's case. Consequently, if the Court lifts its temporary restraining order and the BIA determines the question in both cases as DHS proposed in Mr. Martinez's immigration court hearing, Plaintiffs' preliminary injunction motion becomes entirely meritless.  Thus, contrary to Plaintiffs' assertions, there are adequate procedures in place to safeguard Plaintiffs' rights. No irreparable injury is threatened by allowing the BIA to adjudicate these cases, and there is no constitutional right to appointed counsel for an alien in immigration procedures.

Mr. Martinez is in detention for severely assaulting his stepfather, while Mr. Khukhryanskiy has committed a number of serious crimes. Their aggravated felonies subject them to mandatory detention under 8 U.S.C. § 1226(c). Their continued detention is reasonable, and it is not in the public interest to allow their release.

# II.  FACTS AND COURSE OF PROCEEDING

The facts presented by Plaintiffs in their motion for a preliminary injunction focus primarily on the mental health of Plaintiffs Martinez and Khukhryanskiy and provide an incomplete history of their criminal convictions that justify the Government's decision to detain them.  Plaintiffs' statement of facts also contains an incomplete and inaccurate record of each Plaintiff's immigration history and course of proceedings in immigration court.  Defendants' statement of facts set forth below provides an accurate recitation of the factual background that this Court should

1  consider with respect to Plaintiffs' motion.

2  **A.    PLAINTIFF MARTINEZ**

3       Plaintiff Ever Francisco Martinez-Rivas (Martinez) is a 31-year old citizen and
4  national of El Salvador.  Mr. Martinez first entered the U.S. as a child by crossing the
5  Mexican border and entering without inspection in 1989.  Dkt. # 57-10, at 3.  On July
6  24, 2006, Mr. Martinez obtained lawful permanent resident status pursuant to the
7  Nicaraguan Adjustment and Central American Relief Act, Pub. L. 105-100, 8 U.S.C.
8  § 1101 (1997)  (NACARA).  Id.; Dkt. # 57-7, at 2.

9       Mr. Martinez's status as a green card holder has been placed into jeopardy as a
10  result of his criminal activity.  On May 30, 2008, Mr. Martinez was convicted in the
11  Superior Court of California, County of Riverside, for the offense of willfully and
12  unlawfully using force upon the person of his stepfather, Vicente Charco, and
13  inflicting serious bodily injury, in violation of Section 243(D) of the California Penal
14  Code.  See Request for Judicial Notice Exhibit (Ex.) 1 (Abstract of Judgment); Ex. 2
15  (Felony Complaint).  The felony complaint attempted to impose an enhancement on
16  the basis that Mr. Martinez, with intent to inflict such injury, inflicted great bodily
17  harm upon Mr. Charco, causing him to become comatose due to brain injury or to
18  suffer paralysis of a permanent nature.  Ex. 2. This enhancement was subsequently
19  stricken.  Ex. 1.  Although initially found incompetent to stand trial for the offense,
20  medical treatment eventually restored Mr. Martinez to competence, and the criminal
21  court accepted his guilty plea.  Ex. 3 (Minute Order).  In punishment for this crime,
22  the court sentenced Mr. Martinez to a total of four years' confinement in the custody
23  of the California Department of Corrections.  Id.

24       In the middle of his criminal sentence, the authorities transferred Mr. Martinez
25  from criminal to immigration custody.  Immigration and Customs Enforcement (ICE)
26  served Mr. Martinez with a Notice to Appear (NTA) issued on October 20, 2009,
27  thereby placing him into removal proceedings.  Ex. 4.  The NTA charged Mr.
28  Martinez with violating 8 U.S.C. § 1227(a)(2)(A)(iii), a provision that renders

removable any alien who has been convicted of an aggravated felony, on the basis of his 2008 conviction.[1]  Id.  Mr. Martinez is currently detained at the Otay Mesa Detention Facility in San Diego, California.  Dkt. # 57-13, at 3.

During the pendency of his removal proceedings, Mr. Martinez attended several master calendar hearings before the San Diego Immigration Court.  Mr. Martinez's mother, Maria Elena Felipe, was frequently in attendance at these hearings.  Dkt. # 57-7, at ¶ 9.  At a hearing conducted on June 4, 2010, Ms. Felipe addressed the court directly to point out that she had served as her son's conservator for several years, most recently in 2006.  Id.  At each of these hearings, the immigration judge apprised Mr. Martinez of his right to obtain counsel and recommended that he speak with the attorneys from the American Bar Association Immigration Justice Project.  This is a Legal Orientation Program which provides know-your-rights basic legal trainings, pro bono representation, and assistance in finding pro bono counsel to the detainees housed in the Otay Mesa Detention Facility.  Dkt. # 57-13, at 4.  Despite these suggestions, Mr. Martinez remained unrepresented throughout the entirety of his immigration court proceedings.  Id.  The immigration judge found that, during his master calendar hearings, Mr. Martinez "seemed slow to answer, but responsive to the simple questions posed."  Id.  Noting that Mr. Martinez would be eligible for relief from removal if he demonstrated that he qualified for withholding of removal or withholding or deferral of removal under the Convention Against Torture and could show that his conviction was not a "particularly serious offense" under 8 U.S.C. § 1231(b)(3)(B)(ii), the immigration judge provided Mr. Martinez with a copy of the appropriate form, Form I-589, for pursuing such relief.  Id.  Mr. Martinez filed an application for withholding of

---

[1] The Immigration and Nationality Act (INA) defines "aggravated felony" to include "a crime of violence . . . for which the term of imprisonment [is] at least one year."  See 8 U.S.C. § 1101(a)(43)(F).

3

removal and relief under the Convention Against Torture (CAT) on Form I-589 with the court on May 25, 2010.  Id.  The immigration judge reviewed the form and, finding that it "appeared to be properly, albeit sparsely, completed," set Mr. Martinez's withholding applications for trial on September 16, 2010.  Id. at 5.

Meanwhile, on August 2, 2010, Plaintiffs in the present litigation sought to amend the original complaint filed on March 26, 2010 to add Mr. Martinez and Mr. Khukhryanskiy and additional named plaintiffs.  On August 16, 2010, Mr. Martinez filed a motion for a preliminary injunction to put a halt to his immigration proceedings until the Government appointed counsel to represent him.  In support of this preliminary injunction motion, Plaintiffs provided a psychiatric evaluation to this Court which concluded that Mr. Martinez lacked competency to represent himself at his removal proceedings on the grounds that he suffered from a particularly severe form of schizophrenia that rendered him vulnerable to auditory hallucinations and unable to process and synthesize information.  The Court denied the preliminary injunction motion on August 19, 2010 as premature, because Martinez was not yet a party to the lawsuit.

However, anticipating that Mr. Martinez's "mental competency will continue to be an issue . . . at his upcoming immigration proceedings," the Department of Homeland Security made efforts to apprise the immigration court of Mr. Martinez's claims regarding his lack of competency.  Specifically, on August 31, 2010, DHS submitted Mr. Martinez's psychological evaluation and federal court filings to the immigration judge accompanied by a short memorandum stating, inter alia, that "DHS respectfully suggests, should the Court deem it appropriate and necessary, that the Court take procedural steps to protect Martinez's rights and privileges by inquiring into his claim of mental incompetency before conducting the scheduled merits hearing."  Dkt. # 57-12, at 2.  In this memorandum, DHS also noted, "in the event that Martinez is determined by the Court to be mentally incompetent, this Court has the authority to appoint a custodian, such as Maria Elena Felipe (Martinez's

4

mother and former conservator) to speak on his behalf." Id. at 5.

At the merits hearing on September 16, 2010, however, Mr. Martinez's mother was not in attendance. The immigration judge made several findings in light of the evidence submitted by DHS on August 31. First, the immigration judge found Mr. Martinez to be currently incompetent to proceed with his immigration proceedings pro se on the basis of the psychiatric evaluation. Dkt. # 57-13, at 7-8. Moreover, it was questionable whether he was competent at the time that he received the Notice to Appear placing him in removal proceedings. Id. at 9, 11. While "the Court has no authority to appoint counsel for the Respondent in this situation," the immigration judge noted that "[r]emoval proceedings could proceed with a nonattorney representative, as provided in 8 C.F.R. § 1204.4." Id. at 6, 7. However, the immigration judge stated that these regulations suggest that only a relative, friend or guardian who was served with a copy of the Notice to Appear can appear on behalf of the respondent. Id. at 9. Because Mr. Martinez's mother had not been served with a copy of the Notice to Appear, she could not speak on behalf of her son pursuant to 8 C.F.R. § 1204.4. Id. Moreover, the immigration judge held, even if Mr. Martinez's mother had been served with the Notice to Appear, "the Court cannot compel her to appear on behalf of the Respondent." Id. Concluding that Mr. Martinez could not concede to being removable while unrepresented and mentally incompetent under 8 C.F.R. § 1240.10(c) and that the Notice to Appear had been served improperly upon him for the same reasons, the immigration judge ordered that Mr. Martinez's proceedings be terminated. Id. at 11.

In an unusual move, the immigration judge also certified her decision to the Board "in the event that the Court has erred in interpreting the law regarding pro se incompetent aliens." Id. at 12. DHS disagreed with the immigration judge's opinion and appealed the decision on the basis that the immigration judge failed to correctly implement the safeguards provided for in the regulations. See Dkt. # 57-14, at 6-7. Although the Board requested that Mr. Martinez file his brief by December 8, 2010,

see Dkt. # 69-1, at 2, as a result of this Court's November 24, 2010 Temporary
Restraining Order, Mr. Martinez's briefing schedule has been held in abeyance
pending the outcome of the motion for a preliminary injunction.  Accordingly, the
Board is unable to examine the issues raised by the immigration judge on
certification and by DHS on appeal regarding the proper interpretation of the
regulations on incompetent aliens.

**B.    PLAINTIFF KHUKHRYANSKIY**

Plaintiff Aleksandr Petrovich Khukhryanskiy is a 45-year-old citizen and
national of the Ukraine.  He was admitted to the United States on January 9, 1998 in
refugee status.  Mr. Khukhryanskiy has failed to adjust his status to that of a legal
permanent resident, 8 U.S.C. § 1159(a)(1)(B)), a step that he was required to take as
early as January 9, 1999, pursuant to 8 U.S.C. § 1159(a)(1)(C).

Mr. Khukhryanskiy has a lengthy criminal history in the United States.  On
February 1, 2005, the Multnomah County Circuit Court of the State of Oregon
convicted Mr. Khukhryanskiy for the felony offenses of Attempted Robbery in the
first degree and Attempted Assault in the first degree, and sentenced him to prison
for 80 months.  See Ex. 5 (September 3, 2004 indictment & February 9, 2005
Judgment).  Prior to these convictions, the same court convicted Mr. Khukhryanskiy
for the felony offense of Attempt to Use/Carry a Dangerous Weapon (Knife), and
sentenced him to prison for 20 months.  Ex. 7 (August 23, 2002 indictment &
February 3, 2003 Judgment of Conviction and Sentence).  These convictions
followed several others, including for the misdemeanor offenses of Criminal Driving
and Attempting to Elude Police on January 23, 2001, for which the court sentenced
him to 30 days in jail, Dkt. # 57-1, at 6 (I-213); and Menacing on January 8, 2001,
for which the court sentenced him to 24 months' probation, Ex. 6 (March 29, 2000
Indictment & January 12, 2001 Judgment of Conviction & Sentence).  The victim of
his Menacing offense was Mr. Khukhryanskiy's wife, Yelena V. Khukhryanskaya.
Id.  Mr. Khukhryanskiy also has numerous probation violations and other charges,

including three other charges for attempting to elude the police, three other charges of criminal driving, and three charges of driving under the influence. Dkt. # 57-1, at 6-7.

Because his 2005 conviction for Attempted Robbery constitutes a crime of violence and the sentence was for over a year, Mr. Khukhryanskiy was placed in removal proceedings on the charge that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See Dkt. # 57-1, at 5. As such, ICE initiated removal proceedings against Mr. Khukhryanskiy, and took him into custody on April 15, 2010. Dkt. # 57, at 18. Mr. Khukhryanskiy is currently detained in the Northwest Detention Center in Tacoma, Washington.

On August 25, 2010, an immigration judge held a master calendar hearing in Mr. Khukhryanskiy's case. During this hearing, Mr. Khukhryanskiy, through an interpreter, affirmatively answered the immigration judge's questions regarding whether he understood his various rights, including his right to an attorney and his right to appeal the immigration judge's decision. When asked if he wanted additional time to find an attorney, Mr. Khukhryanskiy refused, explaining that he "just want[ed] to leave this country" – a sentiment he repeated using the same or similar words throughout the hearing. See Dkt. # 57-4, at 6, 7, 8, 9, and 11. A DHS officer, Robert Mason, attended the hearing to assist the immigration judge by answering questions regarding Mr. Khukhryanskiy, if necessary. Contrary to Plaintiffs' assertions, Mr. Mason was not present to serve as Mr. Khukhryanskiy's representative. See Dkt. # 57, at 19-20. The immigration judge posed her questions to Mr. Khukhryanskiy, and Mr. Khukhryanskiy answered all the judge's questions posed to him. Dkt. #57-4.

Although at one point, Mr. Khukhryanskiy responded to the immigration judge's question of whether he understood what was happening at the hearing by saying "I don't understand anything now," id. at 8, this was the only instance when Mr. Khukhryanskiy suggested he failed to understand the nature of the proceeding.

7

The immigration judge elicited testimony regarding his removability as an aggravated felon and established that Mr. Khukhryanskiy's only desire was to return to his home country:

> Judge to Respondent: . . . Sir, are you afraid to return to the Ukraine?
>
> Respondent to Judge: No.
>
> Judge to Respondent: Would you like to choose the Ukraine as the country of deportation?
>
> Respondent to Judge: Yes, I want to be deported to the Ukraine.
>
> Judge to Respondent: Okay.  All right, then I will enter an Order of Removal.  You do not wish to apply for any relief from removal?  You just want to go home?
>
> Respondent to Judge: Yes.

Dkt. # 57-4, at 11.  The immigration judge thus ordered Mr. Khukhryanskiy removed and indicated that he had waived his right to appeal.

Since his final hearing before the immigration judge, Mr. Khukhryanskiy sought to appeal his removal order so that he can remain in the United States.  Mr. Khukhryanskiy obtained assistance with his case in the form of multiple individual orientations from the Northwest Immigrant Rights Project, a Legal Orientation Program (LOP) associated with the Executive Office of Immigration Review (EOIR).  See Declaration ("Dec.") 1 (Declaration by Steven Lang, Coordinator, EOIR Legal Orientation and Pro Bono Program).  An attorney from the LOP also filed a request to participate as amicus before the BIA.  See Ex. 8.  When the Board issued a briefing schedule, granting Mr. Khukhryanskiy until November 12, 2010 to file his appeal brief, Mr. Khukhryanskiy filed pro se an extension of time to file his brief until December 3. Dkt. # 57-6, at 2.  This extension was granted.  See Dec. 2, at ¶B.5 (Declaration of Donna Carr).  As a result of the Temporary Restraining Order, Mr. Khukhryanskiy's briefing schedule is currently held in abeyance pending the decision on the motion for a preliminary injunction.  Accordingly, the Board is

8

1  unable to review the circumstances of Mr. Khukhryanskiy's immigration

2  proceedings to determine if his due process rights were adequately protected in

3  immigration court as a result of his disability.

### III.  ARGUMENT

**A.    INJUNCTIVE RELIEF STANDARD**

6  "[A] preliminary injunction is an extraordinary and drastic remedy, one that

7  should not be granted unless the movant, by a clear showing, carries the burden of

8  persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  Traditionally, "[a]

9  plaintiff seeking a preliminary injunction must establish that he is likely to succeed

10  on the merits, that he is likely to suffer irreparable harm in the absence of

11  preliminary relief, that the balance of equities tips in his favor, and that an injunction

12  is in the public interest." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &

13  Co., 571 F.3d 873, 877 (9th Cir. 2009).  See also Am. Trucking Ass'n, Inc. v. City

14  of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural

15  Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008)).  Alternatively, a court may issue

16  a preliminary injunction if the moving party demonstrates either a combination of

17  probable success on the merits and the possibility of irreparable injury or that

18  serious questions are raised and the balance of hardships tips sharply in his favor.

19  Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1057 (9th Cir. 2007);

20  see also Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147, 1158 (9th Cir. 2006).

21  "[U]nder either criteria, where a plaintiff fails to even raise serious questions about

22  its likelihood of success, an injunction may not issue." Freecycle Network, Inc. v.

23  Oey, 505 F.3d 898, 902 (9th Cir. 2007); see also Global Horizons, 510 F.3d at

24  1058.

25  "A preliminary injunction is not a preliminary adjudication on the merits, but

26  a device for preserving the status quo and preventing the irreparable loss of rights

27  before judgment." Textile Unlimited v. A. BMH & Co., 240 F.3d 781, 786 (9th Cir.

28  2001).  In other words, courts must be particularly cautious in disrupting the status

1  quo where injunctive relief would interfere in administrative procedure.  <u>See</u>

2  <u>Heckler v. Lopez</u>, 463 U.S. 1328, 1333 (1983) (stating general principle that a

3  district court's injunctive power should not be a basis for "propel[ling] the court into

4  the domain which Congress has set aside exclusively for the administrative agency")

5  (quoting <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947)).

6       After a court determines there are no serious questions going to the merits, the

7  court need not assess "the public interest element."  <u>Global Horizons</u>, 510 F.3d at

8  1058.  Rather, a court's "analysis may end, and no further findings are necessary."

9  <u>Id.</u>

10  **B.**   **PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION**

11        **REQUIRING THE APPOINTMENT OF COUNSEL**

12       Because Plaintiffs cannot establish that they will succeed on the merits of

13  their appointment of counsel claim, their preliminary injunction motion must be

14  denied.  Plaintiffs' motion for counsel ignores the fact that ample procedural

15  safeguards exist to protect the rights of mentally ill individuals who proceed <u>pro se</u>

16  in removal proceedings.  Additionally, Plaintiffs' request for injunctive relief is

17  premature, as the Board of Immigration Appeals has yet to consider the merits of

18  Plaintiffs' cases, both of which implicate the procedural protections owed to them as

19  individuals with alleged mental deficiencies.  Furthermore, the appointment of

20  counsel is not constitutionally required for mentally incompetent aliens in the

21  removal context.

22       **1.**   **The Safeguards Which Protect Mentally Incompetent Aliens in**

23         **Removal Proceedings Are Constitutionally Adequate**

24       Plaintiffs' request for appointment of counsel is premised on an assumption

25  that Defendants' current regulations and procedures are constitutionally inadequate

26  to protect the rights and privileges of mentally ill individuals in removal proceedings

27  <u>See</u>, <u>e.g.</u>, Expedited Relief Plaintiffs' <u>Ex Parte</u> Application for Expedited Discovery,

28  Dkt. # 60 at 8 ("At the heart of this suit are the constitutionally-deficient procedures

implemented by the Government to protect the interests of detainees incompetent to represent themselves.").  Due to these alleged deficient procedures, Plaintiffs contend, appointed counsel must be provided to level the playing field for mentally ill respondents and ensure that their rights are safeguarded in removal proceedings. But Plaintiffs are incorrect in alleging that DHS and the Executive Office for Immigration Review (EOIR) provide little to no recognition of the vulnerabilities of the mentally ill.  In fact, both DHS and EOIR, through regulation and guidance, recognize the special circumstances presented by mentally ill respondents, and have created safeguards to protect them.

Although it is well-established that removal proceedings may go forward against mentally incompetent aliens, see Nee Hao Wong v. INS, 550 F.2d 521, 523 (9th Cir. 1977), "removal proceedings against mentally incompetent aliens . . . are not without constraint."  Brue v. Gonzales, 464 F.3d 1227, 1233 (10th Cir. 2006). The Immigration and Nationality Act (INA) specifically provides that,"If it is impracticable by reason of an aliens' mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien."  8 U.S.C. § 1229a(b)(3).  Under this statutory directive, the Attorney General has promulgated important safeguards for mentally ill aliens who find themselves before the immigration courts.

First, immigration judges cannot accept concessions of removability from unassisted mentally ill aliens pursuant to 8 C.F.R. § 1240.10(c).  This regulation states in part:

The immigration judge shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient.  When, pursuant to this paragraph, the immigration judge does not accept an

11

admission of removability, he or she shall direct a hearing on the issues.

Second, the regulations provide special service procedures where the alien is

mentally incompetent.  In the case of an unconfined alien who is mentally

incompetent, the Notice to Appear – the document which serves to initiate removal

proceedings against an alien – must be served "upon the person with whom the

incompetent . . . resides" and "whenever possible . . . the near relative, guardian,

committee, or friend," 8 C.F.R. § 103.5a(c)(2)(ii).  If the mentally incompetent alien

is confined, then service must be made "on the person in charge of the institution or

hospital in which he is confined, such service being deemed service on the confined

person."  8 C.F.R. § 103.5a(c)(2)(i).

Moreover, the immigration regulations also provide that:

> When it is impracticable for the respondent to be present at the hearing
> because of mental incompetency, the attorney, legal representative,
> legal guardian, near relative, or friend who was served with a copy of
> the notice to appear shall be permitted to appear on behalf of the
> respondent.  If such a person cannot reasonably be found or fails or
> refuses to appear, the custodian of the respondent shall be requested to
> appear on behalf of the respondent.

8 C.F.R. § 1240.4.  This regulation, 8 C.F.R. § 1240.4, is similar to Rule 17(c)(2) of

the Federal Rules of Civil Procedure, which provides that "[t]he court must appoint

a guardian ad litem – or issue another appropriate order – to protect a minor or

incompetent person who is unrepresented in an action."  As a result of Rule

17(c)(2), courts may not decide the merits of claims filed on behalf of an

unrepresented minor or incompetent person without appointing a guardian ad litem,

next friend, or other suitable fiduciary.  See, e.g., Allen v. Calderon, 408 F.3d 1150,

1153 (9th Cir. 2005).  Although the Federal Rules do not govern removal

proceedings, see Fed. R. Civ. P. 1, 81; Matter of Magana, 17 I. & N. Dec. 111, 115

(BIA 1979), the similarity between 8 C.F.R. § 1240.4 and Rule 17(c)(2) suggests

12

that immigration judges, like their Article III counterparts, have the authority to
allow a family member, friend, or legal representative to represent or appear on
behalf of an unrepresented incompetent respondent.

The regulations at 8 C.F.R. § 1240.4 do not provide for – or even suggest –
the right to appointment of counsel at Government expense.  Such regulations would
be ultra vires, as the INA specifies that there is no right to counsel in removal
proceedings appointed at Government expense.  The INA contains two different
statutory provisions on the right to counsel in removal proceedings.  8 U.S.C. § 1362
provides:  "In any removal proceedings before an immigration judge and in any
appeal proceedings before the Attorney General from any such removal proceedings,
the person concerned shall have the privilege of being represented (at no expense to
the Government) by such counsel, authorized to practice in such proceedings, as he
shall choose."  Meanwhile, 8 U.S.C. § 1229a(b)(4)(A) states, "the alien shall have
the privilege of being represented, at no expense to the Government, by counsel of
the alien's choosing who is authorized to practice in such proceedings."  These
provisions make clear Congress's intent to guarantee aliens the privilege of
representation by counsel in removal proceedings, but to deny them the right to have
counsel appointed for their defense.  The Ninth Circuit has held that a plain reading
of the regulation at 8 C.F.R. § 1240.4 does not "constitute a mandate" that the
immigration judge appoint counsel where the respondent is mentally incompetent.
See Hernandez Ruiz v. Mukasey, 2007 WL 4553361, at *2 (9th Cir. Dec. 27, 2007).

Despite the fact that the statute and caselaw[2] make clear that there is no duty

---

[2] As a matter of constitutional right, indigent aliens in removal proceedings
lack the right to appointed counsel.  See United States v. Gasca-Kraft, 522 F.2d 149,
152 (9th Cir. 1975) ("courts have uniformly held in this circuit and elsewhere that in
light of the non-criminal nature of both the proceedings and the order which may be
a result, that respondents are not entitled to have counsel appointed at government
expense"); Mohammed v. Gonzales, 400 F.3d 785, 794 (9th Cir. 2005);

1  to appoint counsel for indigent aliens, EOIR has made a number of efforts to assist

2  particularly vulnerable aliens placed in removal proceedings.  Since September

3  2002, EOIR has carried out the LOP, which provides access to basic legal services

4  for aliens in removal proceedings, primarily those detained by ICE.  See Dec. 1, at 1.

5  The LOP program officials coordinate with various non-profit organizations whose

6  representatives meet with detained individuals to discuss with them the immigration

7  court process and forms of relief from removal.  Id. at 1.  EOIR has recently

8  established a pilot LOP program at the Miami Immigration Court to assist non-

9  detained respondents who are unable to find legal assistance and may be mentally

10  incompetent.  Id. at 2.  Additionally, EOIR has also revised the Immigration Judge's

11  Handbook to provide immigration judges with guidance on how to take into account

12  the special needs of mentally ill respondents before the immigration courts.  EOIR,

13  Immigration Judge Benchbook, available at

14  http://www.justice.gov/eoir/vll/benchbook/tools/MHI/index.html.

15      DHS has also developed extensive diagnosis and treatment procedures for

16  mentally ill individuals in its custody.  These procedures are outlined in the

17  declaration attached as "Dec. 3" (Declaration of Dr. Graciela Gonzalez, Chief

18  Psychiatrist, Division of Immigration Health Services).  They include, inter alia,

19  early evaluations regarding mental illness and  ongoing access to "emergent, urgent,

20  or non-emergent . . . mental health care."  Id. at ¶ 4.[3]

21      In the present case, both Mr. Martinez and Mr. Khukhryanskiy were provided

22  a number of procedural safeguards by DHS and EOIR that allowed them to obtain

23

24  ─────────────────

    Murgia-Melendrez v. INS, 407 F.2d 207 (9th Cir. 1969).
25

26      [3] It is important to note that DHS is constrained in its ability to provide the
    preliminary injunctive relief Plaintiffs seek due to its role as Government counsel in
27  removal proceedings.  A fundamental conflict of interest would arise if DHS had
    any role in the appointment of counsel for the aliens.
28

14

due process in their removal proceedings.  For instance, the immigration judge before whom Mr. Martinez appeared actively encouraged him to use the LOP program resources in preparation for his appearance at master calendar hearings. Dkt. # 57-13, at 4.  Both Mr. Martinez and Mr. Khukhryanskiy received LOP services in the form of multiple individual orientations.  <u>See</u> Dec. 1, at 2.  Mr. Khukhryanskiy received assistance from the LOP in filing his notice of appeal as well as an extension of his briefing schedule pro se, and an attorney from the LOP has sought to file an amicus in his case.  Dkt. # 57, at 20.

In adjudicating Plaintiffs' appeals, the Board is governed by immigration regulations, which take into account the special needs of mentally incompetent aliens.  These regulations safeguard the rights of the mentally ill by, among other things, ensuring that unrepresented mentally incompetent individuals need not stand before the immigration court alone, confused, and without assistance; rather, a competent individual may speak on their behalf.  See 8 C.F.R. § 1240.4.  Moreover, if Plaintiffs are unsuccessful at the Board, they can file a petition for review of their adverse decision with the Ninth Circuit.  Thus, Defendants' regulations and guidance as well as the relevant statutes ensure that the due process rights of unrepresented mentally ill respondents are protected in the absence of appointed counsel.

## 2. Plaintiffs' Motion for a Preliminary Injunction is Premature Because the BIA Has Yet to Adjudicate the Issue of Representation

Because the Board has yet to decide the appeals in both Plaintiffs' cases, this motion for a preliminary injunction is premature and should be denied.   At such an early stage in their appeals process, Plaintiffs cannot establish the irreparable harm and other equities required for a grant of preliminary injunctive relief.

Prior to Mr. Martinez and Mr. Khukhryanskiy's moving this Court for a temporary restraining order, the Board of Immigration Appeals was asked to consider the legal question of whether Mr. Martinez and Mr. Khukhryanskiy

received constitutionally deficient proceedings on the basis of their alleged mental incompetency.  Rather than pursue the requested relief in the administrative process, both Mr. Martinez and Mr. Khukhryanskiy h circumvented that process by requesting emergency injunctive relief from this Court.  But their actions have now spawned an adverse consequence – the temporary restraining order granted by this Court prevents the BIA from examining and interpreting their regulations as they apply to the removal proceedings of Mr. Martinez and Mr. Khukhryanskiy.  The Court should therefore deny the motion for a preliminary injunction and allow the administrative process to conclude.  Rather than ordering an unprecedented preliminary injunction appointing counsel for respondents in removal proceedings, this Court should permit the Board to proceed with its adjudication of Plaintiffs' appeals in order to allow the Board to ensure that the rights of Plaintiffs are protected.[4]

In both Plaintiffs' cases, the Board is on notice of issues of possible mental incompetency and claims of deficient procedures.  In his Notice of Appeal to the BIA, Mr. Khukhryanskiy specifically appealed whether the immigration judge "erred in failing to inquire whether [Mr. Khukhryanskiy] is competent to represent [himself] in these removal proceedings."  Id.  On the same day, an NWIRP attorney requested leave with the BIA to file an amicus brief in support of Mr. Khukhryanskiy's appeal.   Ex. 8.  In its request, the amicus specifically referenced the "important issues regarding the treatment of persons with mental health issues who have not been evaluated to determine whether they are mentally competent to represent themselves in removal proceedings," and "the Attorney General's statutory

---

[4]  Defendants incorporate by reference all arguments relating to this Court's lack of jurisdiction and Plaintiffs' failure to administratively exhaust their remedies contained in the opposition to the temporary restraining order, Dkt. # 61, and the opposition to Plaintiffs' ex parte application for expedited discovery, Dkt. # 70.

16

1   obligations to provide safeguards to protect the rights of those persons who are

2   mentally incompetent to assert their own rights" under 8 U.S.C. § 1229a(b)(3).  See

3   id.  If Mr. Khukhryanskiy is found to be mentally incompetent, the BIA may remand

4   his case or consider what safeguards under 8 C.F.R. § 1240.10(c) will satisfy his

5   right to due process.

6        The process due to a possibly incompetent alien in removal proceedings is

7   squarely before the BIA in Mr. Martinez's pending appeal as well.  Indeed it was the

8   immigration judge who asked the BIA to consider the issue through certification of

9   her decision.  Mr. Martinez's removal hearing was postponed at least four times so

10  that he could obtain counsel.  Dec. 2, at ¶A.3.  At each of Mr. Martinez's hearings,

11  the immigration judge reminded Mr. Martinez of his ability to obtain representation

12  by counsel.  The immigration judge specifically recommended that Mr. Martinez

13  speak with attorneys from the American Bar Association Immigration Justice

14  Project, who could have assisted him in obtaining pro bono representation.  Dkt. #

15  57-13, at 4.  Mr. Martinez did not obtain counsel.  See id..

16       On August 31, 2010, DHS put the issue squarely before the immigration

17  court, by submitting Mr. Martinez's psychological evaluation to the immigration

18  judge and notifying the court of its ability to request a custodian to appear on

19  Martinez' behalf pursuant to 8 C.F.R. § 1240.4.  Dkt. # 57-12.  Relying heavily on

20  DHS's evidentiary submission, the immigration judge determined that Mr. Martinez

21  was not competent to proceed pro se in his removal proceedings.  Dkt. # 57-13, at 7-

22  8.  In her decision, the immigration judge considered available options for Mr.

23  Martinez (and for the Court), including the appointment of counsel or of a suitable

24  guardian, and then sua sponte terminated the removal proceedings against Mr.

25  Martinez.  Id.  The immigration judge invited the BIA to provide guidance on what

26  process is due to a mentally incompetent alien in a removal proceeding by

27  certifiying to the BIA the issue of whether "the Court has erred in interpreting the

28  law regarding pro se incompetent aliens."  Id. at 12.  The BIA now has an

opportunity to determine what safeguards under 8 C.F.R. § 1240.10(c) are required to provide a mentally incompetent alien with due process in removal proceedings.

Until the Court lifts the temporary restraining order and denies the motion for a preliminary injunction, however, the BIA will not be able to interpret its regulatory safeguards on the mentally incompetent and address the issues presented by the immigration judge's certification request and DHS appeal in Mr. Martinez's removal proceedings or Mr. Khukhryanskiy's request for appellate consideration of the immigration judge's order of removal.  For these reasons, it would be premature for this Court to decide the issues set forth in the motion for a preliminary injunction. Rather, the Court should permit the issues to be adjudicated administratively by the BIA.

If their cases proceed this way, Plaintiffs will not suffer irreparable harm.  In adjudicating Plaintiffs' appeals, the Board must interpret regulations that have been specifically instituted to protect the rights and privileges of mentally incompetent aliens, such as permitting mentally incompetent aliens to be assisted by individuals who can speak on their behalf at hearings.  See, e.g., 8 C.F.R. § 1240.4.  If Plaintiffs obtain an adverse outcome, they are not destined for removal, but may seek judicial review of their cases in the court of appeals.  Indeed, a petition for review is the proper avenue for the claims currently before the Court.[5]  As such, the premature nature of these claims makes preliminary injunctive relief inappropriate at this time.

**3.    There Is No Constitutional Right to Appointed Counsel for Mentally Ill Individuals in Removal Proceedings**

a.    The Right to a Full and Fair Hearing in Removal Proceedings Does not Encompass a Right to Appointed Counsel for Those Incompetent to Proceed Pro Se

---

[5]  See discussion in Dkt. # 70, at 2-7.

1    Plaintiffs assert that their right to a full and fair hearing encompasses a right

2    to appointed counsel.  It is true that an alien in removal proceedings is entitled to

3    due process in the form of a "full and fair" hearing.  See, e.g., Burgos-Abril v. INS,

4    58 F.3d 475, 476 (9th Cir. 1995).  In order to show that his right to a full and fair

5    hearing was violated, "the alien must demonstrate that the challenged proceeding

6    was so fundamentally unfair that the alien was prevented from reasonably presenting

7    his case."  Rendon v. Holder, 588 F.3d 669, 675 (9th Cir. 2009).  Once the alien

8    shows that he is so prevented, he also must establish prejudice, "which means that

9    the outcome of the proceeding may have been affected by the alleged violation."

10   Colmenar v. INS, 210 F.3d 967, 971 (9th Cir. 2000).

11   The immigration laws contain a number of statutory and regulatory provisions

12   which safeguard an alien's right to a full and fair hearing.  See, e.g., 8 U.S.C. §

13   1229a(b)(4)(B) (providing that, in removal proceedings, "the alien shall have a

14   reasonable opportunity to examine the evidence against the alien, to present

15   evidence on the alien's own behalf, and to cross-examine witnesses presented by the

16   Government"); 8 C.F.R. § 1240.10(a)(4).  However, the INA also forecloses the

17   possibility that unrepresented incompetent respondents must be provided appointed

18   counsel.  See 8 U.S.C. § 1229a(b)(4)(a); see also 8 U.S.C. § 1362.  Plaintiffs fail to

19   identify a single case holding that mentally ill individuals who are incompetent to

20   represent themselves are entitled to appointed counsel.

21   Plaintiffs ignore the unique circumstances of the immigration context and

22   instead rely on a trio of criminal cases (Massey v. Moore, 348 U.S. 105 (1954);

23   Wade v. Mayo, 334 U.S. 672 (1948); and Palmer v. Ashe, 342 U.S. 134 (1951)) for

24   the proposition that the Fifth Amendment requires the appointment of counsel for

25   those individuals who may be incompetent by reason of mental illness, age, or other

26   deficiency from representing themselves though they may otherwise be competent to

27   stand trial.  However, these cases are not on point, as they all arise from the criminal

28   context, where a "full and fair" hearing has a very different meaning from the

19

1   removal context.  Immigration procedures are meant to be informal and efficient

2   administrative processes.  See INS v. Lopez-Mendoza, 468 U.S. at 1039 ("a

3   deportation hearing is intended to provide a streamlined determination of eligibility

4   to remain in this country, nothing more.").

5       Thus, Plaintiffs' representation to this Court that the case law establishing the

6   right to appointed counsel for mentally ill criminal defendants "applies with full

7   force to immigration proceedings," see Plaintiffs' Motion for a Preliminary

8   Injunction, Dkt. # 57, at 30, is incorrect.  Plaintiffs cite no authority to support this

9   proposition.  Rather, the existing authority holds the opposite.  See, e.g., Hong v.

10  Mukasey, 518 F.3d 1030, 1034 (9th Cir. 2008) (citing INS v. Lopez-Mendoza, 468

11  U.S. at 1038, for the proposition that "immigration proceedings" are "civil" in

12  nature, and "various protections that apply in the context of a criminal trial do not

13  apply"); United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir. 1975) (explaining

14  that "courts have uniformly held in this circuit and elsewhere that in light of the

15  non-criminal nature of both the proceedings and the order which may be a result,

16  that respondents are not entitled to have counsel appointed at government

17  expense"); Nee Hao Wong, 550 F.2d at 523 ("The Immigration and Naturalization

18  Act contemplates that deportation proceedings may be had against mental

19  incompetents."); De Leon-Lopez v. INS, 1999 WL 993675, at *1 (9th Cir. Nov. 1,

20  1999) ("Even when an alien is not competent to participate intelligently in his

21  deportation proceedings, such proceedings may still satisfy due process

22  requirements.").

23          b.    The Interests at Stake in Plaintiffs' Immigration Proceedings Do

24                Not Support Plaintiffs' Claim to Appointed Counsel

25      Nor can Plaintiffs rely on the Supreme Court's right-to-counsel jurisprudence

26  in civil cases to assert a right to counsel in removal proceedings at Government's

27  expense.  This line of cases recognizes that procedural due process requires the

28  appointment of counsel for indigent individuals in the following scenarios:  (1) in all

20

proceedings, whether civil or criminal, where actual imprisonment may result, and (2) in certain civil proceedings where the Mathews v. Eldridge factors – the individuals' interest at stake; the Government's interest; and the risk that the procedures used will lead to erroneous decisions – overcome the general presumption against appointment of counsel.  See Mathews v. Eldridge, 424 U.S. 319, 335 (1976);  Lassiter v. Dept. of Soc. Servs., 452 U.S. 18 (1981).  Neither situation applies here.

Lassiter v. Dept. of Soc. Services establishes a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.  It is against this presumption that all the other elements in the due process decision must be measured."  Id. at 26-27.  In Lassiter, a mother sought the appointment of an attorney to represent her in her parental termination hearings on the basis that she was indigent and unable to afford counsel specifically for this purpose.  Lassiter rooted her claim to appointed counsel in the Due Process Clause of the Fourteenth Amendment.  In examining the issue before it, the Court found that "[t]he pre-eminent generalization that emerges from [the] Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation."  Id. at 24.

The Lassiter Court based this holding on Argersinger v. Hamlin, 407 U.S. 25 (1972), in which it had recognized that "counsel must be provided before any indigent may be sentenced to prison, even where the crime is petty and the prison term brief."  Lassiter, 452 U.S. at 25.  Argersinger arose from the criminal context, where the Sixth Amendment and Gideon v. Wainwright, 372 U.S. 335 (1963), make clear that appointed counsel is necessary for indigent defendants.  However, the Court also relied on In re Gault, 387 U.S. 1 (1967), a civil case in which the Court held that the Due Process Clause requires appointed counsel if the civil proceedings result in an involuntary commitment to an institution in which a juvenile's freedom

21

would be curtailed.  Lassiter, 452 U.S. at 25.  Additionally, the Lassiter Court found support in Vitek v. Jones, 445 U.S. 480 (1980), a case in which four of the five justices who formed the opinion of the Court required appointment of counsel for an indigent prisoner who faced possible transfer to a state mental institution.  Thus, the Court recognized the possibility that, under the Due Process Clause, civil cases involving the deprivation of physical liberty require indigent individuals to be appointed counsel per se.

However, the Court also pointed out that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel."  Lassiter, 452 U.S. at 26. In cases not involving an outcome of incarceration, the Court explained, a per se rule requiring appointment of counsel was not appropriate.  Rather, trial courts should weigh the Mathews v. Eldridge, 424 U.S. 319, 335 (1976), factors on a case-by-basis against the presumption that appointed counsel is only necessary "when, if [the plaintiff] loses, he may be deprived of his physical liberty."  Lassiter, 452 U.S. at 27.  In Lassiter, the Court conducted such a weighing using the particular facts of Lassiter's case and concluded that the petitioner was not entitled to counsel to represent her in her parental termination proceedings.  Id. at 32-33.

Plaintiffs argue that their prolonged detention amounts to a loss of physical liberty requiring appointed counsel per se under Lassiter.  However, this argument mischaracterizes the purpose of removal proceedings as well as the nature of immigration detention.  The Supreme Court has only required appointment of counsel per se in cases where an individual's physical liberty interest is at stake – that is, where the very purpose of the proceedings involved is to determine whether an individual's physical liberty is to be curtailed.  See, e.g., Argersinger v. Hamlin, 407 U.S. 25 (involving threat of criminal imprisonment); In re Gault, 387 U.S. 1 (juvenile detention).  This analysis is outcome-dependent, and looks forward to the possible results of the individual's "sentencing;" if it is possible that an individual

1    will be ordered incarcerated as part and parcel of the final disposition of this case,

2    then appointed counsel may be required.

3        The interest "at stake" during removal proceedings is not physical liberty, or

4    the respondent's interest in being free from immigration detention; rather it is the

5    alien's ability to remain in this country, a very different kind of interest.  This is an

6    important interest, but it is not akin to that contemplated by Argersinger and its line

7    of cases.  Immigration detention is an incidental aspect of removal proceedings,

8    merely serving to effectuate the alien's removal.  See Wong Wing v. United States,

9    163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary

10   confinement, as part of the means necessary to give effect to the provisions for the

11   exclusion or expulsion of aliens would be valid");  Carlson v. Landon, 342 U.S. 524,

12   538 (1952) ("Detention is necessarily a part of this deportation procedure").

13   Detention is not a potential outcome of the Plaintiffs' litigation; rather it can be

14   ongoing and parallel with the removal proceedings themselves, as it is in the present

15   cases.  Removal proceedings are thus distinct from those proceedings where an

16   individual's physical liberty may be deprived.  As such, Plaintiffs here cannot fit

17   themselves into the group of civil cases requiring appointment of counsel on the

18   basis that a central physical liberty interest will be deprived if the litigation is lost.

19       While appointment of counsel may be warranted if the Mathews v. Eldridge

20   factors overcome the presumption against appointed counsel, a careful consideration

21   of these factors in the present case indicates that Plaintiffs are not entitled to

22   appointment of counsel.  As the Court explained in Lassiter, Mathews v. Eldridge

23   "propounds three elements to be evaluated in deciding what due process requires,

24   viz., the private interests at stake, the government's interest, and the risk that the

25   procedures used will lead to erroneous decisions.  We must balance these elements

26   against each other, and then set their net weight in the scales against the

27   presumption that there is a right to appointed counsel only where the indigent, if he

28   is unsuccessful, may lose his personal freedom."  Id. at 27.  Here, Plaintiffs possess

23

an important interest to avoid removal from this country.  However, just as the compelling interest of preserving parental rights did not warrant the appointment of counsel in Lassiter, neither does Plaintiffs' interest in avoiding removal overcome the presumption against appointment of counsel.  In his proceedings before the immigration court, Plaintiff Khukhryanskiy repeatedly voiced his desire to be removed from this country, a fact which undermines his interest in remaining in this country.  Moreover, the absence of counsel did not render either Plaintiffs' proceedings "fundamentally unfair," an important consideration in  Lassiter, 452 U.S. at 33.  Mr. Martinez's removal proceedings were terminated by the immigration judge after DHS raised the issue of Mr. Martinez's mental competence to the immigration court by entering his psychological evaluation into evidence and noting the court's ability to appoint a custodian to speak on Martinez's behalf pursuant to 8 C.F.R. § 1240.4.  Additionally, the immigration judge in Martinez's case certified to the BIA the very issue of whether "the Court has erred in interpreting the law regarding pro se incompetent aliens." Dkt. # 57-13, at 12.  Nor could Mr. Khukhryanskiy's proceedings be deemed "fundamentally unfair:" although the immigration judge ordered him removed, this order came at Mr. Khukhryanskiy's own request, and is currently on appeal to the Board of Immigration Appeals.  Through the assistance of the legal orientation program, Mr. Khukhryanskiy has been able to raise his mental competence as an issue to the BIA, providing the Board with the opportunity to adjudicate his claims.

Thus, both Plaintiffs have not needed counsel to significantly advance their cases and put before the Board the very issues at the heart of this litigation.  Accordingly, this Court should find that the holding in Lassiter does not mandate the appointment of counsel for Messrs. Martinez and Khukhryanskiy.

**4.    The Rehabilitation Act Does Not Apply to Mandate the Appointment of Counsel in Removal Proceedings.**

1    Plaintiffs are not likely to succeed with their appointment of counsel claim

2  under the Rehabilitation Act because that Act does not apply to removal proceedings

3  and cannot override the specific provisions of the INA that govern this case.  And

4  even if the Rehabilitation Act did apply, Plaintiffs are requesting an accommodation

5  – appointed counsel – that is not available to other pro se aliens in removal

6  proceedings who are not mentally disabled.  The Rehabilitation Act is only intended

7  to level the playing field for persons with disabilities – not to provide advantages to

8  the disabled over the nondisabled.

9    First, the Rehabilitation Act does not apply to Plaintiffs' removal proceedings

10  because the INA exclusively governs such proceedings.  See 8 U.S.C. § 1229a(a)(3)

11  (providing that, with exceptions not applicable here, "a proceeding under this

12  section shall be the sole and exclusive procedure for determining whether an alien

13  may be admitted to the United States, or, if the alien has been so admitted, removed

14  from the United States"); cf. Marcello v. Bonds, 349 U.S. 757 (1955) (holding that

15  the language of the predecessor to § 1229a(a)(3), former 8 U.S.C. § 1252(b) (1994),

16  demonstrated that the INA "expressly supercedes the hearing provisions of the

17  APA"); see also Ardestani v. INS, 502 U.S. 129, 133 (1991) (reaffirming Marcello's

18  holding that "Congress intended the provisions of the [INA] to supplant the APA in

19  immigration proceedings.").

20    Furthermore, the Rehabilitation Act cannot override the provisions of the INA

21  showing that Congress has declined to create a right to counsel for mentally disabled

22  aliens in removal proceedings.  Congress explicitly addressed the issue of mentally

23  incompetent aliens in removal proceedings, and deferred to the Attorney General to

24  create safeguards.  8 U.S.C. § 1229(b)(3).  Those safeguards are found in regulations

25  that allow an alien's attorney, near relative, legal guardian, or friend to represent him

26  at removal proceedings under appropriate circumstances.  8 C.F.R. § 1003.25(a).

27  Congress also gave aliens in removal proceedings the right to counsel, but

28  specifically stated that such representation should be "at no expense to the

25

Government."  8 U.S.C. § 1362.  Plaintiffs' request for appointment of counsel under the general Rehabilitation Act statute cannot overcome the specific provisions in the INA showing that Plaintiffs have no right to such an accommodation.  See Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961) ("[A] specific statute controls over a general one without regard to priority of enactment." (quotation omitted)).

Even if the Rehabilitation Act applied in this case, Plaintiffs' claim still lacks merit.  Plaintiffs are requesting preferential treatment – appointment of counsel – that cannot form the basis for a Rehabilitation Act claim because it would give them an advantage that other pro se aliens do not receive.  The Government's determination to not appoint counsel for aliens in removal proceedings is a neutral decision that has no disparate impact on Plaintiffs.  This is especially true in light of regulations allowing family members, friends, or legal guardians to represent mentally disabled pro se aliens in removal proceedings.  See 8 C.F.R. § 1240.4.  The ability of mentally ill aliens to have their guardians speak on their behalf puts them on the same level playing field as mentally competent pro se aliens.   This equality of treatment is exactly what is contemplated by the Rehabilitation Act.  Accordingly, Plaintiffs have no likelihood of success on this claim.

5.    **A Preliminary Injunction Would Be Contrary to the Public Interest**

Plaintiffs have failed to show that the denial of a preliminary injunction would be contrary to the public interest.  Both Plaintiffs currently have appeals pending before the BIA.  The fact that their mental competency is an issue in both cases makes it clear that the Board of Immigration Appeals probably will consider the regulations governing mentally incompetent aliens and apply these safeguards to their cases.  Even if the BIA enters decisions unfavorable to Plaintiffs, Plaintiffs may file petitions for review in the Ninth Circuit Court of Appeals.  See 8 U.S.C. §§ 1252(a)(5), (b)(9).  It cannot be said, then, that they have anything other than adequate legal remedies available to them.  Thus, the public interest favors the

1  Court's denying the preliminary injunction and allowing the Board to continue with

2  adjudicating the cases.

3  **C.    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION**

4  **REQUIRING A BOND HEARING**

5      Plaintiffs fail to show they will succeed on their claim that their detention is

6  unconstitutional and that they are entitled to a custody hearing.  Plaintiffs are

7  detained under 8 U.S.C. § 1226(c), which requires that DHS detain certain criminal

8  aliens during their ongoing removal proceedings.  Their detention is therefore

9  constitutional.  See Demore v. Kim, 538 U.S. 510 (2003).  Nevertheless, Plaintiffs

10  seek an order requiring that they must be provided with a bond hearing before an

11  immigration judge to determine whether their continued detention is justified,[6] for

12  no reason other than that their detention has continued beyond the six-month mark.

13  Dkt. # 57, at 47.   What Plaintiffs do not say is that no court has held that an alien's

14  right to a bond hearing is automatically triggered after six months' detention.  At

15  most, courts have required a showing that an alien's detention under section 1226(c)

16  without a hearing remains reasonable.  Because Plaintiffs' detention is reasonable

17  under the circumstances here, the Court should deny the motion for a preliminary

18  injunction.  Plaintiffs have also made no showing whatsoever that their custody

19  claim must be heard in the context of a preliminary injunction motion as opposed to

20  normal notice-motion procedure.

21

22

23      [6] Plaintiffs erroneously assert that, in a bond hearing, the "government bears
the burden to prove that their detention remains justified." (Plaintiffs' Memo at 4.)

24  Although the Ninth Circuit, has imposed the burden of proof in post-final removal

25  order hearings on the Government (see Tijani v. Willis, 430 F.3d 1241, 1245 (9th

26  Cir. 2005)), which the Government respectfully continues to disagree with, the
petitioner bears the burden of proof in a pre-final-order hearing.  See 8 C.F.R.

27  §§ 236.1(c)(8) & 1236.1(c)(8); Matter of Adeniji, 22 1. & N. Dec. 1102, 1114-15

28  (BIA 1999).

### 1.    Plaintiffs' Aggravated Felonies Subject Them to Mandatory Detention Under 8 U.S.C. § 1226(c)

The INA provides that DHS must arrest and detain certain aliens against whom removal proceedings have been initiated, but not yet completed.  The statute provides that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227 (a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."  8 U.S.C. § 1226(c) (emphasis added).  "Section 1226(c) prohibits the release of a criminal alien during removal proceedings and does not provide for bond hearings for aliens subject to mandatory detention."  Id.

An alien is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), in turn, if he has been convicted of an aggravated felony at any time after admission [to the United States]."  8 U.S.C. § 1227(a)(2)(A)(iii).  The term "aggravated felony" includes a "crime of violence . . . for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(F), and a "theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(G).  An aggravated felony includes an attempt to commit either offense.  8 U.S.C. § 1101(a)(43)(U).

Both Plaintiffs are in mandatory ICE detention pursuant to section 1226(c).  Mr. Khukhryanskiy has been in detention for approximately seven months since DHS initiated removal proceedings against him.  See Dkt. # 57-2, at 2.  His continued detention stems from an order of removal that an immigration judge entered against him on August 25, 2010, as a result of convictions for attempted assault and attempted robbery in the first degree, in violation of Oregon state law.  See id.; Dkt. # 57-1, at 5.  Khukhryanskiy appealed the immigration judge's decision to the BIA, and the appeal is currently pending.  Dec. 2, at ¶B.4-6.

Mr. Martinez has been in ICE detention for approximately thirteen months.  See Ex. 4.  Mr. Martinez also was charged with removability as an alien convicted

28

1  of an aggravated felony on account of his conviction for battery with infliction of

2  serious bodily injury.  Id.  After the immigration judge terminated Martinez's

3  removal proceedings, and certified her decision to the Board, the Government

4  appealed the termination to the BIA.  That appeal likewise remains pending.

5        Because Plaintiffs were convicted of offenses that constitute aggravated

6  felonies, section 1226(c) mandates their detention during their ongoing removal

7  proceedings and makes them ineligible for release or for a bond hearing.

8        **2.     Plaintiffs' Mandatory Detention Under 8 U.S.C. § 1226(c) is**

9        **Constitutional**

10       Plaintiffs' challenge the constitutionality of their mandatory detention without

11  a bond hearing under 8 U.S.C. § 1226(c).  Their challenge fails because the Supreme

12  Court has held that mandatory detention is constitutional while removal proceedings

13  are ongoing, as they are here.

14       The Supreme Court affirmed the constitutionality of non-discretionary

15  detention under section 1226(c) in Demore v. Kim, 538 U.S. 510 (2003).  In that

16  case, the alien argued that "the Government may not, consistent with the Due

17  Process Clause of the Fifth Amendment, detain him for the brief period necessary

18  for his removal proceedings," without a bond hearing.  See id. at 523.  The Supreme

19  Court disagreed, reiterating the long-established principle that, "[i]n the exercise of .

20  . . its broad power over naturalization and immigration, Congress regularly makes

21  rules that would be unacceptable if applied to citizens."  Id. at 522 (citing Mathews

22  v. Diaz, 426  U.S. 67, 79-80 (1976)); Zadvydas v. Davis, 533 U.S. 678,718 (2001).

23  Such authority exists because "Congress' power to detain aliens in connection with

24  removal or exclusion . . . is part of the Legislature's considerable authority over

25  immigration matters."  Demore, 538 U.S. at 523.  In upholding Congress's decision

26  not to provide for bond hearings under section 1226(c), the Court also stated that the

27  "Due Process Clause does not require [the government] to employ the least

28  burdensome means to accomplish its goal."  Id. at 528.

1  With these principles in mind, the Supreme Court held that "Congress,
2  justifiably concerned that deportable criminal aliens who are not detained continue
3  to engage in crime and fail to appear for the removal hearing in large numbers, may
4  require that persons such as respondent be detained for the brief period necessary for
5  their removal proceedings." Id. at 513.

6  Here, because both Plaintiffs remain in mandatory detention under section
7  1226(c), and because their removal proceedings are ongoing, neither Plaintiff's
8  detention is without end. Thus, their detention will come to an end in the
9  foreseeable future and it cannot be characterized as "potentially permanent."

10  In light of Demore and its progeny, Plaintiffs' mandatory detention under
11  section 1226(c) withstands scrutiny under the Due Process Clause, even if it is not
12  the least burdensome method of ensuring that Plaintiffs, and criminal aliens like
13  them, attend their removal proceedings. See id. at 528.

14  **3.     Plaintiffs' Detention is Reasonable and Constitutional Under the**
15  **Circumstances**

16  Although Defendants respectfully contend that a reasonableness examination
17  is not the proper approach to evaluating the constitutionality of mandatory section
18  1226(c) detention, Plaintiffs' detentions nevertheless satisfy this standard. Although
19  ICE detained both Plaintiffs pursuant to section 1226(c) for more than six months,
20  neither Plaintiff's detention violates the Constitution. Even under the most generous
21  reading of Demore and its progeny, the constitutionality of a criminal alien's
22  continued detention without a bond hearing under section 1226(c) depends on the
23  reasonableness of continued mandatory detention under the facts of that alien's
24  individual case. Thus, Plaintiffs are not automatically entitled to a hearing because
25  they have surpassed the six-month benchmark, particularly because their ongoing
26  detention is reasonable.

27  The view that due process requires an examination of the reasonableness of
28  continued mandatory detention under section 1226(c) finds its genesis in the

30

Supreme Court's conclusion that Congress may "require that persons such as

respondent be detained for the brief period necessary for their removal

proceedings," <u>Demore</u>, 538 U.S. at 513, and the citation to the average length of

removal proceedings as lasting approximately five to six months.  <u>Id.</u> at 529, n.12;

<u>see also</u> <u>Casas-Castrillon v. DHS</u>, 535 F.3d  942, 944 (9th Cir. 2008) (noting that

detention of more than seven years exceeded a "brief period of time" for completion

of removal proceedings).  In his concurring opinion, Justice Kennedy stated:

> Since the Due Process Clause prohibits arbitrary deprivations of liberty,
> a lawful permanent resident alien such as respondent could be entitled
> to an individualized determination as to his risk of flight and
> dangerousness if the continued detention became unreasonable or
> unjustified. . . .  Were there to be an unreasonable delay by the INS in
> pursuing and completing deportation proceedings, it could become

necessary then to inquire whether the detention is not to facilitate deportation, or to

protect against risk of flight or dangerousness, but to incarcerate for other reasons.

<u>Demore</u>, 538 U.S. at 532-33 (emphasis added).  A number of courts have concluded,

based on <u>Demore</u>, that whether a bond hearing is required in a particular case

depends on whether continued detention is reasonable based on the circumstances of

a particular case.  <u>See</u> <u>Ly v. Hanson</u>, 351 F.3d 263 (6th Cir. 2003); <u>Alli v. Decker</u>,

644 F. Supp. 2d 535 (M.D. Pa. 2009); <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069, 1080

(9th Cir. 2006); <u>Tijani</u>, 430 F.3d at 1242; <u>Morales v. Mukasey</u>, 2008 U.S. Dist.

Lexis 118007, *13-14 (D. Az. Feb. 11, 2008) (holding that petitioner's 20-month

detention was reasonable under the circumstances).

     To be clear, courts have not embraced – and have instead rejected – Plaintiffs'

assertion that the length of detention alone determines whether continued detention

under section 1226(c) is reasonable and therefore constitutional.  But merely

because a particular alien has been held pursuant to section 1226(c) for six months

does not make otherwise constitutional detention, unconstitutional.  In <u>Demore</u>, the

Supreme Court sanctioned the detention of the alien under section 1226(c), even though his detention had already exceeded the "average" length of removal proceedings, because the alien had sought a continuance of his removal proceedings beyond that time. Demore, 538 U.S. at 530-531. In Ly, the Sixth Circuit declined to establish a bright line test for the reasonable time limitation of pre-removal detention, finding that "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant." 351 F.3d at 271. See also Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455 (D. Mass. 2010) (citing Ly's rejection of a bright line rule based solely on length of detention). Another court in this district, citing Ly, has also indicated that the reasonableness of detention under section 1226(c) cannot be measured solely by reference to the length of the detention. Martinez v. Gonzales, 504 F. Supp. 2d 887, 898 (C.D. Cal. 2007) (Hatter, J.) (stating that "[a] court must 'be sensitive to the possibility' that a removable alien may engage in 'dilatory tactics' in order to 'compel a determination' that his detention was unreasonably long.") (quoting Ly, 351 F.3d at 272).

Similarly, the court in Alli rejected using a six-month benchmark as an automatic trigger for unconstitutional detention, concluding that "there is no expression of Congress's doubts as to the constitutionality of detention of deportable criminal aliens for more than six months," and because "[a] bright-line rule, and likely even a rule based solely on whether detention is 'prolonged,' run the risk of ignoring . . . considerations" of "relevant factors beyond the length of detention, such as the alien's conduct during removal proceedings and the likelihood that proceedings will result in an order of removal." Alli, 644 F. Supp. 2d. at 542-43.

Rather than adopt a bright line rule, the Court must determine whether Plaintiffs' removal proceedings have been "expeditious," and whether his continued detention without a hearing is "reasonable." Nadarajah, 443 F.3d at 1080 (holding that a five year detention was "plainly unreasonable by any measure"); Tijani, 430

32

F.3d at 1242 (holding that a removal proceeding of two years and four months was not "expeditious"); Mustanich v. Gonzales, Case No. 07-1100, 2007 U.S. Dist. Lexis 71401, *23-31 (S.D. Cal. Sept. 26, 2007) (holding that a more than four-year detention was neither expeditious nor reasonable). Courts consider the reasonableness of detention under section 1226(c) by reference to any number of factors within the context of an alien's individual circumstances. For example, in Ly, the Sixth Circuit instructed courts to "examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." Id. In Alli, the court identified a list of non-exhaustive factors that should go into a court's reasonableness inquiry. They include such matters as (1) the length of detention, (2) the probable extent of future removal proceedings, (3) the likelihood that removal proceedings will actually result in removal, and (4) the conduct of both the alien and the Government during removal proceedings. Alli, 644 F. Supp. 2d at 543-45.

Importantly, here, neither Plaintiffs' detention is without end, as both Mr. Khukhryanskiy and Mr. Martinez's cases are currently on appeal before the BIA. And because their detention will come to an end in the foreseeable future, their detention cannot be characterized as "potentially permanent," as in the context of Zadvydas. Instead, Plaintiffs' detentions fall within the realm of an average pre-order detention contemplated in Demore, as an average, by definition, includes time periods which are longer and shorter than the average itself. Khukhryanskiy's detention in particular, at a mere seven months, is not so long to as to be considered unreasonably prolonged under the circumstances. See Demore, 538 U.S. at 530 (alien detained for six months, which was "somewhat longer than the average" of one and a half to five months).

Further, the current status of each Plaintiffs removal proceedings indicates that Mr. Khukhryanskiy's and Mr. Martinez's detentions are reasonable. In Mr. Khukhryanskiy's case, he himself appealed the immigration judge's order of

removal against him – despite Khukhryanskiy's concession of removability and his statements in immigration court that he just wanted to go home.  Briefing in that case was expected to commence shortly, see Dec. 2, at ¶B.5, except for the fact that the temporary restraining order issued at Plaintiffs' request has derailed the Board of Immigration Appeals' proceedings and logically prolonged Khukhryanskiy's mandatory detention.  As for Martinez, the immigration judge certified issues to the Board, and ICE also appealed the immigration judge's decision to the Board, and the appeal is underway – Mr. Martinez was also scheduled to file a brief in early December until the issuance of the temporary restraining order.  See Dkt. # 69-1, at ¶3.  Thus, if the BIA affirms Khukhryanskiy' s order of removal, affirms the immigration judge's decision terminating Martinez's removal proceedings, or holds that Martinez is, in fact, removable, Plaintiffs' removal orders will be administratively final, and their removal proceedings will be over.  See 8 C.F.R. § 1241.1(a).  "Where the end of removal proceedings is relatively near, continued detention is more likely to be reasonable."  Alli, 644 F. Supp. 2d at 543 (citing Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007)).  Finally, there is no indication that the Government has in any way delayed the removal proceedings or otherwise inhibited the removal proceedings from moving forward.

This "reasonableness" approach also avoids anomalous results and gives weight to the Government's legitimate interest in detaining criminal aliens to secure their removal and prevent further crimes.  In addition, unlike the potentially indefinite detention of the aliens in Zadvydas, Plaintiffs' detention has satisfied and continues to satisfy the statutory purpose of section 1226(c) because Congress specifically chose to enact section 1226(c) to ensure that aliens with specific criminal backgrounds – like Plaintiffs' – appear for their removal hearings and do not commit more violent crimes.

Accordingly, Plaintiffs' mandatory detention under section 1226(c) is constitutional and reasonable under the circumstances.  Thus, Plaintiffs are unlikely

34

to succeed on the merits of this claim, and the Court should deny their motion for a preliminary injunction.[7]

4. **Plaintiffs Have Failed to Show That They Are Otherwise Entitled to a Preliminary Injunction Requiring a Custody Hearing**

a. Plaintiffs Will Not Suffer Irreparable Harm if the Court Denies Their Motion for a Custody Hearing

As discussed, Plaintiffs' detention was – and remains – constitutional under the mandatory detention provision of the INA. Thus, they have not, and will not, upon the denial of their motion, suffer any deprivation of their liberty that the Supreme Court has not sanctioned.

b. The Balance of Harm and Public Interest Weigh Against Issuing a Preliminary Injunction

A preliminary injunction that may result in DHS's releasing Plaintiffs from mandatory custody presents problems in light of Congress's desire to ensure that aliens appear for their removal hearings. Removable criminal aliens have long posed a special congressional concern. Recognizing that criminal aliens released on bond pending removal frequently failed to appear for removal proceedings or, worse, engaged in other crimes, Congress took steps in 1996 to revisit and

---

[7] Nor is Plaintiffs' Rehabilitation Act claim regarding their detention availing. As explained above, the Rehabilitation Act does not apply to Plaintiffs' removal proceedings because the INA exclusively governs such proceedings, and because the general terms of the Rehabilitation Act cannot trump the specific mandatory detention provisions of the INA. See supra pp. 25-26. Moreover, even if the Rehabilitation Act applied to Plaintiffs' request for a detention hearing, their claim lacks merit. Plaintiffs cannot show disability-based discrimination because they do not allege that they are treated differently than any other alien subject to mandatory detention. No alien subject to the mandatory detention provision of 8 U.S.C. § 1226(c) – whether mentally disabled or not– is entitled to a detention hearing such as the one Plaintiffs now request.

strengthen detention provisions in federal immigration law regarding criminal aliens.  Thus, Congress adopted section 1226(c) "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens."  Demore, 538 U.S. at 518.  As the Supreme Court has acknowledged, in requiring mandatory detention under section 1226(c), "Congress also had before it evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings."  Id. at 519.

Not only does mandatory detention assist the government in ensuring that criminal aliens attend their removal proceedings, but it also protects the public from the serious possibility that criminal aliens will continue to commit crimes pending their removal proceedings if they are not detained.  "One 1986 study showed that, after criminal aliens were identified as deportable, 77% were arrested at least once more and 45% – nearly half – were arrested multiple times before their deportation proceedings even began."  Id. at 518.  Plaintiffs have each committed violent crimes that qualify as aggravated felonies under the INA.  Given their criminal histories as well as their mental disabilities, their continued detention furthers the Government's and the public's interests in protecting the public from further harm.

As a result of these considerations, the public interest and the harm to the Government outweigh the unsubstantiated constitutional claims that Plaintiffs  allee. In light of their failure to satisfy the requirements for a temporary restraining order and preliminary injunction, therefore, the Court must deny Plaintiffs' motion.

## VI.  CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' motion for a preliminary injunction should be denied.

DATED: December 1, 2010                     Respectfully submitted,

TONY WEST
Assistant Attorney General

DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section

VICTOR M. LAWRENCE
Principal Assistant Director
Office of Immigration Litigation
District Court Section

/s/ Samuel P. Go
SAMUEL P. GO
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section

/s/ Neelam Ihsanullah
NEELAM IHSANULLAH
Trial Attorney
Office of Immigration Litigation
District Court Section
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendants-Respondents

## CERTIFICATE OF SERVICE

37

1    I hereby certify that one copy of the foregoing DEFENDANTS'

2    OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY

3    INJUNCTION was served on this 1st day of December, to the following ECF filers:

4

5

6    John David Blair-Loy
     ACLU of San Diego & Imperial
7    Counties
     P.O. Box 87131
8    San Diego, CA 92138
     619-398-4496
9    Fax: 619-232-0036
     Email: dblairloy@aclusandiego.org
10
     Michael H Steinberg
11   Sullivan & Cromwell LLP
     1888 Century Park East Suite 2100
12   Los Angeles, CA 90067-1725
     310-712-6600
13   Fax: 310-712-8800
     Email: steinbergm@sullcrom.com
14
     Ahilan T Arulanantham
15   ACLU Foundation of Southern
     California
16   1313 West Eighth Street
     Los Angeles, CA 90017
17   213-977-5211
     Fax: 213-977-5297
18   Email: aarulanantham@aclu-sc.org

19   James J Preis
     Mental Health Advocacy Services Inc
20   3255 Wilshire Boulevard Suite 902
     Los Angeles, CA 90010
21   213-389-2077
     Fax: 213-389-2595
22   Email: jpreis@mhas-la.org

23   Jennifer L Stark
     ACLU Foundation of Southern
24   California
     1313 West 8th Street
25   Los Angeles, CA 90017
     213-977-5211
26   Fax: 213-417-2211
     Email: jstark@aclu-sc.org
27
     Judy London
28   Public Counsel

610 South Ardmore Avenue
Los Angeles, CA 90005
213-385-2977
Fax: 213-385-9089

Judy Rabinovitz
American Civil Liberties Union
Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Matt Adams
Northwest Immigrant Rights Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8611
Fax: 206-587-4025
Email: matt@nwirp.org

Riddhi Mukopadhyay
Northwest Immigrants' Rights Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8611
Fax: 206-587-4025

Sean Riordan
ACLU Foundation of San Diego &
Imperial Counties
P O Box 87131
San Diego, CA 92138
619-398-4485
Fax: 619-232-0036
Email: sriordan@aclusandiego.org

Talia R Inlender
Public Counsel
610 South Ardmore Avenue

38

1   Los Angeles, CA 90005
    213-385-2977
2   Fax: 213-385-9089
    Email: tinlender@publiccounsel.org
3

4
                                    /s/Neelam Ihsanullah
5                                   Neelam Ihsanullah
                                    Trial Attorney
6                                   District Court Section
                                    Office of Immigration Litigation
7                                   Civil Division
                                    U.S. Department of Justice
8                                   P.O. Box 868, Ben Franklin Station
                                    Washington, D.C. 20044
9                                   Tel: (202) 532-4269
                                    Fax: (202) 616-8962
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28