TONY WEST
United States Department of Justice
Assistant Attorney General
Civil Division
DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section
VICTOR M. LAWRENCE
Principal Assistant Director
SAMUEL P. GO
Senior Litigation Counsel
NEELAM IHSANULLAH
Trial Attorney
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Telephone: (202) 353-9923/(202) 532-4269
    Facsimile: (202) 616-8962
    E-mail: Samuel.Go@usdoj.gov
    Neelam.Ihsanullah@usdoj.gov

Attorneys for Defendants-Respondents

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

JOSE FRANCO-GONZALEZ, et al.,

    Plaintiffs-Petitioners,

    v.

JANET NAPOLITANO, et al.,

    Defendants-Respondents.

NO. CV 10-2211-DMG(DTB)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Judge: Honorable Dolly M. Gee
Hearing Date: April 15, 2011
Hearing Time: 2:00 p.m.
Location: Courtroom 7

[Filed contemporaneously with Declaration & Exhibits]

# TABLE OF CONTENTS

INTRODUCTION . ............................................................................................... 1

ARGUMENT.......................................................................................................... 2

I.      THE NAMED PLAINTIFFS LACK STANDING TO BRING THIS CLASS ACTION. .............................................................................. 2

II.      PLAINTIFFS FAIL TO MEET THE REQUIREMENTS OF RULE 23. . ......................................................................................... 7

     A.      RULE 23(a) REQUIREMENTS................................................. 9

         1.      The Proposed Class Fails to Satisfy Rule 23(a)(1)'s Numerosity Requirement.................................................. 9

         2.      The Proposed Class Fails to Satisfy Rule 23(a)(2)'s Commonality Requirement............................................ 12

         3.      The Proposed Class Fails to Satisfy Rule 23(a)(3)'s Typicality Requirement. ................................................. 15

         4.      The Proposed Class Fails to Satisfy Rule 23(a)(4)'s Adequacy of Representation Requirement............................... 17

     B.      RULE 23(b) REQUIREMENTS. ............................................ 18

III.      THE CLASS DEFINITION IS DEFECTIVE BECAUSE IT IS OVERLY BROAD AND FAILS TO RECOGNIZE REPRESENTATION BY NON-ATTORNEYS. .............................. 20

IV.      BECAUSE PLAINTIFFS SEEK IN PART TO ENJOIN IMPLEMENTATION OF 8 U.S.C. § 1226(a) AND (c) ON A CLASS-WIDE BASIS, THEIR MOTION MUST BE DENIED UNDER 8 U.S.C. § 1252(f)(1). . ....................................................... 24

CONCLUSION.................................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

*Andreenko v. Holder*,

    2010 U.S. Dist. LEXIS 74039 (S.D.N.Y. June 25, 2010). ........................... 15

*Armstrong v. Davis*,

    275 F.3d 849 (9th Cir. 2001). ........................................................... 1, passim

*Berry v. Baca*,

    No. 01-02069, 226 F.R.D. 398 (C.D. Cal. 2005). ....................................... 15

*City of Los Angeles v. Lyons*,

    461 U.S. 95 (1983). ...................................................................................... 2

*Dukes v. Wal-Mart Stores, Inc.*,

    603 F.3d 571 (9th Cir. 2010). ................................................................ 8, 17

*EEOC v. Kovacevich "5" Farms*,

    No. CV-F-06-165, 2007  U.S. Dist. LEXIS 32330 (E.D. Cal Apr. 19, 2007). 9

*East Tex. Motor Freight Sys. v. Rodriguez*,

    431 U.S. 395 (1977). ................................................................................ 2, 13

*Gen. Tel. Co. v. Falcon*,

    457 U.S. 147 (1982). ......................................................................... 8, 12, 15

*Fluellen v. Wetherington*,

    No. 1:02-CV-479-JEC, 2003 U.S. Dist. LEXIS 21712 (N.D. Ga. Mar. 21,

    2003). ......................................................................................................... 23

*Friends of the Earth, Inc. v. Laidlaw*

    *Environmental Services, Inc.,* 528 U.S. 167 (2000). ...................................... 3

*General Tel. Co. v. EEOC*,

    446 U.S. 318 (1980). ..................................................................................... 9

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998). ..................................................................... 12

*Hanon* v. Dataproducts Corp.,

    976 F.2d 497 (9th Cir. 1992). ...................................................................... 16

*Harik v. Cal Teachers Ass'n,*

    326 F.3d 1042 (9th Cir. 2003). ...................................................................... 9

*Haynes v. Dart,*

    2009 U.S. Dist. LEXIS 65742 (N.D. Ill. July 29, 2009). ....................... 20, 22

*Hodgers-Durgin v. De La Vina,*

    199 F.3d 1037 (9th Cir. 1999). ...................................................................... 2

*Lewis v. Casey,*

    518 U.S. 343 (1996). ................................................................................ 1, 2

*Nguyen Da Yen v. Kissinger,*

    70 F.R.D. 656 (N.D. Cal. 1976). .................................................................. 12

*Perez-Olano v. Gonzalez,*

    248 F.R.D. 248 (C.D. Cal. 2008).................................................................... 9

*Rodriguez v. Hayes,*

    591 F.3d 1105 (9th Cir. 2010). .......................................................... 18, 22, 25

*Rutledge v. Electric Hose & Rubber Co.,*

    511 F.2d 668 (9th Cir. 1975). ........................................................................ 8

*Shook v. Bd. of County Comm'rs,*

    543 F.3d 597 (10th Cir. 2010). .................................................................... 20

*Stevens v. Harper,*

    2002 U.S. Dist. LEXIS 19067 (E.D. Cal. Sept. 11, 2002). ............................ 2

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*

    2002 U.S. Dist. LEXIS 10546 (C.D. Cal. May 3, 2002). ............................. 20

*United States Parole Comm'n v. Geraghty,*

    445 U.S. 388 (1980). ...................................................................................... 6

*Walters v. Reno,*

    145 F.3d 1032 (9th Cir. 1998). ...................................................................... 8

iii

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001). ....................................................................... 8

## STATUTES

8 U.S.C. § 1221 ................................................................................. 24, 25

8 U.S.C. § 1226(a). ........................................................................... 17, 24

8 U.S.C. § 1226(c). .................................................................................. 17

8 U.S.C. § 1231................................................................................... 24, 25

8 U.S.C. § 1252(f)(1). ................................................................... 1, 24, 25

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(a). .................................................................... 1, *passim*

Fed. R. Civ. P. 23(a)(1)................................................................... 9, 11

Fed. R. Civ. P. 23(a)(2)......................................................................... 12

Fed. R. Civ. P. 23(a)(3)......................................................................... 15

Fed. R. Civ. P. 23(a)(4)......................................................................... 17

Fed. R. Civ. P. 23(b). ....................................................................... 8, 18

Fed. R. Civ. P. 23(b)(1). ......................................................................... 8

Fed. R. Civ. P. 23(b)(2). ............................................................. 1, passim

Fed. R. Civ. P. 23(b)(3). ......................................................................... 8

Fed. R. Civ. P. 26(a)(1)(A)(i). .............................................................. 11

Fed  R. Civ. P. 26(e)(1)(A). ................................................................. 11

## REGULATIONS

8 C.F.R. § 236.1(d)(1)............................................................................ 17

8 C.F.R. § 287.7(a)................................................................................... 6

8 C.F.R. § 1240.4. ....................................................................... 13, 16, 23

v

# **INTRODUCTION**

Plaintiffs' motion for class certification should be denied for several reasons: the Named Plaintiffs lack standing to litigate this action; the putative class fails to meet the requirements for class treatment set forth in Fed. R. Civ. P. 23(a) and 23(b)(2); the class definition is defective because it fails to define an ascertainable and identifiable class; and the court lacks jurisdiction under 8 U.S.C. § 1252(f)(1) to mandate bond hearings on a class-wide basis.  But perhaps the most salient reason of all for denying class certification is the fact that Plaintiffs have demonstrated neither a widespread policy in violation of the law nor injury beyond a few isolated individuals.  *See* Class Motion ("Mot."), Dkt. # 126.

Plaintiffs attempt to depict a systemic failure by Defendants to accommodate the needs of mentally incompetent individuals who are detained and in removal proceedings.  But instead, Plaintiffs have simply identified a nascent area of the law, where a few immigration judges and detention officers may not have applied the existing safeguards effectively.  In doing so, Plaintiffs have simultaneously shed light on scenarios that evidence the immigration authorities' sincere desire to identify, treat and accommodate the mentally incompetent in detention and in removal proceedings, and the effectiveness of these procedures when correctly applied.  Consequently, Plaintiffs' action does not lend itself to class treatment, as there is no uniform injurious practice or policy applicable to the class for which Plaintiffs can request uniform relief.

"The scope of injunctive relief is dictated by the extent of the violation established."  *Lewis v. Casey*, 518 U.S. 343, 359 (1996).  "If injunctive relief is premised upon only a few isolated violations affecting a narrow range of plaintiffs, its scope must be limited accordingly."  *Armstrong v. Davis,* 275 F.3d 849, 870 (9th Cir. 2001).  "It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of

government in such fashion as to comply with the laws and the Constitution." *Lewis*, 518 U.S. at 349.

## ARGUMENT

## I.    THE NAMED PLAINTIFFS LACK STANDING TO BRING THIS CLASS ACTION.

As a preliminary matter, this Court must first address whether or not the Named Plaintiffs have standing to obtain the class-wide injunctive and declaratory relief they seek.  As one court has explained, "In a proposed class action . . . where the plaintiffs seek sweeping injunctive relief, questions relating to the named plaintiffs' standing and entitlement to equitable relief, the propriety of class certification, and the availability of systemwide relief will often overlap . . . . Although these inquiries may intersect, standing and entitlement to equitable relief are threshold jurisdictional requirements that must be satisfied prior to class certification." *Stevens v. Harper*, No. S-01-0675, 2002 U.S. Dist. LEXIS 19067 at *11 (E.D. Cal. Sept. 11, 2002) (internal citations omitted).

A named plaintiff must be a member of the class he purports to represent and must "possess the same interest and suffer the same injury" as his fellow class members.  *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977); *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief").  Moreover, to demonstrate standing for the purpose of requesting injunctive relief, the named plaintiff must establish a credible threat of future injury.  *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-04 (1983).  *See also Armstrong v. Davis*, 275 F.3d at 860-61 ("Where, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate that he is realistically threatened by a repetition of [the violation.]" ).  Additionally, in the class action context, the named plaintiff must establish standing "separately for each form of relief sought." *Stevens v. Harper,* 2002 U.S. Dist. LEXIS, at **22

2

(*quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 185 (2000)).

In their Amended Complaint and Motion for Class Certification, Plaintiffs seek certification of a purported class defined as:

> [A]ll individuals who are or will be in DHS custody for removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings.

Amended Complaint ("Compl."), Dkt. # 64 at ¶ 106; Class Mot. at 8. Plaintiffs also request certification of two subclasses. The first is defined as "[I]ndividuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings." Amended Compl. at ¶ 107; Class Mot. at 8. The second is defined as "[I]ndividuals in the above-named Plaintiff Class who have been detained for more than six months." Amended Compl. at ¶ 108; Class Mot. at 8.

In the present case, an examination of the underlying facts makes clear that none of the Named Plaintiffs possesses standing to bring this class action and obtain the sought-after relief of competency hearings, appointment of counsel or a qualified representative, and bond hearings for those detained for over six months. The following is a list of the relevant facts:

- Plaintiff Ever Francisco Martinez-Rivas ("Mr. Martinez") was adjudged to be incompetent and his removal proceedings terminated, Dkt. # 57-13 at 7-8. This occurred after the Department of Homeland Security ("DHS") brought his mental health problems to the immigration court's attention in a filing.

3

Dkt. # 57-12.  As a result of this Court's order on a preliminary injunction motion brought on his behalf, Defendants secured *pro bono* counsel to represent Mr. Martinez in his appeal before the Board of Immigration Appeals ("BIA"), *see* Ex. 21 (Form EOIR-27 for Elizabeth H. McGrail), and for his bond hearing, *see* Ex. 22 (Form EOIR-28 for Veronica Barba), and a bond hearing was held in his case on January 26, 2011.  *See* Ex. 23 (Bond Order dated Jan. 26, 2011).

- Pursuant to this Court's order on the first preliminary injunction, Defendants also secured *pro bono* counsel to represent Plaintiff Aleksandr Petrovich Khukhryanskiy ("Mr. Khukhryanskiy") in his appeal before the BIA, *see* Ex. 24 (Form EOIR-27 for Quin Sorenson), and in his bond hearing, see Ex. 25 (Forms EOIR-28 for Sul Chung and Michael Vastine).  Defendants conducted a bond hearing in Mr. Khukhryanskiy's case on January 26, 2011. *See* Ex. 26 (Bond Order dated Jan. 27, 2011).

- Plaintiff Maksim Zhalezny ("Mr. Zhalezny") is currently in removal proceedings before the San Francisco Immigration Court.  Mr. Zhalezny received a competency hearing before the Immigration Judge on October 18, 2010.  Defendants' ("Def.") Ex. 15 at 90-108.  The Immigration Judge found Mr. Zhalezny incompetent, and decided to recognize his father, Piotr Zhalezny, as Mr. Zhalezny's representative. *Id.* at 109.  Piotr Zhalezny initially consented to the representation, and filed an asylum application on his son's behalf. *Id.* at 117.  Piotr has since filed a request to withdraw his appearance.  Pl. Ex. 111.  A hearing to determine the merits of the asylum application is currently scheduled for March 24, 2011.  Dkt. # 137.

- Plaintiff Jose Chavez ("Mr. Chavez") was first placed in removal proceedings on June 23, 2006.  Plaintiffs' ("Pl.") Ex. 126 at 1.  After a hearing on his application for asylum, Mr. Chavez was ordered removed on December 7, 2006.  Pl. Ex. 127 at 6.  Through the assistance of *pro bono*

4

counsel, he was able to reopen his removal proceedings.  Pl. Ex. 128.  On September 18, 2008, DHS administratively closed his removal proceedings so that he could apply for asylum under the ABC Settlement before U.S. Citizenship and Immigration Services ("USCIS").  Pl. Ex. 122.  U.S. Immigration and Customs Enforcement ("ICE") released Mr. Chavez from custody on the same date.  Pl. Ex. 123 at 2.  However, because he failed to appear for his asylum interview, DHS again placed him in removal proceedings by issuing a new Notice to Appear.  Pl. Exh. 129.  With the assistance of his federal court counsel, the ACLU of Southern California, Mr. Chavez was able to terminate his second Notice to Appear.  *See* Pl. Ex. 129, 130.  He is presently hospitalized in the custody of the State of California while pending criminal charges.  *See* Cal. Penal Code § 1370(a)(1)(B)(i); Pl. Ex. 125.[1]

As this recital of the relevant facts makes clear, the Named Plaintiffs are not even members of their own proposed class.  Messrs. Martinez and Khukhyranskiy were both provided counsel as a result of their motion for a preliminary injunction, see Ex. 26-26, and thus cannot be said to *"presently* lack counsel in their detention or removal proceedings."  As such, they do not meet the class definition.  For the same reason, they lack standing to pursue the relief of appointment of counsel.  Nor do they have standing to pursue the request for bond hearings, as both men have already received bond hearings before the immigration judge and, cannot demonstrate under *Lyons* that they are realistically threatened by

---

[1] Plaintiffs explain that, because Jose Antonio Franco-Gonzalez and Jonas Woldemariam have both retained counsel independently of this litigation, "to simplify the issues on this Motion, Plaintiffs do not now seek to identify these individuals at this time as class representatives."  Class Mot. at 7 n.9.  Thus, Plaintiffs implicitly recognize that these individuals are not members of the class and lack standing to bring this class action based on their retention of counsel.

a repetition of the same alleged violation of law – that is, prolonged detention – entitling them to bond hearings in the future.[2]

Similarly, Mr. Chavez fails to meet the class definition on the basis that he is not in DHS custody, nor is he likely to be. *See* Amended Compl. at ¶ 106; Class Mot. at 8. He is currently hospitalized in state custody pending criminal charges, and is not subject to an immigration detainer that would make his return to DHS custody imminent.[3] At this point, given his hospitalization, the pending state criminal prosecution and a potential criminal sentence, it is extremely speculative as to whether ICE will ever be able to re-detain Mr. Chavez and re-calendar his removal proceedings.

---

[2] The relation-back doctrine does not apply to save Messrs. Martinez and Khukhryanskiy's claims from mootness. First, the "capable of repetition, yet evading review" exception, s*ee United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980), does not apply because there is no evidence that Messrs. Martinez and Khukhryanskiy may once again be subject to (1) mandatory detention without a bond hearing, or (2) placed in removal proceedings without the assistance of representation. Secondly, it was Messrs. Martinez and Khukhryanskiy's own choice to bring a preliminary injunction motion and resolve their own claims first, rather than proceed with a class certification motion earlier in the litigation. *See Geraghty*, 445 U.S. at 398 ("When . . . there is no chance that the named plaintiff's expired claim will reoccur, mootness can still be avoided through certification of a class prior to expiration of the named plaintiff's personal claim"). The absence of class certification, as well as that of a class with a live case or controversy, counsel against finding that Messrs. Martinez's and Khukhryanskiy's claims remain live here.

[3] An immigration detainer "serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7(a). An immigration detainer may be issued by an authorized immigration officer at any time to any other Federal, State, or local law enforcement agency. *Id.*

Finally, Mr. Zhalezny also lacks standing to bring this class action.  As explained below, the class definition should be modified to take into account other potential "qualified representatives" who are not attorneys.  *See infra* p.23.  Because Mr. Zhalezny's removal proceedings are still ongoing, it is possible that he may never be a part of Plaintiffs' proposed class if his father or another qualified representative represents him at his merits hearing.  But until that time has passed, it is not known whether Mr. Zhalezny will suffer any injury at all regarding his ability to secure representation;  any possible injury is merely theoretical at this time.  As for his standing to request a competency hearing, Mr. Zhalezny has already been granted a competency hearing, and there is no reason to assume that he will be placed in removal proceedings again, and denied a competency hearing then.  In the absence of a "credible threat" of future injury, Mr. Zhalezny lacks standing to bring this class under the heightened standard applicable to requests for injunctive relief.[4]

Because none of the Named Plaintiffs meets the class definition or possesses standing to represent the class and/or its subclasses, this class action must fail.

## II.  PLAINTIFFS FAIL TO MEET THE REQUIREMENTS OF RULE 23.

Even if the Court finds that the Named Plaintiffs possess standing, Plaintiffs' class still fails to meet the necessary requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure.  Under this rule, a party seeking certification of a proposed class must demonstrate compliance with four prerequisites set forth in Rule 23(a), namely:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of claims or

---

[4] Moreover, Mr. Zhalezny cannot establish irreparable injury because any removal order entered against him by the immigration judge is appealable.

7

defenses of the class ["typicality"], and (4) the representative
parties will fairly and adequately protect the interests of the
class ["adequacy of representation"].

Fed. R. Civ. P. 23(a); *see also, e.g., Armstrong v. Davis*, 275 F.3d at 868; *Walters
v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998).  In addition to meeting the
requirements set forth in Rule 23(a), the class must also qualify under Rule
23(b)(1), (2), or (3).  *Armstrong,* 275 F.3d at 868; *Walters,* 145 F.3d at 1045.  Rule
23(b)(2) permits class actions for declaratory or injunctive relief where "the party
opposing the class has acted or refused to act on grounds generally applicable to
the class."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs purport to bring their class action
under Rule 23(b)(2).  Dkt. # 126 at 7.

The party seeking class certification – here the Plaintiffs – bears the burden
of proof in demonstrating that they have satisfied all four Rule 23(a) elements and
that their class lawsuit falls within one of the three kinds of actions permitted under
Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.
2001).   The failure to meet "any one of Rule 23's requirements destroys the
alleged class action."  *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673
(9th Cir. 1975).  The Supreme Court has held that "actual, not presumed,
conformance with Rule 23(a) [is] indispensable."  *Gen. Tel. Co. v. Falcon*, 457
U.S. 147, 161 (1982).  Consequently, the district court must conduct a rigorous
analysis to determine that the requirements of Rule 23 have been met.  *Id.*  If the
court is not fully satisfied, the class should not be certified, *id.*  The court retains
authority to modify or de-certify the class as appropriate even after a class has been
certified.  *Id.* at 160.  When reviewing a motion for class certification, the court is
forbidden from "analyz[ing] any portion of the merits of a claim that do not
overlap with the Rule 23 requirements."  *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d
571, 594 (9th Cir. 2010) (en banc).

Here, Plaintiffs fail to carry their burden of proving that their class satisfies the four prerequisites listed in Rule 23(a).  Moreover, the proposed class is not maintainable under Rule 23(b)(2).

**A. RULE 23(a) REQUIREMENTS**

**1. The Proposed Class Fails to Satisfy Rule 23(a)(1)'s Numerosity Requirement.**

In order to satisfy Rule 23(a)(1), Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Analysis of numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980).  While a class of at least forty members may satisfy numerosity, *see EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165, 2007 U.S. Dist. LEXIS 32330, at *21 (E.D. Cal Apr. 19, 2007), the Supreme Court has explained that a putative class of fifteen members "would be too small to meet the numerosity requirement," relying on cases in which certification was denied to classes in the range of 16- to 37-members. *General Tel. Co. v. EEOC*, 446 U.S. at 330 & n.14. Thus, in *Harik v. Cal Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003), the Ninth Circuit refused to extend certification to classes consisting of seven, nine and ten members for lack of numerosity.  While plaintiffs need not calculate the precise number of class members, "mere speculation" as to satisfaction of the numerosity requirement does not satisfy Rule 23(a)(1). *Perez-Olano v. Gonzalez*, 248 F.R.D. 248 (C.D. Cal. 2008).

Here, Plaintiffs have presented the Court with the names of six potential class members – the four Named Representatives, as well as Plaintiffs Jose Antonio Franco-Gonzalez and Jonas Woldemariam.  Dkt. # 126 at 7.  Plaintiffs have also submitted two declarations, one by the Director of the American Bar Association Immigrant Justice Project (IJP) regarding the Otay Mesa Detention Facility, Pl. Exh. 133, and another by the Florence Immigrant and Refugee Rights

Project's Mental Health Equal Justice Works Fellow regarding the Eloy Detention Center and other detention centers located in Florence, Arizona, Pl. Exh. 134.   The former declarant claims that one of the IJP's staff attorneys personally met with at least 23 different individuals with severe mental health issues between July 2010 and December 2010 at the San Diego Correctional Facility, Pl. Exh. 133 at ¶ 7, and estimates that on a daily basis, approximately 50 individuals are detained at the facility who present a "serious mental health condition."  Pl. Exh. 133 at ¶ 9.  The latter declarant claims that, since September 2010, she has met with approximately 20 detainees housed at either Eloy or one of the other Florence detention centers "who, due to their mental disabilities, may not be competent to represent themselves in immigration proceedings."  Pl. Exh. 134 at ¶ 3.

Plaintiffs' declarations should be disregarded for purposes of the Court's analysis on numerosity.  Despite pointing out the existence of 43 additional potential class members, Plaintiffs fail to provide a single name out of this group.  Furthermore, neither of the declarants attests to any medical expertise in diagnosing and treating mentally disordered individuals, or even any legal expertise in determining whether an individual is "mentally incompetent."  From these declarations, it is not even clear whether the aliens identified in this aggregate manner are still in Defendants' custody or are still in removal proceedings – both prerequisites to satisfying the class definition.

Besides these declarations, Plaintiffs also allege numerosity by claiming that, "[b]ased on Government reports, in Fiscal Year 2009, between 475 and 1,187 unrepresented mentally ill detainees in California, Arizona, and Washington *completed* their removal proceedings in that year."  *See* Class Mot. at 15.  However, Plaintiffs' calculations by which they arrived at these numbers are inaccurate and based on questionable statistics.  Plaintiffs fail to recognize that the estimated percentage of the number of individuals suffering from serious mental illness which they use – 2 to 5 % – relates to the <u>total </u>detainee population in ICE

10

custody; as such, this statistic is not the appropriate conversion factor for their calculation.  *See* Class Mot. at 4-5 & n.3; Pl. Ex. 115.  Moreover, this "2 to 5 %" statistic does not come from an official source of detention statistics, and lacks indicia of reliability.  *See* Pl. Ex. 115 (explaining that "2 to 5 %" statistic was an estimate "based on general population and correctional estimates").

The flaws in Plaintiffs' numerosity argument are even more glaring for the two subclasses.  Class Mot. at 17-18.  For instance, Plaintiffs can provide no basis for the numerosity of Sub-Class 1 other than by vaguely asserting that "[a] substantial proportion of detainees with indicia of severe mental illness would likely be found incompetent to represent themselves in immigration proceedings and as such would be members of Sub-Class 1."  Class Mot. at 17.  This argument ignores the fact that mental illness may severely impact an individual's life without rendering him incompetent for legal proceedings.   It also ignores the range of mental illnesses which may be treated to restore competency.  As for Sub-Class 2, Plaintiffs rely on a study which concluded that the removal process averaged 424-694 days for decisions in favor of the alien.  *See* Class Mot. at 17, Pl. Ex. 135 at 96.  However, this study does not appear to have only examined detained cases, but also included non-detained cases as well, which typically move much more slowly through the immigration court system.  *See id.* (discussing Houston non-detained court).

Ultimately, Plaintiffs fail to satisfy their burden of showing that the class is so numerous that joinder is impracticable under Rule 23(a)(1).  As Plaintiffs filed the first complaint in this case on March 26, 2010, they have had the ability to locate and add additional named plaintiffs to this litigation for nearly a year.  Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i) and 26(e)(1)(A), they also have a duty to identify persons who have discoverable information, which would include any potential class members, and to update Defendants as these people become known to them throughout this litigation.  Yet, despite the passage of almost twelve

11

months since this litigation has started and a duty to supplement their initial disclosures, Plaintiffs have neither identified any other potential class members, nor added anyone to their proposed class.  *See* Ex. 27 (Pl. Initial Disclosures dated Jan. 24, 2011).  Six putative class members who are listed in the complaint, plus Plaintiffs' vague assertions that the class is numerous, cannot satisfy Rule 23's numerosity requirement to certify a class purportedly covering three states.  If the numbers were as large as Plaintiffs say they are, surely additional plaintiffs would have been identified by now.

## 2. The Proposed Class Fails to Satisfy Rule 23(a)(2)'s Commonality Requirement.

The second prerequisite to class certification under Rule 23(a) is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Referred to as the commonality requirement, this element is construed permissively by the courts, such that "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  A plaintiff fails to demonstrate commonality when he cannot connect his individual claim with "the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact."  *Falcon*, 457 U.S. at 157.  Similarly, commonality cannot be established where there is wide factual variation requiring individual adjudications of each class member's claims.  *See Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656 (N.D. Cal. 1976).

Plaintiffs err in describing this litigation as a civil rights suit that "challenges a system-wide practice or policy that affects all of the putative class members." Class Mot. at 19 (*quoting Armstrong v. Davis*, 275 F.3d at 868).  Even in a civil rights suit, "careful attention to the requirements of Fed. Rule Civ. Proc. 23

12

remains nonetheless indispensable." *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 405 (1977).  With regards to their competency and counsel claims, Plaintiffs fail to produce any evidence of a common practice or policy by Defendants to deny competency hearings and representation to mentally incompetent aliens and infringe on Plaintiffs' alleged right to a reasonable accommodation of their disability in removal proceedings.  Indeed, as Plaintiff Zhalezny's case demonstrates, Immigration Judges already conduct competency hearings and make significant efforts to match up unrepresented incompetent aliens with *pro bono* counsel before proceeding with non-attorney representation under 8 C.F.R. § 1240.4.  This practice is in accordance with guidance provided by the Immigration Judge Benchbook, which specifically mentions that immigration judges may make findings on competency, and encourages immigration judges to "[u]se existing tools to permit and assist a respondent in obtaining counsel," such as by contacting the Executive Office for Immigration Review's Legal Orientation Program.  Ex. 28, U.S. Dep't of Justice, Executive Office of Immigration Review, *Immigration Judge Benchbook* ("Benchbook"), "Mental Health Issues," Part II.B.3.d.iii, *available at* http://www.justice.gov/eoir/vll/benchbook/tools/MHI/. Because Defendants' policy is to encourage that competency determinations be made and *pro bono* counsel be located for possibly incompetent aliens, Plaintiffs' allegation of a common injury which merits class treatment is unsustainable.

Even assuming that Plaintiffs' allegations are true and all four Named Plaintiffs received inadequate safeguards in their removal proceedings, at best, Plaintiffs have only exposed problems in the treatment of four mentally incompetent aliens before five immigration courts in two states.[5]  Plaintiffs have

---

[5] None of the Plaintiffs have been in detention or removal proceedings in Arizona. Mr. Khuhkyranskiy appeared before the Tacoma Immigration Court in Washington State.  The rest of the Plaintiffs appeared before immigration courts in California: Mr. Martinez appeared before the East Mesa Immigration Court in San Diego, California; Mr. Zhalezny and Mr. Woldemariam appeared before the San

presented no evidence of a common course of action in the thirteen immigration courts spanning the three states.  The practices of a handful of immigration judges do not establish a persistent pattern or practice of disability discrimination, or the need for class-wide treatment to ensure reasonable accommodations for mentally incompetent aliens.  With only four cases at hand, Plaintiffs argue that the Government fails to provide adequate procedural safeguards in all thirteen immigration courts in the three states, and that all 82 immigration judges who cover these states fail to provide adequate accommodations and due process to mentally incompetent aliens.  But Plaintiffs' reliance on cases before only four immigration judges out of 82 in the region – less than five percent – falls far short of a showing of a system-wide practice.  During the time period beginning with the filing of the complaint to the present, Defendants have completed approximately 30,000[6] removal proceedings of detainees in these three states.  Four examples of proceedings with allegedly insufficient safeguards out of 30,000 proceedings conducted is not sufficient to show a common set of issues, warranting class treatment.

Plaintiffs present five questions of law that they allege are common to the class.  Class Mot. at 19-20.  However, these questions are insufficient to establish commonality, because they are incorrectly premised on Plaintiffs' theory that *each and every* immigration court in the three states fails to conduct competency

---

Francisco Immigration Court; Mr. Chavez appeared before the East Mesa Immigration Court and the Los Angeles Immigration Court; and Mr. Franco Gonzales appeared before the Lancaster, San Pedro, Los Angeles and LA3 Immigration Courts, all located in southern California.  *See* EOIR Immigration Court Listing, *available at* http://www.justice.gov/eoir/sibpages/ICadr.htm.
[6] The immigration courts in California, Arizona and Washington conducted 38,912 removal proceedings for detained aliens in Fiscal Year 2009, *see* Class Mot. at 4 & n.4, and 31,187 in Fiscal Year 2010, *see* Ex. 29, U.S. Dep't of Justice, Executive Office of Immigration Review, 2010 Statistical Year Book (Jan. 2011), p. O-3, *available at* http://www.justice.gov/eoir/statspub/fy10syb.pdf.

evaluations, regularly proceeds with removal proceedings against unrepresented mentally incompetent aliens, and applies insufficient safeguards to the mentally disabled.  *See* Class Mot. at 19.  Moreover, Plaintiffs' request for bond hearings "for those who face prolonged detention due to delays caused by their mental disability" also fails to raise common questions of law.  *See* Class Mot. at 19. Analyzing whether detention has become "prolonged," and if the delay is caused by the class members' mental disability, will be a highly individualized, fact-specific analysis.  *See, e.g., Andreenko v. Holder,* 2010 U.S. Dist. LEXIS 74039 (S.D.N.Y. June 25, 2010) (explaining that "courts after *Demore* have engaged in case-by-case inquiries . . . considering factors such as the duration of detention, the likelihood of flight, potential danger to the community, and the probability of actual removal.").  For these reasons, Plaintiffs have failed to show that questions of law or fact are common to the proposed class.

### 3. The Proposed Class Fails to Satisfy Rule 23(a)(3)'s Typicality Requirement.

Plaintiffs have likewise failed to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This is known as the typicality requirement.  As one court has explained:

> A plaintiff's claim meets [the typicality] requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.  The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Berry v. Baca,* No. 01-02069 DDP(SHx), 226 F.R.D. 398, 404 (C.D. Cal. 2005). *See also Falcon,* 457 U.S. at 156 ("We have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the

15

same injury as the class member.").  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs have not shown that the Named Plaintiffs have the same interests or suffered the same injury as the members of the putative class.  For example:

- None of the Named Plaintiffs were detained in, or had their removal proceedings heard in, Arizona.

- One of the Named Plaintiffs, Mr. Chavez, is not in removal proceedings.  His case has been closed, and no appeal is pending.  As pointed out earlier, Mr. Chavez is also atypical because he is not in ICE custody but that of the State of California awaiting criminal charges; the class is defined to include "all individuals *who are or will be* in DHS custody for removal proceedings," and there is no evidence that Mr. Chavez will ever be a part of the proposed class.

- Mr. Zhalezny's case is atypical because it involves the issue of whether or not a family member may serve as an adequate representative for his incompetent relative in removal proceedings.  The class, as currently defined, does not even take into account whether a non-attorney representative is available to appear on behalf of a putative class member under 8 C.F.R. § 1240.4.

- Messrs. Khukhyranskiy's and Martinez's claims are atypical because their cases are both pending before the BIA, instead of the Immigration Court.  As an appellate body, the BIA mostly issues decisions on the briefs and does not engage in *de novo* fact-finding in the course of deciding appeals.  The procedural distinctions between the BIA and the Immigration Courts, which are trial courts, produce very different kinds of proceedings, and aliens subject to one type are in a much different position from those subject to the other.  Thus, the nature of any accommodation needed by an alien before the

16

BIA may differ significantly from the nature of any accommodation needed by an alien in Immigration Court, making the overall claims atypical to one another.

- Messrs. Khukhryanskiy, Martinez and Zhalezny were detained pursuant to the mandatory detention statute, 8 U.S.C. § 1226(c).  Yet, Plaintiffs' proposed class consists of any alien detained during or immediately before his removal proceedings and, as such, encompasses aliens held pursuant to the discretionary detention statute at 8 U.S.C. § 1226(a).  These putative class members will have already received a bond determination from ICE and have the right to a bond redetermination hearing before an immigration judge, *see* 8 C.F.R. § 236.1(d)(1); thus, they are less likely to be found to have endured "prolonged" detention than those who were mandatorily detained and never received a bond hearing.

The variety of factual differences shown among just the four Named Plaintiffs demonstrates that these individuals are neither typical of each other, nor of the broader class of aliens they seek to represent.

### 4.  The Proposed Class Fails to Satisfy Rule 23(a)(4)'s Adequacy of Representation Requirement.

Additionally, Plaintiffs cannot demonstrate that they are adequate representatives of the class they purport to represent.  *See* Fed. R. Civ. P. 23(a)(4).  "This factor requires:  (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."  *Dukes v. Wal-Mart*, Inc., 603 F.3d 571 (9th Cir. 2010).  While Defendants do not question that Plaintiffs' proposed class counsel can serve as adequate representatives for the class, the Named Plaintiffs are a different matter because they lack standing, *see supra* pp. 2-7, and because their claims are atypical from that of the class and may give rise to conflicts of interest, *see supra* pp. 15-17.  For example, although Plaintiffs insist that Mr.

17

Zhalezny be afforded representation by a qualified representative other than his father, it is possible that a class member may desire representation from a relative instead.  Although Mr. Chavez may allege that he is only a step away from being placed back in removal proceedings due to the fact that his proceedings were administratively closed, other class members may want to argue that once the Immigration Judge administratively closes a matter, aliens should not be treated as though they are still subject to removal proceedings.  For these reasons, and the standing and typicality concerns addressed above, the Named Plaintiffs cannot adequately protect the interests of the class.

## B. RULE 23(b) REQUIREMENTS

Additionally, Plaintiffs fail to demonstrate that the proposed class is maintainable under one of the paragraphs of Rule 23(b).  Because Plaintiffs seek injunctive and declaratory relief, they ask this Court to certify their class pursuant to subsection (b)(2), which applies if the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Thus, pursuant to Rule 23(b)(2), Plaintiffs must "seek uniform relief from a practice applicable to all of them." *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).

However, as explained in the section on commonality, *see supra* pp. 12-15, the Named Plaintiffs do not allege any act or refusal to act by Defendants, or even an exhaustive list of such acts, that are generally applicable to them, or the class as a whole.  This Court should not assume, based on the evidence Plaintiffs have marshaled to date, that every immigration judge across the states of California, Arizona, and Washington will fail to provide a reasonable accommodation and due process to a mentally incompetent alien in his detention or removal proceeding simply because the mentally incompetent alien "presently lacks counsel" to assist in his case.

18

A fact intensive inquiry is necessary to determine whether an unrepresented mentally incompetent alien in removal proceedings will be injured.  This is because every case presents different circumstances, and Immigration Judges may have different ways of dealing with the specific mentally incompetent aliens before them.  The Immigration Judge Benchbook outlines some of the different tactics an Immigration Judge can employ to safeguard the rights of unrepresented mentally ill aliens:

> Such steps may include but are not limited to administratively closing or terminating proceedings, or searching the record for any potentially available relief if removability is established. It may also include continuing hearings to allow the additional accrual of time to see if the respondent's mental health status improves, assisting the respondent in presenting his or her direct testimony by asking questions, entering any judicially noticeable documents into the record sua sponte, and/or reserving appeal on behalf of a respondent if the respondent does not prevail.

Exh. 28, *Immigration Judge Benchbook* ("Benchbook"), "Mental Health Issues," Part II.B.2.  Although the multiplicity of such tools lacks the clarity of a "one size fits all" approach, all of these tactics may, and do, serve to protect the rights of the mentally incompetent in their detention and removal proceedings, as they are specially crafted for the alien and his needs.  On the flip side, though, class treatment is simply not appropriate in such a context, because a fact-intensive inquiry is vital to determining the appropriateness of the accommodation.

Simply consider the preliminary injunction motions brought on behalf of Messrs. Martinez and Khukhryanskiy and Mr. Zhalezny earlier in this litigation.  Analysis of each motion was highly fact-specific and required significant briefing to determine whether accommodations were necessary and what form they should

take.  Each case presented a variety of different claims and necessitated an intensive examination of what happened in each alien's immigration proceedings, making the issues neither common nor typical.  For the same reasons, these cases should not all be aggregated for class treatment.  The accommodations provided to unrepresented mentally ill aliens in detention and removal proceedings require a highly factual analysis that simply does not lend itself to the class form.

Because "[a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant," 5-23 Moore's Federal Practice – Civil § 23.43, the Court should deny certification of the proposed class.  *See also Shook v. Bd. of County Comm'rs,* 543 F.3d 597, 604 (10th Cir. 2010) (explaining that a class certified under Rule 23(b)(2) "must be amenable to uniform group remedies").

## III. THE CLASS DEFINITION IS DEFECTIVE BECAUSE IT IS OVERLY BROAD AND FAILS TO RECOGNIZE REPRESENTATION BY NON-ATTORNEYS.

Plaintiffs' motion for class certification should also be denied due to the defective nature of their class definition.  In particular, Plaintiffs fail to satisfy the initial requirement that they define an ascertainable and identifiable class and go beyond this Court's holdings on a suitable accommodation under the Rehabilitation Act by referring to "counsel" rather than a "qualified representative."

"Prior to class certification, plaintiffs must first define an ascertainable and identifiable class." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,* No. 99-07796, 2002 U.S. Dist. LEXIS 10546 (C.D. Cal. May 3, 2002).  "The class definition cannot be so broad as to include individuals without standing to maintain the action on their own behalf." *Haynes v. Dart*, No. 08 C 4834, 2009 U.S. Dist. LEXIS 65742, at *10 (N.D. Ill. July 29, 2009).

As their motion makes clear, Plaintiffs' class definition seeks to reach any and all individuals "who presently lack counsel in their detention or removal proceedings," without distinguishing the stage of proceedings.  Dkt. # 126 at 8.  As a result, Plaintiffs' class would, by definition, encompass individuals who have not even made their first appearance before the immigration judge, as well as individuals for whom the immigration judge may be actively making efforts to facilitate referral to *pro bono* counsel or other representation early in the alien's removal proceedings, say, at a second or third master calendar hearing only weeks into the alien's detention.  Plaintiffs' class definition thus ignores the possibility that representation may be secured for the proposed class member at a point in the future, even though he is not "presently represented" by counsel.

As Plaintiff Zhalezny's case demonstrates, however, Immigration Judges make ongoing efforts to notify unrepresented aliens of their right to counsel, and mechanisms are in place to assist them with obtaining representation.  In order to facilitate an alien's search for counsel, Immigration Judges routinely grant continuances to delay the discussion of substantive legal matters and the scheduling of merits hearings on any applications for relief or challenges to removability, particularly for mentally ill aliens.[7]  They may, as the immigration judge did in Plaintiff Zhalezny's case, take an active role to facilitate representation by *pro bono* groups in the area.[8]

---

[7] *See also* Ex. 28, *Immigration Judge Benchbook* ("Benchbook"), "Mental Health Issues," Part II.B.2 (explaining, "it is recommended that Immigration Judges minimize substantive discussions during this period and focus on seeing that respondents with mental health issues be represented in proceedings. To this end, Immigration Judges should consider granting multiple continuances with the goal of securing representation, being mindful, however, of the importance of deciding detained cases expeditiously").

[8] *See id.* at Part II.B.1-3.

21

The class definition goes far beyond describing *future* class members. *See Rodriguez*, 591 F.3d at 1118 (explaining, "The inclusion of future class members in a class is not itself unusual or objectionable"). Rather, Plaintiffs' class definition is so sweeping that it is quite possible that the vast majority of this proposed class may consist of individuals for whom the alien or Immigration Judge may actively be searching for counsel. The fact that this is a Rule 23(b)(2) class, as opposed to another type of class action, does not alleviate this concern with such an amorphous class definition.

Another significant problem with Plaintiffs' proposed class definition is that it fails to define "serious mental disorder or defect" as well as "incompetent." Due to the absence of clarification within the class definition, it is impossible to know how these terms should be employed, and just exactly who is covered by them. For instance, the class definition does not address an individual whom medication may restore to competency – will such an individual be a part of the class? Moreover, any class definition that does not recognize the difference between individuals who are incompetent for purposes of their removal proceedings and those whose "serious mental disorder or defect" does not impair their cognitive abilities to the extent that they are rendered legally incompetent is clearly overbroad, as the latter group has suffered no injury and needs no remedy even under Plaintiffs' understanding of the case.

The class definition also fails to distinguish between individuals suffering from intellectual disabilities and those suffering from mental illness. Although this problem goes to the issues of typicality, commonality and adequacy of representation,[9] it also makes clear the vagueness inherent in the term "serious mental disorder or defect." Several courts have refused to extend class

_____

[9] For instance, none of the Named Plaintiffs has been identified as suffering from an intellectual disability. As such, they would serve as poor representatives for a class that also included individuals diagnosed only with an intellectual disability.

certification where the class definition fails to create a class of mentally ill/disordered individuals that is ascertainable and identifiable.  *See, e.g., Fluellen v. Wetherington*, No. 1:02-CV-479-JEC, 2003 U.S. Dist. LEXIS 21712, at *32 (N.D. Ga. Mar. 21, 2003) ("It seems that a class definition seeking to encompass all of the 'mentally ill,' without some sort of medical or psychological definition to guide the Court, now and/or in the future, is so broad and vague as to be unworkable."); *Haynes v. Dart,* 2009 U.S. Dist. LEXIS 65742, at * 10 ("Without a clear idea of what plaintiffs mean by 'mental illness,' the court cannot know who is in the class and who is not").  This Court should similarly reject Plaintiffs' overbroad class definition.

Finally, Plaintiffs' class definition is also defective because it fails to recognize that an incompetent alien may be represented by a non-attorney.  *See* 8 C.F.R. § 1240.4.  This Court has already made clear that a reasonable accommodation of mental incompetence in removal proceedings under the Rehabilitation Act includes a "qualified representative."  *See Amended Order at 38.*  Because the proposed class definition makes mention of an "attorney" rather than a "qualified representative," it will sweep into the class those individuals who have not suffered any injury to their alleged rights under the Rehabilitation Act or due process.  As such, the proposed class definition is defective and must fail.[10]

_____

[10] If this Court nevertheless decides to certify a class, Defendants request that the class definition be modified to remedy the numerous problems with Plaintiffs' proposed definition as follows: "All individuals in DHS custody for removal proceedings in California and Washington who have been deemed or declared mentally incompetent by an Immigration Judge for purposes of their removal proceedings; who presently lack a qualified representative in the form of an attorney, representative, legal guardian, near relative or friend in their detention or removal proceedings; and who may suffer prejudice if their detention or removal proceedings continue without a qualified representative to assist them."  However, Defendants request the opportunity, if class certification is granted, to conduct further briefing on how the class should be defined, specifically with regards to the

23

**IV.  BECAUSE PLAINTIFFS SEEK IN PART TO ENJOIN IMPLEMENTATION OF 8 U.S.C. § 1226(a) AND (c) ON A CLASS-WIDE BASIS, THEIR MOTION MUST BE DENIED UNDER 8 U.S.C. § 1252(f)(1).**

Finally, the plain language of 8 U.S.C. §1252(f)(1) divests this Court of subject matter jurisdiction over Plaintiffs' request for bond hearings for all class members suffering prolonged detention.

8 U.S.C. §1252(f)(1), entitled "Limit on injunctive relief," clearly states that when any person seeks to enjoin the operation of the provisions of 8 U.S.C. §§ 1221-1231, a district court does not have the jurisdiction to hear such claims unless they pertain to the application of these provisions to an *individual* alien, and not to either an individual class representative or to a class as a whole:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this sub-chapter [8 U.S.C. §§ 1221-1231], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  In enacting this statute, Congress recognized that a class-wide injunction, such as the one sought here, would essentially override the laws governing detention.  *See* H.R. Rep. No. 104-469, pt. 1, at 161 (1996) ("[C]ourts may issue injunctive relief pertaining to the case of an individual alien, and thus

---

central issue of how "incompetence" should be incorporated into the class definition.

24

protect against immediate violation of [individual] rights.  However, a single district court or court of appeals does not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the United States.").  Thus, in determining the constitutionality or legality of particular operations under the statute, Congress made clear that the only the United States Supreme Court could determine the lawfulness of these operations on a class-wide basis.

In *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010), the Ninth Circuit discussed the limits of 8 U.S.C. § 1252(f)(1) and found that the provision did not bar an injunction of a *violation* of the detention statutes – it only barred an injunction of the "operation of" 8 U.S.C. §§ 1221-1231.  *Rodriguez,* 591 F.3d at 1120.  While Defendants believe *Rodriguez* was wrongly decided on this point, it is also distinguishable from the case at hand.  *Rodriguez* involved a facial challenge to the constitutionality or scope of the statutes and regulations as it pertains to the continued detention of aliens for more than six months without a bond hearing.  The present matter, however, seeks bond hearings for those who face "prolonged detention" as a result of the delays caused by their mental disability.  *See* Amended Complaint at ¶¶ 98, 135, 139, and 141.  The analysis for whether detention has become "prolonged" is a highly individualized, fact-specific analysis that does not lend itself readily to judicial review, and thus 8 U.S.C. § 1252(f) remains applicable.  Moreover, this distinction further drives home the fact that class-wide relief is inappropriate in this case, as the same period of detention may be prolonged for one class member, and not for another.  Because of the need for individual adjudications of this issue, the class certification motion should be denied.

**CONCLUSION**

For the reasons described above, Plaintiffs' Motion for Class Certification should be denied.

25

DATED: March 17, 2011                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         DAVID J. KLINE
                                         Director
                                         Office of Immigration Litigation
                                         District Court Section

                                         /s/ Victor M. Lawrence
                                         VICTOR M. LAWRENCE
                                         Principal Assistant Director

                                         SAMUEL P. GO
                                         Senior Litigation Counsel

                                         /s/ Neelam Ihsanullah
                                         NEELAM IHSANULLAH
                                         Trial Attorney
                                         Office of Immigration Litigation
                                         District Court Section
                                         U.S. Department of Justice
                                         Civil Division
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, D.C. 20044

                                         Attorneys for Defendants-Respondents

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing DEFENDANTS'

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION was

served on this 17th day of March, 2011, to the following ECF filers:

John David Blair-Loy
ACLU of San Diego & Imperial
Counties
P.O. Box 87131
San Diego, CA 92138
619-398-4496
Fax: 619-232-0036
Email: dblairloy@aclusandiego.org

Michael H Steinberg
Sullivan & Cromwell LLP
1888 Century Park East Suite 2100
Los Angeles, CA 90067-1725
310-712-6600
Fax: 310-712-8800
Email: steinbergm@sullcrom.com

Ahilan T Arulanantham
ACLU Foundation of Southern
California
1313 West Eighth Street
Los Angeles, CA 90017
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

James J Preis
Mental Health Advocacy Services
Inc
3255 Wilshire Boulevard Suite 902
Los Angeles, CA 90010
213-389-2077
Fax: 213-389-2595
Email: jpreis@mhas-la.org

Jennifer L Stark
ACLU Foundation of Southern
California
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
Fax: 213-417-2211
Email: jstark@aclu-sc.org

Judy London
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
213-385-2977
Fax: 213-385-9089

Judy Rabinovitz
American Civil Liberties Union
Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Matt Adams
Northwest Immigrant Rights Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8611
Fax: 206-587-4025
Email: matt@nwirp.org

Riddhi Mukopadhyay
Northwest Immigrants' Rights
Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8611
Fax: 206-587-4025

Sean Riordan
ACLU Foundation of San Diego &
Imperial Counties
P O Box 87131
San Diego, CA 92138
619-398-4485
Fax: 619-232-0036
Email: sriordan@aclusandiego.org

Talia R Inlender
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
213-385-2977
Fax: 213-385-9089
Email: tinlender@publiccounsel.org

/s/ Neelam Ihsanullah
NEELAM IHSANULLAH
Trial Attorney
District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4269
Fax: (202) 616-8962