

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALES, et al., | Case No. CV 10-02211 DMG (DTBx) |
| Petitioner, | **ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| JANET NAPOLITANO, et al., | **UNDER SEAL** |
| Respondents. | |

This matter is before the Court on Plaintiffs' motion for class certification [Doc. # 127]. The Court held a hearing on April 15, 2011. On May 13, 2011, the Court issued an order deferring its ruling on Plaintiffs' Motion until after the parties completed class discovery, in particular with regard to the numerosity of the Plaintiff Class and the two Sub-Classes [Doc. # 206], and filed supplemental briefs. The Court held a further hearing on October 24, 2011. Having duly considered the respective positions of the parties, as presented in their briefs and at oral argument, the Court now renders its decision. For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## I.

## PROCEDURAL BACKGROUND

Plaintiffs filed their first amended class action complaint on November 2, 2010, asserting claims for violations of the Immigration and Nationality Act, the Due Process

Clause of the Fifth Amendment to the U.S. Constitution, Section 504 of the Rehabilitation Act, and the Administrative Procedures Act.  [Doc. # 64.]  They filed a second amended class action complaint on April 18, 2011.  [Doc. ## 250, 300]  Defendants filed an answer on September 22, 2011.  [Doc. # 320]  On October 25, 2011, Plaintiffs filed a third amended class action complaint in which they added a new Named Plaintiff, Juan Carlos Sepulveda-Perez.  [Doc. # 344.]

The Court previously granted Plaintiffs' motions for preliminary injunction as to Plaintiffs Ever Francisco Martinez-Rivas, Aleksandr Petrovich Khukhryanskiy, Maksim Zhalezny, and Jonas Woldemariam.  [Doc. ## 107, 215, and 285.]  By those three orders granting the preliminary injunction motions, the Court required Defendants to provide each of the moving parties with a Qualified Representative, as defined by the Court's orders, or a bond hearing, or both.

On February 14, 2011, Plaintiffs filed this motion for class certification [Doc. # 126].  On March 17, 2011, Defendants filed an opposition [Doc. # 161].  On March 28, 2011, Plaintiffs filed a reply [Doc. # 166].

On September 19, 2011, Plaintiffs filed a supplemental brief in support of their Motion [Doc. # 318].  On October 4, 2011, Defendants filed a supplemental opposition [Doc. # 328].[1]  On October 12, 2011, Plaintiffs filed a supplemental reply [Doc. # 338].

## II.

## FACTUAL BACKGROUND

### A.  Plaintiff Class and Sub-Classes

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs move to certify the following class and sub-classes.

---

[1] On October 17, 2011, Defendants filed an *ex parte* application for an order granting Defendants leave to file a surreply brief.  [Doc. # 341.]  As the parties have had ample opportunity to brief the issues, the Court denies Defendants' *ex parte* application.

**1.      Plaintiff Class**

All individuals who are or will be in DHS custody for removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings.

**2.      Plaintiff Sub-Class 1**

Individuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings

**3.      Plaintiff Sub-Class 2**

Individuals in the above-named Plaintiff Class who have been detained for more than six months.

**B.   Class Representatives**

Plaintiffs seek to appoint the following class representatives:

(1)      for the Plaintiff Class:  (a) Jose Chavez, (b) Ever Francisco Martinez-Rivas ("Martinez"), (c) Aleksandr Petrovich Khukhryanskiy, (d) Juan Carlos Sepulveda-Perez ("Sepulveda")[2]; and Maksim Piotrovich Zhalezny;

(2)      for Plaintiff Sub-Class 1:  (a) Chavez; (b) Martinez; (c)  Khukhryanskiy; and (d) Zhalezny; and

(3)      for Plaintiff Sub-Class 2:  (a) Martinez; (b) Khukhryanskiy; (c) Zhalezny; and (d) Sepulveda.

---

[2] At the October 24, 2011 hearing, Plaintiffs clarified that Sepulveda has not received a bond hearing and requested that he be added as a class representative for Sub-Class 2.

The Court previously set forth detailed factual backgrounds of Plaintiffs Martinez, Khukhyranskiy, and Zhalezny in its Orders dated December 27, 2010 [Doc. # 107] and May 4, 2011 [Doc. # 215].  It need not repeat the same information here.

Plaintiff Chavez suffers from schizoaffective disorder, which includes a combination of auditory hallucinations, persecutory delusions, suicidal ideations, and depression, as well as chronic paranoid schizophrenia, and is currently hospitalized at Patton State Hospital pending an attempt to restore his competency.  (Decl. of Michael H. Steinberg [Doc. # 126-1] ("Steinberg Decl.") ¶¶ 8-9, Exs. 124A, 124B.)  Chavez was first placed in removal proceedings on June 23, 2006.[3]  (Pls.' RJN, Ex. 126.)  On December 7, 2006, the Immigration Judge denied Chavez's asylum petition and ordered him removed. (*Id.,* Ex. 127.)

With the assistance of *pro bono* counsel, Chavez was able to reopen his removal proceedings and, on September 18, 2008, the Department of Homeland Security ("DHS") administratively closed his removal proceedings so that he could apply for asylum pursuant to the procedure set forth in *American Baptist Church v. Thornburgh,* 760 F. Supp. 796 (N.D. Cal. 1991) (providing qualified Salvadorans and Guatemalans *de novo,*

---

[3] Plaintiffs ask the Court to take judicial notice of the following documents issued in Chavez's immigration case:  (1) September 8, 2008 Order of Immigration Judge DePaolo (Pls.' Req. for Judicial Not. ("RJN"), Ex. 122); (2) June 17, 2006 Notice to Appear ("NTA") issued by U.S. Department of Homeland Security ("DHS") (*id.*, Ex. 126); (3) December 7, 2006 decision by Immigration Judge Sitgraves (*id.*, Ex. 127); (4) May 2, 2008 decision by Board of Immigration Appeals ("BIA") (*id.*, Ex. 128); (5) June 21, 2010 NTA issued by DHS (*id.*, Ex. 129); (6) July 15, 2010 motion to terminate proceedings (*id.*, Ex. 130).

Federal Rule of Evidence 201 permits a court to take into judicial notice facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A court may take judicial notice of matters of public record.  *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008).  In addition, courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

unappealable asylum adjudication).   Thereafter, Chavez was released from custody. (Pls.' RJN, Ex. 122.)

After Chavez failed to appear for his asylum interview, on June 21, 2010, DHS denied his Request for Asylum and Withholding of Removal and again placed him in removal proceedings by issuing a new Notice to Appear.   (*Id.*, Ex. 129.)   After correspondence with counsel from the ACLU of Southern California, on July 15, 2010, DHS agreed to end the removal proceedings, without prejudice to the order entered in the original 2006 proceedings.  (*Id.*, Ex. 130.)  The Immigration Judge granted DHS's motion to re-calendar Mr. Chavez's asylum case.  (*Id.*)

The Government has stipulated as part of a settlement related to Chavez's removal proceedings that he is eligible to apply for asylum and relief under the Nicaraguan Adjustment and Central American Relief Act.  (*Id.*, Ex. 122; Steinberg Decl. [Doc. # 126-1] ¶ 7, Ex. 123.)

Plaintiff Sepulveda has been diagnosed with chronic paranoid schizophrenia, schizoaffective disorder, and psychotic disorder.  (Third Amended Complaint, ¶ 18)  He has been in DHS custody since approximately May 2011 and is currently held in segregated confinement in the "F-Med" psychiatric unit at the San Diego Correctional Facility ("SDCF") in Otay Mesa.   He is in removal proceedings and is unrepresented. (*Id.*)

**C.    Class Counsel**

Plaintiffs seek the appointment of the following attorneys as class counsel:  Ahilan T. Arulanantham, Judy London, Talia Inlender, Michael H. Steinberg, Judy Rabinovitz, David Blair-Loy, Sean Riordan, James Preis, and Matt Adams.

**III.**

**LEGAL STANDARD**

Rule 23 provides district courts with broad discretion in making a class certification determination.  *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)

(recognizing that district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23").   Nonetheless, a court must exercise its discretion "within the framework of Rule 23."  *Navellier*, 262 F.3d at 941.  A district court may certify a class only if the following prerequisites are met:

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   These prerequisites "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

If the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   The party seeking certification bears the burden of demonstrating that it meets the Rule 23(b) requirements. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 n.9 (9th Cir. 2009) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)).

The Rule 23 analysis must be rigorous to ensure that its prerequisites have been satisfied, and such analysis will often require looking beyond the pleadings to issues overlapping with the merits of the underlying claims.  *Dukes*, 131 S.Ct. at 2551-52.

## IV.

## DISCUSSION

**A.   The Named Plaintiffs Do Not Lack Standing**

As a preliminary matter, Defendants contend that the Named Plaintiffs lack standing to obtain the relief they seek.  Defendants argue that the Named Plaintiffs are

not members of their own proposed class because Martinez and Khukhryanskiy were both provided counsel and have already received bond hearings before the immigration judge.   Likewise, Defendants challenge Chavez's standing on the ground that he is neither in DHS custody, nor is he likely to be, in light of his current hospitalization.[4]

As the Court discussed at length in its September 12, 2011 Order, standing is determined as of the filing of the complaint.[5]   [Doc. # 300.]   Martinez and Khukhryanskiy were deemed mentally incompetent and were unrepresented in their removal proceedings as of the time the action was filed.   Similarly, as of the date the first amended complaint was filed, Zhalezny was deemed mentally incompetent and unrepresented in his removal proceedings.

To establish standing, Plaintiffs must satisfy the following criteria:  (1) an injury in fact, *i.e.,* one that is sufficiently (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. *See, e.g.*, *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1177 (9th Cir. 2011).

As of the time of the filing of the complaint in which they were first named, each of the Plaintiffs had an actual injury sufficiently concrete and particularized to confer standing upon them to proceed with their claims against Defendants.   Therefore, they did not lack standing to pursue the remedies sought herein.   To the extent that circumstances

---

[4] At the time that Defendants filed their Opposition, the Court had not yet ruled on Plaintiffs' motion for a preliminary injunction as to Zhalezny.  In the Court's May 4, 2011 Order, the Court ordered Defendants to provide Zhalezny with a bond hearing before an immigration judge and a Qualified Representative (as defined therein) to represent him at such hearing.   [Doc. # 215.] Presumably, Defendants would similarly contend that Zhalezny lacks standing on the same basis they assert as to Martinez and Khukhryanskiy.  For the reasons discussed with respect to Martinez and Khukhryanskiy, however, any assertion that Zhalezny lacks standing is without merit.

[5] Martinez was transferred to immigration custody in or around October 20, 2009. Khukhryanskiy was taken into immigration custody on April 15, 2010.   Zhalezny was taken into immigration custody on April 14, 2010.   Martinez, Khukhryanskiy, and Zhalezny were named as Plaintiffs in this action as of the filing of the First Amended Complaint on November 2, 2010.   [Doc. # 64.]

have changed since the commencement of the action calling into question whether Plaintiffs' injuries are likely to be redressed by a favorable decision in this case, the Court turns next to consider Defendants' contentions under the rubric of mootness.

## B.   The Class Claims Are Not Moot

Even if Plaintiffs did not lack standing to proceed with their claims at the inception of the action, Defendants insist that Plaintiffs' claims have since become moot because they have already obtained the relief they seek.  *See, e.g.*, *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 715 (9th Cir. 2011) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.") Specifically, Defendants point out that Martinez, Khukhryanskiy, and Zhalezny already have had counsel appointed to represent them and bond hearings to determine whether they should remain in custody.  There is no evidence, say Defendants, that Plaintiffs will be subject to the same challenged injuries going forward.

Plaintiffs, on the other hand, maintain that they have not obtained all of the relief they seek and that the Court's preliminary injunction orders do not finally resolve any of their claims.  It is well-settled that a ruling on a motion for a preliminary injunction "leaves open the final determination of the merits of the case."  *Ranchers Cattlemen Action legal Fund United Stockgrowers of America v. U.S. Dept. of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007).  "This rule acknowledges that decisions on preliminary injunctions are just that—preliminary—and must often be made hastily and on less than a full record."  *Id*. (internal quotations omitted).  As such, decisions at the preliminary injunction phase do not constitute the law of the case.  *Id.*

The Court examines each of Plaintiffs' claims for relief to determine whether there is a present controversy as to which effective relief can be granted.

### 1.   Competency Evaluations

Among the various forms of relief Plaintiffs seek are adequate competency evaluations for all Class members.  Defendants do not dispute that all proposed Class representatives are individuals currently with "a serious mental disorder or defect that

1    may render them incompetent to represent themselves in detention or removal
2    proceedings." What they do contend is that Plaintiffs have already been diagnosed as
3    mentally incompetent and therefore do not need competency evaluations.  Insofar as both
4    sides acknowledge that an individual's mental condition and, thus, competency, can
5    change over time, all of the proposed Class representatives maintain a "live" stake in
6    securing a procedure for competency screenings in this action.  Moreover, this Court has
7    not yet issued even a preliminary ruling on the availability of such a remedy, let alone a
8    final determination on the merits. To the extent Plaintiffs may benefit from future
9    competency screenings should such final relief issue in this action, the Court finds that
10   the proposed Class representatives' claim for adequate competency evaluations is not
11   moot.

12           **2.    <u>Appointed Counsel</u>**

13           The Court also finds that the Government's successful voluntary efforts to secure
14   *pro bono* counsel to represent Martinez, Khukhryanskiy, and Zhalezny in certain types of
15   impending proceedings—at least, in part, to comply with this Court's orders—do not
16   moot Plaintiffs' claim for appointed counsel.  *Cf. Barnes v. Healy,* 980 F.2d 572, 580 (9th
17   Cir. 1992) (given the court's conflicting orders, the class was entitled to an enforceable
18   order to ensure non-repetition of past due process violations despite the defendant's
19   voluntarily compliance with the preliminary injunction).   In its orders granting the
20   motions for a preliminary injunction, the Court determined that Martinez,
21   Khukhryanskiy, and Zhalezny were each entitled to a "Qualified Representative" which,
22   as defined by the Court, could include an eligible non-attorney representative, to
23   represent them in an impending appeal before the BIA or at their custody hearing, or
24   both.  What Plaintiffs seek in this action, however, is the right to appointed counsel in all
25   future immigration proceedings so long as they remain mentally incompetent and unable
26   to represent themselves.  They have not yet obtained the full relief they seek.

27

28

Moreover, Plaintiffs asserted at the October 24, 2011 hearing that Zhalezny remains unrepresented in his immigration court proceedings.[6]  Plaintiff Sepulveda also is unrepresented in his removal proceedings.  Thus, there can be no doubt that Zhalezny and Sepulveda's claims for appointed counsel are not moot at this time.

### 3.   Custody Hearing

Whether the proposed Sub-Class 2 representatives' claims are moot, however, presents a somewhat more complicated question.  Plaintiffs seek relief in the form of timely custody hearings for individuals detained longer than six months.   Even though the Court has not yet issued a final ruling on the merits of the custody hearing claim, Martinez, Khukhryanskiy, and Zhalezny already have received bond hearings as a result of this Court's prior preliminary injunction orders.  They would not benefit from any class-wide injunctive relief that the Court might issue with regard to the right to a custody hearing, because they already have received such a hearing and there is no evidence that they are entitled to receive yet another one in the foreseeable future.

As such, Martinez, Khukhryanskiy, and Zhalezny do not have a "live" claim for a custody hearing, unless their claim is so inherently transitory as to be "capable of repetition, yet evading review."  "An inherently transitory claim is one that will certainly repeat as to the class, either because '[t]he individual could nonetheless suffer repeated [harm]' or because 'it is certain that other persons similarly situated' will have the same complaint."  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).  Although there is no evidence in the record that these three Named Plaintiffs will suffer repeated harm with regard to the claim for a custody hearing, it is certainly true that other similarly

---

[6] The Court's May 4, 2011 ruling on Zhalezny's motion for preliminary injunction ordered the Government to provide Zhalezny with a custody hearing and a Qualified Representative to represent him at such a hearing.  According to Plaintiffs, Zhalezny's immigration appeal was remanded to the immigration court and he remains unrepresented in those proceedings.

situated persons will have the same complaint.[7]  Indeed, Plaintiffs in this case filed serial motions for preliminary injunction in order to secure bond hearings for those plaintiffs whose detention had exceeded six months.

At the hearing on October 24, 2011, Plaintiffs proposed to add Plaintiff Sepulveda as a new Sub-Class 2 representative.   As of the date of this order, Sepulveda has been in custody for approximately six months and has not yet received a bond hearing.   The Court therefore finds that a live controversy exists as to Plaintiffs' claim for a custody hearing not only because it is an inherently transitory claim but also because there is a new Named Plaintiff—Sepulveda—whose claim is clearly not moot.

Although Plaintiff Chavez is no longer in detention, he along with the other Plaintiffs, seeks relief for a class and sub-class of people who "are or will be" in Immigration and Customs Enforcement ("ICE") custody.  Chavez need only show that he is realistically threatened by a repetition of the harm he challenges.   ICE expressly reserved the right to re-calendar his case based on an existing charge that has not been terminated or dismissed and, in fact, re-initiated removal proceedings against him a year ago.   Those proceedings were then terminated "without prejudice."   Given these circumstances, none of Chavez's claims are moot.

**C.**   **The Rule 23(a) Factors**

   **1.**   **Numerosity**

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)

---

   [7] Because the custody hearing claim is time-sensitive and is subject to the "capable of repetition, yet evading review" exception to the mootness doctrine, once the Court certifies the class, it may apply the "relation back" doctrine to relate Plaintiffs' claims back to the filing date of the initial complaint to preserve the merits of the case for judicial resolution. *Pitts*, 653 F.3d at 1090.   "Application of the relation back doctrine in this context thus avoids the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved." *Id.*

(quoting *Adver. Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).  The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case."  *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  Thus, while the Supreme Court has noted that putative classes of 15 are too small to meet the numerosity requirement, *id.* at 330 & n.14, district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement, *see Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir.) (noting, in *dicta*, that the court "would be inclined to find the numerosity requirement . . . satisfied solely on the basis of [39] ascertained class members"), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Plaintiffs indicate that on February 14, 2011, the day on which Plaintiffs filed their Motion, there were 112 detainees who fit in the Class, 37 in Sub-Class 1, and 43 in Sub-Class 2.  (Decl. of Talia Inlender ("Inlender Decl.") [Doc. # 319] ¶¶ 11-12, Exs. 198, 199.)

Plaintiffs argue that these numbers are under-inclusive because:  (1) the numbers reflect individuals counted on a single day; (2) the numbers count individuals from just four facilities in California, Arizona, and Washington, which Plaintiffs estimate to be less than one-half of the daily population detained in such states[8]; (3) Plaintiffs include only those detainees diagnosed by ICE as having a mental health condition; and (4) Defendants have no systematic mechanism for evaluating whether individuals are able to represent themselves in immigration proceedings.[9]  In addition, because Defendants

---

[8] The four facilities from which Defendants produced evidence are:  San Diego Correctional Facility, El Centro Service Processing Center, Eloy Federal Contract Facility, and Northwest Detention Center.  (Pls.' Supp. Brief [Doc. # 318] at 3 n.3.)

[9] Plaintiffs concede that Defendants occasionally arrange for competency exams that determine a detainee's ability to proceed if represented, not that determine competency if they are unrepresented.  (Pls.' Supp. Brief [Doc. # 318] at 4 n.4.)

failed to produce a list of individuals <u>currently</u> unrepresented, Plaintiffs included in their count only those detainees for whom an attorney appearance had <u>never</u> been entered. Thus, for example, Khukhryanskiy is not included in this count because, after this Court's preliminary injunction order, an attorney appeared in his case on January 25, 2011 to represent him at his bond hearing.[10]  (Pls.' Supp. Brief [Doc. # 318] at 7 n.8.)

Plaintiffs also point to aggregate governmental data, reported by ICE in a May 2008 *Washington Post* article, in which the government estimated that 2-5% of immigrants in ICE custody suffer from serious mental illness.[11]  Extrapolating from the Government's estimate of the number of removal proceedings conducted in California, Arizona, and Washington in 2009, Plaintiffs estimate that there are between 475 and 1,187 members of the Class.  Plaintiffs contend this figure is further supported by a separate ICE report, *Detainee Health Care:  The Rest of the Story,* dated May 14, 2008, which stated that "[i]n the last 12 months, psychologists and social workers have managed a daily population of over 1,350 seriously mentally ill detainees without a single suicide."  (Inlender Decl. ¶ 9, Ex. 197 [Doc. # 319].)

Defendants, on the other hand, estimate that there are 55 detainees in the Class, 25 detainees in Sub-Class 1, and 19 in Sub-Class 2.  (Decl. of Victor M. Lawrence ¶ 18 [Doc. # 328].)  Defendants argue that Plaintiffs' Class and Sub-Class 2 estimates are over-inclusive for various reasons.  Defendants take issue with:  (1) Plaintiffs' inclusion of detainees with only a <u>prior</u> history of mental illness, while the Class definition includes

---

[10]  Plaintiffs further indicate that the estimated 37 Sub-Class 1 individuals is under-inclusive because:  (1) Plaintiffs do not include five unrepresented individuals who received "Treatment Authorization Requests" for psychiatric conditions, but never received a competency determination from the immigration judge; (2) other than where an immigration judge uses a Code 53 designation, Defendants do not track the use of safeguards (*e.g.,* Khukhryanskiy's case was not coded as "Code 53").

[11]  *Washington Post,* May 2008, available at  http://media.washingtonpost.com/wp-srv/nation/special/immigration/documents/day3_ice_mentalhealth.gif.  (Steinberg Decl. [Doc. # 126-1] ¶ 2, Ex. 115.)

individuals with a <u>current</u> mental disorder or defect that may render them incompetent; and (2) Plaintiffs' inclusion of detainees with mental health diagnoses, without any indicia of whether the detainees' symptoms are ameliorated through medication or counseling.

Defendants assail Plaintiffs' failure to account for the severity of the putative class members' mental health condition or responsiveness to medication, whether the detainee had a mental health examination, or the detainee's legal competency.  And yet there's the rub—Defendants' contentions do not hold water precisely because it is this lack of information and absence of any systematic procedure aimed at identifying such information that Plaintiffs seek to redress through this action.  Defendants produced evidence indicating that they conducted only approximately 77 competency examinations for detainees in the three subject states over the last three years.  Defendants present no evidence that there is any procedure or mechanism in place for either identifying or evaluating a detainee's competency to represent himself or herself in immigration proceedings.

The very relief that Plaintiffs seek for their Class members are mental competency evaluations.  "Plaintiffs do not argue that *all* of those class members are not competent to represent themselves, but rather that those individuals must be *screened* (by a trained, qualified individual) to determine competency."  (Pls.' Supp. Reply [Doc. #338] at 1 (emphasis in original).)

Defendants also argue that Plaintiffs' Sub-Class 1 calculation should be revised to omit the 12 individuals for whom the alleged indicia of incompetency was administrative closure or termination, because it is not uncommon for proceedings to be terminated or administratively closed for reasons unrelated to mental competency.  The Court must reject this argument as mere speculation, however, because Defendants fail to identify with any specificity the particular factual circumstances of those 12 cases, despite the fact that the complete case files remain solely in their possession.

1    Defendants emphasize that, as of August 25, 2011, Plaintiffs identified only 13
2    potential class members, five of whom are Named Plaintiffs in this action.  Defendants
3    point to the June 27, 2011 Joint Stipulation entered into by the parties, in which
4    Defendants asked Plaintiffs to provide the following:

5          *the full identification (including names and A-numbers) of those*
6          *individuals whom Plaintiffs have identified by name and*
7          *circumstances whom Plaintiffs currently believe to meet the*
8          *criteria for class [and sub-class] membership as defined in*
9          *Plaintiffs' operative complaint*

10   (Decl. of Neelam Ihsanullah ¶ 3, Ex. 31 [Doc. # 328]) (italics in original).  In response,
11   Plaintiffs provided a chart listing names and A-numbers for 13 individuals.  According to
12   Defendants, that Plaintiffs can name only 13 individuals undermines their ability to meet
13   their burden of establishing numerosity.

14        As Defendants themselves acknowledge in their supplemental opposition,
15   Plaintiffs "need not allege the exact number or identity of class members to satisfy the
16   numerosity requirement."  (Defs.' Supp. Opp'n [Doc. # 328] at 4 (citing *Perez-Olano v.*
17   *Gonzalez,* 248 F.R.D. 248 (C.D. Cal. 2008).)  The disparity in the parties' information
18   highlights the fact that the data necessary to specifically identify members of the Class
19   and Sub-Classes by name and A-numbers are entirely within Defendants' control.
20   Plaintiffs' estimates of the number and identity of Class and Sub-Class members are
21   based on the form and content of the information produced by Defendants.  It is precisely
22   in situations such as this that joinder of plaintiffs is impracticable because it is difficult to
23   identify the proposed class members, particularly where the defendant did not
24   systematically track such information and where the information necessary to identify
25   class members is within the defendant's control.  *See Perez-Olano,* 248 F.R.D. at 260
26   (finding sufficient evidence of numerosity where the government represented that they
27   did not track the information necessary to identify proposed class members).

28

Defendants do not respond to the fact that Plaintiffs' estimates are based on data collected for a single day in 2010, other than to say that it is not their fault that Plaintiffs chose to prepare their estimates in that manner.  Even by Defendants' own estimates, however, there were 55 Class members as of February 14, 2010.  Given the snapshot information derived from class discovery and the previous admissions by the Government regarding the substantial number of detainees who suffer from serious mental illnesses, the number of individuals falling within the definition of the proposed Class and Sub-Classes is sufficiently large to warrant class treatment.  "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  1 Robert Newberg, *Newberg on Class Actions,* § 3:3 (4th ed. 2002); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1319 n.9 (9th Cir.) (where injunctive relief is sought, particularly in situations involving a small number of known class members but a potentially large number of unknown or future class members, certification may be appropriate), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Under these circumstances, the Court finds that Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement.

### 2.   **Commonality**

The commonality requirement is satisfied if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).  In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law.  *Id*.  Rather, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.

Nonetheless, in conducting the commonality inquiry, one significant issue shared by the class may suffice to warrant certification. *Id.* at 2556; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient . . . .").

In this case, Plaintiffs posit that all of the proposed Plaintiff Class and Sub-Class members: (1) are in DHS custody for removal proceedings in California, Arizona, or Washington; and (2) suffer from a serious mental disorder that may render them incompetent to represent themselves in immigration proceedings. Plaintiffs contend that the proposed Class poses the following legal questions:

    a.    Whether it is lawful to conduct immigration proceedings involving members of the Class where concerns are raised regarding competency without first conducting a competency hearing;

    b.    Whether the Constitution or statutory law requires the Government to conduct competency evaluations in immigration proceedings;

    c.    Whether the Constitution or statutory law requires the Government to appoint counsel for those found incompetent to represent themselves;

    d.    Whether the Constitution or statutory law requires bond hearings for those who face prolonged detention due to delays caused by their mental disability; and

    e.    Whether the regulations promulgated by the Attorney General are adequate "safeguards" for the mentally disabled and whether those suffering from a mental disability may receive a fair hearing with those "safeguards."

(Pl.'s Mot. at 19-20.)  Plaintiffs' Sub-Class 1 shares in common questions b, c, d and e above and Sub-Class 2 shares in all five of the above questions.

Defendants contend that the highly fact-based approach taken by the Court in adjudicating the Plaintiffs' preliminary injunction motions precludes a finding of commonality.  Contrary to Defendants' contention, the Court's fact-based approach was necessary in the preliminary injunction context to provide a backdrop for the legal claims and to determine the existence of irreparable harm justifying the extraordinary mandatory injunctive relief requested by Plaintiffs.  As Defendants themselves have acknowledged in responding to Plaintiffs' discovery requests, however, "the claims raised by Plaintiffs in this lawsuit are generally legal matters."  (Steinberg Decl. ¶ 6, Ex. 120 at 2-3 [Doc. # 126-1]; Defs.' Initial Disclosures and Responses and Objections to Pls.' Informal Request of Production of Documents.)

Defendants further argue that "[a]lthough Plaintiffs have raised several questions of law that are common to their proposed class, these do not generate a common answer." (Defs.' Supp. Opp'n at 16.)  As discussed *supra,* the Supreme Court held in *Dukes* that one significant issue shared by the class may suffice to warrant certification.  *Dukes,* 131 S.Ct. at 2556.  Furthermore, Plaintiffs do, in fact, propose common answers in the relief they seek, *i.e.,* adequate competency evaluations, appointed counsel, and timely bond hearings.  (Pls.' Supp. Brief at 18-19 [Doc. # 318].)

Defendants question whether the alleged failure to provide adequate safeguards for the four Named Plaintiffs, in five immigration courts in two states, speaks to a systemic failure by 82 immigration judges in 13 immigration courts in three states to provide adequate procedural safeguards and due process to mentally incompetent aliens.  The voluminous record and numerous Orders in this case have highlighted the dearth of guidance available to immigration judges in proceedings pertaining to unrepresented mentally incompetent aliens.  The observations of the Immigration Judge who presided over Martinez's case are illustrative:

> The current law and regulations offer little guidance, as to how the Court should proceed with a *pro se* Respondent who has been deemed mentally incompetent to proceed with removal proceedings. . . . [T]he Attorney General has provided little guidance regarding steps to take to protect the rights and privileges of the alien.  Immigration case law has also failed to adequately address what such steps are to be taken for an incompetent, *pro se*, alien in removal proceedings. . . . Currently there are no cases discussing the procedural safeguards for an *unrepresented* mentally incompetent alien; on the contrary, the cases discuss matters where the aliens *were represented* by counsel or an accredited representative or where the Respondent was deemed to be *competent.*

(December 27 Order at 32-33.)

Defendants argue that the recent Board of Immigration Appeals decision, *Matter of M-A-M,* 25 I. & N. Dec. 474 (BIA 2011) [Doc. # 201], undermines Plaintiffs' request for class treatment because it provides a framework for an immigration judge in assessing the competency of an alien appearing in Immigration Court.  Defendants assert that the BIA's formal definition of mental competency with respect to removal proceedings and the identified safeguards resolve Plaintiffs' claims.  Defendants' position is not persuasive.

Nothing in the *Matter of M-A-M-* case changes the current legal landscape.  Even under a *Matter of M-A-M-* regime, respondents exhibiting indicia of mental incompetency are neither entitled to mental competency evaluations, appointment of a Qualified Representative, nor any safeguards different from those already prescribed by existing statutes and regulations and relied upon by the Government in this action.  Rather, *Matter of M-A-M-* reaffirms "an Immigration Judge is under no obligation to analyze an alien's competency."  25 I. & N. Dec. 474 at 477.  Where there are indicia of incompetency, the

immigration judge "must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings." *Id.* at 484. *Matter of M-A-M-* identifies the following safeguards:

> Refusal to accept an admission of removability from an unrepresented respondent; identification and appearance of a family member or close friend who can assist the respondent and provide the court with information; docketing or managing the case to facilitate the respondent's ability to obtain legal representation and/or medical treatment in an effort to restore competency; participation of a guardian in the proceedings; continuance of the case for good cause shown; closing the hearing to the public; waiving the respondent's appearance; actively aiding in the development of the record, including the examination and cross-examination of witnesses; and reserving appeal rights for the respondent.

*Id.* at 483. The immigration judge must determine which of these safeguards are relevant to the facts and circumstances of the case at hand. *Id.*

The relief that Plaintiffs seek herein has not been supplanted by the BIA's decision in *Matter of M-A-M-*. In fact, Plaintiffs herein directly challenge, among others, the notion that mentally incompetent detainees can be adequately represented by a family member or close friend. In addition, Plaintiffs seek to implement procedures whereby mental incompetency screenings can be obtained and counsel appointed if necessary.

In light of the existence of common legal questions identified above, which are susceptible of a class-wide resolution, the Court finds that Plaintiffs satisfy Rule 23(a)(2)'s commonality requirement.

### 3.   <u>Typicality</u>

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The

purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. (quoting *Hanon*, 976 F.2d at 508).

The typicality standard under Rule 23(a)(3) is "permissive": "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020).

Defendants argue that the Named Plaintiffs do not have the "same interests" and have not suffered the "same injury" as the members of the putative class for various reasons.[12]

First, Defendants contend that none of the Named Plaintiffs were detained in or had removal proceedings in Arizona. In their supplemental opposition, Defendants propose that Plaintiffs' proposed class definition be amended to omit Washington and Arizona. Defendants fail, however, to cite any authority indicating that implementation of the uniform <u>federal</u> policy that Plaintiffs challenge varies amongst the three states or any evidence that the removal proceedings, either in Washington or Arizona, are unique.[13]

---

[12] As discussed *supra,* at the time that Defendants filed their opposition, Zhalezny's preliminary injunction motion remained pending before the Court. Defendants argued that his case posed the unique question of whether his father may serve as an adequate representative. The Court determined that in Zhalezny's case, his father was not a Qualified Representative. The Court ordered the Government to provide Zhalezny with a Qualified Representative and a bond hearing.

[13] When asked by the Court at the October 24, 2011 hearing whether there were any differences in the manner in which such federal policies are implemented at the federal detention facilities in the three states, Defendant's counsel stated that he did not believe there were.

1    Second, Defendants argue that Chavez is not currently in removal proceedings or
2    in ICE custody.  As discussed above with regard to the mootness issue, Chavez's removal
3    proceedings were terminated "without prejudice."  He therefore remains subject to the
4    reinstitution of removal proceedings at Defendants' discretion.  In this respect, Chavez's
5    situation is analogous to that of the petitioner in *Rodriguez v. Hayes*, 591 F.3d 1105 (9th
6    Cir. 2010), who had been voluntarily released from mandatory detention under 8 U.S.C. §
7    1226(c), but remained subject to the government's exercise of discretion to re-detain him.
8    Just as Chavez's claims are not moot, his injuries are typical of those of putative class
9    members, especially those for whom removal proceedings have been voluntarily
10   terminated but who remain subject to the discretionary reinstitution of future removal
11   proceedings.

12       Third, Defendants point out that Martinez and Khukhryanskiy's appeals are
13   pending before the BIA, not the Immigration Court.  Plaintiffs do not need to establish,
14   however, that the Named Plaintiffs' claims are substantially identical.  Plaintiffs define
15   the Class as those "who are or will be in DHS custody for removal proceedings."
16   Plaintiffs do not limit the Class to those whose proceedings are pending before either the
17   BIA or the Immigration Court.

18       Finally, Defendants make much of the fact that Plaintiffs Zhalezny, Martinez, and
19   Khukhryanskiy were detained pursuant to the mandatory detention statute, 8 U.S.C. §
20   1226(c), while some proposed Class members may be detained pursuant to the
21   discretionary detention statute, 8 U.S.C. § 1226(a).  Again, the Ninth Circuit's decision in
22   *Rodriguez* is instructive.  In *Rodriguez*, the Ninth Circuit certified a class even though the
23   class members were detained under the authority of different statutes at different points in
24   the removal process.  591 F.3d at 1124.  The issues presented in this case transcend any
25   concerns over the specific subsection of the statute that authorizes detention.

26       The Named Plaintiffs and proposed Class and Sub-Class members exhibit indicia
27   of mental incompetency and seek an evaluation to determine whether they are competent
28   to represent themselves.  The redress that the Named Plaintiffs and the proposed Class

members seek is not contingent upon whether they are in fact mentally incompetent or will be found to be so, nor does it turn upon the reasons for their detention.  The Named Plaintiffs and the Sub-Class members share the additional characteristic that they have been found to be mentally incompetent or have been in detention for more than six months, or both.  The members of the Sub-Classes seek appointment of counsel and bond hearings.

The Court finds that the claims of the Named Plaintiffs are reasonably coextensive with those of the putative class and that Plaintiffs therefore satisfy Rule 23(a)(3).

### 4.    <u>Adequate Representation</u>

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) (citing *Hanlon*, 150 F.3d at 1020); *see also Dukes*, 131 S.Ct. at 2551 n.5 (explaining that  the adequacy of representation inquiry is distinct from questions of typicality and commonality insofar as it "raises concerns about the competency of class counsel and conflicts of interest").  The Named Plaintiffs themselves must be entitled to seek injunctive relief if they are to represent a class seeking such relief.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

As discussed *supra,* Plaintiffs satisfy the commonality and typicality requirements of Rule 23(a)(3).  Defendants concede that Plaintiffs' proposed class counsel are qualified to serve as class counsel, but reassert their contention that the Named Plaintiffs are not adequate class representatives for the reasons already addressed above in the discussion regarding mootness. (Defs.' Opp'n at 17.)  The Court need not revisit those arguments.  The fact that certain Named Plaintiffs have sought and obtained injunctive relief bolsters the adequacy of their representation rather than detracts from it.  The Court finds that the Named Plaintiffs are adequate class representatives as specified below and

no conflict of interest has been identified which disqualifies them from serving in that capacity.

## D.   The Rule 23(b)(2) Requirements

Classes may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Class certification under Rule 23(b)(2) is possible only when declaratory or injunctive relief is sought.  Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is incidental to the injunctive or declaratory relief.  *Dukes*, 131 S.Ct. at 2557.  This subsection "applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S.Ct. at 2557.

In determining whether certification is appropriate under Rule 23(b)(2), a court must "look at whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez*, 591 F.3d at 1125.  "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."  *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).  Claims for individualized relief, in contrast, do not satisfy Rule 23(b)(2).  *Dukes,* 131 S.Ct. at 2557.

Civil rights actions against parties charged with unlawful, class-based discrimination are "prime examples" of Rule 23(b)(2) cases.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also Walters*, 145 F.3d at 1047 (explaining that Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions").

Defendants argue that Plaintiffs fail to demonstrate that the proposed class is maintainable under Rule 23(b)(2) because, under *Matter of M-A-M-*, the competency

determination and safeguards provided to an incompetent alien will vary based on the circumstances of the case.[14]   Defendants base their argument on the discretion that immigration judges are afforded under *Matter of M-A-M-*.

As the Court has discussed *supra,* however, the BIA's determination in the *Matter of M-A-M-* neither alters the current legal landscape nor defeats Plaintiffs' ability to establish the commonality of their claims for relief.   At the crux of this action is Plaintiffs' claim that Defendants have failed, on a systemic basis, to have adequate

---

[14] Defendants argue that the proposed class definition is defective because it is overly broad and urge the Court to consider a modified class definition, as follows:

> All individuals in DHS custody for removal proceedings in California and Washington who have been deemed or declared mentally incompetent by an Immigration Judge for purposes of their removal proceedings; who presently lack a qualified representative in the form of an attorney, representative, legal guardian, near relative or friend in their detention or removal proceedings; and who may suffer prejudice if their detention or removal proceedings continue without a qualified representative to assist them.

(Defs.' Opp'n at 23 n. 10.)

Defendants appear to misunderstand Plaintiffs' proposed Class definition.   As discussed *supra,* Plaintiffs seek, by the current definition, to include those individuals who may be determined to be mentally incompetent to represent themselves.   "Plaintiffs do not argue that *all* of those class members are not competent to represent themselves, but rather that those individuals must be *screened* (by a trained, qualified individual) to determine competency."  (Pls.' Supp. Reply [Doc. # 338] at 1.)

At the October 24, 2011 hearing, Defendants additionally argued that Plaintiffs' use of the term "serious mental disorder" is so vague and ambiguous that Defendants will be unable to determine which detainees must be screened.   The California Department of Corrections ("CDC") made a similar argument in *Coleman v. Wilson,* 912 F. Supp. 1282 (E.D. Cal. 1995), where the court considered an Eighth Amendment challenge to the adequacy of mental health care.   In *Coleman,* the CDC argued that the absence of a specific definition of "serious mental disorder" precluded the court or anyone charged with implementing relief from determining who is a member of the class and the extent of relief.  *Id.* at 1300.   The court disagreed and concluded that "the phrase 'serious mental disorder' has a readily available definition in a medical context [and] in a legal context."  *Id.* at 1301.   The *Coleman* court's defense of the "serious mental disorder" terminology is persuasive.   In this case, a list of the types of serious mental health disorders that would trigger a competency evaluation would provide Defendants with the type of guidance they need.   Moreover, Defendants' proposed class definition responds to only a part of the problem and suffers from the same defect as the current allegedly defective system of handling mentally incompetent detainees – it presupposes that a finding of mental incompetency will somehow materialize *spontaneously* from an Immigration Judge.   By defining a "Qualified Representative" to include a relative or friend, Defendants' proposed class definition also seeks to wipe out Plaintiffs' claim for appointed counsel before it has even been litigated on the merits.

procedures in place to both identify mentally incompetent aliens and provide them with necessary safeguards.   As such, Plaintiffs seek uniform relief in the form of (1) independent mental competency evaluations for Class members, (2) appointed counsel for Sub-Class 1 members, and (3) bond hearings for Sub-Class 2 members.

Furthermore, contrary to Defendants' characterization of the issues presented in the preliminary injunction motions of Martinez, Khukhryanskiy, and Zhalezny, the relief provided to each of these Plaintiffs was well within the scope of the relief that Plaintiffs seek on behalf of the Class and Sub-Classes.   Although the particular factual circumstances of Plaintiffs Martinez, Khykryanskiy, and Zhalezny may have varied slightly, each of them suffered from the same failure by Defendants to implement meaningful systemic guidelines for unrepresented mentally incompetent aliens in removal proceedings.   The Court therefore finds that Plaintiffs meet the Rule 23(b)(2) standard as to the Class and Sub-Classes.

**E.   Injunctive Relief Is Not Foreclosed By 8 U.S.C. § 1252(f)(1)**

Defendants contend that the plain language of 8 U.S.C. § 1252(f)(1) divests this Court of subject matter jurisdiction over Plaintiffs' request for bond hearings for all class members suffering from prolonged detention.[15]

The Government made a similar argument in *Rodriguez,* 591 F.3d 1105, where the petitioners sought to certify a class of aliens detained for longer than six months without a bond hearing.   The court determined that section 1252(f) did not bar certification of the

---

[15] Section 1252(f)(1) provides:
> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).

class unless it barred the proposed class from receiving <u>any</u> class relief.  According to the Ninth Circuit, section 1252(f) did not prohibit the court from enjoining a violation of the detention statutes, as opposed to "the operation of" the detention statutes:

> Petitioner here does not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct it asserts is not authorized by the statutes.  Petitioner argues only that the immigration detention statutes, to the extent they cannot be interpreted as requiring provision of a bond hearing, must be enjoined as unconstitutional. However, as this latter argument for relief may never be reached, it cannot be a basis for denial of class certification.

*Id*. at 1120.

Defendants attempt to distinguish *Rodriguez* insofar as that case involved a facial challenge to the constitutionality or scope of the statutes and regulations with respect to the continued detention of aliens for more than six months without a bond hearing. According to Defendants, Plaintiffs here seek bond hearings for aliens detained for "prolonged periods," which is an attack on the operation of the statute.  The attempt to distinguish *Rodriguez* is unavailing.

To the extent Plaintiffs' proposed Sub-Class 2 includes individuals detained for periods longer than six months, it seeks to implement the guidance already given by the Ninth Circuit to prevent the alleged violation of the detention statutes as they have been construed in cases such as *Rodriguez*, *Casas-Castrillon v. Dept. of Homeland Security,* 535 F.3d 942 (9th Cir. 2008), and *Diouf v. Napolitano,* 634 F.3d 1081 (9th Cir. 2011). The Court finds that Section 1252(f)(1) does not limit injunctive relief in this context.

## V.
## <u>CONCLUSION</u>

In light of the foregoing:

1.     Plaintiffs' Motion for Class Certification is **GRANTED**.

2.    The Court certifies the following Class and Sub-Classes:

    a.    Plaintiff Class:  All individuals who are or will be in DHS custody for removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings.

    b.    Plaintiff Sub-Class 1:  Individuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings

    c.    Plaintiff Sub-Class 2:  Individuals in the above-named Plaintiff Class who have been detained for more than six months.

3.    The Court certifies class representatives as follows:

    a.    With respect to the Plaintiff Class, the Court certifies Plaintiffs Chavez, Khukhyranskiy, Martinez, Sepulveda, and Zhalezny;

    b.    With respect to Plaintiff Sub-Class 1, the Court certifies Plaintiffs Chavez, Khukhryanskiy, Martinez, and Zhalezny; and

    c.    With respect to Plaintiff Sub-Class 2, the Court certifies Plaintiffs Khukhryanskiy, Martinez, Zhalezny, and Sepulveda.

4.    The Court certifies the following individuals as class counsel:  Ahilan T. Arulanantham, Judy London, Talia Inlender, Michael H. Steinberg, Judy Rabinovitz, David Blair-Loy, Sean Riordan, James Preis, and Matt Adams.

5.    Due to privacy considerations, this Order shall be filed under seal.  Within 14 days from the date of this Order, the parties shall meet and confer regarding which portions of the Order, if any, they propose to be redacted such that a redacted version of the Order may be filed, or notify the Court

that the parties waive privacy rights as to the confidential information relied upon herein and that the Order may be unsealed.  The parties shall file a joint report with the Court by no later than December 2, 2011 regarding the sealed status of this Order.

**IT IS SO ORDERED.**

DATED:      November 21, 2011

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE