STUART F. DELERY
United States Department of Justice
Acting Assistant Attorney General
Civil Division
DAVID J. KLINE
Director, District Court Section
Office of Immigration Litigation
VICTOR M. LAWRENCE
Principal Assistant Director
NEELAM IHSANULLAH
Trial Attorney, District Court Section
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4269
Facsimile:  (202) 616-8962
Email: Neelam.Ihsanullah@usdoj.gov

Attorneys for Defendants-Respondents

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JOSE FRANCO-GONZALEZ, et al., | No. CV 10-2211-DMG (DTBx) |
| Plaintiffs-Petitioners, | DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| JANET NAPOLITANO, et al., | |
| Defendants-Respondents. | Judge: Hon. Dolly M. Gee<br>Hearing Date: September 7, 2012<br>Hearing Time: 11 a.m.<br>Location: Courtroom 7 |
| | [Filed Contemporaneously with Declarations & Exhibits] |

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.        Plaintiffs' Claim For Appointed Counsel Under The Rehabilitation
          Act Fails Because Plaintiffs Have Not Established A *Prima Facie*
          Case Or That Their Requested Accommodation Is Reasonable.. . . 3

          a.       Plaintiffs Fail To Establish A *Prima Facie* Case Under The
                   Rehabilitation Act Because They Have Not Shown That
                   They Were Denied Meaningful Access
                   To The Immigration Courts.. . . . . . . . . . . . . . . . . . . . . . . 4

          b.       Even If Plaintiffs Could Demonstrate A Prima Facie Case,
                   Their Requested Relief Would Constitute A "Fundamental
                   Alteration" Of EOIR's Immigration Court System... . . . . . . . 5

          c.       To The Extent That Plaintiffs Warrant An Accommodation,
                   They Are Not Entitled To The Accommodation Of Their
                   Choice, And *Matter Of M-A-M-* Provides Sufficient
                   Safeguards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.       Neither The INA Nor The "Full And Fair Hearing" Requirement
          Mandates The Appointment Of Counsel. . . . . . . . . . . . . . . . . .  12

III.      The Supreme Court's Right-To-Counsel Jurisprudence Under The
          Due Process Clause Does Not Mandate Appointment Of Counsel
          For All Subclass One Members.. . . . . . . . . . . . . . . . . . . . . . . .  15

IV.       Plaintiffs' Claim For Bond Hearings Fails Under The
          Rehabilitation Act, The INA And The Due Process Clause. . .  21

       a.     Plaintiffs' Claim That The Rehabilitation Act Requires The Government To Conduct Bond Hearings Lacks Merit...  21

       b.     Neither The INA Nor The Due Process Clause Requires The Bond Hearings At Six Months.. . . . . . . . . . . . . . . .  23

  V.     Plaintiffs Fail To Establish Eligibility For Permanent Injunctive Relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

## **CASES**

*Abbassi v. INS*,
  143 F.3d 513 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . .  30, 32

*Abdi v. Napolitano*,
  No. C10-1722RSL, 2011 WL 1584433 (W.D. Wash. Apr. 26, 2011).  27

*Matter of Adeniji*,
  22 I. & N. Dec. 1102 (BIA 1999). . . . . . . . . . . . . . . . . . . . . . . . .  28

*Aguilar v. Immigration and Customs Enforcement*,
  2012 WL 1344417 (S.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . .  31

*Alexander v. Choate*,
  469 U.S. 287 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 22, 23

*Allee v. Medrano*,
  416 U.S. 802 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29, 31

*American Council of the Blind v. Paulson*,
  525 F.3d 1256 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

*Amoco Production Co., v. Village of Gambell, AK*,
  480 U.S. 531 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 29

*Anaheim v. Duncan*,
  658 F.2d 1326 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Arizona v. United States*,
  __ U.S. __, 132 S. Ct. 2492 (2012). . . . . . . . . . . . . . . . . . . . . . . .  14

*Barrera-Echavarria v. Rison*,
  44 F.3d 1441 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Bills v. Clark*,
  628 F.3d 1092 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Boise Cascade Corp. v. EPA*,
  942 F.2d 1427 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . .  13

*California v. Campbell*,
  319 F.3d 1161 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Casas-Castrillon v. DHS*,
  535 F.3d 942 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . .  25, 26

*Chung Lim You v. Mukasey*,
    No. 06-74741, 2007 U.S. App. LEXIS 29127
    (9th Cir. Dec. 13, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Continental Airlines, Inc., v. Intra Brokers, Inc.*,
    24 F.3d 1099 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Demore v. Kim*
    538 U.S. at 518. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

*Diop v. ICE/Homeland Security*,
    656 F.3d 221 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Diouf v. Napolitano*,
    634 F.3d 1081 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*El Rescate Legal Services, Inc. v. EOIR*,
    959 F.2d 742 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Escobar Ruiz v. INS*,
    838 F.2d 1020 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*FTC v. John Beck Amazing Profits, LLC*,
    No. 2:09-cv-04719-JHN-CWx, 2012
    U.S. Dist. LEXIS 70068 (C.D. Cal. Apr. 20, 2012). . . . . . . . . . . . . . . . 3

*Fiallo v. Bell*,
    430 U.S. 787 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Flexible Lifeline Sys. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Gideon v. Wainwright*,
    372 U.S. 335 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Giebeler v. M & B Associates*,
    343 F.3d 1143 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9

*Godinez v. Moran*,
    509 U.S. 389 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Holder v. Humanitarian Law Project*,
    130 S. Ct. 2705 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Hughes Air Corp. v. Public Utilities Comm.*,
    644 F.2d 1334 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv

*In re Gault,*
　　387 U.S. 1 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*INS v. Lopez-Mendoza,*
　　468 U.S. 1032 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*eBay Inc. v. MercExchange, L.L.C.,*
　　547 U.S. 388 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*Indiana v. Edwards,*
　　554 U.S. at 173. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Lassiter v. Dept. of Social Services,*
　　452 U.S. 18 (1981)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 17

*Leslie v. Att'y Gen.,*
　　611 F.3d 171 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Lone Star Sec. & Video, Inc. v. City of L.A.,*
　　584 F.3d 1232 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Lovell v. Chandler,*
　　303 F.3d 1039 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . .   4, 21, 22

*Ly v. Hansen,*
　　351 F.3d 263 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Matter of E-R-M- & L-R-M-,*
　　25 I. & N. Dec. 520 (BIA 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Matter of M-A-M-,*
　　25 I. & N. Dec. 474 (BIA 2011). . . . . . . . . . . . . . . . . . . . . . . .   3, *passim*

*Matter of Urena,*
　　25 I. & N. Dec. 140 (BIA 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

*Matter of X-K-,*
　　23 I. & N. Dec. 731 (BIA 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*Mark H. v. Hamamoto,*
　　620 F.3d 1090 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Massey v. Moore,*
　　348 U.S. 105 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*Mathews v. Eldridge,*
　　424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Middendorf v. Henry,*
　　425 U.S. 25 (1976)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

v

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Modderno v. King*,
    871 F. Supp. 40 (D.D.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Murgia-Melendrez v. INS*,
    407 F.2d 207 (9th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nadarajah v. Gonzales*,
    443 F.3d 1069 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nelson v. Geithner*,
    No. 09-35940, 2011 U.S. App. LEXIS 369 (9th Cir. Jan. 7, 2011). . . . . 9

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Palmer v. Ashe*,
    342 U.S. 134 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*,
    499 F.3d 1108 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rodriguez v. City of New York*,
    197 F.3d 611 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Ruiz v. Mukasey*,
    No. 05-76659, 2007 WL 4553361 (9th Cir. Dec. 27, 2007). . . . . . . . 14

*S. Or. Barter Fair v. Jackson County*,
    372 F.3d 1128 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shaughnessy v. U.S. ex rel. Mezei*,
    345 U.S. 206 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Southeastern Community College v. Davis*,
    442 U.S. 397 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tejeda-Mata v. INS*,
    626 F.2d 721 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thornton v. McClatchy Newspapers, Inc.*,
    261 F.3d 789 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Turner v. Rogers*,
    __ U.S. __, 131 S. Ct. 2507 (2011). . . . . . . . . . . . . . . . . . 16, 18, 19

*U.S. Airways, Inc. v. Barnett*,
    535 U.S. 391 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

vi

*U.S. v. Gasca-Kraft*
    522 F.2d 149 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States ex rel. Dioguardi v. Flynn*,
    15 F.2d 576 (W.D.N.Y. 1926). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Fiorillo*,
    186 F.3d 1136 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vinson v. Thomas*,
    288  F.3d 1145 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Vitek v. Jones*,
    445 U.S. 480 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wade v. Mayo*,
    334 U.S. 672 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Walters v. National Ass'n of Radiation Survivors*,
    473 U.S. 305 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Wong v. INS*,
    373 F.3d 952 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Zadvydas v. Davis*,
    533 U.S. 678 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

## **FEDERAL STATUTES**

8 U.S.C. § 1182(d)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

8 U.S.C. § 1225(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8 U.S.C. § 1225(b)(1)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

8 U.S.C. § 1226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8 U.S.C. § 1226( c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8 U.S.C. § 1226(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8 U.S.C. § 1229a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

8 U.S.C. §1229a(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8 U.S.C. §1229a(b)(4)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12, 13

8 U.S.C. § 1229a(b)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

8 U.S.C. § 1231(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 25

8 U.S.C. § 1362. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11, 12, 13

29 U.S.C. § 794. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 794(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL REGULATIONS

8 C.F.R. § 241.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

8 C.F.R. § 1003.19(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8 C.F.R. §1236.1(c)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8 C.F.R. §1240.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8 C.F.R. § 1240.11(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

28 C.F.R. § 39.130(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. § 39.150(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ.  P. 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# INTRODUCTION

Defendants hereby oppose Plaintiffs' motion for partial summary judgment, which seeks appointed counsel for all detained, mentally incompetent aliens and bond hearings at six months for detained aliens who have a serious mental disorder or defect, regardless of their competency. This requested relief is unprecedented and extraordinary, and not supported by the Rehabilitation Act, the Due Process Clause, or the Immigration and Nationality Act (INA).

First, regarding their claim for appointed counsel, Plaintiffs fail to establish a *prima facie* case under the Rehabilitation Act and cannot demonstrate that the accommodation of appointed counsel is reasonable in light of Defendants' evidence that such an accommodation would "fundamentally alter" the immigration court system. Plaintiffs' claim for appointed counsel is further undercut by INA provisions that explicitly limit the privilege of counsel to circumstances where it would be at no cost to the government and by the fact that, in the civil context, the Supreme Court has regularly declined to recognize a categorical right to appointed counsel. Plaintiffs also cannot establish that they are entitled to automatic bond hearings at six months as a reasonable accommodation under the Rehabilitation Act because they fail to make a *prima facie* case that they have been denied access to such hearings on account of their disability. In fact, Plaintiffs have not even established that all Subclass Two members are disabled. Additionally, neither the INA nor the Due Process Clause requires a bond hearing at six months, and no case from the pre-removal order detention context supports this requested relief.

Moreover, Plaintiffs have failed to satisfy the requirements for issuance of a permanent injunction. Aside from failing to show actual success on the merits, Plaintiffs fail to establish that the subclasses as a whole would suffer irreparable harm in the absence of the relief sought. Consequently, the Court should deny Plaintiffs' motion for partial summary judgment.

# STANDARD OF REVIEW[1]

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the moving party meets its initial burden of establishing the absence of any genuine dispute of material fact, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell,* 319 F.3d 1161, 1166 (9th Cir. 2003).  On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Miller,* 454 F.3d at 988.

Plaintiffs seek a permanent injunction.  *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment ("Pl. Mem."), Dkt. # 398-1, at 1, 32 n.16.  "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show . . . actual success," rather than just a likelihood of success to win a permanent injunction.  *Amoco Production Co., v. Village of Gambell, AK,* 480 U.S. 531, 546 n.12 (1987).  In considering whether permanent injunctive relief is warranted, a court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Flexible Lifeline Sys. v. Precision Lift, Inc.,* 654 F.3d 989, 997 (9th Cir. 2011).[2]

---

[1] Defendants respond fully to Plaintiffs' factual assertions in their Statement of Genuine Disputes of Material Fact and accompanying declaration.

[2] In making an ultimate determination on the merits of Plaintiffs' claims for counsel and bond hearings, this Court is not bound by its rulings on the earlier preliminary injunction motions.  It is well-established that a decision on a motion for a preliminary injunction is not the law of the case.  *See, e.g., S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004); *Anaheim v. Duncan*, 658

2

**ARGUMENT**

I.  **Plaintiffs' Claim For Appointed Counsel Under The Rehabilitation Act Fails Because Plaintiffs Have Not Established A *Prima Facie* Case Or That Their Requested Accommodation Is Reasonable.**

Subclass One members are not entitled to appointed counsel under the Rehabilitation Act.  First, Plaintiffs fail to establish a *prima facie* case under Section 504 of the Rehabilitation Act because they have not demonstrated a denial of the benefit sought, namely, meaningful access to the immigration court system.  Second, Plaintiffs are not entitled to the accommodation of their choice.  Plaintiffs' requested accommodation of appointed counsel for detained mentally incompetent aliens is unreasonable because it would require the Executive Office for Immigration Review (EOIR) to make a fundamental alteration to the immigration court system.  Finally, a reasonable accommodation already exists in the procedures and safeguards discussed in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011), a precedent decision of the Board of Immigration Appeals ("BIA").

a.  **Plaintiffs Fail To Establish A *Prima Facie* Case Under The Rehabilitation Act Because They Have Not Shown That They Were Denied Meaningful Access To The Immigration Courts.**

Plaintiffs fail to establish a *prima facie* case under Section 504 of the Rehabilitation Act because they have not demonstrated that all Subclass One members – or even a substantial portion of them – were denied meaningful access to the immigration courts.

F.2d 1326, 1328 n.2 (9th Cir. 1981); *FTC v. John Beck Amazing Profits, LLC*, No. 2:09-cv-04719-JHN-CWx, 2012 U.S. Dist. LEXIS 70068, at *29 (C.D. Cal. Apr. 20, 2012); *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.,* 499 F.3d 1108, 1114 (9th Cir. 2007).  Thus, even where a court issues a preliminary injunction ruling in favor of one party on a legal issue, the parties remain free to litigate the merits of that issue at trial.  *S. Or. Barter Fair,* 372 F.3d at 1136. Indeed, this Court recognized this rule when it stated in the first preliminary injunction order that "[t]he merits of the putative class members' claims are not before the Court on Plaintiffs' Preliminary Injunction Motion."  Dkt. # 107 at 38.

3

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. To establish a *prima facie* case under Section 504 in connection with their claim for appointed counsel, Plaintiffs must show: (1) that all Subclass One members are persons with disabilities; (2) that they were "otherwise qualified for the benefit or services sought;" (3) that they were "denied the benefit or services solely by reason" of their disability; and (4) that the entity receives federal funding. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see also* 29 U.S.C. § 794(a). Defendants do not contest that Plaintiffs satisfy the first, second and fourth requirements, but contest that Plaintiffs satisfy the third.

Not all Subclass One members can establish that they were denied the benefit sought, namely, meaningful access to the immigration court system. Of the 21 identified Subclass One members discussed in Plaintiffs' motion, 17 are no longer part of the class, as three of these individuals are represented by counsel in their proceedings and 14 have been released from the custody of Defendant Department of Homeland Security ("DHS"). *See* Declaration of Samuel P. Go ("Go Decl.") at ¶ 25-26.[3] Among the fourteen that have been released, one has been granted relief and seven have had their proceedings terminated. *See* Exhibit ("Exh.") A (Table summarizing data of 21 identified Subclass One members). These facts demonstrate the fallacy of Plaintiffs' assertion that all Subclass One members have been denied meaningful access to the immigration courts. At a minimum, they establish a genuine issue of material fact. *See* Fed. R. Civ. P. 56.

---

[3] This declaration, along with Exhibits A and B, will be filed under seal on August 20, 2012.

4

Because Plaintiffs cannot establish a *prima facie* case under the Rehabilitation Act, the Court need not analyze whether their requested accommodation is reasonable and should deny summary judgment on this claim.

**b. Even If Plaintiffs Could Demonstrate A Prima Facie Case, Their Requested Relief Would Constitute A "Fundamental Alteration" Of EOIR's Immigration Court System.**

Even assuming Plaintiffs could establish a *prima facie* case, appointed counsel for all mentally incompetent aliens detained for removal proceedings is far beyond a "reasonable accommodation," and amounts to a "fundamental alteration" of the immigration court system. *See* 28 C.F.R. § 39.150(a)(2).[4]

While failure to provide a reasonable accommodation can constitute discrimination under Section 504, *see, e.g., Vinson*, 288 F.3d at 1154, in assessing whether an accommodation is reasonable, the Rehabilitation Act merely aims to ensure "evenhanded treatment" between disabled and nondisabled persons. *Alexander v. Choate,* 469 U.S. 287, 304 (1985). An accommodation is reasonable if it is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). An accommodation is not reasonable if it "require[s] an organization to make fundamental or substantial alterations to its programs." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010). A "fundamental alteration" is one that alters an "essential aspect of the program."

---

[4] Plaintiffs offer no factual statements or supporting evidence to meet their initial burden that their requested accommodation is reasonable. *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (plaintiff bears initial burden of producing evidence that accommodation is reasonable, and only if this burden is met does it shift to the government to present rebuttal evidence that the requested accommodation was not reasonable); *accord Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003). Instead, Plaintiffs make only a single conclusory assertion that providing counsel to Subclass One members is not a fundamental alteration because "[a]ttorneys already practice in immigration court," Pl. Mem. at 13, and Defendants have already obtained "pro bono assistance on at least some occasions." *Id.*

5

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-83 (2001).  Further, a "fundamental alteration" is one that creates a new substantive benefit, or gives a disabled person an advantage over others.  *Id.*; *Rodriguez v. City of New York*, 197 F.3d 611, 619 (2d Cir. 1999).

Providing appointed counsel to all Subclass One members would fundamentally alter the immigration court system.  Since 1952, Section 292 of the INA, 8 U.S.C. § 1362, has guaranteed aliens in immigration proceedings the "privilege" of representation by counsel, but only "at no expense to the Government."  Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163.  *See also* 8 U.S.C. § 1229a(b)(4)(A).  Although Congress amended the statutory language to address removal proceedings, as opposed to deportation and exclusion proceedings, it retained the express limitation "at no expense to the Government."  *See* 8 U.S.C. § 1362.  This limitation reflects the fact that removal proceedings are relatively informal, streamlined administrative proceedings, where the Federal Rules of Evidence do not apply.  *Chung Lim You v. Mukasey*, No. 06-74741, 2007 U.S. App. LEXIS 29127, at *5 (9th Cir. Dec. 13, 2007).  The vast majority of detained aliens in removal proceedings proceed without counsel.[5]  Thus, requiring EOIR to provide counsel for all detained mentally incompetent detainees would alter an essential aspect of the program and create a new substantive benefit.  *PGA Tour*, *Inc.*, 532 U.S. at 682-83; *Rodriguez*, 197 F.3d at 619.  This is not required under the Rehabilitation Act.

_____

[5] Only 51 % of all aliens in immigration court were represented in FY2011.  *See* U.S. Department of Justice, EOIR, FY 2011 Statistical Yearbook, at G1, *available at* http://www.justice.gov/eoir/statspub/fy11syb.pdf.  The representation rates for detained aliens are even lower; in 2006-2007, for instance, approximately 84% of detained aliens with completed proceedings had lacked counsel.  *See* Vera Institute for Justice, "Improving Efficiency and Promoting Justice in the Immigration System: Lessons from the Legal Orientation Program, May 2008, p.1, *available at* http://www.vera.org/download?file=1780/LOPpercent2BEvaluation _May2008_final.pdf.

A system of appointed counsel would also fundamentally alter the immigration court system because EOIR does not have the capacity or funding to implement such a program. Section 504 does not require the Government to fundamentally change its programs. *See Southeastern Community College v. Davis,* 442 U.S. 397, 405 (1979); *see also Choate*, 469 U.S. at 300 (describing *Davis* as "str[iking] a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs"). An accommodation may not be required "where the plaintiffs seek to expand the substantive scope of a program or benefit." *American Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008).

Although Plaintiffs assert that EOIR could expand its Legal Orientation Program ("LOP") to provide legal representation for all detained, mentally incompetent aliens, Pl. Mem. at 13, financial and structural hurdles make this impossible. Congress funds the LOP through an appropriation specifically earmarked for LOP services, including "Know Your Rights" presentations, *pro se* assistance, workshops, and group orientations. *See* Declaration of Steven Lang ("Lang Decl.") at ¶¶ 6-7. As indicated in the contract between the LOP and its nongovernmental organization partners, LOP funds may not be used to provide direct representation. *Id.* at ¶¶ 8, 12; Exh. C (LOP Contract). Even if LOP providers could provide legal representation, there is no extra money in the LOP budget to pay for these services; the program regularly uses its entire $4 million appropriation. Lang Dec. at ¶ 13. Last, geographic hurdles make it impossible for the LOP providers to reach all mentally incompetent, detained aliens. *Id.* at ¶¶ 14-15. Currently, there are no LOPs in several large metropolitan areas where mentally incompetent aliens may be detained, including San Francisco and Phoenix. *Id.*

In addition, appointment of counsel would place Subclass One members in a significantly better position than nondisabled, detained aliens. Neither the

7

Rehabilitation Act nor DOJ's implementing regulations contemplate that an accommodation will place the qualified disabled individual in a better position vis-à-vis other program participants.  Section 504 "does not mandate the provision of new benefits." *Rodriguez*, 197 F.3d at 619.  It merely seeks to create evenhanded access to existing benefits.  *Choate*, 469 U.S. at 304.[6]  *See also* 28 C.F.R. § 39.130(a) (stating that a "reasonable accommodation" is intended to ensure "read[y] accessib[ility]").  Requiring appointed counsel, though, would do much more than remove a barrier to access; it would expand the scope of benefits provided to aliens in immigration court.  *See Paulson*, 525 F.3d at 1267; *supra* note 5.  Defendants are not required to provide and pay for counsel for aliens in removal proceedings.  *See* 8 U.S.C. § 1362; Lang Decl. at ¶¶ 3, 5, 12.  To order Defendants to appoint counsel for mentally incompetent aliens would, rather than even the playing field, expand the substantive scope of benefits and, therefore, fundamentally alter the immigration court system.[7]  *See Rodriguez*, 197 F.3d at 619; *Choate,* 496 U.S. at 303-304.

---

[6] In *Rodriguez*, the Second Circuit denied Rehabilitation Act relief where certain Medicaid recipients sought an accommodation that was not available to *any* Medicaid recipients.  *Rodriguez*, 197 F.3d at 619.  In *Paulson*, however, the Second Circuit found in favor of plaintiffs where they sought "to remove an obstacle that the visually impaired confront in using paper currency," which was not a "substantively different benefit than is already provided by the U.S. currency system." *Paulson*, 525 F.3d at 1268.  This case is more like *Rodriguez* and less like *Paulson* because Plaintiffs seek to expand the scope of benefits provided to aliens in removal proceedings, rather than remove an obstacle to a generally available benefit.

[7] The Court disagreed with this argument in its December 22, 2010 order, citing *US Airways, Inc. v. Barnett,* 535 U.S. 391, 397 (2002), and *Giebeler v. M & B Associates,* 343 F.3d 1143, 1150 (9th Cir. 2003), for the proposition that the Rehabilitation Act recognizes that preferences are sometimes necessary to achieve its "basic equal opportunity goal" and that because a requested accommodation may violate a disability-neutral rule or program does not place the requested accommodation out of the Rehabilitation Act's reach.  Dkt. # 107 at 34-35.

### c. To The Extent That Plaintiffs Warrant An Accommodation, They Are Not Entitled To The Accommodation Of Their Choice, And *Matter Of M-A-M-* Provides Sufficient Safeguards.

The Rehabilitation Act obligates Defendants to provide only a reasonable accommodation, not the accommodation of Plaintiffs' choice.  *See* 28 C.F.R. § 39.150(a);  *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation").  So long as Subclass One members have been provided a reasonable accommodation in consideration of their needs, Plaintiffs fail to raise a triable issue with respect to their claim for appointed counsel, even though that accommodation does not take the form of their requested relief.  *See Nelson v. Geithner,* No.  09-35940, 2011 U.S. App. LEXIS 369, at *2 (9th Cir. Jan. 7, 2011).

Here, Subclass One members have been provided a reasonable accommodation in the form of the procedures set forth, and safeguards described, in *Matter of M-A-M-*, a precedential BIA decision.  Building upon the statutory and regulatory framework for mentally incompetent aliens in removal proceedings, *M-A-M-* provides a "framework for Immigration Judges to determine whether a respondent is sufficiently competent to proceed and whether the application of safeguards is warranted."  *Matter of M-A-M-,* 25 I. & N. Dec. at 474.  Among other

However, the accommodations at issue in those two cases differ from the accommodation requested here, compelling a different analysis.  In *Barnett*, the requested accommodation allowed a disabled employee to be placed in a position ahead of more senior employees in violation of the company's seniority rules.  In *Giebeler*, the accommodation allowed a disabled tenant who was unemployable and without sufficient income to afford a rental apartment to rely on his mother to sign the rental agreement in violation of the company's policy that forbid co-signers.  Here, in contrast, Plaintiffs are not requesting exceptions to existing rules.  Instead, their requested accommodations would create an entirely new system of benefits in immigration court proceedings. Thus, the analyses set forth in *Bennett* and *Giebeler* applied to accommodations different from the one sought here, and the reasoning of those courts should not be followed here.

9

things, *M-A-M-* promulgates a definition of mental competency in removal proceedings, *id.* at 479; sets forth DHS's obligation to provide the court with relevant materials in its possession that would inform the court about the alien's mental competency, *id.* at 480; and requires immigration judges to make competency determinations on the record if an alien presents indicia of competency,[8] *id.* at 481.  Additionally, once an alien is determined to be incompetent, the immigration judge is obligated to "prescribe safeguards to protect the rights and privileges of the alien," *id.* at 481 (quoting 8 U.S.C. § 1229a(b)(3)), such as, *inter alia,* identifying a family member or close friend who can speak for the alien;[9]  docketing the case in a venue that would facilitate the alien's ability to obtain counsel and/or medical treatment for the purposes of restoring him to competency; and allowing a guardian to participate in the proceedings.  These safeguards must be tailored to the "facts and circumstances of an alien's case," *id.* at 483, as  required by Rehab Act jurisprudence.  *See Vinson,* 288 F.3d at 1154.

Recognizing that *M-A-M-* changes the legal landscape for aliens presenting mental competency issues, the BIA has remanded the cases of several aliens raising mental competency issues for further proceedings or new decisions in light of *M-A-M-.  See* Exh. D (sample BIA decisions).  DHS has also implemented a number of initiatives to ensure immigration judges are provided with relevant

---

[8] Although this Court's order on class certification indicated that "*Matter of M-A-M-* reaffirms 'an Immigration Judge is under no obligation to analyze an alien's competency,'" Dkt. # 348, at 19 (quoting *Matter of M-A-M-*, 25 I. & N. Dec. at 477), the relevant passage from *M-A-M-* states, "*Absent indicia of mental incompetency*, an Immigration Judge is under no obligation to analyze an alien's competency." 25 I. & N. Dec. at 477 (emphasis added).  Such indicia "include a wide variety of observations and evidence." *Id.* at 479.

[9] Defendants reassert and incorporate by reference their argument that 8 C.F.R. § 1240.4 defines the categories of persons suitable to serve as Qualified Representatives for the purpose of speaking for mentally incompetent aliens in removal proceedings.  *See* Dkt. 80 at 12-13, 15; Dkt. 150 at 12-21; Dkt. 164.

10

information within DHS's possession that may be indicative of a detained alien's mental impairment. *See Matter of M-A-M-,* 25 I. & N. Dec. at 480; Dkt. # 389 at 14-16. These initiatives include setting forth specific medical criteria to identify detained aliens with serious mental health conditions who may have a functional impairment, *see* Exh. E (Criteria for IHSC Serious Mental Illness Report); completing new standardized mental health forms – known as "mental health review reports" – in addition to the mental health screenings, assessments, and evaluations which were already in place under the ICE national detention standards, *see, e.g.,* Exh. F (sample mental health review report and pamphlet on mental status examinations); and providing training and guidance to DHS trial attorneys to ensure that they comply with *M-A-M-* in their practice before the immigration courts and BIA, s*ee* Exh. G (attorney training materials).

Although Plaintiffs are correct that *M-A-M-* does not suggest "any authority to appoint *counsel* for individuals not competent to represent themselves," Pl. Mem. at 14 (emphasis in original), this argument misses the point. The relevant issue here is whether *M-A-M-* – and the changes to the handling of detained incompetent aliens prompted by that decision – represent a "reasonable accommodation," regardless of Plaintiffs' preferred accommodation. *See Zivkovic,* 302 F.3d at 1089. The framework set forth in *M-A-M-* affords a reasonable accommodation because it protects the rights of Subclass One members through a variety of measures, including formal competency determinations made on the record and safeguards customized to facilitate meaningful access to the court. That Plaintiffs cannot demonstrate harm from not receiving their accommodation of choice, s*ee* Exh. A, demonstrates that *M-A-M-*'s safeguards are working.

## II.   Neither The INA Nor The "Full And Fair Hearing" Requirement Mandates The Appointment Of Counsel.

Plaintiffs also attempt to root their claim for appointed counsel in the INA and the Fifth Amendment's guarantee of a "fundamentally fair" hearing. *See* Pl.

Mem. at 16.  But instead of creating a right to appointed counsel, the INA expressly provides a limited "privilege of being represented, at no expense to the Government, by counsel of the alien's choosing."  8 U.S.C. § 1362; *see* 8 U.S.C. § 1229a(b)(4)(A).  Nor does the Fifth Amendment create a right to appointed counsel for Subclass One members, as due process jurisprudence recognizes the need to preserve the informal, streamlined nature of civil immigration proceedings as well as encourages the use of alternative procedural safeguards, short of counsel, to protect due process rights.

Plaintiffs are correct that 8 U.S.C. § 1229a(b)(4)(B) establishes "certain procedural safeguards in immigration proceedings," Pl. Mem. at 16, including an alien's right to examine the evidence against himself, present evidence on his own behalf, and conduct cross-examination.  But, contrary to Plaintiff's assertions, this provision, and other portions of the INA ensuring the fundamental fairness of removal proceedings, cannot be read to give rise to a right to appointed counsel for mentally incompetent aliens.  In the very same subsection, the INA provides that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing."  8 U.S.C. § 1229a(b)(4)(A).  This language is repeated nearly verbatim at 8 U.S.C. § 1362.  The plain language of those provisions, as well as established precedent, make clear Congress' intent that the Government not be required to provide appointed counsel for any alien.  *See, e.g., El Rescate Legal Services, Inc. v. EOIR,* 959 F.2d 742, 750 (9th Cir. 1992) (discussing "Congress' express instruction not to provide appointed counsel" in immigration court proceedings); *Escobar Ruiz v. INS*, 838 F.2d 1020, 1028 (9th Cir. 1988) (stating that 8 U.S.C. § 1362 "expresses Congress' intent to grant aliens the right to be represented by counsel in such proceedings, but not to grant indigent aliens the right to have counsel appointed at government expense").

"[U]nder accepted canons of statutory interpretation, statutes are to be interpreted as a whole," meaning that "[o]ne provision of a statute should not be

12

interpreted in a manner that renders other sections of the same statute inconsistent, meaningless or superfluous." *United States v. Fiorillo,* 186 F.3d 1136, 1153 (9th Cir. 1999). *See also Boise Cascade Corp. v. EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991) (same); *Hughes Air Corp. v. Public Utilities Comm.,* 644 F.2d 1334, 1338 (9th Cir. 1981). If this Court were to read a right to appointed counsel for mentally incompetent aliens into 8 U.S.C. § 1229a(b)(4)(B) and other parts of the INA that safeguard aliens' procedural rights, it would render meaningless the express language of 8 U.S.C. § 1229a(b)(4)(A) and 8 U.S.C. § 1362, which limit the privilege of counsel to situations where it is at no cost to the Government. The language of the INA cannot be more clear: an "alien shall have the privilege of being represented*, at no expense to the Government,* by counsel of the alien's choosing." 8 U.S.C. § 1229a(b)(4)(A) (emphasis added). No right to appointed counsel can ensue from this language.

Equally unworkable is Plaintiffs' attempt to rely on the Fifth Amendment's guarantee of fundamental fairness as the source of a right to appointed counsel for Subclass One members. *See* Pl Mem. at 16-29. Plaintiffs rely on a trio of criminal cases for the proposition that the Fifth Amendment requires the appointment of counsel for those individuals who may be incompetent by reason of mental illness, age, or other deficiency to represent themselves though they may otherwise be competent to stand trial. *See Massey v. Moore*, 348 U.S. 105 (1954); *Palmer v. Ashe*, 342 U.S. 134 (1951); and *Wade v. Mayo*, 334 U.S. 672 (1948). However, these cases are clearly distinguishable because they address the issue of incompetency in the context of criminal proceedings. *See Murgia-Melendrez v. INS*, 407 F.2d 207, 209 (9th Cir. 1969) ("The Supreme Court has repeatedly held that a deportation proceeding is not a criminal prosecution . . . . It follows, inevitably, that petitioner cannot rely on criminal case law").

It is well-established that a removal proceeding is a purely civil action in which the "various protections that apply in the context of a criminal trial do not

apply." *INS v. Lopez-Mendoza,* 468 U.S. 1032, 1038 (1984); *see Arizona v. United States*, __ U.S. __, 132 S. Ct. 2492, 2499 (2012) ("Removal is a civil, not criminal, matter").  Unlike a criminal trial, a removal proceeding need only comport with fundamental fairness, meaning that an alien must receive a "full and fair" hearing prior to his removal.  *See Tejeda-Mata v. INS,* 626 F.2d 721, 726 (9th Cir. 1980).

No court has suggested that the "full and fair hearing" requirement obligates the Government to provide counsel for a mentally incompetent alien in removal proceedings; in fact, case law indicates the opposite.  *See, e.g., Ruiz v. Mukasey,* No. 05-76659, 2007 WL 4553361, at *2 (9th Cir. Dec. 27, 2007) (holding that an unrepresented alien who alleged he was incompetent to represent himself was not entitled to counsel in his immigration court proceedings, due to the absence of a "mandate that the IJ [immigration judge] appoint such counsel"); *United States ex rel. Dioguardi v. Flynn*, 15 F.2d 576, 577  (W.D.N.Y. 1926) (recognizing that incompetent alien's "wife or other near relative with whom he lived" could have spoken on alien's behalf in the absence of counsel).  As the Ninth Circuit explained in *United States v. Gasca-Kraft,* "courts have uniformly held in this circuit and elsewhere that in light of the non-criminal nature of both the proceedings and the order which may be a result, . . . respondents [in removal proceedings] are not entitled to have counsel appointed at government expense."  522 F.2d 149, 152 (9th Cir. 1975).  *See also Leslie v. Att'y Gen.*, 611 F.3d 171, 181 (3d Cir. 2010) ("the Fifth Amendment does not mandate government-appointed counsel for aliens at removal proceedings").  Thus, no broad prophylactic right to appointed counsel follows from the due process guarantee of a "full and fair hearing."

It is also noteworthy that *Wade, Palmer* and *Massey* were all issued in the lead-up to the Supreme Court's recognition of a prophylactic right to appointed counsel for criminal defendants in the landmark case *Gideon v. Wainwright*, 372 U.S. 335 (1963).  A *Gideon*-like right simply does not exist in the immigration context.  Plaintiffs' argument that the Fifth Amendment provides a categorical

14

right to counsel for *all* detained incompetent aliens, regardless of the phase of proceeding or factual circumstances of each alien's case, ignores that "[d]ue process, rather than being a technical conception with a fixed content unrelated to time, place and circumstances, is flexible and calls for such procedural protections as the particular situation demands."  *Lone Star Sec. & Video, Inc. v. City of L.A.*, 584 F.3d 1232, 1236 (9th Cir. 2009).  Thus, while due process may require appointed counsel for mentally incompetent persons in criminal proceedings, it does not follow that all Subclass One members must also be afforded appointed counsel, particularly when other procedural safeguards exist to protect their rights. *See Walters* v. *National Ass'n of Radiation Survivors*, 473 U.S. 305, 326 (1985) ("The flexibility of our approach in due process cases is intended in part to allow room for other forms of dispute resolution"); *supra* Part I.c.

### III.   The Supreme Court's Right-To-Counsel Jurisprudence Under The Due Process Clause Does Not Mandate Appointment Of Counsel For All Subclass One Members.

According to Plaintiffs, "[e]ven if the right to a fair hearing, by itself, is not sufficient to require the appointment of counsel, the Court must ensure legal representation for Subclass One members under the Supreme Court's right-to-counsel jurisprudence in civil cases." Pl. Mem. at 19-20.

However, in areas outside the criminal context, the Supreme Court has regularly declined to recognize a *categorical* right to appointed counsel; instead, it has preferred a case-by-case approach or relied on alternative procedural safeguards to ensure due process.  *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (adopting case-by-case approach for analyzing right to appointed counsel in probation revocation hearings); *Lassiter v. Dept. of Social Services,* 452 U.S. 18 (1981) (adopting case-by-case approach for analyzing right to appointed counsel in proceedings for termination of parental rights); *Middendorf v. Henry,* 425 U.S. 25 (1976) (finding no right to appointed counsel in summary courts-martial

proceedings where presiding officer had a duty to assist the accused in conducting cross-examination and obtaining the attendance of witnesses and evidence on behalf of the defendant, and because the accused had the right to refuse trial by summary court-martial and thereby be placed in proceedings where he may have counsel); *Turner v. Rogers,* __ U.S. __, 131 S. Ct. 2507, 2520 (2011) (finding no right to appointed counsel for indigent contemnor in civil contempt proceedings where alternative procedural safeguards could adequately protect due process rights).[10]

In *Gagnon v. Scarpelli,* the Court rejected the "contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases." 411 U.S. at 787. While "such a rule ha[d] the appeal of simplicity," it would also "impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel." *Id.* at 787. Consequently, the Court held that the need for counsel in a probation revocation hearing "must be made on a case-by-case basis in the exercise of a sound discretion by the state authority." *Id.* at 790. Acknowledging that such a case-by-case approach had been rejected in the criminal context, the Court noted, "there are critical differences between criminal

---

[10] The one exception to this rule is juvenile delinquency proceedings, where the Court has recognized a broad prophylactic right to appointed counsel. *In re Gault*, 387 U.S. 1 (1967). But, as the Court later explained, that was because juvenile delinquency proceedings, "while denominated civil, [are] functionally akin to a criminal trial." *Gagnon*, 411 U.S. at 789 n.12. In *Vitek* v. *Jones*, 445 U.S. 480 (1980), a plurality of four members of the Court would have held that there is a due process right to counsel before a state involuntarily transfers a prisoner to a state mental hospital for psychiatric treatment. *See id.* at 497. Justice Powell's controlling concurrence, however, disagreed, concluding that "the fairness of an informal hearing designed to determine a medical issue" does not "require[] participation by lawyers." *Id.* at 500. Justice Powell agreed that a prisoner "required assistance" in such a proceeding to ensure fairness, but said that it could be "rendered by competent laymen in some cases." *Id.*

trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences." *Id.* at 788-89.

This case-by-case approach was also adopted in *Lassiter,* which involved parental rights-termination proceedings. 452 U.S. at 31-32. There, the Supreme Court left "the decision [of] whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court." *Id.* at 32. Although the Court held that a parent's interest in preserving parental rights is a "commanding" interest, *id.* at 27, and noted that the Department of Social Services was generally represented at the hearing by its own counsel, *id.* at 29, 32 – potentially resulting in an asymmetry of representation – these circumstances did not deter the Court from holding that due process did not require appointed counsel in every parental termination proceeding. *Id.* at 31.[11]

Moreover, even a case-by-case approach to counsel is unnecessary in this matter, as there are alternative safeguards to adequately protect the rights of unrepresented mentally incompetent aliens, as a result of *M-A-M-* and the changes to the handling of detained incompetent aliens prompted by the decision. In considering what procedures are required by due process, this Court must examine, *inter alia,* the risk of an erroneous decision "through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Supreme Court has explained that due

---

[11] That there may be cases with complex factual and legal issues in which counsel might provide a benefit beyond what could be obtained through other procedural safeguards, *see* Pl. Mem. at 24, does not alter the analysis. "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." *Walters* v. *National Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985); *see id.* at 331 ("existence of complexity in some cases" was not "sufficient to warrant a conclusion that the right to retain and compensate an attorney in [Veterans Administration] cases is a necessary element of procedural fairness under the Fifth Amendment").

process does not require that "the procedures used to guard against an erroneous deprivation be so comprehensive as to preclude any possibility of error," *Walters*, 473 U.S. at 320, and "that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard." *Id.* at 321.

Recently, in *Turner v. Rogers*, the Supreme Court re-affirmed that alternative procedural safeguards obviate the need for counsel when such safeguards can ensure "fundamental fairness" in the absence of government-provided counsel. Specifically, the *Turner* Court held that due process did not require the appointment of counsel for an indigent contemnor in civil contempt proceedings brought by the custodial parent, even when the contemnor faced imprisonment. 131 S. Ct. at 2520. Although a number of states provided appointed counsel in this very context, *id.* at 2514, the Supreme Court found that due process could be satisfied by alternative procedural safeguards that ensured a fundamentally fair determination of whether the contemnor was able to comply with his support order, such as: "(1) notice to the defendant that his 'ability to pay' is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (*e.g.*, those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay." *Id.* at 2519. Thus, the Supreme Court held that court findings and questioning from the judge designed to elicit testimony bearing on any relevant defenses were important procedural safeguards that could obviate the need for counsel.

Because these safeguards overlap in many ways with those provided under *M-A-M-*, *Turner* supports a finding that there is no need to find a right to counsel in this case because alternative procedural safeguards exist that adequately protect the rights of Subclass One members. For instance, just as *Turner* notes that express

18

findings by the court help ensure the fairness of civil contempt proceedings, 131 S. Ct. at 2519, *M-A-M-* requires immigration judges to articulate competency determinations – and the reasoning for these findings – on the record whenever the alien's case presents indicia of incompetency, 25 I. & N. Dec at 481, and also requires immigration judges to provide explicit reasoning for choosing a specific safeguard to facilitate an incompetent alien's meaningful participation in proceedings, *id.* at 483.  Moreover, just as *Turner* recognizes that the "opportunity at the hearing for the defendant to respond to statements and questions" is an important safeguard, 131 S. Ct. at 2519, so does *M-A-M-,* which highlights the need for immigration judges to "actively aid[] in the development of the record, including the examination and cross-examination of witnesses."  25 I. & N. Dec. at 483.  Indeed, immigration judges are also charged with informing aliens in removal proceedings of apparent eligibility for relief and affording them an opportunity to apply for such benefits.  *Id.* at 482; 8 C.F.R. § 1240.11(a)(2).

Plaintiffs suggest that *M-A-M-*'s safeguards are inadequate simply because the immigration judge has discretion in selecting an approach to facilitating an incompetent alien's meaningful participation in proceedings.  Pl. Mem. at 14.  But rather than being a weakness, this discretion is one of *M-A-M-*'s strengths.  Removal proceedings vary in complexity and duration from case to case, and this variation necessitates individualized procedural safeguards that account for the particular "facts and circumstances of an alien's case."  *Matter of M-A-M-*, 25 I. & N. Dec. at 483.  While some aliens may experience lengthy and complicated hearings on the merits of their applications for relief or the applicability of the removability charges brought against them, other aliens' proceedings are much more simplified and abbreviated, such as when the Government stipulates to facts or declines to oppose an alien's relief application, or the alien's eligibility for relief is clear from documentary or other evidence in the record.

This fact is significant because, even in the criminal context, unrepresented incompetent defendants are subject to varying gradations of procedural protection depending on the circumstances of their case.  For instance, in *Godinez v. Moran*, 509 U.S. 389 (1993), the Supreme Court recognized that a borderline incompetent person can waive the right to counsel just to enter a guilty plea.  As the Court in *Indiana v. Edwards* distinguished, "the *Godinez* defendant sought only to change his pleas to guilty, he did not seek to conduct trial proceedings, and his ability to conduct a defense at trial was expressly not at issue." *Indiana v. Edwards,* 554 U.S. at 173.  Thus, it was unnecessary for the trial court to subject the defendant to the higher competency standard applicable to individuals who must conduct trial proceedings *pro se*. *Id.; see also Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010) (noting that competency standard "varies in relation to the task the defendant is expected to perform").  Similarly, in the present matter, it is simply not true that every Subclass One member will proceed to a contested merits hearing, or have a complicated case, legally or factually.  An appropriate due process analysis for Subclass One would take into account the need for varying procedural protections in fashioning relief.

In sum, the Supreme Court's right-to-counsel jurisprudence in the civil context does not support Plaintiffs' claim for appointed counsel for all Subclass One members.  The case law makes clear that the alternative procedural safeguards set forth in *M-A-M-* ensure due process for Subclass One members even in the absence of counsel.

## IV.     Plaintiffs' Claim For Bond Hearings Fails Under The Rehabilitation Act, The INA And The Due Process Clause.

In addition to their claim for counsel, Plaintiffs allege that the Rehabilitation Act, the INA and the Due Process Clause *require* that all class members be provided a bond hearing once they have been detained for six months.  Pls.' Mem. at 29-30.  Plaintiffs' contention is not supported by law.

20

First, Plaintiffs are not entitled to an automatic bond hearing as a reasonable accommodation under Section 504 of the Rehabilitation Act because they fail to establish a *prima facie* case that each Subclass Two member has a disability under the statute or has been denied access to such a hearing on account of his or her disability.  Second, neither the INA nor the Due Process Clause requires that Plaintiffs be provided an automatic hearing after six months of detention while in removal proceedings.  Indeed, no pre-final order detention case supports Plaintiffs' position.  Instead, Plaintiffs rely on Ninth Circuit cases addressing the distinguishable context of aliens with *final orders of removal*.  Accordingly, Plaintiffs' argument that the law requires them to receive automatic pre-final order bond hearings to which no other aliens are entitled fails as a matter of law.

### a.    Plaintiffs' Claim That The Rehabilitation Act Requires The Government To Conduct Bond Hearings Lacks Merit.

Plaintiffs are not entitled to summary judgment on their claim for automatic bond hearings because they have not – and cannot – establish a *prima facie* case under Section 504 of the Rehabilitation Act.

First, Plaintiffs must show that they have a disability as defined by the Rehabilitation Act.  *See Lovell*, 303 F.3d at 1052.  The Ninth Circuit has held that "[w]hether a person is disabled under the [statute] is an individualized inquiry." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001). Plaintiffs have not shown that each individual class member in Subclass Two has a disability as defined by the Rehabilitation Act.  By definition, Subclass Two includes individuals who are not rendered incompetent by their serious mental disorder or defect.  *See* Dkt. # 348 at 3.  Moreover, Plaintiffs have asserted that the class includes "people with a personal history of mental disorder," *see* Plaintiffs' Supplemental Brief in Support of Class Certification, Dkt. # 318 at 7, a vague formulation that does not equate to a cognizable disability under the Rehabilitation

Act.  *See also* Dkt. # 389 at 11-12 (discussing problems with Plaintiffs' class definition).

Additionally, Plaintiffs must show that they are "otherwise qualified" for a federally funded benefit or service, and that they were denied that benefit or service because of their disability.  *See Lovell*, 303 F.3d at 1052; 29 U.S.C. § 794(a).  Here, Plaintiffs can show neither that they are entitled to bond hearings, nor that they were denied bond hearings because of their mental disabilities. Plaintiffs argue that they are entitled to an automatic bond hearing at six months, regardless of the status of their removal proceedings and the authority under which they are detained.  *See* Pl. Mem. at 32.  But the law does not provide *per se* bond hearings for all aliens – disabled or nondisabled – after six months of detention. Rather, under the law of the Ninth Circuit, Defendants provide bond hearings to detained aliens after six months if the aliens' removal orders are administratively final and DHS is detaining the aliens pursuant to 8 U.S.C. § 1231(a)(6) pending their removal.  *See Diouf v. Napolitano*, 634 F.3d 1081, 1086 (9th Cir. 2011).  The right to bond hearings in that situation applies equally to disabled and nondisabled individuals.  *See* Pl. Mem. at 29-32.  In the pre-removal order context, neither nondisabled nor disabled aliens are automatically entitled to a bond hearing after six months; the law recognizes no such bright-line rule.  Thus, Plaintiffs now seek more than what nondisabled, detained aliens receive – a right to a preemptory detention hearing that is not available to nondisabled aliens.  *See Choate*, 469 U.S. at 304 (the aim of the Rehabilitation Act is "evenhanded treatment").  Because Plaintiffs cannot show that Defendants denied them a bond hearing to which they were otherwise entitled, they fail to establish a *prima facie* case under Section 504 of the Rehabilitation Act.[12]  *See Lovell*, 303 F.3d at 1052.

---

[12] Even if Plaintiffs established a *prima facie* case, automatic bond hearings are not a "reasonable accommodation" because they exceed the benefits offered to nondisabled individuals.  As discussed in Part II above, the Rehabilitation Act aims

### b. Neither The INA Nor The Due Process Clause Requires The Bond Hearings At Six Months.

Plaintiffs claim that, regardless of the statute under which a class member is detained or the individual circumstances of the class member's removal proceedings, *all* class members – even those determined competent – are entitled to an automatic bond hearing after six months of detention.  However, Plaintiffs' proposed six-month rule is based on detention cases from the *post-removal order* context, as opposed to the *pre-removal order* context at issue here.  Detention without a bond hearing under the pre-removal order detention statutes, Sections 1226(b) and 1225(b), however, is constitutional, even beyond six months.

As a matter of law, Section 1226(c) includes no authority to release aliens on bond.[13]  Section 1226(c) provides that DHS "*shall* take into custody" during the pendency of his removal proceedings any alien who commits certain offenses enumerated in the statute, with the exception of a limited release provision in

---

to create equal access to federally funded programs, but its limits are not boundless.  *See Modderno v. King*, 871 F. Supp. 40, 42 (D.D.C. 1994) (quoting *Choate*, 469 U.S. at 298) ("[A]ny interpretation of § 504 must consider, in addition to the statutory objectives, 'the desire to keep § 504 within manageable bounds.'").  The provision of automatic bond hearings at six months is a remedy beyond the bounds of Section 504 of the Rehabilitation Act.

Moreover, because the pre-removal order detention statutes at issue, 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b), require detention *without a bond hearing*, it would effect a "fundamental alteration" of the existing detention program for Defendants to provide bond hearings to Subclass Two members.

Finally, Plaintiffs claim that they deserve a reasonable accommodation because they are more likely to experience prolonged detention.  But Plaintiffs have shown no authority to support their claim that the class as a whole suffers from prolonged detention.

[13] Criminal aliens detained under Section 1226(c) are not without process, however, and may challenge whether they are properly included within the reach of Section 1226(c) before DHS and in a subsequent hearing before an immigration judge, and then to the BIA.  *See* 8 C.F.R. §§ 1003.19(a), (b), and (h)(2)(ii); 236.1(c)(10), (d)(1), and (d)(3).

specific instances where the alien has provided material assistance in a criminal matter. *See* 8 U.S.C. § 1226(c)(1) (emphasis added). The Supreme Court upheld the constitutionality of Section 1226(c) in *Demore v. Kim*, stating, "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period *necessary for their removal proceedings*." 538 U.S. at 512 (emphasis added).

Although the Supreme Court and the Ninth Circuit have held that potentially indefinite detention raises constitutional concerns, *see Zadvydas v. Davis*, 533 U.S. 678, 692 (2001); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006), Section 1226(c) does not give rise to potentially indefinite detention. When detention lasts only as long as the pendency of removal proceedings, as it does under Section 1226(c), it includes "a definite termination point" and remains constitutional. *Demore*, 538 U.S. at 529. Thus, Plaintiffs cannot claim that aliens facing detention beyond six months under 1226(c) face indefinite detention.

Additionally, detention under Section 1226(c) serves a statutory purpose that does not fade when detention continues beyond six months. "Where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Detention of criminal aliens under Section 1226(c) serves the important purpose of ensuring that criminal aliens do not flee or commit other crimes pending their removal proceedings. *Demore*, 538 U.S. at 518. Unlike the detention of an alien ordered removed but who cannot be removed in the reasonably foreseeable future, detention in the context of pending removal proceedings continues to serve the statutory purpose of ensuring that an alien cannot flee prior to the termination of such proceedings. *Id.* at 527 (distinguishing *Zadvydas*).

Because due process is flexible and depends upon the circumstances of the individual case, courts have been careful to consider as-applied challenges to mandatory detention based on the particular facts presented in each individual case. *See Demore*, 538 U.S. at 530-31 (noting that the detention at issue was lengthened because the alien "himself had requested a continuance of his removal hearing."). This flexibility has led courts that have addressed mandatory detention during removal proceedings – including the Third and Sixth Circuits – to reject the notion that the Constitution demands the blanket six-month rule Plaintiffs seek. *See Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003) (rejecting a six-month rule, concluding that "[a]bright-line time limitation . . . would not be appropriate for the pre-removal period" because "an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period"); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 234 (3d Cir. 2012) (declining "to adopt such a one-size-fits-all approach" because the constitutionality of detention under Section 1226(c) "is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case.").

Plaintiffs' reliance on *Diouf*, 634 F.3d 1081, and *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008), whether by analogy or otherwise, is improper here because the facts and the law at issue in those cases were fundamentally different. In *Diouf*, the Ninth Circuit construed a *post-order* detention statute, 8 U.S.C. § 1231(a)(6), and related regulations found at 8 C.F.R. § 241.4 providing for post-order custody reviews. *Id.* at 1085, 1089-90. The fact that *Diouf* considered prolonged detention in a post-order setting was significant, because the Court acknowledged that "it may take years for the petitions for review to be resolved." *Id.* at 1088. The *Diouf* Court carefully limited its holding to aliens in post-order detention. *Diouf* is also distinguishable because 8 U.S.C. § 1231(a)(6) provides for discretionary detention. By contrast, Section 1226(c) includes non-discretionary language fueled by congressional concerns about criminal aliens who

25

present high risks of flight and additional criminal offenses while awaiting the conclusion of removal proceedings.  *Demore*, 538 U.S. at 518.  Thus, Plaintiffs' reliance on *Diouf* is misplaced.

*Casas-Castrillon* is also distinguishable.  As in *Diouf*, the Court in *Casas-Castrillon* considered the issue of prolonged detention under a discretionary – not mandatory – detention statute, 8 U.S.C. § 1226(a).  As in *Diouf*, the alien was no longer in removal proceedings but was instead seeking judicial review with a concomitant stay of removal.  The alien's placement in the removal process mattered in *Casas-Castrillon*, because the court concluded that "[t]he Supreme Court [in *Demore*] similarly recognized . . . that section 1226(c) was intended only to 'govern[ ] detention of deportable criminal aliens *pending their removal proceedings.*'"  *Casas*, 535 F.3d at 948 (quoting *Demore*, 538 U.S. at 527-28) (emphasis in original).  Once "Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a)."  *Id.*  Thus, the Ninth Circuit concluded that because "neither § 1231(a) nor § 1226(c) governs the prolonged detention of aliens awaiting judicial review of their removal orders, … Casas' detention was authorized during this period under the Attorney General's general, discretionary detention authority under § 1226(a)."  *Casas*, 535 F.3d at 948.

To the extent that class members are detained under Section 1225(b), the same arguments apply.[14]  The detention provisions of Section 1225(b), like Section 1226(c), are mandatory.  8 U.S.C. §§ 1225(b)(1)(B)(ii); (B)(iii)(IV); (b)(2)(A); *see also Matter of X-K-*, 23 I. & N. Dec. 731, 734 (BIA 2005).  The detention of arriving aliens during the pendency of their removal proceedings is constitutional

---

[14] Plaintiffs' class consists of individuals "in removal proceedings" under 8 U.S.C. § 1229a.  Dkt. # 348 at 3.  Arriving aliens, who are detained under the authority of 8 U.S.C. § 1225(b), may be placed in Section 1229a proceedings, and are thus addressed here.  *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011).

26

because, similar to detention under Section 1226(c), such detention is not indefinite.  Additionally, the detention of arriving aliens pending a determination of their removal continues to serve the statutory purpose of allowing the government to effectively exercise the power to exclude or admit, a "fundamental sovereign attribute."  *Fiallo v. Bell*, 430 U.S. 787, 792 (1977).  Furthermore, because arriving aliens have the ability to apply for parole under 8 U.S.C. § 1182(d)(5)(A) to be "temporarily released" into the United States pending removal proceedings, courts have held that due process does not require the Government to provide arriving aliens with bond hearings if the Government was providing such aliens with the opportunity to apply for parole.  *See, e.g., Abdi v. Napolitano*, No. C10–1722RSL, 2011 WL 1584433 (W.D. Wash. Apr. 26, 2011).  Lastly, as arriving aliens, the due process rights of those class members detained under Section 1225(b) are at the least much more limited than the rights of admitted aliens detained under Section 1226(c).  *See, e.g., Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1445 (9th Cir. 1995) (en banc), *superseded by statute as stated in Wong v. INS*, 373 F.3d 952, 972 n. 26 (9th Cir. 2004) (finding it "significant that Congress has for at least four decades been aware of instances of long-term detention of excludable aliens by the executive branch," and concluded that, consistent with [*Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)], the alien had "no right to be free from detention pending his deportation").  Thus, class members detained under Section 1225(b), like those detained under Section 1226(c), have no due process right to an automatic bond hearing after six months of detention.

Finally, the doctrine of constitutional avoidance cannot be applied to either Section 1226(c) or to Section 1225(b), because both statutory provisions *unambiguously* exclude bond hearings for aliens detained under these provisions during removal proceedings.  Under the canon of constitutional avoidance, a court will "read [a challenged] statute to eliminate" any constitutional doubt "so long as

such a reading is not plainly contrary to the intent of Congress." *Holder v. Humanitarian Law Project,* 130 S. Ct. 2705, 2742 (2010).  There is no plausible reading of Section 1226(c) or Section 1225(b) that gives the Executive the discretion to release aliens on bond.  Congress intended that certain criminal aliens be detained during the entirety of their removal proceedings, amending the INA to eliminate any discretionary release except only in the most narrow of circumstances under Section 1226(c)(2).  Similarly, Congress explicitly excluded the ability of arriving aliens to be released on bond, providing instead a mechanism where such aliens *may* be released on parole.  8 U.S.C. § 1182(d)(5)(A). Accordingly, this Court cannot apply constitutional avoidance and must instead address the constitutionality of those statutes as applied.[15]

## V. Plaintiffs Fail To Establish Eligibility For Permanent Injunctive Relief.

Finally, in order for Plaintiffs to succeed on this motion, they must prove that they meet the standards for the "extraordinary relief" of a permanent injunction.  The standard for a permanent injunction is the same as that of a preliminary injunction, with the significant exception that Plaintiffs must show *actual* success on the merits.  *See Amoco Production Co., v. Village of Gambell, AK*, 480 U.S. at 546 n.12.  To win on summary judgment, Plaintiffs must establish: 1) that they have actual success on the merits; 2) that they are likely to suffer

---

[15] Defendants also contest Plaintiffs' assertion that the burden of proof during a bond hearing is on the Government to demonstrate by clear and convincing evidence that the alien presents a danger to the community or a flight risk to justify continued detention.  *See* Pl. Mem. at 31.  It is well-established that aliens detained pursuant to the nondiscretionary detention statute, Section 1226(a), bear the burden of proof in establishing their eligibility for release in bond proceedings.  *See, e.g., Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009) (citing 8 C.F.R. § 1236.1(c)(8) and *Matter of Adeniji*, 22 I. &. N. Dec. 1102, 1113 (BIA 1999)).  By shifting the burden of proof to the Government to justify detention under *mandatory* detention statutes that are premised on the reduced liberty interests of criminal aliens and arriving aliens, Plaintiffs' proposal would create a perverse result.

28

irreparable harm in the absence of permanent injunctive relief; 3) that the balance of equities tips in their favor, and that (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).[16]

In their motion, Plaintiffs fail to show that they have satisfied all of these prerequisites and, on this basis alone, the Court should deny relief. *See, e.g., Abbassi v.* INS, 143 F.3d 513, 514 (9th Cir. 1998) (refusing to grant petitioner's requested injunctive relief because the petitioner "identified no potential hardships" and made only a "perfunctory request" for the injunctive relief sought). The only one of the four prongs Plaintiffs attempt to establish is actual success on

---

[16] Plaintiffs may argue that they need not show irreparable harm so long as they establish actual success on the merits under Ninth Circuit case law. *See, e.g., Continental Airlines, Inc., v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir. 1994) (finding that irreparable harm is not a required independent finding for a permanent injunction). However, this standard cannot possibly be squared with Supreme Court precedent stating that the standard for a permanent injunction is "essentially the same" as that for a preliminary injunction, with the exception of showing actual success. *See Amoco Production Co.*, 480 U.S. at 546 n.12 (explaining, "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success"); *Allee v. Medrano*, 416 U.S. 802, 814 (1974) (noting that "irreparable injury is a traditional prerequisite to obtaining an injunction in any case"); *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (employing traditional four-factor test). In any event, Plaintiffs fail to establish success on the merits for the reasons described above. Moreover, under Ninth Circuit jurisprudence, Plaintiffs must show "no adequate legal remedy" to obtain permanent injunctive relief. *See Continental*, 24 F.3d at 1104. Plaintiffs make no showing that there is no adequate legal remedy, and Defendants maintain that adequate remedies exist through the petition for review process such that this Court is deprived of jurisdiction from reviewing Plaintiffs' claims. *See* Dkt. # 61, 70. For all the reasons stated in those earlier pleadings, incorporated herein by reference, the REAL ID Act requires Plaintiffs to first exhaust their administrative remedies with an immigration judge and the BIA before pursuing their claims with the appropriate circuit court of appeals. *See id.;* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9).

the merits.  The foregoing arguments demonstrate why Plaintiffs fail on the merits.  But even if the Court finds otherwise, its analysis cannot end there.  To award the "extraordinary relief" of a permanent injunction, the Court must find that the other prongs of the permanent injunction analysis are satisfied.

Plaintiffs fail to show that irreparable harm would be generally applicable to the class, merely arguing in a footnote at the end of their brief that, "For the reasons this Court has previously explained, the Named Plaintiffs and Subclass members who seek relief by this Motion all have suffered or will suffer irreparable harm for which no remedy at law can compensate them, equitable relief is warranted to remedy that harm, and the public would suffer no disservice by the provision of such relief."  Pl. Mem. at 32 n.16 (citations omitted).  Of course, this Court has *not* previously found that all class members have suffered or will suffer irreparable harm, and Plaintiffs' failure to provide evidence of class-wide irreparable harm is sufficient for this Court to deny Plaintiffs' motion.

That the Court may have found irreparable harm to a few of the Named Plaintiffs in the preliminary injunction litigation is insufficient for this Court to make a finding that whatever irreparable harm was suffered by the Named Plaintiffs is "generally applicable to the class" such that class-wide injunctive relief is appropriate.  *See* Fed. R. Civ. P. 23(b)(2) (Plaintiffs must show that Defendants "acted or refused to act on *grounds that apply generally to the class* so that final injunctive relief . . . is appropriate.") (emphasis added).  Plaintiffs' "uncontroverted facts," even if accepted as true, do not show that the members of Subclasses One or Two are generally suffering irreparable harm as a result of Defendants' policies or procedures regarding aliens with severe mental health disorders or defects.  *See, e.g.,* Dkt # 398-2, SUF #31 ("*At least one* Subclass One member . . . was found incompetent . . ., ordered deported, and thereafter forced to file an appeal on his own.") (emphasis added); SUF #39 (referring to *one* class member Plaintiffs allege was ordered removed after an immigration judge found him incompetent to

30

proceed *pro se*).  Based on these alleged facts and others like them, Plaintiffs jump to the conclusions that, in addition to some Named Plaintiffs, "other members of Subclass One have suffered an irreparable injury," and "other members of Subclass Two have suffered an irreparable injury." Dkt #398-2, Conclusions of Law # 6, 8.  These claims, even if true, do not support that Defendants are *generally* irreparably injuring Subclass One and Subclass Two members such that injunctive relief should be awarded.  *See Allee*, 416 U.S. at 815 (finding that "isolated incidents" would not "be cause for the exercise of a federal court's equitable powers.").

Plaintiffs must show a "persistent pattern" of individuals being irreparably harmed as a result of Defendants' policies.  *Id.*  The district court's analysis in another class action in the immigration context found that unless there exists a pattern or practice to the "class *as a whole*, . . . alleged patterns and practices would not be amenable to resolution through [a] single sweeping injunction. *Aguilar v. Immigration and Customs Enforcement,* 2012 WL 1344417 at * 8 (S.D.N.Y. 2012) (emphasis in original).  Plaintiffs are unable to make a showing that a pattern or practice exists that affects the class as a whole.

In fact, Defendants' facts demonstrate otherwise.  For the 21 identified Subclass One members, the facts show that 17 are no longer part of the class, as three of these individuals are represented by counsel in their proceedings and 14 have been released from DHS custody.  *See* Go Decl. at ¶ 25-26.  Among the 14 that have been released, one has been granted relief and seven have had their proceedings terminated.  *See id*. at 25; Exh. A.  *See also* Dkt. # 398-2, SUF # 36 (acknowledging that "some individuals identified as Subclass One members have been released or had their proceedings terminated.").  Plaintiffs cannot show that these individuals were or will be irreparably harmed.  To the contrary, *none* of these individuals will be in the position that Plaintiffs claim to seek to prevent – that is, being "forced" to represent themselves while mentally incompetent and suffering irreparable harm as a result.

31

In short, Plaintiffs have not shown that the members of Subclasses One and/or Two are generally suffering irreparable harm, and make no showing that the harm exists to the class as a whole in a manner that is amenable to resolution through a sweeping injunction.  Their failure to make this required showing prevents an award of "extraordinary relief" in the form of a permanent injunction, which is intended to force the agencies to cease conduct found to be illegal *and which* causes irreparable harm.[17]  Accordingly, the Court should deny Plaintiffs' motion for summary judgment.[18]

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for partial summary judgment.

DATED: August 17, 2012                    Respectfully submitted,


                                          STUART F. DELERY
                                          U.S. Department of Justice
                                          Civil Division
                                          Acting Assistant Attorney General

---

[17] Plaintiffs' motion must also be denied because Plaintiffs fail to make any showing that injunctive relief is appropriate based on the third and fourth prongs of the standard for injunctive relief (balance of equities, public interest).  *Abbassi v. INS*, 143 F.3d at 514.

[18] To the extent the Court does not outright deny Plaintiffs' motion, it should hold the matter in abeyance to allow Defendants to further argue the absence of irreparable harm at the close of discovery.  *See* Fed. R. Civ. P. 56(d) (permitting the Court to defer considering the motion for summary judgment to allow the nonmovant time to obtain affidavits or declarations or to take discovery). Defendants are in the midst of conducting discovery that would further prove that Plaintiffs in Subclasses One and Two are not suffering prejudice or irreparable harm.  Defendants served discovery on August 17, 2012 that is intended to elicit information precisely on this issue.  *See* Exh. H (Defendants' First Set of Interrogatories for Merits Discovery; Defendants' First Set of Requests for Production of Documents for Merits Discovery).

DAVID J. KLINE
Director
Office of Immigration Litigation
District Court Section

VICTOR M. LAWRENCE
Principal Assistant Director

SAMUEL P. GO
Senior Litigation Counsel

 /s/ *Neelam Ihsanullah*
NEELAM IHSANULLAH
Trial Attorney
Office of Immigration Litigation
District Court Section
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendants-Respondents

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 17, 2012, one copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment was filed with the Clerk of Court using the CM/ECF system, which sent notice to the following counsel of record:

John David Blair-Loy
ACLU of San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138
619-398-4496
Fax: 619-232-0036
Email: dblairloy@aclusandiego.org

Michael H. Steinberg
Sullivan & Cromwell LLP
1888 Century Park East Suite 2100
Los Angeles, CA 90067-1725
310-712-6600
Fax: 310-712-8800
Email: steinbergm@sullcrom.com

Ahilan T. Arulanantham
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
213-977-5211
Fax: 213-977-5297
Email: aarulanantham@aclu-sc.org

Alexa M. Lawson-Remer
Sullivan & Cromwell LLP
1888 Century Park East Suite 2100
Los Angeles, CA 90067
310-712-6600
Fax: 310-712-8800
Email: lawsonr@sullcrom.com

34

Antonio Stamenova-Dancheva
Sullivan & Cromwell LLP
1888 Century Park East
Los Angeles, CA 90067
310-712-6600
Email: stamenovaa@sullcrom.com

Asel Aliyasova
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
650-461-5600
Fax: 650-461-5700
Email: aliyasovaa@sullcrom.com

Esha Bhandari
ACLU Immigrants Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-284-7359
Fax: 212-549-2654
Email: ebhandari@aclu.org

James Duff Lyall
ACLU Foundation of Arizona
3707 North Seventh Street Suite 235
Phoenix, AZ 85014
602-773-6001
Fax: 602-650-1376
Email: jlyall@acluaz.org

James J. Preis
Mental Health Advocacy Services Inc.
3255 Wilshire Boulevard Suite 902
Los Angeles, CA 90010
213-389-2077
Fax: 213-389-2595
Email: jpreis@mhas-la.org

35

Marisol Orihuela
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel: 213.977.5211
Fax: 213.977.5299
Email: morihuela@aclu-sc.org

Judy London
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
213-385-2977
Fax: 213-385-9089

Judy Rabinovitz
American Civil Liberties Union
Immigrants' Rights Project
125 Broad Street 18th Floor
New York, NY 10004
212-549-2618
Fax: 212-549-2654
Email: jrabinovitz@aclu.org

Matt Adams
Northwest Immigrant Rights Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8611
Fax: 206-587-4025
Email: matt@nwirp.org

Riddhi Mukhopadhyay
Northwest Immigrants' Rights Project
615 Second Avenue Suite 400
Seattle, WA 98104-2244
206-957-8651
Fax: 206-587-4025

36

Email: riddhi@nwirp.org

Sean Riordan
ACLU Foundation of San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138
619-398-4485
Fax: 619-232-0036
Email: sriordan@aclusandiego.org

Shawn Joe Lichaa
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303-3308
650-461-5662
Fax: 650-461-5700
Email: lichaas@sullcrom.com

Talia R. Inlender
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
213-385-2977
Fax: 213-385-9089
Email: tinlender@publiccounsel.org

*/s/ Neelam Ihsanullah*
NEELAM IHSANULLAH
Trial Attorney
Office of Immigration Litigation
District Court Section
U.S. Department of Justice
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4269
Facsimile: (202) 616-8962
Email:Neelam.Ihsanullah@usdoj.gov