1  AHILAN T. ARULANANTHAM (State Bar No. 237841)
   aarulanantham@aclu-sc.org
2  MARISOL ORIHUELA (State Bar No. 261375)
   morihuela@aclu-sc.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, California 90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 417-2211

6  MICHAEL H. STEINBERG (State Bar No. 134179)
   steinbergm@sullcrom.com
7  SULLIVAN & CROMWELL LLP
   1888 Century Park East, Suite 2100
8  Los Angeles, California  90067-1725
   Telephone: (310) 712-6600
9  Facsimile: (310) 712-8800

10  *Attorneys for Plaintiffs-Petitioners*
    (Additional Counsel for Plaintiffs
11   on Following Page)

12

13                **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

| 16  JOSE ANTONIO FRANCO-GONZALEZ, et al., | ) | Case No. 10-CV-02211 DMG (DTBx) |

16  JOSE ANTONIO FRANCO-
    GONZALEZ, et al.,                    )   Case No. 10-CV-02211 DMG (DTBx)

17                                       )   **PLAINTIFFS' REPLY IN**
         *Plaintiffs-Petitioners,*       )   **SUPPORT OF MOTION FOR**
18                                       )   **PARTIAL SUMMARY**
              v.                         )   **JUDGEMENT**
19                                       )
    ERIC H. HOLDER, Jr., Attorney        )   Hearing Date:  September 7, 2012
20  General, et al.,                     )
                                         )   Hearing Time:  11:00 a.m.
21        *Defendants-Respondents.*      )
                                         )   Honorable Dolly M. Gee
22                                       )
                                         )
23

24

25

26

27

28

1   JUDY LONDON (State Bar No. 149431)
    jlondon@publiccounsel.org
2   TALIA INLENDER (State Bar No. 253796)
    tinlender@publiccounsel.org
3   PUBLIC COUNSEL
    610 South Ardmore Avenue
4   Los Angeles, California 90005
    Telephone: (213) 385 2977
5   Facsimile: (213) 385-9089

6   JUDY RABINOVITZ (State Bar No. JR-1214)
    JRabinovitz@aclu.org
7   ACLU IMMIGRANTS' RIGHTS PROJECT
    125 Broad Street, 18th Floor
8   New York, New York 10004-2400
    Telephone: (212) 549-2618
9   Facsimile: (212) 549-2654

10  DAVID LOY (State Bar No. 229235)
    dblairloy@aclusandiego.org
11  SEAN RIORDAN (State Bar No. 255752)
    sriordan@aclusandiego.org
12  ACLU OF SAN DIEGO & IMPERIAL COUNTIES
    P.O. Box 87131
13  San Diego, California 92138
    Telephone: (619) 232-2121
14  Facsimile: (619) 232-0036

15  JAMES PREIS (State Bar No. 82690)
    jpreis@mhas-la.org
16  MENTAL HEALTH ADVOCACY SERVICES
    3255 Wilshire Boulevard, Suite 902
17  Los Angeles, California 90010
    Telephone: (213) 389-2077
18  Facsimile: (213) 389-2595

19  MATT ADAMS (State Bar No. 28287)
    matt@nwirp.org
20  RIDDHI MUKHOPADHYAY
    riddhi@nwirp.org
21  NORTHWEST IMMIGRANT RIGHTS PROJECT
    615 2nd Avenue, Suite 400
22  Seattle, Washington 98104-2244
    Telephone: (206) 957-8611
23  Facsimile: (206) 587-4025

24  JAMES LYALL (State Bar No. 330045)
    jlyall@acluaz.org
25  ACLU FOUNDATION OF ARIZONA
    3707 N. 7th Street, Suite 235
26  Phoenix, Arizona 85014
    Telephone: (602) 773-6001
27  Facsimile: (602) 650-1376

28  *Attorneys for Plaintiffs-Petitioner*

# TABLE OF CONTENTS

I.    THE REHABILITATION ACT REQUIRES LEGAL
      REPRESENTATION AS A REASONABLE ACCOMMODATION
      FOR SUBCLASS ONE MEMBERS ................................................2

II.   THE IMMIGRATION AND NATIONALITY ACT AND
      THE DUE PROCESS CLAUSE REQUIRE THE APPOINTMENT
      OF COUNSEL FOR UNREPRESENTED NON-CITIZENS WHOSE
      SERIOUS MENTAL DISABILITIES RENDER THEM INCOMPETENT
      TO REPRESENT THEMSELVES ................................................9

      A.    The Statutory and Constitutional Fair Hearing Requirement
            Requires Legal Representation..........................................9

      B.    The Important Interests at Stake Entitle Plaintiffs to
            Appointed Counsel ........................................................13

III.  THE IMMIGRATION STATUTES, DUE PROCESS CLAUSE,
      AND REHABILITATION ACT ALL REQUIRE THE PROVISION
      OF RIGOROUS BOND HEARINGS FOR THOSE CLASS
      MEMBERS WHO HAVE BEEN DETAINED FOR MORE THAN
      SIX MONTHS ..................................................................16

IV.   PLAINTIFFS ARE ENTITLED TO PERMANENT
      INJUNCTIVE RELIEF..........................................................19

V.    CONCLUSION ..................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Immigration and Customs Enforcement*,
  2012 WL 1344417 (S.D.N.Y. 2012) ......................................24

*Alabama v. Shelton*,
  535 U.S. 654 (2002)......................................................12

*Allee v. Medrano*,
  416 U.S. 802 (1974).................................................20, 24

*American Counsel of the Blind v. Paulson*,
  525 F.3d 1256 (D.C. Cir. 2008) .....................................5, 21

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  643 F.3d 1165 (9th Cir. 2010)...........................................20

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)........................................23, 24

*Beard v. Banks*,
  542 U.S. 406 (2004)......................................................4

*Bills v. Clark*,
  628 F.3d 1092 (9th Cir. 2010)......................................15, 17

*Casas-Castrillon v. DHS*,
  535 F.3d 942 (9th Cir. 2008) ...........................................16

*Cicenia v. La Gay*,
  357 U.S. 504 (1958).....................................................12

*Coleman v. Wilson*,
  912 F. Supp. 1282 (E.D. Cal.1995) .....................................18

*Cooper v. Salazar*,
  196 F.3d 809 (7th Cir. 1999)...........................................22

*Correctional S'vces Corp. v. Malesko*,
  534 U.S. 61 (2001).....................................................20

*Diouf v. Napolitano*,
  634 F.3d 1081 (9th Cir. 2011)......................................16, 17

ii

*Doe v. Region 13 Mental Health-Mental Retardation Com'n*,
  704 F.2d 1402 (5th Cir. 1983)............................................................18

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)..........................................................................20

*El Rescate Legal Services, Inc. v. EOIR*,
  959 F.2d 742 (9th Cir. 1992)............................................................10

*Enyart v. National Conference of Bar Examiners, Inc.*,
  823 F.Supp.2d 995 (N.D. Cal. 2011)................................................20

*Escobar Ruiz v. INS*,
  838 F.2d 1020 (9th Cir. 1988)..........................................................10

*F.T.C. v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999)..........................................................23

*Faretta v. California*,
  422 U.S. 806 (1975)..........................................................................15

*Gagnon v. Scarpelli*,
  411 U.S. 778 (1973)....................................................................13, 14

*Galvez-Letona v. Kirkpatrick*,
  54 F.Supp. 1218 (D. Utah 1999) ........................................................7

*Giebeler v. M & B Associates*,
  343 F.3d 1143 (9th Cir. 2003)........................................................6, 7

*Godinez v. Moran*,
  509 U.S. 389 (1993)..........................................................................15

*Hawkins v. Comparet-Cassani*,
  251 F.3d 1230 (9th Cir. 2001)..........................................................24

*In re FedEx Ground Package System, Inc. Employment Practices Litigation*,
  273 F.R.D. 516 (N.D. Ind. 2010) ......................................................18

*Indiana v. Edwards*,
  554 U.S. 164 (2008)..........................................................................15

*Johns v. County of San Diego*,
  114 F.3d 874 (9th Cir. 1997)..............................................................8

*Johnson v. California*,
  543 U.S. 499 (2005)......................................................................23

*Lassiter v. Dep't Soc. Serv.*,
  452 U.S. 18 (1981)...............................................................13, 14

*Lin v. Ashcroft*,
  377 F.3d 1014 (9th Cir. 2004).....................................................11

*Malloy v. Hogan*,
  378 U.S. 1 (1964).........................................................................12

*Mark H. v. Hamamoto*,
  620 F.3d 1090 (9th Cir. 2010)...................................................4, 5

*Massey v. Moore*,
  348 U.S. 105 (1954).....................................................................12

*Mathews v. Eldridge*,
  424 U.S. 319 (1976).........................................................13, 14, 15

*Matter of X-K*,
  23 I&N Dec. 731 (BIA 2005).......................................................17

*Moeller v. Taco Bell Corp.*,
  816 F.Supp.2d 831 (N.D. Cal. 2011)..........................................22

*Nadarajah v. Gonzales*,
  443 F.3d 1069 (9th Cir. 2006).....................................................17

*Palmer v. Ashe*,
  342 U.S. 134 (1951).....................................................................12

*Pfingston v. Ronan Engineering Co.*,
  284 F.3d 999 (9th Cir. 2002).......................................................25

*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*,
  589 F.3d 865 (7th Cir. 2009).......................................................22

*Randolph v. Rogers*,
  170 F.3d 850 (8th Cir. 1999).........................................................2

*Riser v. Teets*
  253 F.2d 844 (9th Cir. 1958).......................................................12

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodriguez v. City of New York*,
    197 F.3d 611 (2d Cir. 1999)......................................................3

*Rothschild v. Grottenthaler*,
    907 F.2d 286 (2d Cir. 1990)..................................................4, 5

*Ruiz v. Mukasey*,
    269 Fed. Appx. 616 (9th Cir. 2007) ..................................11

*Scott v. Illinois*,
    440 U.S. 367 (1979)..........................................................4

*Silver Sage Partners, Ltd., v. City of Desert*,
    251 F.3d 814 (9th Cir. 2001)............................................20

*Turner v. Rogers*,
    131 S. Ct. 2507 (2011) ................................................13, 14

*U.S. Airways v. Barnett*,
    535 U.S. 391 (2002)........................................................6,7

*U.S. ex rel. Dioguardi v. Flynn*,
    15 F.2d 576 (D.C.N.Y. 1926)..........................................11

*United States ex rel. Shaw v. Van De Mark*,
    3 F.Supp 101 (W.D.N.Y. 1933) ......................................11

*United States v. Arizona*,
    641 F.3d 339 (9th Cir. 2011)............................................20

*United States v. Board of Trs. for Univ. of Ala.*,
    908 F.2d 740 (11th Cir. 1990)........................................4, 5

*United States v. Cronic*,
    466 U.S. 648 (1984)........................................................12

*United States v. Oregon State Medical Society, et al.*,
    343 U.S. 326 (1952)........................................................23

*Vinson v. Thomas*,
    288 F.3d 1145 (9th Cir. 2002)............................................9

*Vitek v. Jones*,
    445 U.S. 480 (1980)........................................................15

v

*Wade v. Mayo¸*
    334 U.S. 672 (1948)................................................................12

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998)..........................................21, 22

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001)...............................................18

*Zivkovic v. So.Cal. Edison*,
    302 F.3d 1080 (9th Cir. 2002)...............................................8, 9

STATUTES AND RULES

5 U.S.C. 3106 .............................................................................9

8 U.S.C. 1225(b) ......................................................................17

8 U.S.C. 1226(c) ......................................................................16

8 U.S.C. 1229a(b)(4)(A) ..........................................................3, 9

8 U.S.C. 1362 ..........................................................................6, 9

29 U.S.C. 794a(a)(2)................................................................20

Fed. R. Civ. P. 17(c) .................................................................8

FED. R. EVID. 201(b)(2)...........................................................3

REGULATIONS

8 C.F.R. 1240.4..........................................................................8, 11

28 C.F.R. 39.103........................................................................18

OTHER AUTHORITIES

Aleinikoff, Martin, and Motomura, *Immigration and Citizenship: Process
    and Policy* (7th ed. 2012) ...................................................3

vi

**INTRODUCTION**

Defendants' Opposition offers old wine in new bottles.  But unlike wine, their tired legal arguments only worsen with age: this Court has already rejected their claims that *Matter of M-A-M-* suffices as an accommodation, that Plaintiffs seek an impermissible "preference" under the Rehab Act, that the INA forecloses appointed counsel at government expense, and that the INA requires prolonged mandatory detention.  Defendants offer nothing to justify any retreat from this Court's prior rulings.

Defendants do advance a startling new argument against class-wide prospective injunctive relief, arguing in essence that this Court has no power to stop the Executive Branch from violating Congress's anti-discrimination statutes because the Government has recently exercised discretion to prevent most, though not all, of the recently-identified Subclass One members from defending themselves *pro se*.  Fortunately, however, the law does not permit Defendants to escape imposition of an injunction based on a litigation-driven, temporary, and partial cessation of unlawful conduct.  What Defendants' recent conduct does demonstrate, dramatically, is that the remedy Plaintiffs seek is perfectly feasible. Because Defendants have managed to terminate proceedings, release, or find attorneys for most of the Subclass One members identified, they cannot now argue that it would be difficult to comply with an injunction guaranteeing their rights.

Because the Government continues to detain for removal individuals with serious mental disorders, and because it recognizes no binding obligation to provide legal representation to those not competent to proceed *pro se*, no genuine dispute of material fact exists as to the three essential facts at issue in this Motion. *See* Dkt. 398-1 at 2.  The Court should grant partial summary judgment and enter permanent injunctive relief on the legal representation and bond hearing claims.

## I.    THE REHABILITATION ACT REQUIRES LEGAL REPRESENTATION AS A REASONABLE ACCOMMODATION FOR SUBCLASS ONE MEMBERS.

Defendants' recycling efforts are clearest with respect to the Rehab Act. Plaintiffs have established that individuals who are not competent to represent themselves cannot exercise the rights otherwise afforded to them in removal proceedings, which are necessary to ensure their statutory and constitutional right to a fair hearing.  *See* Dkt. 398-1 at 10, 16.  The absence of an attorney or other Qualified Representative prevents them from exercising their right to examine and present evidence or cross-examine witnesses, thereby denying them access to a federal program or benefit.  *See* Dkt. 398-1 at 12 (citing regulations endorsing the assignment of aides to beneficiaries); *see also Randolph v. Rogers*, 170 F.3d 850, 854, 858 (8th Cir. 1999) (failure to provide deaf interpreter denied prisoner "meaningful access" to disciplinary process).

Defendants make three claims in response: that Plaintiffs cannot establish a *prima facie* case, that the relief would require a fundamental alteration, and that *M-A-M-* provides sufficient accommodation.  All three are meritless.

Defendants first claim that incompetent detainees cannot make out a *prima facie* case because they have meaningful access to "the immigration courts," or "court system," *see* Dkt. 441 at 3, 4, but do not define what is encompassed within their conception of access.  They support their vague claim only by describing their litigation-driven, discretionary decisions to assist some, but not all, of the recently-identified Subclass One members.  *See id.* at 4.  But that recent conduct serves as a stark admission that not even they believe that detainees with such serious mental disorders can *participate* in the system.  Defendants provide no evidence that any of these individuals was able to examine and present evidence, cross-examine witnesses, or otherwise defend themselves, let alone that Defendants have adopted a binding policy to protect future Subclass One members' ability to exercise those rights.  Thus, there is no genuine factual dispute as to whether individuals who are,

1   by definition, incompetent to represent themselves, can exercise their rights

2   without the assistance of an attorney. *Cf. Rodriguez v. City of New York*, 197 F.3d

3   611, 618 (2d Cir. 1999) (reading ADA to require that litigants "focus on the

4   particular services provided" rather than on an "amorphous" conception of the

5   benefits at issue) (citing *Alexander v. Choate*, 469 U.S. 287, 303 (1985)).[1]

6       Defendants next argue that providing legal representation to Subclass One

7   members would fundamentally alter the immigration court system, but this

8   argument fails for five reasons. *First*, as a factual matter, Defendants cannot

9   dispute that (i) a significant minority of detainees have legal representation now, as

10  the statute permits, *see* 8 U.S.C. 1229a(b)(4)(A), (ii) the Government is

11  represented – at taxpayer expense – at every single removal hearing, and (iii) *M-A-*

12  *M-* (like the IJ Benchbook before it) already recommends that IJ's attempt to find

13  attorneys to assist individuals who are not competent to represent themselves (and

14  did so even at the time of the debacles that befell Mr. Franco, Mr. Khukhryanskiy

15  and others). *See* Dkt. 398-1 at 13.[2]  Thus, while Defendants point to the

16  purportedly "streamlined" nature of removal proceedings and the fact that most

17  detainees go unrepresented, *see* Dkt. 441 at 6, granting the relief here would

18  change neither of those characteristics of the existing system.  Regardless of

19  whether removal proceedings can fairly be characterized as "streamlined," *see,*

---

20  [1] If Defendants intend to argue that individuals have meaningful access to the

21  rights provided through the removal process so long as they are not deported, that

22  argument misunderstands the fundamentally *procedural* nature of the injury that Plaintiffs have established.  *See infra*, Section IV.

23  [2]  Defendants suggest that Plaintiffs have not provided factual support for these

24  assertions, but the Court can rely upon Defendants' statistics regarding the rate of

25  representation, *see* Dkt. 441 at 6 n.5, Dkt. 441-1 at #40, and judicial notice of the fact that the Government is always represented at removal proceedings.  *See also*

26  Aleinikoff, Martin, and Motomura, *Immigration and Citizenship: Process and*

27  *Policy*, 253-54 (7th ed. 2012) (describing history of removal procedures, and noting that widespread government representation is relatively recent); Fed. R.

28  Evid. 201(b)(2) (allowing courts to take judicial notice).

3

*e.g.*, Dkt. 398-1 at 24 (citing caselaw describing the labyrinthine complexity of immigration law), their character will not change by providing attorneys for a few more detainees.

*Second*, they ignore that courts have routinely upheld far more dramatic changes to public programs against claims of fundamental alteration.  Indeed, their own regulations advocate the assignment of aides to beneficiaries, which is precisely the accommodation that Plaintiffs seek.  *See* Dkt. 398-1 at 12; *see also Mark H v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (holding that plaintiff stated claim for Rehab Act violation by alleging that school failed to provide, *inter alia*, "the full-time assistance of a specially trained therapeutic aide" to accompany autistic children attending public school); *United States v. Board of Trs. for Univ. of Ala.*, 908 F.2d 740, 748-49, 752 (11th Cir. 1990) (requiring university to pay for deaf interpreters for students attending university); *Rothschild v. Grottenthaler*, 907 F.2d 286, 293 (2d Cir. 1990) (requiring school to pay for deaf interpreter for parents attending school-initiated educational events).

*Third*, Defendants assert that providing attorneys would constitute a fundamental alteration because it "create[s] a new substantive benefit" under the immigration laws, Dkt. 441 at 6, but this is nonsense.  The assistance of counsel does not change the substantive immigration law, it only allows enforcement of rights that already exist, and therefore is a paradigmatic example of a procedural rather than substantive benefit.  *See, e.g., Beard v. Banks*, 542 U.S. 406, 418 (2004) ("*Gideon*, it is fair to say, 'alter[ed] our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding.'") (emphasis in original); *Scott v. Illinois*, 440 U.S. 367, 377-78 (1979) (counsel "critical" to other procedural protections).  Providing counsel will not make anyone who is otherwise deportable somehow immune from removal; it simply ensures that those who do have a significant defense will have a meaningful opportunity to present it.

*Fourth*, Defendants' arguments concerning EOIR's budgeting and

4

contracting decisions are self-serving and misguided.  Defendants assert that requiring legal representation would fundamentally alter the immigration courts because EOIR presently has no budget for the provision of legal representation, reads federal law to prohibit such representation, and would have to re-write its contracts with legal service providers to provide it.  Of course, Congress certainly did not intend to allow an agency's budgeting decisions to nullify a civil rights statute it enacted, and Defendants cite no authority that requiring an agency to spend more money constitutes a fundamental alteration.  In fact, courts routinely enforce Congress's will by requiring the expenditure of funds.  *See, e.g.*, *Hamamoto*, 620 F.3d at 1098; *Rothschild*, 907 F.2d 286 at 293.  Indeed, in *American Council of the Blind v. Paulson*, the D.C. Circuit upheld a ruling expected to require the expenditure of millions of dollars and a change to the printing mechanism for literally every piece of paper currency in the United States other than the $1 bill.  *Paulson*, 525 F.3d 1256, 1264 (D.C. Cir. 2008) (describing cost estimates), *id*. at 1272 (acknowledging that relief would require "a substantial investment of labor, time, and money").  Nonetheless, *Paulson* rejected the argument that the need for such expenditures rendered the requested accommodation unreasonable, looking not to the expenditure of funds in the abstract, but rather to how much it would cost in relation to the agency's total budget.  *Id*. at 1272; *see also Board of Trustees for Univ. of Ala.*, 908 F.2d at 751 (finding accommodation of putting lifts on buses reasonable by comparing cost with total university budget).  Here, EOIR's total budget is over $300 million – many times that needed to pay for the representation of at most a few hundred detainees at any given time (assuming that Defendants could not find pro bono attorneys and chose not to terminate the cases).  *See* Ex. 308 at 1.  EOIR has requested nearly $2 million additional just for its Legal Orientation Program in FY 2013, as it has regularly moved to expand that program.  *Id*. at 2.  And, of course, there is no legal reason why the funding would have to come from EOIR, as

opposed to some other portion of DOJ's $27 *billion* budget, which pays for over 12,000 attorneys. *See* Ex. 309 at 4.[3]

Nor can the fact that EOIR's contracts currently foreclose funding for legal representation bar enforcement of the Rehab Act. As Mr. Lang's declaration makes clear, that provision has been placed into the contracts purportedly because EOIR reads federal law to bar such funding. *See* Lang Dec. at ¶ 8 ("as a result of [8 U.S.C. 1362], the legal orientation services funded by the LOP do not include funds for direct representation"); *see also* ¶¶ 4, 5. Even if this were the motivation for including that provision, notwithstanding the position expressed by *DHS General Counsel's* memo stating the opposite (*see infra* Section II), this Court would eliminate that barrier were it to construe Section 1362 to not bar the provision of funds for legal representation required by the Rehab Act. Courts have routinely required the re-writing of contracts as part of relief under the Rehab Act or ADA. In *U.S. Airways, Inc. v. Barnett*, the Supreme Court held that the seniority systems in union contracts in the airline industry could be abrogated to ensure a reasonable accommodation. 535 U.S. 391, 393-95, 405-06 (2002). The Ninth Circuit did the same in *Giebeler v. M & B Associates*, 343 F.3d 1143, 1145 (9th Cir. 2003), issuing a ruling that likely changed the way virtually every residential apartment company reads its tenant-eligibility rules.[4]

---

[3] Mr. Lang speculates that EOIR could not afford to pay for representation for Subclass One members, but in four months the Government identified 21 detainees who were not competent to represent themselves, out of which only *four* ultimately needed paid representation. Even if that number is ultimately too low because Defendants' identification system is deficient, it confirms that the relief sought here will not require a massive expenditure of resources.

[4] These cases also undermine the Government's Section 1362 argument, as Rehab Act jurisprudence is filled with cases where courts read limited exceptions into facially-neutral rules in order to ensure fair treatment for people with disabilities. Even if Section 1362 could be read to generally bar the appointment of counsel – a position at odds with DHS General Counsel's statement – this would not preclude a limited exception mandated by the Rehab Act. *See, e.g.*, *Barnett*, 535 U.S. at

(cont'd)

*Fifth*, Defendants again recycle their argument that the Rehab Act cannot require the provision of attorneys because that would place Subclass One members in a "better position" than other immigration detainees. Dkt. 441 at 8. As this Court has already held, that argument is foreclosed by *Barnett* and *Giebeler*, and fundamentally inconsistent with the theory underlying disability discrimination law. *See* Dkt. 107 at 34-35. Contrary to the Government's assertion, *see* Dkt. 441 at 8 n.7, Plaintiffs seek nothing more than a limited exception to the existing rule that fails to provide free legal representation in removal proceedings. The exception here is far milder than that authorized in *Barnett* or *Giebeler*, as it has no adverse impact on other immigration detainees. Just as it made no difference in *Giebeler* that some non-disabled people face poverty for reasons unrelated to their disability or in *Barnett* that some non-disabled people cannot obtain their preferred jobs because they lack sufficient seniority, it makes no difference here that some non-disabled *pro se* detainees could also benefit from the assistance of an attorney.

Ultimately, the Government's position that it simply costs too much to allow people with serious mental disabilities to meaningfully exercise the rights Congress sought to give them is untenable. Congress recognized that compliance with the Rehab Act would require the expenditure of funds – in some cases far more than that at issue here – and the Government has failed to show that the modest expenditures sought here are unreasonable.[5]

Last, and perhaps least, Defendants argue yet again that *M-A-M-* constitutes a sufficient accommodation for Subclass One members. But accommodations

---

396-98; *Giebeler*, 343 F.3d at 1150; *Galvez-Letona v. Kirkpatrick*, 54 F.Supp.2d 1218, 1224-25 (D. Utah 1999) (holding that Rehab Act required limited exception to oath requirement for naturalization).

[5] Should the Court nonetheless conclude that the agency's budget precludes an order requiring Defendants to fund legal representation, it should appoint attorneys directly under the CJA, as Plaintiffs have argued at some length previously. *See* Dkt. 85 at 8-10, Dkt. 98; *see also* Ex. 158 (Declaration of Sean Kennedy).

must be "effective" as well as reasonable, *Zivkovic v. So.Cal. Edison*, 302 F.3d 1080, 1089 (9th Cir. 2002), and Defendants have no answer to this Court's prior holding that *M-A-M-* fails to ensure that individuals found incompetent can exercise the rights guaranteed them by Congress, as required by the Rehab Act. *See* Dkt. 348 at 19-20. While Defendants say more than they have in the past about how *M-A-M-* and how their purportedly-improved procedures work to *identify* Subclass One members, Dkt. 441 at 10-11, those procedures are irrelevant to this motion.[6] Because the representation claim is limited to Subclass One members, the only relevant issue concerns what protections *M-A-M-* requires for people *once they are identified* as not competent to represent themselves. On that issue, Defendants offer virtually no response to two basic problems with *M-A-M-*: it does not permit appointment of counsel, and every measure it does permit is either purely discretionary or works to *violate* the rights of subclass members. *Compare* Dkt. 398-1 at 14-15 *with* Dkt. 441 at 11 (referring to "representation" by family members, guardians, and tactics to delay cases as safeguards). This Court has already held, based on a substantial record, that "representation" by family members works to undermine the rights of Subclass One members because they generally cannot knowingly and voluntarily consent to waive their right to legal representation. Dkt. 215 at 17-19. For this reason, the federal regulations governing legal representation do not permit this "safeguard," even though the Government (and *M-A-M-*), actively encourage it. *Id.* at 19; *see also Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (holding that guardians cannot act as attorneys under Fed. R. Civ. Proc. 17(c)); Dkt. 83 at 12-13 (Government agreeing that 8 C.F.R. 1240.4 is the immigration analogue to Rule 17(c)); Dkts. 138, 160 (arguing that allowing family members or others not subject to legal accountability to speak "on behalf of" detainees violates federal

---

[6] Plaintiffs will vigorously dispute the sufficiency of Defendants' identification procedures in the next phase of this litigation.

regulations and Due Process).  And, of course, *M-A-M-*'s rule offers no help for detainees who have no family.  Because the Government interprets federal law to prohibit the appointment of counsel – the only accommodation sufficient for Subclass One members – *M-A-M-* does not satisfy the Rehab Act's requirements.[7]

## II. THE IMMIGRATION AND NATIONALITY ACT AND THE DUE PROCESS CLAUSE REQUIRE THE APPOINTMENT OF COUNSEL FOR UNREPRESENTED NON-CITIZENS WHOSE SERIOUS MENTAL DISABILITIES RENDER THEM INCOMPETENT TO REPRESENT THEMSELVES.

### A. The Statutory and Constitutional Fair Hearing Requirement Requires Legal Representation.

Defendants acknowledge that the immigration statute and longstanding caselaw require removal hearings to be fundamentally fair, but argue that a specific provision of the INA – which appears at both 8 U.S.C. 1362 and 8 U.S.C. 1229a(b)(4)(A) – manifests Congress's intent to *bar* appointed counsel in removal proceedings.  Dkt. 441 at 12.  But Defendants' argument – that the statute constitutes a prohibition on the appointment of counsel – has been expressly disavowed by the Department of Homeland Security's Office of General Counsel. In a December 10, 2010, letter to former Associate Attorney General Donald Verrilli – sent after the filing of this lawsuit – David Martin, then Principal Deputy General Counsel to DHS, explained that the prior policy interpreting Section 1362 as barring the appointment of counsel was *wrong*.  He concluded that "nothing in [Section 1229a(b)(4)(B)], [Section 1362], or 5 U.S.C. 3106 prohibits the use of discretionary federal funding for representation of aliens in immigration

---

[7] Defendants cite three cases in support of their argument concerning choice of accommodation, Dkt. 441 at 9-10, but to the extent they are relevant they support Plaintiffs.  Both *Zivkovic v. So.Cal. Edison*, 302 F.3d 1080 1089-90, (9th Cir. 2002) and *Vinson v. Thomas*, 288 F.3d 1145, 1153 (9th Cir. 2002) rule for the plaintiff, holding that summary judgment for the defendant was improper because a dispute existed as to whether Defendant had offered a reasonable accommodation and whether he had a qualifying disability.  *Nelson* is a one page memorandum disposition containing no reasoning.

proceedings." *See* Ex. 310.   In other words, Section 1362 cannot be read to bar the provision of appointed counsel under *all* circumstances, thereby foreclosing all possibility of individual exceptions to the general rule, whether grounded in other statutes (such as the Rehab Act) or the fair hearing requirement as applied to a limited class of individuals with particular characteristics.  It is disappointing that Defendants' brief fails to mention DHS Counsel's letter.

Instead, Defendants cite dicta in several cases stating the general rule that Congress did not intend appointed counsel, *see* Dkt. 441 at 12, 14, but as the DHS Counsel's letter makes clear, while "courts have understandably determined that [Section 1362] does not provide an affirmative right to appointed counsel," "[n]one of those decisions . . . directly address whether [Section 1362] *prohibits* the provision of counsel at government expense."  Ex. 310 (emphasis in original).  "In our view the plain language of [Section 1362] does not lend itself to such an interpretation.  Rather, the parenthetical language, 'at no expense to the government' is most reasonably interpreted to limit or describe the 'privilege' of representation by counsel.  If Congress had intended to limit the expenditure of appropriations, it would have done so expressly, as it has in many other situations." *Id.*[8]

More relevant than the passing statements in cases that do *not* concern the possibility of exceptions requiring appointed counsel are the statements by several

---

[8] To give one example in support of DHS counsel's view, although Defendants cite a statement in *El Rescate Legal Services, Inc. v. EOIR*, 959 F.2d 742, 749 (9th Cir. 1992) to the effect that there is no general right to appointed counsel, the court made it in the context of explaining when translators are needed when an IJ explains proceedings to a *pro se* detainee in non-technical terms.  This dictum obviously does not address the possibility of a limited exception for people who cannot understand what the Judge says, regardless of how simple the explanation is, due to a serious mental disorder.  The other cases on which Defendants rely – *Escobar Ruiz v. INS*, 838 F.2d 1020 (9th Cir. 1988), *Gasca-Kraft*, and *Leslie* – are similarly unhelpful because they simply re-state the general rule against appointed counsel, without discussing the possibility of exceptions.

10

circuit courts endorsing the view that, in certain cases, fundamental fairness *requires* representation at removal hearings. *See* Dkt. 398-1 at 27-28. In particular, the Ninth Circuit strongly suggested in *Lin v. Ashcroft*, 377 F.3d 1014, 1034 (9th Cir. 2004), that IJ's must ensure that unaccompanied minors have counsel, despite the general statements in earlier cases that Defendants cite.[9]

Defendants also, again, completely ignore Plaintiffs' argument concerning the translation requirement. *See* Dkt. 398-1 at 18-19. The statute says nothing about a right to translation, yet the courts have held consistently that such a right must be read into the statute, despite expense to the Government, to ensure fair hearings. Defendants cannot reconcile that rule with their reading of Section 1362 as creating an exclusive list of the rights available in removal proceedings.

Nor do Defendants offer any persuasive rebuttal to the unanimous Supreme

---

[9] Thus, Defendants are wrong to state that no court has even "suggested" that the full and fair hearing requirement may require appointment of counsel. Dkt. 441 at 14. In any event, no court other than this one has squarely addressed whether counsel must be appointed for an immigration detainee who is mentally incompetent. Defendants cite *Ruiz v. Mukasey*, 269 Fed. Appx. 616, *3 (9th Cir. 2007), an unpublished disposition entitled to no precedential weight, but *Ruiz* only states, in dicta, that 8 C.F.R. 1240.4 does not require the appointment of counsel. It explicitly declines to address Due Process and never mentions the Rehab Act. They also cite *U.S. ex rel. Dioguardi v. Flynn*, 15 F.2d 576 (D.C.N.Y. 1926), a district court case from New York, but *Flynn* actually employs this Court's reasoning from Mr. Zhalezny's case. It rejects a waiver of the right to counsel on account of mental illness, and therefore holds that the petitioner did not receive a fair hearing. *Compare id*. at 577 ("being regarded as an insane person, his waiver of counsel was insufficient") *with* Dkt. 215 at 17-19. And while the Court states that a near relative should have been notified "to the end that *evidence* might have been introduced," (emphasis added) nothing in the short – but superb – opinion suggests that the Court would have permitted a relative to act as an attorney. *See also United States ex rel. Shaw v. Van De Mark*, 3 F.Supp 101, 102-03 (W.D.N.Y. 1933) (holding removal hearing not fair, even where unrepresented mentally disabled individual verbally waived her right to counsel, because she "did not even have the mental capacity to understand that she was entitled to be represented at the hearing by counsel").

Court's decision over fifty years ago finding it "too plain for argument" that fundamental fairness required appointed counsel for an insane criminal defendant. Dkt. 398-1 at 17-18 (citing *Massey v. Moore*, 348 U.S. 105 (1954), *Wade v. Mayo*¸ 334 U.S. 672, 684 (1948), *Palmer v. Ashe*, 342 U.S. 134, 137 (1951)).  In response, the government repeats its mantra that criminal cases are different, but this position rests on a false assumption that the 1950's-era constitutional law extended full Sixth Amendment protections to State criminal proceedings.  In fact, courts of that era typically required only that the States' criminal procedures be "fundamentally fair," *see Cicenia v. La Gay,* 357 U.S. 504, 509 (1958), a bare minimum that is substantively indistinguishable from the "fundamental fairness" that due process requires in today's immigration proceedings.  As the Supreme Court later recognized, the courts at that time applied a far weaker version of the Due Process Clause to the States.  *Malloy v. Hogan*, 378 U.S. 1, 10-11 (1964); *see also Riser v. Teets* 253 F.2d 844, 847 (9th Cir. 1958) ("The requirements of the due process clause of the Fourteenth Amendment have not always been held to be coterminous with those of the Sixth Amendment.").  Though some of the more stringent constitutional protections of the modern criminal system may not apply with full force in immigration proceedings, the bare-bones *Massey*-era version of fundamental fairness certainly must.  It is a sad commentary on the Government's position that it must run away from a unanimous Supreme Court decision from 1954 concerning what constitutes fundamental fairness to prevail here.[10]

---

[10] Defendants also imply that *Massey* and its predecessors should somehow be read as incorporated into the Court's Sixth Amendment holding in *Gideon*, which they describe as "prophylactic." Dkt. 441 at 14-15.  But *Massey*, *Wade*, and *Palmer* plainly rest on the Fifth Amendment, not the Sixth, and their reasoning simply cannot be re-written to apply narrowly to criminal cases.  In addition, to the extent it is relevant to the Court's irreparable harm analysis, the *Gideon* right is decidedly *not* prophylactic, as it is a "fundamental component" for a fair trial, *United States v. Cronic*, 466 U.S. 648, 653 (1984), that makes other procedural rights meaningful.  *Alabama v. Shelton*, 535 U.S. 654, 667 (2002).  Of course, just as

(cont'd)

### B.    The Important Interests at Stake Entitle Plaintiffs to Appointed Counsel.

If the Court rejects Plaintiffs' arguments under the Rehabilitation Act and fair hearing requirement, it must consider whether Subclass One members are entitled to appointed counsel under the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and its progeny.  The Government's responses to Plaintiffs' *Mathews* argument fundamentally misunderstand the nature of Plaintiffs' claim. Contrary to Defendants' suggestion, Dkt. 441 at 15-17, it is Defendants, not Plaintiffs, who seek a categorical rule – a rule categorically rejecting appointed counsel, *see, e.g.*, *id.* at 17 ("even a case-by-case approach to counsel is unnecessary in this matter").  But the Supreme Court rejected such a categorical rule against counsel in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) for parole revocation proceedings and in *Lassiter v. Dep't Soc. Serv.*, 452 U.S. 18 (1981), for parental termination proceedings, and strongly suggested that they would reject it in *Turner v. Rogers*, 131 S. Ct. 2507 (2011) for civil contempt proceedings as well.

In contrast, Plaintiffs have *not* argued for a categorical right to appointed counsel.  While a strong argument probably could have been made that all class members are entitled to appointed counsel, Plaintiffs have adopted a narrower approach, arguing for a case-by-case determination as to each detainee's competency to represent herself, and then for appointed counsel *only* for those found not competent.  Plaintiffs took this approach precisely because the Court endorsed it in *Lassiter* and *Gagnon,* and then in *Turner*.  *See Turner*, 131 S.Ct. at 2520 (holding that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings" but declining to address either cases where, because the debt is owed to the state, "[t]he government is likely to have counsel or some other competent representative," or "unusually complex"

---

here, the Government can always dismiss criminal proceedings rather than comply with *Gideon*, but that does not render the right at issue any less essential to fundamental fairness.

cases that require a trained advocate); *Lassiter*, 452 U.S. at 31-32 (rejecting the claim that "an indigent parent has no due process right to appointed counsel in termination proceedings," and leaving determination concerning necessity for counsel "to be answered in the first instance by the trial court"); *Gagnon*, 411 U.S. at 786  (rejecting argument that "counsel need never be supplied," and adopting case-by-case approach).  Thus, the primary cases on which Defendants rely fatally undermine their own argument against appointed counsel for Subclass One members.  The question here is only whether the Due Process Clause requires counsel for that *subset* of class members who remain detained and have been determined by an Immigration Judge, on a case-by-case basis, to suffer from a mental illness so serious that they cannot represent themselves.

Nothing in the Supreme Court's prior civil appointed counsel caselaw suggests that it would reject that right here as a categorical matter, and *Turner*'s analysis strongly suggests otherwise.  Dkt. 398-1 at 24-27.  Nowhere in Defendants' brief do they even attempt to analyze the relevant factors under *Mathews*, *compare id.* at 21-28, or explain how *Turner*'s application of those factors can be reconciled with their position.  Instead, Defendants recycle their rejected arguments that *M-A-M-* provides adequate safeguards based on the alleged similarity between those safeguards and the ones endorsed in *Turner*.  Dkt. 441 at 18-19.  But the primary safeguard *Turner* discussed – the use of forms to elicit information needed to resolve the primary issue, which concerned indigency – cannot suffice where the subject matter is too complex to be reduced to forms and individuals lack the mental capacity to fill them out or coherently answer questions about them.  *See* Dkt. 398-1 at 27.  And, as Defendants do not dispute, the Named Representatives' cases, starting with Mr. Franco himself, provide a horror-show list of why the existing safeguards cannot work.  *See* Dkt. 398-1 at 24-26.  Thus, even were the state unrepresented in removal proceedings – yet another distinction the Court found critical in *Turner*, *see* Dkt. 398-1 at 26-27 – the balance of

1   interests under *Mathews* would require appointed counsel for Subclass One

2   members.[11]

3          Finally, Defendants misinterpret the significance of *Godinez v. Moran*, 509

4   U.S. 389 (1993), and *Indiana v. Edwards*, 554 U.S. 164 (2008), Dkt. 441 at 20,

5   neither of which is relevant to this Motion, though both are relevant to the question

6   of what standard the IJ should apply in assessing competency.  Because those cases

7   arise in the post-*Gideon* criminal context, they do not concern the right to

8   appointed counsel – all criminal defendants unquestionably have that right.

9   Rather, they concern the circumstances under which individuals can waive their

10  *Gideon* right and instead exercise their right to self-representation (under *Faretta v.*

11  *California*, 422 U.S. 806 (1975)).  *See Edwards*, 554 U.S. at 172 ("Both [*Godinez*

12  and *Edwards*] involve a defendant who wants to represent himself.").  The fact that

13  the standards for competency to self-represent in the two cases are different tells us

14  only that Immigration Judges should consider the tasks that particular detainees

15  have to perform when determining whether they are competent to represent

16  themselves – an issue not presented here, because Plaintiffs do not (yet) challenge

17  the competency determination process.  Neither *Edwards* nor *Godinez* offer any

18  support for the Government's view that *no* immigration detainees, no matter how

19  mentally ill and no matter how complex their cases, *ever* have a right to appointed

20  counsel, even when they do not want to represent themselves.[12]

21  [11] To the extent Defendants rely on Justice Powell's concurrence in *Vitek v. Jones*,

22  445 U.S. 480 (1980), that reliance is misplaced both because the question there

23  was whether Due Process required representation by an attorney in a hearing to

24  determine whether a prisoner could be involuntarily transferred to a mental

    hospital – an essentially medical question – and because even Justice Powell

25  concluded that any layperson would have to be bound by the ethical obligations of

    an attorney, which *M-A-M* does not require.  *Id.* at 500 (Powell, J., concurring)

26  (requiring that layperson "be free to act solely in the inmate's best interest").  In

27  any event, four justices would have required appointed counsel in *Vitek*.  *Id.* at 497.

    [12] *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010) is also unhelpful – it establishes a

28  standard under which the deadline for filing a post-conviction habeas petition may

(cont'd)

### III.  THE IMMIGRATION STATUTES, DUE PROCESS CLAUSE, AND REHABILITATION ACT ALL REQUIRE THE PROVISION OF RIGOROUS BOND HEARINGS FOR THOSE CLASS MEMBERS WHO HAVE BEEN DETAINED FOR MORE THAN SIX MONTHS.

Defendants' refusal to provide bond hearings for Subclass Two members (*i.e.*, those seriously mentally ill detainees who have suffered prolonged detention) shows a remarkable disregard for binding Ninth Circuit authority and this Court's prior preliminary injunction orders.  *See* Dkts. 107 at 39-41 (relying on controlling authority to order bond hearings for Martinez and Khukhryanskiy, who had been detained more than six months under 8 U.S.C. 1226(c)); 215 at 9-14 (same with respect to Mr. Zhalezny); 285 at 6-8 (same with respect to Mr. Woldemariam). Plaintiffs will not waste the Court's time by again rehearsing arguments repeatedly rejected by this Court in its Preliminary Injunction rulings, and by the Ninth Circuit in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ("*Diouf II*") and *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008).

Three bedrock principles require rigorous bond hearings for Subclass Two members.  First, prolonged detention raises serious constitutional problems unless accompanied by rigorous procedural protections.  Second, detention becomes prolonged when it exceeds six months.  And third, because no applicable detention statute expressly authorizes prolonged detention without bond hearings, the constitutional avoidance doctrine requires that they be construed to require such hearings.  *See* Dkt. 398-1 at 30-31. The Court's prior endorsement of those three established principles resolves all of the Government's arguments except those concerning Section 1225(b).[13]

---

be equitably tolled due to mental illness.  That courts employ a different competency standard in that context has no bearing on this motion, which does not address what standard should govern competency determinations in removal cases.

[13] To the extent the Court is inclined to revisit the Government's pre- vs. post-final order argument, it fails because *Casas* involved a petitioner who was pre-final order, *see Casas*, 535 F.3d at 945, because *Diouf II* specifically relied on pre-final order case law, *Diouf II*, 634 F.3d at 1091, and because it would be illogical for

(cont'd)

1   Defendants' argument concerning Section 1225(b) – that prolonged

2   detainees held under that statute have no right to bond hearings – is new to this

3   Court, but has been rejected elsewhere.  Defendants' argument that the statute

4   cannot be read to authorize release on bond fails because the Government itself

5   concedes it allows release on parole, *see* Dkt. 441 at 27, and because the BIA held

6   in *Matter of X-K*, that certain individuals detained under 1225(b) – those who had

7   already effected an entry – were entitled to bond hearings.  *See* 23 I&N Dec. 731,

8   731-36 (BIA 2005).

9   Section 1225(b) also must be construed to authorize bond hearings to avoid

10  serious constitutional problems. Defendants argue that "arriving aliens" detained

11  under Section 1225(b) have fewer due process rights with respect to their

12  prolonged detention, *see* Dkt. 441 at 27, but even if true, this ignores the fact that

13  Section 1225(b) does not apply only to first time "arriving aliens," but also to

14  returning lawful permanent residents who indisputably have strong due process

15  rights.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1077 (9th Cir. 2006) (citing

16  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005)); *see also Diouf II*, 634 F.3d 1088

17  (same with respect to Section 1231(a)(6), because it "applie[d] to some legal

18  permanent residents" and thus had to be construed in light of their rights).

19  Defendants' interpretation "would abrogate the holding and reasoning in *Clark* by

20  treating some detentions authorized by the same statute differently, depending on

21  the identity and status of the detainee." *Nadarajah,* 443 F.3d. at 1078.

22  The Rehab Act also independently requires that Subclass Two members

23  receive a bond hearing after six months as a reasonable accommodation to protect

24  them from disproportionately prolonged detention based on their disabilities.

25  Defendants' primary argument in response is a thinly-veiled attack on the class

26  certification order.  Dkt 441 at 21-22 (arguing that class definition is "a vague

27

28  individuals detained pre-final-order to have fewer due process rights than those
    already ordered removed.  *See* Dkt. 285 at 9; Dkt. 215 at 14 n. 7; Dkt. 285 at 10.

17

formulation that does not equate to a cognizable disability under the Rehabilitation Act"). But they offer no reason for the Court to reconsider class issues now. *Cf. In re FedEx Ground Package System, Inc. Employment Practices Litigation*, 273 F.R.D. 516, 523 (N.D. Ind. 2010) ("The court declines to reconsider class certification based on a merits determination at the summary judgment stage.").

In any event, Defendants' argument is wrong for at least two other reasons. First, *all* Class members suffer from a legally-cognizable disability because they have "a serious mental disorder or defect that may render them incompetent."[14] Dkt 348 at 28. A serious mental disorder generally qualifies as a disability within the meaning of the Rehab Act. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1300-01 (E.D. Cal.1995) (rejecting claim that "serious mental disorder" is insufficiently specific); *Doe v. Region 13 Mental Health-Mental Retardation Com'n*, 704 F.2d 1402, 1408 & 1408 n.6 (5th Cir. 1983) (noting that a "mental handicap" qualifies, and collecting cases); 28 C.F.R. 39.103 (defining "handicapped person" to include those with a "physical or mental impairment"). Second, Defendants' apparent argument that Plaintiffs must somehow individually show that every single class member is disabled would obviously defeat the whole purpose of class litigation – *i.e.* promoting efficiency by avoiding individualized determinations on the merits of common questions. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"). Accordingly, there can be no genuine dispute that Subclass Two is entitled to protection under the Rehab Act.[15]

---

[14] To the extent Defendants are concerned that some individuals who do not actually suffer from a serious mental disorder or defect may be identified as Class members, that issue concerns only the adequacy of the Class screening procedures. But Plaintiffs have not yet litigated the sufficiency of those procedures – so at least for now, Defendants have only themselves to blame.

[15] Defendants' argument that the Rehab Act provides no bond remedy because it

## IV.   PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

In what can only be seem as a serious affront to the Constitution and to Congress, the Government argues that the Court cannot issue an injunction, even if it finds that Defendants' conduct violates federal discrimination law, because the equities somehow favor the Government. Dkt. 441 at 28-32. Fortunately, that claim has been rejected by the Ninth Circuit in other civil rights cases.

As a threshold matter, none of the Government's arguments applies to the claim for bond hearings (or, equally, to the claim for legal representation for Subclass One members at their bond hearings). Defendants concede that they continue to detain without rigorous bond hearings, Dkt. 441-1 at #3, and that conduct plainly causes irreparable harm, as this Court has already held. *See* Dkt. 285 at 11-12. This Court has also already held that the failure to provide a Subclass One member who was entitled to a bond hearing with representation at that hearing risked irreparable harm. *See* Dkt. 215 at 24-25.

Defendants make more arguments against injunctive relief for Subclass One members seeking legal representation, but they are united by a common, deficient theme: Defendants claim that because they have favorably exercised discretion for most of the Subclass One members they have recently identified, there is no classwide irreparable harm. This argument fails for at least four reasons.

*First*, the Rehab Act – which Congress enacted to, among other things, ensure that the Executive Branch would not engage in discrimination – authorizes injunctive relief without *any* showing of irreparable harm. Controlling Ninth

---

would afford Subclass Two members "more than what nondisabled, detained aliens receive," Dkt. 441 at 22 is equally meritless, for reasons explained above. *See supra* Section I (arguing that "preferences" and exceptions to facially-neutral rules are permissible under the ADA). Plaintiffs have shown on numerous occasions that Class members face disproportionately prolonged detention on account of their disability – indeed, *M-A-M-* recommends taking steps to delay their cases. *See* Dkt. 398-1 at 31; Dkt. 57 at 37-38. It is this delay that requires the reasonable accommodation of a bond hearing.

19

Circuit precedent makes clear that Plaintiffs need not satisfy the standard requirements for equitable relief where "an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Silver Sage Partners, Ltd.*, *v. City of Desert*, 251 F.3d 814, 827 (9th Cir. 2001) (internal quotations and citations omitted); *see also Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (holding that district court would abuse its discretion if it denied injunctive relief to party "considering . . . the statutory violations . . . found and the fact that an injunction is the only relief available to a private party under" the operative statute). The Rehab Act specifically provides for injunctive relief. *See* 29 U.S.C. 794a(a)(2); *see also Enyart v. National Conference of Bar Examiners, Inc.*, 823 F.Supp.2d 995, 1015 (N.D. Cal. 2011) (applying *Silver Sage* and issuing injunctive relief after concluding that Defendants had violated the ADA). Thus, if the Court concludes that Subclass One members are entitled to legal representation under the Rehab Act, the Court can grant injunctive relief without any further showing.[16]

*Second*, even if the Court required a showing of harm, Plaintiffs have amply made it. Subclass One members, who by definition are not competent to represent themselves, suffer irreparable harm by being forced to appear and defend

---

[16] Almost all of the cases Defendants cite regarding irreparable harm involve preliminary injunctions. *See* Dkt. 441 at 28-29, n.16. The only exceptions are a patent case, *see eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 393 (2006), and a case affirming an irreparable harm finding where the harm involved a constitutional violation, *see Allee v. Medrano*, 416 U.S. 802, 814 (1974). The fact that courts require a further showing in patent cases tells us nothing about the rule in civil rights cases against the federal government. *See, e.g.*, *Correctional S'vces Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."); *see also also United States v. Arizona,* 641 F.3d 339, 366 (9th Cir. 2011), *aff'd in part and rev'd in part, remanded by Arizona v. United States*, 132 S. Ct. 2492 (2012) ("constitutional infringement will often alone constitute irreparable harm").

themselves in immigration proceedings absent legal representation.  Although they purport to dispute it, Defendants do not meaningfully contest that they continue to detain Subclass One members and place them into removal proceedings.  In fact, Mr. Go's Declaration implicitly acknowledges that the Government continues to detain at least four Subclass One members who, as of the time of his declaration, remained *pro se* before the immigration courts.  *See* Go Dec. at ¶¶ 7 n.3, 8, 26.  Similarly, notwithstanding their evasive responses, Defendants do not dispute that no legal obligation requires them to provide free legal representation to such individuals; on the contrary, they claim in their brief that federal law bars them from doing so.[17]  *See* Orihuela Supp. Dec. at  ¶¶ 2 n.1, 9-10.

That Subclass One members continue to be denied legal representation is itself a harm sufficient to warrant injunctive relief.  This should be obvious: an individual denied an attorney at his criminal trial suffers irreparable injury at the point that he appears *pro se*, regardless of whether he is later convicted.  The Ninth Circuit has held that the failure to provide a mechanism for immigrants to knowingly exercise their rights warrants class-wide injunctive relief, without the need for any further harm.  *Walters v. Reno*, 145 F.3d 1032, 1042, 1048-50, (9th Cir. 1998) (holding that incomprehensible notices disseminated by the immigration service created irreparable harm because individuals "receiving the forms will be confused and misled."); *cf. Paulson*, 525 F.3d at 1270 (rejecting "astounding" claim that class of blind individuals would have to show that they are victims of fraud in order to obtain injunction requiring change in currency).  Similarly, Subclass One members suffer harm when they cannot exercise any of the rights to which they are entitled due to the absence of legal assistance.  They need show

---

[17] With respect to the more granular supporting facts concerning the Named Representatives, Plaintiffs address them in their Reply in Support of Statement of Uncontroverted Facts, filed concurrently herewith.  None of those purported disputes suffices to create a triable issue in light of Defendants' position with respect to the three global facts described above.

nothing further to establish irreparable harm.  *Id.*; *see also Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872 -873 (7th Cir. 2009) (ordering injunctive relief requiring due process hearing prior to revocation of liquor license where it "was difficult to ascertain the specific amount of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business," without requiring plaintiff to show lost revenue); *Cooper v. Salazar*, 196 F.3d 809, 816-17 (7th Cir. 1999) (affirming finding of irreparable harm where procedures created risk that erroneous determinations of discrimination would be unreviewable).

   *Third*, even were Plaintiffs required to show more to establish harm, they have done so.  Defendants appear to have forgotten how this case began: Mr. Franco lost nearly *five years* of his life in detention because they failed to provide him legal representation.  Similarly, Mr. Khukhryanskiy, Mr. Martinez, Mr. Zhalezny and Mr. Chavez all suffered irreparable harm (and likely would have been unlawfully removed after their unlawful prolonged detention) because they were not provided legal representation despite their profound mental illnesses. Dkt. 107 at 41-42 (holding that Messrs. Khukhryanskiy and Martinez demonstrated irreparable harm); Dkt. 215 at 24-25 (same for Mr. Zhalezny).

   Defendants ignore that awful history, and instead point to their recent treatment of Subclass One members, Dkt. 441 at 31, but those examples prove only that the Government has exercised its (unfettered) discretion to resolve several recent cases (when faced with a certified class and advocacy letters from class counsel).  The Government still recognizes no *binding* obligation either to provide counsel for Subclass One members or to provide bond hearings for Subclass Two members.  Without a binding obligation, Defendants offer no reason to believe that their arguably-improved behavior would continue were this Court to deny injunctive relief.  *Cf. Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 860 (N.D. Cal. 2011) ("A request for prospective injunctive relief will be mooted by a

1    defendant's voluntary compliance only if the defendant meets the 'formidable

2    burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior

3    could not reasonably be expected to recur.'"); *F.T.C. v. Affordable Media*, 179

4    F.3d 1228, 1237 (9th Cir. 1999) (same); *United States v. Oregon State Medical*

5    *Society, et al.*, 343 U.S. 326, 333 (1952) ("It is the duty of the courts to beware of

6    efforts to defeat injunctive relief by protestations of repentance and reform,

7    especially when abandonment seems timed to anticipate suit, and there is

8    probability of resumption.").

9        Moreover, even with the Government on its best behavior, some Subclass

10   One members for whom Plaintiffs have sought help have been subjected to

11   indefinite delays or left to represent themselves pro se (whether at bond hearings or

12   removal hearings).  *See* Orihuela Supp Dec. at ¶ 7; Go Dec. at ¶ 26 (indicating that

13   four Subclass One members remain unrepresented and in detention).  As of this

14   time, Mr. Zotov, Mr. Guerrero-Ramirez, Mr. Lual, and Mr. Gutierrez Solano could

15   all bring the same motion for preliminary injunction on which Khukhryanskiy,

16   Martinez, and Zhalezny have already prevailed – all are detained and in removal

17   proceedings, all have been found incompetent to represent themselves, but none of

18   them have attorneys.[18]

19       The experiences of the Named Representatives coupled with those of other

20   Subclass One members are more than sufficient to allow this Court to rely on its

21   prior findings of irreparable harm, coupled with its prior class certification ruling

22   that Defendants act similarly towards all Subclass One members (by not providing

23   them legal representation).  *See generally Armstrong v. Davis*, 275 F.3d 849, 860

24   (9th Cir. 2001), *abrogated in part on other grounds by Johnson v. California*, 543

25   U.S. 499 (2005) ("where a district court grants system-wide injunctive relief, the

26

27   _____
     [18] The Government's response also says nothing about those Subclass One

28   members identified after this Motion was filed, including some identified before it
     filed its Opposition.  *See* Orihuela Supp Dec at ¶¶ 17-18; Exs. 305, 307.

23

1   issues of standing, class certification, and the propriety and scope of relief are often

2   intermingled . . . . [a]s a result, the district court's findings of fact and rulings of

3   law with regard to one aspect of the litigation will often buttress or make

4   unnecessary further findings or rulings on another issue.").

5          Defendants cite *Allee v. Medrano*, 416 U.S. 802 (1974), Dkt. 441 at 31, in

6   support of their claim that "isolated incidents" of harm are insufficient, but they

7   ellipse out critical wording.  *Allee* states that "[i]solated incidents of police

8   misconduct *under valid statutes* would not, of course, be cause for the exercise of a

9   federal court's equitable powers."  416 U.S. at 815 (emphasis added).  In contrast,

10  where a state actor engages in unlawful conduct *pursuant to a written statute or*

11  *policy*, courts presume that injunctive relief is appropriate once violations have

12  occurred.  *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001)

13  (holding that district court had authority to issue classwide injunctive relief where

14  plaintiff challenged action arising from "official written policy"); *Armstrong*, 275

15  F.3d at 861 (affirming injunctive relief in disability discrimination class action

16  because "where the harm alleged is directly traceable to a written policy . . . there

17  is an implicit likelihood of its repetition in the immediate future").  *Allee*'s holding

18  is completely consistent with these cases, as it affirms a class-wide permanent

19  injunction in the face of a claim that the harm had ceased after filing of the

20  complaint, holding that "[i]t is settled that an action for an injunction does not

21  become moot merely because the conduct complained of has terminated, if there is

22  a possibility of recurrence, since otherwise the defendants would be free to return

23  to their old ways."  *Id*. at 811-12.  Thus, Plaintiffs need not show, again, a new

24  pattern or practice of yet more unlawful conduct.[19]

---

25  [19] Defendants also cite *Aguilar v. Immigration and Customs Enforcement*, 2012

26  WL 1344417 (S.D.N.Y. 2012), for the claim that Plaintiffs must show, *now*, a

27  "pattern or practice" that affects the class as a whole, but *Aguilar denied class certification* because there was no common treatment of the proposed class by the

28  Defendant.  Here, the Court has already resolved that issue in Plaintiffs' favor.

*Finally*, the Court should reject Defendants' invitation to delay resolution of this Motion while awaiting responses to Defendants' discovery requests. The material responses are clearly set forth in this briefing – all class members suffer "prejudice," insofar as they are harmed by Defendants' failure to provide procedures required under federal law, and several individuals have suffered further harm as well. That Defendants served the discovery over two months after the Court lifted its stay, and almost six weeks after receiving Plaintiffs' Motion, strongly suggests that Defendants' discovery is nothing more than a stalling tactic that Subclass One members can ill afford.[20] *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for denial of a Rule [56(d), previously 56(f)] motion."). There is no reason to reward Defendants for a delay of their own making.

## V.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant summary judgment on the legal representation and bond hearing claims, and that it enter a permanent injunction consistent with Plaintiffs' proposed order.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  August 24, 2012         s/ Ahilan T. Arulanantham
                                AHILAN T. ARULANANTHAM
                                Attorney for Plaintiffs

---

[20] Plaintiffs can likewise easily demonstrate that the balance of hardships tips in their favor and that an injunction is in the public interest. Although Defendants claim to dispute that, they offer no substantive argument as to why Plaintiffs fail to meet those two factors given the Court's prior preliminary injunction rulings.