AHILAN T. ARULANANTHAM (State Bar No. 237841)
aarulanantham@aclu-sc.org
CARMEN IGUINA (State Bar No. 277369)
ciguina@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5211
Facsimile: (213) 417-2211

MICHAEL H. STEINBERG (State Bar No. 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Plaintiffs-Petitioners*
(Additional Counsel for Plaintiffs
 on Following Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, et al.,<br><br>*Plaintiffs-Petitioners,*<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General, et al.,<br><br>*Defendants-Respondents.* | Case No. 10-CV-02211 DMG (DTBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND ORDER RE PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR NOTICE, DKT. 360**<br><br>Honorable Dolly M. Gee<br><br>Hearing Date: January 18, 2013<br><br>Hearing Time: 9:30 a.m. |

JUDY LONDON (State Bar No. 149431)
jlondon@publiccounsel.org
TALIA INLENDER (State Bar No. 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (State Bar No. JR-1214)
JRabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

DAVID LOY (State Bar No. 229235)
dblairloy@aclusandiego.org
SEAN RIORDAN (State Bar No. 255752)
sriordan@aclusandiego.org
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

JAMES PREIS (State Bar No. 82690)
jpreis@mhas-la.org
MENTAL HEALTH ADVOCACY SERVICES
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone: (213) 389-2077
Facsimile: (213) 389-2595

MATT ADAMS (State Bar No. 28287)
matt@nwirp.org
RIDDHI MUKHOPADHYAY
riddhi@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

JAMES LYALL (State Bar No. 330045)
jlyall@acluaz.org
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 773-6001
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs-Petitioners*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

PROCEDURAL HISTORY ...................................................................................3

    The Court's Notice Order and Defendants' Agreement to
    Provide "Next Hearing Date" Information for All Class Members .....................3

    Defendants' Unilateral Decision to Stop Providing
    "Next Hearing Date" Information and Refusal to Provide
    M-A-M- Hearing Date Information................................................................. 4

    Plaintiffs' Efforts to Protect Class Members .......................................................7

ARGUMENT..........................................................................................................9

CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ................................................................. 10, 11

*Doe v. General Hospital of District of Columbia*,
   434 F.2d 427 (D.C. Cir. 1970) ......................................................................... 10

*Laub v. U.S. Dept. of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ......................................................................... 12

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ........................................................................................ 10

*Puffer v. Allstate Ins. Co.*,
   614 F. Supp. 2d 905 (N.D. Ill. 2009) ............................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................ 9, 10, 12

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 9

Fed. R. Civ. P. 23(c)(2)(A) ...................................................................................... 9

Fed. R. Civ. P. 23(d) ............................................................................................... 10

Fed. R. Civ. P. 23(d)(1)(B)(i) .................................................................................. 9

Fed. R. Civ. P. 26 ............................................................................................... 9, 12

# INTRODUCTION

Plaintiffs file this Motion seeking a modification of the Court's Order regarding Notice, Dkt. 360, to require that Defendants provide them advance notice of any competency determination hearings to be held for class members pursuant to the Board's decision in *Matter of M-A-M-*. This does not strike Plaintiffs as a controversial proposal – Plaintiffs wish to protect class members from unlawful deportations, and, for better or worse, under the present system it is the *M-A-M-* hearing that determines whether a class member is deemed not competent and what safeguards will be provided. Moreover, Defendants have made the protections afforded at *M-A-M-* hearings central to their defense of this case. From their failed effort to defeat class certification, *see* Dkt. 328 at 17-20, to their effort to have the Court reconsider class certification, *see* Dkt. 389 at 11, 13-14, 16, to their oppositions to Plaintiffs' motions for preliminary injunction, *see* Dkt. 232 at 27-28, and most recently in their opposition to summary judgment, *see* Dkt. 441 at 9-12, Defendants have repeatedly made the safeguards provided by *M-A-M-* hearings central to their defense in this action.

Nonetheless, Defendants have now refused to provide Plaintiffs with information about when *M-A-M-* hearings will occur so that Plaintiffs may protect their clients' rights and observe these critical hearings. Although this information is extremely important to prevent unlawful deportations, Defendants refuse to perform the most ministerial of tasks – checking their own calendars and informing Plaintiffs as to when the *M-A-M-* hearings will occur.

The Court need not countenance such behavior when class members who are unable to protect themselves face unlawful deportation due to the failures of the very system that Defendants say provides "adequate safeguards" to protect their rights. If Defendants are correct that the competency determination process established by *M-A-M-* satisfies constitutional and statutory requirements, then they should have nothing to hide, and giving Plaintiffs information about

upcoming *M-A-M-* hearings could actually support their case. If, as Plaintiffs have already seen, *M-A-M-* does not work, then providing Plaintiffs with information about *M-A-M-* hearings will help to protect vulnerable class members.

    Defendants' opposition to Plaintiffs' request for *M-A-M-* hearing information is all the more confounding because Plaintiffs made the request as part of a compromise that would allow Defendants to provide far *less* information than they have provided in the past under the terms of the Court's Notice Order. For the first nine months of 2012, Defendants provided Plaintiffs with far more information than just the dates of *M-A-M-* hearings. As Defendants demonstrated over the last nine months, they were able to provide "next hearing date" information for each of the hundreds of people identified as class members. After Defendants unilaterally ceased to provide "next hearing date" information claiming that it was too burdensome, Plaintiffs sought to negotiate a compromise with Defendants, so they would not have to trouble the Court with yet another motion. In those negotiations (and now, here), Plaintiffs simply asked that they receive, in essence, a "subset" of the "next hearing date" information – just the *M-A-M-* hearing dates for any class member who happens to have an upcoming *M-A-M-* hearing. Defendants are undoubtedly in a better position to share information about their own schedules than Plaintiffs are to guess them or learn them from class members – who by definition have serious mental disorders. Yet Defendants insist on cloaking their *M-A-M-* hearings in secrecy.

    In sum, Plaintiffs request only that the Court order the Government to provide Plaintiffs data that it has, at its fingertips, so as to allow Plaintiffs to protect vulnerable class members. Doing so will also serve the secondary purpose of shedding light on a process that the Government has hailed as the panacea to all of the harms alleged in the complaint. The stakes could not be higher for class members; Plaintiffs' intervention has already allowed several class members whom Defendants failed to identify to avoid unlawful deportation.

# PROCEDURAL HISTORY

**The Court's Notice Order and Defendants' Agreement to Provide "Next Hearing Date" Information for All Class Members**

On December 13, 2011, this Court entered its Notice Order requiring Defendants to provide, *inter alia*, regular reports to Plaintiffs' counsel providing certain information about class members. *See* Dkt. 360 at 3. The Notice Order expressly permitted the parties to modify its terms, stating that Defendants were required to provide the information described in the order "absent an agreement between the parties regarding a reasonable form of notice." *Id*. In January of 2012 the parties entered into an agreement that modified the terms of the Court's order.[1] Specifically, on January 9, 2012, Plaintiffs agreed to provide Defendants with information on class members who contact Plaintiffs, despite having had no prior obligation to report such information, and to provide, among other things, "Next Hearing Date" information (i.e., information stating the date of the detainee's next hearing) "if we can obtain it . . . provided that Defendants are willing to provide [Plaintiffs] with the same information." *See* Exhibit 322 at 2. Plaintiffs requested that Defendants also provide such "next hearing date" information for detainees whose information they were providing. *Id*.[2] On January 13, 2012, Defendants agreed to this provision, writing to Plaintiffs that "the class member [information]

---

[1] A copy of the parties' correspondence regarding the notice agreement is attached as Exhibit 322.

[2] Because the next hearing date information of many but not all class members is publicly available through a telephone system run by the immigration courts (known as the "EOIR hotline"), the parties considered the possibility of a more limited agreement under which Defendants would provide next hearing date information only when it was not available on the hotline. However, correspondence from the time during which the parties negotiated their agreement as well as the parties' subsequent practice makes clear that the ultimate agreement was for the parties to provide next hearing date information for *all* class members of whom they were aware. *See* Exhibit 322.

3

we would provide will have a column for 'Next Hearing Date' as you requested." *Id.* at 1.

Consistent with the plain terms of this agreement, the parties began their information exchange the following week, with Defendants including next hearing date information for all class members on the first class member reporting exchange on January 18, 2012. They continued doing so for nearly nine months without objection. Exhibit 323, Declaration of Carmen Iguina of December 20, 2012 ("Iguina Decl.") at ¶ 20. Similarly, Plaintiffs have continuously provided the next hearing date information for all the class members they identify, as required by the parties' agreement. *Id.* at ¶ 26.

**Defendants' Unilateral Decision to Stop Providing "Next Hearing Date" Information and Refusal to Provide *M-A-M-* Hearing Date Information**

On October 10, 2012, after nine consecutive months of providing "next hearing date" information, Defendants announced their unilateral decision to stop providing Plaintiffs with next hearing date information as part of their notice reporting.[3] Despite the fact that they had actually agreed to provide "next hearing date" information in January 2012, well before any settlement negotiations occurred, Defendants offered the puzzling excuse that they had originally agreed to provide this information as part of an agreement to stay the litigation during settlement negotiations, and that after the stay ended, Defendants continued to provide the information only as a "courtesy" to Plaintiffs. Exhibit 317, Dkt. 495-1 at 3. Defendants then stated that the task had become too burdensome (without explaining how the burden had increased), and that because the majority of the information was available through the EOIR hotline they would no longer provide

---

[3] A copy of Defendants' October 10, 2012 letter was previously produced to the Court as Exhibit 317, Dkt. 495-1.

4

hearing date information to Plaintiffs. *Id.*[4]

On November 14, 2012, Plaintiffs responded to Defendants' October 10, 2012 letter, explaining that the agreement to provide "next hearing date" information was part of the parties' original agreement to exchange information pursuant to the Notice Order. Indeed, Plaintiffs noted that Defendants began providing this information before any settlement negotiations or stay of litigation had commenced. Plaintiffs also informed Defendants that, contrary to their assertion that the vast majority of the "next hearing date" information was publicly available through the EOIR hotline, Plaintiffs' investigation revealed that information was missing for 12% of the individuals in a particular reporting list for whom Plaintiffs were able to verify information.

Nonetheless, in an effort to resolve the impasse without resort to litigation, Plaintiffs offered Defendants a compromise. Plaintiffs proposed that, instead of providing "next hearing dates" for the hundreds of class members on each reporting list, Defendants provide next hearing date information *only in two limited respects*. First, they requested that Defendants provide next hearing date information for all Subclass One members (that is, individuals who have already been identified, under Defendants' own processes, as individuals who are not competent to represent themselves under the standard set forth in *Matter of M-A-M-*). Second, they requested that Defendants inform them of the next hearing date

---

[4] One month prior to the October 10, 2012 letter, Defendants simply stopped producing the next hearing date information without giving prior notice to Plaintiffs. After Plaintiffs threatened to file an *Ex Parte* Application seeking to enforce the terms of the parties' agreement regarding production of the "next hearing date" information, Defendants agreed to provide the information for the notice reporting lists that had been produced without "next hearing date" information for that month. *See* Iguina Decl. at ¶¶ 20-25. However, they ceased providing the information for lists produced going forward after October 10, 2012, and have not provided such information in any list exchanged since that time. *Id.* at ¶ 26.

1 for any forthcoming competency hearings under *Matter of M-A-M-*. As Plaintiffs
2 noted, this compromise would require Defendants to produce far less information
3 than that the parties had originally agreed upon pursuant to the Court's Notice
4 Order.[5]

5 On November 16, 2012, Defendants responded by requesting a meet and
6 confer on the issue, stating that the parties "can probably fashion some agreement
7 as to future reporting."[6] In further correspondence on December 4, 2012,
8 Defendants stated that, although they "disagree[d] that Defendants' prior
9 'agreement' to provide next-hearing date information was a formal agreement that
10 would continue beyond settlement discussions," *id.* at 4, they were "willing to
11 discuss Plaintiffs' request about information from hearings involving *Matter of M-*
12 *A-M-* on our upcoming phone conversation." *Id.*[7] Although Plaintiffs had
13 provided Defendants with documents showing that Defendants agreed to produce
14 "next hearing date" information in January 2012, Defendants never explained why
15 they believed that their obligation to provide "next hearing date" information
16 would expire upon the end of settlement negotiations.

17 On December 6, 2012, the parties conducted a further meet and confer at
18 which they discussed, among other issues, Plaintiffs' compromise proposal on the
19 notice reporting of "next hearing date" information. During the meet and confer,
20 Defendants again confirmed their willingness to provide next hearing date
21 information for Subclass One members. *See* Iguina Decl. at ¶ 30. As to the
22 production of dates for *Matter of M-A-M-* hearings, however, Defendants were not
23 willing to provide Plaintiffs with class members' upcoming *Matter of M-A-M-*

---

[5] A copy of Plaintiffs' November 14, 2012, letter is attached as Exhibit 324.
[6] A copy of that email correspondence is attached as Exhibit 325.
[7] Defendants did agree to provide next hearing date information for Subclass One members in that correspondence. A copy of Defendants' December 4, 2012 letter is attached as Exhibit 326.

6

hearing information.  Defendants instead proposed that Plaintiffs identify for which class members, out of the hundreds provided on each reporting list, "next hearing date" information was not available on the EOIR hotline and report that information to Defendants.  Defendants claimed they would then provide the "next hearing date" information for those detainees within 48 hours.  Alternatively, Defendants proposed that Plaintiffs provide them with a list of all the class members who Plaintiffs claim Defendants have failed to identify, and in return Defendants would provide "next hearing date" information for all class members in a staggered manner.  Under no circumstance, however, were Defendants willing to provide dates for upcoming *Matter of M-A-M-* hearings.  *See* id. at ¶ 30.

**Plaintiffs' Efforts to Protect Class Members**

As explained below, the primary reason why Plaintiffs seek information concerning class members' *M-A-M-* hearing dates is that they seek to protect class members whose competency is not properly assessed under the current *M-A-M-* system.  Therefore, a brief description of those efforts is relevant to the resolution of this motion.

Plaintiffs have used the information received pursuant to the Court's Notice Order to protect class members in a variety of different ways.  On numerous occasions, Plaintiffs have written to Defendants seeking to ensure protection for class members.  *See* Exhibit 327, Declaration of Ahilan T. Arulanantham of December 20, 2012 at ¶ 2.  Plaintiffs have used the "next hearing date" information to request in those letters that Defendants arrange for legal representation for any Subclass One member scheduled to appear before the immigration court, to seek bond hearings for Subclass Two members, and have also used them to repeatedly send individuals – usually volunteer law student interns or attorneys – to observe hearings.  *See id.* at ¶¶ 2-4.

Plaintiffs have also attempted to utilize the information that Defendants have provided to monitor *Matter of M-A-M-* hearings to protect class members from

7

harm by notifying the immigration courts (and Defendants' counsel) of failures found in the system. Plaintiffs' ability to monitor *M-A-M-* hearings has been greatly limited by the fact that they have not received information about when those hearings are taking place, but even with the information that Plaintiffs have had – concerning every class members' next hearings – Plaintiffs have protected several class members from unlawful deportation. For example, Plaintiffs used the "next hearing date" information, along with information gathered from family members, to observe the *M-A-M-* hearing for Subclass One member Tashegar Tadess. Plaintiffs were then able to inform this Court that the Immigration Judge in that case had appointed a family member to represent Mr. Tadess. *See* Dkt. 504 at 4. Similarly, in October of 2012, Plaintiffs were contacted by a class member, Benito Lopez, who had been identified by Defendants on their notice reporting lists between July and September of 2012. An immigration judge had ordered Mr. Lopez removed to El Salvador in September of 2012. Based on interactions with Mr. Lopez, however, it appeared readily evident that he was not competent to represent himself. Plaintiffs raised their concerns with Defendants, after which Defendants agreed to stop the deportation of Mr. Lopez and reopen his case to examine his mental competency.[8] *See* Iguina Decl. at ¶¶ 2-11. More recently, in November of 2012, Plaintiffs were contacted by a family member of a severely mentally-ill individual, Keovathana Mak, a long-time lawful permanent resident who had been ordered deported to Cambodia, but had never been identified by Defendants as a class member. After visiting Mr. Mak in detention, Plaintiffs' counsel assisted him in completing and filing an appeal form that raised the issue of his mental competency. After that intervention, Defendants identified Mr. Mak

---

[8] A copy of the email correspondence between the parties regarding Mr. Lopez is attached as Exhibit 328.

as a class member.[9] *See id.* at ¶¶ 12-16.

There are undoubtedly numerous other class members who have been harmed, and likely unlawfully deported, as a result of the failures in the *Matter of M-A-M-* system. However, without an order from this Court ordering Defendants to provide Plaintiffs with *Matter of M-A-M-* hearing information, Plaintiffs' counsel will be unable to take appropriate steps to protect the rights of these class members, who face prolonged detention and unlawful deportation.

## ARGUMENT

The Court should modify the Notice Order to require Defendants to provide Plaintiffs with notice of *Matter of M-A-M-* hearings. Such an order is appropriate under Rule 23 and necessary to protect class members' rights. Alternatively, the Court may also order the provision of the information as a form of expedited discovery pursuant to Rule 26.[10]

As this Court recognized in its Notice Order, Rule 23 permits the Court to order "appropriate" notice in class actions certified under Rule 23(b)(2), including where appropriate "to protect class members." *See* Dkt. 360 at 1; *see also* Fed. R. Civ. P. 23(c)(2)(A), 23(d)(1)(B)(i). The Ninth Circuit has interpreted this rule to

---

[9] Plaintiffs have also learned of other apparent failures in the *Matter of M-A-M-* system in the course of their communications with class members and their families, apart from information gleaned through the Court-ordered notice. To name a few, on October 5, 2012, an immigration judge allegedly told a family member to arrange for a competency evaluation for a class member. *See* Exhibit 329, Declaration of Mike Sheen of December 20, 2012 at ¶¶ 6, 8-9. In another, a class member told Plaintiffs' counsel that an immigration judge made a competency determination without discussing his medical records or asking any questions during the hearing. *See* Iguina Decl. at ¶¶ 17-19. Without prior notice of *Matter of M-A-M-* hearings, however, Plaintiffs are unable to observe hearings, and thereby both corroborate these accounts and determine whether these practices are widespread.

[10] Plaintiffs do not seek a court order requiring provision of next hearing information for Subclass One members because Defendants have agreed to continue to provide it as of this time.

9

authorize notice to prevent unlawful deportation of class members. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236 (9th Cir. 1999) (affirming district court order under Rule 23(d) requiring government to include separate notice in every order to class members because it "would not be unduly burdensome and would prevent the irreparable harm of an erroneous deportation").[11] Defendants' cooperation in the notice process could be required "where a defendant may be able to identify class members with less difficulty or expense than could the representative plaintiff." Dkt. 360 at 1-2; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355-56 (1978); *Barahona-Gomez*, 167 F.3d at 1237. In light of these principles, Rule 23 authorizes the modest request sought here – an order requiring Defendants to provide Plaintiffs with notice of class members' *M-A-M-* hearings – for at least two reasons.

*First*, this form of notice is necessary to protect class members' rights and "prevent the irreparable harm of an erroneous deportation." *See Barahona-Gonez*, 167 F.3d at 1237. As noted above, Plaintiffs have already identified several failures in the *Matter of M-A-M-* system that have caused harm to class members and have intervened to protect class members and in at least one case remedy an unlawful deportation. As described above, Plaintiffs have also gathered ample anecdotal information from class members and family members suggesting that *M-A-M-* hearings are conducted in violation of class members' rights. Examples include judges failing to review medical records, requiring family members to

---

[11] Other courts have also held that Rule 23(d) provides district courts with the authority to issue notice where the class or putative class members' interests could be adversely affected. *See Doe v. General Hospital of District of Columbia*, 434 F.2d 427, 433 (D.C. Cir. 1970) (noting that district court should consider requiring defendants to inform members of the class of their rights under preliminary injunction issued previously by the district court); *Puffer v. Allstate Ins. Co.*, 614 F. Supp. 2d 905, 908 (N.D. Ill. 2009) (ordering notice to putative class members that class certification has been denied therefore the statute of limitations on putative class members' claims was retriggered).

obtain competency evaluations, appointing family members to represent incompetent detainees, and, of course, unlawful deportation orders entered after erroneous competency determinations. Advance notice of *Matter of M-A-M-* hearings would allow Plaintiffs to monitor such hearings, observe the proceedings, and intervene where necessary to protect class members' rights. *See Barahona-Gomez*, 167 F.3d at 1236.

*Second*, Plaintiffs cannot monitor class members' *Matter of M-A-M-* hearings without the provision of this information by Defendants, and this information should not be difficult for Defendants to provide. Immigration judges and DHS trial attorneys are uniquely positioned to provide prior notice of *Matter of M-A-M-* hearings, as they are the actors who schedule them and present evidence at them, respectively. *See id.* at 1237 (requiring government to provide notice because "the INS is uniquely positioned to ascertain class membership"). As in *Barahona-Gomez*, here the Government is "uniquely positioned" to open up its own calendars, determine its own schedule of *M-A-M-* hearings, and provide that schedule to Plaintiffs. In contrast to the Government, who must merely check its calendar and look up the records of the detainees it identifies and reports, class members are detained individuals with serious mental disorders who are defending themselves in removal proceedings without the benefit of counsel. They are obviously unable to provide this information to Plaintiffs' counsel in the vast majority of cases.

While Plaintiffs continue to believe that they are entitled to far more information than what they request here, they have sought a modest compromise. Defendants say it is too burdensome to provide the "next hearing date" information they provided for nine months; Plaintiffs disagree, but are willing to accept less information in order to lessen the burden created by the notice obligation while still helping the most vulnerable class members avoid unlawful deportation. Because the information sought by Plaintiffs is necessary to protect the rights of class

members, almost exclusively within Defendants' control, and not difficult to gather, it is plainly "appropriate" for this Court to order Defendants to provide such information under Rule 23.

Alternatively, if the Court declines to order Defendants to provide this information pursuant to Rule 23, it should order Defendants to produce this information under Rule 26. "A district court is vested with broad discretion to permit or deny discovery." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Apart from the obvious need to protect class members, providing Plaintiffs with information concerning upcoming *M-A-M-* hearings will allow Plaintiffs to learn more about the system upon which Defendants' entire defense rests. Such information is plainly "relevant" for purposes of discovery concerning how the *M-A-M-* system works, wholly apart from the fact that Plaintiffs need that information to protect class members. Thus, Rule 26 provides an additional source of authority under which this Court should order Defendants to inform Plaintiffs as to when *M-A-M-* hearings will occur, in order to prevent the irreparable harm of unlawful deportations arising from the failure to identify those class members who are not competent to represent themselves.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion to Modify the Notice Order to require Defendants to provide Plaintiffs with notice of *Matter of M-A-M-* hearings pursuant to Rule 23 or, in the alternative, pursuant to Rule 26.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated: December 20, 2012

 s/ Ahilan T. Arulanantham
AHILAN T. ARULANANTHAM
Counsel for Plaintiffs-Petitioners