STUART F. DELERY
Principal Deputy Assistant Attorney General
Civil Division, U.S. Department of Justice
DAVID J. KLINE
Director
Office of Immigration Litigation
VICTOR M. LAWRENCE
Principal Assistant Director
Office of Immigration Litigation
 District Court Section
U.S. Department of Justice
450 5th Street, N.W., Rm 6052
Washington, D.C.  20530
Telephone: (202) 305-8788
Facsimile: (202) 305-7000
Victor.Lawrence@usdoj.gov
SAMUEL P. GO
NEELAM IHSANULLAH
SCOTT M. MARCONDA

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, *et al.*,<br><br>    *Plaintiffs & Petitioners*,<br><br>      v.<br><br>ERIC H. HOLDER, JR.,<br>Attorney General, *et al.*,<br><br>    *Defendants & Respondents*. | Case No. 10-CV-02211 DMG (DTBx)<br><br>**JOINT STIPULATION REGARDING DISPUTE OVER PRODUCTION OF RECORDS**<br><br>Judge: Honorable David T. Bristow<br><br>No Discovery Deadline/Schedule Set<br><br>No Trial Date Set<br><br>Hearing Date: January 28, 2013, 10:00 a.m. |

# <u>TABLE OF CONTENTS</u>

I.     DEFENDANTS' INTRODUCTORY STATEMENT
       PURSUANT TO L.R. 37-2.1 ............................................................1

II.    PLAINTIFFS' INTRODUCTORY STATEMENT
       PURSUANT TO L.R. 37-2.1 ........................................................2

III.   ISSUES IN DISPUTE…………………………………………………5

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Immigration and Customs Enforcement*,

  2012 WL 1344417 (S.D.N.Y. 2012) ........................ 10, 20, 27, 33, 39, 45, 52

*Allee v. Medrano*,

  416 U.S. 802 (1974)...................................................... 10, 20, 27, 33, 39, 46, 52

*Amoco Production Co., v. Village of Gambell, AK*,

  480 U.S. 531 (1987)........................................................ 9, 19, 26, 32, 38, 45, 51

*Anderson v. Hansen*,

  No. 09 Civ. 1924 LJO-MJS (PC),

  2012 U.S. Dist. LEXIS 131010 (E.D. Cal. Sep. 13, 2012) ...22, 34, 42, 54, 72

*BEN (NLS)*,

  2010 U.S. Dist. LEXIS 49436 (S.D. Cal. May 19, 2010) ...........................15

*Casas-Castrillon v. DHS*,

  535 F.3d 942 (9th Cir. 2008) ...........................................................41, 47, 53

*Diouf v. Napolitano (Diouf II)*,

    634 F.3d 1081 (9th Cir. 2011) ...........................................................41, 47, 53

*Gen-Probe Inc. v. Bechton, Dickinson & Co.*,

    No. 09cv2319 ...........................................................................................15, 71

*Haggarty v. Wells Fargo Bank, N.A.*,

    No. 10-2416 *CRB (JSC)*,

    2012 U.S. Dist. LEXIS 133375 (N.D. Cal. Sep. 18, 2012)...22, 34, 42, 54, 72

*Lovell v. Chandler*,

    303 F.3d 1039 (9th Cir. 2002) ........................................................55, 58, 60

*Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust*,

    636 F.3d 1150 (9th Cir. 2011) ......................................................7, 17, 25, 30

*Williams v. Dial, No. Civ. S-06-2381 FCD CKD P*,

    2011 U.S. Dist. LEXIS 137532 (E.D. Cal. Nov. 29, 2011) ..22, 35, 42, 54, 72

*Winter v. Natural Resources Defense Council, Inc.*,

    555 U.S. 7 (2008)........................................................ 9, 19, 27, 32, 38, 45, 51

1
2
3

## FEDERAL STATUTES

4
5

8 U.S.C. § 1226(a)(2).........................................................................37, 44, 50

6
7

8 U.S.C. § 1226(a)(2)(B) ..................................................................41, 47, 53

8
9

29 U.S.C. § 794(a) ...........................................................................55, 58, 60

10
11

## FEDERAL RULE OF CIVIL PROCEDURE

12
13

Fed. R. Civ. P. 23(b)(2)......................................... 9, 20, 27, 32, 39, 45, 51

14
15

Fed. R. Civ. P. 26(b)(1)....................................................................7, 17, 25, 30

16
17

Fed. R. Civ. P. 37 ...........................................................................1, 72

18
19

Fed. R. Civ. P. 37(b)(2)(A)(iii) ..........................................................70

20
21
22
23
24
25
26
27
28

1

**JOINT STATEMENT**

2

Pursuant to Fed. R. Civ. P. 37, the parties have met and conferred regarding

3

discovery of information in the Government's custody.  Unable to reach an

4

agreement at this time, the parties herein respectfully submit their positions.

5

6

**I.    DEFENDANTS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1**

7

8

Defendants determined to file this Joint Statement to demonstrate to the

9

Court that they have propounded reasonable discovery requests upon Plaintiffs that

10

were designed to elicit important information concerning Plaintiffs' claims in this

11

case.  Despite the reasonableness of those requests, Plaintiffs failed to comply with

12

their discovery obligations.  Plaintiffs filed meritless objections and determined to

13

not provide substantive responses to Defendants' requests.  As a result, Plaintiffs

14

have denied Defendants information that is crucial to the proper defense of this

15

litigation.  Defendants now seek the Court's assistance in compelling Plaintiffs to

16

properly respond to Defendants' discovery.

17

Defendants followed the appropriate Local Rules to bring this to the

18

attention of the Court.  Pursuant to L.R. 37-1, on November 21, 2012, Defendants

19

provided Plaintiffs a letter outlining where Defendants believed Plaintiffs'

20

discovery responses were deficient.  *See* Exhibit A.  As of the date that Defendants

21

served their portion of the Joint Statement on Plaintiffs (December 18, 2012),

22

Plaintiffs did not respond to Defendants' correspondence.  Nevertheless, the parties

23

participated in a telephone discussion on December 6, 2012 to discuss the

24

Responses and to meet and confer in good faith.[1]  When Plaintiffs indicated that

25

they did not intend to provide supplemental responses, Defendants determined to

26

27

28

---

[1] Defendants note that Plaintiffs' lead counsel, Ahilan Arulanantham and Michael Steinberg did not participate in the teleconference.  They presumably delegated that responsibility to junior members of their team.

commence procedures under Local Rule 37 to seek this Court's assistance in compelling Plaintiffs to cooperate in discovery and provide full responses.  *See* Declaration of Victor M. Lawrence.

To the extent Plaintiffs do not provide full responses – or are unable to provide factual support for the allegations in their Complaint – Defendants intend to move for dismissal of Plaintiffs' claims.

## II.   PLAINTIFFS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1

Defendants' discovery requests are a study in futility and confusion. At times, the requests are moot and untimely, as Defendants belatedly seek to compel responses to interrogatories concerning issues found to be irrelevant by Judge Gee in prior orders or which are fully briefed and under submission before Judge Gee on Plaintiffs' Motion for Partial Summary Judgment.  But even if Judge Gee departed from multiple prior rulings and ruled against Plaintiffs on the pending Motion for Partial Summary Judgment and even if these matters were not already under submission, Defendants' requests would still be premature because they seek to compel Plaintiffs to respond to questions that Plaintiffs cannot respond to absent *full* discovery from Defendants–discovery that is the subject of Plaintiffs' own motion to compel, which Defendants have tried to delay until after their own motion is heard.  Worse still, Defendants' legally irrelevant requests ask Plaintiffs for information that Defendants can just as easily compile for themselves using information Defendants have in their own possession (and which Plaintiffs do not yet have in theirs).  The requests also ask Plaintiffs to answer confusing and compound hypothetical questions, often about vague legal terms (or, to accept Defendants' self-serving definitions of those terms).  Defendants' interrogatories deserve no responses besides the objections Plaintiffs already served.

Plaintiffs timely objected to the responses, and then participated in a meet and confer discussion on December 6, 2012 to address Defendants' continued

1  pursuit of these discovery requests.[2]  During this discussion, Plaintiffs' counsel
2  explained Plaintiffs' concerns about these requests.  Defendants summarily
3  rejected these arguments, refused to compromise or narrow the requests in any
4  way, and refused to even wait to move to compel until Plaintiffs received the
5  discovery they were waiting for.  Defendants, knowing that Plaintiffs had
6  significant concerns about many of Defendants' discovery positions, suggested that
7  the parties should initiate their motions to compel at the same time.  To this end, on
8  December 14, 2012, Plaintiffs' counsel sent Defendants a proposal to discuss their
9  discovery concerns through an informal conference with the Court, on a binding or
10 non-binding basis, in order to resolve all of these concerns at the same time
11 without burdening the parties and the Court with cross-motions to compel.  Instead
12 of responding to this proposal, and contrary to their own representation that the
13 parties should move to compel at the same time, Defendants suddenly sent
14 Plaintiffs this week-before-Christmas joint stipulation and, since then, have
15 insisted on pushing their motion to compel forward with an urgency that is belied
16 by their months of delay in pursuing these requests.

17          Much of Defendants' arguments are irrelevant bluster.  For one thing,
18 having never moved to dismiss Plaintiffs' complaint or moved for summary
19 judgment on any claim or defense in this action, Defendants now wrongly claim
20 that because Plaintiffs did not respond to their improper questions, they will
21 somehow be entitled to "move for dismissal of Plaintiffs' claims," or that some or
22 all of Plaintiffs' claims should somehow be stricken by this Court.  (*See, e.g.*,
23 Defendants' Introductory Statement, *supra*; Defendants' Contentions Regarding

24 ─────────────────────────
   [2]     Although neither Mr. Steinberg, who is lead counsel for Plaintiffs on this
25 motion, nor Mr. Arulanantham, who has acted as Plaintiffs' lead counsel on some
   other issues in this case, were available on December 6, 2012 for the meet and
26 confer, both Mr. Steinberg and Mr. Arulanantham had discussed the issues in depth
   with the attorneys who were on the call, and, critically, those attorneys had full
27 authority both to represent Plaintiffs' position and respond to any discovery offers
   made by Defendants during that meet and confer.
28

-3-

1  Interrogatory No. 13, *infra*.)  Not so.  If the Court orders Plaintiffs to respond to
2  some version of Defendants' requests, Plaintiffs will, of course, make their best
3  efforts to comply with any such order.  (*See also* Dkt. # 487, at 6-7.)  But beyond
4  the legal deficiencies of these requests, it is Defendants' numerous ongoing
5  discovery abuses—including their disorganized document dump of detainee files,
6  their failure to produce any privilege logs for certain categories of documents, and
7  their failure to produce sufficiently detailed privilege logs (where such logs have
8  even been produced) to explain their widespread privilege withholdings and
9  redactions, and their baseless non-responsiveness redactions—that have made
10 responding to their discovery requests impossible at this time.

11         Defendants pretend that their motion to compel is so urgent that they
12 require a response immediately, before they are even required to remedy their own
13 related discovery failures. (Dkt. # 511-2, at 5-6.)  The Court should look past this
14 distraction.  Defendants spent *months* dragging their feet without even sending a
15 meet and confer letter after receiving Plaintiffs' objections to the discovery that is
16 the subject of the present motion, and then waited until just before the Christmas
17 holiday to initiate this motion to compel.  (Dkt. # 511, at 1-4, 7-8.)

18         Most important, during this lengthy period when Defendants could
19 have met and conferred regarding these discovery responses, they filed
20 supplemental briefing before Judge Gee concerning the impact of Plaintiffs'
21 discovery objections, contending that those objections justified denial of Plaintiffs'
22 pending partial summary judgment motion.  Thus, Defendants' papers before
23 Judge Gee raise precisely the same issue that Defendants' raise here, seeking –
24 apparently – to force this Court to make a ruling that could be inconsistent with
25 Judge Gee's determination on the pending Motion for Partial Summary Judgment
26 or at odds with Judge Gee's prior rulings rejecting Defendants' view of prejudice
27 in this case.  Because Defendants' arguments are under submission with the Court,
28 there is no urgency whatsoever to Defendants' requests, and the Court should not

-4-

resolve Defendants' claims until after allowing Plaintiffs to obtain the information

necessary to respond.

Accordingly, even if the Court holds that any of Defendants' requests

must be answered, no answer should be required until document discovery is

complete and Plaintiffs have an opportunity to review the information they are now

moving to compel from Defendants, along with any additional information

Plaintiffs may compel after reviewing usable, unredacted versions of Defendants'

documents, with the benefit of appropriate privilege logs.

## III.    ISSUES IN DISPUTE

On August 17, 2012, Defendants served Plaintiffs with several

interrogatories related to merits discovery and a corresponding request for

production of documents.  The interrogatories and the responses provided by

Plaintiffs are set forth verbatim below.  Between each interrogatory and response,

Defendants and Plaintiffs separately state their contentions about the sufficiency

(or lack thereof) of the response.

***

**INTERROGATORY NO. 1:**  Identify all members of the Main Class who

Plaintiffs allege have suffered prejudice as a result of not having had counsel

appointed by the Government for them in their immigration proceedings.

**PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

**INTERROGATORY NO. 1 AS PRODUCED TO DEFENDANTS:**

Plaintiffs incorporate their General Objections and objections to definitions

and instructions as set forth above.  While the term "prejudice" is undefined, vague

and ambiguous, for the purpose of this response, Plaintiffs interpret "prejudice" to

mean "injury."  The Court, however has already established the law of the case that

*all* Main Class members have suffered prejudice as a result of not having had

counsel, and therefore this Interrogatory is no longer relevant to any claims or

defenses in this litigation.  *See* August 27, 2012 Minute Order denying Defendants'

-5-

1 | Motion to Amend Or, in the Alternative, Reconsider the Class Certification Order,
2 | at 6 (Dkt. # 455) ("The unnamed class members are *all* subject to a system that
3 | lacks sufficient safeguards to protect their rights.  Without a systemic mechanism
4 | to identify those who are, in fact, mentally incompetent, they are *all* subject to the
5 | same risk of injury that the named Plaintiffs already encountered.  The Court
6 | therefore finds that Plaintiffs have shown that the unnamed class members have
7 | suffered an '*injury in fact.*'") (emphases added).  *See also* November 21, 2011
8 | Order Granting Plaintiffs' Motion for Class Certification at 10-11 (Dkt. # 348)
9 | (confirming class members suffered harm even when they have been released from
10 | custody); Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 398); and
11 | Plaintiffs Reply In Support Of their Motion for Partial Summary Judgment (Dkt. #
12 | 453).  In light of the Courts' rulings in this case, this Interrogatory is equivalent to
13 | requesting that Plaintiffs identify *all* class members.
14 |       To the extent that the Interrogatory relates to an actual issue to be litigated,
15 | Plaintiffs further object to this Interrogatory on the ground that information about
16 | Main Class members is in the Government's exclusive possession, custody, and
17 | control and thus this Interrogatory is posed to Plaintiffs for no apparent reason.
18 | Plaintiffs further object on the ground that pursuant to the Court's order requiring
19 | that the parties notify each other of potential class members, Plaintiffs have already
20 | notified Defendants of class members of whom they are aware, and thus,
21 | Defendants have equal access to these facts.  Plaintiffs further object to this
22 | Interrogatory on the ground that the request is premature in light of the fact that the
23 | Government has thus far not produced any documents such as A-files, medical
24 | records, and records of immigration proceedings responsive to Plaintiffs' discovery
25 | requests post-November 21, 2011, and continues to refuse to do so on that grounds
26 | that it is too burdensome.  (*See* Dkt. # 406.)
27 |       Plaintiffs further object on the ground that it is Defendants' position that the
28 | information sought is not relevant or necessary to the presentation of their case at

-6-

1   this time, or possibly ever.  At the September 7, 2012 hearing on Plaintiffs' Motion

2   for Partial Summary Judgment, Defendants requested and the Court granted a stay

3   of discovery related to the pending motion.  As Defendants admit, these requests

4   relate to that motion.  (*See* Dkt. # 441, at 43 n.18 (requesting that the Court hold

5   motion for partial summary in abeyance pursuant to Rule 56(d) until Defendants

6   receive responses to these interrogatories).)

7          ***

8   **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

9   **INTERROGATORY RESPONSE NO. 1 IS INSUFFICIENT:**

10         Plaintiffs have brought a class action alleging a variety of harms to a class of

11   individuals who "may" be rendered incompetent in immigration proceedings.  *See*

12   *generally* Third Amended Complaint.  Plaintiffs allege that such harms would

13   result from not having had counsel appointed to the class members in their removal

14   proceedings.  Defendants have a right to know the identity of the class members

15   who Plaintiffs believe have been harmed, as well as the specifics of the harm

16   alleged.  *See, e.g.,* Fed. R. Civ. P. 26(b)(1); *Park Vill. Apt. Tenants Ass'n v.*

17   *Mortimer Howard Trust,* 636 F.3d 1150, 1160 (9th Cir. 2011) (explaining that

18   "injunctive relief must be tailored to remedy the *specific harm alleged*" )(emphasis

19   in original).  This information is necessary so that Defendants can assert

20   appropriate defenses to the extent that Plaintiffs can identify particular harms.

21         From the beginning of this lawsuit, Plaintiffs have represented to the Court

22   that "[t]he members of the Plaintiff Class can be readily identified through notice

23   and discovery."  *See* Third Amended Complaint (TAC), Dkt # 333-2, ¶ 149.  Thus,

24   Plaintiffs sought to bring a class action "to individually redress the wrongs suffered

25   by them."  *Id.* at ¶ 151.  With respect to Defendants' failure to provide Plaintiffs

26   with appointed counsel, Plaintiffs alleged to this Court that "Plaintiffs and the

27   Plaintiff Classes have suffered and will imminently suffer irreparable injury as a

28   proximate result of this conduct (of not providing appointed counsel)…"  *Id.* at  ¶¶

-7-

1  160, 163, and 166.  Yet, when Defendants asked Plaintiffs to identify all members

2  of the Main Class who suffered prejudice as a result of not having counsel

3  appointed by the Government in their removal proceedings, Plaintiffs remained

4  silent, but for a litany of excuses for failing to provide the information.  None of

5  the excuses has any merit.

6       As of the date of Defendants' preparation of this Joint Statement,

7  Defendants have produced to Plaintiffs over 250,000 pages of documents in

8  response to Plaintiffs' nearly 300 discovery production requests.  The excuse

9  offered by Plaintiffs -- that the relevant information is solely in the Government's

10  possession -- rings hollow both because of Plaintiffs' allegation in the Complaint

11  that Defendants could identify class members through discovery and because

12  Plaintiffs now have in their possession information nearly identical to the

13  information in the Government's possession.

14       Defendants cannot guess as to who *Plaintiffs allege* have suffered prejudice.

15  This information is in Plaintiffs' sole possession.  For this reason, Plaintiffs must

16  advise Defendants of this information so that Defendants have a reasonable

17  opportunity to redress any prejudice without the need to litigate each particular

18  instance.  For example, in Plaintiffs' Third Amended Complaint, Plaintiffs alleged

19  that "without counsel to assist them, [Plaintiffs suffer the prejudice of being] . . .

20  erroneously deported."  *See* TAC at ¶ 27.  Moreover, in their interrogatory

21  response, Plaintiffs alleged that all class members have suffered prejudice because

22  all have been subject to a system that Plaintiffs find unsatisfactory.  This allegation

23  is without merit and does not reflect the law of this case.  Specifically, the citations

24  provided by Plaintiffs in their interrogatory response are from the Court's

25  determination that the class members generally have *standing*.  This determination

26  is a result of an inquiry completely different from the inquiry as to the identity of

27  all class members who suffered prejudice.  That information – the identity of all

28  class members who suffered prejudice -- remains highly relevant.

1   Plaintiffs seek an injunction in this case which would require the

2   Government "to provide qualifying class members with appointed counsel."  *See*

3   TAC "Prayer for Relief."  In order for Plaintiffs to succeed, they must prove that

4   they meet the standards for the "extraordinary relief" of a permanent injunction.

5   The standard for a permanent injunction is the same as that of a preliminary

6   injunction, with the significant exception that Plaintiffs must show actual success

7   on the merits.  *See Amoco Production Co., v. Village of Gambell, AK*, 480 U.S. 531

8   at 546 n.12 (1987).  To prove their claim at trial, Plaintiffs must establish:  1) that

9   they have actual success on the merits; 2) that they are likely to suffer irreparable

10  harm in the absence of permanent injunctive relief; 3) that the balance of equities

11  tips in their favor, and (4) that an injunction is in the public interest.  *See Winter v.*

12  *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

13  Defendants' discovery is reasonably calculated to discover any harm that

14  Plaintiffs may have endured as this information goes directly to the second prong

15  of the test for a permanent injunction.  This Court has not previously found that all

16  class members have suffered or will suffer irreparable harm such that injunctive

17  relief is merited, and Plaintiffs have failed to provide any evidence of class-wide

18  irreparable harm.  While the Court may have found, during the preliminary

19  injunction litigation, that a few of the Named Plaintiffs suffered irreparable harm

20  Plaintiffs' inadequate discovery responses deprive Defendants of any information

21  indicating that irreparable harm exists that is "generally applicable to the class,"

22  such that class-wide injunctive relief  is appropriate.  *See* Fed. R. Civ. P. 23(b)(2)

23  (Plaintiffs must show that Defendants "acted or refused to act on grounds that

24  apply *generally to the class* so that final injunctive relief . . . is appropriate.")

25  (emphasis added).

26  Plaintiffs must show a "persistent pattern" of individuals being irreparably

27  harmed as a result of Defendants' policies.  The district court's analysis in another

28  class action in the immigration context found that unless there exists a pattern or

-9-

1  practice applicable to the "*class as a whole*, . . . alleged patterns and practices

2  would not be amenable to resolution through [a] single sweeping injunction.

3  *Aguilar v. Immigration and Customs Enforcement*, 2012 WL 1344417 at * 8

4  (S.D.N.Y. 2012) (emphasis in original).  If Plaintiffs can only cite to a few isolated

5  incidents, Plaintiffs' cause of action should be dismissed.  *See, e.g., Allee v.*

6  *Medrano*, 416 U.S. 802, 815 (1974) (finding that "isolated incidents" would not

7  "be cause for the exercise of a federal court's equitable powers.").

8        Thus, the Court, in disposing of this motion to compel, should require

9  Plaintiffs to identify all members of the Main Class who Plaintiffs allege have

10  suffered prejudice as a result of not having had counsel appointed by the

11  Government for them in their immigration proceedings.  To the extent Plaintiffs

12  are unable to identify any such individuals and specify the nature of the harm to

13  them – including any relief the class member would have received with the benefit

14  of counsel -- the causes of action in Plaintiffs' Complaint which seek injunctive

15  relief for appointed counsel should be dismissed.

16        **PLAINTIFFS' RESPONSE:**

17        Defendants' Contentions are legally flawed and do not address the

18  central issues raised by Plaintiffs in their objections and the parties' December 6,

19  2012 meet and confer discussion:

20

21  • As this Court has already ruled, all class members suffer prejudice in
      their immigration proceedings by virtue of being forced to represent

22    themselves while suffering from a mental illness or disability that
      interferes with their ability to represent themselves.  *See* August 27,

23    2012 Minute Order denying Defendants' Motion to Amend Or, in the
      Alternative, Reconsider the Class Certification Order, at 6 (Dkt. #

24    455).  Plaintiffs have already notified Defendants of all class members

25    of whom they are aware (and continue to do so on a bi-weekly basis).
      Accordingly, based upon the rulings Judge Gee has made in this case

26    (and which have never been appealed by the Government),
      Defendants already have this information.

27

28

-10-

- To the extent Defendants seek to pursue a different definition of "prejudice," that legal question is currently before Judge Gee. (*See* Dkt. # 398-1 at 32 n.16; Dkt. # 441 at 28-32; Dkt. # 453 at 19-25.) Judge Gee specifically requested that the parties limit discovery relating to issues under submission with the pending motion for partial summary judgment. Because Defendants have asked Judge Gee to decide the question whether their discovery requests have any legal relevance, it would be premature for this Court to resolve those questions now, and also premature to resolve their related argument that Plaintiffs' claims fail because they did not respond to Defendants' discovery requests.

- Even if this Court determined to depart from Judge Gee's prior Orders, or preemptively rule on the current legal issues raised by Plaintiffs' Motion for Partial Summary Judgment (an "even if" so unlikely to occur as to be risible), Defendants' own discovery failures make it impossible for Plaintiffs to respond to these requests at this time.

- Worse still, this request is pure "make-work." Defendants have access to all the information they are currently requesting and should not try to force Plaintiffs to do their homework for them.

While Defendants disagree, their arguments must be rejected.

*First*, no matter how Defendants try to spin the language of Judge Gee's orders, those orders plainly state that all class members have suffered injury by virtue of the simple fact that there are no safeguards to ensure that they are treated fairly. Judge Gee has made this amply clear. *See, e.g.*, August 27, 2012 Minute Order denying Defendants' Motion to Amend Or, in the Alternative, Reconsider the Class Certification Order, at 6 (Dkt. # 455) ("The unnamed class members are *all* subject to a system that lacks sufficient safeguards to protect their rights. Without a systemic mechanism to identify those who are, in fact, mentally incompetent, they are *all* subject to the same risk of injury that the named Plaintiffs already encountered. The Court therefore finds that Plaintiffs have shown that the unnamed class members have suffered an '*injury in fact.*'") (emphases added). *See also* November 21, 2011 Order Granting Plaintiffs' Motion for Class

-11-

1   Certification at 10-11 (Dkt. # 348) (confirming class members suffered harm even

2   when they have been released from custody).  In view of these orders, Plaintiffs

3   objected that this interrogatory used the word "prejudice"—a vague and undefined

4   term—and Plaintiffs then interpreted it to mean "injury" and, in their objections,

5   pointed Defendants to Judge Gee's orders on this subject.  Defendants never

6   supplied a contrary definition; they claim the two concepts are distinct, but then

7   conflate "prejudice" with "irreparable injury" (which they do not separately

8   define).  *See* Plaintiffs' Contentions Regarding Interrogatory No. 1, *supra*.

9          Given these Orders, Plaintiffs' objection is well supported, as those

10  Orders confirm that all class members suffer injury by virtue of their participation

11  in a system without safeguards, not just "some Named Plaintiffs," as Defendants

12  suggest.  (*E.g.*, Dkt. # 455.)  At base, Plaintiffs and Defendants disagree about the

13  legal question of what it means to show that class members suffer prejudice,

14  whether called by that name or "injury."  Given Plaintiffs' position that all class

15  members suffer prejudice and that Judge Gee has already held as much, Plaintiffs

16  have responded as reasonably to this request as possible under the circumstances

17  by objecting and reminding Defendants that they regularly receive from Plaintiffs a

18  list of class members of whom Plaintiffs are aware, all of whom suffer prejudice by

19  virtue of the fact that the Government has not adopted a system either for

20  identifying which of those individuals has a serious mental disorder or which of

21  them is competent to represent themselves.  There is no legal basis for this Court to

22  overturn, or depart from, Judge Gee's reasoned orders.

23          *Second*, even if the prior Orders did not completely address

24  Defendants' position, the legal issue to which Defendants claim this request is

25  relevant, Plaintiffs' ability to demonstrate class-wide "prejudice" or "irreparable

26  harm" (and whether that is even required) is already under submission before

27  Judge Gee.  Plaintiffs have argued, in connection with their pending motion for

28  partial summary judgment, that they need not satisfy this standard when an

1   injunction is sought to prevent the violation of a federal statute which specifically

2   provides for injunctive relief.  (*See generally* Dkt. # 504 at 1-3; Dkt. # 453 at 20.) [3]

3   Defendants also have repeatedly advised Judge Gee of Plaintiffs' discovery

4   objections, arguing that they justify staying or denying Plaintiffs' motion for

5   partial summary judgment, including by filing an *ex parte* application on Yom

6   Kippur seeking supplemental briefing, by filing that briefing, and by short-

7   circuiting the usual motion to compel process and filing their half of this joint

8   stipulation with Judge Gee.  (*See* Dkts. ## 484, 503-04, 513.)  Yet instead of

9   proceeding in an orderly manner by waiting for Judge Gee's ruling on these issues,

10  Defendants now seek to litigate those same issues on a parallel track here, which

11  has already caused the parties and the Court to waste resources repeatedly arguing

12  over the same issues. [4]  Defendants offer no reason why, having brought these

13  issues to Judge Gee's attention through repeated court filings, they can now go

14  around Judge Gee and seek a ruling from this Court on the same issues at the same

15  time.  This Court need not, and should not, decide these issues now because Judge

16  Gee is already considering them.

17          *Third*, the "make-work" aspect of this Motion for Plaintiffs and for

18  this Court could not be more clear, as *Defendants requested that discovery be*

19  *stayed while the motion for partial summary judgment is pending*.  (*See* Dkt. # 485,

20  at 69-70.)  In fact, Judge Gee unambiguously requested that the parties limit

21  discovery relating to issues under submission with the pending motion for

22  summary judgment.  (Dkt. # 485, at 74.)  As Defendants admit, nearly all of these

---

23

[3]    Even if Plaintiffs are required to meet this standard on any of their claims,
24  which Plaintiffs dispute, they have amply done so here.  Defendants' motion
    ignores the many examples provided by Plaintiffs in connection with the motion
25  for partial summary judgment, pending before Judge Gee.  (*See, e.g.*, Dkt. # 453 at
    19-25; Dkt. # 504.)

26
[4]    Defendants previously made this same argument in seeking a discovery stay
27  while their motion to reconsider the Court's class certification order (Dkt. # 389)
    was pending before Judge Gee.  (Dkt. # 440.)

28

-13-

1   requests relate to that motion.  (*See* Dkt. # 441, at 43 n.18; Dkt. # 504.)  Given

2   Judge Gee's request that the parties limit discovery relating to the issues under

3   submission, it is peculiar that Defendants are now pursuing a motion on discovery

4   where they requested a stay.

5            *Fourth*, contrary to Defendants' misleading and utterly irrelevant

6   recitation of the number of pages of discovery they have produced to date (as if

7   this somehow justifies their irrelevant requests), Plaintiffs do not actually have the

8   information required to respond to this request, nor is there any suggestion that

9   Plaintiffs *could* have access to this information, which is entirely in the hands of

10  Defendants.  Defendants' tactical page-counting – which includes thousands of

11  (also incoherent) pages that relate solely to the numerosity of the class – should not

12  distract the Court from Defendants' discovery abuses that have prevented Plaintiffs

13  from responding to their requests.  In fact, these issues have already been the

14  subject of one successful motion to compel by Plaintiffs (Dkt. # 481), granted the

15  same day Plaintiffs served these disputed discovery objections, and Plaintiffs are in

16  the process of moving to compel yet again in order to obtain the information they

17  should have received based on this Court's prior ruling in their favor.  Although

18  Defendants argue that Plaintiffs now have information that is "almost identical" to

19  the information Defendants have, that is simply wrong – unless Defendants' own

20  copies of A-files and other documents are riddled with unexplained redactions for

21  privilege and non-responsiveness and are kept in various shuffled piles, like those

22  Plaintiffs have received in discovery. (*See* Exhs. I, J, K.)  The fact is that Plaintiffs

23  do not have the same information Defendants have; Defendants have made sure of

24  that; and Plaintiffs are now initiating their own motion to compel to remedy these

25  failures, which will be heard on the same day as this motion.  (Dkt. # 518.)

26  Accordingly, absent the relief requested in Plaintiffs' own motion to compel—

27  including the reproduction of A-files in an organized format, the provision of

28  missing privilege logs and the supplementation of deficient logs, and the

-14-

1   unredaction of purportedly "nonresponsive" materials–Plaintiffs cannot undertake

2   the massive project of reviewing these documents to even consider responding to

3   Defendants' questions.

4          *Finally*, unlike Plaintiffs, Defendants have within their own files

5   (1) information about every class member Plaintiffs have ever brought to their

6   attention and (2) information about the harm suffered by those class members.

7   Defendants have obtained this information through numerous court filings and

8   motions, along with regular advisal notices and bi-weekly reporting of class

9   members.  (*E.g.*, Dkts. #453; 504, 509; Exhs. B, C.)  Defendants also have access

10  to full, unredacted, and organized versions of A-files and other records for every

11  class member, enabling them to do further research on any particular individual—

12  which Plaintiffs cannot do.  Although Defendants have access to this information

13  themselves and can generate responses to their questions themselves, Defendants

14  are essentially asking Plaintiffs to do their homework for them and generate a list

15  of this information for Defendants, whenever Defendants demand it.  But

16  Defendants set forth no authority suggesting that they can force Plaintiffs to

17  provide them with information that they have themselves.  Moreover, even if there

18  were such authority, it would be premature to require Plaintiffs to separate

19  Defendants' inappropriately shuffled production of A-files and then review them in

20  piecemeal fashion, redactions and all, without the benefit of appropriate privilege

21  logs, in order to respond to these interrogatories.  Rather, to the extent the Court

22  requires any responses of Plaintiffs, Plaintiffs should be permitted to wait until

23  after document discovery is complete and they have obtained and had a chance to

24  review discovery likely containing the information Defendants seek (such as

25  usable, unredacted versions of A-files).  *See, e.g.*, *Gen-Probe Inc.* v. *Bechton,*

26  *Dickinson & Co.*, No. 09cv2319 BEN (NLS), 2010 U.S. Dist. LEXIS 49436, at

27  *3-5 (S.D. Cal. May 19, 2010) (denying plaintiffs' motion to compel response to

28

1   interrogatory where defendant could not respond to the interrogatory without

2   obtaining discovery from plaintiff).

3           Accordingly, although Defendants' motion should be denied in its

4   entirety, if the Court is inclined to grant it in any respect, it should at least give

5   Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

6   until after the close of document discovery, given that Defendants' discovery

7   failures prevent Plaintiffs from responding to these questions at this stage of the

8   litigation.  Defendants will not be prejudiced by a delay in Plaintiffs' responding,

9   as they delayed months before even attempting to meet and confer, have access to

10  all the information they currently seek and have already argued these issues before

11  Judge Gee.  (Dkt. ## 484, 513.)

12          ***

13  **INTERROGATORY NO. 2:**  For each member of the Main Class

14  identified in response to Interrogatory No. 1, please specify in detail the prejudice

15  the class member suffered as a result of not having Government appointed counsel,

16  including, but not limited to an identification of any relief Plaintiffs allege the class

17  member would have received if s/he had Government appointed counsel to

18  represent him or her in immigration proceedings.

19  **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

20  **INTERROGATORY NO. 2 AS PRODUCED TO DEFENDANTS:**

21          Subject to and without waiving their General and Specific Objections,

22  Plaintiffs hereby incorporate their Response to Interrogatory No. 1.  Plaintiffs

23  further object to this Interrogatory in that it calls for legal conclusions that the

24  Court has already ruled on.  While the term "prejudice" is undefined, vague and

25  ambiguous, for the purpose of this response, Plaintiffs interpret "prejudice" to

26  mean "injury."  The Court, however has already established the law of the case that

27  *all* Main Class members have suffered prejudice as a result of not having had

28  counsel, and therefore this Interrogatory is no longer relevant to any claims or

-16-

1    defenses in this litigation.  *See* August 27, 2012 Minute Order denying Defendants'
2    Motion to Amend Or, in the Alternative, Reconsider the Class Certification Order,
3    at 6 (Dkt. # 455) ("The unnamed class members are *all* subject to a system that
4    lacks sufficient safeguards to protect their rights.  Without a systemic mechanism
5    to identify those who are, in fact, mentally incompetent, they are *all* subject to the
6    same risk of injury that the named Plaintiffs already encountered.  The Court
7    therefore finds that Plaintiffs have shown that the unnamed class members have
8    suffered an *'injury in fact.'*") (emphases added).  *See also* November 21, 2011
9    Order Granting Plaintiffs' Motion for Class Certification at 10-11 (Dkt. # 348)
10   (confirming class members suffered harm even when they have been released from
11   custody); Plaintiffs' Motion for Partial Summary Judgment (DKT. # 398); and
12   Plaintiffs Reply In Support Of their Motion for Partial Summary Judgment (Dkt. #
13   453).  Plaintiffs further object to this Interrogatory on the grounds that it calls for
14   speculation and poses a hypothetical question.
15            ***
16   **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**
17   **INTERROGATORY RESPONSE NO. 2 IS INSUFFICIENT:**
18            Plaintiffs have brought a class action alleging a variety of harms to a class of
19   individuals who "may" be rendered incompetent in immigration proceedings.  *See*
20   *generally* TAC.  Plaintiffs allege that such harms would result from not having had
21   counsel appointed to the class members in their removal proceedings.  Defendants
22   have a right to know the identity of the class members who Plaintiffs believe have
23   been harmed, as well as the specifics of the harm alleged.  *See, e.g.,* Fed. R. Civ. P.
24   26(b)(1); *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150,
25   1160 (9th Cir. 2011) (explaining that "injunctive relief must be tailored to remedy
26   the *specific harm alleged*" )(emphasis in original).  This information is necessary
27   so that Defendants can assert appropriate defenses to the extent that Plaintiffs can
28   identify particular harms.

-17-

1    From the beginning of this lawsuit, Plaintiffs have represented to the Court

2    that "[t]he members of the Plaintiff Class can be readily identified through notice

3    and discovery."  *See* TAC, Dkt # 333-2, at ¶ 149.  Thus, Plaintiffs sought to bring a

4    class action "to individually redress the wrongs suffered by them."  *Id.* at

5    paragraph 151.  With respect to Defendants' failure to provide Plaintiffs with

6    appointed counsel, Plaintiffs alleged to this Court that "Plaintiffs and the Plaintiff

7    Classes have suffered and will imminently suffer irreparable injury as a proximate

8    result of this conduct (of not providing appointed counsel)..." *Id.* at ¶¶ 160, 163,

9    and 166.  Yet, when Defendants asked Plaintiffs to identify all members of the

10   Main Class who suffered prejudice as a result of not having counsel appointed by

11   the Government in their removal proceedings, Plaintiffs remained silent, but for a

12   litany of excuses for failing to provide the information.  None of the excuses has

13   any merit.

14   As of the date of Defendants' preparation of this Joint Statement,

15   Defendants have produced to Plaintiffs over 250,000 pages of documents in

16   response to Plaintiffs' nearly 300 discovery production requests.  The excuse

17   offered by Plaintiffs -- that the relevant information is solely in the Government's

18   possession -- rings hollow both because of Plaintiffs' allegation in the Complaint

19   that Defendants could identify class members through discovery and because

20   Plaintiffs now have in their possession information nearly identical to the

21   information in the Government's possession.

22   Defendants cannot guess as to who Plaintiffs allege have suffered prejudice.

23   This information is in Plaintiffs' sole possession.  For this reason, Plaintiffs must

24   advise Defendants of this information so that Defendants have a reasonable

25   opportunity to redress any prejudice without the need to litigate each particular

26   instance.  For example, in Plaintiffs' Third Amended Complaint, Plaintiffs alleged

27   that "without counsel to assist them, [Plaintiffs suffer the prejudice of being] . . .

28   erroneously deported."  *See* TAC at ¶ 27.  Moreover, in their interrogatory

-18-

1   response, Plaintiffs alleged that all class members have suffered prejudice because

2   all have been subject to a system that Plaintiffs find unsatisfactory.  This allegation

3   is without merit and does not reflect the law of this case.  Specifically, the citations

4   provided by Plaintiffs in their interrogatory response are from the Court's

5   determination that the class members generally have *standing*.  This determination

6   is the result of an inquiry completely different from the inquiry as to the identity of

7   all class members who suffered prejudice.  That information – the identity of all

8   class members who suffered prejudice – remains highly relevant.

9        Plaintiffs seek an injunction in this case which would require the

10  Government "to provide qualifying class members with appointed counsel."  *See*

11  TAC, "Prayer for Relief."  In order for Plaintiffs to succeed, they must prove that

12  they meet the standards for the "extraordinary relief" of a permanent injunction.

13  The standard for a permanent injunction is the same as that of a preliminary

14  injunction, with the significant exception that Plaintiffs must show actual success

15  on the merits.  *See Amoco Production Co.,* 480 U.S. at 546  n.12.  To prove their

16  claim at trial, Plaintiffs must establish:  1) that they have actual success on the

17  merits; 2) that they are likely to suffer irreparable harm in the absence of

18  permanent injunctive relief; 3) that the balance of equities tips in their favor, and

19  (4) that an injunction is in the public interest.  *See Winter v. Natural Resources*

20  *Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

21        Defendants' discovery is reasonably calculated to discover any harm that

22  Plaintiffs may have endured as this information goes directly to the second prong

23  of the test for a permanent injunction.  This Court has not previously found that all

24  class members have suffered or will suffer irreparable harm such that injunctive

25  relief is merited, and Plaintiffs have failed to provide any evidence of class-wide

26  irreparable harm.  While the Court may have found during the preliminary

27  injunction litigation that a few of the Named Plaintiffs suffered irreparable harm

28  Plaintiffs' inadequate discovery responses deprive Defendants of any information

-19-

1   indicating that irreparable harm exists that is "generally applicable to the class"

2   such that class-wide injunctive relief is appropriate. *See* Fed. R. Civ. P. 23(b)(2)

3   (Plaintiffs must show that Defendants "acted or refused to act on grounds that

4   apply generally to the class so that final injunctive relief . . . is appropriate.")

5   (emphasis added).

6        Plaintiffs must show a "persistent pattern" of individuals being irreparably

7   harmed as a result of Defendants' policies.  The district court's analysis in another

8   class action in the immigration context found that unless there exists a pattern or

9   practice applicable to the "*class as a whole,* . . . alleged patterns and practices

10  would not be amenable to resolution through [a] single sweeping injunction.

11  *Aguilar*, 2012 WL 1344417 at * 8 (S.D.N.Y. 2012) (emphasis in original).  If

12  Plaintiffs can only cite to a few isolated incidents of harm, Plaintiffs' cause of

13  action should be dismissed.  *See, e.g., Allee*, 416 U.S. at 815 (finding that "isolated

14  incidents" would not "be cause for the exercise of a federal court's equitable

15  powers.").

16       Thus, the Court, in disposing of this motion to compel, should require

17  Plaintiffs to identify all members of the Main Class who Plaintiffs allege have

18  suffered prejudice as a result of not having had counsel appointed by the

19  Government for them in their immigration proceedings.  To the extent Plaintiffs

20  are unable identify any such individuals and specify the nature of the harm to them

21  – including any relief the class member would have received with the benefit of

22  counsel -- the causes of action in Plaintiffs' Complaint which seek injunctive relief

23  for appointed counsel should be dismissed.

24       **PLAINTIFFS' RESPONSE:**

25       Plaintiffs incorporate[5] their Response to Defendants' Contentions

26  regarding Interrogatory No. 1, as this interrogatory is objectionable for the same

27  _____

28  [5]     Instead of repeatedly reproducing the same or similar arguments as
    Defendants have done in their portion of this Joint Stipulation, Plaintiffs will

-20-

1  reasons.  Again, two separate Orders issued by Judge Gee have established the lack
2  of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to the
3  extent that the Court's prior orders do not settle the legal question, the question of
4  prejudice raised by Defendants is currently under submission in connection with
5  Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,
6  441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further, Defendants already have
7  answers to this Interrogatory, using the legal definitions found appropriate by
8  Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal
9  letters.  (*See, e.g.*, Exhs. B, C.)  Moreover, Defendants' Motion violates Judge
10  Gee's admonition not to pursue discovery issues connected to the pending Motion
11  for Partial Summary Judgment.  And finally, Defendants have access to the
12  information that they seek and have deliberately interfered with Plaintiffs' ability
13  to respond, assuming such an Order were forthcoming, by virtue of their redactions
14  and "shuffling" of class members' files.

15       But, this Interrogatory suffers from a further flaw.  Defendants request
16  that Plaintiffs "play out" the entire immigration proceedings for each class member
17  to determine what might happen *if* a detained and legally incompetent immigrant
18  represented himself or herself, and contrast it to what might happen if some lawyer
19  represented him or her.  Putting aside the sheer magnitude of such an enterprise
20  for, literally, hundreds of class members, merely stating the exercise that
21  Defendants request Plaintiffs to engage in reveals the Interrogatory's many flaws.
22  As Plaintiffs have also objected, some of Defendants' requests, like this one,
23  improperly pose hypothetical questions and require Plaintiffs to speculate in order
24  to attempt to answer.  (To answer this Interrogatory, Plaintiffs would be required to
25  speculate about, among other things:  (i) whether the mentally ill immigrant is able
26
27  incorporate by reference certain of their Responses to Defendants' Contentions, where appropriate.
28

-21-

to find witnesses to help pursue his or her defense;  (ii) whether the Immigration Judge would provide some leeway to a mentally ill immigrant in presenting his or her case;  (iii)  whether a class member (perhaps suffering from delusions) might actually be able to elicit information favorable to his or her case at a hearing;  (iv) whether the mental illness of an immigrant would affect the legal arguments pursued;  and (v) whether an actual attorney assigned to the case would achieve a different result or pursue the case differently.)  Because the Interrogatory is so flawed, Defendants do not even address that objection.  But Defendants' request plainly requires Plaintiffs to speculate about a hypothetical situation and identify what "prejudice" (an undefined term) class members suffered, including "any relief Plaintiffs allege the class member would have received if s/he had Government appointed counsel to represent him or her in immigration proceedings."  To put it another way, for numerous class members, each with unknown, hypothetical Government-appointed counsel, for whom Plaintiffs may not have an A-file at all but certainly do not have a usable A-file, suffering from unknown mental disabilities and with immigration proceedings pending before an unknown immigration judge who may have *discretion* to order various forms of relief, Plaintiffs are being asked to identify what relief that person would have received. There is no reason why Plaintiffs should be required to engage in this pointless exercise.  *Haggarty* v. *Wells Fargo Bank, N.A.*, No. 10-2416 CRB (JSC), 2012 U.S. Dist. LEXIS 133375, at *7 (N.D. Cal. Sep. 18, 2012) (denying motion to compel response to "improper hypothetical"); *Anderson* v. *Hansen*, No. 09 Civ. 1924 LJO-MJS (PC), 2012 U.S. Dist. LEXIS 131010, at *17-20 (E.D. Cal. Sep. 13, 2012) (denying motion to compel where interrogatory posed hypothetical questions and required speculation); *Williams* v. *Dial*, No. Civ. S-06-2381 FCD CKD P, 2011 U.S. Dist. LEXIS 137532, at * 6 (E.D. Cal. Nov. 29, 2011) (denying motion to compel where plaintiff was "asking for a medical opinion based on a bare-bones

-22-

1    hypothetical, absent the patient-specific facts that would form the basis of an actual

2    medical opinion.").

3            Accordingly, Defendants' motion should be denied in its entirety.  But

4    if the Court is inclined to grant this motion in any respect, it should at least give

5    Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

6    until after the close of document discovery, given that Defendants' discovery

7    failures prevent Plaintiffs from responding to these questions at this stage of the

8    litigation.

9            ***

10   **INTERROGATORY NO. 3**:  Identify all members of Subclass One who

11   Plaintiffs allege have suffered prejudice as a result of not having had counsel

12   appointed by the Government for them in their immigration proceedings.

13   **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

14   **INTERROGATORY NO. 3 AS PRODUCED TO DEFENDANTS:**

15           Plaintiffs incorporate their General Objections and objections to definitions

16   and instructions as set forth above.  While the term "prejudice" is undefined, vague

17   and ambiguous, for the purpose of this response, Plaintiffs interpret "prejudice" to

18   mean "injury."  The Court, however has already established the law of the case that

19   *all* Main Class members (which includes Subclass One members) have suffered

20   prejudice as a result of not having had counsel, and therefore this Interrogatory is

21   no longer relevant to any claims or defenses in this litigation.  *See* August 27, 2012

22   Minute Order denying Defendants' Motion to Amend Or, in the Alternative,

23   Reconsider the Class Certification Order, at 6 (Dkt. # 455) ("The unnamed class

24   members are *all*  subject to a system that lacks sufficient safeguards to protect their

25   rights.  Without a systemic mechanism to identify those who are, in fact, mentally

26   incompetent, they are *all* subject to the same risk of injury that the named Plaintiffs

27   already encountered.  The Court therefore finds that Plaintiffs have shown that the

28   unnamed class members have suffered an *'injury in fact.'*") (emphases added).  *See*

-23-

1   *also* November 21, 2011 Order Granting Plaintiffs' Motion for Class Certification

2   at 10-11 (Dkt. # 348) (confirming class members suffered harm even when they

3   have been released from custody); Plaintiffs' Motion for Partial Summary

4   Judgment (DKT. # 398); and Plaintiffs Reply In Support Of their Motion for

5   Partial Summary Judgment (Dkt. # 453).  In light of the Courts' rulings in this

6   case, this Interrogatory is equivalent to requesting that Plaintiffs identify *all*

7   Subclass One members.

8          To the extent that the Interrogatory relates to an actual issue to be litigated,

9   Plaintiffs further object to this Interrogatory on the ground that information about

10  Subclass One members is in the Government's exclusive possession, custody, and

11  control and thus this Interrogatory is posed to Plaintiffs for no apparent reason.

12  Plaintiffs further object on the ground that pursuant to the Court's order requiring

13  that the parties notify each other of potential class members, Plaintiffs have already

14  notified Defendants of Subclass One members of whom they are aware, and thus,

15  Defendants have equal access to these facts.  Plaintiffs further object to this

16  Interrogatory on the ground that the request is premature in light of the fact that the

17  Government has thus far not produced any documents such as A-files, medical

18  records, and records of immigration proceedings responsive to Plaintiffs' discovery

19  requests post-November 21, 2011, and continues to refuse to do so on that grounds

20  that it is too burdensome.  (*See* Dkt. # 406.)

21         Plaintiffs further object on the ground that it is Defendants' position that the

22  information sought is not relevant or necessary to the presentation of their case at

23  this time, or possibly ever.  At the September 7, 2012 hearing on Plaintiffs' Motion

24  for Partial Summary Judgment, Defendants requested and the Court granted a stay

25  of discovery related to the pending motion.  As Defendants admit, these requests

26  relate to that motion.  (*See* Dkt. # 441, at 43 n.18 (requesting that the Court hold

27  motion for partial summary in abeyance pursuant to Rule 56(d) until Defendants

28  receive responses to these interrogatories).)

-24-

1    ***

2    **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

3    **INTERROGATORY RESPONSE NO. 3 IS INSUFFICIENT:**

4         Plaintiffs have brought a class action alleging a variety of harms to a class of

5    individuals who "may" be rendered incompetent in immigration proceedings.  *See*

6    *generally* TAC.  Plaintiffs allege that such harms would result from not having had

7    counsel appointed to the class members in their removal proceedings.  Defendants

8    have a right to know the identity of the Subclass One members who Plaintiffs

9    believe have been harmed, as well as the specifics of the harm alleged.  *See, e.g.,*

10   Fed. R. Civ. P. 26(b)(1); *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust,*

11   636 F.3d 1150, 1160 (9th Cir. 2011) (explaining that "injunctive relief must be

12   tailored to remedy the *specific harm alleged*" )(emphasis in original).  This

13   information is necessary so that Defendants can assert appropriate defenses to the

14   extent that Plaintiffs can identify particular harms.

15        From the beginning of this lawsuit, Plaintiffs have represented to the Court

16   that "[t]he members of the Plaintiff Class can be readily identified through notice

17   and discovery."  *See* TAC, Dkt. # 333-2, ¶ 149.  Thus, Plaintiffs sought to bring a

18   class action "to individually redress the wrongs suffered by them."  *Id.* at ¶ 151.

19   With respect to Defendants' failure to provide Plaintiffs with appointed counsel,

20   Plaintiffs alleged to this Court that, "Plaintiffs and the Plaintiff Classes have

21   suffered and will imminently suffer irreparable injury as a proximate result of this

22   conduct (of not providing appointed counsel)…"  *Id.* at ¶¶ 160, 163, and 166.  Yet,

23   when Defendants asked Plaintiffs to identify all members of Subclass One who

24   suffered prejudice as a result of not having counsel appointed by the Government

25   in their removal proceedings, Plaintiffs remained silent, but for a litany of excuses

26   for failing to provide the information.  None of the excuses has any merit.

27        As of the date of Defendants' preparation of this Joint Statement,

28   Defendants have produced to Plaintiffs over 250,000 pages of documents in

-25-

1   response to Plaintiffs' nearly 300 discovery production requests.  The excuse

2   offered by Plaintiffs -- that the relevant information is solely in the Government's

3   possession --  rings hollow both because of Plaintiffs' allegation in the Complaint

4   that Defendants could identify class members through discovery and because

5   Plaintiffs now have in their possession information nearly identical to the

6   information in the Government's possession.

7          Defendants cannot guess as to who Plaintiffs allege have suffered prejudice.

8   This information is in Plaintiffs' sole possession.  For this reason, Plaintiffs must

9   advise Defendants of this information so that Defendants have a reasonable

10  opportunity to redress any prejudice without the need to litigate each particular

11  instance.  For example, in Plaintiffs' Third Amended Complaint, Plaintiffs alleged

12  that "without counsel to assist them, [Plaintiffs suffer the prejudice of being] . . .

13  erroneously deported."  *See* TAC at ¶ 27.  Moreover, in their interrogatory

14  response Plaintiffs alleged that all class members have suffered prejudice because

15  all have been subject to a system that Plaintiffs find unsatisfactory.  This allegation

16  is without merit and does not reflect the law of this case.  Specifically, the citations

17  provided by Plaintiffs in their interrogatory response are from the Court's

18  determination that the class members generally have *standing*.  This determination

19  is the result of an inquiry completely different from the inquiry as to the identity of

20  all class members who suffered prejudice.  That information – the identity of all

21  class members who suffered prejudice – remains highly relevant.

22         Plaintiffs seek an injunction in this case which would require the

23  Government "to provide qualifying class members with appointed counsel."  *See*

24  TAC, "Prayer for Relief."  This includes Subclass One members.  In order for

25  Plaintiffs to succeed, they must prove that they meet the standards for the

26  "extraordinary relief" of a permanent injunction.  The standard for a permanent

27  injunction is the same as that of a preliminary injunction, with the significant

28  exception that Plaintiffs must show actual success on the merits.  *See Amoco*

-26-

1   *Production Co.*, 480 U.S. at 546 n.12.  To prove their claim at trial, Plaintiffs must

2   establish:  1) that they have actual success on the merits; 2) that they are likely to

3   suffer irreparable harm in the absence of permanent injunctive relief; 3) that the

4   balance of equities tips in their favor, and (4) that an injunction is in the public

5   interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20

6   (2008).

7         Defendants' discovery is reasonably calculated to discover any harm that

8   Plaintiffs may have endured as this information goes directly to the second prong

9   of the test for a permanent injunction.  This Court has not previously found that all

10  class members have suffered or will suffer irreparable harm such that injunctive

11  relief is merited, and Plaintiffs have failed to provide any evidence of class-wide

12  irreparable harm.  While the Court may have found during the preliminary

13  injunction litigation that a few of the Named Plaintiffs suffered irreparable harm,

14  Plaintiffs' inadequate discovery responses deprive Defendants of any information

15  indicating that irreparable harm exists that is "generally applicable to the class"

16  such that class-wide injunctive relief is appropriate.  *See* Fed. R. Civ. P. 23(b)(2)

17  (Plaintiffs must show that Defendants "acted or refused to act on grounds that

18  apply generally to the class so that final injunctive relief . . . is appropriate.")

19  (emphasis added).

20        Plaintiffs must show a "persistent pattern" of individuals being irreparably

21  harmed as a result of Defendants' policies.  The district court's analysis in another

22  class action in the immigration context found that unless there exists a pattern or

23  practice applicable to the "*class as a whole*, . . . alleged patterns and practices

24  would not be amenable to resolution through [a] single sweeping injunction.

25  *Aguilar v. Immigration and Customs Enforcement*, 2012 WL 1344417 at * 8

26  (S.D.N.Y. 2012) (emphasis in original).  If Plaintiffs can only cite to a few isolated

27  incidents of harm, Plaintiffs' cause of action should be dismissed.  *See, e.g., Allee*,

28

-27-

1  416 U.S. at 815 (finding that "isolated incidents" would not "be cause for the

2  exercise of a federal court's equitable powers.").

3         Thus, the Court, in disposing of this motion to compel, should require

4  Plaintiffs to identify all members of Subclass One who Plaintiffs alleged suffered

5  prejudice as a result of not having had counsel appointed by the Government for

6  them in their immigration proceedings.  To the extent Plaintiffs are unable to

7  identify any such individuals and specify the nature of the harm to them –

8  including any relief the Subclass One member would have received with the

9  benefit of counsel -- the causes of action in Plaintiffs' Complaint which seek

10 injunctive relief for appointed counsel should be dismissed.

11       **PLAINTIFFS' RESPONSE:**

12             Plaintiffs' incorporate their Response to Defendants' Contentions

13 regarding Interrogatory No. 1 and No. 2, as this interrogatory is objectionable for

14 the same reasons.  Again, two separate Orders issued by Judge Gee have

15 established the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)

16 Further, to the extent that the Court's prior orders do not settle the legal question,

17 the question of prejudice raised by Defendants is currently under submission in

18 connection with Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ##

19 398-1 at 32 n.16, 441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further,

20 Defendants already have answers to this Interrogatory, using the legal definitions

21 found appropriate by Judge Gee, by virtue of Plaintiffs' providing of class

22 members' names and advisal letters.   Moreover, Defendants' Motion violates

23 Judge Gee's admonition not to pursue discovery issues connected to the pending

24 Motion for Partial Summary Judgment.  And finally, Defendants have access to the

25 information that they seek and have deliberately interfered with Plaintiffs' ability

26 to respond, assuming such an Order were forthcoming, by virtue of their redactions

27 and "shuffling" of class members' files.

28

-28-

1    Accordingly, Defendants' motion should be denied in its entirety.  But

2    if the Court is inclined to grant this motion in any respect, it should at least give

3    Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

4    until after the close of document discovery, given that Defendants' discovery

5    failures prevent Plaintiffs from responding to these questions at this stage of the

6    litigation.

7    ***

8    **INTERROGATORY NO. 4:**  For each member of Subclass One identified

9    in response to Interrogatory No. 3, please specify in detail the prejudice the

10   Subclass One member suffered as a result of not having had counsel appointed by

11   the Government for them in their immigration proceedings, including, but not

12   limited to an identification of any relief Plaintiffs allege the Subclass one member

13   would have received if s/he had Government appointed counsel to represent him or

14   her in immigration proceedings.

15   **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

16   **INTERROGATORY NO. 4 AS PRODUCED TO DEFENDANTS:**

17   Subject to and without waiving their General and Specific Objections,

18   Plaintiffs hereby incorporate their Response to Interrogatory No. 3.  Moreover,

19   Plaintiffs further object to this Interrogatory in that it calls for speculation, poses a

20   hypothetical question and calls for legal conclusions that the Court has already

21   ruled on.

22   Plaintiffs further object to this Interrogatory on the grounds that the term

23   "prejudice" is undefined, vague and ambiguous.  For the purpose of this response,

24   Plaintiffs interpret "prejudice" to mean "injury."  The Court, however has already

25   established the law of the case that *all* Main Class members (which includes

26   Subclass One members) have suffered prejudice as a result of not having had

27   counsel, and therefore this Interrogatory is no longer relevant to any claims or

28   defenses in this litigation.  *See* August 27, 2012 Minute Order denying Defendants'

-29-

1   Motion to Amend Or, in the Alternative, Reconsider the Class Certification Order,
2   at 6 (Dkt. # 455) ("The unnamed class members are *all* subject to a system that
3   lacks sufficient safeguards to protect their rights.  Without a systemic mechanism
4   to identify those who are, in fact, mentally incompetent, they are *all* subject to the
5   same risk of injury that the named Plaintiffs already encountered.  The Court
6   therefore finds that Plaintiffs have shown that the unnamed class members have
7   suffered an '*injury in fact*.'") (emphases added).  *See also* November 21, 2011
8   Order Granting Plaintiffs' Motion for Class Certification at 10-11 (Dkt. # 348)
9   (confirming class members suffered harm even when they have been released from
10  custody); Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 398); and
11  Plaintiffs Reply In Support Of their Motion for Partial Summary Judgment (Dkt. #
12  453).  In light of the Courts' rulings in this case, this Interrogatory is equivalent to
13  requesting that Plaintiffs identify *all* Subclass One members.
14          ***
15  **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**
16  **INTERROGATORY RESPONSE NO. 4 IS INSUFFICIENT:**
17          Plaintiffs have brought a class action alleging a variety of harms to a class of
18  individuals who "may" be rendered incompetent in immigration proceedings.  *See*
19  *generally*¸ Third Amended Complaint.  Plaintiffs allege that such harms would
20  result from not having had counsel appointed to Subclass One members in their
21  removal proceedings.  Defendants have a right to know the identity of the Subclass
22  One members who Plaintiffs believe have been harmed, as well as the specifics of
23  the harm alleged.  *See, e.g.,* Fed. R. Civ. P. 26(b)(1); *Park Vill. Apt. Tenants Ass'n*
24  *v. Mortimer Howard Trust,* 636 F.3d 1150, 1160 (9th Cir. 2011) (explaining that
25  "injunctive relief must be tailored to remedy the *specific harm alleged*" )(emphasis
26  in original).  This information is necessary so that Defendants can assert
27  appropriate defenses to the extent that Plaintiffs can identify particular harms.
28

-30-

1    From the beginning of this lawsuit, Plaintiffs have represented to the Court
2    that, "The members of the Plaintiff Class can be readily identified through notice
3    and discovery."  *See* Third Amended Complaint (TAC), Dkt # 333-2, paragraph
4    149.  Thus, Plaintiffs sought to bring a class action "to individually redress the
5    wrongs suffered by them."  *Id.* at paragraph 151.  With respect to Defendants'
6    failure to provide Plaintiffs with appointed counsel, Plaintiffs alleged to this Court
7    that, "Plaintiffs and the Plaintiff Classes have suffered and will imminently suffer
8    irreparable injury as a proximate result of this conduct (of not providing appointed
9    counsel)…"  *Id.* at paragraphs 160, 163, and 166.  Yet, when Defendants asked
10   Plaintiffs to identify all members of Subclass One who suffered prejudice as a
11   result of not having counsel appointed by the Government in their removal
12   proceedings, Plaintiffs remained silent, but for a litany of excuses for failing to
13   provide the information.  None of the excuses have any merit.

14   As of the date of Defendants' preparation of this Joint Statement,
15   Defendants have produced to Plaintiffs over 250,000 pages of documents in
16   response to Plaintiffs' nearly 300 discovery production requests.  The excuse
17   offered by Plaintiffs -- that the relevant information is solely in the Government's
18   possession -- rings hollow both because of Plaintiffs' allegation in the Complaint
19   that Defendants could identify class members through discovery and because
20   Plaintiffs now have in their possession information nearly identical to the
21   information in the Government's possession.

22   Defendants cannot guess as to who Plaintiffs allege have suffered prejudice.
23   This information is in Plaintiffs' sole possession.  For this reason, Plaintiffs must
24   advise Defendants of this information so that Defendants have a reasonable
25   opportunity to redress any prejudice without the need to litigate each particular
26   instance.  For example, in Plaintiffs' Third Amended Complaint, Plaintiffs alleged
27   that "without counsel to assist them, [Plaintiffs suffer the prejudice of being] . . .
28   erroneously deported."  *See* TAC at paragraph 27.  Moreover, in their interrogatory

-31-

1    response, Plaintiffs alleged that all class members have suffered prejudice because
2    all have been subject to a system that Plaintiffs find unsatisfactory.  This allegation
3    is without merit and does not reflect the law of this case.  Specifically, the citations
4    provided by Plaintiffs in their interrogatory response are from the Court's
5    determination that the class members generally have *standing*.  This determination
6    is the result of an inquiry completely different from the inquiry as to the identity of
7    all class members who suffered prejudice.  That information – the identity of all
8    class members who suffered prejudice – remains highly relevant.

9        Plaintiffs seek an injunction in this case which would require the
10   Government "to provide qualifying class members with appointed counsel."  *See*
11   TAC at Prayer for Relief.  This includes Subclass One members.  In order for
12   Plaintiffs to succeed, they must prove that they meet the standards for the
13   "extraordinary relief" of a permanent injunction.  The standard for a permanent
14   injunction is the same as that of a preliminary injunction, with the significant
15   exception that Plaintiffs must show actual success on the merits.  *See Amoco*
16   *Production Co.,* 480 U.S. at 546  n.12.  To prove their claim at trial, Plaintiffs must
17   establish:  1) that they have actual success on the merits; 2) that they are likely to
18   suffer irreparable harm in the absence of permanent injunctive relief; 3) that the
19   balance of equities tips in their favor, and that (4) an injunction is in the public
20   interest.  *See Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20
21   (2008).

22       Defendants' discovery is reasonably calculated to discover any harm that
23   Plaintiffs may have endured as this information goes directly to the second prong
24   of the test for a permanent injunction.  This Court has not previously found that all
25   class members have suffered or will suffer irreparable harm such that injunctive
26   relief is merited, and Plaintiffs have failed to provide any evidence of class-wide
27   irreparable harm.  While the Court may have found, during the preliminary
28   injunction litigation, that a few of the Named Plaintiffs suffered irreparable harm

-32-

1   Plaintiffs' inadequate discovery responses deprive Defendants of any information

2   that irreparable harm exists that is "generally applicable to the class" such that

3   class-wide injunctive relief  is appropriate.  *See* Fed. R. Civ. P. 23(b)(2) (Plaintiffs

4   must show that Defendants "acted or refused to act on grounds that apply generally

5   to the class so that final injunctive relief . . . is appropriate.") (emphasis added).

6          Plaintiffs must show a "persistent pattern" of individuals being irreparably

7   harmed as a result of Defendants' policies.  The district court's analysis in another

8   class action in the immigration context found that unless there exists a pattern or

9   practice to the "*class as a whole, . . .* alleged patterns and practices would not be

10  amenable to resolution through [a] single sweeping injunction.  *Aguilar v.*

11  *Immigration and Customs Enforcement*, 2012 WL 1344417 at * 8 (S.D.N.Y. 2012)

12  (emphasis in original).  If Plaintiffs can only cite to a few isolated incidents,

13  Plaintiffs' cause of action should be dismissed.  *See, e.g., Allee*, 416 U.S. at 815

14  (finding that "isolated incidents" would not "be cause for the exercise of a federal

15  court's equitable powers.").

16         Thus, the Court, in disposing of this motion to compel should require

17  Plaintiffs to identify all members of Subclass One who Plaintiffs allege have

18  suffered prejudice as a result of not having had counsel appointed by the

19  Government for them in their immigration proceedings.  To the extent Plaintiffs

20  are unable to identify any such individuals and specify the nature of the harm to

21  them – including any relief the Subclass One member would have received with

22  the benefit of counsel -- the causes of action in Plaintiffs' Complaint which seek

23  injunctive relief for appointed counsel should be dismissed.

24         **PLAINTIFFS' RESPONSE:**

25         Plaintiffs' incorporate their Response to Defendants' Contentions

26  regarding Interrogatory Nos. 1, 2 and 3, as this interrogatory is objectionable for

27  the same reasons.  Again, two separate Orders issued by Judge Gee have

28  established the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)

-33-

1    Further, to the extent that the Court's prior orders to not settle the legal question,

2    the question of prejudice raised by Defendants is currently under submission in

3    connection with Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ##

4    398-1 at 32 n.16, 441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further,

5    Defendants already have answers to this Interrogatory, using the legal definitions

6    found appropriate by Judge Gee, by virtue of Plaintiffs' providing of class

7    members' names and advisal letters.   Moreover, Defendants' Motion violates

8    Judge Gee's admonition not to pursue discovery issues connected to the pending

9    Motion for Partial Summary Judgment.  And finally, Defendants have access to the

10    information that they seek and have deliberately interfered with Plaintiffs' ability

11    to respond, assuming such an Order were forthcoming, by virtue of their redactions

12    and "shuffling" of class members' files.

13        Additionally, as Plaintiffs have also objected, some of Defendants'

14    requests, like this one, improperly pose hypothetical questions and require

15    Plaintiffs to speculate in order to attempt to answer.  Defendants do not address

16    that objection.  But Defendants' request plainly requires Plaintiffs to speculate

17    about a hypothetical situation and identify what "prejudice" (an undefined term)

18    Subclass One members suffered, including "any relief Plaintiffs allege the Subclass

19    one member would have received if s/he had Government appointed counsel to

20    represent him or her in immigration proceedings."  To put it another way, for

21    numerous Subclass One members, each with unknown, hypothetical Government-

22    appointed counsel, for whom Plaintiffs may not have an A-file at all but certainly

23    do not have a usable A-file, who suffer from unknown mental disabilities and have

24    immigration proceedings pending before an unknown immigration judge who may

25    have *discretion* to order various forms of relief, Plaintiffs are being asked to

26    identify what relief that person would have received.  There is no reason why

27    Plaintiffs should be required to engage in this pointless exercise. *Haggarty,* 2012

28    U.S. Dist. LEXIS 133375, at *7 (denying motion to compel response to "improper

-34-

1    hypothetical); *Anderson*, 2012 U.S. Dist. LEXIS 131010, at *17-20 (denying

2    motion to compel where interrogatory posed hypothetical questions and required

3    speculation); *Williams*, 2011 U.S. Dist. LEXIS 137532, at *6 (denying motion to

4    compel where plaintiff was "asking for a medical opinion based on a bare-bones

5    hypothetical, absent the patient-specific facts that would form the basis of an actual

6    medical opinion.").

7         Accordingly, Defendants' motion should be denied in its entirety.  But

8    if the Court is inclined to grant this motion in any respect, it should at least give

9    Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

10   until after the close of document discovery, given that Defendants' discovery

11   failures prevent Plaintiffs from responding to these questions at this stage of the

12   litigation.

13         ***

14   **INTERROGATORY NO. 5:**  Identify every member of Subclass Two who

15   Plaintiffs allege would have been released on bond if they had a bond hearing after

16   being detained in ICE custody in the States of Arizona, California, and Washington

17   for a period of at least six months.

18   **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

19   **INTERROGATORY NO. 5 AS PRODUCED TO DEFENDANTS:**

20        Plaintiffs incorporate their General Objections and objections to definitions

21   and instructions as set forth above.  Plaintiffs further object to this Interrogatory in

22   that it calls for speculation and poses a hypothetical question.  Plaintiffs further

23   object to this Interrogatory on the grounds that information about Subclass Two

24   members is in the Government's exclusive possession, custody, and control and

25   thus this Interrogatory is posed to Plaintiffs for no apparent reason.  Plaintiffs

26   further object to this Interrogatory on the ground that the request is premature in

27   light of the fact that the Government has thus far not produced any documents such

28   as A-files, medical records, and records of immigration proceedings responsive to

-35-

1    Plaintiffs' discovery requests post-November 21, 2011, and continues to refuse to

2    do so on that grounds that it is too burdensome. (*See* Dkt. # 406.)  Defendants

3    improperly ask Plaintiffs to guess at the result of a hypothetical bond hearing of an

4    unspecified plaintiff.  Plaintiffs further object to this Interrogatory on the ground

5    that information about Subclass Two members is in the Government's exclusive

6    possession, custody, and control, and thus this hypothetical question about the

7    outcome of a hypothetical bond proceeding of an unspecified Subclass Two

8    member is posed to Plaintiffs for no apparent reason.

9         Plaintiffs further object on the grounds that the information sought by the

10   Interrogatory is irrelevant because it is not material to this lawsuit whether a

11   hypothetical Subclass Two member would have been released on bond.  Whether

12   the Subclass Two member would have been released on bond has no bearing on

13   whether the Subclass Two member is legally entitled to a bond hearing.

14        To the extent that the Interrogatory calls for information regarding members

15   of Subclass 2 who might also be members of Subclass 1, Plaintiffs further object

16   on the grounds that it is Defendants' position that the information sought is not

17   relevant or necessary to the presentation of their case at this time, or possibly ever.

18   At the September 7, 2012 hearing on Plaintiffs' Motion for Partial Summary

19   Judgment, Defendants and the Court granted a stay of discovery related to the

20   pending motion.  As Defendants admit, these requests relate to that motion. (*See*

21   Dkt. # 441, at 32 n.18 (requesting that the Court hold motion for partial summary

22   in abeyance pursuant to Rule 56(d) until Defendants receive responses to these

23   interrogatories).)

24        ***

25   **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

26   **INTERROGATORY RESPONSE NO. 5 IS INSUFFICIENT:**

27        The Court granted Plaintiffs' motion to certify a subclass of individuals in

28   the Plaintiff Class who "have been detained for more than six months."

-36-

According to Plaintiffs, "Defendants' continued detention of Plaintiffs violates [the Immigration and Nationality Act, the Rehabilitation Act of 1973 and the Due Process Clause of the Fifth Amendment] . . . absent a hearing where the Government bears the burden to prove that their prolonged detention remains justified in light of their mental disabilities and the attendant delays in their removal proceedings." *See* TAC at ¶¶ 172, 175, 178.  Defendants further allege that "Plaintiffs and the Plaintiff Classes (including Subclass Two) have suffered and will imminently suffer irreparable injury as a result of this failing and are entitled to injunctive relief to avoid any injury." *Id.* at ¶¶ 173, 176, 179.  Thus, Plaintiffs seek an order from the Court "to provide qualifying class members with adequate detention hearings." *Id.* at "Prayer for Relief."

Defendants can identify only one way in which a Subclass Two member could theoretically suffer irreparable injury by not having a bond hearing – where a Subclass Two member would have been ordered released on bond in the event they had the hearing to which Plaintiffs say they are entitled.  Defendants' Interrogatories No. 5 and 6 seek information from Plaintiffs regarding the identity of individuals who Plaintiffs allege would have been released on bond and the facts supporting their allegations and contentions.  Further, Interrogatory No. 7 is designed to elicit for each identified Subclass Two member whether the individual had adequate means to afford the minimum $1,500 bond.  Under the Immigration and Nationality Act, an Immigration Judge is unable to set a bond below $1,500. *See* 8 U.S.C. § 1226(a)(2).

Thus, since Plaintiffs have alleged that Subclass Two members "have suffered . . . irreparable injury," Defendants' Interrogatories No. 5-7 are intended to elicit specific information that would allow Defendants to understand the exact nature of those irreparable injuries.  Defendants have a right to this information to the extent that Plaintiffs can identify particular harms.  Such information would allow Defendants to assert appropriate defenses.

-37-

1    From the beginning of this lawsuit, Plaintiffs have represented to the Court

2    that "[t]he members of the Plaintiff Class (including Subclass Two) can be readily

3    identified through notice and discovery." *See* TAC at ¶ 149.  Thus, Plaintiffs

4    sought to bring a class action "to individually redress the wrongs suffered by

5    them."  *Id.* at  ¶ 151.  Now that Defendants have called upon Plaintiffs to identify

6    the harms, Plaintiffs have remained silent, but for a litany of excuses for failing to

7    provide the requested information.  None of the excuses has any merit.

8    As of the date of Defendants' preparation of this Joint Statement,

9    Defendants have produced to Plaintiffs over 250,000 pages of documents in

10   response to Plaintiffs' nearly 300 discovery production requests.  The excuse

11   offered by Plaintiffs -- that the information is solely in the Government's

12   possession -- rings hollow both because of Plaintiffs' allegation in the Complaint

13   that Defendants could identify class members through discovery and because

14   Plaintiffs now have in their possession information nearly identical to the

15   information in the Government's possession.

16   Defendants cannot guess as to which Subclass Two members Plaintiffs

17   allege have suffered prejudice.  For this reason, Plaintiffs must advise Defendants

18   of this information so that Defendants have a reasonable opportunity to redress any

19   prejudice without the need to litigate each particular instance.  This information is

20   necessary to defend against Plaintiffs' claim for injunctive relief which requires

21   them to prove that they would suffer irreparable harm in the absence of permanent

22   relief.  *See Amoco Production Co.,* 480 U.S. at 546 n.12.  To prove their claim at

23   trial, Plaintiffs must establish:  1) that they have actual success on the merits; 2)

24   that they are likely to suffer irreparable harm in the absence of permanent

25   injunctive relief; 3) that the balance of equities tips in their favor, and (4) that an

26   injunction is in the public interest.  *See Winter,* 555 U.S. at 20.

27   Defendants' discovery is reasonably calculated to discover any harm that

28   Plaintiffs may have endured – a fact which goes directly to the second prong of the

-38-

1   test for a permanent injunction.  This Court has not previously found that all

2   Subclass Two members have suffered or will suffer irreparable harm such that

3   injunctive relief is merited, and Plaintiffs' have failed to provide any evidence of

4   class-wide irreparable harm for Subclass Two members.  While the Court may

5   have found during the preliminary injunction litigation that a few of the Named

6   Plaintiffs suffered irreparable harm and thus required bond hearings, Plaintiffs'

7   inadequate discovery responses provide Defendants with no information indicating

8   where any irreparable harm exists that is "generally applicable to the class" such

9   that class-wide injunctive relief in the form of bond hearings is appropriate.  *See*

10   Fed. R. Civ. P. 23(b)(2) (Plaintiffs must show that Defendants "acted or refused to

11   act on grounds that apply generally to the class so that final injunctive relief . . . is

12   appropriate.") (emphasis added).

13         Plaintiffs must show a "persistent pattern" of individuals being irreparably

14   harmed as a result of Defendants' policies.  The district court's analysis in another

15   class action in the immigration context found that unless there exists a pattern or

16   practice to the "*class as a whole*, . . . alleged patterns and practices would not be

17   amenable to resolution through [a] single sweeping injunction.  *See Aguilar*, 2012

18   WL 1344417, at * 8 (emphasis in original).   If Plaintiffs can only cite to a few

19   isolated incidents of Subclass Two members suffering harm, Plaintiffs' cause of

20   action seeking bond hearings should be dismissed.  *See, e.g., Allee*, 416 U.S. at 815

21   (finding that "isolated incidents" would not "be cause for the exercise of a federal

22   court's equitable powers.").

23         Similarly, the Court should require Plaintiffs to demonstrate that any

24   Subclass Two members who would have been awarded relief at a bond hearing

25   would have been able to afford the minimum bond of $1,500.  If the Subclass Two

26   member could not afford the minimum bond, any relief ordered in the bond

27   hearing would be pyrrhic, and no prejudice would be suffered.

28

1    Thus, the Court, in disposing of this motion to compel, should require

2    Plaintiffs to identify all members of Subclass Two who Plaintiffs have alleged

3    suffered prejudice as a result of not having had bond hearings after being detained

4    for six months.  To the extent Plaintiffs are unable to identify such individuals and

5    specify the nature of the harm they suffered – including any relief the Subclass

6    Two member would have received after having such a hearing – the causes of

7    action in Plaintiffs' Complaint which seek injunctive relief for bond hearings

8    should be dismissed.

9    **PLAINTIFFS' RESPONSE:**

10    Plaintiffs incorporate their Response to Defendants' Contentions

11    regarding Interrogatory Nos. 1, 2 and 3, as this interrogatory is objectionable for

12    the same reasons.  Again, two separate Orders issued by Judge Gee have

13    established the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)

14    Further, to the extent that the Court's prior orders do not settle the legal question,

15    the question of prejudice raised by Defendants is currently under submission in

16    connection with Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ##

17    398-1 at 32 n.16, 441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further,

18    Defendants already have answers to this Interrogatory, using the legal definitions

19    found appropriate by Judge Gee, by virtue of Plaintiffs' providing of class

20    members' names and advisal letters.   Moreover, Defendants' Motion violates

21    Judge Gee's admonition not to pursue discovery issues connected to the pending

22    Motion for Partial Summary Judgment.  And finally, Defendants have access to the

23    information that they seek and have deliberately interfered with Plaintiffs' ability

24    to respond, assuming such an Order were forthcoming, by virtue of their redactions

25    and "shuffling" of class members' files.

26    This interrogatory is irrelevant for the additional reason that, as

27    Plaintiffs have explained, the illegality of Defendants' failure to order bond

28    hearings for detainees that are legally entitled to them does not depend on whether

1   the detainees would have prevailed at those bond hearings.  The Ninth Circuit has

2   repeatedly ordered the provision of bond hearings without inquiring whether the

3   individual at issue would obtain a bond at that hearing (or could pay it if it were

4   set).  *See, e.g.*, *Casas-Castrillon* v. *DHS*, 535 F.3d 942 (9th Cir. 2008); *Diouf* v.

5   *Napolitano (Diouf II)*, 634 F.3d 1081, 1092 (9th Cir. 2011).  Similarly, the District

6   Court has made no mention of prejudice in any of the three preliminary injunction

7   orders it has granted that required bond hearings for Named Plaintiffs in this case.

8   (*See, e.g.*, Dkt. ## 107 at 39-41, 285 at 5-12.)[6]

9            This interrogatory is additionally objectionable in that it requires

10  Plaintiffs to respond to a compound hypothetical question.  It asks for the names of

11  "Subclass Two who Plaintiffs allege would have been released on bond if they had

12  a bond hearing after being detained in ICE custody in the States of Arizona,

13  California, and Washington for a period of at least six months."  To put it another

14  way, Defendants ask whether unknown Subclass Two members located in one of

15  three states, who have been detained for some unknown period of time of at least

16  six months, who have various unknown characteristics and are being detained and

17  facing removal proceedings for unknown reasons, for whom Plaintiffs do not have

18  a usable A-file, Plaintiffs "identify" which of those detainees would have

19  persuaded an immigration judge to let them out on bond (itself a *discretionary*

20  determination).  Again, imagine the amount of speculation that such a response

21  would require.  Among other speculations, any response to this Interrogatory

22  would require profound "guessing" as to the skill of the mentally ill immigrant (in

23  contrast to a trained lawyer) to present facts and law, more "guessing" as to the

24  views of the Immigration Judge, and even more "guessing" as to the immigrants

25  

26  [6]      Defendants are also wrong in stating that Immigration Judges cannot release detainees without setting bond of less than $1,500.  IJ's have authority to release detainees without setting *any bond*, but if they do set a bond then it must be at least

27  $1,500 under the statute.  *See* 8 U.S.C. § 1226(a)(2)(B) (authorizing conditional parole).

28  

-41-

1    ties to the community and to the financial resources available to acquire a "bond"

2    of some amount.  Defendants' Interrogatory not only requires Plaintiffs to

3    speculate about many unknown facts, but it requires Plaintiffs to accept many of

4    Defendants' self-serving interpretations which are themselves the subject of

5    dispute—*e.g.*, that the only "prejudice" one can possibly suffer from being

6    detained for years without a bond hearing is to remain in custody when one would

7    have been released, and that immigration judges are required to even set a bond,

8    much less a bond of $1,500.  There is no reason why Plaintiffs should be required

9    to engage in this exercise.  *Haggarty,* 2012 U.S. Dist. LEXIS 133375, at *7

10   (denying motion to compel response to "improper hypothetical); *Anderson*, 2012

11   U.S. Dist. LEXIS 131010, at *17-20 (denying motion to compel where

12   interrogatory posed hypothetical questions and required speculation); *Williams*,

13   2011 U.S. Dist. LEXIS 137532, at *6 (denying motion to compel where plaintiff

14   was "asking for a medical opinion based on a bare-bones hypothetical, absent the

15   patient-specific facts that would form the basis of an actual medical opinion.").

16              Accordingly, Defendants' motion should be denied in its entirety.  But

17   if the Court is inclined to grant this motion in any respect, it should at least give

18   Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

19   until after the close of document discovery, given that Defendants' discovery

20   failures prevent Plaintiffs from responding to these questions at this stage of the

21   litigation.

22              ***

23   **INTERROGATORY NO. 6:**  For each member of Subclass Two identified

24   in response to Interrogatory No. 5, please specify the facts supporting Plaintiffs'

25   contention that the Subclass two member would have been released on bond after

26   having been detained in ICE custody in the States of Arizona, California, and

27   Washington for a period of least six months.

28

-42-

**PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO INTERROGATORY NO. 6 AS PRODUCED TO DEFENDANTS:**

Subject to and without waiving their General and Specific Objections, Plaintiffs hereby incorporate their Response to Interrogatory No. 5.

\*\*\*

**DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS' INTERROGATORY RESPONSE NO. 6 IS INSUFFICIENT:**

The Court granted Plaintiffs' motion to certify a subclass of individuals in the Plaintiff Class who "have been detained for more than six months." According to Plaintiffs, "Defendants' continued detention of Plaintiffs violates (the Immigration and Nationality Act, the Rehabilitation Act of 1973 and the Due Process Clause of the Fifth Amendment) . . . absent a hearing where the Government bears the burden to prove that their prolonged detention remains justified in light of their mental disabilities and the attendant delays in their removal proceedings." *See* TAC at ¶¶ 172, 175, 178. Defendants further allege that "Plaintiffs and the Plaintiff Classes (including Subclass Two) have suffered and will imminently suffer irreparable injury as a right of this failing and are entitled to injunctive relief to avoid any injury." *Id.* at ¶¶ 173, 176, 179. Thus, Plaintiffs seek an order from the Court "to provide qualifying class members with adequate detention hearings." *Id*. at "Prayer for Relief."

Defendants can identify only one way in which a Subclass Two member could theoretically suffer irreparable injury by not having a bond hearing – where a Subclass Two member would have been ordered released on bond in the event they had the hearing to which Plaintiffs say they are entitled. Defendants' Interrogatories No. 5 and 6 seek information from Plaintiffs regarding the identity of individuals who Plaintiffs allege would have been released on bond and the facts supporting their allegations and contentions. Further, Interrogatory No. 7 is designed to elicit for each identified Subclass Two member, whether the individual

-43-

1  had adequate means to afford the minimum $1,500 bond.  Under the Immigration
2  and Nationality Act, an Immigration Judge is unable to set a bond below $1,500.
3  *See* 8 U.S.C. § 1226(a)(2).

4        Thus, since Plaintiffs have alleged that Subclass Two members "have
5  suffered . . . irreparable injury," Defendants' Interrogatories No. 5-7 are intended
6  to elicit specific information that would allow Defendants to understand the exact
7  nature of those irreparable injuries.  Defendants have a right to this information to
8  the extent that Plaintiffs can identify particular harms.  Such information would
9  allow Defendants to assert appropriate defenses.

10        From the beginning of this lawsuit, Plaintiffs have represented to the Court
11  that "[t]he members of the Plaintiff Class (including Subclass Two) can be readily
12  identified through notice and discovery."  *See* TAC at ¶ 149.  Thus, Plaintiffs
13  sought to bring a class action "to individually redress the wrongs suffered by
14  them."  *Id.* at ¶ 151.  Now that Defendants have called upon Plaintiffs to identify
15  the harms, Plaintiffs have remained silent, but for a litany of excuses for failing to
16  provide the requested information.  None of the excuses has any merit.

17        As of the date of Defendants' preparation of this Joint Statement,
18  Defendants have produced to Plaintiffs over 250,000 pages of documents in
19  response to Plaintiffs' nearly 300 discovery production requests.  The excuse
20  offered by Plaintiffs -- that the information is solely in the Government's
21  possession -- rings hollow both because of Plaintiffs' allegation in the Complaint
22  that Defendants could identify class members through discovery and because
23  Plaintiffs now have in their possession information nearly identical to the
24  information in the Government's possession.

25        Defendants cannot guess as to which Subclass Two members Plaintiffs
26  allege have suffered prejudice.  For this reason, Plaintiffs must advise Defendants
27  of this information so that Defendants have a reasonable opportunity to redress any
28  prejudice without the need to litigate each particular instance.  This information is

-44-

1    necessary to defend against Plaintiffs' claim for injunctive relief which requires

2    them to prove that they would suffer irreparable harm in the absence of permanent

3    relief.  *See Amoco Production Co.,* 480 U.S. at 546 n.12.  To prove their claim at

4    trial, Plaintiffs must establish:  1) that they have actual success on the merits; 2)

5    that they are likely to suffer irreparable harm in the absence of permanent

6    injunctive relief; 3) that the balance of equities tips in their favor, and (4) that an

7    injunction is in the public interest.  *See Winter,* 555 U.S. at 20.

8           Defendants' discovery is reasonably calculated to discover any harm that

9    Plaintiffs may have endured – a fact which goes directly to the second prong of the

10   test for a permanent injunction.  This Court has not previously found that all

11   Subclass Two members have suffered or will suffer irreparable harm such that

12   injunctive relief is merited, and Plaintiffs' have failed to provide any evidence of

13   class-wide irreparable harm for Subclass Two members.  While the Court may

14   have found during the preliminary injunction litigation that a few of the Named

15   Plaintiffs suffered irreparable harm and thus required bond hearings, Plaintiffs'

16   inadequate discovery responses provide Defendants with no information indicating

17   where any irreparable harm exists that is "generally applicable to the class" such

18   that class-wide injunctive relief in the form of bond hearings is appropriate.  See

19   Fed. R. Civ. P. 23(b)(2) (Plaintiffs must show that Defendants "acted or refused to

20   act on grounds that apply generally to the class so that final injunctive relief . . . is

21   appropriate.") (emphasis added).

22          Plaintiffs must show a "persistent pattern" of individuals being irreparably

23   harmed as a result of Defendants' policies.  The district court's analysis in another

24   class action in the immigration context found that unless there exists a pattern or

25   practice applicable to the "class as a whole, . . . alleged patterns and practices

26   would not be amenable to resolution through [a] single sweeping injunction.  *See*

27   *Aguilar*, 2012 WL 1344417, at * 8 (emphasis in original).   If Plaintiffs can only

28   cite to a few isolated incidents of Subclass Two members suffering harm,

1   Plaintiffs' cause of action seeking bond hearings should be dismissed. *See, e.g.,*

2   *Allee*, 416 U.S. at 815 (finding that "isolated incidents" would not "be cause for the

3   exercise of a federal court's equitable powers.").

4        Similarly, the Court should require Plaintiffs to demonstrate that any

5   Subclass Two members who would have been awarded relief at a bond hearing

6   would have been able to afford the minimum bond of $1,500.  If the Subclass Two

7   member could not afford the minimum bond, any relief ordered in the bond

8   hearing would be pyrrhic, and no prejudice would be suffered.

9        Thus, the Court, in disposing of this motion to compel, should require

10  Plaintiffs to identify all members of Subclass Two who Plaintiffs have alleged

11  suffered prejudice as a result of not having had bond hearings after being detained

12  for six months.  To the extent Plaintiffs are unable to identify such individuals and

13  specify the nature of the harm they suffered – including any relief the Subclass

14  Two member would have received after having such a hearing – the causes of

15  action in Plaintiffs' Complaint which seek injunctive relief for bond hearings

16  should be dismissed.

17       **PLAINTIFFS' RESPONSE:**

18       Plaintiffs incorporate their Response to Defendants' Contentions

19  regarding Interrogatory No. 5, as this interrogatory is objectionable for the same

20  reasons.  Again, two separate Orders issued by Judge Gee have established the lack

21  of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to the

22  extent that the Court's prior orders do not settle the legal question, the question of

23  prejudice raised by Defendants is currently under submission in connection with

24  Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,

25  441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further, Defendants already have

26  answers to this Interrogatory, using the legal definitions found appropriate by

27  Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal

28  letters.   Moreover, Defendants' Motion violates Judge Gee's admonition not to

-46-

1  pursue discovery issues connected to the pending Motion for Partial Summary

2  Judgment.  Defendants also have access to the information that they seek and have

3  deliberately interfered with Plaintiffs' ability to respond, assuming such an Order

4  were forthcoming, by virtue of their redactions and "shuffling" of class members'

5  files.  And finally, this interrogatory requires further speculation about the

6  outcomes of hypothetical bond hearings.

7           This interrogatory is irrelevant for the additional reason that, as

8  Plaintiffs have explained, the illegality of Defendants' failure to order bond

9  hearings for detainees that are legally entitled to them does not depend on whether

10  the detainees would have prevailed at those bond hearings.  The Ninth Circuit has

11  repeatedly ordered the provision of bond hearings without inquiring whether the

12  individual at issue would obtain a bond at that hearing (or could pay it if it were

13  set).  *See, e.g.*, *Casas-Castrillon* v. *DHS*, 535 F.3d 942 (9th Cir. 2008); *Diouf* v.

14  *Napolitano (Diouf II)*, 634 F.3d 1081, 1092 (9th Cir. 2011).  Similarly, the District

15  Court has made no mention of prejudice in any of the three preliminary injunction

16  orders it has granted that required bond hearings for Named Plaintiffs in this case.

17  (*See, e.g.*, Dkt. ## 107 at 39-41, 285 at 5-12.)[7]

18           Accordingly, Defendants' motion should be denied in its entirety.  But

19  if the Court is inclined to grant this motion in any respect, it should at least give

20  Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

21  until after the close of document discovery, given that Defendants' discovery

22  failures prevent Plaintiffs from responding to these questions at this stage of the

23  litigation.

24           ***

---

[7]     Defendants are also wrong in stating that Immigration Judges cannot release detainees without setting bond of less than $1,500.  IJ's have authority to release detainees without setting *any bond*, but if they do set a bond then it must be at least $1,500 under the statute.  *See* 8 U.S.C. 1226(a)(2)(B) (authorizing conditional parole).

-47-

1    **INTERROGATORY NO. 7:**  For each member of Subclass Two, identify

2    whether the Subclass Two member has adequate means to afford the minimum

3    $1,500 bond, where the Subclass Two member would be released if successful in a

4    bond hearing and able to post bond, and identify the entity, i.e., individual,

5    hospital, or facility, that would care for the health and welfare of the Subclass Two

6    member after such release.

7    **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

8    **INTERROGATORY NO. 7 AS PRODUCED TO DEFENDANTS:**

9    Subject to and without waiving their General and Specific Objections,

10   Plaintiffs hereby incorporate their Response to Interrogatory Nos. 5 and 6.

11   Plaintiffs further object to this Interrogatory on the ground it is vague and

12   ambiguous in that it purports to require Plaintiffs to identify, among other things,

13   whether an unidentified member of Subclass Two or any other person willing to

14   assist that member of Subclass Two has "adequate means to afford" a bond and to

15   identify an "entity" that would care for his or her "health and welfare" after being

16   released from an unidentified "facility."  To the extent the Interrogatory is

17   intelligible, Plaintiffs further object that this Interrogatory calls for speculation and

18   poses a compound hypothetical question.

19   Plaintiffs also object that this question assumes that there must be a bond

20   and that the bond must be $1,500, while Plaintiffs' position is that no bond is

21   required and that if a bond were required, it need not be $1,500, but can be a lesser

22   amount.  The information sought by the Interrogatory is also irrelevant because it

23   is not material to this lawsuit whether a Subclass Two member can "afford" any

24   potential bond amount; whether a hypothetical Subclass Two member can "afford"

25   a bond has no bearing on whether the Subclass Two member is legally entitled to a

26   bond hearing.

27   Subject to and without waiving their General and Specific Objections,

28   Plaintiffs respond by respectfully referring the Government to the procedural

-48-

1    history of the Plaintiffs who obtained preliminary injunctions in this matter (Dkt.

2    ## 107, 215, and 285), and other class members who were released from detention

3    since the Government began identifying Class and Subclass members pursuant to

4    the Court's notice orders.

5            ***

6    **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

7    **INTERROGATORY RESPONSE NO. 7 IS INSUFFICIENT:**

8            The Court granted Plaintiffs' motion to certify a subclass of individuals in

9    the Plaintiff Class who "have been detained for more than six months."  According

10   to Plaintiffs, "Defendants' continued detention of Plaintiffs violates (the

11   Immigration and Nationality Act, the Rehabilitation Act of 1973 and the Due

12   Process Clause of the Fifth Amendment) . . . absent a hearing where the

13   Government bears the burden to prove that their prolonged detention remains

14   justified in light of their mental disabilities and the attendant delays in their

15   removal proceedings."  *See* TAC at ¶¶ 172, 175, 178.  Defendants further allege

16   that "Plaintiffs and the Plaintiff Classes (including Subclass Two) have suffered

17   and will imminently suffer irreparable injury as a right of this failing and are

18   entitled to injunctive relief to avoid any injury."  *Id.* at ¶¶ 173, 176, and 179.  Thus,

19   Plaintiffs seek an order from the Court "to provide qualifying class members with

20   adequate detention hearings."  *Id.* at "Prayer for Relief."

21           Defendants can identify only one way in which a Subclass Two member

22   could theoretically suffer irreparable injury by not having a bond hearing -- where

23   a Subclass Two member would have been ordered released on bond in the event

24   they had the hearing to which Plaintiffs say they are entitled.  Defendants'

25   Interrogatories No. 5 and 6 seek information from Plaintiffs regarding the identity

26   of individuals who Plaintiffs allege would have been released on bond and the facts

27   supporting their allegations and contentions.  Further, Interrogatory No. 7 is

28   designed to elicit for each identified Subclass Two member, whether the individual

-49-

1   had adequate means to afford the minimum $1,500 bond.  Under the Immigration

2   and Nationality Act, an Immigration Judge is unable to set a bond below $1,500.

3   *See* 8 U.S.C. § 1226(a)(2).

4        Thus, since Plaintiffs have alleged that Subclass Two members "have

5   suffered . . . irreparable injury," Defendants' Interrogatories No. 5-7 are intended

6   to elicit specific information that would allow Defendants to understand the exact

7   nature of those irreparable injuries.  Defendants have a right to this information to

8   the extent that Plaintiffs can identify particular harms.  Such information would

9   allow Defendants to assert appropriate defenses.

10       From the beginning of this lawsuit, Plaintiffs have represented to the Court

11  that "[t]he members of the Plaintiff Class (including Subclass Two) can be readily

12  identified through notice and discovery."  *See* TAC at ¶ 149.  Thus, Plaintiffs

13  sought to bring a class action "to individually redress the wrongs suffered by

14  them."  *Id.* at ¶ 151.  Now that Defendants have called upon Plaintiffs to identify

15  the harms, Plaintiffs have remained silent, but for a litany of excuses for failing to

16  provide the requested information.  None of the excuses has any merit.

17       As of the date of Defendants' preparation of this Joint Statement,

18  Defendants have produced to Plaintiffs over 250,000 pages of documents in

19  response to Plaintiffs' nearly 300 discovery production requests.  The excuse

20  offered by Plaintiffs -- that the information is solely in the Government's

21  possession -- rings hollow both because of Plaintiffs' allegation in the Complaint

22  that Defendants could identify class members through discovery and because

23  Plaintiffs now have in their possession information nearly identical to the

24  information in the Government's possession.

25       Defendants cannot guess as to which Subclass Two members Plaintiffs

26  allege have suffered prejudice.  For this reason, Plaintiffs must advise Defendants

27  of this information so that Defendants have a reasonable opportunity to redress any

28  prejudice without the need to litigate each particular instance.  This information is

-50-

1  necessary to defend against Plaintiffs' claim for injunctive relief which requires

2  them to prove that they would suffer irreparable harm in the absence of permanent

3  relief.  *See Amoco Production Co.*, 480 U.S. at 546 n.12.  To prove their claim at

4  trial, Plaintiffs must establish:  1) that they have actual success on the merits; 2)

5  that they are likely to suffer irreparable harm in the absence of permanent

6  injunctive relief; 3) that the balance of equities tips in their favor, and (4) that an

7  injunction is in the public interest.  *See Winter,* 555 U.S. at 20.

8        Defendants' discovery is reasonably calculated to discover any harm that

9  Plaintiffs may have endured – a fact which goes directly to the second prong of the

10  test for a permanent injunction.  This Court has not previously found that all

11  Subclass Two members have suffered or will suffer irreparable harm such that

12  injunctive relief is merited, and Plaintiffs' have failed to provide any evidence of

13  class-wide irreparable harm for Subclass Two members.  While the Court may

14  have found during the preliminary injunction litigation that a few of the Named

15  Plaintiffs suffered irreparable harm and thus required bond hearings, Plaintiffs'

16  inadequate discovery responses provide Defendants with no information indicating

17  where any irreparable harm exists that is "generally applicable to the class" such

18  that class-wide injunctive relief in the form of bond hearings is appropriate.  See

19  Fed. R. Civ. P. 23(b)(2) (Plaintiffs must show that Defendants "acted or refused to

20  act on grounds that apply generally to the class so that final injunctive relief . . . is

21  appropriate.") (emphasis added).

22        Plaintiffs must show a "persistent pattern" of individuals being irreparably

23  harmed as a result of Defendants' policies.  The district court's analysis in another

24  class action in the immigration context found that unless there exists a pattern or

25  practice applicable to the "class as a whole, . . . alleged patterns and practices

26  would not be amenable to resolution through [a] single sweeping injunction.  *See*

27  *Aguilar*, 2012 WL 1344417, at * 8 (emphasis in original).   If Plaintiffs can only

28  cite to a few isolated incidents of Subclass Two members suffering harm,

1  Plaintiffs' cause of action seeking bond hearings should be dismissed.  *See, e.g.,*

2  *Allee*, 416 U.S. at 815 (finding that "isolated incidents" would not "be cause for the

3  exercise of a federal court's equitable powers.").

4       Similarly, the Court should require Plaintiffs to demonstrate that any

5  Subclass Two members who would have been awarded relief at a bond hearing

6  would have been able to afford the minimum bond of $1,500.  If the Subclass Two

7  member could not afford the minimum bond, any relief ordered in the bond

8  hearing would be pyrrhic, and no prejudice would be suffered.

9       Thus, the Court, in disposing of this motion to compel, should require

10  Plaintiffs to identify all members of Subclass Two who Plaintiffs have alleged

11  suffered prejudice as a result of not having had bond hearings after being detained

12  for six months.  To the extent Plaintiffs are unable to identify such individuals and

13  specify the nature of the harm they suffered – including any relief the Subclass

14  Two member would have received after having such a hearing – the causes of

15  action in Plaintiffs' Complaint which seek injunctive relief for bond hearings

16  should be dismissed.

17  **PLAINTIFFS' RESPONSE:**

18       Plaintiffs incorporate their Response to Defendants' Contentions

19  regarding Interrogatory Nos. 5 and 6, as this interrogatory is objectionable for the

20  same reasons.  As a threshold matter, this really is not even one "interrogatory" – it

21  is three separate interrogatories.  Again, two separate Orders issued by Judge Gee

22  have established the lack of relevance of Defendants' request.  (*See* Dkts. ## 355,

23  458.)  Further, to the extent that the Court's prior orders do not settle the legal

24  question, the question of prejudice raised by Defendants is currently under

25  submission in connection with Plaintiffs' motion for partial summary judgment.

26  (*See* Dkts. ## 398-1 at 32 n.16, 441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)

27  Further, Defendants already have answers to this Interrogatory, using the legal

28  definitions found appropriate by Judge Gee, by virtue of Plaintiffs' providing of

-52-

1  class members' names and advisal letters.   Moreover, Defendants' Motion violates

2  Judge Gee's admonition not to pursue discovery issues connected to the pending

3  Motion for Partial Summary Judgment.  And finally, Defendants have access to the

4  information that they seek and have deliberately interfered with Plaintiffs' ability

5  to respond, assuming such an Order were forthcoming, by virtue of their redactions

6  and "shuffling" of class members' files.

7          This interrogatory is irrelevant for the additional reason that, as

8  Plaintiffs have explained, the illegality of Defendants' failure to order bond

9  hearings for detainees that are legally entitled to them does not depend on whether

10  the detainees would have prevailed at those bond hearings.  The Ninth Circuit has

11  repeatedly ordered the provision of bond hearings without inquiring whether the

12  individual at issue would obtain a bond at that hearing (or could pay it if it were

13  set).  *See, e.g.*, *Casas-Castrillon* v. *DHS*, 535 F.3d 942 (9th Cir. 2008); *Diouf* v.

14  *Napolitano (Diouf II)*, 634 F.3d 1081, 1092 (9th Cir. 2011).  Similarly, the District

15  Court has made no mention of prejudice in any of the three preliminary injunction

16  orders it has granted that required bond hearings for Named Plaintiffs in this case.

17  (*See, e.g.*, Dkt. ## 107 at 39-41, 285 at 5-12.)[8]

18          This interrogatory also goes even further than Interrogatory No. 5 in

19  asking for speculative responses to vague hypothetical questions.  This

20  interrogatory purports to require Plaintiffs to prove that for every Subclass Two

21  member, they had "adequate means" (whatever that means) to afford the $1,500

22  bond that Defendants believe is required (Plaintiffs disagree), to identify "where

23  the Subclass Two member would be released if successful in a bond hearing and

24  able to post bond," and then to identify the "entity" that would care for the "health

25  ─────────────
     [8]     Defendants are also wrong in stating that Immigration Judges cannot release
26  detainees without setting bond of less than $1,500.  IJ's have authority to release
     detainees without setting *any bond*, but if they do set a bond then it must be at least
27  $1,500 under the statute.  *See* 8 U.S.C. § 1226(a)(2)(B) (authorizing conditional
     parole).
28

-53-

1  and welfare" of this Subclass Two member in the hypothetical situation that all of

2  the foregoing events occurred—all while Plaintiffs do not even have usable A-files

3  for these Subclass Two members.  Plaintiffs should not be required to engage in

4  this pointless exercise by answering this series of hypothetical questions.

5  *Haggarty*, 2012 U.S. Dist. LEXIS 133375, at *7 (denying motion to compel

6  response to "improper hypothetical); *Anderson*, 2012 U.S. Dist. LEXIS 131010, at

7  *17-20 (denying motion to compel where interrogatory posed hypothetical

8  questions and required speculation); *Williams*, 2011 U.S. Dist. LEXIS 137532, at

9  *6 (denying motion to compel where plaintiff was "asking for a medical opinion

10 based on a bare-bones hypothetical, absent the patient-specific facts that would

11 form the basis of an actual medical opinion.").

12        Accordingly, Defendants' motion should be denied in its entirety.  But

13 if the Court is inclined to grant this motion in any respect, it should at least give

14 Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

15 until after the close of document discovery, given that Defendants' discovery

16 failures prevent Plaintiffs from responding to these questions at this stage of the

17 litigation.

18        ***

19 **INTERROGATORY NO. 8:**  For each member of the Main Class and/or

20 Subclass One identified in response to Interrogatories 1 and 3, identify all facts

21 supporting Plaintiffs' contention that these class members (and/or Subclass one

22 members) were denied Government appointed counsel "solely by reason of their

23 handicap."

24 **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

25 **INTERROGATORY NO. 8 AS PRODUCED TO DEFENDANTS:**

26        Subject to and without waiving their General and Specific Objections,

27 Plaintiffs hereby incorporate their Response to Interrogatory Nos. 1 and 3.

28

-54-

1          ***

2     **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

3     **INTERROGATORY RESPONSE NO. 8 IS INSUFFICIENT:**

4          Plaintiffs bring their claims under Section 504 of the Rehabilitation Act

5     alleging that they deserve the requested relief as a "reasonable accommodation for

6     individuals with mental disabilities who are discriminated against in their access to

7     immigration court services." *See* TAC at ¶ 138.  In their Motion for Partial

8     Summary Judgment (Dkt. # 398), Plaintiffs alleged that they are eligible for relief

9     under the Rehabilitation Act because they are "qualified individuals with

10    disabilities" who were denied Government appointed counsel "solely by reason of

11    their handicap." *Id.* at 10-11.  Indeed, Ninth Circuit precedent requires that

12    Plaintiffs prove these issues at trial to obtain a reasonable accommodation pursuant

13    to the Rehabilitation Act.  Specifically, to establish a prima facie case under

14    Section 504 in connection with their claim for appointed counsel, Plaintiffs must

15    show:  (1) that all Subclass One members are persons with disabilities; (2) that

16    they were "otherwise qualified for the benefit or services sought;" (3) that they

17    were "denied the benefit or services solely by reason" of their disability; and (4)

18    that the entity receives federal funding.  *Lovell v. Chandler*, 303 F.3d 1039, 1052

19    (9th Cir. 2002); *see also* 29 U.S.C. § 794(a).

20         Defendants' Interrogatories No. 8-10 are designed to elicit from Plaintiffs all

21    facts and supporting documents that support Plaintiffs' contentions that they are

22    eligible for relief under the Rehabilitation Act.  Thus, this information is highly

23    relevant to this litigation since several of Plaintiffs' causes of action are dependent

24    upon eligibility under the Rehabilitation Act.

25         In their response to Interrogatories No. 8-10, Plaintiffs simply point to their

26    responses to Interrogatories No. 1 and 3, neither of which directly respond to the

27    information sought.  To the extent Plaintiffs claim the requested information is

28    irrelevant, such a claim is belied by their claim that they deserve relief under the

-55-

1   Rehabilitation Act.  To the extent Plaintiffs claim that the information is in the

2   Government's exclusive control and possession, Defendants respond that they have

3   produced to Plaintiffs over 250,000 pages of documents in response to Plaintiffs'

4   nearly 300 discovery production requests.  Plaintiffs now have in their possession

5   information nearly identical to the information in the Government's possession,

6   from which Plaintiffs can produce the information Defendants seek.

7        Accordingly, the Court should order that Plaintiffs immediately provide

8   responsive information or risk dismissal of their causes of action under the

9   Rehabilitation Act.

10       **PLAINTIFFS' RESPONSE:**

11       Plaintiffs incorporate their Response to Defendants' Contentions

12  regarding Interrogatory Nos. 1 and 3, as this interrogatory is objectionable for the

13  same reasons.  Again, two separate Orders issued by Judge Gee have established

14  the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to

15  the extent that the Court's prior orders do not settle the legal question, the question

16  of prejudice raised by Defendants is currently under submission in connection with

17  Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,

18  441 at 28-32, 453 at 19-25, 484*,* 503, 504, 513.)  Further, Defendants already have

19  answers to this Interrogatory, using the legal definitions found appropriate by

20  Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal

21  letters.   Moreover, Defendants' Motion violates Judge Gee's admonition not to

22  pursue discovery issues connected to the pending Motion for Partial Summary

23  Judgment.  And finally, Defendants have access to the information that they seek

24  and have deliberately interfered with Plaintiffs' ability to respond, assuming such

25  an Order were forthcoming, by virtue of their redactions and "shuffling" of class

26  members' files.

27       Accordingly, Defendants' motion should be denied in its entirety.  But

28  if the Court is inclined to grant it in any respect, it should at least give Plaintiffs a

-56-

1   sufficient amount of time in which to attempt to comply, preferably until after the

2   close of document discovery, given that Defendants' discovery failures prevent

3   Plaintiffs from responding to these questions at this stage of the litigation.

4           ***

5           **INTERROGATORY NO. 9:**  For each member of the Main Class and/or

6   Subclass One identified in response to Interrogatories 1 and 3, identify all facts

7   supporting Plaintiffs' contention that these class members meet the definition of

8   "qualified individuals with a disability."

9           **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

10  **INTERROGATORY NO. 9 AS PRODUCED TO DEFENDANTS:**

11          Subject to and without waiving their General and Specific Objections,

12  Plaintiffs hereby incorporate their Response to Interrogatory Nos. 1 and 3.

13          ***

14          **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

15  **INTERROGATORY RESPONSE NO. 9 IS INSUFFICIENT:**

16          Plaintiffs bring their claims under Section 504 of the Rehabilitation Act

17  alleging that they deserve the requested relief as a "reasonable accommodation for

18  individuals with mental disabilities who are discriminated against in their access to

19  immigration court services."  *See* TAC at ¶ 138.  In their Motion for Partial

20  Summary Judgment (Dkt. # 398), Plaintiffs alleged that they are eligible for relief

21  under the Rehabilitation Act because they are "qualified individuals with

22  disabilities" who were denied Government appointed counsel "solely by reason of

23  their handicap."  *Id.* at 10-11.  Indeed, Ninth Circuit precedent requires that

24  Plaintiffs prove these issues at trial to obtain a reasonable accommodation pursuant

25  to the Rehabilitation Act.  Specifically, to establish a prima facie case under

26  Section 504 in connection with their claim for appointed counsel, Plaintiffs must

27  show:  (1) that all Subclass One members are persons with disabilities; (2) that

28  they were "otherwise qualified for the benefit or services sought;" (3) that they

-57-

1    were "denied the benefit or services solely by reason" of their disability; and (4)

2    that the entity receives federal funding.  *Lovell v. Chandler*, 303 F.3d at 1052; *see*

3    *also* 29 U.S.C. § 794(a).

4         Defendants' Interrogatories No. 8-10 are designed to elicit from Plaintiffs all

5    facts and documents that support Plaintiffs' contentions that they are eligible for

6    relief under the Rehabilitation Act.  Thus, this information is highly relevant to this

7    litigation since several of Plaintiffs' causes of action are dependent upon eligibility

8    under the Rehabilitation Act.

9         In their response to Interrogatories No. 8-10, Plaintiffs simply point to their

10   responses to Interrogatories No. 1 and 3, neither of which directly respond to the

11   information sought.  To the extent Plaintiffs claim the requested information is

12   irrelevant, such a claim is belied by their claim that they deserve relief under the

13   Rehabilitation Act.  To the extent Plaintiffs claim that the information is in the

14   Government's exclusive control and possession, Defendants respond that they have

15   produced to Plaintiffs over 250,000 pages of documents in response to Plaintiffs'

16   nearly 300 discovery production requests.  Plaintiffs now have in their possession

17   information nearly identical to the information in the Government's possession,

18   from which Plaintiffs can produce the information Defendants seek.

19        Accordingly, the Court should order that Plaintiffs immediately provide

20   responsive information or risk dismissal of their causes of action under the

21   Rehabilitation Act.

22   **PLAINTIFFS' RESPONSE:**

23        Plaintiffs incorporate their Responses to Defendants' Contentions

24   Regarding Interrogatory Nos. 1 and 3, as this interrogatory is objectionable for the

25   same reasons.  Again, two separate Orders issued by Judge Gee have established

26   the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to

27   the extent that the Court's prior orders do not settle the legal question, the question

28   of prejudice raised by Defendants is currently under submission in connection with

-58-

1   Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,

2   441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further, Defendants already have

3   answers to this Interrogatory, using the legal definitions found appropriate by

4   Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal

5   letters.   Moreover, Defendants' Motion violates Judge Gee's admonition not to

6   pursue discovery issues connected to the pending Motion for Partial Summary

7   Judgment.  And finally, Defendants have access to the information that they seek

8   and have deliberately interfered with Plaintiffs' ability to respond, assuming such

9   an Order were forthcoming, by virtue of their redactions and "shuffling" of class

10  members' files.

11          Accordingly, Defendants' motion should be denied in its entirety.  But

12  if the Court is inclined to grant it in any respect, it should at least give Plaintiffs a

13  sufficient amount of time in which to attempt to comply, preferably until after the

14  close of document discovery, given that Defendants' discovery failures prevent

15  Plaintiffs from responding to these questions at this stage of the litigation.

16          ***

17  **INTERROGATORY NO. 10:**  Identify all supporting documents that form

18  or support the basis for Plaintiffs' response to Interrogatories 8 and 9.

19  **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

20  **INTERROGATORY NO. 10 AS PRODUCED TO DEFENDANTS:**

21          Subject to and without waiving their General and Specific Objections,

22  Plaintiffs hereby incorporate their Response to Interrogatory Nos. 8 and 9.

23          ***

24  **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

25  **INTERROGATORY RESPONSE NO. 10 IS INSUFFICIENT:**

26          Plaintiffs bring their claims under Section 504 of the Rehabilitation Act

27  alleging that they deserve the requested relief as a "reasonable accommodation for

28  individuals with mental disabilities who are discriminated against in their access to

-59-

1   immigration court services." *See* TAC at ¶ 138.  In their Motion for Partial

2   Summary Judgment (Dkt. # 398) Plaintiffs alleged that they are eligible for relief

3   under the Rehabilitation Act because they are "qualified individuals with

4   disabilities" who were denied Government appointed counsel "solely by reason of

5   their handicap." *Id.* at 10-11.  Indeed, Ninth Circuit precedent requires that

6   Plaintiffs prove these issues at trial to obtain a reasonable accommodation pursuant

7   to the Rehabilitation Act.  Specifically, to establish a prima facie case under

8   Section 504 in connection with their claim for appointed counsel, Plaintiffs must

9   show:  (1) that all Subclass One members are persons with disabilities; (2) that

10  they were "otherwise qualified for the benefit or services sought;" (3) that they

11  were "denied the benefit or services solely by reason" of their disability; and (4)

12  that the entity receives federal funding.  *Lovell v. Chandler*, 303 F.3d at 1052; *see*

13  *also* 29 U.S.C. § 794(a).

14         Defendants' Interrogatories No. 8-10 are designed to elicit from Plaintiffs all

15  facts and documents that support Plaintiffs' contentions that they are eligible for

16  relief under the Rehabilitation Act.  Thus, this information is highly relevant to this

17  litigation since several of Plaintiffs' causes of action are dependent upon eligibility

18  under the Rehabilitation Act.

19         In their responses to Interrogatories No. 8-10, Plaintiffs simply point to their

20  responses to Interrogatories No. 1 and 3, neither of which directly respond to the

21  information sought.  To the extent Plaintiffs claim the requested information is

22  irrelevant, such a claim is belied by their claim that they deserve relief under the

23  Rehabilitation Act.  To the extent Plaintiffs claim that the information is in the

24  Government's exclusive control and possession, Defendants respond that they have

25  produced to Plaintiffs over 250,000 pages of documents in response to Plaintiffs'

26  nearly 300 discovery production requests.  Plaintiffs now have in their possession

27  information nearly identical to the information in the Government's possession,

28  from which Plaintiffs can produce the information Defendants seek.

1   Accordingly, the Court should order that Plaintiffs immediately provide

2   responsive information or risk dismissal of their causes of action under the

3   Rehabilitation Act.

4   **PLAINTIFFS' RESPONSE:**

5   Plaintiffs incorporate their Responses to Defendants' Contentions

6   Regarding Interrogatory Nos. 1, 2, 3, 8, and 9, as this interrogatory is objectionable

7   for the same reasons.  Again, two separate Orders issued by Judge Gee have

8   established the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)

9   Further, to the extent that the Court's prior orders do not settle the legal question,

10  the question of prejudice raised by Defendants is currently under submission in

11  connection with Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ##

12  398-1 at 32 n.16, 441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further,

13  Defendants already have answers to this Interrogatory, using the legal definitions

14  found appropriate by Judge Gee, by virtue of Plaintiffs' providing of class

15  members' names and advisal letters.   Moreover, Defendants' Motion violates

16  Judge Gee's admonition not to pursue discovery issues connected to the pending

17  Motion for Partial Summary Judgment.  And finally, Defendants have access to the

18  information that they seek and have deliberately interfered with Plaintiffs' ability

19  to respond, assuming such an Order were forthcoming, by virtue of their redactions

20  and "shuffling" of class members' files.

21  Accordingly, Defendants' motion should be denied in its entirety.  But

22  if the Court is inclined to grant it in any respect, it should at least give Plaintiffs a

23  sufficient amount of time in which to attempt to comply, preferably until after the

24  close of document discovery, given that Defendants' discovery failures prevent

25  Plaintiffs from responding to these questions at this stage of the litigation.

26  ***

27

28

-61-

1      **INTERROGATORY NO. 11:**  Identify all members of the Main Class who

2    Plaintiffs allege have suffered prejudice as a result of not having undergone a

3    mental competency evaluation prior to or during their immigration proceedings.

4      **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

5    **INTERROGATORY NO. 11 AS PRODUCED TO DEFENDANTS:**

6      In addition to their General Objections and Specific Objections, Plaintiffs

7    note that members of the Main Class, as certified by the Court, are "[a]ll

8    individuals who are or will be in DHS custody for removal proceedings in

9    California, Arizona, and Washington who have been identified by or to medical

10   personnel, DHS or an Immigration Judge, as having a serious mental disorder or

11   defect that may render them incompetent to represent themselves in detention or

12   removal proceedings, and who presently lack counsel in their detention or removal

13   proceedings." (Dkt. # 348.)  These individuals are each at a risk that they will be

14   compelled to represent themselves in their immigration proceedings without the

15   benefit of counsel.  Accordingly, Plaintiffs hereby incorporate their Response to

16   Interrogatory Nos. 1 and 2.

17      ***

18   **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

19   **INTERROGATORY RESPONSE NO. 11 IS INSUFFICIENT:**

20      In their Third Amended Complaint, Plaintiffs allege that the Due Process

21   Clause and the Immigration and Nationality Act "require[] that Plaintiffs be

22   afforded adequate evaluations to determine whether they are mentally competent to

23   represent themselves."  *See* TAC at ¶¶ 153, 156.  Plaintiffs further allege that

24   "Plaintiffs and Plaintiff Classes have suffered and will imminently suffer

25   irreparable injury as a proximate result of this conduct, and are entitled to

26   injunctive relief to avoid that injury."  *Id.* at  ¶¶ 154, 157.  Thus, Defendants'

27   Interrogatories No. 11 and 12 are designed to elicit the identity of those who have

28   suffered prejudice and a description and supporting facts for anyone so identified.

1    In response, Plaintiffs did not identify a single individual.  Instead, they

2  merely implied that all class members who do not receive competency evaluations

3  "are at risk" that they will have to represent themselves in their immigration

4  proceedings.  Then, Plaintiffs incorporated their Responses to Interrogatories No. 1

5  and 2.  Plaintiffs' response is plainly insufficient and prevents Defendants from

6  receiving information from Plaintiffs to assist in their defense of these allegations.

7  Defendants incorporate their contentions above as to why Plaintiffs' responses to

8  Interrogatories No. 1 and 2 were insufficient.  Defendants have a right to have

9  Plaintiffs identify members of the Plaintiff class for whom Plaintiffs seek relief.

10  From the beginning of this lawsuit, Plaintiffs have represented to the Court that,

11  "The members of the Plaintiff Class can be readily identified through notice and

12  discovery."  *See* TAC at ¶ 149.  Thus, the Court should not countenance Plaintiffs'

13  change in positions regarding identification of their own class members.

14    The Court should compel Plaintiffs to immediately provide full responses to

15  Interrogatories No. 11 and 12 or face dismissal of their causes of action alleging

16  that Plaintiffs deserve competency evaluations.

17  **PLAINTIFFS' RESPONSE:**

18    Plaintiffs incorporate their Response to Defendants' Contentions

19  regarding Interrogatory Nos. 1 and 2, as this interrogatory is objectionable for the

20  same reasons.   Again, two separate Orders issued by Judge Gee have established

21  the lack of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to

22  the extent that the Court's prior orders do not settle the legal question, the question

23  of prejudice raised by Defendants is currently under submission in connection with

24  Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,

25  441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further, Defendants already have

26  answers to this Interrogatory, using the legal definitions found appropriate by

27  Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal

28  letters.   And finally, Defendants have access to the information that they seek and

-63-

1  have deliberately interfered with Plaintiffs' ability to respond, assuming such an

2  Order were forthcoming, by virtue of their redactions and "shuffling" of class

3  members' files.

4          Accordingly, Defendants' motion should be denied in its entirety.  But

5  if the Court is inclined to grant it in any respect, it should at least give Plaintiffs a

6  sufficient amount of time in which to attempt to comply, preferably until after the

7  close of document discovery, given that Defendants' discovery failures prevent

8  Plaintiffs from responding to these questions at this stage of the litigation.

9          ***

10  **INTERROGATORY NO. 12:**  For each member of the Main Class

11  identified in response to Interrogatory No. 11, please describe the prejudice the

12  class member suffered as a result of not having undergone a mental competency

13  evaluation prior to or during their immigration proceedings, and facts supporting

14  the description.

15  **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

16  **INTERROGATORY NO. 12 AS PRODUCED TO DEFENDANTS:**

17          Subject to and without waiving their General and Specific Objections,

18  Plaintiffs hereby incorporate their Response to Interrogatory No. 11.

19          ***

20  **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

21  **INTERROGATORY RESPONSE NO. 12 IS INSUFFICIENT:**

22          In their Third Amended Complaint, Plaintiffs allege that the Due Process

23  Clause and the Immigration and Nationality Act "require[] that Plaintiffs be

24  afforded adequate evaluations to determine whether they are mentally competent to

25  represent themselves."  *See* TAC at ¶¶ 153, 156.  Plaintiffs further allege that

26  "Plaintiffs and Plaintiff Classes have suffered and will imminently suffer

27  irreparable injury as a proximate result of this conduct, and are entitled to

28  injunctive relief to avoid that injury."  *Id.* at  ¶¶ 154, 157.  Thus, Defendants'

-64-

1    Interrogatories No. 11 and 12 are designed to elicit the identity of those who have

2    suffered prejudice and a description and supporting facts for anyone so identified.

3         In response, Plaintiffs did not identify a single individual.  Instead, they

4    merely implied that all class members who do not receive competency evaluations

5    "are at risk" that they will have to represent themselves in their immigration

6    proceedings.  Then, Plaintiffs incorporated their Responses to Interrogatories No. 1

7    and 2.  Plaintiffs' response is plainly insufficient and prevents Defendants from

8    receiving information from Plaintiffs to assist in their defense of these allegations.

9    Defendants incorporate their contentions above as to why Plaintiffs' responses to

10   Interrogatories No. 1 and 2 were insufficient.  Defendants have a right to have

11   Plaintiffs identify members of the Plaintiff class for whom Plaintiffs seek relief.

12   From the beginning of this lawsuit, Plaintiffs have represented to the Court that,

13   "The members of the Plaintiff Class can be readily identified through notice and

14   discovery."  *See*  TAC at ¶ 149.  Thus, the Court should not countenance Plaintiffs'

15   change in positions regarding identification of their own class members.

16        The Court should compel Plaintiffs to immediately provide full responses to

17   Interrogatories No. 11 and 12 or face dismissal of their causes of action alleging

18   that Plaintiffs deserve competency evaluations.

19   **PLAINTIFFS' RESPONSE:**

20        Plaintiffs incorporate their Responses to Defendants' Contentions

21   Regarding Interrogatory No. 11, as this interrogatory is objectionable for the same

22   reasons.  Again, two separate Orders issued by Judge Gee have established the lack

23   of relevance of Defendants' request.  (*See* Dkts. ## 355, 458.)  Further, to the

24   extent that the Court's prior orders do not settle the legal question, the question of

25   prejudice raised by Defendants is currently under submission in connection with

26   Plaintiffs' motion for partial summary judgment.  (*See* Dkts. ## 398-1 at 32 n.16,

27   441 at 28-32, 453 at 19-25, 484, 503, 504, 513.)  Further, Defendants already have

28   answers to this Interrogatory, using the legal definitions found appropriate by

1   Judge Gee, by virtue of Plaintiffs' providing of class members' names and advisal

2   letters.   And finally, Defendants have access to the information that they seek and

3   have deliberately interfered with Plaintiffs' ability to respond, assuming such an

4   Order were forthcoming, by virtue of their redactions and "shuffling" of class

5   members' files.

6        Accordingly, Defendants' motion should be denied in its entirety.  But

7   if the Court is inclined to grant it in any respect, it should at least give Plaintiffs a

8   sufficient amount of time in which to attempt to comply, preferably until after the

9   close of document discovery, given that Defendants' discovery failures prevent

10  Plaintiffs from responding to these questions at this stage of the litigation.

11       ***

12  **INTERROGATORY NO. 13:**  Identify all aliens in ICE custody in the

13  States of California, Arizona, and Washington who Plaintiffs allege should have

14  been identified by Defendants as potential members of the Main Class in

15  Government reporting, but were not identified.

16  **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

17  **INTERROGATORY NO. 13 AS PRODUCED TO DEFENDANTS:**

18       Plaintiffs incorporate their General Objections and objections to definitions

19  and instructions as set forth above.  Plaintiffs further object that this Interrogatory

20  is vague and ambiguous in that it refers to "ICE" and unspecified "Government

21  reporting," and purports to require Plaintiffs to speculate on the hypothetical

22  question of whether unnamed individuals "should have been identified" by

23  Defendants as "potential members" of the Main Class.  Plaintiffs further object to

24  this Interrogatory on the ground that information about these individuals is in the

25  Government's exclusive control and possession, and thus this Interrogatory, which

26  invites Plaintiffs to speculate on whether such individuals are part of the class, is

27  posed to Plaintiffs for no apparent reason.   Plaintiffs further object to this

28  Interrogatory on the ground that the request is premature in light of the fact that the

-66-

1  Government has thus far not produced any documents such as A-files, medical
2  records, and records of immigration proceedings responsive to Plaintiffs' discovery
3  requests post-November 21, 2011, and continues to refuse to do so on that grounds
4  that it is too burdensome.  (*See* Dkt. # 406.)

5       Plaintiffs further object on the ground that it is Defendants' position that the
6  information sought is not relevant or necessary to the presentation of their case at
7  this time, or possibly ever.  At the September 7, 2012 hearing on Plaintiffs' Motion
8  for Partial Summary Judgment, Defendants requested and the Court granted a stay
9  of discovery related to the pending motion.  As Defendants admit, these requests
10 relate to that motion.  (*See* Dkt. # 441, at 43 n.18 (requesting that the Court hold
11 motion for partial summary in abeyance pursuant to Rule 56(d) until Defendants
12 receive responses to these interrogatories).)

13      Subject to and without waiving their General and Specific Objections,
14 Plaintiffs respectfully refer the Government to Plaintiffs' advisory letters and
15 notices regarding potential Class members and invite the Government to compare
16 the names of these individuals to the names reported by the Government.

17      ***

18 **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**
19 **INTERROGATORY RESPONSE NO. 13 IS INSUFFICIENT:**

20      Among the many allegations in Plaintiffs' Third Amended Complaint,
21 Plaintiffs allege the following:

22           [T]he Government has established *no* procedures for defining
23           competence; *no* procedures for identifying whether a person is
24           "incompetent" in the first instance, such as by noting when an
25           individual's past evidences significant "red flags" as to their
26           competency; [and] *no* procedures for evaluating the mental
27           health of individuals in immigration proceedings, even if an

28

-67-

1                   Immigration Judge suspects that an individual may not be

2                   competent.

3    TAC at ¶ 4 (emphasis in original).

4          Defendants deny this allegation and seek to persuade the Court at trial that,

5    in fact, Defendants have a system that adequately identifies those individuals who

6    may belong in the Main Class.  While Defendants continue to have some difficulty

7    working with the Court's approved definition, Defendants have developed a

8    system that identifies all individuals who could potentially be class members.  In

9    Defendants' view, the system is over-inclusive, but ensures that all potential class

10   members are identified.

11         Since January 2012, Defendants have been providing biweekly reporting to

12   Plaintiffs in compliance with the Court's December 13, 2011 Order (Dkt. # 360).

13   This reporting is the "Government reporting" referenced in the interrogatory

14   request, and is well-known to Plaintiffs.  If Plaintiffs are correct in their allegation

15   that Defendants have "no procedures" to identify possible class members, Plaintiffs

16   should be able to support this allegation by demonstrating that Defendants

17   routinely do not identify in their biweekly reporting individuals who are possible

18   class members.  Thus, Interrogatory No. 13 requests that Plaintiffs provide

19   evidence to support their allegation that Defendants have "no procedures,"

20   including factual support that shows that Defendants' procedures are inadequate

21   for identifying and reporting possible class members.

22         Instead of responding with evidence, Plaintiffs assert a number of

23   objections, none of which has merit.  First, Plaintiffs assert that the request is

24   premature because Plaintiffs have not been provided discovery of documents such

25   as A-files, medical records, and records of immigration proceedings.  As of the

26   date of Defendants' preparation of this Joint Statement, Defendants have produced

27   to Plaintiffs over 250,000 pages of documents in response to Plaintiffs' nearly 300

28

1   discovery production requests. This includes the documents from over 180 A-files
2   and records of proceedings as well as medical records.

3         Second, Plaintiffs indicate that the information requested is not relevant to
4   Defendants' case. However, the information is directly relevant to Defendants'
5   ability to challenge the allegations in Plaintiffs' Third Amended Complaint. The
6   requested information, if provided, and if as sparse as Defendants predict, would
7   counter Plaintiffs' unsupported claims that Defendants have inadequate procedures
8   to identify individuals with competency issues.

9         Third, Plaintiffs point to "advisory letters" that Plaintiffs have sent
10  Defendants throughout the course of this litigation which purport to advise the
11  immigration courts that *Plaintiffs believe* a certain individual *may* be incompetent.
12  These letters do nothing to respond to Defendants' Interrogatory No. 13, which
13  seeks the identification of all aliens in ICE custody in the states of California,
14  Arizona, and Washington who Plaintiffs allege should have been, but were not,
15  identified by Defendants as potential members of the Main Class in Government
16  reporting.

17        Defendants respectfully request that the Court compel Plaintiffs to provide
18  this information. To the extent Plaintiffs refuse to do so (or are unable to provide
19  any names because none exist), the Court should strike Plaintiffs' causes of action
20  that allege that Plaintiffs are not afforded adequate competency evaluations (and
21  therefore are not being identified to the immigration courts). *See* TAC at "Causes
22  of Action" 1, 2.

23        **PLAINTIFFS' RESPONSE:**

24        Plaintiffs incorporate their Response to Defendants' Contentions
25  regarding Interrogatory No. 1, as this interrogatory is objectionable for the same
26  reasons.

27        Plaintiffs note that, for the first time, Defendants' Contentions contain
28  a request that the Court "strike" Plaintiffs' causes of action through some

-69-

1   unidentified procedural mechanism, as a supposed remedy for Plaintiffs' failure to

2   provide responses to Defendants' discovery requests.  Defendants' request

3   apparently assumes that (1) Defendants are entitled to the relief requested in this

4   motion, (2) the Court will order such relief, (3) Plaintiffs will not comply with the

5   Court's order, and (4) this Court will issue the extreme sanction of striking

6   Plaintiffs' claims. Fed. R. Civ. P. 37(b)(2)(A)(iii).  Plaintiffs dispute all of these

7   assumptions, but plainly Defendants cannot seek, through this motion, relief for the

8   violation of a discovery order that has not yet been issued.  The Court need not

9   "strike"—but can safely ignore—Defendants' premature request.

10         Plaintiffs also note that Defendants' Contentions do not address the

11   fact that, as Plaintiffs noted in their Objections to this request, Defendants are

12   capable of easily generating responsive information without the assistance of

13   Plaintiffs.  Plaintiffs have been providing Defendants with bi-weekly lists of class

14   members since January 2012, as well as advisal letters regarding certain class

15   members. (*See, e.g.*, Exhs. B, C.)  Defendants have been providing Plaintiffs with

16   lists of class members as well.  Defendants' list and Plaintiffs' list are, obviously,

17   not always identical.  Sometimes names appear on one list and not the other.

18   Defendants should be able to determine—and likely already have done so—which

19   class members Plaintiffs identified that they were not previously aware of by

20   simply comparing Plaintiffs' lists with their own lists.  It is unreasonable and

21   unnecessary for Defendants to insist on litigating motions to compel information

22   they already have and which Plaintiffs have numerous objections to providing, as

23   detailed above.  Indeed, Plaintiffs previously opted against moving to compel

24   Defendants to provide information when Defendants refused to respond to

25   Plaintiffs' discovery request, but informed Plaintiffs that responsive information

26   was publicly available on the Internet. (*See* Exh. D.)  Defendants already have this

27   information, but instead of simply accepting it, have unreasonably moved to

28   compel this information.

1  This interrogatory is additionally objectionable because it requires
2  Plaintiffs to engage in speculation and respond to hypothetical questions, based in
3  part on information they do not have.  As noted above, the parties are equally
4  capable of determining who Plaintiffs have identified to date that Defendants did
5  not initially identify.

6  But this interrogatory calls for more than a comparison of Plaintiffs'
7  list and Defendants' list.  It asks Plaintiffs to identify detainees in Washington,
8  California, or Arizona who "*should have been* identified by Defendants as
9  potential members of the Main Class in Government reporting, but were not
10  identified."  Defendants thus ask Plaintiffs to name individuals, in one of three
11  states, for whom Plaintiffs are still seeking usable A-files, that "should have been"
12  included in the Government's notice reporting.  This is already a speculative and
13  hypothetical inquiry, but its speculative nature is compounded by the fact that
14  Defendants have blocked discovery into their own procedures for notice reporting
15  and have failed to provide usable A-files.  (*E.g.*, Exhs. E, F, G, K.)

16  Plaintiffs cannot speculate about whether individuals they know
17  nothing about should have been identified through a procedure that they know
18  nothing about.  Defendants are irrationally trying to force Plaintiffs to tell them
19  how and why their notice reporting process is broken, without letting Plaintiffs
20  know how that process is working.  Indeed, Defendants' attempt to shield their
21  notice reporting system behind privilege and refusal to provide usable A-files are
22  subjects of Plaintiffs' own motion to compel.  Under these circumstances,
23  Defendants' motion should be denied.  *See, e.g.*, *Gen-Probe*, 2010 U.S. Dist.
24  LEXIS 49436, at * 3-5 (denying plaintiffs' motion to compel response to
25  interrogatory where defendant could not respond to the interrogatory without
26  obtaining discovery from plaintiffs); *Haggarty*, 2012 U.S. Dist. LEXIS 133375, at
27  *7 (denying motion to compel response to "improper hypothetical); *Anderson*,
28  2012 U.S. Dist. LEXIS 131010, at *17-20 (denying motion to compel where

1   interrogatory posed hypothetical questions and required speculation); *Williams*,

2   2011 U.S. Dist. LEXIS 137532, at * 6 (denying motion to compel where plaintiff

3   was "asking for a medical opinion based on a bare-bones hypothetical, absent the

4   patient-specific facts that would form the basis of an actual medical opinion.").

5          Accordingly, Defendants' motion should be denied in its entirety.  But

6   if the Court is inclined to grant this motion in any respect, it should at least give

7   Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

8   until after the close of document discovery, given that Defendants' discovery

9   failures prevent Plaintiffs from responding to these questions at this stage of the

10  litigation.

11          ***

12          **INTERROGATORY NO. 14:**  Identify each member of the Main Class

13  who Plaintiffs allege to be mentally incompetent to represent themselves in

14  immigration proceedings who has not been identified by Defendants as a member

15  of Subclass One.

16          **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

17  **INTERROGATORY NO. 14 AS PRODUCED TO DEFENDANTS:**

18          Plaintiffs incorporate their General Objections and objections to definitions

19  and instructions as set forth above.  Plaintiffs further object to this Interrogatory on

20  the ground that information about Main Class is in the Government's exclusive

21  possession, custody, and control and thus this question is posed to Plaintiffs for no

22  apparent reason.  Plaintiffs further object on the ground that pursuant to the Court's

23  order requiring that the parties notify each other of potential class members,

24  Plaintiffs have already notified Defendants of class members of whom they are

25  aware, and thus, Defendants have equal access to these facts.  Plaintiffs further

26  object to this Interrogatory on the ground that the request is premature in light of

27  the fact that the Government has thus far not produced any documents such as A-

28  files, medical records, and records of immigration proceedings responsive to

-72-

1   Plaintiffs' discovery requests post-November 21, 2011, and continues to refuse to

2   do so on that grounds that it is too burdensome.  (*See* Dkt. # 406.)

3        To the extent this Interrogatory seeks information regarding members of

4   Subclass One, who are by definition members of the Main Class, Plaintiffs further

5   object on the ground that it is Defendants' position that the information sought is

6   not relevant or necessary to the presentation of their case at this time, or possibly

7   ever.  At the September 7, 2012 hearing on Plaintiffs' Motion for Partial Summary

8   Judgment, Defendants requested and the Court granted a stay of discovery related

9   to the pending motion.  As Defendants admit, these requests relate to that motion.

10  (*See* Dkt. # 441, at 43 n.18 (requesting that the Court hold motion for partial

11  summary in abeyance pursuant to Rule 56(d) until Defendants receive responses to

12  these interrogatories).)

13       Subject to and without waiving their General and Specific Objections,

14  Plaintiffs respectfully refer the Government to Plaintiffs' advisory letters and

15  notices regarding potential Class members and invite the Government to compare

16  the names of these individuals to the names reported by the Government.

17       ***

18  **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

19  **INTERROGATORY RESPONSE NO. 14 IS INSUFFICIENT:**

20       Among the many allegations in Plaintiffs' Third Amended Complaint,

21  Plaintiffs allege the following:

22            [T]he Government has established *no* procedures for defining

23            competence; *no* procedures for identifying whether a person is

24            "incompetent" in the first instance, such as by noting when an

25            individual's past evidences significant "red flags" as to their

26            competency; [and] *no* procedures for evaluating the mental

27            health of individuals in immigration proceedings, even if an

28

-73-

1             Immigration Judge suspects that an individual may not be

2             competent.

3 TAC at ¶ 4 (emphasis in original).

4        Defendants deny this allegation and seek to persuade the Court at trial that,

5 in fact, Defendants have a system that adequately identifies those individuals who

6 may belong in the Main Class.  While Defendants continue to have some difficulty

7 working with the Court's approved definition, Defendants have developed a

8 system that identifies all individuals who could potentially be class members.  In

9 Defendants' view, the system is over-inclusive, but ensures that all potential class

10 members are identified.

11        Since January 2012, Defendants have been providing biweekly reporting to

12 Plaintiffs in compliance with the Court's December 13, 2011 Order (Dkt. # 360).

13 This reporting is the "Government reporting" referenced in the interrogatory

14 request, and is well-known to Plaintiffs.  If Plaintiffs are correct in their allegation

15 that Defendants have "no procedures" to identify possible class members

16 (including Subclass One members), Plaintiffs should be able to support this

17 allegation by demonstrating that Defendants routinely do not identify in their

18 biweekly reporting (or otherwise) those individuals who are Subclass One

19 members.  Thus, Interrogatory No. 14 requests that Plaintiffs provide evidence to

20 support their allegation that Defendants have "no procedures," and to provide

21 factual support that shows that Defendants' procedures are inadequate for reporting

22 possible class members (including Subclass One members).

23        Instead of responding with evidence, Plaintiffs assert a number of

24 objections, none of which has merit.  First, Plaintiffs assert that the request is

25 premature because Plaintiffs have not been provided discovery of documents such

26 as A-files, medical records, and records of immigration proceedings.  As of the

27 date of Defendants' preparation of this Joint Statement, Defendants have produced

28 to Plaintiffs over 250,000 pages of documents in response to Plaintiffs' nearly 300

-74-

1    discovery production requests.  This includes the documents from over 180 A-files

2    and records of proceedings as well as medical records.

3          Second, Plaintiffs indicate that the information requested is not relevant to

4    Defendants' case.  However, the information is directly relevant to Defendants'

5    ability to challenge the allegations in Plaintiffs' Third Amended Complaint.  The

6    requested information, if provided, and if as sparse as Defendants predict, would

7    counter Plaintiffs' unsupported claims that Defendants have inadequate procedures

8    to identify individuals with competency issues.

9          Third, Plaintiffs point to "advisory letters" that Plaintiffs have sent

10   Defendants throughout the course of this litigation which purport to advise the

11   immigration courts that *Plaintiffs believe* a certain individual may be incompetent.

12   These letters do nothing to respond to Defendants' Interrogatory No. 14 which

13   seeks the identification of each member of the Main Class who Plaintiffs allege

14   be mentally incompetent to represent himself in immigration proceedings who has

15   not been identified by Defendants as a member of Subclass One.

16         Defendants respectfully request that the Court compel Plaintiffs to provide

17   this information  To the extent Plaintiffs refuse to do so (or are unable to provide

18   any names because none exist), the Court should strike Plaintiffs' causes of action

19   that allege that Plaintiffs are not afforded adequate competency evaluations (and

20   therefore are not being identified to the immigration courts).  *See* TAC at "Causes

21   of Action" 1, 2.

22         **PLAINTIFFS' RESPONSE:**

23         Plaintiffs incorporate their Response to Defendants' Contentions

24   regarding Interrogatory Nos. 1 and 13, as this interrogatory is objectionable for the

25   same reasons.  The interrogatory asks Plaintiffs to speculate about who Defendants

26   *should have* identified as a Subclass One member through their notice reporting,

27   while Defendants refuse to tell Plaintiffs anything about their notice reporting

28

-75-

1   system and continue to deny Plaintiffs usable A-files.  It also contains an improper

2   request to "strike" certain of Plaintiffs' claims, which the Court should ignore.

3            Accordingly, Defendants' motion should be denied in its entirety.  But

4   if the Court is inclined to grant this motion in any respect, it should at least give

5   Plaintiffs a sufficient amount of time in which to attempt to comply, preferably

6   until after the close of document discovery, given that Defendants' discovery

7   failures prevent Plaintiffs from responding to these questions at this stage of the

8   litigation.

9            ***

10           In addition to Defendants' Interrogatories 1-14, Defendants concurrently

11   propounded a Request for Production of Documents for Merits Discovery, and

12   Defendants contend that Plaintiffs' response was insufficient.

13           ***

14   **PRODUCTION REQUEST NO: 1:**

15           Produce any and all Documents and Communications relied on by Plaintiffs

16   to draft responses to Defendants' First Set of Interrogatories for Merits Discovery.

17   **PLAINTIFFS' VERBATIM DISCOVERY RESPONSE TO**

18   **PRODUCTION REQUEST NO. 1 AS PRODUCED TO DEFENDANTS:**

19           Plaintiffs incorporate their General Objections and objections to definitions

20   and instructions as set forth above.  Plaintiffs further object to this request to the

21   extent it calls for the production of communications covered by the attorney-client

22   privilege and documents subject to work-product protection, in that Defendants'

23   overly broad request, read literally, refers even to privileged communications

24   between Plaintiffs' counsel and drafts of these Objections and Responses, which

25   Plaintiffs need not provide.

26           Subject to and without waiving these objections, Plaintiffs respond as

27   follows:  In responding and objecting to the referenced Interrogatories, Plaintiffs

28   referred to communications between Plaintiffs' counsel and Defendants' counsel in

-76-

1   which Plaintiffs' counsel identified potential Class and Subclass members pursuant

2   to the court-approved notices, immigration court advisal letters, and

3   correspondence with Defendants regarding specific individuals.  Defendants'

4   counsel already has copies of those documents and Plaintiffs' counsel need not

5   reproduce them here.  Plaintiffs' counsel also referred to and cited various

6   documents in the record of this case and prior discovery responses served by

7   Defendants, most, if not all, of which were cited in Plaintiffs' Responses and

8   Objections to Defendants' First Set of Interrogatories for Merits Discovery.

9   Defendants' counsel already has copies of these documents and it would serve no

10  purpose, other than to harass and burden Plaintiffs, a class of immigration

11  detainees with serious mental disorders, to require Plaintiffs to organize and

12  produce the court file from this case and Defendants' own discovery responses to

13  Defendants.

14        ***

15  **DEFENDANTS' CONTENTION AS TO WHY PLAINTIFFS'**

16  **PRODUCTION REQUEST NO.1 IS INSUFFICIENT:**

17        Defendants propounded Production Request No. 1 to obtain all documents

18  that Plaintiffs were requested to identify in their responses to Interrogatories No. 1-

19  14 above, or that were relied upon in drafting those responses.  Defendants are

20  entitled to the documents that Plaintiffs allege contain factual support for the

21  allegations they present in their Third Amended Complaint.  In response, *Plaintiffs*

22  *did not produce a single document*, and instead asserted the objections above, none

23  of which has any merit.

24        First, Plaintiffs objected on the basis that the request may seek the

25  production of communications covered by the attorney-client privilege and

26  documents subject to work-product protection.  However, Defendants seek no

27  documents that would reveal attorney-client information or attorney work-product,

28  although any such documents that would be responsive to the interrogatory should

-77-

1    be presented on a privilege log – just as Plaintiffs have insisted with respect to
2    Defendants' discovery responses.

3        Second, Plaintiffs refer to their identification of class and subclass members
4    pursuant to court-approved notices and their advisal letters as responsive to
5    Defendants' requests.  However, the court-approved notices only require Plaintiffs
6    to identify those individuals who respond to them pursuant to Notices posted in
7    detention facilities.  None of the reporting provided by Plaintiffs includes
8    information responsive to the 14 interrogatory requests identified above.
9    Similarly, Plaintiffs' "advisal letters" also are unresponsive to Defendants'
10   discovery.  These letters provide no factual support as to why *Plaintiffs believe* a
11   particular individual in removal proceedings is a member of the *Franco* class.
12   Moreover, to Defendants' recollection, none of the letters identifies Subclass One
13   members, let alone those Subclass One members who Plaintiffs claim Defendants
14   failed to identify.

15       Finally, Plaintiffs' claim that Defendants' request for these documents is
16   only meant to "harass and burden  . . . a class of immigration detainees with serious
17   mental disorders."  This claim is entirely inaccurate.  Defendants made this request
18   only to obtain from Plaintiffs documents that provide factual support for their
19   claims.  To date, Plaintiffs have failed to provide any such documents.

20       Accordingly, Defendants respectfully request that the Court immediately
21   require Plaintiffs to produce the requested documents or risk dismissal of all causes
22   of action relevant to the discovery sought by Defendants.

23   **PLAINTIFFS' RESPONSE:**

24       Plaintiffs incorporate their Responses to Defendants' Contentions
25   regarding Interrogatory Nos. 1-14, as this request is objectionable for the same
26   reasons.

27       It is not clear what Defendants are trying to compel here.  This is a
28   request for documents Plaintiffs relied on in responding to Defendants'

-78-

1   interrogatories.  As Defendants acknowledge, *they did not receive responses to*

2   *their interrogatories*.  For instance, Defendants did not receive the list of class or

3   Subclass members they sought for various interrogatories; nor did they receive a

4   response about what might have happened if certain class members had

5   Government-appointed counsel, a bond hearing, or an evaluation; nor did they

6   receive an explanation of why their notice reporting system does not work and who

7   it failed to identify.  Nor did they receive responses to their questions requesting

8   that Plaintiffs specify in detail the factual basis for such responses, or identify

9   "supporting documents" (*e.g.,* Interrogatory No. 10) for those responses.  Rather,

10  Plaintiffs objected to all these interrogatories and, as demonstrated by their lengthy

11  Joint Stipulation, Defendants are dissatisfied with those objections and are seeking

12  to compel Plaintiffs to respond.  Plaintiffs referred to certain cited documents in

13  these objections, such as Plaintiffs' numerous advisal letters, Plaintiffs' class

14  member reporting correspondence, and portions of the docket of this case, but

15  Defendants already have those documents.  Although Defendants ask that Plaintiffs

16  be "immediately require[d]" to produce something, it is not clear what that

17  something is, because Plaintiffs have not provided responses to Defendants'

18  interrogatories and Defendants have made clear in their Contentions, above, that

19  they do not want the documents Plaintiffs referred to in their objections or think

20  those documents are relevant.

21          Defendants' Contention regarding privileged documents is also

22  puzzling.  Plaintiffs did not respond to the interrogatories by identifying responsive

23  facts or supporting documents, and then choosing not to produce them or to

24  produce them in redacted form on the grounds of privileges or protections.  Rather,

25  Plaintiffs provided no responses, and only objections, to the interrogatories and the

26  derivative request for production.  Some of those objections pointed Defendants

27  toward documents in Defendants' possession or in the court's docket which were

28  mentioned or cited in the objections to the interrogatories.  As is common in

1  discovery objections, Plaintiffs also included an objection that the request, read

2  literally, even called for privileged or work-product protected materials.

3  Defendants frequently do the same, even where (unlike here) those objections are

4  plainly not warranted.  (Exhs. F, H.)  But there were no responses to these

5  interrogatories, no documents were identified or produced, and thus no documents

6  that would otherwise have been produced were withheld on the basis of privileges

7  or protections.

8          The motion to compel production of documents should be denied, but

9  at minimum, Plaintiffs request an opportunity to further respond after Defendants

10 clarify what documents they are trying to compel because, as discussed above, this

11 very important part of their document request remains unclear.  Further, this

12 request is derivative of Defendants' interrogatories, which need not be responded

13 to for reasons described above, and any effort to compel a response to this request

14 is premature until, at least, the Court rules on the remainder of the parties' motions

15 to compel.  Accordingly, the Court should deny this request outright, or at least

16 defer ruling until after it rules on the remainder of the parties' cross-motions to

17 compel.

18

19 Dated:  January 8, 2013            Respectfully submitted,

20                                    By:  /s/Victor M. Lawrence

21                                         VICTOR M. LAWRENCE
                                           Office of Immigration Litigation
22                                         District Court Section
                                           U.S. Department of Justice
23                                         Washington, D.C.  20530
                                           Telephone: (202) 305-8788
24                                         Facsimile: (202) 305-7000

25
                                           Attorneys for Defendants
26

27

28

-80-

# EXHIBIT LIST

**Exhibit A** – Letter from Victor M. Lawrence to Ahilan T. Arulanantham from
November 21, 2012

**Exhibit B** -  Plaintiffs' advisal letters to Defendants from November 29, 2011
through December 14, 2012

**Exhibit C** - Plaintiffs' Court-ordered Notices to Defendants regarding
potential class members from January 18, 2012 through December 20,
2012

**Exhibit D** - Defendants' email to Plaintiffs, dated October 24, 2012

**Exhibit E** -  Correspondence between Plaintiffs and Defendants, dated
November 14, 2012 through December 4, 2012

**Exhibit F** - Defendants' December 4, 2012 letter to Plaintiffs

**Exhibit G** - Plaintiffs' December 21, 2012 email to Defendants

**Exhibit H** - Plaintiffs' November 19, 2012 letter to Defendants

**Exhibit I** -   Redacted emails produced by Defendants

**Exhibit J** - Plaintiffs' email to Defendants, dated December 14, 2012

**Exhibit K** - Excerpts from a January 30, 2012 removal hearing transcript for
class member Celia Grisel Carranza-Salinas, produced by Defendants

# CERTIFICATE OF SERVICE

Case No. CV 10-2211-DMG (DTB)

    I hereby certify that one copy of the foregoing NOTICE OF DEFENDANTS'

MOTION TO COMPEL PRODUCTION OF RECORDS, JOINT STIPULATION,

and its accompanying declarations and exhibits were served pursuant to the district

court's ECF system as to ECF filers on January 8, 2013, to the following ECF

filers:

Ahilan T Arulanantham
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
213-977-5211
Fax: 213-417-2211
Email: aarulanantham@aclu-sc.org

                    /s/ Samuel P. Go
                    Samuel P. Go
                    Senior Litigation Counsel
                    District Court Section
                    Office of Immigration Litigation
                    Civil Division
                    U.S. Department of Justice
                    P.O. Box 868, Ben Franklin Station
                    Washington, D.C. 20044
                    Tel: (202) 353-9923
                    Fax: (202) 616-8962