1   AHILAN T. ARULANANTHAM (State Bar No. 237841)
    aarulanantham@aclu-sc.org
2   CARMEN IGUINA (State Bar No. 277369)
    ciguina@aclu-sc.org
3   ACLU FOUNDATION OF SOUTHERN CALIFORNIA
    1313 West 8th Street
4   Los Angeles, California 90017
    Telephone: (213) 977-5211
5   Facsimile: (213) 417-2211

6   MICHAEL H. STEINBERG (State Bar No. 134179)
    steinbergm@sullcrom.com
7   SULLIVAN & CROMWELL LLP
    1888 Century Park East, Suite 2100
8   Los Angeles, California 90067-1725
    Telephone: (310) 712-6600
9   Facsimile:  (310) 712-8800

10  Attorneys for Plaintiffs
    (additional counsel listed on following page)

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14  JOSE ANTONIO FRANCO-            )   Case No. 10-CV-02211 DMG (DTBx)
    GONZALEZ, et al.,              )
15                                 )   **JOINT STIPULATION**
                                   )   **REGARDING DISPUTE OVER**
16         Plaintiffs & Petitioners, )  **PRODUCTION OF RECORDS**
                                   )
17              v.                 )   Judge: Honorable David T. Bristow
                                   )
18  ERIC H. HOLDER, JR.,           )   No Discovery Deadline/Schedule Set
    Attorney General, et al.,      )
19                                 )   No Trial Date Set
         Defendants & Respondents. )
20                                 )
                                   )   Hearing Date:   January 28, 2013
21                                 )   Time:           10:00 a.m.
                                   )
22

23

24

25

26

27

28

1   JUDY LONDON (State Bar No. 149431)
    jlondon@publiccounsel.org
2   TALIA INLENDER (State Bar No. 253796)
    tinlender@publiccounsel.org
3   PUBLIC COUNSEL
    610 South Ardmore Avenue
4   Los Angeles, California 90005
    Telephone: (213) 385-2977
5   Facsimile:  (213) 385-9089

6   JUDY RABINOVITZ (*pro hac vice*)
    jrabinovitz@aclu.org
7   ACLU IMMIGRANTS' RIGHTS PROJECT
    125 Broad Street, 18th Floor
8   New York, New York 10004-2400
    Telephone: (212) 549-2618
9
    DAVID LOY (State Bar No. 229235)
10  dloy@aclusandiego.org
    SEAN RIORDAN (State Bar No. 255752)
11  sriordan@aclusandiego.org
    ACLU OF SAN DIEGO & IMPERIAL COUNTIES
12  P.O. Box 87131
    San Diego, California 92138
13  Telephone: (619) 232-2121
    Facsimile:  (619) 232-0036
14
    JAMES PREIS (State Bar No. 82690)
15  jpreis@mhas-la.org
    MENTAL HEALTH ADVOCACY SERVICES
16  3255 Wilshire Boulevard, Suite 902
    Los Angeles, California 90010
17  Telephone: (213) 389-2077
    Facsimile:  (213) 389-2595
18
    MATT ADAMS (*pro hac vice*)
19  matt@nwirp.org
    RIDDHI MUKOPADHYAY (*pro hac vice*)
20  riddhi@nwirp.org
    NORTHWEST IMMIGRANTS' RIGHTS PROJECT
21  615 2nd Avenue, Suite 400
    Seattle, Washington 98104-2244
22  Telephone: (206) 957-8611
    Facsimile:  (206) 587-4025
23
    JAMES LYALL (*pro hac vice*)
24  jlyall@acluaz.org
    ACLU FOUNDATION OF ARIZONA
25  3707 N. 7th Street, Suite 235
    Phoenix, Arizona 85014
26  Telephone: (602) 773-6001
    Facsimile:  (602) 650-1376
27
    *Attorneys for Plaintiffs*
28

# TABLE OF CONTENTS

**Page(s)**

JOINT STATEMENT ................................................................................................. 1

I.     PLAINTIFFS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1 ............................................................................................. 1

II.    DEFENDANTS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1 ............................................................................................. 4

III.   ISSUES IN DISPUTE ................................................................................. 7

     File Discovery Production Format ............................................................. 7

     Missing and Deficient Privilege Logs ..................................................... 12

     Non-Responsive or "NR" Redactions ..................................................... 23

     Deposition Limit........................................................................................ 26

     Zhalezny Interrogatories .......................................................................... 32

-i-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander* v. *FBI*,
    192 F.R.D. 50 (D. D.C. 2000) ................................................................ 14

*ArcelorMittal Cleveland, Inc.* v. *Jewell Coke Co., L.P.*,
    No. 10 Civ. 362, 2010 U.S. Dist. LEXIS 133263 (N.D. Ohio Dec. 16, 2010) ...................................................................................................... 24, 25

*Beckett* v. *Mellon Inv. Servs., LLC*,
    No. C06-5245 RJB, 2010 U.S. Dist. LEXIS 46208 (W.D. Wash. Apr. 5, 2010) ...................................................................................................... 37, 42

*Bess* v. *Cate*,
    No. 07 Civ. 1989 JAM JFM, 2008 WL 5100203 (E.D. Cal. Nov. 26, 2008) ............................................................................................................ 39

*Best Buy Stores, L.P.* v. *Manteca Lifestyle Ctr., LLC*,
    No. 10 Civ. 389 (WBS)(KJN), 2011 U.S. Dist. LEXIS 62817 (E.D. Cal. June 14, 2011) ................................................................................................ 13

*Beverage Distribs.* v. *Miller Brewing Co.*,
    No. 08 Civ. 827, 2010 U.S. Dist. LEXIS 50732 (S.D. Ohio Apr. 28, 2010) ............................................................................................................ 24

*Brown* v. *West Corp.*,
    No. 11-284, 2012 WL 5400043 (D. Neb. Nov. 5, 2012) ............................ 22

*Burlington Northern and Santa Fe Railway* v. *United States District Court*,
    408 F.3d 1142 (9th Cir. 2005) ........................................................ 19, 20, 40

*Cambridge Electronics Corp.* v. *MGA Electronics, Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004) ........................................................ passim

*Carl Zeiss Vision Inter'l GMBH* v. *Signet Armorlite, Inc.*,
    No. 07-0894, 2009 WL 4642388 (S.D. Cal. Dec. 1, 2009) ........................ 20

*Clark* v. *Mason*,
    No. C04-1647-JCC-MAT, 2006 U.S. Dist. LEXIS 59425 (W.D. Wash. Aug. 22, 2006) ................................................................................................ 27

*Coastal States Gas Corp.* v. *Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .................................................................... 14

*Coleman* v. *Schwarzenegger*,
    No. 90-0520, 2007 WL 4328476 (N.D. Cal. Dec. 6, 2007) ........................ 19

*Coleman* v. *Schwarzenegger*,
    No. Civ. S-90-0520 LKK JFM P, 2008 U.S. Dist. LEXIS 111652 (N.D. Cal. July 8, 2008) ...................................................................................... 19

-ii-

*Crawford* v. *Melzer*,
   No. 10 Civ. 280 (RS) (PSG), 2011 U.S. Dist. LEXIS 34912 (N.D. Cal.
   Mar. 23, 2011) ......................................................................................passim

*David* v. *Alphin*,
   No. 3:07 Civ. 11, 2010 U.S. Dist. LEXIS 144275 (W.D. N.C. Mar. 30,
   2010) ..................................................................................................... 24

*DeCamp* v. *City of Vallejo*,
   No. 06-1283, 2007 WL 1589541 (E.D. Cal. Jun. 1, 2007) ..................... 26

*Dominguez* v. *Schwarzenegger*,
   No. C 09-2306 CW (JL), 2010 U.S. Dist. LEXIS 94549 (N.D. Cal. Aug.
   25, 2010) ............................................................................................... 17

*Granberry* v. *Jet Blue Airways*,
   228 F.R.D. 647 (N.D. Cal. 2005) ........................................................... 40

*Grider* v. *Keystone Health Plan Central, Inc.*,
   580 F.3d 119 (3d Cir. 2009) ................................................................... 22

*Hoot Winc, LLC* v. *RSM McGladrey Financial Process Outsourcing, LLC*,
   No. 08-1559, 2009 WL 3857425 (S.D. Cal. Nov. 16, 2009) .............. 20, 21

*HR Tech., Inc.* v. *Imura Int'l U.S.A., Inc.*,
   No. 08-2220-JWL, 2010 U.S. Dist. LEXIS 121921 (D. Kan. Nov. 17,
   2010) ..................................................................................................... 24

*In re Adelphia Communs. Corp.*,
   338 B.R. 546 (Bankr. S.D.N.Y. 2005) ..................................................... 9

*In re County of Erie*,
   473 F.3d 413 (2d Cir. 2007) ................................................................... 14

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ............................................................ 16, 19

*In re Imperial Corporation of America*,
   174 F.R.D. 475 (S.D. Cal. 1997) ................................................ 17, 18, 20, 21

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998) .............................................................. 14

*In re Motor Fuel Temperature Sales Practices Litigation*,
   No. 07-1840, 2009 WL 959491 (D. Kan. Apr. 3, 2009) .......................... 21

*In re State Street Bank & Trust Co., Fixed Income Funds Invs. Litig.*,
   No. 08md1945 (RJH) (DFE), 2009 U.S. Dist. LEXIS 34967 (S.D.N.Y.
   Apr. 8, 2009) ......................................................................................... 24

*Jumping Turtle Bar and Grill* v. *City of San Marcos*,
   No. 10-270, 2010 WL 4687805 (S.D. Cal. Nov. 10, 2010) ..................... 20

*Lahr* v. *NTSB*,
   569 F.3d 964 (9th Cir. 2009) .................................................................. 16

-iii-

*Machin* v. *Zuckert,*
316 F.2d 336 (D.C. Cir. 1962) ........................................................ 40

*Mancini* v. *Ins. Corp.,*
No. 07 Civ. 1750-L (NLS), 2009 U.S. Dist. LEXIS 51321 (S.D. Cal. Jul. 18, 2009) ................................................................................ 9, 10

*MedtronicSofamor Danek, Inc.* v. *Michelson,*
No. 01-2373-GV, 2002 U.S. Dist. LEXIS 27981 (W.D. Tenn. Jan. 29, 2002) ....................................................................................... 24

*Narayan* v. *EGL, Inc.,*
No. C05-04181 RMW (HRL), 2006 U.S. Dist. LEXIS 81125 (N.D. Cal. Oct. 24, 2006) ........................................................................... 17

*Novelty, Inc.* v. *Mt. View Mktg.,*
No. 07 Civ. 1229-SEB-JMS, 2010 U.S. Dist. LEXIS 35082 (S.D. Ind. Jan. 29, 2010) ..................................................................................... 24

*Orion Power Midwest, L.P.* v. *Am. Coal Sales Co.,*
No. 05 Civ. 555, 2008 U.S. Dist. LEXIS 76366 (W.D. Pa. Sept. 30, 2008) ......................................................................................... 24, 25

*Postx Corp.* v. *Secure Data Motion,*
No. C 02-04483 SI, 2004 U.S. Dist. LEXIS 24869 (N.D. Cal. June 9, 2004) ........................................................................................... 17

*Ramirez* v. *Olympic Health Management Systems, Inc.,*
No. 07-3044, 2008 WL 5377882 (E.D. Wash. Dec. 23, 2008) ...................... 19

*Republican Party* v. *Martin,*
136 F.R.D. 421 (D.N.C. 1991) ....................................................... 14

*Richmark Corp.* v. *Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992) ........................................................ 39

*Ryan Investment Corp.* v. *Pedregal De Cabo San Lucas,*
No. 06-3219, 2009 WL 5114077 (N.D. Cal. Dec. 18, 2009) ......................... 22

*Schiller* v. *City of New York,*
244 F.R.D. 273 (S.D.N.Y. 2007) ..................................................... 26

*SEC* v. *Kozvan,*
No. 11-2017-JWL, 2012 U.S. Dist. LEXIS 106162 (D. Kan. July 31, 2012) ................................................................................... 9, 10

*SEC* v. *Thrasher,*
No. 92 Civ. 6987 (JFK), 1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. Mar. 20, 1996) ........................................................................................... 18

*Sprint Comm. Comp.* v. *Big River Telephone Co.,*
No. 08-2046, 2009 WL 2878446 (Sept. 2, 2009) .................................... 21

*Thomas* v. *Hickman,*
No. 1:06-cv-00215, 2007 WL 4302974 (E.D. Cal., Dec. 6, 2007) .................. 21

-iv-

*United States* v. *Bouchard Trans.*,
  No. 08-4490, 2010 WL 1529248 (E.D.N.Y. Apr. 14, 2010) ............................ 22

*Vodak* v. *City of Chicago*,
  No. 03-2463, 2004 WL 2032147 (N.D. Ill. Sept. 9, 2004) ............................... 26

*Wacom* v. *Hanvon Corp.*,
  No. 06-5701, 2008 WL 110495 (W.D. Wash. Jan. 8, 2008) ............................. 19

*Wagner* v. *Dryvit Sys., Inc.*,
  208 F.R.D. 606 (D. Neb. 2001) ...................................................................... 9

*Williams* v *Spring/United Mgmt. Co.*,
  230 F.R.D. 640 (D. Kan. 2005) ...................................................................... 9

**STATUTES AND RULES**

Cal. R.P.C. 5-200 ....................................................................................... 42

Fed. R. Civ. P.
  11(b)(3) ................................................................................................. 42
  26(a)(5)(A) ............................................................................................ 15
  26(b) ................................................................................................ passim
  30(a) ................................................................................................ 27, 29
  30(b)(6) ........................................................................................... 29, 32
  33(a)(1) ............................................................................................ passim
  33(b) .................................................................................................... 42
  33(d) ............................................................................................... passim
  34 ..................................................................................................... 9, 24
  34(b) ................................................................................................... 8, 9
  37 ..................................................................................................... 1, 3

Fed. R. Evid. 401 ....................................................................................... 40

L.R.
  37-1 ...................................................................................................... 7
  83-3.1.2 ............................................................................................... 42

**OTHER AUTHORITIES**

1993 Fed. R. Civ. P. Adv. Comm. Note to Rule 26(b)(5) ....................... 17, 20, 21

Privacy Impact Assessment for the ICE Alien Medical Records Systems
  (Nov. 2012), *available at*
  http://www.dhs.gov/sites/default/files/publications/privacy/PIAs/privacy_
  pia_ice_alien%20medical%20records%20systems_november%202012.p
  df ........................................................................................................ 4

U.S. Dep't of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical
  Year Book (Feb. 2012) at 03, Table 13, *available at*
  http://www.justice.gov/eoir/statspub/fy11syb.pdf. ................................. passim

-v-

# JOINT STATEMENT

Pursuant to Rule 37 and this Court's orders, both parties have met and conferred regarding Plaintiffs' concerns with Defendants' responses to their discovery requests and the Court's order compelling Defendants to produce A-files for class members.  (Dkt. # 481.)  Unable to reach an agreement at this time, the parties hereby respectfully submit their positions:

## I.    PLAINTIFFS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1

It is a sad day when Plaintiffs move to compel the production of information that goes to the heart of a case challenging the Government's treatment of the most vulnerable immigrants in its care.  But Plaintiffs are forced to file this Joint Stipulation because Defendants' conduct with regard to discovery has now surpassed obstructionist, as they continue to invent new ways to interfere with Plaintiffs' efforts to obtain the discovery to which they are entitled.

As this Court is aware, Plaintiffs first moved to compel Defendants to produce so-called "A-files" and medical files, the files of immigrants that identify the procedural and medical histories of the members of the Class.  (Dkt. # 481.)  After being ordered to produce them, Defendants apparently gathered, then shuffled, the documents, much like cards at a Blackjack table, mixed up A-file documents from various detainees and put these documents into enormous PDF files, with documents for different detainees randomly lumped together and without unique Bates numbers, in violation of their obligation to produce documents as they are maintained in the usual course of business.  To date, and after considerable effort, Plaintiffs have not yet been able to separate, categorize, or review all the documents received, and, even if Plaintiffs are able to do so, Plaintiffs can never be sure that they have done so correctly.  And what is the Government's excuse for this?  None.  Defendants do not contend that these documents were kept in this confused manner in the usual course of business.

1    But even after one tries to un-shuffle the deck dealt to Plaintiffs, these

2 A-files, along with other documents Defendants have produced, contain numerous

3 redactions on the ground that the material being redacted is "non-responsive."  In

4 the eyes of the Government, the federal rules permit it to redact information such

5 as the author of the document, the recipients,[1] and a host of other information on

6 the ground that the precise bit of information is supposedly "non-responsive."

7 Defendant's discovery productions also contain widespread redactions and

8 withholdings on privilege grounds, but Defendants either have not provided

9 privilege logs, or have provided privilege logs that are so deficient as to be useless.

10    Defendants have also rejected Plaintiffs' request to increase the

11 deposition limit.  Although this is a complex class action spanning three states with

12 numerous constitutional and statutory claims, where the conduct of many different

13 detention facilities (both run by the Government and run by third parties) is at

14 issue, the Government refuses to permit discovery into its practices, insisting

15 instead on a few deponents, designated by the Government, who would

16 purportedly testify as to all of the Government's practices.  However, because

17 there would typically be three or four witnesses at each facility with knowledge of

18 the treatment of the Main Class and the two Subclasses, Plaintiffs believe that they

19 will need to pursue at least 20 more depositions, with the precise number

20 depending on both the testimony of those deponents and the extent to which the

21 Government will argue (and the deponents will testify) that practices vary by

22 facility.  Compounding the uncertainty is the fact that Plaintiffs are often unable to

23 determine names of potential deponents due to Defendants' baseless non-

24 responsiveness redactions and unexplained "law enforcement" redactions.

25

[1]    The claim that such basic information is non-responsive is meritless.  If an

26 email contained a statement "Our system mistreats mentally ill immigrants," surely it would matter whether this statement was made by an annoyed immigration

27 officer as opposed to the statement of the Attorney General.  This basic information is part of the relevant context of the document.

28

-2-

1    Defendants also refuse to provide full responses to interrogatories

2    concerning Defendants' implementation of the *Matter of M-A-M-* decision, which

3    is the cornerstone of Defendants' defense.  Defendants say that these

4    interrogatories are all answered by reference to a chart that they produced, but that

5    is not so.  Defendants also have suggested that they already produced documents

6    responsive to these interrogatories, but they refuse to direct Plaintiffs to such

7    information.  Defendants offer a number of excuses, but none is valid.[2]

8    Defendants are plainly doing what they can to increase the costs to

9    Plaintiffs' counsel of pursuing this case.[3]  But the burden that Defendants seek to

10   impose, and have largely obtained, is to the detriment of this certified class of

11   mentally disabled immigration detainees in removal proceedings, facing potential

12   unlawful deportations and indefinite detentions at Defendants' hands.  Plaintiffs

13   have every desire to litigate this case efficiently and obtain class-wide relief, but

14   cannot do that when Defendants refuse to provide them documents, and then make

15   it unreasonably difficult for Plaintiffs to actually review those documents.

16   Defendants' conduct cannot be countenanced.  Plaintiffs ask that this

17   Court order Defendants to (1) reproduce detainee A-files and medical files in the

18   manner in which they are kept in the usual course of business (separated and

19   labeled by detainee) and with unique Bates numbers within 14 days, and produce

20   future A-files in the same format; (2) provide sufficiently detailed privilege logs

21   _____

22   [2]    Plaintiffs made every effort to resolve these issues informally, including by proposing, at the Government's election, a binding or non-binding informal conference with Your Honor so that the parties could gain guidance from Your

23   Honor without the burden and expense of motions to compel.  Defendants rejected this proposal and insisted on motions to compel.  (Exhs. A-H.)  In addition to

24   discussions on November 19, 2012, December 6, 2012, and December 21, 2012, the parties exchanged written correspondence on these issues.  (*Id.*)

25   [3]    Defendants are also currently attempting to compel Plaintiffs to respond to a

26   set of largely vague and hypothetical interrogatories.  (*See* Dkt. # 513.)  Even if Plaintiffs were required to respond, Plaintiffs cannot sort through Defendants'

27   discombobulated and redacted document dump to answer the interrogatories. Nonetheless, Defendants insist on pushing forward with their motion to compel.

28

-3-

1   for all past document productions and future productions; (3) within 14 days,

2   reproduce all documents previously redacted as non-responsive with

3   non-responsiveness redactions removed, and abstain from non-responsiveness

4   redactions moving forward; (4) permit Plaintiffs to take at least 20 additional

5   depositions; and (5) fully respond to Interrogatory Nos. 3-5 and 7-18 of the

6   Plaintiff Maksim Zhalezny's First Set of Interrogatories ("Zhalezny

7   Interrogatories") within 14 days.

8   **II.    DEFENDANTS' INTRODUCTORY STATEMENT PURSUANT TO L.R. 37-2.1**

9        Plaintiffs' veiled allegations are not only misleading, but are meritless.

10  Defendants' discovery production in this case not only fully satisfies their

11  discovery obligations under the Federal Rules, but goes well beyond what is

12  required.  As a courtesy to Plaintiffs, Defendants took the significant and time-

13  consuming step of converting Plaintiffs' requested A-file records and Records of

14  Proceedings (ROPs), which are actually maintained in the normal course of

15  business as hard copy records, into an electronic format to assist Plaintiffs in their

16  ability to access and review these documents.[4]  The medical records requested by

17  the Plaintiffs are maintained in the normal course of business in electronic or paper

18  form, depending on the facility where these records are held, but as a courtesy to

19  Plaintiffs, Defendants converted the medical records that were in paper form into

20  an electronic format to produce to Plaintiffs.  Moreover, the electronic medical

21  records are maintained in more than one location.[5]

22

23  [4]    For cases that had not been appealed, Defendant U.S. Department of Justice
     (DOJ) took the added step of converting all of the recorded hearings into transcript
24  format, at considerable expense and outside of the normal course of its business
     records operations since DOJ normally does not produce transcripts in cases where
25  no appeal is filed. In making this additional effort, DOJ greatly facilitated
     Plaintiff's review of these audio recordings.

26
27  [5]    *See* Privacy Impact Assessment for the ICE Alien Medical Records Systems
     (Nov. 2012), *available at*
28  http://www.dhs.gov/sites/default/files/publications/privacy/PIAs/privacy_pia_ice_a

-4-

1    Plaintiffs baselessly and wrongly accuse Defendants of intentionally

2  shuffling these documents to hinder their review of this discovery.  Nothing could

3  be further from the truth.  The A-File records produced to Plaintiffs are grouped

4  together, in sequential bates ranges, for each alien and medical records are

5  similarly grouped together, in sequential bates ranges, for each alien.  Because a

6  limited number of records produced to Plaintiffs in November are produced in

7  more than one bates range, Defendant Department of Homeland Security (DHS)

8  also provided a log sheet to identify the specific bates ranges for documents that

9  related to each alien.[6]  Furthermore, DHS created bookmarks in each large PDF

10  file produced to Plaintiffs to identify specific documents/files within the larger

11  PDF.[7]  All of the documents DHS produced were bates-stamped with unique bates

12  numbers; Defendant U.S. Department of Justice (DOJ) produced each Record of

13  Proceeding separately, individually identified by A# and name in the title of each

14  electronic file, in order to facilitate review.  As to Plaintiffs' exhibit of a non-Bates

15  numbered document, this exhibit is of a hearing transcript bearing a title clearly

16  identifying its contents, including the name and A# of the individual concerned–

17  again, so no reasonable confusion could occur.  Accordingly, Defendants not only

18  produced the A-file and medical file documents in the manner they were

19  maintained in the usual course of business, but Defendants took additional steps

20

21  _____

22  lien%20medical%20records%20systems_november%202012.pdf ("IHSC

23  maintains six IT systems that record and manage information related to the medical

    evaluation and treatment of detainees, and the processing of claims for payments to

24  outside medical service providers.")

25  [6]    *See* Ex. 1, Defendants' log preceding ICE0039522, produced to Plaintiffs in

26  the November 2, 2012 production.

27  [7]    *See* Ex. 2, Example of Sample Bookmarks included in Defendants'

    discovery productions.

28

-5-

1  beyond their obligations under the Federal Rules to make it easier for Plaintiffs to

2  access and review the documents.

3      Defendants have also provided privilege logs that meet the requirements of

4  the Federal Rules, appropriately produced categorical logs in the instances where

5  voluminous records are being produced.  Defendants redacted as non-responsive e-

6  mail addresses, telephone numbers, computer database language code, and, in

7  some instances, the names of OPLA and/or IHSC officials who transmitted or

8  received requests regarding mental health reviews of aliens who were detained at

9  ICE detention facilities.  Defendants redacted this information to protect the

10 privacy of its own employees, and almost all of the redacted information is

11 irrelevant to this litigation.

12     Defendants are agreeable to a modest increase of the presumptive 10-

13 deposition limit, but an "open-ended" minimum of 20 additional depositions in

14 unwarranted and excessive.  Defendants propose that they shall make available the

15 three (3) Field Medical Coordinators (FMCs) that cover non-IHSC facilities in

16 California and Arizona.  These FMCs are the individuals that liaison with the non-

17 IHSC facilities regarding medical issues and Defendants' role and interplay in

18 screening / identifying detainees at non-IHSC facilities who may have serious

19 mental illnesses, and are the individuals most familiar with the Government's

20 current practices.[8]  Depositions of these three FMCs will cover the same

21 information sought by Plaintiffs' request for twenty (20) additional depositions.

22     Defendants have sufficiently responded to Plaintiffs' interrogatories

23 concerning their implementation of *Matter of M-A-M-,* by producing business

24 records from which the answers to the interrogatories may be determined, pursuant

25 to Fed. R. Civ. P. 33(d).  Defendants have devoted substantial costs and man-hours

26

27 [8]  Defendants note that there are no non-IHSC facilities that are utilized in Washington to detain possible class members.

28

-6-

in producing to Plaintiffs over 250,000 pages of documents in response to Plaintiffs' nearly 300 discovery production requests, and even took additional steps to aide Plaintiffs' access and review of the documents.  Plaintiffs now request that Defendants be ordered to go beyond the Federal Rules and produce discovery in the format they desire and to do Plaintiffs' work for them.  As Plaintiffs and the Government now possess nearly identical information, Plaintiffs' desire to litigate this case efficiently will be evidenced only by their own efforts to do so.

## III.   ISSUES IN DISPUTE

Plaintiffs' discovery concerns relate to (1) the format of Defendants' discovery productions in response to this Court's order granting Plaintiffs' motion to compel sampling discovery (Dkt. # 481) ("Sampling Discovery Productions"); (2) Defendants' productions of privilege logs; (3) Defendants' redactions on "non-responsiveness" ("NR") grounds; (4) Defendants' refusal to agree to a deposition limit increase; and (5) Defendants' responses to certain of the Zhalezny Interrogatories.[9]

*File Discovery Production Format*

**Plaintiffs' Position**

---

[9]     Plaintiffs primarily object that documents and privilege logs produced by Defendants to date contain deficiencies that Defendants refuse to remedy.  Because Plaintiffs' first three sets of issues in dispute relate to the content and format of Defendants' document productions and privilege logs (or lack thereof) as opposed to the sufficiency of Defendants' objections, Plaintiffs choose not to set forth verbatim their requests and defendants' responses for those issues.  *Cf.* L.R. 37-1 (requiring that joint stipulation contain a verbatim recitation of the interrogatory and response if the sufficiency of an interrogatory response is at issue).  Rather, Plaintiffs will state their position on each separate dispute and then provide Defendants with an opportunity to respond.  The parties will do the same for Plaintiffs' request to increase the deposition limit.  However, the parties will reproduce verbatim each challenged interrogatory from the Zhalezny Interrogatories, along with Defendants' verbatim responses.

1       Plaintiffs initially requested, and Defendants were ordered to produce,

2   various documents related to over 200 detainees, including A-files, records of

3   proceedings, medical files, mental health evaluations and database information.

4   (Dkts. ## 406, 481.)  Defendants have produced a large portion of those

5   documents, but Plaintiffs object to the format in which Defendants have produced

6   the documents because the format is so disorganized as to make meaningful review

7   impossible.  Not surprisingly, this disorganized "document dump" does not

8   comport with Defendants' discovery obligations or the federal rules.

9       When Plaintiffs requested that the Government produce files for various

10  class members, Plaintiffs requested that each document be "produced as it is kept

11  in the usual course of business."  (*See* Exhs. I-J.)  Of course, this is consistent with

12  the federal rules.  *See* Fed. R. Civ. P. 34(b)(2)(E).  Defendants never objected to

13  that instruction (Exh. K) (Dkt. # 406 at 1 n.1), nor could they in view of Fed. R.

14  Civ. P. 34(b)(2)(E).  On September 20, 2012, this Court granted Plaintiffs' motion

15  to compel and ordered Defendants to produce a sample of these documents,

16  comprising over 200 sets of files.  (Dkt. # 481.)  The deadline for that production

17  was December 12, 2012.

18      When Defendants began producing these documents, rather than producing

19  each detainee's A-file in a separate document (labeled by name) or by individually

20  labeling by name the various components of an individual's A-file, Defendants

21  combined various documents related to numerous, disparate detainees into massive

22  PDF files which require significant time and effort to separate.  Many of these PDF

23  files are not organized in any discernible manner.  For the PDF files for which

24  Defendants did produce an index, Defendants "locked" the PDF files, making it

25  impossible for Plaintiffs to optimize the files for review or to easily extract relevant

26  pages for class members.  Medical files for Subclass One members were produced

27  over 700 PDF files, without an index and without any way for Plaintiffs to identify

28  which PDF file, files or portions of files relate to each class member.  Further still,

-8-

1   many of these documents, including records of proceedings ("ROPs"), also are

2   missing unique Bates numbers, that is, the ROPs are all numbered with Bates

3   starting with "000001" or "000002", which makes it impossible for the parties to

4   differentiate between ROPs produced for different class members.  (Exh. DD.)

5   Other ROP documents contain no Bates numbers at all.  (Exh. EE.)

6        By failing to object to Plaintiffs' discovery instructions, Defendants waived

7   any right to produce these documents in anything but the manner in which they are

8   kept in the usual course of business.  *See Williams* .v *Spring/United Mgmt. Co.*,

9   230 F.R.D. 640, 652 (D. Kan. 2005) (untimely format objections are waived); Fed.

10  R. Civ. P. 34(b)(2)(D)-(E).  These documents surely were not kept in this

11  disorganized manner in the Government's files—rather, Defendants had to take

12  affirmative steps to produce the documents in this manner.  Even had they not

13  waived the objection, the rules could not possibly be read to authorize the

14  incoherent method of production Defendants have employed.  The Court should

15  order Defendants to reproduce these documents, appropriately identified by

16  detainee name and with unique Bates numbers.  *See*, *e.g.*, *SEC* v. *Kozvan*, No. 11-

17  2017-JWL, 2012 U.S. Dist. LEXIS 106162, at * 28-29 (D. Kan. July 31, 2012)

18  ("[C]ourts have frowned on productions of large or disorganized masses of

19  documents without any guidance from the producing party" and have "required the

20  producing parties to do more—be it indexing the documents or specifically

21  identifying responsive documents.") (collecting cases); *Mancini* v. *Ins. Corp.*, No.

22  07 Civ. 1750-L (NLS), 2009 U.S. Dist. LEXIS 51321, at * 16 (S.D. Cal. Jul. 18,

23  2009) (producing an "amalgam of various documents from various sources" on

24  computer disks does not "comport with the requirement that documents be

25  produced as they are kept in the usual course of business"); *Wagner* v. *Dryvit Sys.,*

26  *Inc.,* 208 F.R.D. 606, 610 (D. Neb. 2001) ("[P]roducing large amounts of

27  documents in no apparent order does not comply with [Defendants'] obligation[s]

28  under Rule 34."); *In re Adelphia Communs. Corp.*, 338 B.R. 546, 551 (Bankr.

-9-

1   S.D.N.Y. 2005) ("The Court does not endorse a method of document production

2   that merely gives the requesting party access to a 'document dump' . . . with an

3   instruction to the party to 'go fish' . . . .") (citations omitted).

4         Defendants' response has been telling:  during the meet and confer process,

5   Defendants objected to reproducing the documents in the manner set forth by the

6   rules on the ground that it would be too burdensome.  But that response proves

7   Plaintiffs' point.  Plaintiffs are only asking Defendants to undo whatever

8   combining of documents they already did and produce these documents in a

9   manner that will make them identifiable by detainee – which is how they are

10  undoubtedly kept – and thus avoid creating a burden on Plaintiffs to "re-organize"

11  Defendants' own documents.  Defendants cannot complain about a burden they

12  created by producing these documents in this improper manner.  *See Mancini*,

13  2009 U.S. Dist. LEXIS 51321, at *17 ("While it may be burdensome for [the

14  producing party] to review the entire universe of documents to ascertain which

15  documents are responsive to the document requests, it would be even more

16  burdensome for [the receiving party] to guess which documents are responsive to

17  each request."); *Kozvan*, 2012 U.S. Dist. LEXIS 106162, at * 32 (requiring SEC to

18  identify the documents responsive to each request because it would be less

19  burdensome for SEC to do so than for the defendant to do so).

20        Accordingly, the Court should require Defendants to reproduce all

21  previously-produced class member file documents in an appropriate format, as

22  maintained in the usual course of business, including documents separated and

23  labeled by the name of each detainee.  This same format should be required for

24  future file productions.  In addition, when Defendants reproduce these documents,

25  they should be compelled to label them with unique Bates numbers so that the

26  parties and the Court can easily identify and rely on documents in this litigation

27  moving forward.

28        **Defendants' Position**

-10-

1   As noted above, the A-File records produced to Plaintiffs are grouped

2   together, in sequential bates ranges, for each alien and medical records are

3   similarly grouped together, in sequential bates ranges, for each alien.  DHS also

4   provided a log sheet to identify the specific bates ranges for certain documents that

5   related to each alien and for which were contained in more than one bates range.

6   *See* Ex. 1, Defendants' log preceding ICE0039522, produced to Plaintiffs in the

7   November 2, 2012 production.  DHS also created bookmarks in each large PDF

8   file produced to Plaintiffs to identify specific documents/files within the larger

9   PDF.  *See* Ex. 2, Example of Sample Bookmarks included in Defendants'

10  discovery productions.

11      Defendants' production of A-files, ROPs and medical files certainly meets

12  the requirements of the Federal Rules, and is far from Plaintiffs' characterization of

13  a disorganized "document dump."  Defendants did not object to producing these

14  documents as kept in the usual course of business, because they have done exactly

15  that.  Actually, Defendants have gone above and beyond what the Federal Rules

16  require in converting Plaintiffs' requested A-files and ROPs, which are actually

17  maintained in the normal course of business as hard copy records, into an

18  electronic format to assist Plaintiffs in their ability to access and review these

19  documents, and converting the medical records that were in paper form into an

20  electronic format to produce to Plaintiffs.  All of the documents from Defendant

21  ICE have unique Bates numbers.

22      For the Records of Proceedings (ROPs) from Defendant DOJ, these records

23  were also grouped together by class member, and separated by class member, such

24  that it is undoubtedly clear which class member the Bates-stamped documents

25  apply to.  *See* Ex. 3, screen shot of ROPs in "Plaintiffs' CD#1" produced as part of

26  the Defendants' November 2, 2012 production of Plaintiffs.  The document

27  Plaintiffs referred as not containing Bates numbers was a hearing transcript bearing

28  a title clearly identifying its contents, including the name and A# of the individual

-11-

1  concerned in the transcript.  Plaintiffs can make no good faith argument that they

2  are confused as to which class members each ROP, or the hearing transcript

3  attached to Plaintiffs' motion to compel apply.

4      Plaintiffs' accusations are beyond incomprehensible.  This Court need not

5  order Defendants to produce documents appropriately identified by detainee name

6  and with unique Bates numbers, because Defendants have *already* produced these

7  documents grouped by detainee name, and with unique Bates numbers.  Plaintiffs'

8  characterization of these documents is far from reality.  A reasonable person can

9  certainly discern the logical order these documents have been produced in, and

10  Plaintiffs' motion is less of a legitimate discovery request and more of a "make-

11  work" proposition.  Defendants have and continue to produce documents in a

12  proper manner, and have gone above and beyond producing discovery as

13  maintained in the usual course of business.

14

15  ***Missing and Deficient Privilege Logs***

16      **<u>Plaintiffs' Position</u>**

17      The Government has also failed to produce sufficiently detailed privilege

18  logs for its productions and, in certain cases, any logs at all.  Although the

19  Government's productions of documents are frequently riddled with various

20  redactions and withholdings, many document productions were either not

21  accompanied by a privilege log, or the accompanying privilege log lacked

22  sufficient detail for Plaintiffs to assess the privilege claims.

23      A.      Missing Privilege Logs

24      Plaintiffs have never received privilege logs for, at least, the following

25  document productions:

26      • Documents related to the Zhalezny and Woldemariam Interrogatories
            and RFPs concerning *Matter of M-A-M-*, produced August 15, 2012

27      and October 5, 2012;

28

-12-

- Documents related to the RFPs concerning Defendants' decision to include detainees' names as part of the Court-ordered notice reporting, produced November 2, 2012;
- October 12, 2012 and  part of the November 2, 2012 productions pursuant to the Court's September 20, 2012 order granting Plaintiffs' motion to compel;
- November 7, 2012 production regarding Named Plaintiffs;
- November 8, 2012 production regarding Named Plaintiffs;
- November 15, 2012 production regarding Ceja-Torres and Rodriguez-Cortez;
- Documents produced from the Phoenix ICE Chief Counsel Office, December 11, 2012.

The Government should be compelled to either affirm that no documents were withheld for these productions or produce these missing logs within 14 days of the date of the Court's order granting Plaintiffs' motion to compel.  Moreover, most of these documents were produced more than two months ago.[10]  By any measure, Defendants' failure to provide any privilege log at all for this period of time should also constitute a waiver of any privileges asserted.  *See Best Buy Stores, L.P.* v. *Manteca Lifestyle Ctr., LLC*, No. 10 Civ. 389 (WBS)(KJN), 2011 U.S. Dist. LEXIS 62817, at *8-9 (E.D. Cal. June 14, 2011) (applying "timeliness" of privilege assertion as one factor in waiver analysis).

For their part, Defendants disclaim any obligation to provide privilege logs for certain of these productions.  For example, Defendants refuse to produce privilege logs for documents related to their compliance with the BIA decision in *Matter of M-A-M-*, or the Court's order requiring the parties to notify each other of class members (Dkt. # 360) ("Notice Order").[11]  (*See* Exhs. D, F.)

---

[10]      These include the October 12, 2012 and November 2, 2012 productions pursuant to the Court's September 20, 2012 order granting Plaintiffs' motion to compel, the November 2, 2012 production of notice documents, the November 7 and November 8, 2012 productions regarding Named Plaintiffs, and the November 15, 2012 production regarding Cejas-Torres and Rodriguez-Cortez.

[11]      These requests are contained in Plaintiffs' Fourth Set of Requests for Production of Documents to Defendant U.S. Department of Homeland Security, served on November 29, 2011 and Plaintiffs' Requests for Production of

-13-

1    Defendants' position appears to be that government attorneys are responsible

2    for implementing *M-A-M-* and the Notice Order issued in this action and are, at all

3    times, constantly providing legal advice or engaging in otherwise protected

4    communications.  But without a privilege log, Plaintiffs cannot test whether an

5    untold number of documents are properly withheld on privilege grounds, and there

6    are critical distinctions in the types of documents withheld that may make the

7    documents not privileged even if attorneys are in some manner involved in their

8    production.  Below are just a couple of examples of how communications by

9    Government attorneys may not be privileged:

10    *First,* even assuming that these two processes (complying with *M-A-M-* and

11    the Notice Order) are conducted or guided by attorneys, as Defendants assert, not

12    everything done by attorneys is privileged and/or attorney work-product.

13    Government lawyers often occupy multiple roles within government agencies,

14    sometimes assisting with the implementation of  policies, communication about

15    which is not privileged, while at other times providing legal advice.  *See In re*

16    *Lindsey*, 158 F.3d 1263, 1285 (D.C. Cir. 1998) ("The attorney-client privilege does

17    not protect general policy or political advice—even when given by lawyers—but

18    only communications with lawyers for the purpose of obtaining legal assistance.")

19    (quotation omitted); *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (policy

20    advice not privileged); *Alexander* v. *FBI*, 192 F.R.D. 50, 55 (D. D.C. 2000)

21    (political advice not privileged); *Republican Party* v. *Martin*, 136 F.R.D. 421, 426

22    (D.N.C. 1991).  Furthermore, "neutral, objective analyses of agency regulation," as

23    opposed to "'counseling' intended to assist the agency in protecting its interests,"

24    are not privileged.  *Coastal States Gas Corp.* v. *Dep't of Energy*, 617 F.2d 854,

25    863 (D.C. Cir. 1980).  Here, Plaintiffs do not ask this Court to decide whether or

26    _____

27    Documents to Defendant U.S. Department of Homeland Security, served on July

28    16, 2012.

-14-

1   not any particular communications are privileged, they merely seek privilege logs

2   that would allow them to assess whether the requirements of the Government's

3   asserted privileges are met here.

4          Accordingly, Defendants should be compelled to produce all privilege logs

5   that they have failed to produce to date.

6          B.     Deficient Privilege Logs

7          To the extent Defendants have produced privilege logs, Plaintiffs seek an

8   order compelling supplementation of those privilege logs that are not sufficiently

9   detailed to meet the requirements of the federal rules.  These logs include, but are

10  not limited to:

11

12  • "Categorical" Privilege Log for San Francisco and San Diego ICE
        Chief Counsel Office document production[12];

13  • "Categorical" Privilege Log for documents regarding Dr. LeCompte,

14      produced in response to Plaintiff Khukhryanskiy's Requests for
        Production of Documents;

15  • Log for past productions regarding Named Plaintiffs, received

16      11/7/2012;

17  • Logs for class members' ROPs.

18         The law on privilege logs is basic.  A privilege log must contain sufficient

19  information for Plaintiffs to "assess the claim of privilege."  Fed. R. Civ. P.

20  26(a)(5)(A).  In the Ninth Circuit, this requires, at minimum:

21

22

23

24

25

_____

26  [12]     On January 3, 2013, despite having been informed repeatedly that Plaintiffs
    object to these "categorical" privilege logs, Defendants produced two more of

27  these categorical privilege logs, for ICE Chief Counsel Office documents from Los
    Angeles and Seattle.  (*See* Exhs. L-M.)

28

-15-

(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

Numerous privilege logs provided by the Government do not meet these basic standards, and therefore must be supplemented. These logs, which are listed above, contain repeated, identical and conclusory assertions of privilege, such as "Attorney notes and work product" (with no further description), extremely general descriptions of documents, and insufficient information for Plaintiffs to identify authors, addressees, or dates for each email. (*See* Exhs. N-T.) For some of these "categorical" logs, Defendants disclaim any obligation to even log or justify their privilege assertions on a document-by-document basis. (*See* Exh. D, F.) It is impossible for Plaintiffs to determine from these logs whether the documents are appropriately withheld under the detailed requirements of each privilege, such as attorney-client privilege, attorney work-product, deliberative process, or supposed "law enforcement sensitivity" (whatever that means). *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

These privilege logs are contrary to controlling Ninth Circuit authority and the federal rules, which require that the logs contain many categories of information for each document and be sufficient to enable the recipient to "assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *In re Grand Jury Investigation*, 974 F.2d at 1071. To give but one example, Plaintiffs cannot possibly assess whether "handwritten notes" of "Immigration Court staff" addressed to "N/A," on an "Immigration Court scheduling sheet," are covered by the deliberative process privilege. (*E.g.*, Exh. R.) The deliberative process privilege protects material that is both deliberative and predecisional. *Lahr* v. *NTSB*, 569 F.3d 964, 980 (9th Cir. 2009). But the description provided by Defendants tells Plaintiffs nothing except that the Defendants decided the document was covered by the deliberative process

-16-

1   privilege.  Some descriptions lack even this meager level of detail.  (*See* Exh. U)

2   (document bearing Bates # 214 logged as "DP" with no description listed).

3   Similarly, Defendants redact the names and signatures of all deportation officers,

4   but never identify the basis for the "Law Enforcement" privilege that supposedly

5   justifies this.  This is a lawsuit seeking to prevent the unlawful deportation of class

6   members.  Plainly the names of deportation officers are relevant, responsive and

7   cannot be redacted (*see* discussion *infra* of non-responsiveness redactions) absent

8   some further explanation, but Defendants' description provides no basis for

9   Plaintiffs to understand why there is a privilege here.  (*See also* Exh. V.) document

10  labeled "Immigration Judge Worksheet," authored by "EOIR Personnel" and

11  addressed to "N/A," allegedly privileged as deliberative process or "attorney notes

12  & work product," but no further explanation).  These "self-serving, conclusory

13  statements regarding privilege [do] not suffice."  *Dominguez* v. *Schwarzenegger*,

14  No. C 09-2306 CW (JL), 2010 U.S. Dist. LEXIS 94549, at *13 (N.D. Cal. Aug. 25,

15  2010).

16      Defendants' so-called "categorical" privilege logs provide even less

17  information.  First, such so-called "categorical" logs are the exception, not the

18  norm; document-by-document privilege logs "ha[ve] been, undoubtedly will, and

19  should remain, the traditional format."  *In re Imperial Corporation of America*, 174

20  F.R.D. 475, 478 (S.D. Cal. 1997).  While courts occasionally grant protective

21  orders allowing "categorical" privilege logs where extremely voluminous

22  documents are withheld or redacted and the burden of preparing a privilege log

23  outweighs any benefit to be gained in assessing the privilege, that is not the case

24  here.  *See Postx Corp.* v. *Secure Data Motion,* No. C 02-04483 SI, 2004 U.S. Dist.

25  LEXIS 24869, at *4-6 (N.D. Cal. June 9, 2004); *Narayan* v. *EGL, Inc.*, No. C05-

26  04181 RMW (HRL), 2006 U.S. Dist. LEXIS 81125, at *6-7 (N.D. Cal. Oct. 24,

27  2006); 1993 Fed. R. Civ. P. Adv. Comm. Note to Rule 26(b)(5).  Categorical logs

28  have been approved in the rare instances where the volume of privileged

-17-

1   documents was extremely high—hundreds of thousands, or millions of privileged

2   documents—which is not the case here.  *See In re Imperial,* 174 F.R.D. at 478-79;

3   *see also SEC* v. *Thrasher*, No. 92 Civ. 6987 (JFK), 1996 U.S. Dist. LEXIS 3327, at

4   *3-4 (S.D.N.Y. Mar. 20, 1996) (approving categorical log for "extremely

5   voluminous" privilege withholdings).

6        Even if "categorical" logs would otherwise be permitted under these

7   circumstances, these logs do not contain sufficient information for Plaintiffs to

8   assess the privileges asserted.

9        *First*, these logs do not actually tell Plaintiffs *which document* is being

10  redacted or withheld, *for which reason*.  (*See* Exhs. L-P.)  Rather, document

11  descriptions and corresponding privileges, are both grouped, making it impossible

12  for Plaintiffs to isolate any particular document and test the privilege assertion.

13  This is not a case where there is one description, or a discrete set of descriptions,

14  applying to defined groups of documents—rather, there is a group of document

15  descriptions and a group of documents, with no further guidance.  Plaintiffs cannot

16  even begin to test these assertions of privilege if they cannot figure out why

17  Defendants believe each document is privileged.

18       *Second*, even if Plaintiffs could divine which description applies to which

19  document (an impossible task), the descriptions provided in these logs lack

20  sufficient detail for Plaintiffs to "assess the claim" of privilege.  *See* Fed. R. Civ. P.

21  26(b)(5)(A)(ii).  For instance, senders and addressees are named by their

22  department or entity name (*e.g.*, OIL, OPLA HQ) instead of the name of the

23  person, and Plaintiffs cannot determine from these "categorical logs" with whom

24  the documents have been shared to determine whether they ever were, or remain,

25  privileged.  It also is not clear that legal advice is being requested or obtained for

26  various purportedly privileged documents (plaintiffs cannot tell how many,

27  because documents are grouped).  (*E.g.*, Exh. L.)  As noted above, not everything

28  that lawyers do is privileged, and of course, privileges can be waived.  But with

-18-

1  these logs, Plaintiffs are being asked to take Defendants' word for it.  More is

2  required.  *See Coleman* v. *Schwarzenegger*, No. Civ. S-90-0520 LKK JFM P, 2008

3  U.S. Dist. LEXIS 111652, at *26-27 (N.D. Cal. July 8, 2008) (holding that

4  defendants "failed to describe the documents categorically with sufficient detail to

5  assess their privilege claim.").

6       Defendants bear the burden of establishing that all of the documents they

7  withhold or redact are privileged.  *Id.* at *21.  They have failed to do so here.  The

8  Court should enter an order requiring Defendants, within two weeks of the Court's

9  order, (1) to provide Plaintiffs with all outstanding privilege logs, including those

10  detailed above, and (2) to supplement all of the "categorical" and otherwise

11  deficient privilege logs with sufficient information (including nonconclusory

12  descriptions) to enable Plaintiffs to assess the claim.  At minimum, the logs should

13  contain all the information required by *In re Grand Jury Investigation*, 974 F.2d at

14  1071.[13]

15      **Defendants' Position**

16       Defendants' privilege logs provide sufficient detail for Plaintiffs to assess

17  the applicability of the privileges asserted.  "Privilege logs need not adhere to a

18  particular format . . . [but] must contain sufficient detail for the opposing party to

19  adequately assess the privilege or protection's applicability."  *Ramirez v. Olympic*

20  *Health Management Systems, Inc.,* No. 07-3044, 2008 WL 5377882, at *4 (E.D.

21  Wash. Dec. 23, 2008) (citing *Burlington Northern and Santa Fe Railway v. United*

22  *States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005)).  *Coleman v.*

23  *Schwarzenegger*, No. 90-0520, 2007 WL 4328476, at *5 (N.D. Cal. Dec. 6, 2007)

24  ("an adequate privilege log contains information sufficient to establish the

25  elements of the asserted privilege"); *Wacom v. Hanvon Corp.*, No. 06-5701, 2008

26  ───────────────

27  [13]      The Court may alternatively find that Defendants have waived their privileges over all withheld or redacted documents for which they have not produced privilege logs, for the reasons detailed above.

28

-19-

1   WL 110495, at *2 (W.D. Wash. Jan. 8, 2008) (privilege log identifying author,

2   recipient, and whether individuals are "attorneys or other legal personnel" provides

3   sufficient disclosure").  A party shows good faith in complying with the privilege

4   log requirements when it provides sufficient information to enable the opposing

5   party to evaluate the applicability of the privilege asserted.  *Burlington Northern*,

6   408 F.3d at 1148; *Jumping Turtle Bar and Grill v. City of San Marcos*, No. 10-270,

7   2010 WL 4687805, at *3 (S.D. Cal. Nov. 10, 2010) (good faith met); *Carl Zeiss*

8   *Vision Inter'l GMBH v. Signet Armorlite, Inc.*, No. 07-0894, 2009 WL 4642388, at

9   * (S.D. Cal. Dec. 1, 2009) ("[w]hile the privilege log lacks *any sort of description*

10  *of the subject of many of the documents*, the Court believes that the privilege log

11  contains sufficient information to constitute a good faith effort at compliance")

12  (italics in original).

13      "[N]o where in Fed. R. Civ. P. 26(b)(5) is it mandated that a document-by-

14  document privilege log is required, if a party seeks to withhold documents based

15  on privilege or work product."  *Imperial Corp. of America v. Durkin*, 174 F.R.D.

16  475, 477 (S.D. Cal. 1997).  "In fact, when the legislature enacted Fed. R. Civ. Pro.

17  26(b)(5), it expressly recognized that there are circumstances in which a document-

18  by-document privilege log would be unduly burdensome and inappropriate."  *Id.* at

19  479.  1993 Amendments to Rule 26, Subdivision (b) ("[d]etails concerning time,

20  persons, general subject matter, etc., may be appropriate if only a few items are

21  withheld, but may be unduly burdensome when voluminous documents are

22  claimed to be privileged or protected, particularly if the items can be described by

23  categories.").  *See also Burlington Northern*, 408 F.3d at 1148 (the advisory

24  committee notes provide that "there are circumstances in which [details] would be

25  unduly burdensome."); *Hoot Winc, LLC v. RSM McGladrey Financial Process*

26  *Outsourcing, LLC*, No. 08-1559, 2009 WL 3857425, at *4 (S.D. Cal. Nov. 16,

27  2009) ("there may be certain situations in which details would not be appropriate

28  or unduly burdensome.").  The 1993 Advisory Committee Notes underscore that:

-20-

> Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be *unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.*

*Id.* (italics in decision). *Accord*, *Thomas v. Hickman*, No. 1:06-cv-00215, 2007 WL 4302974, at *18 (E.D. Cal., Dec. 6, 2007) (document-by-document log may not be required with respect to voluminous documents) (citing Schwarzer, Tashima, and Wagstaffe, *California Practice Guide:  Federal Civil Procedure before Trial*, § 11:795 (2007); Adv. Comm. Notes to 1993 Amendments to Fed. R. Civ. P. 26(b)); *In re Motor Fuel Temperature Sales Practices Litigation*, No. 07-1840, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009) ("a categorical approach . . . has been approved in other cases involving large numbers of documents.").

In *Durkin*, *e.g.*, the Court found that requiring a party to create a document-by-document privilege log in response to documents protected by the attorney-client or attorney work-product privilege would be unreasonable and burdensome and authorized the party to produce a categorical privilege log.  *Durkin*, 174 F.R.D. at 479.  Similarly, *Motor Fuel* permitted a party to categorically group post-litigation attorney communications that are privileged on the ground that "individually logging thousands of privileged attorney communications would be immensely burdensome and have little, if any, benefit to plaintiffs."  *Motor Fuel*, 2009 WL 959491, at *3.  *Accord*, *Sprint Comm. Comp. v. Big River Telephone Co.*, No. 08-2046, 2009 WL 2878446, at *3 (Sept. 2, 2009) (same).

Defendants' privilege logs comply with the Federal Rules.  Plaintiffs' Requests for Production of Documents that was *filed* on July 16, 2012, seek, in relevant part, internal communications from that date forward between ICE's Office of the Principal Legal Advisor ("OPLA") headquarters and field offices, Enforcement and Removal Operations ("ERO"), and ICE Health Service Corps ("IHSC") employees relating to motions requesting mental competency hearings in immigration removal proceedings.  *See*, *e.g.*, Ex. 4, Plaintiffs' Requests for

-21-

1   Production of Documents to Defendant U.S. Department of Homeland Security,

2   Requests Nos. 1, 2.  These Requests seek post-litigation information that, in most

3   respects, is protected by attorney-client, attorney work-product, deliberative

4   process, and law enforcement sensitive privileges.  The categorical privilege logs

5   identify the documents by Bates stamp, privilege, author, and recipient, and

6   summarize the content of the communication without disclosing the privilege.

7   Indeed, Defendants submit that "counsel's communications with the client [i.e.,

8   ERO and IHSC] and work product developed once the litigation commences are

9   presumptively privileged and need not be included on any privilege log."  *Ryan*

10  *Investment Corp. v. Pedregal De Cabo San Lucas*, No. 06-3219, 2009 WL

11  5114077, at *3 (N.D. Cal. Dec. 18, 2009).  *Accord*, *United States v. Bouchard*

12  *Trans.*, No. 08-4490, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010)

13  ("privilege logs are commonly limited to documents created before the date

14  litigation was initiated.  [I]t can be assumed that documents created after . . . a

15  lawsuit has been filed and withheld on the grounds of privilege were created

16  'because of' that pending litigation."); *Grider v. Keystone Health Plan Central,*

17  *Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009) ("a privilege log may not be required

18  for communications with counsel that [took] place after the filing of the law suit.");

19  *Brown v. West Corp.*, No. 11-284, 2012 WL 5400043, at *1 (D. Neb. Nov. 5,

20  2012) (discovery request for post-litigation attorney-client communications is

21  presumably privileged).  In summary, Defendants' privilege logs meet the requisite

22  criteria to enable Plaintiffs' counsel to assess the privileged nature of the redacted

23  documents.[14]

24      Defendant DHS is currently working on the Office of Chief Counsel

25  Phoenix (OCC PHX) privilege log, which involves reviewing thousands of pages

---

26  [14]    As Plaintiffs' discovery focuses on post-lawsuit communications between
27  OPLA, ERO, and IHSC, Defendants assert that privilege logs for these materials
    may not be required under the Federal Rules.

28

-22-

1   of redacted documents and organizing them into a log that identifies the documents

2   by Bates number, specific privilege that applies, and summary of the information

3   withheld.  The agency will make every effort to produce this log to Plaintiff's

4   counsel by the week of January 28, 2013.

5   ***Non-Responsive or "NR" Redactions***

6           **<u>Plaintiffs' Position</u>**

7           Plaintiffs object to the Government's redactions of documents on the

8   supposed ground of "NR" (non-responsiveness).[15]

9           Defendants have redacted substantial portions of their document productions

10  on the ground of "NR" or "non-responsiveness," without any log indicating the

11  reason for the redaction, and apparently based on their own say-so that these

12  portions of the documents are not responsive to Plaintiffs' discovery requests.  As

13  an example, Defendants have redacted portions of emails, including the sender,

14  subject, recipients and portions of the text.  (*See*, *e.g.*, Exh. W.)  Although

15  Plaintiffs promptly objected to these redactions, and Defendants have unredacted a

16  select few documents in response, Defendants have refused to unredact the vast

17  majority of these documents.

18          These nonresponsiveness redactions should be rejected out of hand.

19  Defendants apparently believe that when producing responsive documents, they

20

21  [15]     These redactions occur within at least the following document productions:
    (1) Defendants' production of documents responsive to Plaintiffs' Requests for
22  Production of Documents regarding Officer Mason, dated July 13, 2012
    (documents produced on August 15, 2012); (2) Defendants' production of
23  documents responsive to Plaintiff Maxim Zhalezny's Requests for Production to
    Defendant U.S. Department of Homeland Security, dated July 16, 2012
24  (documents produced on August 15, 2012); (3) Defendants' production of
    documents responsive to Plaintiffs' Requests for Production to Defendant U.S.
25  Department of Homeland Security, dated July 16, 2012 (documents produced on
    October 12, 2012); (4) Documents responsive to Plaintiffs' Request for Production
26  Nos. 1 and 2, from San Francisco, San Diego, Seattle and Phoenix ICE Chief
    Counsel's Offices; (5) Defendants' production of November 2, 2012, pursuant to
27  the Court's order dated September 20, 2012; (6) Defendants' Supplemental
    Production of Documents dated November 7, 2012.

28

-23-

1  have the right to use their judgment to determine if, in their discretion, parts of the

2  document are not relevant or responsive to Plaintiffs' requests.  But this "novel

3  interpretation of [Defendants'] discovery obligations is not supported by the text of

4  Fed. R. Civ. P. 34," which "talks about production of 'documents,' as opposed to

5  the relevant information contained in those documents." *Orion Power Midwest,*

6  *L.P.* v. *Am. Coal Sales Co.*, No. 05 Civ. 555, 2008 U.S. Dist. LEXIS 76366, at *4-

7  5 (W.D. Pa. Sept. 30, 2008).   The obligation to produce documents "as they are

8  kept in the usual course of business" includes production of the "substantive

9  contents" of those documents," and the rule provides no support for Defendants'

10  tactic of "scrub[bing] responsive documents of non-responsive information." *Id.* at

11  *5.  "[R]edaction campaign[s]" like Defendants', "with [their] attendant expense

12  and delay," are frequently rejected.  *See, e.g., id.* at *4-6 (compelling production of

13  unredacted documents); *David* v. *Alphin*, No. 3:07 Civ. 11, 2010 U.S. Dist. LEXIS

14  144275, at *22-24 (W.D. N.C. Mar. 30, 2010) (same); *ArcelorMittal Cleveland,*

15  *Inc.* v. *Jewell Coke Co., L.P.*, No. 10 Civ. 362, 2010 U.S. Dist. LEXIS 133263, at

16  *6-11 (N.D. Ohio Dec. 16, 2010) (same).[16]

17

18

19  [16]     Numerous cases support requiring Defendants to unredact these documents.
20  *See, e.g., Novelty, Inc.* v. *Mt. View Mktg.*, No. 07 Civ. 1229-SEB-JMS, 2010 U.S. Dist. LEXIS 35082, at *16 (S.D. Ind. Jan. 29, 2010); *HR Tech., Inc.* v. *Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 U.S. Dist. LEXIS 121921, at *16-19 (D. Kan. Nov. 17, 2010);  *Beverage Distribs.* v. *Miller Brewing Co.*, No. 08 Civ. 827, 2010 U.S. Dist. LEXIS 50732, at *11-16 (S.D. Ohio Apr. 28, 2010); *In re State Street Bank & Trust Co., Fixed Income Funds Invs. Litig.*, No. 08md1945 (RJH) (DFE), 2009 U.S. Dist. LEXIS 34967, at *4-6 (S.D.N.Y. Apr. 8, 2009); *MedtronicSofamor Danek, Inc.* v. *Michelson*, No. 01-2373-GV, 2002 U.S. Dist. LEXIS 27981, at *19-20 (W.D. Tenn. Jan. 29, 2002).  Although Plaintiffs acknowledge some contrary authority allowing such redactions in limited circumstances, *see* discussion in *Beverage Distribs.*, 2010 U.S. Dist. LEXIS 50732, at *11-16, Plaintiffs submit that these redactions lack support under the terms of Rule 34.  Moreover, even if the Court believes non-responsiveness redactions are appropriate in some circumstances, the only remedy for broad non-responsiveness redactions covering a high volume of materials for multiple reasons, like what the Government has done here, is to have the documents reproduced in unredacted form.  *See, e.g., id.*

28

-24-

1    To the extent Plaintiffs' "non-responsiveness" redactions are actually based

2   on purported confidentiality or law enforcement-related concerns, as Defendants

3   have suggested during the meet and confer process (although they failed to state as

4   much when providing the reasons for the redactions), they are obviated by the

5   protective order in place. *See*, *e.g.*, *ArcelorMittal*, 2010 U.S. Dist. LEXIS 133263,

6   at *9-11; *see also* Dkt. # 507 (protective order limiting use of confidential

7   information).  To the extent Defendants claim now that it would be burdensome to

8   unredact these documents, Defendants created this unnecessary burden by taking

9   the time to redact the documents on responsiveness grounds, and cannot now use

10   that same burden to avoid unredaction. *See Orion*, 2008 U.S. Dist. LEXIS 76366,

11   at *5 (redaction on non-responsiveness grounds adds "expense and delay").  In any

12   event, Defendants have never suggested that they cannot easily remove all NR

13   redactions using automated tools.

14    Accordingly, the Court should enter an order compelling Defendants to

15   unredact and reproduce any documents they have previously produced with NR

16   redactions.

17   **Defendants' Position**

18    Defendants respectfully note that the only information redacted as non-

19   responsive from the documents produced in response to Plaintiffs' Requests for

20   Production of Documents was e-mail addresses, telephone numbers, computer

21   database language code, and, in some instances, the names of OPLA and/or IHSC

22   officials who transmitted or received requests regarding mental health reviews of

23   aliens who were detained at ICE detention facilities.  Defendants redacted this

24   information to protect the privacy of its own employees, and is willing to unredact

25   such information on an as-needed basis.  However, it is unnecessary and a waste of

26   resources for Defendants to re-produce the entire production again without these

27   redactions, when almost all of the redacted information is irrelevant to this

28   litigation.

-25-

1    Plaintiffs have not established that the NR redacted information is relevant
2    to the pending litigation.  *See DeCamp v. City of Vallejo*, No. 06-1283, 2007 WL
3    1589541, at *5 (E.D. Cal. Jun. 1, 2007).  And although Defendants are not
4    asserting the law enforcement privilege in this instance, the redactions do protect
5    the privacy of agency employees, including law enforcement personnel, from
6    unnecessary disclosure.  *See Vodak v. City of Chicago*, No. 03-2463, 2004 WL
7    2032147, at *5 (N.D. Ill. Sept. 9, 2004) (sustaining redactions of law enforcement
8    personnel "as well as any identifying information" contained in disputed records);
9    *Schiller v. City of New York*, 244 F.R.D. 273, 277 n.8 (S.D.N.Y. 2007) (redaction
10   appropriate "if it may be accomplished without destroying the sense of the
11   information left unredacted.").

12   The disclosure of email addresses and phone numbers is not only irrelevant
13   to this litigation, but if disclosed, the configuration of email addresses and phone
14   numbers could be misused in such a way as to disrupt agency business.[17]
15   Defendants remain willing to resolve this discovery dispute with Plaintiffs'
16   counsel, provided that they identify the specific records at issue and explain the
17   relevance of the redacted information *vis-á-vis* the claims advanced in Plaintiffs'
18   Third Amended Class-Action Complaint, ECF No. 344.  *See* Fed. R. Civ. P.
19   26(b)(1).  Defendants have advised Plaintiffs that they would unredact individuals'
20   names that appear within documents identified by Plaintiffs.  Defendants are
21   willing to provide examples of the information marked "non-responsive" for the
22   court under seal to demonstrate that such redactions are justified.

23

24   ***Deposition Limit***

25   ――――――――――――

26   [17]   The configuration of the email address is unique and to each agency, and the
     quality and quantity of this information within the documents produced, if
27   disclosed, would allow individuals to flood telephone lines and/or send mass
     emails with large attachments which could collapse the agency's primary means of
28   communication.

-26-

1    Plaintiffs also seek an order expanding the limit of depositions in this case

2    beyond the ten depositions allowed by Federal Rule 30.

3    Under Federal Rule 30(a)(2)(A)(i), a party cannot take more than ten

4    depositions without leave of court.  Under Federal Rule 30(a), courts may increase

5    this limit if such relief is consistent with Federal Rule 26(b)(2), which allows for

6    discovery to be limited if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> is obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has
> had ample opportunity by discovery in the action to obtain the
> information sought; or (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit, taking into account the needs of
> the case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and the importance
> of the proposed discovery in resolving the issues

12    Leave should be granted when the party requesting leave shows a "good reason for

13    exceeding the limit."  *Clark* v. *Mason*, No. C04-1647-JCC-MAT, 2006 U.S. Dist.

14    LEXIS 59425, at *5 (W.D. Wash. Aug. 22, 2006).

15    Here, Plaintiffs are litigating a complex class action on behalf of a class of

16    hundreds of immigration detainees with serious mental disorders.  The class has

17    two subclasses, and ten separate claims for relief, including claims for

18    Government-appointed counsel for Subclass One members, bond hearings for

19    Subclass Two members and adequate competency evaluations for all class

20    members.  (*See generally* Dkt. 344.)  Each class member is detained in one of three

21    different states in either a facility run by (1) ICE Health Service Corps ("IHSC") or

22    (2) organizations not served by IHSC staff ("non-IHSC facilities").  The

23    Government has argued in the past that Plaintiffs must make their showing with

24    respect to each of the states.  (Dkt. # 328 at 10-13.)  Based on discovery obtained

25    to date, Plaintiffs understand that there are 25 such non-IHSC facilities in

26    California, Arizona, and Washington.  (Exh. FF.)  Until recently, Defendants

27    refused to even identify these non-IHSC facilities to Plaintiffs.  (Exh. FF.)  Even

28    ICE's "Behavioral Health Unit Chief," Dr. Gonzalez, cannot explain how

-27-

1    detainees' competency is assessed at non-IHSC facilities or whether there are any

2    uniform procedures for assessing competency that cut across non-IHSC facilities.

3    (Exh. X at 12-14 (explaining that as the Behavioral Health Unit Chief she is

4    responsible for IHSC facilities' policies; 30 (stating that she does not know

5    whether a particular IHSC mental health screening form is used at non-IHSC

6    facilities; 52 (stating that she cannot testify as to whether mental status

7    examinations are performed in non-IHSC facilities or whether such facilities even

8    have mental health professionals on staff; 62, 83 (stating that she does not know

9    whether the IHSC mental health policy is in effect in non-IHSC facilities; 208-09

10   (stating that she does not know if the Form 883 is used at non-IHSC facilities.)   In

11   other words, the evidence to date shows that there is no federal policy requiring

12   uniform treatment for members of the Main Class or the two subclasses at

13   non-IHSC facilities.

14          Plaintiffs have moved for partial summary judgment on their claim for bond

15   hearings and for counsel for Subclass One members, but no matter how the District

16   Court rules on that motion, Plaintiffs have significant discovery to undertake on

17   their competency evaluation claims to determine whether the existing system (or

18   systems) properly evaluate the competency of class members, or indeed evaluate

19   their competency *at all*.  Plaintiffs have already conducted depositions for the

20   major facility in the state of Washington.  At this time, Plaintiffs tentatively plan to

21   depose three people drawn from IHSC facilities in San Diego and in Arizona.

22   Plaintiffs also propose to depose approximately three people from non-IHSC

23   facilities in each of the four geographic regions where the majority of these

24   facilities are located (Southern California - Los Angeles & San Bernadino

25   Counties, Southern California - Orange County, Northern California, and Arizona).

26   Plaintiffs also plan to depose the Government's expert.  Plaintiffs' proposed list of

27

28

-28-

1  additional depositions is attached.  (Exh. Y.)[18]  Plaintiffs have been hampered in

2  their efforts to identify potential deponents because of the Government's penchant

3  for redacting names, such as names of deportation officers and names of senders of

4  emails, as discussed above.  (Exhs. W, Z.)

5       Ideally, the Court would increase Plaintiffs' deposition limit without a

6  numerical ceiling because, while Plaintiffs know they likely need 20 more

7  depositions, Plaintiffs may determine they need more than that number after

8  Defendants unredact various baselessly redacted documents, and after conducting

9  further depositions and document discovery.  However, if the Court requires a

10  definite  number, Plaintiffs request that the Court allow them to depose 20

11  additional people beyond the ten permitted by Rule 30(a).  However, Plaintiffs

12  reiterate that they prefer not to be limited to an additional fixed number and reserve

13  their rights to request additional depositions after learning more about how

14  competency is assessed in both IHSC and non-IHSC facilities and seeing

15  unredacted versions of Defendants' documents.  Plaintiffs note as well that if, after

16  taking some of these depositions, Plaintiffs determine that all 20 are not needed, or

17  if it otherwise becomes unnecessary to depose all these individuals, Plaintiffs will

18  not take all of these depositions.

19       Defendants' response to Plaintiffs' request was that "an appropriate 30(b)(6)

20  deposition would elicit testimony that is responsive to the manner in which

21  detainees with serious mental illness are identified."  (Exh. D.)  When Plaintiffs'

22  counsel pointed out during a December 6, 2012 meet and confer that Plaintiffs did

23  not agree that one Rule 30(b)(6) witness could possibly testify about all the

24  different locations, Defense counsel suggested that a "handful" of Rule 30(b)(6)

25  witnesses would be sufficient.  But 30(b)(6) witnesses lack personal knowledge,

26

27  [18]     Plaintiffs understand that class members are detained at most of these facilities.

28

-29-

1    and allowing the Government to cherry pick its witnesses is inappropriate,

2    particularly when discovery to date has made clear that government officials in

3    charge of the mental health system *do not know* what practices are actually being

4    employed in the field.  The simple fact is that Plaintiffs need this information to

5    show how the members of the Main Class and the two Subclasses are being treated

6    at the various facilities.  If ICE's Behavioral Health Unit Chief cannot speak to the

7    situation at any particular non-IHSC facility or even as to general policies at these

8    facilities, at the very least, Plaintiffs need to depose people from a reasonable

9    number of these non-IHSC facilities, including people working at the field level, to

10   determine how competency is being assessed.  Plaintiffs cannot agree to depose a

11   "handful" of 30(b)(6) witnesses, with no personal knowledge of the situation at

12   these facilities, who are selected by Defendants, instead of getting information

13   from people with firsthand knowledge of the situation on the ground at these

14   facilities, as Plaintiffs have thus far done with IHSC facilities.

15        The factors in Rule 26(b)(2) weigh in favor of increasing the deposition limit

16   here.  This is not cumulative discovery—Plaintiffs have conducted no merits-

17   related depositions in Arizona, San Diego, or at any non-IHSC facilities.  Nor can

18   Plaintiffs obtain this facility-specific information without speaking to people at

19   those locations.  Information about the evaluation system at these facilities goes to

20   the heart of Plaintiffs' competency evaluation claim.  Though Plaintiffs have

21   already taken nine depositions in this action, they were forced to use six of those to

22   overcome Defendants' meritless objections to class certification.  The fact is that

23   these depositions are required because Defendants have failed to implement

24   uniform (or any) procedures for identifying mentally disabled detainees and

25   assessing competency in their numerous non-IHSC facilities.

26        Plaintiffs' claim for competency evaluations is a crucial part of this case.

27   Any protections that Plaintiffs may win for people who are found incompetent to

28   represent themselves will be meaningless for those not properly identified as being

-30-

1  incompetent.  The claim – which the Government has never sought to dismiss – is

2  surely deserving of sufficient depositions to enable Plaintiffs to appropriately

3  investigate the procedure for assessing competency at the facilities where the class

4  is being detained.

5      Accordingly, Plaintiffs respectfully request that the Court issue an order

6  granting them an open-ended increase on the deposition limit, but at minimum, at

7  least 20 additional depositions with the right to increase that number if Plaintiffs

8  determine, after conducting further discovery and receiving unredacted documents

9  from Defendants, that more depositions are needed.

10     ***

11  **Defendants' Position**

12     As stated above, Defendants do not object to additional depositions, but such

13  depositions must be done with maximum efficiency and minimum disruption to the

14  government's normal operations.  Accordingly, Defendants propose that they shall

15  make available the three (3) Field Medical Coordinators (FMCs) that cover non-

16  IHSC facilities in California and Arizona:  CDR Aileen Renolayan, FMC, Los

17  Angeles Field Office; CDR Melissa George, FMC, San Francisco Field Office, and

18  CDR Lorena Crowley, FMC, Phoenix Field Office.  These FMCs are the

19  individuals that liaison with the non-IHSC facilities regarding medical issues and

20  Defendants' role and interplay in screening / identifying detainees at non-IHSC

21  facilities who may have serious mental illnesses, and are the individuals most

22  familiar with the Government's current practices.[19]

23     In their November 19, 2012 correspondence to Defendants, Plaintiffs stated

24  that they intended to depose one or two people from at least eleven (11) non-IHSC

25  facilities in Southern California, Northern California and Arizona, in addition to

26

27  [19]   Defendants note that there are no non-IHSC facilities that are utilized in Washington to detain possible class members.

28

-31-

1   experts, an immigration judge, and another person in San Diego. *See* Ex. 5,

2   Michael Steinberg's November 19, 2012 email to Victor Lawrence. This is how

3   Plaintiffs derive the basis for needing twenty (20) more depositions, and our

4   proposal to make available the three aforementioned FMCs will cover the same

5   information sought by Plaintiffs' request for twenty (20) additional depositions.

6   Defendants note that Plaintiffs have already taken five (5) Rule 30(b)(6)

7   depositions in this action, plus an additional four (4) depositions. While

8   Defendants are agreeable to a modest increase of the presumptive 10-deposition

9   limit, an "open-ended" minimum of 20 additional depositions in unwarranted and

10  excessive, especially since Plaintiffs have not even identified who they wish to

11  depose. Defendants recognize that an increase in the presumptive limit is

12  permitted by the Federal Rules if Plaintiffs show good cause; however, Plaintiffs

13  have not shown good cause for requesting such a large increase in the deposition

14  limit.

15  ***Zhalezny Interrogatories***

16      Set forth below are the interrogatories at issue, Defendants' responses and

17  objections, and the parties' contentions about the sufficiency of those responses

18  and objections to the Zhalezny Interrogatories.

19                      ***Interrogatory No. 3***

20      Identify All Immigration proceedings, including detainee names, Anumbers,

21  proceeding locations, detention locations, identities of immigration judges assigned

22  to preside over these proceedings, and procedural postures of these proceedings,

23  where You have filed a "written motion requesting a mental competency

24  hearing." (Dkt. #389 at 16:15-16.)

25  ***Government's Verbatim Response***

26      ***Original Response, served on August 15, 2012.***

27      See General Objections 1-15. Defendant DHS objects to this interrogatory as

28  well beyond the scope of the Federal Rules of Civil Procedure. Fed. R. Civ. P.

-32-

33(a)(1) provides that, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Plaintiffs in this matter never sought leave to serve an additional amount of interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during the class certification phase of this litigation. Plaintiffs attempt to get around the numerical limitations by suggesting that these 19 interrogatories are those of Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory, they would have a nearly unlimited amount of interrogatories based on the number of plaintiffs and class members in this case. Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to request that this Court set reasonable limitations on the amount of merits discovery that Plaintiffs may propound.

To the extent the Court would nevertheless require responses of Defendants, these interrogatories also pose considerable burden for Defendant DHS who must coordinate with five ICE Chief Counsel's Offices in the States of Arizona, California, and Washington to obtain responses. Defendant DHS is unable to do such research within the normal 30-day period allotted for under the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response period because there is currently no discovery cut-off date and no scheduling order setting a trial date that has been entered by the Court. On August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and the need for additional time, but did not hear back in time to submit these responses. Defendants also propose conferring with Plaintiffs in

-33-

1  narrowing the scope of the Interrogatories in a manner that would considerably

2  reduce the burden and accelerate DHS's response.

3      To the extent the response of this Interrogatory would require Defendants

4  to reveal personal information about immigration detainees for whom no Privacy

5  Waivers have been served on Defendants, Defendants further object. Although a

6  Protective Order is in place for this litigation, it may not cover all potential

7  releases of private information concerning immigration detainees. Accordingly,

8  without valid Privacy Waivers, Defendants must respectfully decline production

9  of some information pursuant to the Privacy Act and other laws governing the

10  disclosure of private or confidential information.  *See* General Objection 4.

11      DHS reserves the right to supplement its objections to this specific

12  request at a later date.

13      ***Supplemental Response, served on October 5, 2012.***

14      Defendant DHS objects on the basis that Plaintiffs' request seeks

15  information with respect to aliens outside the class. Defendant DHS objects to

16  Plaintiffs' definition of "immigration proceedings" as irrelevant, overbroad, and

17  unduly burdensome. Defendant DHS maintains that the only immigration

18  proceedings relevant to this lawsuit are removal proceedings pursuant to 8

19  U.S.C. § 1229a and bond proceedings, and thus the responses only pertain to

20  these proceedings. Defendant DHS also objects to any production of documents

21  covered by an appropriate privilege or prohibition on disclosure. Defendant

22  DHS objects to this request on the ground that responsive information is protected

23  from disclosure by applicable privileges, including but not limited to attorney

24  client privilege, attorney work product doctrine, law enforcement / investigatory

25  files privilege, self-critical analysis privilege, the Machin privilege, the Privacy

26  Act, 5 U.S.C. §552a, the Inspector General Act of 1978, §7(b), 5 U.S.C. App. 3,

27  §7(b), and other statutes, regulations or directives regarding the protection of

28  privacy, confidential information or medical information. Defendant DHS also

-34-

1    objects that this request is overly broad, and requires Defendant DHS to produce

2    information that would be overly burdensome to produce, even if the request

3    was otherwise not objectionable. DHS information pertaining to this request

4    would be contained in hard copy Alien Files, also known as "A-files." In Fiscal

5    Year (FY) 2011 alone, the immigration court completed proceedings for 32,647

6    detained cases in the States of Arizona, California, or Washington. *See* U.S. Dep't

7    of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical Year Book

8    (Feb. 2012) at 03, Table 13, *available at*

9    http://www.justice.gov/eoir/statspub/fy11syb.pdf.

10          Subject to and without waiving any objections, Defendant DHS responds as

11   follows: Defendant DHS does not maintain a list of all cases in which ICE has

12   filed a written motion requesting a mental competency hearing or otherwise

13   notified the immigration judge (or Board of Immigration Appeals) and

14   detained alien "of any mental competency issues." Defendant DHS also does

15   not maintain a list of all cases in which immigration judges held or did not hold

16   "competency hearings." Defendant DHS further responds that it has identified

17   approximately 100 competency determinations rendered by immigration judges

18   between May 4, 2011, and September 4, 2012, in cases that Defendants have

19   included in the consolidated lists of detainees that were produced to Plaintiffs

20   through September 7, 2012.  *See* Defendants Exhibit A.

21          ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

22          As described above, Defendants have repeatedly pointed to *Matter of*

23   *M-A-M-* as providing adequate safeguards for the class.  They have cited it at

24   every opportunity in order to attempt to obtain relief from the Court.  (*See* Dkt. #

25   328 at 17-20; Dkt. # 389 at 11, 13-14, 16) (which formed the basis for this

26   request); Dkt. # 232 at 27-28); (Dkt. # 441 at 9-12 (opposing summary judgment

27   in part on basis of "sufficient safeguards" under *M-A-M-*).  Plaintiffs disagree

28   that *M-A-M-* provides sufficient safeguards for the class, but served these

-35-

1  interrogatories to learn more about Defendants' efforts to comply with that

2  decision and that decision's effect on proceedings.  These interrogatories were

3  crafted using Defendants' own words -- taken from Defendants' filings in this

4  case -- to help Plaintiffs gather evidence related to a defense that is constantly

5  raised by Defendants.  The simple fact is that Defendants have claimed in Court

6  filings (Dkt. #389 at 16:15-16) that they have made written motions requesting a

7  "mental competency hearing," and Plaintiffs want to evaluate that assertion and

8  its supposed relationship to the adequacy of the Government's system for

9  identifying incompetent mentally ill detainees.

10       Remarkably, despite repeatedly relying on *M-A-M-* Defendants have

11  refused to provide full information about it.[20]  Defendants initially answered this

12  interrogatory—like every other interrogatory in this set—by providing

13  unsubstantiated and meritless privacy and burden arguments.  Although they

14  eventually provided a response, along with a series of late objections, they merely

15  referred Plaintiffs to a chart that does not respond to the question posed.  Although

16  Defendants apparently are no longer relying on some of their objections, Plaintiffs

17  will address both the objections originally raised by Defendants and their

18  supplemental responses and objections.

19       *First*, in their original objections, Defendants assert that Plaintiffs, as a class,

20  are limited to 25 interrogatories under the Federal Rules of Civil Procedure, and

21  that Plaintiffs used them all up during class certification discovery, making this

22  discovery overly burdensome and beyond the scope of the federal rules.  However,

23  Defendants point to no case law for the proposition that after class certification,

24  different class members like Mr. Zhalezny—who are parties to the suit—cannot

25  serve discovery.  Rather, Rule 33(a)(1) provides that a "party" can only serve 25

26  _____

[20]      To make matters worse, and as described above, Defendants have also

27  refused to provide a privilege log for their assertions of privilege related to compliance with *Matter of M-A-M-*.

28

-36-

1    interrogatories.[21]   Even after Defendants complained about the supposed burden of

2    responding to these interrogatories, among other discovery, this Court denied their

3    request for a stay or protective order, rejecting Defendants' requests that

4    "limitations" be placed on Plaintiffs' discovery because of the burden to respond to

5    it.  (Dkts. # 420, 425, 440, 462.)  This objection should be rejected here as well.

6         *Second*, Defendants also complain that these requests were somehow too

7    burdensome because responding to them would require the coordination of

8    multiple Government offices, and thus, the Government needed time beyond the

9    ordinary 30 days allowed under the federal rules.  There is no rule that a request is

10   unduly burdensome merely because different Government offices have to work

11   together to respond.  Although Plaintiffs disagree that this supposed coordination

12   made the requests burdensome or justified a longer response time, Defendants

13   unilaterally took that extension of time to respond, over Plaintiffs' objections, and

14   it has now been nearly five months since Defendants served these deficient

15   responses.

16        To the extent that Defendants continue to maintain that responding to this

17   request is burdensome, the Court will recall that this not the first time that the

18   Government has complained that important discovery was just too difficult to

---

19   [21]     Defendants appear to have abandoned this objection, both by eventually

20   answering Plaintiffs' interrogatories and through their court filings, which admit that (1) these were only 25 interrogatories and (2) they were propounded by

21   different *parties*.  (*See* Dkt. # 440 ("Defendants filed their *ex parte* Application just a few days after receiving seven sets of discovery requests from Plaintiffs,

22   containing . . . 25 Interrogatories."); Dkt. # 420 at 5 (noting that Defendants received requests containing "6 interrogatories (Propounding party Yonas

23   Woldemariam)" and "19 interrogatories (Propounding party Maksim Zhalezny).").

24   Even if Woldemariam and Zhalezny do somehow need to seek leave to propound interrogatories, however, this is a complex class action covering three states, which

     fully justifies more interrogatories concerning crucial issues in this case, such as

25   the implementation of *M-A-M-*.  *See Beckett* v. *Mellon Inv. Servs., LLC*, No. C06-

     5245 RJB, 2010 U.S. Dist. LEXIS 46208, at *8-9 (W.D. Wash. Apr. 5, 2010)

26   (granting in part plaintiff's motion for an increase of 25 interrogatory limit; reasoning that, as here, "Defendant's argument that the additional arguments are

27   overly burdensome is unpersuasive without a showing as to what burden the interrogatories impose.").

28

-37-

1  provide.  One year and a half ago, during class certification discovery, this Court

2  previously rejected the Government's claims of burden:

3      When the United States Government tells me, 'I'm not sure we have
       the resources to do that,' I consider that with trepidation and pause. Of

4      course you have the resources to do that.

5  (*See* Dkt. # 421, Ex. 285, Transcript of Telephonic Status Conference, July 8,

6  2011, at 13:12-15.)  Similarly, although the Government claims it might be

7  difficult to respond to these interrogatories, it has never provided any

8  substantiation of this burden for these interrogatories – and *of course* the

9  Government has the resources to answer this simple question posed by Plaintiffs.

10      *Third*, despite the fact that there was already a protective order in place at

11  the time, which explicitly allowed the production of documents otherwise

12  prohibited from disclosure by the Privacy Act (*see* Dkt. # 367 ¶ 2), Defendants

13  objected that, without Privacy Act waivers, this information could not be produced.

14  Defendants said that the Protective Order "may not" cover all potential releases of

15  information about detainees pursuant to the Privacy Act and unspecified "other

16  laws governing the disclosure of private or confidential information."  But even

17  though Defendants apparently abandoned this position regarding the Privacy Act,

18  the parties agreed to amend the protective order—the amended order now contains

19  explicit protections for asylum-related data, along with the same Privacy Act

20  protection as the first protective order.  (Dkt. # 507.)  This objection, though

21  groundless from the start, is now moot.

22      These objections, while plainly meritless, served to informally buy

23  Defendants the stay that the Court had twice denied them.  (*See* Dkts. ## 425, 462.)

24  On October 5, 2012, Defendants served "Supplemental" responses and objections.

25  These Supplemental responses included a string of *new objections* (which will be

26  discussed below), beyond those asserted in the Government's original responses

27  and objections.  Of course, a party's failure to object to requests for production

28  within the time required constitutes a waiver of the objections, including claims of

-38-

1   privilege, absent showing good cause.  *Richmark Corp.* v. *Timber Falling*

2   *Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Bess* v. *Cate*, No. 07

3   Civ. 1989 JAM JFM, 2008 WL 5100203, at *5 (E.D. Cal. Nov. 26, 2008)

4   (defendants waived official information privilege and deliberative process

5   privilege after unreasonably delaying discovery responses).  Thus the Court should

6   disregard all the later asserted objections raised in Defendants' *supplemental*

7   responses.  Defendants nowhere suggest that there is "good cause" for these new

8   objections here; none of these objections is based on new facts or changed

9   circumstances, but rather, all could have been made when the Government

10  originally responded.

11       To the extent the Court considers Defendants' new objections, these

12  objections should all be rejected.  Defendants first objected by naming nearly every

13  existing privilege,[22] and objecting that some or all of these privileges might apply

14  to every interrogatory discussed herein, but not identifying how.  Although these

15  privileges had previously been set forth as "General Objections" in defendants'

16  original responses (Exh. AA), these privilege objections were suddenly asserted in

17  response to every single request in the Supplemental Responses, suggesting that

18  Defendants may have declined to produce some relevant responsive information on

19  the basis of these new privileges—which Defendants did not deny when asked.

20  (Exh. D.)  Again, no privilege log is provided, describing why the information

21  cannot be provided.  And again, Defendants have waived these objections, by

22  failing to properly raise or explain them in their initial objections, and then only

23  raising them in a boilerplate, unexplained manner in their Supplemental

24

---

25  [22]     These include "attorney client privilege, attorney work product doctrine, law
    enforcement / investigatory files privilege, self-critical analysis privilege, the
26  Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of
    1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives
27  regarding the protection of privacy, confidential information or medical
    information." (*See* Supplemental Response to Interrogatory No. 3, *supra*.)

28

-39-

1   Objections.[23]  *Burlington N. & Santa Fe Ry. Corp.* v. *U.S. Dist. Court*, 408 F.3d

2   1142, 1147 (9th Cir.2005).

3        Defendants' Supplemental Objections next contained a set of groundless and

4   unexplained relevance/burden objections.  Defendants first suggest—without citing

5   any authority—that this request is irrelevant to the extent it seeks information

6   "with respect to aliens outside the class."  But Defendants do not explain why any

7   information concerning detainees "outside the class" is irrelevant—this request

8   concerns the Government's policy for complying with *Matter of M-A-M-*, which

9   they constantly rely on, and to the extent information about individuals besides

10  class members is responsive, it is relevant in this case under the Federal Rules'

11  broad definition of relevance.  *See* Fed. R. Evid. 401.  Defendants then object that

12  Plaintiffs' definition of "immigration proceedings" is irrelevant, overbroad, and

13  unduly burdensome—again, without explaining why, and without regard to the

14  broad definition of relevance under the Federal Rules.  *Id.*[24]  Defendants further

15  assert that this request is "overly broad," and requires DHS to "produce

16  information that would be overly burdensome to produce" because responsive

17

18  [23]    As is their habit, Defendants never explained how any of these privileges
    applied here; and it is plain that several of these privileges lack a good faith
19  application to this case. For example, under no cognizable set of circumstances
    could the so-called "Machin privilege" be relevant to this action. *See Machin* v.
20  *Zuckert*, 316 F.2d 336, 339 (D.C. Cir. 1962) (holding that investigative reports
    obtained through promises of confidentiality are privileged if disclosure would
21  hamper efficient operation of Government or impair national security).  Moreover,
    "[a]s a matter of federal law – more specifically, as a matter of Ninth Circuit law –
22  it is unlikely that the self-critical analysis privilege exists." *Granberry* v. *Jet Blue
    Airways*, 228 F.R.D. 647, 650 (N.D. Cal. 2005).  Similarly, the Protective Order in
23  this case unambiguously provides that documents subject to the Privacy Act may
    be produced.  (Dkt. ## 367, 507.)

24
    [24]    Plaintiffs cannot comprehend the basis for this objection, likely because
25  Defendants have never truly advanced it but have merely raised it in boilerplate
    fashion, which is insufficient to raise the objection.  *See Burlington*, 408 F.3d at
26  1147.  But to be clear, the Court has never limited—and should not limit—
    discovery to only the proceedings mentioned by Defendants and, plainly,
27  information about proceedings beyond those identified by Defendants—such as
    appeals—is relevant in this lawsuit.

28

-40-

1   information is in hard copy A-files and because there are thousands of

2   immigration cases every year.  Defendants, however, are making affirmative

3   statements about the value of *Matter of M-A-M-* to the current system, and without

4   providing the discovery that Plaintiffs seek, Plaintiffs will be handicapped in

5   evaluating the Government's defense.  The fact is that Defendants cannot blame

6   their lack of compliance upon some supposedly antiquated file storage system, or

7   the number of immigration cases, since, after all, this is a challenge to the

8   treatment of class members in three separate states.  Further, Defendants have

9   never said that the *only* place to obtain such information is through hard copy

10  documents and have never said that no such information exists electronically; it is

11  beyond implausible to suggest that all the information targeted by this request *only*

12  exists in hard copy documents.[25]

13       After raising this litany of unwarranted objections, Defendants ultimately

14  did respond to this interrogatory by referring Plaintiffs to a chart.  (*See* Exh. BB.)

15  To reiterate, the interrogatory requested that Defendants identify all proceedings

16  where Defendants have filed a "written motion requesting a mental competency

17  hearing." These words came from Defendants' motion to reconsider the class

18  certification order in this case, in which Defendants purported to explain their

19  procedures for complying with *Matter of M-A-M-* and the "safeguards"

20  Defendants believe it provides.  (Dkt. 389 at 16:15-16.)  But the Government's

21  chart contains the following columns:  Alien Number, Last Name, First Name,

22  Competency Determination by IJ, Detention Location, Proceeding Location,

23  Immigration Judge, Procedural Posture and Case Outcome/Agency Action.  The

24  referenced chart simply does not provide Plaintiffs with information about

25  whether, in any of the identified immigration proceedings (or in other

26  _____

27  [25]      Indeed, the fact that Defendants have produced a chart in an effort to
    respond to this question suggests that they are also electronically tracking this

28  information in some manner.

-41-

1  proceedings not identified in the chart), Defendants filed a "written motion

2  requesting a mental competency hearing," as they claimed to the District Court

3  in their unsuccessful Motion to Reconsider the Court's class certification order.

4  (Dkt. # 389 at 16:15-16.)

5       Despite having made this assertion to the Court, Defendants refuse to

6  produce the information, objecting that they do not keep a "list" of this

7  information and that it might be burdensome to provide.  Of course Defendants

8  have an obligation of candor to the Court, *see* Cal. R.P.C. 5-200, L.R. 83-3.1.2,

9  Fed. R. Civ. P. 11(b)(3), and also have an obligation to conduct a reasonable

10  investigation to respond to Plaintiffs' interrogatories with the information

11  available to them.  Fed. R. Civ. P. 33(b)(1)(B).  Saying they do not keep a "list"

12  does not answer the question at all.  Mr. Zhalezny did not request a "list."  And

13  just claiming that it would be "burdensome" to answer the question is

14  insufficient.  *See, e.g., Beckett*, 2010 U.S. Dist. LEXIS 46208, at *8-9.  Even if the

15  information is not readily available on a pre-prepared "list," Defendants are

16  obligated to respond to the question, including by consulting information

17  available to them.  Defendants also suggested during the meet and confer

18  process that they had previously provided responsive information in documents

19  they already produced, but they have never identified those particular

20  documents.  *See* Fed. R. Civ. P. 33(d); *Crawford* v. *Melzer*, No. 10 Civ. 280

21  (RS) (PSG), 2011 U.S. Dist. LEXIS 34912, at *6-7 (N.D. Cal. Mar. 23, 2011)

22  ("Although Tova states it had already provided documents containing the

23  information requested by interrogatory no. 5, Tova failed to comply with the

24  requirement of Fed. R. Civ. P. 33(d) to specifically identify those documents in

25  response to the interrogatory.").

26       Despite the importance of the issues raised by this interrogatory, which

27  seeks to elicit information relevant to a defense frequently relied on by

28  Defendants, Defendants have made every possible excuse to avoid responding to

-42-

1  it and, in the end, provided a chart that did not contain responsive information.

2  These excuses lack legal or factual bases, and in particular, the Court should not

3  credit the Government' unsupported assertion that it would be burdensome to

4  respond to these questions in a complete manner.  (*See* Dkt. # 421, Ex. 285,

5  Transcript of Telephonic Status Conference, July 8, 2011, at 13:12-15.)

6  Defendants should be compelled to respond to this interrogatory in full.  *See*

7  *Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

8

9  <u>**Defendants' Response**</u>

10        The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

11  requesting almost identical information aimed at eliciting information about policies

12  and procedures employed with respect to Defendants' provision of information to

13  immigration courts concerning detainees with potential competency issues.

14  Defendants have produced over 250,000 pages of documents in this matter, and have

15  responded to numerous production requests that seek similar information.  *See, e.g.,*

16  Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

17  Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

18  Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

19  Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

20  Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

21  Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

22  Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

23  U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

24  There are several places within the discovery production from which Plaintiffs can

25  elicit the specific information they seek by looking at the documents that were

26  produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

27  party may respond to interrogatories by producing business records from which the

28  answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

-43-

1   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

2   (C.D.Cal. 2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

3   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983). In this case, the following documents

4   provide responses to the information requested: ICE0000032741-ICE0000039514,

5   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

6   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

7   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

8   December 4, 2012; and December 11, 2012.

9         Given that the responses to the Interrogatories were produced in the form of

10   business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability to elicit

11   the information that was requested. Here the burden of deriving or ascertaining the

12   answers is substantially the same for either party, and Defendants have already

13   underwent the burden of producing the information in the form of business records.

14   Plaintiffs should review the records to deduce the information they seek.

15

16                          ***Interrogatory No. 4***

17         Identify All Immigration proceedings, including detainee names, A-

18   numbers, proceeding locations, detention locations, identities of immigration judges

19   assigned to preside over these proceedings, and procedural postures of these

20   proceedings, where You have not filed a "written motion requesting a mental

21   competency hearing." (Dkt. #389 at 16:15-16) but have otherwise notified EOIR

22   of a detainee's mental competency issues.

23   ***Government's Verbatim Response***

24              ***Original Response, served on August 15, 2012.***

25         See General Objections 1-15. Defendant DHS objects to this

26   interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

27   Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered

28   by the court, a party may serve on any other party no more than 25 written

-44-

1  interrogatories, including all discrete subparts. Leave to serve additional

2  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

3  Plaintiffs in this matter never sought leave to serve an additional amount of

4  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

5  during the class certification phase of this litigation. Plaintiffs attempt to get

6  around the numerical limitations by suggesting that these 19 interrogatories are

7  those of Plaintiff Zhalezny, however, none of these interrogatories relate in any

8  way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories

9  3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of

10  interrogatories to approximately 52 for this one plaintiff alone. In any event,

11  under Plaintiffs' theory, they would have a nearly unlimited amount of

12  interrogatories based on the number of plaintiffs and class members in this case.

13  Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to request

14  that this Court set reasonable limitations on the amount of merits discovery that

15  Plaintiffs may propound.

16            To the extent the Court would nevertheless require responses of

17  Defendants, these interrogatories also pose considerable burden for Defendant

18  DHS who must coordinate with five ICE Chief Counsel's Offices in the States

19  of Arizona, California, and Washington to obtain responses. Defendant DHS is

20  unable to do such research within the normal 30-day period allotted for under

21  the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

22  response period because there is currently no discovery cut-off date and no

23  scheduling order setting a trial date that has been entered by the Court. On

24  August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

25  interrogatories and the need for additional time, but did not hear back in time to

26  submit these responses. Defendants also propose conferring with Plaintiffs in

27  narrowing the scope of the Interrogatories in a manner that would considerably

28  reduce the burden and accelerate DHS's response.

-45-

1    To the extent the response of this Interrogatory would require

2   Defendants to reveal personal information about immigration detainees for whom

3   no Privacy Waivers have been served on Defendants, Defendants further object.

4   Although a Protective Order is in place for this litigation, it may not cover all

5   potential releases of private information concerning immigration detainees.

6   Accordingly, without valid Privacy Waivers, Defendants must respectfully

7   decline production of some information pursuant to the Privacy Act and other

8   laws governing the disclosure of private or confidential information. *See* General

9   Objection 4.

10    DHS reserves the right to supplement its objections to this specific

11   request at a later date.

12    ### ***Supplemental Response, served on October 5, 2012.***

13    Defendant DHS objects on the basis that Plaintiffs' request seeks

14   information with respect to aliens outside the class. Defendant DHS objects to

15   Plaintiffs' definition of "immigration proceedings" as irrelevant, overbroad, and

16   unduly burdensome. Defendant DHS maintains that the only immigration

17   proceedings relevant to this lawsuit are removal proceedings pursuant to 8

18   U.S.C. § 1229a and bond proceedings, and thus the responses only pertain to

19   these proceedings.  Defendant DHS also objects to any production of documents

20   covered by an appropriate privilege or prohibition on disclosure. Defendant

21   DHS objects to this request on the ground that responsive information is protected

22   from disclosure by applicable privileges, including but not limited to attorney

23   client privilege, attorney work product doctrine, law enforcement / investigatory

24   files privilege, self-critical analysis privilege, the Machin privilege, the Privacy

25   Act, 5 U.S.C. §552a, the Inspector General Act of 1978, §7(b), 5 U.S.C. App.

26   3, §7(b), and other statutes, regulations or directives regarding the protection of

27   privacy, confidential information or medical information. Defendant DHS also

28   objects that this request is overly broad, and requires Defendant DHS to produce

-46-

1   information that would be overly burdensome to produce, even if the request

2   was otherwise not objectionable. DHS information pertaining to this request

3   would be contained in hard copy Alien Files. In FY 2011 alone, the immigration

4   court completed proceedings for 32,647 detained cases in the States of Arizona,

5   California, or Washington. *See* U.S. Dep't of Justice, Exec. Office for Immigr.

6   Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13, *available at*

7   http://www.justice.gov/eoir/statspub/fy11syb.pdf.

8           Subject to and without waiving any objections, Defendant DHS

9   responds as follows: Defendant DHS does not maintain a list of immigration

10  proceedings in which ICE has not filed a written motion requesting a mental

11  competency hearing but "otherwise notified EOIR of a detainee's mental

12  competency issues." Defendant DHS further responds that it has identified

13  approximately 100 competency determinations rendered by immigration judges

14  between May 4, 2011, and September 4, 2012, in cases that Defendants have

15  included in the consolidated lists of detainees that were produced to Plaintiffs

16  through September 7, 2012. *See* Defendants Exhibit A.

17                  ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

18          This response is insufficient for the same reasons as Defendants'

19  response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

20  response to Interrogatory No. 3 are incorporated here by reference.  By way of

21  summary, and as described in greater detail above, Defendants have made *Matter*

22  *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

23  information about how they implement it.  This interrogatory was crafted using

24  Defendants' own words, in seeking reconsideration of the Court's class

25  certification order, about their efforts to comply with *Matter of M-A-M-*.  (Dkt.

26  #389 at 16:15-16.)  Defendants' chart contains general information about the

27  outcome of certain immigration proceedings, but does not identify proceedings

28  where the DHS has not filed a written motion requesting a mental competency

-47-

1    hearing, but has "otherwise notified EOIR of a detainee's mental competency

2    issues."  Nor have Defendants identified any previously-produced documents

3    containing this information, or provided any substantiation of their claims of

4    burden or privilege.  Defendants' various relevance, burden and privilege

5    arguments are meritless for reasons described more fully above, and should be

6    rejected here.  Accordingly, Defendants should be ordered to fully respond to this

7    question.  *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

8            Defendants' Response:

9           The "Zhalezny Interrogatories" constitute 19 Interrogatories, all requesting

10   almost identical information aimed at eliciting information about policies and

11   procedures employed with respect to Defendants' provision of information to

12   immigration courts concerning detainees with potential competency issues.

13   Defendants have produced over 250,000 pages of documents in this matter, and have

14   responded to numerous production requests that seek similar information.  *See, e.g.,*

15   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

16   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

17   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

18   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

19   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

20   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

21   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

22   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

23   There are several places within the discovery production from which Plaintiffs can

24   elicit the specific information they seek by looking at the documents that were

25   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

26   party may respond to interrogatories by producing business records from which the

27   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

28   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

-48-

1   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

2   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

3   provide responses to the information requested:  ICE0000032741-ICE0000039514,

4   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

5   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

6   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

7   December 4, 2012; and December 11, 2012.

8          Given that the responses to the Interrogatories were produced in the

9   form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

10  to elicit the information that was requested.  Here the burden of deriving or

11  ascertaining the answers is substantially the same for either party, and Defendants

12  have already underwent the burden of producing the information in the form of

13  business records.  Plaintiffs should review the records to deduce the information they

14  seek.

15                      ***Interrogatory No. 5***

16          For each of the immigration proceedings in Interrogatory Nos. 3 and 4

17  identify all "circumstances," procedures, or guidance that prompt You to

18  "notif[y] the immigration judge [or the Board of Immigration Appeals] and

19  detained alien" of any mental competency issues, either "through the filing of a

20  written motion requesting a mental competency hearing," (Dkt. #389 at 16:14-16)

21  or through any other means.

22  ***Government's Verbatim Response***

23              ***Original Response, served on August 15, 2012.***

24          *See* General Objections 1-15. Defendant DHS objects to this

25  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

26  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered

27  by the court, a party may serve on any other party no more than 25 written

28  interrogatories, including all discrete subparts. Leave to serve additional

-49-

1  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

2  Plaintiffs in this matter never sought leave to serve an additional amount of

3  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

4  during the class certification phase of this litigation. Plaintiffs attempt to get

5  around the numerical limitations by suggesting that these 19 interrogatories are

6  those of Plaintiff Zhalezny, however, none of these interrogatories relate in

7  any way to the claims brought forward by Mr. Zhalezny. In addition,

8  Interrogatories 3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the

9  number of interrogatories to approximately 52 for this one plaintiff alone. In

10  any event, under Plaintiffs' theory, they would have a nearly unlimited amount

11  of interrogatories based on the number of plaintiffs and class members in this

12  case. Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to

13  request that this Court set reasonable limitations on the amount of merits discovery

14  that Plaintiffs may propound.

15      To the extent the Court would nevertheless require responses of

16  Defendants, these interrogatories also pose considerable burden for Defendant

17  DHS who must coordinate with five ICE Chief Counsel's Offices in the States

18  of Arizona, California, and Washington to obtain responses. Defendant DHS is

19  unable to do such research within the normal 30-day period allotted for under

20  the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

21  response period because there is currently no discovery cut-off date and no

22  scheduling order setting a trial date that has been entered by the Court. On

23  August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

24  interrogatories and the need for additional time, but did not hear back in time to

25  submit these responses. Defendants also propose conferring with Plaintiffs in

26  narrowing the scope of the Interrogatories in a manner that would considerably

27  reduce the burden and accelerate DHS's response.

28      To the extent the response of this Interrogatory would require

-50-

1   Defendants to reveal personal information about immigration detainees for whom

2   no Privacy Waivers have been served on Defendants, Defendants further object.

3   Although a Protective Order is in place for this litigation, it may not cover all

4   potential releases of private information concerning immigration detainees.

5   Accordingly, without valid Privacy Waivers, Defendants must respectfully

6   decline production of some information pursuant to the Privacy Act and other

7   laws governing the disclosure of private or confidential information. *See*

8   General Objection 4.

9         DHS reserves the right to supplement its objections to this specific

10   request at a later date.

11   ***<u>Supplemental Response, served on October 5, 2012.</u>***

12         Defendant DHS objects on the basis that Plaintiffs' request seeks

13   information with respect to aliens outside the class. Defendant DHS objects to

14   Plaintiffs' definition of "immigration proceedings" as irrelevant, overbroad, and

15   unduly burdensome. Defendant DHS maintains that the only immigration

16   proceedings relevant to this lawsuit are removal proceedings pursuant to 8

17   US.C. § 1229a and bond proceedings, and thus the responses only pertain to

18   these proceedings. Defendant DHS also objects to any production of documents

19   covered by an appropriate privilege or prohibition on disclosure. Defendant

20   DHS objects to this request on the ground that responsive information is

21   protected from disclosure by applicable privileges, including but not limited to

22   attorney client privilege, attorney work product doctrine, law enforcement /

23   investigatory files privilege, self-critical analysis privilege, the Machin

24   privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of 1978,

25   §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

26   regarding the protection of privacy, confidential information or medical

27   information. Defendant DHS also objects that this request is overly broad, and

28   requires Defendant DHS to produce information that would be overly

-51-

1  burdensome to produce, even if the request was otherwise not objectionable.

2  DHS information pertaining to this request would be contained in hard copy

3  Alien Files. In FY 2011 alone, the immigration court completed proceedings for

4  32,647 detained cases in the States of Arizona, California, or Washington. *See*

5  U.S. Dep't of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical Year

6  Book (Feb. 2012) at 03, Table 13, *available at*

7  http://www.justice.gov/eoir/statspub/fy11syb.pdf.

8          Subject to and without waiving any objections, Defendant DHS

9  responds as follows: Defendant DHS does not maintain a list of immigration

10  proceedings in which ICE has notified "the immigration judge [or the Board of

11  Immigration Appeals] and detained alien[s]' of any mental competency issues,

12  either 'through the filing of a written motion requesting a mental competency

13  hearing,' . . . or through any other means." Defendant DHS further responds that

14  it has identified approximately 100 competency determinations rendered by

15  immigration judges between May 4, 2011, and September 4, 2012, in cases that

16  Defendants have included in the consolidated lists of detainees that were

17  produced to Plaintiffs through September 7, 2012. *See* Defendants Exhibit A.

18          ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

19          This response is insufficient for the same reasons as Defendants'

20  response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

21  response to Interrogatory No. 3 are incorporated here by reference.  By way of

22  summary, and as described in greater detail above, Defendants have made *Matter*

23  *of M-A-M-* central to their defense of this action, have informed the Court that the

24  Government has, "notif[ied] the immigration judge [or the Board of Immigration

25  Appeals] and detained alien" of mental competency issues, either "through the

26  filing of a written motion requesting a mental competency hearing," (Dkt. #389 at

27  16:14-16), or through some other means, but now refuse to give Plaintiffs

28  information supporting that assertion.  The fact is that this interrogatory was

-52-

1  crafted using Defendants' own words and was designed to help Plaintiffs

2  understand what causes Defendants to begin the process of requesting a

3  competency hearing, through a written motion or otherwise.  This interrogatory

4  was designed to elicit information about how the Government notifies immigration

5  courts of mentally disabled detainees, an issue that Defendants cannot deny is

6  relevant.

7          Defendants' chart contains general information about the outcome of

8  certain immigration proceedings, but does not identify "circumstances" that lead

9  Defendants to "notif[y] the immigration judge [or the Board of Immigration

10 Appeals] and detained alien" of any mental competency issues, either "through

11 the filing of a written motion requesting a mental competency hearing," or through

12 other means, as requested.  Nor have Defendants identified any previously-

13 produced documents containing this information, or provided any substantiation to

14 their claims of burden or privilege.  Defendants' various relevance, burden and

15 privilege arguments are meritless for reasons described more fully above, and

16 should be rejected here.  Accordingly, they should be ordered to fully respond to

17 this question. *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

18

19          <u>Defendants' Response:</u>

20      The "Zhalezny Interrogatories" constitute 19 Interrogatories, all requesting

21 almost identical information aimed at eliciting information about policies and

22 procedures employed with respect to Defendants' provision of information to

23 immigration courts concerning detainees with potential competency issues.

24 Defendants have produced over 250,000 pages of documents in this matter, and have

25 responded to numerous production requests that seek similar information. *See, e.g.,*

26 Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

27 Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

28 Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

-53-

1   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

2   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

3   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

4   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

5   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

6   There are several places within the discovery production from which Plaintiffs can

7   elicit the specific information they seek by looking at the documents that were

8   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

9   party may respond to interrogatories by producing business records from which the

10  answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

11  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

12  (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

13  *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

14  provide responses to the information requested:  ICE0000032741-ICE0000039514,

15  ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

16  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

17  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

18  December 4, 2012; and December 11, 2012.

19        Given that the responses to the Interrogatories were produced in the

20  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

21  to elicit the information that was requested.  Here the burden of deriving or

22  ascertaining the answers is substantially the same for either party, and Defendants

23  have already underwent the burden of producing the information in the form of

24  business records.  Plaintiffs should review the records to deduce the information they

25  seek.

26

27                    ***Interrogatory No. 7***

28        Identify All immigration proceedings, including detainee names, A-

-54-

1   numbers, proceeding locations, detention locations, identities of immigration judges

2   assigned to preside over these proceedings, and procedural postures of these

3   proceedings, where You have filed a "written motion requesting a mental

4   competency hearing," (Dkt. # 389 at 16:15-16) and the immigration judge has

5   granted such motion.

6   ***Government's Verbatim Response***

7   ***Original Response, served on August 15, 2012.***

8   *See* General Objections 1-15. Defendant DHS objects to this

9   interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

10   Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered

11   by the court, a party may serve on any other party no more than 25 written

12   interrogatories, including all discrete subparts. Leave to serve additional

13   interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

14   Plaintiffs in this matter never sought leave to serve an additional amount of

15   interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

16   during the class certification phase of this litigation. Plaintiffs attempt to get

17   around the numerical limitations by suggesting that these 19 interrogatories are

18   those of Plaintiff Zhalezny, however, none of these interrogatories relate in any

19   way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories

20   3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of

21   interrogatories to approximately 52 for this one plaintiff alone. In any event,

22   under Plaintiffs' theory, they would have a nearly unlimited amount of

23   interrogatories based on the number of plaintiffs and class members in this case.

24   Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to request

25   that this Court set reasonable limitations on the amount of merits discovery that

26   Plaintiffs may propound.

27   To the extent the Court would nevertheless require responses of

28   Defendants, these interrogatories also pose considerable burden for Defendant

-55-

1  DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

2  Arizona, California, and Washington to obtain responses. Defendant DHS is

3  unable to do such research within the normal 30-day period allotted for under

4  the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

5  response period because there is currently no discovery cut-off date and no

6  scheduling order setting a trial date that has been entered by the Court. On

7  August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

8  interrogatories and the need for additional time, but did not hear back in time to

9  submit these responses. Defendants also propose conferring with Plaintiffs in

10  narrowing the scope of the Interrogatories in a manner that would considerably

11  reduce the burden and accelerate DHS's response.

12        To the extent the response of this Interrogatory would require

13  Defendants to reveal personal information about immigration detainees for whom no

14  Privacy Waivers have been served on Defendants, Defendants further object.

15  Although a Protective Order is in place for this litigation, it may not cover all

16  potential releases of private information concerning immigration detainees.

17  Accordingly, without valid Privacy Waivers, Defendants must respectfully

18  decline production of some information pursuant to the Privacy Act and other laws

19  governing the disclosure of private or confidential information. *See* General

20  Objection 4.

21        DHS reserves the right to supplement its objections to this specific

22  request at a later date.

23        ***Supplemental Response, served on October 5, 2012.***

24        Defendant DHS objects to Plaintiffs' definition of "immigration

25  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant

26  DHS maintains that the only immigration proceedings relevant to this lawsuit

27  are removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and

28  thus the responses only pertain to these proceedings. Defendant DHS also

-56-

1  objects to any production of documents covered by an appropriate privilege or

2  prohibition on disclosure. Defendant DHS objects to this request on the ground

3  that responsive information is protected from disclosure by applicable privileges,

4  including but not limited to attorney client privilege, attorney work product

5  doctrine, law enforcement / investigatory files privilege, self-critical analysis

6  privilege, the Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector

7  General Act of 1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes,

8  regulations or directives regarding the protection of privacy, confidential

9  information or medical information. Defendant DHS also objects that this

10  request is overly broad, and requires Defendant DHS to produce information

11  that would be overly burdensome to produce, even if the request was otherwise

12  not objectionable. DHS information pertaining to this request would be contained

13  in hard copy Alien Files. In FY 2011 alone, the immigration court completed

14  proceedings for 32,647 detained cases in Arizona, California, or Washington. *See*

15  U.S. Dep't of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical Year

16  Book (Feb. 2012) at 03, Table 13, *available at*

17  http://www.justice.gov/eoir/statspub/fy11syb.pdf.

18          Subject to and without waiving any objections, Defendant DHS

19  responds as follows: Defendant DHS does not maintain a list of immigration

20  proceedings in which ICE has filed "a written motion requesting a mental

21  competency hearing' . . . and the immigration judge has granted such motion."

22  Defendant DHS further responds that it has identified approximately 100

23  competency determinations rendered by immigration judges between May 4,

24  2011, and September 4, 2012, in cases that Defendants have included in the

25  consolidated lists of detainees that were produced to Plaintiffs through

26  September 7, 2012. *See* Defendants Exhibit A.

27

28

-57-

1           ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

2             This response is insufficient for the same reasons as Defendants'

3 response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

4 responses to Interrogatory No. 3 are incorporated here by reference.  By way of

5 summary, and as described in greater detail above, Defendants have made *Matter*

6 *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

7 information about how they implement it.  This interrogatory was designed to help

8 Plaintiffs isolate immigration cases where Defendants have successfully filed a

9 "written motion requesting a mental competency hearing."  (Dkt. # 389 at 16:15-

10 16.)  This could help assess the supposed "safeguards" of the *M-A-M-* regime by

11 providing information about the frequency with which such motions are filed or

12 granted (a "success rate") and then isolating proceedings for further analysis using

13 various criteria, such as geography, characteristics of detainees or courts, or other

14 variables.  For example, if Defendants' requests are only granted 10% of the time,

15 or only granted in Los Angeles, either of these facts would be relevant to assessing

16 the sufficiency of these "safeguards" Defendants tout.

17             Defendants' chart contains general information about the outcome of

18 certain immigration proceedings, but does not identify immigration proceedings

19 where Defendants have filed a "written motion requesting a mental competency

20 hearing" and the motion was granted.  Nor have Defendants identified any

21 previously-produced documents containing this information, or provided any

22 substantiation to their claims of burden or privilege.  Defendants' various

23 relevance, burden and privilege arguments are meritless for reasons described more

24 fully above, and should be rejected here.  Accordingly, they should be ordered to

25 fully respond to this question. *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at

26 *6-7.

27

28             Defendants' Response:

-58-

1   The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

2   requesting almost identical information aimed at eliciting information about policies

3   and procedures employed with respect to Defendants' provision of information to

4   immigration courts concerning detainees with potential competency issues.

5   Defendants have produced over 250,000 pages of documents in this matter, and have

6   responded to numerous production requests that seek similar information.  *See, e.g.,*

7   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

8   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

9   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

10  Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

11  Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

12  Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

13  Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

14  U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

15  There are several places within the discovery production from which Plaintiffs can

16  elicit the specific information they seek by looking at the documents that were

17  produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

18  party may respond to interrogatories by producing business records from which the

19  answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

20  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

21  (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

22  *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

23  provide responses to the information requested:  ICE0000032741-ICE0000039514,

24  ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

25  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

26  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

27  December 4, 2012; and December 11, 2012.

28

-59-

1    Given that the responses to the Interrogatories were produced in the

2  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

3  to elicit the information that was requested.  Here the burden of deriving or

4  ascertaining the answers is substantially the same for either party, and Defendants

5  have already underwent the burden of producing the information in the form of

6  business records.  Plaintiffs should review the records to deduce the information they

7  seek.

8                         ***Interrogatory No. 8***

9    For each immigration proceeding identified in Interrogatory No. 7,

10  provide the immigration judge's determination as to the detainee's mental

11  competency.

12  ***Government's Verbatim Response***

13              ***Original Response, served on August 15, 2012.***

14    *See* General Objections 1-15. Defendant DHS objects to this

15  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

16  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered

17  by the court, a party may serve on any other party no more than 25 written

18  interrogatories, including all discrete subparts. Leave to serve additional

19  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

20  Plaintiffs in this matter never sought leave to serve an additional amount of

21  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

22  during the class certification phase of this litigation. Plaintiffs attempt to get

23  around the numerical limitations by suggesting that these 19 interrogatories are

24  those of Plaintiff Zhalezny, however, none of these interrogatories relate in any

25  way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories

26  3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of

27  interrogatories to approximately 52 for this one plaintiff alone. In any event,

28  under Plaintiffs' theory, they would have a nearly unlimited amount of

-60-

1    interrogatories based on the number of plaintiffs and class members in this case.

2    Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to request

3    that this Court set reasonable limitations on the amount of merits discovery that

4    Plaintiffs may propound.

5    　　　　　To the extent the Court would nevertheless require responses of

6    Defendants, these interrogatories also pose considerable burden for Defendant

7    DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

8    Arizona, California, and Washington to obtain responses. Defendant DHS is

9    unable to do such research within the normal 30-day period allotted for under

10   the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

11   response period because there is currently no discovery cut-off date and no

12   scheduling order setting a trial date that has been entered by the Court. On

13   August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

14   interrogatories and the need for additional time, but did not hear back in time to

15   submit these responses. Defendants also propose conferring with Plaintiffs in

16   narrowing the scope of the Interrogatories in a manner that would considerably

17   reduce the burden and accelerate DHS's response.

18   　　　　　To the extent the response of this Interrogatory would require

19   Defendants to reveal personal information about immigration detainees for whom

20   no Privacy Waivers have been served on Defendants, Defendants further object.

21   Although a Protective Order is in place for this litigation, it may not cover all

22   potential releases of private information concerning immigration detainees.

23   Accordingly, without valid Privacy Waivers, Defendants must respectfully

24   decline production of some information pursuant to the Privacy Act and other laws

25   governing the disclosure of private or confidential information. *See* General

26   Objection 4.

27   　　　　　DHS reserves the right to supplement its objections to this specific

28   request at a later date.

-61-

1    ***Supplemental Response, served on October 5, 2012.***

2         Defendant DHS objects to Plaintiffs' definition of "immigration

3    proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

4    maintains that the only immigration proceedings relevant to this lawsuit are

5    removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and

6    thus the responses only pertain to these proceedings. Defendant DHS also

7    objects to any production of documents covered by an appropriate privilege or

8    prohibition on disclosure. Defendant DHS objects to this request on the ground

9    that responsive information is protected from disclosure by applicable privileges,

10   including but not limited to attorney client privilege, attorney work product

11   doctrine, law enforcement / investigatory files privilege, self-critical analysis

12   privilege, the Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector

13   General Act of 1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes,

14   regulations or directives regarding the protection of privacy, confidential

15   information or medical information. Defendant DHS also objects that this

16   request is overly broad, and requires Defendant DHS to produce information

17   that would be overly burdensome to produce, even if the request was otherwise

18   not objectionable. DHS information pertaining to this request would be contained

19   in hard copy Alien Files. In FY 2011 alone, the immigration court completed

20   proceedings for 32,647 detained cases in Arizona, California, or Washington. *See*

21   U.S. Dep't of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical Year

22   Book (Feb. 2012) at 03, Table 13, *available at*

23   http://www.justice.gov/eoir/statspub/fy11syb.pdf.

24         Subject to and without waiving any objections, Defendant DHS

25   respectfully refers Plaintiffs to its answer to Interrogatory No. 7 above in response

26   to Interrogatory No. 8.

27

28

-62-

1        ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

2                This response is insufficient for the same reasons as Defendants'

3    responses to Interrogatory Nos. 3 and 7, and Plaintiffs' contentions regarding those

4    responses are incorporated here by reference.  By way of summary, and as

5    described in greater detail above, Defendants have made *Matter of M-A-M-* central

6    to their defense of this action, but refuse to give Plaintiffs information about how

7    they implement it.  This interrogatory was designed to elicit information about the

8    result of the competency hearings.  Of course, if Defendants claim *M-A-M-* is a

9    sufficient safeguard, it is important to understand the outcomes of the *M-A-M-*

10   hearings when competency hearings are requested by the Government, which

11   could give Plaintiffs information to analyze to determine, for example, whether

12   there are trends or patterns and also isolate proceedings for further analysis.

13               Defendants' chart contains general information about the outcome of

14   certain immigration proceedings, but does not identify immigration proceedings

15   where Defendants have filed a "written motion requesting a mental competency

16   hearing" (Dkt. # 389 at 16:15-16) and the motion was granted, or the information

17   requested here:  the outcome of such competency hearings that occurred after the

18   immigration court granted Defendants' motions.  Nor have Defendants identified

19   any previously-produced documents containing this information, or provided any

20   substantiation to their claims of burden or privilege.  Defendants' various

21   relevance, burden and privilege arguments are meritless for reasons described more

22   fully above, and should be rejected here.  Accordingly, they should be ordered to

23   fully respond to this question.  *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at

24   *6-7.

25

26               Defendants' Response

27               The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

28   requesting almost identical information aimed at eliciting information about policies

-63-

1   and procedures employed with respect to Defendants' provision of information to

2   immigration courts concerning detainees with potential competency issues.

3   Defendants have produced over 250,000 pages of documents in this matter, and have

4   responded to numerous production requests that seek similar information.  *See, e.g.,*

5   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

6   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

7   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

8   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

9   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

10  Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

11  Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

12  U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

13  There are several places within the discovery production from which Plaintiffs can

14  elicit the specific information they seek by looking at the documents that were

15  produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

16  party may respond to interrogatories by producing business records from which the

17  answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

18  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

19  (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

20  *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

21  provide responses to the information requested:  ICE0000032741-ICE0000039514,

22  ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

23  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

24  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

25  December 4, 2012; and December 11, 2012.

26          Given that the responses to the Interrogatories were produced in the

27  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

28  to elicit the information that was requested.  Here the burden of deriving or

-64-

1   ascertaining the answers is substantially the same for either party, and Defendants

2   have already underwent the burden of producing the information in the form of

3   business records.  Plaintiffs should review the records to deduce the information they

4   seek.

5                       ***Interrogatory No. 9***

6          Identify All immigration proceedings, including detainee names, A-

7   numbers, proceeding locations, detention locations, identities of immigration judges

8   assigned to preside over these proceedings, and procedural postures of these

9   proceedings, where You have filed a "written motion requesting a mental

10  competency hearing," (Dkt. # 389 at 16:15-16) and the immigration judge did not

11  hold such a hearing prior to the determination of the merits of the detainee's

12  case.

13  ***Government's Verbatim Response***

14          ***Original Response, served on August 15, 2012.***

15          *See* General Objections 1-15. Defendant DHS objects to this

16  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

17  Fed. R. Civ. P. 33(a)(1) provides that, 'Unless otherwise stipulated or ordered

18  by the court, a party may serve on any other party no more than 25 written

19  interrogatories, including all discrete subparts. Leave to serve additional

20  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

21  Plaintiffs in this matter never sought leave to serve an additional amount of

22  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

23  during the class certification phase of this litigation. Plaintiffs attempt to get

24  around the numerical limitations by suggesting that these 19 interrogatories are

25  those of Plaintiff Zhalezny, however, none of these interrogatories relate in

26  any way to the claims brought forward by Mr. Zhalezny. In addition,

27  Interrogatories 3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the

28  number of interrogatories to approximately 52 for this one plaintiff alone. In

-65-

1  any event, under Plaintiffs' theory, they would have a nearly unlimited

2  amount of interrogatories based on the number of plaintiffs and class members

3  in this case. Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt.

4  #420) to request that this Court set reasonable limitations on the amount of merits

5  discovery that Plaintiffs may propound.

6         To the extent the Court would nevertheless require responses of

7  Defendants, these interrogatories also pose considerable burden for Defendant

8  DHS who must coordinate with five ICE Chief Counsel's Offices in the States

9  of Arizona, California, and Washington to obtain responses. Defendant DHS is

10 unable to do such research within the normal 30-day period allotted for under

11 the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

12 response period because there is currently no discovery cut-off date and no

13 scheduling order setting a trial date that has been entered by the Court. On

14 August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

15 interrogatories and the need for additional time, but did not hear back in time to

16 submit these responses. Defendants also propose conferring with Plaintiffs in

17 narrowing the scope of the Interrogatories in a manner that would considerably

18 reduce the burden and accelerate DHS's response.

19        To the extent the response of this Interrogatory would require

20 Defendants to reveal personal information about immigration detainees for whom

21 no Privacy Waivers have been served on Defendants, Defendants further object.

22 Although a Protective Order is in place for this litigation, it may not cover all

23 potential releases of private information concerning immigration detainees.

24 Accordingly, without valid Privacy Waivers, Defendants must respectfully

25 decline production of some information pursuant to the Privacy Act and other

26 laws governing the disclosure of private or confidential information. *See* General

27 Objection 4.

28        DHS reserves the right to supplement its objections to this specific

-66-

1  request at a later date.

2  ### _Supplemental Response, served on October 5, 2012._

3  Defendant DHS objects to Plaintiffs' definition of "immigration

4  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant

5  DHS maintains that the only immigration proceedings relevant to this lawsuit

6  are removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings,

7  and thus the responses only pertain to these proceedings. Defendant DHS also

8  objects to any production of documents covered by an appropriate privilege or

9  prohibition on disclosure. Defendant DHS objects to this request on the ground

10  that responsive information is protected from disclosure by applicable privileges,

11  including but not limited to attorney client privilege, attorney work product

12  doctrine, law enforcement / investigatory files privilege, self-critical analysis

13  privilege, the Machin privilege, the Privacy Act, 5 U.S.C. §552a, the

14  Inspector General Act of 1978, §7(b), 5 U.S.C. App. 3, §7(b), and other

15  statutes, regulations or directives regarding the protection of privacy,

16  confidential information or medical information. Defendant DHS also

17  objects that this request is overly broad, and requires Defendant DHS to

18  produce information that would be overly burdensome to produce, even if the

19  request was otherwise not objectionable. DHS Information pertaining to this

20  request would be contained in hard copy Alien Files. In FY 2011 alone, the

21  immigration court completed proceedings for 32,647 detained cases in Arizona,

22  California, or Washington. _See_ U.S. Dep't of Justice, Exec. Office for Irnmigr.

23  Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13, _available at_

24  http://www.justice.gov/eoir/statspub/fy11syb.pdf.

25  Subject to and without waiving any objections, Defendant DHS

26  responds as follows: Defendant DHS does not maintain a list of immigration

27  proceedings in which ICE has filed "'a written motion requesting a mental

28  competency hearing' . . . and the immigration judge did not hold such a hearing

-67-

1   prior to the determination of the merits of the detainee's case." Defendant

2   DHS further responds that it has identified approximately 100 competency

3   determinations rendered by immigration judges between May 4, 2011, and

4   September 4, 2012, in cases that Defendants have included in the consolidated

5   lists of detainees that were produced to Plaintiffs through September 7, 2012.

6   *See* Defendants Exhibit A.

7          ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

8          This response is insufficient for the same reasons as Defendants'

9   responses to Interrogatory Nos. 3 and 7-8, and Plaintiffs' contentions regarding

10   those responses are incorporated here by reference.  By way of summary, and as

11   described in greater detail above, Defendants have made *Matter of M-A-M-* central

12   to their defense of this action, but refuse to give Plaintiffs information about how

13   they implement it.  This interrogatory was designed to elicit the opposite of what

14   some of the former interrogatories sought—information about cases where

15   immigration judges determined not to hold competency hearings after the

16   Government filed a "a written motion requesting a mental competency hearing."

17   (Dkt. # 389 at 16:15-16.)  This information could help Plaintiffs better assess the

18   *M-A-M-* "safeguards" by analyzing, among other things, trends in the denial of

19   competency hearings and the outcomes of cases where *M-A-M-* hearings were

20   denied.

21          Defendants' chart contains general information about the outcome of

22   certain immigration proceedings, but does not identify immigration proceedings

23   where Defendants have filed a "written motion requesting a mental competency

24   hearing" and the motion was not granted.  Nor have Defendants identified any

25   previously-produced documents containing this information, or provided any

26   substantiation of their claims of burden or privilege.  Defendants' various

27   relevance, burden and privilege arguments are meritless for reasons described more

28   fully above, and should be rejected here.  Accordingly, they should be ordered to

-68-

1    fully respond to this question.  *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at

2    *6-7.

3                        Defendants' Response

4            The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

5    requesting almost identical information aimed at eliciting information about policies

6    and procedures employed with respect to Defendants' provision of information to

7    immigration courts concerning detainees with potential competency issues.

8    Defendants have produced over 250,000 pages of documents in this matter, and have

9    responded to numerous production requests that seek similar information.  *See, e.g.,*

10   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

11   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

12   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

13   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

14   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

15   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

16   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

17   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

18   There are several places within the discovery production from which Plaintiffs can

19   elicit the specific information they seek by looking at the documents that were

20   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

21   party may respond to interrogatories by producing business records from which the

22   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

23   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

24   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

25   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

26   provide responses to the information requested:  ICE0000032741-ICE0000039514,

27   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

28   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

-69-

1  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

2  December 4, 2012; and December 11, 2012.

3       Given that the responses to the Interrogatories were produced in the form of

4  business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability to elicit

5  the information that was requested.  Here the burden of deriving or ascertaining the

6  answers is substantially the same for either party, and Defendants have already

7  underwent the burden of producing the information in the form of business records.

8  Plaintiffs should review the records to deduce the information they seek.

9                      ***Interrogatory No. 10***

10       For each immigration proceedings identified in Interrogatory No. 9,

11  provide the outcome of the case, including but not limited to any dispositive

12  agency actions, merits determinations, judgments, or appeals.

13  ***Government's Verbatim Response***

14                ***Original Response, served on August 15, 2012.***

15       *See* General Objections 1-15. Defendant DHS objects to this

16  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

17  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered

18  by the court, a party may serve on any other party no more than 25 written

19  interrogatories, including all discrete subparts. Leave to serve additional

20  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

21  Plaintiffs in this matter never sought leave to serve an additional amount of

22  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories

23  during the class certification phase of this litigation. Plaintiffs attempt to get

24  around the numerical limitations by suggesting that these 19 interrogatories are

25  those of Plaintiff Zhalezny, however, none of these interrogatories relate in any

26  way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories

27  3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of

28  interrogatories to approximately 52 for this one plaintiff alone. In any event,

-70-

1  under Plaintiffs' theory, they would have a nearly unlimited amount of

2  interrogatories based on the number of plaintiffs and class members in this case.

3  Accordingly, Defendants moved *ex parte* on July 19, 2012 (Dkt. #420) to request

4  that this Court set reasonable limitations on the amount of merits discovery that

5  Plaintiffs may propound.

6      To the extent the Court would nevertheless require responses of

7  Defendants, these interrogatories also pose considerable burden for Defendant

8  DHS who must coordinate with five ICE Chief Counsel's Offices in the States

9  of Arizona, California, and Washington to obtain responses. Defendant DHS is

10 unable to do such research within the normal 30-day period allotted for under

11 the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer

12 response period because there is currently no discovery cut-off date and no

13 scheduling order setting a trial date that has been entered by the Court. On

14 August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these

15 interrogatories and the need for additional time, but did not hear back in time to

16 submit these responses. Defendants also propose conferring with Plaintiffs in

17 narrowing the scope of the Interrogatories in a manner that would considerably

18 reduce the burden and accelerate DHS's response.

19     To the extent the response of this Interrogatory would require

20 Defendants to reveal personal information about immigration detainees for

21 whom no Privacy Waivers have been served on Defendants, Defendants further

22 object. Although a Protective Order is in place for this litigation, it may not

23 cover all potential releases of private information concerning immigration

24 detainees. Accordingly, without valid Privacy Waivers, Defendants must

25 respectfully decline production of some information pursuant to the Privacy Act

26 and other laws governing the disclosure of private or confidential information.

27 *See* General Objection 4.

28     DHS reserves the right to supplement its objections to this specific

-71-

1   request at a later date.

2   ***Supplemental Response, served on October 5, 2012.***

3   Defendant DHS objects to Plaintiffs' definition of "immigration

4   proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant

5   DHS maintains that the only immigration proceedings relevant to this lawsuit

6   are removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings,

7   and thus the responses only pertain to these proceedings. Defendant DHS also

8   objects to any production of documents covered by an appropriate privilege or

9   prohibition on disclosure. Defendant DHS objects to this request on the ground

10  that responsive information is protected from disclosure by applicable privileges,

11  including but not limited to attorney client privilege, attorney work product

12  doctrine, law enforcement / investigatory files privilege, self-critical analysis

13  privilege, the Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector

14  General Act of 1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes,

15  regulations or directives regarding the protection of privacy, confidential

16  information or medical information. Defendant DHS also objects that this

17  request is overly broad, and requires Defendant DHS to produce information

18  that would be overly burdensome to produce, even if the request was otherwise

19  not objectionable. DHS information pertaining to this request would be contained

20  in hard copy Alien Files. In FY 2011 alone, the immigration court completed

21  proceedings for 32,647 detained cases in Arizona, California, or Washington. *See*

22  U.S. Dep't of Justice, Exec. Office for Immigr. Rev., FY 2011 Statistical Year

23  Book (Feb. 2012) at 03, Table 13, *available at*

24  http://www.justice.gov/eoir/statspub/fy11syb.pdf.

25  Subject to and without waiving any objections, Defendant DHS

26  respectfully refers Plaintiffs to its answer to Interrogatory No. 9 above in response

27  to Interrogatory No. 10.

28  ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

-72-

1    This response is insufficient for the same reasons as Defendants'

2    responses to Interrogatory Nos. 3 and 9, and Plaintiffs' contentions regarding

3    Defendants' responses to those interrogatories are incorporated here by reference.

4    By way of summary, and as described in greater detail above, Defendants have

5    made *Matter of M-A-M-* central to their defense of this action, but refuse to give

6    Plaintiffs information about how they implement it.  This interrogatory was

7    designed to elicit the opposite of what some of the former interrogatories sought—

8    information about the outcomes of cases where immigration judges determined not

9    to hold competency hearings after the Government filed a "a written motion

10   requesting a mental competency hearing."  (Dkt. # 389 at 16:15-16.)  This

11   information could help Plaintiffs better assess the *M-A-M-* "safeguards" by

12   analyzing, among other things, trends in the denial of competency hearings and the

13   outcomes of cases where *M-A-M-* hearings were denied.

14   Defendants' chart contains general information about the outcome of

15   certain immigration proceedings, but does not identify immigration proceedings

16   where Defendants have filed a "written motion requesting a mental competency

17   hearing" and the motion was denied.  Given Defendants' focus on *M-A-M-*, it is

18   important for Plaintiffs to obtain discovery about what happens to class members

19   when immigration judges refuse to hold competency hearings.  Defendants have

20   neither provided this information, identified any previously-produced documents

21   containing this information, nor provided any substantiation of their claims of

22   burden or privilege.  Defendants' various relevance, burden and privilege

23   arguments are meritless for reasons described more fully above, and should be

24   rejected here.  Accordingly, they should be ordered to fully respond to this

25   question.  *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

26   <u>Defendants' Response:</u>

27   The "Zhalezny Interrogatories" constitute 19 Interrogatories, all requesting

28   almost identical information aimed at eliciting information about policies and

-73-

1 procedures employed with respect to Defendants' provision of information to

2 immigration courts concerning detainees with potential competency issues.

3 Defendants have produced over 250,000 pages of documents in this matter, and have

4 responded to numerous production requests that seek similar information.  *See, e.g.,*

5 Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

6 Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

7 Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

8 Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

9 Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

10 Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

11 Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

12 U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

13 There are several places within the discovery production from which Plaintiffs can

14 elicit the specific information they seek by looking at the documents that were

15 produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

16 party may respond to interrogatories by producing business records from which the

17 answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

18 *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

19 (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

20 *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

21 provide responses to the information requested:  ICE0000032741-ICE0000039514,

22 ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

23 ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

24 File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

25 December 4, 2012; and December 11, 2012.

26        Given that the responses to the Interrogatories were produced in the

27 form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

28 to elicit the information that was requested.  Here the burden of deriving or

-74-

1  ascertaining the answers is substantially the same for either party, and Defendants

2  have already underwent the burden of producing the information in the form of

3  business records.  Plaintiffs should review the records to deduce the information they

4  seek.

5

6  ### *Interrogatory No. 11*

7  Identify All immigration proceedings, including detainee names, A-

8  numbers, proceeding locations, detention locations, identities of immigration

9  judges assigned to preside over these proceedings, and procedural postures of these

10  proceedings, where You have notified EOIR of any mental competency issues of a

11  detainee by means other than through a "written motion requesting a mental

12  competency hearing," (Dkt. # 389 at 16:15-16) and the immigration judge has held

13  a mental competency hearing.

14  ### *Government's Verbatim Response*

15  ### *Original Response, served on August 15, 2012.*

16  See General Objections 1-15. Defendant DHS objects to this

17  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

18  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

19  the court, a party may serve on any other party no more than 25 written

20  interrogatories, including all discrete subparts. Leave to serve additional

21  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

22  Plaintiffs in this matter never sought leave to serve an additional amount of

23  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

24  the class certification phase of this litigation. Plaintiffs attempt to get around the

25  numerical limitations by suggesting that these 19 interrogatories are those of

26  Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

27  claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

28  13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to

-75-

1  approximately 52 for this one plaintiff alone. In any event, under Plaintiffs'

2  theory, they would have a nearly unlimited amount of interrogatories based on

3  the number of plaintiffs and class members in this case. Accordingly, Defendants

4  moved *ex parte* on July 19, 2012 (Dkt. #420) to request that this Court set

5  reasonable limitations on the amount of merits discovery that Plaintiffs may

6  propound.

7          To the extent the Court would nevertheless require responses of

8  Defendants, these interrogatories also pose considerable burden for Defendant

9  DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

10  Arizona, California, and Washington to obtain responses. Defendant DHS is

11  unable to do such research within the normal 30-day period allotted for under the

12  Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

13  period because there is currently no discovery cut-off date and no scheduling order

14  setting a trial date that has been entered by the Court. On August 14, 2012,

15  Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and

16  the need for additional time, but did not hear back in time to submit these

17  responses. Defendants also propose conferring with Plaintiffs in narrowing the

18  scope of the Interrogatories in a manner that would considerably reduce the burden

19  and accelerate DHS's response.

20          To the extent the response of this Interrogatory would require

21  Defendants to reveal personal information about immigration detainees for whom

22  no Privacy Waivers have been served on Defendants, Defendants further object.

23  Although a Protective Order is in place for this litigation, it may not cover all

24  potential releases of private information concerning immigration detainees.

25  Accordingly, without valid Privacy Waivers, Defendants must respectfully decline

26  production of some information pursuant to the Privacy Act and other laws

27  governing the disclosure of private or confidential information. See General

28  Objection 4.

1    DHS reserves the right to supplement its objections to this specific

2    request at a later date.

3    ***<u>Supplemental Response, served on October 5, 2012.</u>***

4    Defendant DHS objects to Plaintiffs' definition of "immigration

5    proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

6    maintains that the only immigration proceedings relevant to this lawsuit are

7    removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

8    the responses only pertain to these proceedings. Defendant DHS also objects to any

9    production of documents covered by an appropriate privilege or prohibition on

10   disclosure. Defendant DHS objects to this request on the ground that responsive

11   information is protected from disclosure by applicable privileges, including but not

12   limited to attorney client privilege, attorney work product doctrine, law

13   enforcement / investigatory files privilege, self-critical analysis privilege, the

14   Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

15   1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

16   regarding the protection of privacy, confidential information or medical

17   information. Defendant DHS also objects that this request is overly broad, and

18   requires Defendant DHS to produce information that would be overly burdensome

19   to produce, even if the request was otherwise not objectionable. DHS Information

20   pertaining to this request would be contained in hard copy Alien Files. In FY 2011

21   alone, the immigration court completed proceedings for 32,647 detained cases in

22   Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

23   Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

24   available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

25   Subject to and without waiving any objections, Defendant DHS

26   responds as follows: Defendant DHS does not maintain a list of immigration

27   proceedings in which ICE has "notified EOIR of any mental competency issues of

28   a detainee by means other than through a 'written motion requesting a mental

-77-

1   competency hearing." Defendant DHS further responds that it has identified

2   approximately 100 competency determinations rendered by immigration judges

3   between May 4, 2011, and September 4, 2012, in cases that Defendants have

4   included in the consolidated lists of detainees that were produced to Plaintiffs

5   through September 7, 2012. See Defendants Exhibit A.

6             ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

7         This response is insufficient for the same reasons as Defendants'

8   response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

9   response to that interrogatory are incorporated here by reference.  By way of

10   summary, and as described in greater detail above, Defendants have made *Matter*

11   *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

12   information about how they implement it.  This interrogatory was designed to elicit

13   information about Defendants' efforts in obtaining competency hearings when they

14   used a procedure other than a written motion.  This would help, among other

15   things, determine what these vaguely-referred-to procedures "other than a written

16   motion" (Dkt. # 389 at 16:15-16) actually are, and how well they work in

17   identifying incompetent detainees and persuading immigration judges to hold a

18   hearing.  Again, these words were taken verbatim from Defendants' motion to

19   reconsider the class certification order, and this request was aimed at learning more

20   about the factual basis for those representations to the Court.

21         Defendants' chart contains general information about the outcome of

22   certain immigration proceedings, but does not identify immigration proceedings

23   where Defendants have "notified EOIR of any mental competency issues of a

24   detainee by means other than through a written motion requesting a mental

25   competency hearing" and a competency hearing was held.  Nor have Defendants

26   identified any previously-produced documents containing this information, or

27   provided any substantiation of their claims of burden or privilege.  Defendants'

28   various relevance, burden and privilege arguments are meritless for reasons

1  described more fully above, and should be rejected here.  Accordingly, they should

2  be ordered to fully respond to this question.  *See Crawford*, 2011 U.S. Dist.

3  LEXIS 34912, at *6-7.

4

5              Defendants' Response:

6              The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

7  requesting almost identical information aimed at eliciting information about policies

8  and procedures employed with respect to Defendants' provision of information to

9  immigration courts concerning detainees with potential competency issues.

10 Defendants have produced over 250,000 pages of documents in this matter, and have

11 responded to numerous production requests that seek similar information.  *See, e.g.,*

12 Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

13 Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

14 Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

15 Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

16 Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

17 Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

18 Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

19 U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

20 There are several places within the discovery production from which Plaintiffs can

21 elicit the specific information they seek by looking at the documents that were

22 produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

23 party may respond to interrogatories by producing business records from which the

24 answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

25 *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

26 (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

27 *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

28 provide responses to the information requested:  ICE0000032741-ICE0000039514,

-79-

1   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

2   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

3   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

4   December 4, 2012; and December 11, 2012.

5         Given that the responses to the Interrogatories were produced in the

6   form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

7   to elicit the information that was requested.  Here the burden of deriving or

8   ascertaining the answers is substantially the same for either party, and Defendants

9   have already underwent the burden of producing the information in the form of

10   business records.  Plaintiffs should review the records to deduce the information they

11   seek.

12                  ***Interrogatory No. 12***

13         For each immigration proceeding identified in Interrogatory No. 11,

14   provide the outcome of the competency hearing.

15   ***Government's Verbatim Response***

16          ***Original Response, served on August 15, 2012.***

17         See General Objections 1-15. Defendant DHS objects to this

18   interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

19   Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

20   the court, a party may serve on any other party no more than 25 written

21   interrogatories, including all discrete subparts. Leave to serve additional

22   interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

23   Plaintiffs in this matter never sought leave to serve an additional amount of

24   interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

25   the class certification phase of this litigation. Plaintiffs attempt to get around the

26   numerical limitations by suggesting that these 19 interrogatories are those of

27   Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

28   claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

-80-

1   13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to

2   approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory,

3   they would have a nearly unlimited amount of interrogatories based on the number

4   of plaintiffs and class members in this case. Accordingly, Defendants moved ex

5   parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable

6   limitations on the amount of merits discovery that Plaintiffs may propound.

7            To the extent the Court would nevertheless require responses of

8   Defendants, these interrogatories also pose considerable burden for Defendant

9   DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

10  Arizona, California, and Washington to obtain responses. Defendant DHS is

11  unable to do such research within the normal 30-day period allotted for under the

12  Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

13  period because there is currently no discovery cut-off date and no scheduling order

14  setting a trial date that has been entered by the Court. On August 14, 2012,

15  Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and

16  the need for additional time, but did not hear back in time to submit these

17  responses. Defendants also propose conferring with Plaintiffs in narrowing the

18  scope of the Interrogatories in a manner that would considerably reduce the burden

19  and accelerate DHS's response.

20           To the extent the response of this Interrogatory would require

21  Defendants to reveal personal information about immigration detainees for whom

22  no Privacy Waivers have been served on Defendants, Defendants further object.

23  Although a Protective Order is in place for this litigation, it may not cover all

24  potential releases of private information concerning immigration detainees.

25  Accordingly, without valid Privacy Waivers, Defendants must respectfully decline

26  production of some information pursuant to the Privacy Act and other laws

27  governing the disclosure of private or confidential information. See General

28  Objection 4.

-81-

1          DHS reserves the right to supplement its objections to this specific

2  request at a later date.

3               ***Supplemental Response, served on October 5, 2012.***

4          Defendant DHS objects to Plaintiffs' definition of "immigration

5  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

6  maintains that the only immigration proceedings relevant to this lawsuit are

7  removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

8  the responses only pertain to these proceedings. Defendant DHS also objects to any

9  production of documents covered by an appropriate privilege or prohibition on

10  disclosure. Defendant DHS objects to this request on the ground that responsive

11  information is protected from disclosure by applicable privileges, including but not

12  limited to attorney client privilege, attorney work product doctrine, law

13  enforcement / investigatory files privilege, self-critical analysis privilege, the

14  Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

15  1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

16  regarding the protection of privacy, confidential information or medical

17  information. Defendant DHS also objects that this request is overly broad, and

18  requires Defendant DHS to produce information that would be overly burdensome

19  to produce, even if the request was otherwise not objectionable. DHS information

20  pertaining to this request would be contained in hard copy Alien Files. In FY 2011

21  alone, the immigration court completed proceedings for 32,647 detained cases in

22  Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

23  Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

24  available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

25          Subject to and without waiving any objections, Defendant respectfully

26  refers Plaintiffs to its answer to Interrogatory No. 11 above in response to

27  Interrogatory No 12.

28          ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

-82-

1    This response is insufficient for the same reasons as Defendants'

2    response to Interrogatory Nos. 3 and 11, and Plaintiffs' contentions regarding

3    Defendants' responses to those interrogatories are incorporated here by reference.

4    Having failed to provide information responsive to Interrogatory No. 11,

5    Defendants have also failed to provide the details requested here, the outcome of

6    proceedings for all detainees identified in response to Interrogatory No. 11, which

7    is relevant to assess the protections of *M-A-M-* where the Government undertakes

8    to inform immigration judges of competency issues by means other than a written

9    motion, as Defendants have represented may occur.  (Dkt. # 389 at 16.)

10   Accordingly, they should be ordered to fully respond to this question.  *See*

11   *Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

12

13   <u>Defendants' Response:</u>

14   The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

15   requesting almost identical information aimed at eliciting information about policies

16   and procedures employed with respect to Defendants' provision of information to

17   immigration courts concerning detainees with potential competency issues.

18   Defendants have produced over 250,000 pages of documents in this matter, and have

19   responded to numerous production requests that seek similar information.  *See, e.g.,*

20   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

21   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

22   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

23   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

24   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

25   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

26   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

27   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

28   There are several places within the discovery production from which Plaintiffs can

-83-

1   elicit the specific information they seek by looking at the documents that were

2   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

3   party may respond to interrogatories by producing business records from which the

4   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

5   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

6   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

7   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

8   provide responses to the information requested:  ICE0000032741-ICE0000039514,

9   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

10  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

11  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

12  December 4, 2012; and December 11, 2012.

13          Given that the responses to the Interrogatories were produced in the

14  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

15  to elicit the information that was requested.  Here the burden of deriving or

16  ascertaining the answers is substantially the same for either party, and Defendants

17  have already underwent the burden of producing the information in the form of

18  business records.  Plaintiffs should review the records to deduce the information they

19  seek.

20                          ***Interrogatory No. 13***

21          Identify All immigration proceedings, including detainee names, A-

22  numbers, proceeding locations, detention locations, identities of immigration

23  judges assigned to preside over these proceedings, and procedural postures of these

24  proceedings, where You have notified EOIR of any competency issues of which

25  you were aware by means other than through a "written motion requesting a mental

26  competency hearing," (Dkt. # 389 at 16:15-16) and the immigration judge did not

27  hold such a hearing prior to the determination of the merits of the detainee's case.

28  ***Government's Verbatim Response***

-84-

1   ***Original Response, served on August 15, 2012.***

2   See General Objections 1-15. Defendant DHS objects to this

3   interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

4   Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

5   the court, a party may serve on any other party no more than 25 written

6   interrogatories, including all discrete subparts. Leave to serve additional

7   interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

8   Plaintiffs in this matter never sought leave to serve an additional amount of

9   interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

10  the class certification phase of this litigation. Plaintiffs attempt to get around the

11  numerical limitations by suggesting that these 19 interrogatories are those of

12  Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

13  claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

14  13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to

15  approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory,

16  they would have a nearly unlimited amount of interrogatories based on the number

17  of plaintiffs and class members in this case. Accordingly, Defendants moved ex

18  parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable

19  limitations on the amount of merits discovery that Plaintiffs may propound.

20  To the extent the Court would nevertheless require responses of

21  Defendants, these interrogatories also pose considerable burden for Defendant

22  DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

23  Arizona, California, and Washington to obtain responses. Defendant DHS is

24  unable to do such research within the normal 30-day period allotted for under the

25  Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

26  period because there is currently no discovery cut-off date and no scheduling order

27  setting a trial date that has been entered by the Court. On August 14, 2012,

28  Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and

-85-

1  the need for additional time, but did not hear back in time to submit these

2  responses. Defendants also propose conferring with Plaintiffs in narrowing the

3  scope of the Interrogatories in a manner that would considerably reduce the burden

4  and accelerate DHS's response.

5          To the extent the response of this Interrogatory would require

6  Defendants to reveal personal information about immigration detainees for whom

7  no Privacy Waivers have been served on Defendants, Defendants further object.

8  Although a Protective Order is in place for this litigation, it may not cover all

9  potential releases of private information concerning immigration detainees.

10  Accordingly, without valid Privacy Waivers, Defendants must respectfully decline

11  production of some information pursuant to the Privacy Act and other laws

12  governing the disclosure of private or confidential information. See General

13  Objection 4.

14          DHS reserves the right to supplement its objections to this specific

15  request at a later date.

16          ***Supplemental Response, served on October 5, 2012.***

17          Defendant DHS objects to Plaintiffs' definition of "immigration

18  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

19  maintains that the only immigration proceedings relevant to this lawsuit are

20  removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

21  the responses only pertain to these proceedings. Defendant DHS also objects to any

22  production of documents covered by an appropriate privilege or prohibition on

23  disclosure. Defendant DHS objects to this request on the ground that responsive

24  information is protected from disclosure by applicable privileges, including but not

25  limited to attorney client privilege, attorney work product doctrine, law

26  enforcement / investigatory files privilege, self-critical analysis privilege, the

27  Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

28  1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

-86-

1   regarding the protection of privacy, confidential information or medical

2   information. Defendant DHS also objects that this request is overly broad, and

3   requires Defendant DHS to produce information that would be overly burdensome

4   to produce, even if the request was otherwise not objectionable. DHS information

5   pertaining to this request would be contained in hard copy Alien Files. In FY 2011

6   alone, the immigration court completed proceedings for 32,647 detained cases in

7   Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

8   Irnmigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

9   available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

10           Subject to and without waiving any objections, Defendant DHS

11  responds as follows: Defendant DHS does not maintain a list of immigration

12  proceedings in which ICE has "notified EOIR of any competency issues of which

13  [it] is aware by means other than through a 'written motion requesting a mental

14  competency hearing' and the immigration judge did not hold such a hearing prior

15  to the determination of the merits of the detainee's case." Defendant DHS further

16  responds that it has identified approximately 100 competency determinations

17  rendered by immigration judges between May 4, 2011, and September 4, 2012, in

18  cases that Defendants have included in the consolidated lists of detainees that were

19  produced to Plaintiffs through September 7, 2012. See Defendants Exhibit A.

20              ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

21           This response is insufficient for the same reasons as Defendants'

22  response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

23  response to that interrogatory are incorporated here by reference.  By way of

24  summary, and as described in greater detail above, Defendants have made *Matter*

25  *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

26  information about how they implement it.  This interrogatory was designed to elicit

27  information about Defendants' efforts in obtaining competency hearings when they

28  used a procedure other than a written motion, as Defendants have represented may

-87-

1   occur.  (Dkt. # 389 at 16.)  This would help, among other things, determine what

2   these vaguely-referred-to procedures "other than a written motion" actually are,

3   and how well they work in identifying incompetent detainees and persuading

4   immigration judges to hold a hearing. This particular request would help Plaintiffs

5   learn about the consequences where such hearings are not held.

6          Defendants' chart contains general information about the outcome of

7   certain immigration proceedings, but does not identify immigration proceedings

8   where Defendants have "notified EOIR of any competency issues of which

9   [Defendants] were aware by means other than through a 'written motion requesting

10  a mental competency hearing,'" and no such hearing was held.  Defendants have

11  not provided this information, identified any previously-produced documents

12  containing this information, or provided any substantiation of their claims of

13  burden or privilege.  Defendants' various relevance, burden and privilege

14  arguments are meritless for reasons described more fully above, and should be

15  rejected here.  Accordingly, they should be ordered to fully respond to this

16  question. *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

17

18          Defendants' Response:

19          The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

20  requesting almost identical information aimed at eliciting information about policies

21  and procedures employed with respect to Defendants' provision of information to

22  immigration courts concerning detainees with potential competency issues.

23  Defendants have produced over 250,000 pages of documents in this matter, and have

24  responded to numerous production requests that seek similar information. *See, e.g.,*

25  Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

26  Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

27  Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

28  Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

-88-

1   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

2   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

3   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

4   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

5   There are several places within the discovery production from which Plaintiffs can

6   elicit the specific information they seek by looking at the documents that were

7   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

8   party may respond to interrogatories by producing business records from which the

9   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

10  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

11  (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

12  *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

13  provide responses to the information requested:  ICE0000032741-ICE0000039514,

14  ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

15  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

16  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

17  December 4, 2012; and December 11, 2012.

18          Given that the responses to the Interrogatories were produced in the

19  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

20  to elicit the information that was requested.  Here the burden of deriving or

21  ascertaining the answers is substantially the same for either party, and Defendants

22  have already underwent the burden of producing the information in the form of

23  business records.  Plaintiffs should review the records to deduce the information they

24  seek.

25          ***Interrogatory No. 14***

26          For each immigration proceeding identified in Interrogatory No. 13,

27  provide the outcome of the case, including but not limited to any dispositive

28  agency actions, merits determinations, judgments, or appeals.

-89-

1    ***Government's Verbatim Response***

2            ***Original Response, served on August 15, 2012.***

3            See General Objections 1-15. Defendant DHS objects to this

4    interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

5    Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

6    the court, a party may serve on any other party no more than 25 written

7    interrogatories, including all discrete subparts. Leave to serve additional

8    interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

9    Plaintiffs in this matter never sought leave to serve an additional amount of

10   interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

11   the class certification phase of this litigation. Plaintiffs attempt to get around the

12   numerical limitations by suggesting that these 19 interrogatories are those of

13   Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

14   claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

15   13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to

16   approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory,

17   they would have a nearly unlimited amount of interrogatories based on the number

18   of plaintiffs and class members in this case. Accordingly, Defendants moved ex

19   parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable

20   limitations on the amount of merits discovery that Plaintiffs may propound.

21           To the extent the Court would nevertheless require responses of

22   Defendants, these interrogatories also pose considerable burden for Defendant

23   DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

24   Arizona, California, and Washington to obtain responses. Defendant DHS is

25   unable to do such research within the normal 30-day period allotted for under the

26   Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

27   period because there is currently no discovery cut-off date and no scheduling order

28   setting a trial date that has been entered by the Court. On August 14, 2012,

-90-

Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and the need for additional time, but did not hear back in time to submit these responses. Defendants also propose conferring with Plaintiffs in narrowing the scope of the Interrogatories in a manner that would considerably reduce the burden and accelerate DHS's response.

To the extent the response of this Interrogatory would require Defendants to reveal personal information about immigration detainees for whom no Privacy Waivers have been served on Defendants, Defendants further object. Although a Protective Order is in place for this litigation, it may not cover all potential releases of private information concerning immigration detainees. Accordingly, without valid Privacy Waivers, Defendants must respectfully decline production of some information pursuant to the Privacy Act and other laws governing the disclosure of private or confidential information. See General Objection 4.

DHS reserves the right to supplement its objections to this specific request at a later date.

### *Supplemental Response, served on October 5, 2012.*

Defendant DHS objects to Plaintiffs' definition of "immigration proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS maintains that the only immigration proceedings relevant to this lawsuit are removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus the responses only pertain to these proceedings. Defendant DHS also objects to any production of documents covered by an appropriate privilege or prohibition on disclosure. Defendant DHS objects to this request on the ground that responsive information is protected from disclosure by applicable privileges, including but not limited to attorney client privilege, attorney work product doctrine, law enforcement / investigatory files privilege, self-critical analysis privilege, the Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

-91-

1    1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

2    regarding the protection of privacy, confidential information or medical

3    information. Defendant DHS also objects that this request is overly broad, and

4    requires Defendant DHS to produce information that would be overly burdensome

5    to produce, even if the request was otherwise not objectionable. DHS information

6    pertaining to this request would be contained in hard copy Alien Files, In FY 2011

7    alone, the immigration court completed proceedings for 32,647 detained cases in

8    Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

9    Imrnigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

10   available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

11          Subject to and without waiving any objections, Defendant DHS

12   respectfully refers Plaintiffs to its answer to Interrogatory No. 13 above in response

13   to Interrogatory No. 14.

14          ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

15          This response is insufficient for the same reasons as Defendants'

16   responses to Interrogatory Nos. 3 and 13, and Plaintiffs' contentions regarding

17   Defendants' responses to those interrogatories are incorporated here by reference.

18   Having failed to provide information responsive to Interrogatory No. 13,

19   Defendants have also failed to provide the details requested here, the outcome of

20   each proceeding identified in response to Interrogatory No. 13.  Accordingly, they

21   should be ordered to fully respond to this question. *See Crawford*, 2011 U.S.

22   Dist. LEXIS 34912, at *6-7.

23

24          Defendants' Response:

25          The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

26   requesting almost identical information aimed at eliciting information about policies

27   and procedures employed with respect to Defendants' provision of information to

28   immigration courts concerning detainees with potential competency issues.

-92-

1   Defendants have produced over 250,000 pages of documents in this matter, and have

2   responded to numerous production requests that seek similar information.  *See, e.g.,*

3   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

4   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

5   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

6   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

7   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

8   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

9   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

10  U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

11  There are several places within the discovery production from which Plaintiffs can

12  elicit the specific information they seek by looking at the documents that were

13  produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

14  party may respond to interrogatories by producing business records from which the

15  answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

16  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

17  (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

18  *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

19  provide responses to the information requested:  ICE0000032741-ICE0000039514,

20  ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

21  ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

22  File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

23  December 4, 2012; and December 11, 2012.

24          Given that the responses to the Interrogatories were produced in the

25  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

26  to elicit the information that was requested.  Here the burden of deriving or

27  ascertaining the answers is substantially the same for either party, and Defendants

28  have already underwent the burden of producing the information in the form of

-93-

1  business records.  Plaintiffs should review the records to deduce the information they

2  seek.

3  ### *Interrogatory No. 15*

4      Identify All immigration proceedings, including detainee names, A-

5  numbers, proceeding locations, detention locations, identities of immigration

6  judges assigned to preside over these proceedings, and procedural postures of these

7  proceedings, in which an immigration judge without, receiving a request or other

8  such notification from You, held a mental competency hearing.

9  ### *Government's Verbatim Response*

10  ### *Original Response, served on August 15, 2012.*

11      See General Objections 1-15. Defendant DHS objects to this

12  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

13  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

14  the court, a party may serve on any other party no more than 25 written

15  interrogatories, including all discrete subparts. Leave to serve additional

16  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

17  Plaintiffs in this matter never sought leave to serve an additional amount of

18  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

19  the class certification phase of this litigation. Plaintiffs attempt to get around the

20  numerical limitations by suggesting that these 19 interrogatories are those of

21  Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

22  claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

23  13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to

24  approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory,

25  they would have a nearly unlimited amount of interrogatories based on the number

26  of plaintiffs and class members in this case. Accordingly, Defendants moved ex

27  parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable

28  limitations on the amount of merits discovery that Plaintiffs may propound.

-94-

1     To the extent the Court would nevertheless require responses of

2  Defendants, these interrogatories also pose considerable burden for Defendant

3  DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

4  Arizona, California, and Washington to obtain responses. Defendant DHS is

5  unable to do such research within the normal 30-day period allotted for under the

6  Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

7  period because there is currently no discovery cut-off date and no scheduling order

8  setting a trial date that has been entered by the Court. On August 14, 2012,

9  Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and

10  the need for additional time, but did not hear back in time to submit these

11  responses. Defendants also propose conferring with Plaintiffs in narrowing the

12  scope of the Interrogatories in a manner that would considerably reduce the burden

13  and accelerate DHS's response.

14     To the extent the response of this Interrogatory would require

15  Defendants to reveal personal information about immigration detainees for whom

16  no Privacy Waivers have been served on Defendants, Defendants further object.

17  Although a Protective Order is in place for this litigation, it may not cover all

18  potential releases of private information concerning immigration detainees.

19  Accordingly, without valid Privacy Waivers, Defendants must respectfully decline

20  production of some information pursuant to the Privacy Act and other laws

21  governing the disclosure of private or confidential information. See General

22  Objection 4.

23     DHS reserves the right to supplement its objections to this specific

24  request at a later date.

25     ***Supplemental Response, served on October 5, 2012.***

26     Defendant DHS objects to Plaintiffs' definition of "immigration

27  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

28  maintains that the only immigration proceedings relevant to this lawsuit are

-95-

1  removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

2  the responses only pertain to these proceedings. Defendant DHS also objects to any

3  production of documents covered by an appropriate privilege or prohibition on

4  disclosure. Defendant DHS objects to this request on the ground that responsive

5  information is protected from disclosure by applicable privileges, including but not

6  limited to attorney client privilege, attorney work product doctrine, law

7  enforcement / investigatory files privilege, self-critical analysis privilege, the

8  Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

9  1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

10  regarding the protection of privacy, confidential information or medical

11  information. Defendant DHS also objects that this request is overly broad, and

12  requires Defendant DHS to produce information that would be overly burdensome

13  to produce, even if the request was otherwise not objectionable. DHS information

14  pertaining to this request would be contained in hard copy Alien Files. In FY 2011

15  alone, the immigration court completed proceedings for 32,647 detained cases in

16  Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

17  Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

18  available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

19      Subject to and without waiving any objections, Defendant DHS

20  responds as follows: Defendant DHS does not maintain a list of immigration

21  proceedings "in which an immigration judge[,] without receiving a request or other

22  such notification from [ICE], held a mental competency hearing." Defendant DHS

23  further responds that it has identified approximately 100 competency

24  determinations rendered by immigration judges between May 4, 2011, and

25  September 4, 2012, in cases that Defendants have included in the consolidated lists

26  of detainees that were produced to Plaintiffs through September 7, 2012. See

27  Defendants Exhibit A.

28      ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

-96-

1         This response is insufficient for the same reasons as Defendants'

2   response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

3   response to that interrogatory are incorporated here by reference.  By way of

4   summary, and as described in greater detail above, Defendants have made *Matter*

5   *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

6   information about how they implement it.  This interrogatory was designed to elicit

7   information about *M-A-M-* hearings that immigration judges order spontaneously,

8   or at least, without receiving requests from Defendants.  Defendants' counsel

9   recently swore that this may occur (Dkt. # 516 at 7) and has repeatedly represented

10  in emails that it occurs (Exh. CC) in an effort to resolve a pending motion filed by

11  Plaintiffs.  Thus Defendants plainly have knowledge of such proceedings

12  occurring, which they refuse to share with Plaintiffs.  Gathering information about

13  such proceedings will help Plaintiffs learn how the system functions when such

14  hearings happen in this manner.

15        Defendants' chart contains general information about the outcome of

16  certain immigration proceedings, but does not identify immigration proceedings

17  where immigration courts have held competency hearings without receiving a

18  request from Defendants or other notification from Defendants.  Nor have

19  Defendants identified any previously-produced documents containing this

20  information, or provided any substantiation of their claims of burden or privilege.

21  Defendants' various relevance, burden and privilege arguments are meritless for

22  reasons described more fully above, and should be rejected here.  Accordingly,

23  they should be ordered to fully respond to this question.  *See Crawford*, 2011 U.S.

24  Dist. LEXIS 34912, at *6-7.

25        <u>Defendants' Response:</u>

26        The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

27  requesting almost identical information aimed at eliciting information about policies

28  and procedures employed with respect to Defendants' provision of information to

-97-

1    immigration courts concerning detainees with potential competency issues.

2    Defendants have produced over 250,000 pages of documents in this matter, and have

3    responded to numerous production requests that seek similar information.  *See, e.g.,*

4    Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

5    Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

6    Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

7    Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

8    Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

9    Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

10   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

11   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

12   There are several places within the discovery production from which Plaintiffs can

13   elicit the specific information they seek by looking at the documents that were

14   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

15   party may respond to interrogatories by producing business records from which the

16   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

17   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

18   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

19   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

20   provide responses to the information requested:  ICE0000032741-ICE0000039514,

21   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

22   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

23   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

24   December 4, 2012; and December 11, 2012.

25          Given that the responses to the Interrogatories were produced in the

26   form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

27   to elicit the information that was requested.  Here the burden of deriving or

28   ascertaining the answers is substantially the same for either party, and Defendants

-98-

have already underwent the burden of producing the information in the form of business records. Plaintiffs should review the records to deduce the information they seek.

### ***Interrogatory No. 16***

For each immigration proceeding identified in Interrogatory No. 15, provide the outcome of the competency hearing.

### ***Government's Verbatim Response***

### ***Original Response, served on August 15, 2012.***

See General Objections 1-15. Defendant DHS objects to this interrogatory as well beyond the scope of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Plaintiffs in this matter never sought leave to serve an additional amount of interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during the class certification phase of this litigation. Plaintiffs attempt to get around the numerical limitations by suggesting that these 19 interrogatories are those of Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11, 13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory, they would have a nearly unlimited amount of interrogatories based on the number of plaintiffs and class members in this case. Accordingly, Defendants moved ex parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable limitations on the amount of merits discovery that Plaintiffs may propound.

To the extent the Court would nevertheless require responses of Defendants, these interrogatories also pose considerable burden for Defendant

-99-

1  DHS who must coordinate with five ICE Chief Counsel's Offices in the States of

2  Arizona, California, and Washington to obtain responses. Defendant DHS is

3  unable to do such research within the normal 30-day period allotted for under the

4  Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response

5  period because there is currently no discovery cut-off date and no scheduling order

6  setting a trial date that has been entered by the Court. On August 14, 2012,

7  Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and

8  the need for additional time, but did not hear back in time to submit these

9  responses. Defendants also propose conferring with Plaintiffs in narrowing the

10 scope of the Interrogatories in a manner that would considerably reduce the burden

11 and accelerate DHS's response.

12         To the extent the response of this Interrogatory would require

13 Defendants to reveal personal information about immigration detainees for whom

14 no Privacy Waivers have been served on Defendants, Defendants further object.

15 Although a Protective Order is in place for this litigation, it may not cover all

16 potential releases of private information concerning immigration detainees.

17 Accordingly, without valid Privacy Waivers, Defendants must respectfully decline

18 production of some information pursuant to the Privacy Act and other laws

19 governing the disclosure of private or confidential information. See General

20 Objection 4.

21         DHS reserves the right to supplement its objections to this specific

22 request at a later date.

23         ***Supplemental Response, served on October 5, 2012.***

24         Defendant DHS objects to Plaintiffs' definition of "immigration

25 proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

26 maintains that the only immigration proceedings relevant to this lawsuit are

27 removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

28 the responses only pertain to these proceedings. Defendant DHS also objects to any

-100-

1   production of documents covered by an appropriate privilege or prohibition on

2   disclosure. Defendant DHS objects to this request on the ground that responsive

3   information is protected from disclosure by applicable privileges, including but not

4   limited to attorney client privilege, attorney work product doctrine, law

5   enforcement / investigatory files privilege, self-critical analysis privilege, the

6   Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

7   1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

8   regarding the protection of privacy, confidential information or medical

9   information. Defendant DHS also objects that this request is overly broad, and

10  requires Defendant DHS to produce information that would be overly burdensome

11  to produce, even if the request was otherwise not objectionable. DHS information

12  pertaining to this request would be contained in hard copy Alien Files. In FY 2011

13  alone, the immigration court completed proceedings for 32,647 detained cases in

14  Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

15  Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

16  available at http://www.justice.gov/eoir/statspub/fyllsyb.pdf.

17          Subject to and without waiving any objections, Defendant DHS

18  respectfully refers Plaintiffs to its answer to Interrogatory No. 15 above in response

19  to Interrogatory No. 16.

20                  ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

21          This response is insufficient for the same reasons as Defendants'

22  response to Interrogatory Nos. 3 and 15, and Plaintiffs' contentions regarding

23  Defendants' responses to those interrogatories are incorporated here by reference.

24  Having failed to provide information responsive to Interrogatory No. 15,

25  Defendants have also failed to provide the details requested here, the outcomes of

26  the competency hearings identified in response to Interrogatory No. 15.

27  Accordingly, they should be ordered to fully respond to this question. *See*

28  *Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

-101-

Defendants' Response:

The "Zhalezny Interrogatories" constitute 19 Interrogatories, all requesting almost identical information aimed at eliciting information about policies and procedures employed with respect to Defendants' provision of information to immigration courts concerning detainees with potential competency issues. Defendants have produced over 250,000 pages of documents in this matter, and have responded to numerous production requests that seek similar information. *See, e.g.,* Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S. Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6, Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim Zhalezny's Requests for Production of Documents to Defendant U.S. Department of Homeland Security, Requests #3-4, served on July 16, 2012; Ex. 8, Plaintiff Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012. There are several places within the discovery production from which Plaintiffs can elicit the specific information they seek by looking at the documents that were produced. Under the Federal Rules of Civil Procedure, it is well-established that a party may respond to interrogatories by producing business records from which the answer to the interrogatory may be determined. *See* Fed. R. Civ. P. 33(d). *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322 (C.D.Cal. 2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983). In this case, the following documents provide responses to the information requested: ICE0000032741-ICE0000039514, ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A, ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012; December 4, 2012; and December 11, 2012.

-102-

1    Given that the responses to the Interrogatories were produced in the

2  form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

3  to elicit the information that was requested.  Here the burden of deriving or

4  ascertaining the answers is substantially the same for either party, and Defendants

5  have already underwent the burden of producing the information in the form of

6  business records.  Plaintiffs should review the records to deduce the information they

7  seek..

8                               ***Interrogatory No. 17***

9    Identify All immigration proceedings, including detainee names, A-

10  numbers, proceeding locations, detention locations, identities of immigration

11  judges assigned to preside over these proceedings, and procedural postures of these

12  proceedings, in which You have filed a motion to remand before the Board of

13  Immigration Appeals for purposes of having an immigration judge hold a mental

14  competency hearing.

15  ***Government's Verbatim Response***

16                        ***Original Response, served on August 15, 2012.***

17    See General Objections 1-15. Defendant DHS objects to this

18  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

19  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

20  the court, a party may serve on any other party no more than 25 written

21  interrogatories, including all discrete subparts. Leave to serve additional

22  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

23  Plaintiffs in this matter never sought leave to serve an additional amount of

24  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

25  the class certification phase of this litigation. Plaintiffs attempt to get around the

26  numerical limitations by suggesting that these 19 interrogatories are those of

27  Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

28  claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

-103-

13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to
approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory,
they would have a nearly unlimited amount of interrogatories based on the number
of plaintiffs and class members in this case. Accordingly, Defendants moved ex
parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable
limitations on the amount of merits discovery that Plaintiffs may propound.

       To the extent the Court would nevertheless require responses of
Defendants, these interrogatories also pose considerable burden for Defendant
DHS who must coordinate with five ICE Chief Counsel's Offices in the States of
Arizona, California, and Washington to obtain responses. Defendant DHS is
unable to do such research within the normal 30-day period allotted for under the
Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response
period because there is currently no discovery cut-off date and no scheduling order
setting a trial date that has been entered by the Court. On August 14, 2012,
Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and
the need for additional time, but did not hear back in time to submit these
responses. Defendants also propose conferring with Plaintiffs in narrowing the
scope of the Interrogatories in a manner that would considerably reduce the burden
and accelerate DHS's response.

       To the extent the response of this Interrogatory would require
Defendants to reveal personal information about immigration detainees for whom
no Privacy Waivers have been served on Defendants, Defendants further object.
Although a Protective Order is in place for this litigation, it may not cover all
potential releases of private information concerning immigration detainees.
Accordingly, without valid Privacy Waivers, Defendants must respectfully decline
production of some information pursuant to the Privacy Act and other laws
governing the disclosure of private or confidential information. See General
Objection 4.

1    DHS reserves the right to supplement its objections to this specific

2    request at a later date.

3    ***__Supplemental Response, served on October 5, 2012.__***

4    Defendant DHS objects to Plaintiffs' definition of "immigration

5    proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

6    maintains that the only immigration proceedings relevant to this lawsuit are

7    removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

8    the responses only pertain to these proceedings. Defendant DHS also objects to any

9    production of documents covered by an appropriate privilege or prohibition on

10   disclosure. Defendant DHS objects to this request on the ground that responsive

11   information is protected from disclosure by applicable privileges, including but not

12   limited to attorney client privilege, attorney work product doctrine, law

13   enforcement / investigatory files privilege, self-critical analysis privilege, the

14   Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

15   1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

16   regarding the protection of privacy, confidential information or medical

17   information. Defendant DHS also objects that this request is overly broad, and

18   requires Defendant DHS to produce information that would be overly burdensome

19   to produce, even if the request was otherwise not objectionable. DHS information

20   pertaining to this request would be contained in hard copy Alien Files. In FY 2011

21   alone, the immigration court completed proceedings for 32,647 detained cases in

22   Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

23   Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

24   available at http://www.justice.gov/eoir/statspub/fyllsyb.pdf.

25   Subject to and without waiving any objections, Defendant DHS

26   responds as follows: Defendant DHS does not maintain a list of immigration

27   proceedings "in which [ICE] ha[s] filed a motion to remand before the Board of

28   Immigration Appeals for purposes of having an immigration judge hold a mental

-105-

1  competency hearing." Defendant DHS further responds that it has identified

2  approximately 100 competency determinations rendered by immigration judges

3  between May 4, 2011, and September 4, 2012, in cases Defendants have included

4  in the consolidated lists of detainees that were produced to Plaintiffs through

5  September 7, 2012. See Defendants Exhibit A.

6              ***Plaintiffs' Contentions as to Insufficiency of Defendants' Responses***

7              This response is insufficient for the same reasons as Defendants'

8  response to Interrogatory No. 3, and Plaintiffs' contentions regarding Defendants'

9  response to that interrogatory are incorporated here by reference.  By way of

10  summary, and as described in greater detail above, Defendants have made *Matter*

11  *of M-A-M-* central to their defense of this action, but refuse to give Plaintiffs

12  information about how they implement it.  This interrogatory is designed to elicit

13  information about the Government's procedures, if any, for identifying

14  incompetent detainees in proceedings before the BIA and, given that many

15  detainees file appeals at various points in their proceedings, this information will

16  help Plaintiffs assess the safeguards of *M-A-M-* for individuals who, for example,

17  are not identified as incompetent, are ordered removed, and then file incoherent

18  appeals which may themselves alert the immigration court that the individual is

19  incompetent.  The effectiveness of the BIA's procedures (if any) for identifying

20  individuals in this unfortunate situation is plainly relevant in this action.

21              Defendants' chart contains general information about the outcome of

22  certain immigration proceedings, but does not identify proceedings where the DHS

23  has "filed a motion to remand before the Board of Immigration Appeals for

24  purposes of having an immigration judge hold a mental competency hearing."  Nor

25  have Defendants identified any previously-produced documents containing this

26  information, or provided any substantiation of their claims of burden or privilege.

27  Defendants' various relevance, burden and privilege arguments are meritless for

28  reasons described more fully above, and should be rejected here.  Accordingly,

-106-

1    they should be ordered to fully respond to this question.  *See Crawford*, 2011 U.S.

2    Dist. LEXIS 34912, at *6-7.

3

4                    Defendants' Response:

5            The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

6    requesting almost identical information aimed at eliciting information about policies

7    and procedures employed with respect to Defendants' provision of information to

8    immigration courts concerning detainees with potential competency issues.

9    Defendants have produced over 250,000 pages of documents in this matter, and have

10   responded to numerous production requests that seek similar information.  *See, e.g.,*

11   Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

12   Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

13   Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

14   Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

15   Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

16   Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

17   Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

18   U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

19   There are several places within the discovery production from which Plaintiffs can

20   elicit the specific information they seek by looking at the documents that were

21   produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

22   party may respond to interrogatories by producing business records from which the

23   answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

24   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

25   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

26   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

27   provide responses to the information requested:  ICE0000032741-ICE0000039514,

28   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

-107-

1   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

2   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

3   December 4, 2012; and December 11, 2012.

4          Given that the responses to the Interrogatories were produced in the

5   form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

6   to elicit the information that was requested.  Here the burden of deriving or

7   ascertaining the answers is substantially the same for either party, and Defendants

8   have already underwent the burden of producing the information in the form of

9   business records.  Plaintiffs should review the records to deduce the information they

10  seek.

11

12                      ***Interrogatory No. 18***

13          For each immigration proceeding identified in Interrogatory No. 17,

14  state whether the motion to remand was granted or denied.

15  ***Government's Verbatim Response***

16              ***Original Response, served on August 15, 2012.***

17          See General Objections 1-15. Defendant DHS objects to this

18  interrogatory as well beyond the scope of the Federal Rules of Civil Procedure.

19  Fed. R. Civ. P. 33(a)(1) provides that, "Unless otherwise stipulated or ordered by

20  the court, a party may serve on any other party no more than 25 written

21  interrogatories, including all discrete subparts. Leave to serve additional

22  interrogatories may be granted to the extent consistent with Rule 26(b)(2)."

23  Plaintiffs in this matter never sought leave to serve an additional amount of

24  interrogatories, and it is undisputed that Plaintiffs served 39 interrogatories during

25  the class certification phase of this litigation. Plaintiffs attempt to get around the

26  numerical limitations by suggesting that these 19 interrogatories are those of

27  Plaintiff Zhalezny, however, none of these interrogatories relate in any way to the

28  claims brought forward by Mr. Zhalezny. In addition, Interrogatories 3, 4, 7, 9, 11,

-108-

13, 15, and 17 each contain 5 subparts, raising the number of interrogatories to approximately 52 for this one plaintiff alone. In any event, under Plaintiffs' theory, they would have a nearly unlimited amount of interrogatories based on the number of plaintiffs and class members in this case. Accordingly, Defendants moved ex parte on July 19, 2012 (Dkt. #420) to request that this Court set reasonable limitations on the amount of merits discovery that Plaintiffs may propound.

To the extent the Court would nevertheless require responses of Defendants, these interrogatories also pose considerable burden for Defendant DHS who must coordinate with five ICE Chief Counsel's Offices in the States of Arizona, California, and Washington to obtain responses. Defendant DHS is unable to do such research within the normal 30-day period allotted for under the Rules. Defendant DHS notes that Plaintiffs are not prejudiced by a longer response period because there is currently no discovery cut-off date and no scheduling order setting a trial date that has been entered by the Court. On August 14, 2012, Defendants reached out to Plaintiffs' counsel to discuss these interrogatories and the need for additional time, but did not hear back in time to submit these responses. Defendants also propose conferring with Plaintiffs in narrowing the scope of the Interrogatories in a manner that would considerably reduce the burden and accelerate DHS's response.

To the extent the response of this Interrogatory would require Defendants to reveal personal information about immigration detainees for whom no Privacy Waivers have been served on Defendants, Defendants further object. Although a Protective Order is in place for this litigation, it may not cover all potential releases of private information concerning immigration detainees. Accordingly, without valid Privacy Waivers, Defendants must respectfully decline production of some information pursuant to the Privacy Act and other laws governing the disclosure of private or confidential information. See General Objection 4.

1    DHS reserves the right to supplement its objections to this specific

2  request at a later date.

3    ***Supplemental Response, served on October 15, 2012.***

4    Defendant DHS objects to Plaintiffs' definition of "immigration

5  proceedings" as irrelevant, overbroad, and unduly burdensome. Defendant DHS

6  maintains that the only immigration proceedings relevant to this lawsuit are

7  removal proceedings pursuant to 8 U.S.C. § 1229a and bond proceedings, and thus

8  the responses only pertain to these proceedings. Defendant DHS also objects to any

9  production of documents covered by an appropriate privilege or prohibition on

10  disclosure. Defendant DHS objects to this request on the ground that responsive

11  information is protected from disclosure by applicable privileges, including but not

12  limited to attorney client privilege, attorney work product doctrine, law

13  enforcement / investigatory files privilege, self-critical analysis privilege, the

14  Machin privilege, the Privacy Act, 5 U.S.C. §552a, the Inspector General Act of

15  1978, §7(b), 5 U.S.C. App. 3, §7(b), and other statutes, regulations or directives

16  regarding the protection of privacy, confidential information or medical

17  information. Defendant DHS also objects that this request is overly broad, and

18  requires Defendant DHS to produce information that would be overly burdensome

19  to produce, even if the request was otherwise not objectionable. DHS Information

20  pertaining to this request would be contained in hard copy Alien Files. In FY 2011

21  alone, the immigration court completed proceedings for 32,647 detained cases in

22  Arizona, California, or Washington. See U.S. Dep't of Justice, Exec. Office for

23  Immigr. Rev., FY 2011 Statistical Year Book (Feb. 2012) at 03, Table 13,

24  available at http://www.justice.gov/eoir/statspub/fy11syb.pdf.

25    Subject to and without waiving any objections, Defendant DHS

26  respectfully refers Plaintiffs to its answer to Interrogatory No. 17 above in response

27  to Interrogatory No. 18.

28

-110-

1     ***<u>Plaintiffs' Contentions as to Insufficiency of Defendants' Responses</u>***

2     This response is insufficient for the same reasons as Defendants'

3 response to Interrogatory Nos. 3 and 17.  Having failed to provide information

4 responsive to Interrogatory No. 17, Defendants have also failed to provide the

5 details requested here, the outcomes of the motions to remand identified in

6 response to Interrogatory No. 15.  Accordingly, they should be ordered to fully

7 respond to this question.  *See Crawford*, 2011 U.S. Dist. LEXIS 34912, at *6-7.

8

9     <u>Defendants' Response:</u>

10     The "Zhalezny Interrogatories" constitute 19 Interrogatories, all

11 requesting almost identical information aimed at eliciting information about policies

12 and procedures employed with respect to Defendants' provision of information to

13 immigration courts concerning detainees with potential competency issues.

14 Defendants have produced over 250,000 pages of documents in this matter, and have

15 responded to numerous production requests that seek similar information.  *See, e.g.,*

16 Ex. 4, Plaintiffs' Requests for Production of Documents to Defendant U.S.

17 Department of Homeland Security, Requests #1-7, served on July 16, 2012; Ex. 6,

18 Plaintiff's Third Set of Requests for Productions to Defendant U.S. Department of

19 Justice, Requests #8-30, served on November 29, 2011; Ex. 7, Plaintiff Maksim

20 Zhalezny's Requests for Production of Documents to Defendant U.S. Department of

21 Homeland Security, Requests #3-4, served on July 16, 2012;  Ex. 8, Plaintiff

22 Aleksandr Khukhryanskiy's Requests for Production of Documents to Defendant

23 U.S. Department of Homeland Security, Requests #4-5, 9, served on July 16, 2012.

24 There are several places within the discovery production from which Plaintiffs can

25 elicit the specific information they seek by looking at the documents that were

26 produced.  Under the Federal Rules of Civil Procedure, it is well-established that a

27 party may respond to interrogatories by producing business records from which the

28 answer to the interrogatory may be determined.  *See* Fed. R. Civ. P. 33(d).

-111-

1   *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322

2   (C.D.Cal.  2004) (citing *Rainbow Pioneer No. 44-18-04A* v. *Hawaii-Nevada Inv.*

3   *Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  In this case, the following documents

4   provide responses to the information requested:  ICE0000032741-ICE0000039514,

5   ICE0000057236A-ICE0000057507A, ICE 0000054519A-ICE0000056229A,

6   ICE0000062025-ICE0000062580, ICE0000067969-ICE0000090126, and the A-

7   File Records and ROPs provided to Plaintiffs via DVDs on November 26, 2012;

8   December 4, 2012; and December 11, 2012.

9          Given that the responses to the Interrogatories were produced in the

10   form of business records pursuant to Fed. R. Civ. P. 33(d), Plaintiffs have the ability

11   to elicit the information that was requested.  Here the burden of deriving or

12   ascertaining the answers is substantially the same for either party, and Defendants

13   have already underwent the burden of producing the information in the form of

14   business records.  Plaintiffs should review the records to deduce the information they

15   seek.

16   Dated:  January 17, 2013            Respectfully submitted,

17                                                   By:        */s/ Michael H. Steinberg*
                                                                       MICHAEL H. STEINBERG
18                                                                    steinbergm@sullcrom.com

19                                                                    SULLIVAN & CROMWELL LLP
                                                                       1888 Century Park East, Suite 2100
20                                                                    Los Angeles, California 90067-1725
                                                                       Telephone: (310) 712-6600
21                                                                    Facsimile:  (310) 712-8800

22                                                                    Attorneys for Plaintiffs

23

24

25

26

27

28

-112-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:     /s/ Victor Lawrence (with permission)

Victor M. Lawrence
Victor.Lawrence@usdoj.gov

U.S. Department of Justice
450 5th Street, NW
Washington, DC  20530
Telephone:  (202) 305-8788
Facsimile:  (202) 305-7000

Attorney for Defendants

-113-