# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ERIC H. HOLDER, JR., ATTORNEY GENERAL, ET AL., <br><br> Defendants. | ) Case No. CV 10-02211 DMG (DTBx) <br> ) <br> ) **ORDER RE PLAINTIFFS' MOTION** <br> ) **FOR PARTIAL SUMMARY** <br> ) **JUDGMENT AND PLAINTIFFS'** <br> ) **MOTION FOR PRELIMINARY** <br> ) **INJUNCTION ON BEHALF OF** <br> ) **SEVEN CLASS MEMBERS [DOC. ##** <br> ) **398, 527]** <br> ) <br> ) <br> ) |

This matter is before the Court on Plaintiffs' motion for partial summary judgment [Doc. # 398] and Plaintiffs' motion for a preliminary injunction on behalf of seven class members [Doc. # 527]. Plaintiffs seek partial summary judgment on the third through fifth and eighth through tenth causes of action in the third amended complaint. In accordance with that motion, Plaintiffs ask the Court to make permanent its preliminary injunction rulings [Doc. ## 107, 215, 285] and apply the rulings to the Named Representatives and all members of Sub-Classes One and Two.

-1-

# I.

## PROCEDURAL BACKGROUND

On March 26, 2010, Petitioner Jose Antonio Franco-Gonzalez filed a Petition for Writ of *Habeas Corpus* (the "Petition") in this Court alleging various violations of the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment to the United States Constitution, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. On March 31, 2010, Respondents released Franco-Gonzalez from custody on his own recognizance, under conditions of supervision pursuant to section 236 of the INA, 8 U.S.C. § 1226.

On August 2, 2010, Franco-Gonzalez attempted to file a first amended class action complaint (the "Amended Complaint"), which sought to add new plaintiffs and new causes of action and to certify a class of plaintiffs similarly situated to Franco-Gonzalez, *i.e.*, mentally disabled immigrant detainees who are held in custody without counsel. (Am. Compl. ¶¶ 39-82, 96-137.) On August 6, 2010, the Honorable David T. Bristow, United States Magistrate Judge, rejected the Amended Complaint as untimely under Fed. R. Civ. P. 15(a). On August 23, 2010, Franco-Gonzalez filed an *Ex Parte* Application to file the Amended Complaint, which Magistrate Judge Bristow denied on September 3, 2010.

On September 14, 2010, Franco-Gonzalez filed a Motion for Review of Magistrate Judge's Decision Denying *Ex Parte* Application to Amend Complaint. On October 18, 2010, this Court granted Franco-Gonzalez's Motion and provided Franco-Gonzalez 15 days to file an amended complaint. [Doc. # 54.] On November 2, 2010, Franco-Gonzalez filed a first amended class action complaint, which added Plaintiffs Aleksandr Petrovich Khukhryanskiy and Ever Francisco Martinez as well as three other named plaintiffs. [Doc. # 64.]

On November 15, 2010, Plaintiffs Khukhryanskiy and Martinez-Rivas filed (1) an application for a temporary restraining order ("TRO") [Doc. # 57], (2) a motion for a preliminary injunction [Doc. # 57], and (3) an expedited discovery application [Doc.

# 60].  On November 24, 2010, the Court issued an order granting Plaintiffs' TRO application and denying Plaintiffs' expedited discovery application.  [Doc. # 78.]  The Court issued an order granting Plaintiffs Khukhryanskiy's and Martinez-Rivas' motion for a preliminary injunction on December 22, 2010 [Doc. # 106] and an amended order on December 27, 2010 [Doc. # 107].

On January 14, 2011, Plaintiff Maksim Zhalezny filed a motion for a preliminary injunction [Doc. # 111].  On May 4, 2011, the Court issued an order granting Plaintiff Zhalezny's motion for a preliminary injunction [Doc. # 215].

On February 14, 2011, Plaintiffs filed a motion for class certification.  The Court held a hearing on that motion on April 15, 2011 [Doc. # 182], granted the parties leave to conduct class discovery [Doc. # 206], and conducted a further hearing on October 24, 2011 [Doc. # 342].  On November 21, 2011, the Court issued an order granting Plaintiffs' motion for class certification ("Class Cert. Order") [Doc. # 348].  The Court certified the following Class and Sub-Classes:

> All individuals who are or will be in DHS custody for removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings.

> Sub-Class 1:  Individuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings.

> Sub-Class 2:  Individuals in the above-named Plaintiff Class who have been detained for more than six months.

(*Id.*)  On June 22, 2012, Defendants filed a motion for reconsideration of the Class Cert. Order [Doc. # 389], which the Court denied on August 27, 2012 [Doc. # 460].

On April 18, 2011, Plaintiffs filed a motion for leave to file a second amended complaint, by which Plaintiffs sought to add new Named Plaintiffs and to request psychological evaluations conducted by an independent expert and appointment of counsel pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  On July 18, 2011, the Court issued an order granting in part and denying in part Plaintiffs' motion for leave to file a second amended complaint [Doc. # 242].  Plaintiffs filed a second amended class action complaint on July 25, 2011 [Doc. # 250].

On June 13, 2011, Putative Plaintiff Jose Antonio Moreno and Plaintiff Yonas Woldemariam each filed a motion for a preliminary injunction [Doc. # 217].  On August 2, 2011, the Court issued an order granting Plaintiff Woldemariam's motion for a preliminary injunction [Doc. # 285].  On September 12, 2011, the Court denied Plaintiff Moreno's motion for a preliminary injunction without prejudice [Doc. # 300].

On October 25, 2011, with leave of the Court, Plaintiffs filed a third amended class action complaint—the operative complaint in this action.  [Doc. # 344.]  The third amended complaint alleges the following causes of action:  (1) right to a competency evaluation under the INA; (2) right to a competency evaluation under the Due Process Clause; (3) right to appointed counsel under the INA; (4) right to appointed counsel under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); (5) right to appointed counsel under the Due Process Clause; (6) right to release under the INA; (7) right to release under the Due Process Clause; (8) right to a detention hearing under the INA; (9) right to a detention hearing under Section 504; (10) right to a detention hearing under the Due Process Clause; and (11) violation of the Administrative Procedures Act.[1]

---

[1] Plaintiffs Franco-Gonzalez and Woldemariam do not join in Claims One through Five. Plaintiff Franco-Gonzalez alone asserts Claims Six and Seven.

On July 9, 2012, Plaintiffs Martinez, Khukhryanskiy, Zhalezny, and Chavez filed a motion for partial summary judgment on behalf of Sub-Class One members as to Counts 3-5 (right to appointed counsel) of their third amended class action complaint [Doc. # 398]. Plaintiffs Martinez, Khukhryanskiy, Zhalezny, and Sepulveda also seek partial summary judgment on behalf of Sub-Class Two members as to Counts 8-10 (right to detention hearing). Defendants filed an opposition on August 17, 2012 [Doc. # 441]. Plaintiffs filed a reply on August 24, 2012 [Doc. # 453]. The Court conducted a hearing on the motion on September 7, 2012. The parties filed supplemental briefs on October 26, 2012 [Doc. ## 503, 504].

While the motion for partial summary judgment remained pending, Plaintiffs filed another motion for a preliminary injunction on behalf of purported class members Elijah Ibanga, Vasily Zotov, Veasana Meas, Jesus Tapia, Nicolas Guerrero-Ramirez, Ismael Mendez, and Maria Valdivia [Doc. # 527]. The Court held a hearing on the pending motions on March 22, 2013. Both the motion for partial summary judgment and the motion for preliminary injunction are addressed herein.

## II.

## FACTUAL BACKGROUND

The detailed factual background of this case is set forth in a series of orders previously issued by this Court and will not be repeated here [*see* Doc. ## 106, 107, 215, 348, 285, 300].

Plaintiffs have distilled that background into three key facts: (1) that the Government detains and places into removal proceedings Sub-Class One members, *i.e.*, individuals who are not competent to represent themselves by reason of a serious mental disorder or defect; (2) the Government imposes on itself no legal obligation to provide representation for such individuals in their immigration proceedings; and (3) the Government detains Sub-Class Two members for more than six months without providing bond hearings in which it must show by clear and convincing evidence that further detention is justified. Defendants do not dispute these basic facts.

## III.

## DISCUSSION

**A.      Plaintiffs Are Entitled to Appointment of a Qualified Representative in Their Immigration Proceedings**

**1.      Plaintiffs Are Entitled to a Reasonable Accommodation under Section 504 of the Rehabilitation Act**

Plaintiffs first assert that the Rehabilitation Act requires legal representation as a reasonable accommodation for individuals who are not competent to represent themselves by virtue of their mental disabilities.  For the reasons discussed below, the Court finds that Section 504 of the Rehabilitation Act does require the appointment of a Qualified Representative as a reasonable accommodation, and accordingly grants Plaintiffs' motion as to Count Four.

**a.      Defendants Fail to Raise a Triable Issue Whether Plaintiffs Establish a *Prima Facie* Case Under the Rehabilitation Act**

Defendants argue that Plaintiffs fail to establish a *prima facie* case under the Rehabilitation Act because they have not demonstrated that all Sub-Class One members, or even a substantial portion of them, were denied meaningful access to the immigration courts solely by reason of their disability.

In order to establish a *prima facie* case under Section 504 of the Rehabilitation Act, Plaintiffs must establish that:  (1) Sub-Class One members are persons with disabilities within the meaning of the Rehabilitation Act; (2) they were "otherwise qualified for the benefit or services sought"; (3) they were "denied the benefit or services solely by reason" of their disability; and (4) the entity to provide the benefit receives federal funding.  *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002).  Defendants do not contest that Plaintiffs satisfy the first, second, and fourth requirements.[2]  (Defs.' Opp'n to

---

[2] The record shows that the first, second, and fourth requirements are, in fact, met.  First, the Rehabilitation Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Sub-class One members "have a

Pls.' Mot. for Partial Summary Judgment ("Opp'n") at 4 [Doc. # 441].)  They do dispute whether Plaintiffs satisfy the third requirement.  (*Id*.)  The Court therefore focuses only on the third factor.

First, Defendants present evidence that, of the 21 identified Sub-Class One members, 17 are no longer part of the class because three are represented by counsel and 14 have been released from Department of Homeland Security ("DHS") custody.  (Decl. of Samuel P. Go ("Go Decl.") ¶¶ 25-26 [Doc. # 442].)  Among the 14 released, one has been granted relief and seven of them have had their removal proceedings terminated.[3] (*Id.*)  Defendants argue that, at a minimum, this raises a genuine issue of material fact whether all Sub-Class One members have been denied meaningful access to the courts.

Plaintiffs emphasize that the injury of which they complain is procedural in nature and therefore these developments in certain class members' cases need not affect the Court's analysis.  Indeed, Plaintiffs have never argued that Class or Sub-Class members are entitled to relief from removal.  Rather, Plaintiffs point out that 8 U.S.C. § 1229a(b)(4)(B) provides that an alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."  *Id.*

---

serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings," and therefore are "disabled" under this definition.  (*See* Class Cert. Order.) Second, the exercise of rights to present evidence, cross-examine witnesses, and make legal arguments against the Government's charges constitute a "benefit or services" to which all individuals in immigration proceedings, including Sub-class One members, are entitled.  *See* 29 C.F.R. § 39.102 (Section 504 applies to "all programs or activities" conducted by executive agencies).  Finally, it is undisputed that Defendants, all federal agencies, receive federal funding.

[3] Plaintiffs submit evidence that, although Immigration Judges terminated proceedings as a safeguard for Sub-class One members, the DHS has appealed such terminations in at least some cases. (*See* Decl. of Talia Inlender ("Inlender Decl.") at ¶ 2 [Doc. # 399].)  Plaintiffs' evidence also shows that one Sub-class One member who was previously released is now back in custody, another Sub-class One member continues to appear in immigration proceedings without a representative, and another Sub-class One member was removed after an Immigration Judge reversed his previous incompetency determination at a proceeding in which the member was not represented.  (Pls.' Notice to Court [Doc. # 495].)

Defendants present no evidence that Sub-Class One members are able to meaningfully exercise such rights absent court intervention.

Moreover, as the Court has reiterated time and again in this case, "the mere [voluntary] cessation of illegal activity in response to pending litigation does not moot a case." *Rosemere Neighborhood Ass'n v. U.S. EPA,* 581 F.3d 1169, 1173 (9th Cir. 2009). Thus, Defendants' swift actions to ensure that identified Sub-Class One members have been released, appointed counsel, or had proceedings terminated during the course of these proceedings or pursuant to this Court's preliminary injunction rulings do not vitiate Plaintiffs' claims that, absent court intervention, they have been unable to meaningfully participate in the system solely by reason of their mental disabilities.

Second, Defendants argue that Plaintiffs are not denied access "solely by reason" of their disability because the Government does not intend to prevent them from full participation in their removal proceedings. A suit for damages under Section 504 requires a showing that the defendant acted with "deliberate indifference" in denying a reasonable accommodation. *See Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). In an action solely for injunctive relief, however, it is sufficient that Plaintiffs are unable to meaningfully access the benefit offered—in this case, full participation in their removal and detention proceedings—because of their disability. *See Alexander v. Choate*, 469 U.S. 287, 299, 105 S. Ct. 712, 719, 83 L. Ed. 2d 661 (1985) (finding that Section 504 is not limited to intentional discrimination alone, but "requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit); *Hunsaker v. Contra Costa Cnty*, 149 F.3d 1041, 1043 (9th Cir. 1998) (citing *Alexander*).

On the record presented, the Court finds that Defendants fail to raise a triable issue whether Plaintiffs have established a *prima facie* case under the Rehabilitation Act.

-8-

**b.    Appointment of a Qualified Representative is a Reasonable Accommodation and Does Not Constitute a "Fundamental Alteration" of the Immigration Court System[4]**

Defendants next argue that, even if Plaintiffs are able to establish a *prima facie* case, legal representation for all mentally incompetent aliens detained for removal proceedings is far beyond a "reasonable accommodation" and amounts to a "fundamental alteration" of the immigration court system, primarily because the Executive Office of Immigration Review ("EOIR") does not have the capacity or funding to implement such a program. (Decl. of Steven Lang ("Lang Decl.") at ¶¶ 6-8, 12-15; Ex. C [Doc. # 441-2].)

Whether an accommodation is reasonable depends on the individual circumstances of each case and requires a fact-specific, individualized analysis of the individual's circumstances and the accommodations that enable meaningful access to the federal program. *See Mark H v. Hamamoto,* 620 F.3d 1090, 1098 (9th Cir. 2010); *see also American Council of the Blind v. Paulson,* 525 F.3d 1256, 1267 (D.C. Cir. 2008) (noting that, where plaintiffs seek to expand the scope of a program or benefit, they seek a fundamental alteration to an existing program rather than a reasonable accommodation). As discussed *supra*, however, Plaintiffs do not seek relief from removal or automatic termination of their proceedings. They seek only the ability to meaningfully participate in the immigration court process, including the rights to "examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses

---

[4] In their third amended complaint and motion, Plaintiffs seek relief in the form of "legal representation" under the Rehabilitation Act. In their prior efforts to seek preliminary injunctive relief for various of the Named Plaintiffs, however, Plaintiffs advocated for, and the Court granted, relief in the form of appointment of a "Qualified Representative," a broader term that includes (1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1. *See Franco-Gonzalez, et al. v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D. Cal. 2011). When the Court asked Plaintiffs at the September 7, 2012 hearing to clarify that they seek appointment of a Qualified Representative as previously defined by this Court, Plaintiffs responded affirmatively.

-9-

presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). Plaintiffs' ability to exercise these rights is hindered by their mental incompetency, and the provision of competent representation able to navigate the proceedings is the only means by which they may invoke those rights.

### i. The Requested Accommodation Does Not Impose an Undue Financial Burden

That EOIR does not currently have a budget, or that Defendants currently do not have any established structure, to protect the rights of Sub-Class One members far from establishes that the requested accommodation would be a fundamental alteration of the immigration court system. On May 4, 2011, the Court defined a Qualified Representative as (1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1. *Franco-Gonzalez*, 828 F. Supp. 2d at 1147.

As the Court has previously noted, a Qualified Representative would be a reasonable accommodation, whether he or she is performing services *pro bono* or at Defendants' expense.[5] [Doc. # 107 at 37.] Moreover, while a reasonable accommodation should not impose "undue financial . . . burdens," the rule does not preclude "*some* financial burden resulting from accommodation." *U.S. v. Cal. Mobile Home Park Mgmt., Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994) (citing *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S. Ct. 2361, 2370, 60 L. Ed. 2d 980 (1979)) (interpreting "reasonable accommodation" under the Fair Housing Act, which incorporates the Rehabilitation Act's standard).

The Court is wary of issuing an unfunded mandate requiring Government-paid counsel for all mentally incompetent class members. Indeed, neither this Order nor the

---

[5] As Plaintiffs point out, Department of Justice ("DOJ") and DHS regulations recognize that Defendants "may comply with the requirements of . . . [Section 504] through such means as . . . assignment of aides to beneficiaries." 28 C.F.R. 39.150 (DOJ); 6 C.F.R. 15.50 (DHS). A "Qualified Representative" would seem to be such an "aide."

Court's previous preliminary injunction rulings requires Defendants to provide Sub-Class One members with *paid* legal counsel.  Defendants have in the past been able to obtain *pro bono* counsel for certain class members from various non-profit organizations and *pro bono* panels.[6]  (*Id.*)

Nevertheless, EOIR claims that it has found "relatively scarce capacity among pro bono providers to fill very limited roles."  (Lang Decl. ¶ 15.)  Defendants are not required, however, to provide bar-certified attorneys, as long as the representatives they provide meet the requirements for a Qualified Representative.  For example, the regulations allow for representation by law students and law graduates not admitted to the bar and "accredited representatives" who represent qualified non-profit religious, charitable, social service, or similar organizations.   8 C.F.R. §§ 1292.1, 1292.2.[7]  Defendants fail to address why the provision of these types of Qualified Representatives would not be feasible.  Thus, given that the Government has already contemplated the possibility of certain non-attorneys providing assistance to immigrants in removal

---

[6] The Court need not prescribe the exact source from which Defendants should provide Qualified Representatives nor how they must do so.  EOIR represents that "[t]here is currently no mechanism in place to locate and retain appointed counsel for all mentally incompetent detained aliens throughout the class action states, and no 'public defender'-like body currently in existence from which appointed counsel for removal proceedings can be drawn."  (Lang Decl. ¶ 11 [Doc. # 441-2].)  Plaintiffs, however, present a declaration from Sean K. Kennedy, the Federal Public Defender for the Central District of California, wherein Kennedy states that "[a]fter consulting with officials from the Administrative Office of the United States Courts and independently researching the issues, the FPDO has determined that the CJA would authorize their appointment in this case and is prepared to accept such an appointment to represent detained mentally disabled persons facing removal proceedings in the Central District of California."  (Decl. of Sean K. Kennedy ¶ 2 [Doc. # 217-2].)  Without deciding the issue, the Court has expressed reservations about its authority to appoint counsel under the CJA in light of the nature and purpose of the CJA.  [Doc. # 107 at 38-39 n.20.]  Nonetheless, Kennedy's statement provides one among many potential options that Defendants may explore in implementing the Court's order.

[7] Although the regulations provide for representation by law-student representatives, Defendants fail to explain why they could not partner with law school immigration clinics and other programs that are already engaged in these types of activities.  That the practice is already in place on some level suggests another option that may augment the ranks of *pro bono* or paid attorneys.

proceedings, it is reasonable that they do so to provide Sub-Class One members meaningful access to a fair and participatory process.[8]

### ii. The Requested Accommodation Does Not Contravene the Statutory Framework Governing the Privilege of Counsel

Defendants also argue that the requirement of representation runs counter to the INA, which provides in several provisions that individuals have a "privilege" to obtain representation at no expense to the Government. 8 U.S.C. §§ 1229a(b)(4)(A), 1362. EOIR asserts its belief that these provisions bar the use of federal funding to provide for direct representation. (Lang Decl. ¶¶ 3-5, 8 [Doc. # 441-2]) (indicating that, because "there is no statute or regulation that specifically confers Immigration Judges with the power to appoint counsel for any unrepresented alien," Immigration Judges do not appoint Government-paid counsel for unrepresented mentally incompetent aliens and that, "[a]s a result of Section 292 [8 U.S.C. § 1362], the legal orientation services funded by the [Legal Orientation Program] do not include funds for direct representation as defined in 8 C.F.R. § 1001.1(m)").

Yet, writing on behalf of the Office of the General Counsel for the DHS, David P. Martin, Principal Deputy General Counsel, confirmed that the plain language of Section 1362 does not lend itself to the interpretation that it "*prohibits* the provision of counsel at government expense." (Supp. Decl. of Marisol Orihuela ¶ 25, Ex. 310 [Doc. # 454].) "[N]othing in [8 U.S.C. §§ 1229a(b)(4), 1362] or 5 U.S.C. § 3106 prohibits the use of discretionary federal funding for representation of aliens in immigration proceedings" and "[w]hether any particular expenditure would be permissible . . . depends on a fiscal law analysis of the specific proposed funding source." (*Id.*) The Court agrees that these statutes cannot reasonably be interpreted to forbid the appointment of a Qualified

---

[8] On April 8, 2013, in response to the Court's inquiry, Defendants filed a supplemental brief indicating that there are currently 17 Sub-class One members for whom Qualified Representatives must be provided. [Doc. # 577.]

Representative to individuals who otherwise lack meaningful access to their rights in immigration proceedings as a result of mental incompetency.

Thus, the proposed accommodation would not contravene any existing statutory prohibition.

### iii.    The Requested Accommodation Does Not Expand the Scope of Benefits Available to Class Members

Defendants also reiterate their position that Plaintiffs' requested relief would place Sub-Class One members in a significantly better position than nondisabled, detained aliens because providing legal representation "would do much more than remove a barrier to access; it would expand the scope of benefits provided to aliens in immigration court." [9]  (Opp'n at 8.)  This is not the first time Defendants have raised this argument. *See Franco-Gonzalez, et al. v. Holder,* 767 F. Supp. 2d 1034, 1056 (C.D. Cal. 2010).  In a new twist to the argument, however, Defendants now assert that, because Plaintiffs are not requesting an exception to existing rules, but instead attempting to create an entirely new system of benefits in immigration court, the decisions on which the Court previously relied are not applicable to the present case.  (Opp'n at 8 (citing *US Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) and *Giebeler v. M & B Associates,* 343 F.3d 1143 (9th Cir. 2003)).)

Defendants urge the Court to rely instead on a Second Circuit decision, *Rodriguez v. City of New York,* 197 F.3d 611 (2d Cir. 1999).  In *Rodriguez,* the Second Circuit addressed whether the district court erred when it found that New York's failure to include safety monitoring as an independent task among personal-care services violated, *inter alia,* Section 504 of the Rehabilitation Act.  *Id.* at 614.  The plaintiffs in that case argued that safety monitoring was "comparable" to the personal-care services already provided by New York.  *Id.*  Finding that safety monitoring was not "comparable" to

---

[9] Defendants present evidence that 51% of all aliens in immigration court were represented in FY2011.  (Defs.' Opp'n at 6 n.5 (citing U.S. Department of Justice, EOIR, FY 2011 Statistical Yearbook, at G1, *available at* http://www.justice.gov/eoir/statspub/fy11syb.pdf).)

-13-

personal-care services, the Second Circuit determined that "New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." *Rodriguez,* 197 F.3d at 618.

Defendants mischaracterize the nature of the benefit Plaintiffs seek. In *Rodriguez*, the plaintiffs sought a unique, independent benefit that was not available to any other individuals under the State program. *Rodriguez*, 197 F.3d at 618. In contrast, Plaintiffs here seek only to meaningfully participate in their removal proceedings. The opportunity to "examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government" is available to all individuals in immigration proceedings, but is beyond Plaintiffs' reach as a result of their mental incompetency. 8 U.S.C. § 1229a(b)(4)(B). Thus, the provision of a Qualified Representative is merely the *means* by which Plaintiffs may exercise the same benefits as other non-disabled individuals, and not the benefit itself.

In this sense, and contrary to Defendants' assertions, this case is more similar to *Paulson*, 525 F.3d 1256. In *Paulson*, the D.C. Circuit explained, "[w]here the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit." *Id.* at 1267. In that case, by failing to provide a means by which the visually impaired could easily utilize United States currency, the Government effectively deprived Plaintiffs of "meaningful access" to a benefit available to the general public, namely, the ability to engage in economic activity. *Id.* at 1269. In this case, those who are in full possession of their faculties already have the ability to participate in immigration proceedings or, at least, have the wherewithal to obtain access.

Aspiring to a system that allows the mentally incompetent to similarly participate in the removal proceedings against them is not tantamount to "creating an entirely new system of benefits in immigration." Defendants can hardly argue that it is audacious to require a Qualified Representative for mentally incompetent individuals in immigration proceedings when the INA itself has pronounced that some form of procedural safeguards

are required for those who are mentally incompetent. *See* 8 U.S.C. § 1229a(b)(3) ("If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien."). By the same token, the appointment of a Qualified Representative for Sub-Class One members serves only to level the playing field by allowing them to meaningfully access the hearing process. Indeed, the accommodation is just as reasonable as and no more burdensome than EOIR's requirement that interpreters be provided to those who cannot understand English.[10] *See El Rescate Legal Servs., Inc. v. Exec. Office for Immigration Review*, 959 F.2d 742, 752 (9th Cir. 1991) (upholding BIA's policy, articulated in *Matter of Exilus*, 18 I&N Dec. 276 (BIA 1982), of requiring interpretation of statements made and questions asked of the alien and the alien's responses, and giving Immigration Judges discretion to require more interpretation where "essential to his ability to assist in the presentation of his case").

For the reasons discussed herein and in the Court's previous orders in this case, the Court finds that providing Sub-Class One members with a Qualified Representative is a reasonable accommodation. Defendants have failed to raise any triable issue of fact in support of their contention that the accommodation poses a fundamental alteration of the immigration court system. *See Paulson*, 525 F.3d at 1267.

**c.     *Matter of M-A-M-* Fails to Provide Sufficient Safeguards**

Defendants contend that, while the Rehabilitation Act requires Defendants to provide a reasonable accommodation, it does not require that they provide the accommodation of Plaintiffs' choice. Defendants argue that *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011), changes the legal landscape for aliens with mental competency

---

[10] Of particular note is the treatment of the interpreter issue by EOIR's Immigration Court Practice Manual, which states, in pertinent part: "Interpreters are provided at government expense to individuals whose command of the English language is inadequate to fully understand and participate in removal proceedings." U.S. Dep't of Justice, EOIR, Immigration Court Practice Manual, Ch. 4.11 (2008) (http://www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm).

issues and that DHS has also implemented a number of initiatives to ensure that Immigration Judges are provided with relevant information within DHS's possession that may be indicative of a detained alien's mental impairment.

As Defendants themselves acknowledge, "*M-A-M-* does not suggest 'any authority to appoint *counsel* for individuals not competent to represent themselves.'" (*Id.*) (citing Pls.' Motion at 14) (emphasis in original). Nor does *M-A-M-* address Plaintiffs' claim for appointment of Qualified Representatives for Sub-Class One members.[11] Rather, *M-A-M-* allows Immigration Judges to adopt certain "safeguards" where an alien has been determined incompetent to proceed with the hearing. 25 I&N Dec. at 482. For example, an Immigration Judge may refuse to accept an admission of removability from an incompetent, unrepresented alien; allow the alien's custodian to appear on his behalf; continue proceedings to allow the alien to obtain representation; aid in the development of the record, including cross-examination of witnesses; and allow representation by a family member or close friend. *Id.* at 483. The majority of these "safeguards," however, are left to the Immigration Judge's discretion, and none guarantee that the incompetent alien may participate in his proceedings as fully as an individual who is not disabled. *Id.* at 482 (noting that Immigration Judges "have discretion to determine which safeguards are appropriate").

Moreover, while both the regulations and *M-A-M-* allow for "representation" by a family member or close friend to "assist the respondent and provide the court with information," Defendants offer no safeguard that such individuals are qualified to provide this type of assistance for a mentally incompetent person.[12] *See also* 8 C.F.R. § 1240.4

---

[11] The initiatives Defendants describe include: (1) setting forth medical criteria to identify detained aliens with serious mental health conditions who may have a functional impairment; (2) completing new standardized mental health forms, known as "mental health review reports"; and (3) providing training and guidance to DHS trial attorneys to ensure that they comply with *M-A-M-* in their practice before the immigration courts and BIA. (Opp'n at 11.)

[12] Defendants still fail to address the Gordian Knot Plaintiffs would face if forced to accept representation by persons listed in 8 C.F.R. § 1240.4, many of whom may lack legal expertise or accountability to ensure Plaintiffs' full participation in their proceedings. As the Court has previously

(allowing for representation by a "legal guardian, near relative, or friend who was served with a copy of the notice to appear," or the respondent's "custodian"). The Court has discussed at length the reasons why the "safeguards" set forth in *M-A-M-* are insufficient in its prior orders.[13] Suffice it to say that Defendants have yet to present any evidence from which a reasonable jury could find that, as a result of *M-A-M-,* Sub-Class One members are not entitled to a Qualified Representative as a reasonable accommodation.

Accordingly, the Court finds that Plaintiffs are entitled to the reasonable accommodation of appointment of a Qualified Representative to assist them in their removal and detention proceedings under Section 504 of the Rehabilitation Act. The Court grants Plaintiffs' motion for partial summary judgment as to Count Four of the third amended complaint.

### 2. Plaintiffs Are Not Entitled to Partial Summary Judgment on Their Representation Claim Under the INA or Due Process Clause

Plaintiffs also argue that the INA's guarantee of a "full and fair hearing" requires the appointment of legal representation for Plaintiffs. Plaintiffs cite generally to 8 U.S.C. § 1229a(b)(4)(B), which enumerates an alien's rights in proceedings, including a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses. Plaintiffs also cite *Matter of Exilus*, 18 I&N Dec. at 278, which states "[t]he constitutional requirements of due process are satisfied in an administrative hearing if the proceeding is found to be fair." But Section 1229a(b)(4)(A) also states that aliens have "the privilege of being represented, at no

---

explained, such representation would depend in part on whether the detainee can validly consent to representation by a non-attorney, "a dubious proposition for someone who is mentally incompetent." *Franco-Gonzalez,* 828 F. Supp. 2d at 1145-46.

[13] Indeed, the crux of Plaintiffs' claim is that they were all denied the ability to participate in their immigration court proceedings, despite Immigration Judges' existing obligations to aid them in developing the record and that, instead of *M-A-M-*'s instruction that mentally incompetent detainees may be represented by a family member or close friend, Plaintiffs are entitled to an appointed Qualified Representative.

-17-

expense to the Government." Although, by DHS General Counsel's own admission, the INA cannot reasonably be read to *prohibit* the appointment of counsel in all circumstances, Plaintiffs have not shown in their motion that the statute expressly *requires* as much. (*See* Supp. Orihuela Decl. ¶ 25, Ex. 310.)

Although Plaintiffs attempt to frame the requirement of fundamental fairness as "statutory" in nature, they point to no specific statutory provisions that require the particular relief they seek. Rather, the concept of a "fundamentally fair" hearing is rooted in due process. *See id.* ("Due process in an administrative proceeding is not defined by inflexible rules which are universally applied, but rather varies according to the nature of the case and the relative importance of the governmental and private interests involved."); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S. Ct. 625, 629, 97 L. Ed. 956 (1953) (noting that immigration proceedings must "conform[] to traditional standards of fairness encompassed in due process of law"). Without more, Plaintiffs fail to establish the absence of any material dispute that the INA imposes the requirement they seek on some basis independent of constitutional due process. Having decided in favor of Plaintiffs on their Rehabilitation Act claim, however, it is not necessary for the Court to reach the constitutional dimensions of their request for relief under Counts Three and Five. The Court must "avoid reaching constitutional questions in advance of the necessity of deciding them." *In re Joye,* 578 F.3d 1070, 1074 (9th Cir. 2009).

Accordingly, Plaintiffs' motion for partial summary judgment is denied as to Counts Three and Five.

//

//

//

-18-

**B.      Plaintiffs Are Entitled to a Bond Hearing After 180 Days in Detention[14]**

Plaintiffs next argue that class members who are detained for more than 180 days (Sub-Class Two) are entitled to a custody redetermination hearing, at which the Government bears the burden of establishing by clear and convincing evidence that their continued detention is necessary.  Again, the Court has already addressed this issue in its previous orders.   The Court now concludes that Plaintiffs subjected to prolonged detention are entitled to such a hearing under the INA and existing Ninth Circuit precedent.

**1.      The INA Requires a Bond Hearing for Detainees Held for a Prolonged Period of Time**

In analyzing Plaintiffs' bond hearing claim, the Court is guided by the canon of constitutional avoidance, which requires that statutes be construed so as to avoid serious doubts as to the constitutionality of an alternate construction.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (citing *INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001)).

**a.      INA Provisions Governing Detention**

As the parties themselves note, class members may be detained pursuant to several statutory provisions governing detention of aliens in various stages of removal proceedings.  Although the Court's previous orders have addressed only the legality of prolonged detention under Section 1226(c), the certified class, which extends to individuals "in DHS custody for removal proceedings," may encompass individuals detained under other sections as well.  A brief summary of the INA's authorization of detention follows.

---

[14] Although Sub-Class Two is defined as Class Members who have been detained for more than "six months," the Court finds that "180 days" is more precise and therefore modifies the definition of Sub-Class Two accordingly.

First, Section 1225(b) authorizes detention of "arriving aliens," including lawful permanent residents ("LPRs"), under certain circumstances. *See Rodriguez v. Robbins*, __ F.3d __, 2013 WL 1607706 at *1 (9th Cir. 2013) ("*Robbins*"). The statute provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (providing for mandatory detention of individuals who have expressed a "credible fear" of returning to their home country until resolution of their request for asylum or a determination that they do not possess a credible fear).

Next, 8 U.S.C. § 1226 authorizes the Government to, upon issuance of a warrant, arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." Under subsection (a), the Government may either release the alien on bond or conditional parole, or it may continue to detain the arrested alien if he is a danger to the community or a flight risk. Under subsection (c), certain aliens who are inadmissible or deportable due to having committed certain criminal offenses are subject to mandatory detention without a bond hearing.

Finally, Section 1231(a)(1)(A) governs detention during the "removal period," or the time after issuance of a final order of removal but prior to actual removal. During this period, subject to certain exceptions, the Government "shall" detain aliens ordered removed as a result of certain criminal bases for removal. 8 U.S.C. § 1231(a)(2).

### b. Neither Section 1225(b), 1226, nor 1231 Sanctions Prolonged Detention Without a Bond Hearing

The Ninth Circuit's recent ruling in *Robbins* makes clear that individuals in immigration custody may not be subjected to prolonged detention without the provision of a bond hearing at which the Government must justify continued detention. *See* 2013 WL 1607706 at *8, 12. Nevertheless, the Court briefly addresses the recent legal developments that require Defendants to provide the requested bond hearings to Sub-Class Two members.

-20-

In its previous orders, this Court has acknowledged and relied upon Supreme Court precedents holding that six months is a presumptively reasonable benchmark for pre-removal detentions under Section 1231. *Zadvydas v. Davis*, 533 U.S. 678, 701, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *see also Clark v. Martinez*, 543 U.S. 371, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005). The Ninth Circuit has also consistently applied the six-month benchmark not only to detentions under Section 1231, but under Sections 1225(b) and 1226(a) as well. *See, e.g.*, *Robbins*, 2013 WL 1607706 at *12 (to the extent detention under Section 1225(b) is mandatory, it is implicitly time-limited under *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)); *Rodriguez v. Hayes*, 591 F.3d 1105, 1115 (9th Cir. 2009) (extending *Zadvydas* framework to detentions under Sections 1225(b) and 1226(a)); *Nadarajah*, 443 F.3d at 1078-80 (noting that Section 1225(b) does not authorize indefinite detention after *Zadvydas* and *Clark*).

Furthermore, the Ninth Circuit has held that Section 1226(c) cannot reasonably be applied to authorize the prolonged detention of aliens seeking judicial review of their removal orders. *Casas-Castrillon*, 535 F.3d at 947-48; *see also Robbins*, 2013 WL 1607706 at *8 (discussing *Casas-Castrillon* and holding that "detention always becomes prolonged at six months"); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (noting that the detention under Section 1226(c) of a LPR subject to removal for 32 months was "constitutionally doubtful"). In *Casas-Castrillon*, the court relied heavily on the Supreme Court's analysis in *Demore v. Kim*, 538 U.S. 510, 530, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003), which recognized that detention under Section 1226(c) generally lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *See also Casas-Castrillon*, 535 F.3d at 950 ("References to the brevity of mandatory detention under § 1226(c) run throughout *Demore*."). The court concluded that "a prolonged detention must be accompanied by appropriate procedural safeguards, including a hearing to establish whether continued detention is required. *Id.* at 944. Thus, the Government's authority to detain the petitioner shifted to Section 1226(a) when

-21-

the BIA dismissed his appeal, and at that point the Government was required to conduct a hearing to determine the reasonableness of his continued detention. *Id.* at 948.

In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ("*Diouf II*"), the Ninth Circuit reached the same conclusion with respect to an alien detained under Section 1231(a)(6) who attempted to reopen his proceedings after issuance of a final order of removal. Again, the court stated, "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." *Id.* at 1092 n.13. At that point, or where removal is no longer imminent, the "private interests at stake are profound." *Id.* at 1084. Accordingly, detention under Section 1231(a)(6) following entry of a final order of removal is authorized only for a reasonable period, after which aliens "are entitled to the same procedural safeguards against prolonged detention as individuals detained under Section 1226(a)." *Id.* at 1084. In *Robbins*, the Ninth Circuit stated that "*Diouf II* strongly suggested that immigration detention becomes prolonged at the six-month mark *regardless of the authorizing statute*." 2013 WL 1607706 at *8 (emphasis added) (citing *Diouf II*, 634 F.3d at 1091-92). *Robbins* held that, like detention under Section 1226(c), detention pursuant to Section 1225(b) only authorizes six months of mandatory detention, after which the authority to detain further shifts to Section 1226(a) and a bond hearing is required. 2013 WL 1607706 at *12.

Defendants ask the Court to distinguish *Casas-Castrillon* and *Diouf II* because, like the petitioner in *Zadvydas* and unlike many of the class members in this case, the petitioners in those cases had already been ordered removed. (Opp'n at 23-24.) Defendants argue that, in the pre-removal-order context, the Government's interest in detaining individuals "pending a decision on whether the alien is to be removed" is not extinguished and therefore the six-month benchmark does not apply. 8 U.S.C. § 1226(a). Defendants' argument fails in light of the Ninth Circuit's recent pronouncement that, "if anything, . . . [lawful permanent residents] detained prior to the entry of an administratively final removal order . . . would seem to have a *greater* liberty interest

than individuals detained pending judicial review or the pendency of a motion to reopen." *Robbins*, 2012 WL 1607706 at *8. That some, even if not all, detainees held pursuant to a statute are entitled to heightened due process protections requires construing the statute "with these aliens in mind." *Id.* at 10. Thus, given the Ninth Circuit's rulings in *Robbins*, *Diouf II, Casas-Castrillon*, and *Tijani*, the pre-removal-order distinction does not require the result Defendants urge. *See also Demore v. Kim*, 538 U.S. 510, 552, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003) (Souter, J., concurring in part and dissenting in part) (arguing that aliens detained under Section 1226(c) should be afforded greater procedural protections than those detained under Section 1231(a)(6) because the latter, having already been ordered removed, "enjoy [] no lawful immigration status")).[15]

The Government's interest in "ensuring that aliens are available for removal if their legal challenges do not succeed" is the same irrespective of the statutory basis for the detention or the stage of proceedings. *Diouf II*, 634 F.3d at 1087-88. Significantly, Plaintiffs do not seek outright release from detention after six months. Rather, they seek only a custody redetermination hearing at which the Government bears the burden of justifying their continued detention. In all cases, this procedure protects public safety and the Government's interest in facilitating removal proceedings while preventing infringement of individual liberty interests. *See id.* at 1088 (noting that the Government's interest . . . *is served by the bond hearing process itself*" because "[i]f the alien poses a flight risk, detention is permitted") (emphasis added).[16]

---

[15] At oral argument, Defendants contended that any injunction should not extend to individuals detained pursuant to Section 1225(b), in part because Plaintiffs have not established that any current class members are actually detained under that statute. First, the certified class does not distinguish between individuals detained pursuant to different provisions of the INA, and thus Defendants' argument would have been more appropriate at the class certification stage. Second, because all detainees have a substantial interest in freedom from prolonged detention regardless of the statute under which they are held, the named Sub-class Two Plaintiffs adequately represent the interests of other Sub-class Two members. *Diouf II*, 634 F.3d at 1087.

[16] The Government also argues that the doctrine of constitutional avoidance cannot be applied to detention pursuant to Section 1226(c) or 1225(b) because both provisions contain express language forbidding the provision of a bond hearing. (*See* Opp'n at 27.) The Ninth Circuit expressly rejected that

### c. The Government Bears the Burden of Justifying Continued Detention at Bond Hearings

Finally, Defendants argue that, at any custody redetermination hearing to be held after six months of detention, the burden of proof should rest with the detainee and not with the Government. (Opp'n at 28.) Defendants do not address how this position squares with *Casas-Castrillon*, 535 F.3d at 951, or *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), both of which place the burden on the Government to establish that an alien subject to prolonged detention should not be released because he is either a flight risk or a danger to the community.

Moreover, the Ninth Circuit recently reaffirmed *Singh* in *Robbins*, requiring that individuals held in ICE custody for more than six months are entitled to a bond hearing at which the Government bears the burden of proof, whether the individual is being held pursuant to Section 1226 or 1225. 2013 WL 1607706 at \*12. The "clear and convincing" standard of proof is necessary because "it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual' . . . is so significant." *Singh*, 638 F.3d at 1203-04; *see also Tijani v. Willis*, 430 F.3d 1241, 1244 (9th Cir. 2005) (Tashima, J., concurring) (explaining that due process places a "heightened burden of proof on the State" where the individual interests at stake are particularly important) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996)). As the Ninth Circuit has recognized, the individual liberty at stake is equally urgent for a detainee who languishes in detention either before or after entry of a removal order. Therefore, the Court sees no reason to distinguish between the two for purposes of assigning the burden of proof.

---

argument in *Robbins*, stating that "while the government may be correct that reading § 1226(c) as anything other than a mandatory detention statute is not a plausible interpretation[] of [the] statutory text, it does not argue that reading an implicit *temporal limitation* on mandatory detention into the statute is implausible. Indeed, it could not do so, because such an argument is foreclosed by our decisions." 2013 WL 1607706 at \*7 (internal citations omitted).

For the foregoing reasons and as discussed in the Court's previous orders, the Court finds that the INA requires that class members who are detained beyond a reasonable period are entitled to a custody redetermination hearing, at which the Government bears the burden of justifying their continued detention by clear and convincing evidence.

## 2.    Plaintiffs Are Not Entitled to Partial Summary Judgment on the Bond Hearing Issue Under the Rehabilitation Act or Due Process Clause

Plaintiffs also briefly argue that they are entitled to a bond hearing as a reasonable accommodation under Section 504 of the Rehabilitation Act. As discussed above, to succeed under the Rehabilitation Act, Plaintiffs must establish, among other things, that they were "denied the benefit or services solely by reason" of their disability. *Lovell,* 303 F.3d at 1052 (9th Cir. 2002). Plaintiffs assert that the lack of adequate safeguards or guidelines for mentally incompetent immigrant detainees places them at a heightened risk of prolonged detention, and thus a bond hearing is necessary to give them meaningful access to some unarticulated benefit, presumably the opportunity to attempt to secure one's release. (Mot. at 31.)

On the present record, Plaintiffs' theory fails for at least two reasons. First, as several courts have already held, the INA requires a bond hearing after six months for *all* immigrant detainees—not only those suffering from a mental health disability—in order to avoid the "serious constitutional concerns" that would result from allowing prolonged detention without such a hearing. *Casas-Castrillon*, 535 F.3d at 950. In this regard, the "accommodation" Plaintiffs seek is not unique to the class, but it is the necessary result of interpreting the INA to avoid constitutional problems. Relatedly, although Plaintiffs present some evidence that class members' proceedings are delayed at least in part due to their mental incompetency, they fail to establish that other individuals do not experience similar delays that similarly threaten their liberty.

-25-

Plaintiffs have not carried their burden of demonstrating that there are no triable issues of material fact as to their claim for a bond hearing under the Rehabilitation Act. Plaintiffs' motion for partial summary judgment is denied as to Count Nine.

In light of the Court's conclusion that the INA requires the relief Plaintiffs seek, it need not reach whether the Constitution also mandates that relief. *See Joye,* 578 F.3d at 1074.

**C.    Whether Plaintiffs Are Entitled to Permanent Injunctive Relief**

Defendants argue that Plaintiffs are not entitled to permanent injunctive relief because they fail to show that irreparable harm would be generally applicable to the class. Specifically, Defendants point to Plaintiffs' response to certain interrogatories, including those asking Plaintiffs to identify (1) class and sub-class members who have suffered prejudice as a result of not having had appointed counsel in their immigration proceedings and the prejudice such individuals suffered and (2) Sub-Class Two members who would have been released on bond if they had a bond hearing after being detained for at least six months and whether they had adequate means to afford the minimum $1,500 bond.

Plaintiffs respond by indicating that "*all* Main Class [and Sub-class One] members have suffered prejudice as a result of not having had counsel." Plaintiffs quote from this Court's Class Cert. Order:

> The unnamed class members are *all* subject to a system that lacks sufficient safeguards to protect their rights. Without a systemic mechanism to identify those who are, in fact, mentally incompetent, they are *all* subject to the same risk of injury that the named Plaintiffs already have encountered.[17]

---

[17] In their response, Plaintiffs also objected to the interrogatories on the grounds that information about the members in the Class, Sub-class One, and Sub-class Two is in the Government's exclusive possession, custody, and control and the Government has thus far not produced documents such as A-Files, medical records, and records of immigration proceedings responsive to Plaintiffs' discovery requests after November 21, 2011. (Pls.' Resp. to Defs.' 1st Interrogs. at 12-14.)

(Pls.' Resp. to Defs.' 1st Interrogs. at 12-14 [Doc. # 484-1].)

The parties agree that the Ninth Circuit has left open the question whether discrimination in violation of the Americans with Disabilities Act or the Rehabilitation Act constitutes irreparable harm *per se,* or whether irreparable harm can be presumed based on such a statutory violation. *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011).

Nevertheless, as this Court has repeatedly recognized in this case, it is the procedural harm that Plaintiffs seek to remedy. Similar to the situation in *Enyart,* where the plaintiff suffered from a disease that impaired her vision and sought a computer software accommodation that would allow her to take the California State Bar entrance examinations, Plaintiffs here seek the implementation of procedures and accommodations that will enable them to meaningfully participate in the immigration court process. The plaintiff in *Enyart* did not seek reprieve from taking the requisite examinations any more than Plaintiffs here seek guaranteed relief from removal or immediate release from custody. The *Enyart* court found that the plaintiff demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession. Likewise, Plaintiffs here have demonstrated harm by not being able to meaningfully participate in their removal hearings and by their having languished in prolonged detention as a result of the immigration court system's failure to accommodate their mental disabilities or provide the opportunity for a bond hearing.

Defendants also argue that Plaintiffs cannot rely on facts regarding the Named Plaintiffs alone to satisfy the irreparable harm requirement. They contend that, in order to establish their claim for a permanent injunction, Plaintiffs must show a "persistent pattern" of individuals being irreparably harmed as a result of Defendants' policies. (Defs.' Supp. Opp'n at 5 [Doc. # 503].) The cases on which Defendants rely, however, are not analogous to this case. In *Allee v. Medrano,* 416 U.S. 802, 94 S. Ct. 2191, 40 L. Ed. 2d 566 (1974), the Supreme Court held that a persistent pattern of police misconduct justified the granting of injunctive relief, while isolated incidents of police misconduct

under valid statutes would not. *Id.* at 815. Similarly, *Elkins v. Dreyfus,* 2010 WL 3947499 (W.D. Wash. 2010), relied on *Armstrong v. Davis,* 275 F.3d 849 (9th Cir. 2001), where, in the context of a standing analysis, the Ninth Circuit set forth two ways a named plaintiff could establish that a threatened injury is likely to recur, *i.e.,* by showing that, at the time of injury, the defendants had a written policy and the harm is traceable to the policy, and by showing that there is a pattern of officially sanctioned conduct. *Elkins,* 2010 WL 3947499 at * 9 (citing *Armstrong,* 275 F.3d at 861).

In this case, however, the very basis of Plaintiffs' claim is the *absence* of meaningful procedures to safeguard mentally incompetent detainees, i.e., that Defendants have no explicit policy to reasonably accommodate any Sub-Class One members with a Qualified Representative or to provide Sub-Class Two members with an individualized custody hearing after the presumptively reasonable period of six months. The Court's three prior preliminary injunction orders amply illustrate the harms that can ensue from the absence of procedures. Every class member who is mentally incompetent suffers the same harm from this absence of adequate procedures and need not show, like Plaintiffs Khukhryanskiy and Martinez did, that they have been *actually* ordered removed or been detained for prolonged periods of time before they can obtain permanent injunctive relief. *See Robbins*, 2013 WL 1607706 at *13 (preliminary injunction appropriate as to an entire class where all class members faced a likelihood of deprivation of constitutional rights, even though only some class members were likely to be granted release or relief from removal); *Rodriguez v. Hayes*, 591 F.3d at 1125 (class certification appropriate because class members sought "uniform relief from a practice applicable to all of them" based on INA's mandatory detention provisions).

The Court finds that Plaintiffs have established that the absence of adequate procedures to safeguard the rights of mentally incompetent detainees constitutes irreparable harm as to Sub-Class One and Sub-Class Two members. Finally, as the Court has found in its previous orders, the balance of hardships and public interest also weigh in

favor of granting injunctive relief. [Doc. # 107 at 41-42; Doc. # 215 at 24-25; Doc. # 285 at 11-12.]

## V.

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

As noted above, Plaintiffs have filed a fifth motion for a preliminary injunction on behalf of seven class members, seeking both appointment of a Qualified Representative and a bond hearing.[18] In light of the Court's order granting in part Plaintiffs' motion for partial summary judgment and granting permanent injunctive relief, the motion for a preliminary injunction is **DENIED** as moot. The Court notes, however, that Defendants assert that two purported class members, Elijah Ibanga and Nicolas Guerrero-Ramirez, are not class members and therefore lack standing. In order to clarify the scope of Defendants' obligations following entry of partial summary judgment, the Court addresses the standing of these two purported class members and those similarly situated.

**A.   Factual Background of Plaintiffs Ibanga and Guerrero**

**1.   Elijah Ibanga**

According to the DHS, Ibanga was admitted to the United States as a LPR in 1980, and he has remained here since that time. (First Decl. of Carmen Iguina ("First Iguina Decl.") ¶ 17, Ex. 335 at 2 [Doc. # 527-3].) He is allegedly a native and citizen of Nigeria, although this fact has not been proven in his removal proceedings. (*Id.* at 1, 3.) On December 4, 1992, Plaintiff Ibanga was convicted of a felony under Cal. Penal Code § 288.5(a) and sentenced to 24 years in prison. (Decl. of Neelam Ihsannulah ("Ihsannulah Decl.") ¶ 9, Ex. 8 at 579-581 [Doc. # 554-1].)

On December 7, 2011, an Immigration Judge found that Ibanga was not competent to represent himself in his removal proceedings based, in part, on medical reports stating that he suffers from a serious mental illness. (First Iguina Decl. ¶ 17, Ex. 335 at 17.)

---

[18] On March 21, 2013, Plaintiffs notified the Court that class member Vasily Zotov was released from custody and withdrew the motion with respect to his claims. [Doc. # 568.]

According to the transcript of Ibanga's proceedings on December 7, 2011, the Immigration Judge asked the DHS to "provide some type of legal assistance to" Ibanga in light of his mental illness, but the DHS failed to do so, arguing that the Immigration Judge lacked authority to issue such an order. (*Id.* at 29.)  Due to Ibanga's incompetency, the Immigration Judge found that she could not take pleadings as to his removability and terminated proceedings.  (*Id.*)

The DHS appealed the termination order to the Board of Immigration Appeals ("BIA").  (First Iguina Decl. ¶ 14, Ex. 320 at 2.)  On February 24, 2013, Attorney Walter H. Ruehle filed a Form EOIR-27, Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals, on behalf of Ibanga. (Ihsannulah Decl. ¶ 10, Ex. 9.)  Ibanga remains represented before the BIA.  As of January 18, 2013, Ibanga had been in Immigration and Customs Enforcement ("ICE") custody for 1466 days, since January 2009.  (First Iguina Decl. ¶ 14; Second Decl. of Carmen Iguina ("Second Iguina Decl.") ¶ 3, Ex. 382 [Doc. # 555-1]; Ihsannulah Decl. ¶ 10, Ex. 9 at 80.)

### 2.    Nicolas Guerrero-Ramirez

According to the DHS, Guerrero is a native and citizen of Mexico and has been a LPR of the United States since 1991.  (First Iguina Decl. ¶ 40, Ex. 379.)  In 2006, Guerrero was convicted under Cal. Penal Code § 261(a)(2) and sentenced to eight years in prison.  (Ihsannulah Decl. ¶ 4, Ex. 3.)  He was placed in removal proceedings on November 10, 2011.  (First Iguina Decl. ¶ 20, Ex. 338 at 1.)  Since being incarcerated in 2006, Guerrero has undergone several mental health assessments and has at various times been diagnosed with different mental illnesses of varying degrees of severity.  (*See id.* ¶¶ 26-31, Exs. 344-49.)  An Immigration Judge has twice found that Guerrero is not competent to represent himself in his proceedings.  (*Id.* ¶¶ 20-21, Exs. 338-39.)  On March 15, 2012, while Guerrero was *pro se*, an Immigration Judge determined that he was not competent to represent himself and terminated proceedings.  (*Id.* ¶ 20, Ex. 338.) The DHS appealed, and the BIA vacated the decision and remanded for further

-30-

proceedings on July 18, 2012. (*Id.* ¶ 41, Ex. 380.) On September 17, 2012, the Immigration Judge again found Guerrero to be incompetent and terminated his removal proceedings, and the DHS again appealed. (*Id.* ¶ 21, Ex. 339.) On January 2, 2013, Attorney Ryan C. Morris filed a Form EOIR-27 and entered his appearance on behalf of Guerrero before the BIA. (Ihsannulah Decl. ¶ 6, Ex. 5.)

On September 19, 2012, while Guerrero remained *pro se* and after termination of his removal proceedings, an Immigration Judge ordered that he be released from custody subject to the posting of a bond of $1,500. (Ihsannulah Decl. ¶ 7, Ex. 6.) Guerrero did not post bond and remains in detention. The DHS appealed this order, and on December 21, 2012 the BIA sustained the appeal and ordered that Guerrero remain detained without bond notwithstanding termination of his proceedings because "he is a danger to the community." (*Id.* ¶ 8, Ex. 7.) As of January 18, 2013, Guerrero had been in ICE custody for 444 days, apparently since his release from state custody on November 1, 2011. (First Iguina Decl. ¶ 40, Ex. 379.)

**B.    Discussion**

Defendants argue that Ibanga and Guerrero are not presently class members because they are now represented by counsel before the BIA. It is undisputed that Ibanga and Guerrero suffer from a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings. (*See* First Iguina Decl. ¶ 17, Ex. 335 at 17 (Immigration Judge's finding as to Ibanga); ¶¶ 21, 26-31, Exs. 339, 344-49 (Mental Health reports and Immigration Judge's finding as to Guerrero).) Indeed, Immigration Judges have terminated both Ibanga's and Guerrero's proceedings based on incompetency findings. (*See* First Iguina Decl. ¶ 17, Ex. 335 (termination order re Ibanga); ¶ 20, Ex. 338 (first termination order re Guerrero).) Moreover, both Ibanga and Guerrero have been detained in ICE custody for more than six months. (First Iguina Decl. ¶ 14.)

The immigration regulations require that all representatives file a Notice of Entry of Appearance before appearing on behalf of any alien before the Immigration Court,

BIA, U.S. Customs and Immigration Services ("USCIS"), ICE, or U.S. Customs and Border Patrol ("CBP").  8 C.F.R. § 1003.17(a) (requiring filing of Form EOIR-28 prior to entry of appearance before Immigration Court); 8 C.F.R. § 1003.38(b) (requiring filing of Form EOIR-27 before entry of appearance before BIA); 8 C.F.R. § 103.2(a)(3) (requiring filing of Form G-28 prior to entry of appearance in adjudication of benefit requests before the DHS).  According to the Immigration Court Practice Manual, "[a]ll representatives must file a Notice of Entry of Appearance . . . (Form EOIR-28)."  U.S. Dep't of Justice, EOIR, Office of the Chief Immigration Judge Practice Manual, Ch. 2.1 at 15.  The Practice Manual also states that "[t]he Immigration Court will not recognize a representative using a Form EOIR-27 or a Form G-28."  *Id.* at 16.  Similarly, the BIA Practice Manual expressly requires the filing of a Form EOIR-27 and states that "the Board will not recognize a representative using Form EOIR-28."  U.S. Dep't of Justice, EOIR, BIA Practice Manual, Ch. 2.1 at 17.  In fact, the Forms themselves warn parties that the filing of a form with one body is not sufficient to satisfy the requirement as to the other.  (*See* Second Iguina Decl. ¶ 19, Ex. 398.)  Thus, entry of appearance of a Qualified Representative before the BIA does not establish representation for all purposes, specifically, for ensuring that an incompetent alien is adequately represented in his detention proceedings.

The immigration regulations also treat bond determination hearings "separate and apart from" any "deportation or removal proceeding or hearing."  8 C.F.R. § 1003.19(d); *Matter of Adeniji*, 22 I&N Dec. 1102, 1115 (BIA 1999) (declining to consider information presented during the respondent's removal hearing in connection with his appeal of a bond determination because "[c]ustody proceedings must be kept separate and apart from, and must form no part of, removal proceedings.").   Thus, the regulations themselves suggest that an alien who is represented in an appeal of an order in removal proceedings is not necessarily represented for detention purposes.

Defendants' position is further undermined by the factual circumstances surrounding Guerrero's detention.   Guerrero has been found incompetent by an

-32-

Immigration Judge twice, and yet the DHS has pursued two appeals of the Immigration Judge's termination orders. (First Iguina Decl. ¶¶ 20-21, Exs. 338-39.) After an Immigration Judge terminated his proceedings, Guerrero appeared before the same Immigration Judge at a bond hearing, and the Immigration Judge granted his release upon posting of a bond. (Ihsannulah Decl. ¶ 7, Ex. 6.) The DHS's two appeals—of the termination order and of the bond redetermination order—proceeded separately, which the BIA explicitly noted in its order vacating the bond redetermination. (*Id.* ¶ 8, Ex. 7 n.1 ("A separate decision addressing the respondent's removal proceedings will be issued at a later date.").)

Notwithstanding his subsequent release from detention, Vasily Zotov's case is nonetheless illustrative of the Court's point. Zotov's removal proceedings are on appeal before the BIA for the third time since his case began. (*See* First Iguina Decl. ¶ 5, Ex. 320; Second Iguina Decl. ¶ 14, Ex. 393.) Although Zotov was represented during his initial proceedings at the Los Angeles Immigration Court, he filed his first appeal *pro se*. (Second Iguina Decl. ¶ 14, Ex. 393 at 3.) He remained *pro se* through remand and renewed court proceedings, until he was appointed counsel after filing his second appeal in early 2012. (*Id.* at 4.) *Pro bono* counsel stated in his brief that the representation would "end with the Board's decision in this appeal and [would] not extend to any subsequent proceedings." (*Id.* at 4 n.1.) Zotov's case was again remanded, and he remains unrepresented, including at his most recent removal and custody redetermination hearings on February 11 and 14, 2013, respectively. (*See* Notice of Admin. Dec. re Vasily Zotov [Doc. # 559], Exs. A-B.) Despite the fact that Zotov had been in ICE custody since September 2010, it does not appear from the record that Zotov's *pro bono* appellate counsel attempted to obtain his release. (*See* Second Iguina Decl. ¶ 3, Ex. 382.) Zotov's case, like those of several other class members named in the instant Motion, illustrates that detained aliens are often equipped with only piecemeal representation during the course of their proceedings and that representation existing at one stage of the proceedings does not necessarily carry over to other stages.

The Court therefore finds that Guerrero and Ibanga are not excluded from the class merely because they have obtained counsel for appeals of removal determinations if they remain detained without representation in their detention proceedings.  Individuals like Guerrero and Ibanga share an injury with the class at large, *see Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011), because their detention is prolonged due to delays caused by their mental disability, and alone they are unable to ensure that their detention proceedings are conducted fairly.  Indeed, the definition of the class itself is clear:  the class extends to individuals "who presently lack counsel in their detention *or* removal proceedings."  Accordingly, Ibanga, Guerrero, and individuals similarly situated to them are within the class certified by this Court.  Moreover, because both Ibanga and Guerrero have been found incompetent to represent themselves in their proceedings and have been detained for more than six months, they are members of both Sub-Classes One and Two.

## VI.

## CONCLUSION

The Court **GRANTS** Plaintiffs' motion for partial summary judgment on the grounds that (1) Section 504 of the Rehabilitation Act requires Defendants to provide Qualified Representatives to represent Sub-Class One members in all aspects of their removal and detention proceedings ("Count Four"), and (2) the INA requires the provision of a custody redetermination hearing for individuals in Sub-Class Two who have been detained for a prolonged period of time greater than 180 days ("Count Eight").  Plaintiffs' motion for partial summary Judgment is **DENIED** in all other respects.  Plaintiffs' motion for preliminary injunction is **DENIED** as moot.  In addition, Plaintiffs' Request to Unseal the Court's Tentative Order [Doc. # 586] is **DENIED** because the "tentative" ruling, by its very nature, was never filed, either under seal or otherwise.

Under Fed. R. Civ. P 54(b), the Court may direct entry of final judgment as to fewer than all claims if it determines that "there is no just reason for delay."  The record in this case demonstrates that delaying relief for class members results in an inability to

-34-

fairly participate in removal proceedings and may result in prolonged detention without adequate representation or a bond hearing for an ever-increasing number of class members. The Court finds that there is no just reason for delay and therefore enters judgment for Plaintiffs as to Counts Four and Eight. Accordingly, the Court orders that judgment be entered and a permanent injunction shall issue in accordance with this Order. A Judgment and Permanent Injunction is filed concurrently herewith.

**IT IS SO ORDERED.**

DATED:     April 23, 2013

_____
DOLLY M. GEE
United States District Judge