**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, et al., | ) ) |
| *Plaintiffs-Petitioners,* | ) ) |
| v. | ) ) |
| ERIC H. HOLDER, Jr., Attorney General, et al., | ) ) ) |
| *Defendants-Respondents.* | ) ) ) ) ) ) ) ) |

Case No. CV-10-02211 DMG (DTBx)

**ORDER FURTHER IMPLEMENTING THIS COURT'S PERMANENT INJUNCTION [785]**

# TABLE OF CONTENTS

I.  SCREENING SYSTEM ................................................................................ 2

   A. Screening Procedures ......................................................................... 2

     • Main Class Membership Criteria ........................................... 6

   B. Information Gathering Procedures for ICE and Detention Facility Personnel ................................................................................................ 8

II.  INFORMATION SHARING SYSTEM BETWEEN ICE AND EOIR . 10

III.  EVALUATION SYSTEM ........................................................................ 12

   A. Pro Se Competency Standard ........................................................ 13

   B. Judicial Competency Inquiries and Competency Reviews .................... 15

   C. Forensic Competency Evaluations ................................................ 18

   D. Additional Procedures .................................................................... 19

IV.  OTHER MATTERS .............................................................................. 22

   A. EOIR's nationwide policy .............................................................. 22

   B. Released Main Class Members ...................................................... 22

   C. Released Sub-Class One Members ................................................ 23

   D. Class Definition .............................................................................. 23

   E. Implementation of Partial Settlement Agreement, Subject to the Court's Approval ................................................................................................ 25

   F. Tools .............................................................................................. 26

   G. Retention of Jurisdiction ................................................................ 26

The purpose of this Order is to further implement the Court's Permanent Injunction.  [Doc. # 593.]  Defendants will share both the Court's Permanent Injunction as well as this Order with the persons, agencies, or legal entities responsible for compliance with the Permanent Injunction, this Order, U.S. Immigration and Customs Enforcement's ("ICE") national detention standards, and oversight of medical care provided at any immigration detention facility[1] in California, Arizona, or Washington.

The Court orders Defendants to implement the following:

**(I)** ***Screening and Information Gathering System.***  Such system, which is designed to determine Class membership, shall include initial mental health screening of detainees upon arrival at detention facilities, mental health assessments, and gathering of documents and information relevant to detainees' mental health.  *See* Section I, *infra.*

**(II)** ***Information Sharing System.***  Such system shall ensure that Defendants provide relevant documents and information regarding detainees' mental health to Immigration Judges.  *See* Section II, *infra.*

**(III)** ***Evaluation System***.  Such system, which is designed to determine whether a Main Class member is competent to represent him- or herself in immigration proceedings, shall include Judicial Competency Inquiries, Forensic Competency Evaluations and Competency Reviews.  *See* Section III, *infra.*

**(IV)** ***Other Matters.***  *See* Section IV, *infra.*

---

[1] Throughout this Order, the terms "immigration detention facility," "detention facility," and "facility" are used interchangeably, and refer to facilities used by, contracted with, or acting on behalf of ICE to hold detainees for more than 72 hours.

1

## I.    SCREENING SYSTEM

To comply with the Permanent Injunction, Defendants must implement, within 90 days of the entry of this Order, a system for screening individuals in the Department of Homeland Security's ("DHS") custody with the purpose of accurately identifying Sub-Class One and Sub-Class Two members, both of which are sub-classes of the Plaintiff Class, i.e., "individuals who are or will be in DHS custody for immigration proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in immigration proceedings, and who presently lack counsel in their immigration proceedings." *See* Section IV.D, *infra*.  Sub-Class One members are those members of the Plaintiff Class who are "incompetent to represent themselves in immigration proceedings." *Id.*  Sub-Class Two members are those members of the Plaintiff Class "who have been detained for more than six months." *Id.*  Therefore, the Court orders that the following steps be taken with respect to *all* individuals who are admitted into ICE custody at an immigration detention facility in California, Washington, and Arizona, whether or not such facility is staffed by the ICE Health Service Corps ("IHSC"):

    A. Screening Procedures

       1. To ensure the integrity of the screening procedures set out in this Section, and of the competency procedures set out in Section III, *infra*:

         a.  Unless and until such time as the individual is determined mentally competent by an Immigration Judge, individuals identified as Class members pursuant to the procedures set forth herein shall not be

removed from the United States[2] unless first afforded a Qualified Representative under the procedures set forth in the Court's Permanent Injunction.  [Doc. # 593.]

b.  The transfer of detainees between immigration detention facilities may be necessary and appropriate in order to facilitate compliance with this Order.  ICE shall seek, however, to avoid transfers that may significantly hamper the ability of the detainee's family or community support resources to provide assistance in the detainee's immigration proceedings (including custody determinations and placement plans).  In addition, ICE must take into consideration whether any transfer will cause further deterioration of the detainee's mental health.  Any Class member who has entered ICE custody after November 21, 2011, and who is subsequently transferred outside of Arizona, California or Washington, continues to be a Class member and entitled to all of the benefits of Class membership during the course of their immigration proceedings, including those in the Permanent Injunction [Doc. # 593] and in this Order.

---

[2] Once jurisdiction vests before the Immigration Judge and an individual is identified as a Class member in his or her pending immigration proceedings, Defendants shall not terminate immigration proceedings for the purpose of removing, deporting, or excluding the Class member (i.e., pursuant to voluntary departure, or return, under 8 U.S.C. § 1229c; reinstatement under 8 U.S.C. § 1231(a)(5); expedited removal under 8 U.S.C. § 1225(b); or administrative removal under 8 U.S.C. § 1228(b)), unless or until he or she has first been determined mentally competent by the Immigration Judge or provided a Qualified Representative.

2. Absent emergency circumstances related to facility security or the
health and safety of staff or detainees, all detainees[3] shall be initially
screened for evidence of a "serious mental disorder or condition"[4]
upon their admission into ICE custody at an immigration detention
facility, in accordance with the applicable ICE national detention
standards.[5]  Absent emergency circumstances related to facility
security or the health and safety of staff or detainees, detainees shall
be further screened (or assessed) by a currently and appropriately
licensed psychiatrist, physician, physician assistant, psychologist,
clinical social worker, licensed nurse practitioner, or registered nurse
within 14 days of their admission into ICE custody at an immigration
detention facility.  Such further screening shall be conducted utilizing
a written screening questionnaire designed to identify individuals who
may suffer from serious mental disorders or conditions, including
mental health conditions for which the individual has not been
previously diagnosed.  Such screening questionnaire must not rely
solely on a self-reported history of mental illness, but must ask the
screener to interpret behavior and ask the individual questions to

---

[3] The terms "immigration detainee" and "detainee" are used interchangeably
and refer to individuals detained in ICE custody for immigration proceedings in
California, Arizona, or Washington.

[4] The term "serious mental disorder or condition" shall have the same
meaning as the Class membership criteria, identified in Section I.A.3.b.

[5] "Applicable ICE national detention standards" are those standards
currently applicable to detainees detained at the facilities set forth in Appendix A
to this Order.  Defendants affirm that the facilities identified in Appendix A are the
exclusive locations where immigration detainees are detained for more than 72
hours in the States of Washington, Arizona and California, and further affirm that
the national detention standards listed next to each of those facilities are those in
force at those facilities today.  To the extent that there are prospective changes in
the "applicable ICE national detention standards," the screening procedures
applicable to Class members shall be no less protective than those found in the
detention standards set forth in Appendix A.

gauge his or her understanding of his or her current situation.  The results of the screening questionnaire shall be documented.[6]

3.  Individuals identified through the above-referenced screening process as exhibiting evidence of a serious mental disorder or condition shall be referred for a mental health assessment.  Individuals first identified at any later stage as exhibiting evidence of a serious mental disorder or condition, such as at a hearing before an Immigration Judge or upon receipt of information provided by a third party, shall also be referred for a mental health assessment.  Such mental health assessments are for the purpose of diagnosis, treatment, or stabilization of the individual and are not conducted for the purpose of assessing the individual's legal competency.  Based on the results of the mental health assessment and any other available information, the qualified mental health provider will determine whether an unrepresented detainee meets the criteria set forth in Section I.A.3.b(i) or (ii), such that he or she is a member of the Class certified in this case.  Where clinically indicated, in conducting the mental health assessment, the qualified mental health provider must inquire about

---

[6] For example, the screening shall seek to identify whether the individual has a history of mental illness, has previously taken medication for mental illness or received mental health services, has been hospitalized for psychiatric condition(s), experienced auditory or visual hallucinations, or demonstrates evidence of cognitive impairment.  The screener will also look for evidence of a mental disability, bizarre or unusual behavior, or other obvious signs of mental illness. Within 90 days of the entry of this Order, Defendants will provide to Plaintiffs the relevant screening forms currently in use at all immigration detention facilities in Arizona, California and Washington, ensuring that the forms satisfy the requirements set forth in this Order.  If Plaintiffs allege such forms do not comply with the terms of this Order, the Parties shall meet and confer regarding the screening forms and, if the Parties do not resolve their dispute informally, the matter shall be addressed, initially, before the Special Master.

and consider the detainee's relevant social history.[7]  The mental health assessment will be completed as soon as practicable, ordinarily within 14 days after the detainee is identified through the screening process described in Section I.A.2, *supra*, as exhibiting evidence of a serious mental disorder or condition.

   a.   The mental health assessment shall be performed by a qualified mental health provider.  For purposes of this Order, "qualified mental health providers" are currently and appropriately licensed psychiatrists, physicians, physician assistants, psychologists, clinical social workers, licensed nurse practitioners, and registered nurses.  Providers who are general practitioners shall have appropriate training in mental health assessments.

   b.   For purposes of this Order**,** unrepresented[8] immigration detainees are members of the Class certified in this case, *see* Section IV.D, *infra*, if the criteria of subparagraph (i), (ii) or (iii) of this paragraph are met:

      (i)   a qualified mental health provider determines the detainee[9] meets one or both of the following criteria:

---

[7] Relevant social history may include factors such as educational level, special education history, if any, occupational functioning, relationships, and cultural concerns.

[8] Detainees shall be considered unrepresented unless one of the following has entered an appearance on their behalf:  "(1) an attorney, (2) a law student or law graduate directly supervised by a retained attorney, or (3) an accredited representative, all as defined in 8 C.F.R. § 1292.1."  *Franco-Gonzalez, et al. v. Holder*, 828 F. Supp. 2d 1133, 1147 (C.D. Cal. 2011); *see also* Doc. # 593 at ¶ 8.

[9] Such determination may be made regardless of whether the detainee was previously diagnosed with a psychiatric condition, was treated in the past or is now being treated for a psychiatric condition, and regardless of whether the cause of the disorder would be considered a medical or, instead, a psychiatric condition.

(1)    has a mental disorder that is causing serious limitations in communication, memory or general mental and/or intellectual functioning (*e.g.*, communicating, reasoning, conducting activities of daily living, social skills); or a severe medical condition(s) (*e.g.*, traumatic brain injury or dementia) that is significantly impairing mental function; or

(2)    is exhibiting one or more of the following active psychiatric symptoms or behavior:  severe disorganization, active hallucinations or delusions, mania, catatonia, severe depressive symptoms, suicidal ideation and/or behavior, marked anxiety or impulsivity.

(ii)    a qualified mental health provider otherwise diagnoses the detainee as demonstrating significant symptoms of one of the following:

(1)    Psychosis or Psychotic Disorder;

(2)    Bipolar Disorder;

(3)    Schizophrenia or Schizoaffective Disorder;

(4)    Major Depressive Disorder with Psychotic Features;

(5)    Dementia and/or a Neurocognitive Disorder; or

(6)    Intellectual Development Disorder (moderate, severe or profound).

(iii)    an Immigration Judge finds that the evidence of record results in a bona fide doubt about the detainee's competency to represent him- or herself.

7

4. Class membership, as defined in Section I.A.3.b, *supra*, shall not be terminated by a later determination of competency by an Immigration Judge pursuant to Section III, *infra*.

5. Within seven (7) days of completion of the mental health assessment described in Section I.A.3, *supra*, the qualified mental health provider shall cause the ICE Office of the Chief Counsel to be notified if such mental health assessment or other available information shows that an immigration detainee meets the criteria described in Section I.A.3.b(i) or (ii), *supra*.

B. Information Gathering Procedures for ICE and Detention Facility Personnel

1. Whenever ICE or detention facility personnel become aware that an immigration detainee identified through the screening system described in Section I.A.2, *supra*, was previously found incompetent in any court proceedings (including past criminal proceedings) or was hospitalized due to a mental disorder or condition, ICE or detention facility personnel must provide that information, and any related documents in their possession, to the qualified mental health provider performing the mental health assessment.  If the mental health assessment has already been completed at the time that ICE or detention facility personnel provide this information to the qualified mental health provider, the qualified mental health provider must determine whether the new information affects the determination whether a detainee meets the Class membership criteria described in Section I.A.3.b(i) or (ii), *supra*, and shall cause the ICE Office of the Chief Counsel to be notified of any change in that determination.

2. ICE and detention facility personnel must accept relevant information and documents from family members, social workers, or treatment

providers regarding detainees' mental disorders or conditions, and provide such information and documents to the qualified mental health provider performing the mental health assessment. If a detainee was not referred for a mental health assessment upon initial screening, but information and/or records received through third parties indicate that an individual suffers from a serious mental disorder or condition, such individual shall be referred for a mental health assessment for further evaluation. If the mental health assessment has already been completed at the time that ICE or detention facility personnel provide this information or documents to the qualified mental health provider, the qualified mental health provider must determine whether the new information or documents affect the determination whether a detainee meets the Class membership criteria described in Section I.A.3.b(i) or (ii), *supra*, and shall cause the ICE Office of the Chief Counsel to be notified of any change in that determination.

3. ICE will utilize a toll-free telephone hotline and contact information for detainees, family members, and others to report and provide relevant information regarding detainees who have serious mental disorders or conditions that may impact their ability to represent themselves in immigration proceedings. A notice advertising the telephone hotline and contact information will be posted at all detention facilities, both where detainees reside and in visitation areas, and on ICE's public website. Such notice shall explicitly state that the hotline is available to report detainees who have serious mental disorders or conditions, and shall be available in the languages most likely to be understood by detainees and family members, including English and Spanish. Hotline operators shall cause any relevant

information regarding detainees with serious mental disorders or conditions to be reported to the ICE Office of the Chief Counsel within seven (7) days of the receipt of such information.  If a detainee identified through the hotline was not previously referred for a mental health assessment, but information received through the hotline indicates that the detainee suffers from a serious mental disorder or condition, then ICE shall ensure that the detainee is referred for a mental health assessment.

4.   In the event Plaintiffs' counsel alleges that detention facility personnel have failed to comply with the terms of Section I.B, Plaintiffs' counsel shall provide Defendants with a written statement describing the alleged non-compliance ("Notice of Non-Compliance").  Within seven (7) calendar days, counsel for the Parties shall meet and confer in a good faith effort to resolve their dispute informally.  In the event that the Parties are unable to resolve the dispute informally within 21 calendar days of the Notice of Non-Compliance, Plaintiffs may file a motion for enforcement in the United States District Court for the Central District of California.  Nothing in this provision is intended to limit Plaintiffs' ability to seek enforcement of any other provisions of this injunction by any appropriate means.  The provisions of this Section are not intended to resolve the question of whether third parties who are not Defendants in this case can be subject to contempt.  *See* Fed. R. Civ. P. 65(d)(2).

## II.   INFORMATION SHARING SYSTEM BETWEEN ICE AND EOIR

To further ensure that Immigration Judges have all of the information available to Defendants so that they can, among other things, evaluate competency and identify members of Sub-Class One, Defendants must implement a functioning system for sharing information gathered through that screening and

identification process with the Executive Office for Immigration Review ("EOIR"), which includes Immigration Judges and the Board of Immigration Appeals ("BIA" or "Board").  Therefore, the Court orders that within 90 days of this Order, Defendants shall implement the following system:

A. Upon notification that a detainee meets the criteria of Section I.A.3.b, and is therefore a member of the Class, the ICE Office of the Chief Counsel shall gather the following documents and information, if in the possession of ICE or the detention facility personnel:  any documents or information that ICE identifies as relevant to competency provided to an immigration detention facility or to ICE by the unrepresented immigration detainee, his or her family, medical providers, caseworkers, friends, legal service providers, and detention facility staff; any information or documents gathered by ICE or the detention facility personnel pursuant to Section I.B, *supra*; any competency determinations made in prior judicial proceedings; any forensic competency evaluations; any mental health assessment completed pursuant to Section I.A.3, *supra*; any other evidence of an evaluation or a determination regarding whether the detainee is or was mentally incompetent; and any other documents that ICE identifies as relevant to the Immigration Judge's determination pursuant to Section III.  ICE and detention facility personnel shall also notify the ICE Office of the Chief Counsel (or cause the ICE Office of the Chief Counsel to be notified) when they are aware that, in the last five years, a detainee has been housed in a medical unit or cell due to a mental disorder, has been placed in segregation due to a mental disorder, has displayed an intent to commit suicide or self-harm due to a mental disorder, or has been hospitalized due to a mental disorder.  Finally, if ICE is aware of third party records that it identifies as relevant to the Immigration Judge's determination pursuant to Section III, ICE will

inform the ICE Office of the Chief Counsel of the existence of those records.

B. Within 21 days of the notification described in Section II.A, *supra*, the ICE Office of the Chief Counsel shall file a notice with EOIR to notify the Immigration Judge presiding over the detainee's case, or the Board of Immigration Appeals, if applicable, that the detainee—if unrepresented—is a member of the Class.  The notice shall contain all information gathered by the ICE Office of the Chief Counsel pursuant to Section II.A, *supra*, and shall attach to that notice all documents gathered by the ICE Office of the Chief Counsel pursuant to Section II.A, *supra*, for consideration by the Immigration Judge at the Judicial Competency Inquiry and Competency Review.  If the ICE Office of Chief Counsel receives additional documents or information described in Section II.A after the notice is filed, it will provide such documents or information to the Immigration Judge as soon as practicable.

C. The ICE Office of the Chief Counsel will also submit to the Immigration Judge any other medical records in ICE's possession, custody, or control, should the Immigration Judge request such information.[10]

## III.   EVALUATION SYSTEM

Within 90 days of the entry of this Order, Defendants are ordered to implement the following system:

When documentary, medical, or other evidence that comes to ICE's or EOIR's attention indicates that the detainee is a member of the Class (*i.e.,* meets one of the criteria set forth in Section I.A.3.b, *supra*), the Immigration Judge shall

---

[10] If an unrepresented detainee with an appeal pending before the Board was not previously determined to be a Class member, and information comes to the attention of ICE that the individual falls under Section I.A.3.b, *supra*, ICE will notify the Board and request a limited remand, in accordance with Section III.D.5, *infra*.

conduct a Judicial Competency Inquiry and, when appropriate, a Competency Review, for the purpose of determining whether the Class member is competent to represent him- or herself in immigration proceedings.  Such hearings shall conform to the standard and procedures set forth below.

A. *Pro Se* Competency Standard

When determining whether an unrepresented respondent is competent to represent him- or herself in an immigration proceeding, the Immigration Judge must consider **both** the individual's ability to meaningfully participate in the proceeding as set forth in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011), **and** the individual's ability to perform additional functions necessary for self-representation.

Immigration Judges shall consider the following when determining if a respondent is competent to represent him- or herself:

*First*, the respondent must be able to meaningfully participate in the proceeding as set forth in *Matter of M-A-M-* .  To meaningfully participate, the respondent must have a rational and factual understanding of:

a.  the nature and object of the proceeding;

b.  the privilege of representation by counsel;

c.  the right to present, examine, and object to evidence;

d.  the right to cross-examine witnesses; and

e.  the right to appeal.

*Second*, for an unrepresented respondent to be competent to represent him or herself in an immigration proceeding, he or she must also be able to perform additional functions necessary for self-representation.  To represent him- or herself, the respondent must have sufficient present ability to:

a.  exercise the rights listed above;

b.  make informed decisions about whether to waive the rights listed above;

c.  respond to the allegations and charges in the proceeding;

d.  present information and evidence relevant to eligibility for relief; and

e.  act upon instructions and information presented by the Immigration Judge and government counsel.

A respondent is incompetent to represent him- or herself in an immigration proceeding if he or she, because of a mental disorder (including Intellectual Disability), is unable to satisfy any of the provisions above.  For purposes of this standard, "mental disorder" (including Intellectual Disability) is defined as a significant impairment of the cognitive, emotional, or behavioral functioning of a person.

_Guidance on applying the pro se competency standard_.[11]  The following guidance is provided to assist Immigration Judges in applying the _pro se_ competency standard.

First, in applying the above definition, the presence of a legal guardian, near relative, friend, or custodian, under 8 C.F.R. § 1240.4, shall not affect an Immigration Judge's assessment of whether a respondent is able to perform the additional functions necessary for self-representation.

Second, in assessing whether the respondent can respond to allegations and charges in the proceedings, the Immigration Judge should consider, among other things, the person's ability to evaluate and coherently discuss legal arguments and defenses.

Third, in assessing whether the respondent can present information and evidence relevant to eligibility for relief, the Immigration Judge should consider,

---

[11]  Wherever the _pro se_ competency standard appears in written materials that will be used as a reference or to train either Immigration Judges or mental health experts who will implement the terms of the Injunction, the standard will be accompanied by the text of the "guidance" on applying the definition of _pro se_ competency.

among other things, the person's ability to present rational and coherent testimony based upon adequate recall.

B. Judicial Competency Inquiries and Competency Reviews

Judicial Competency Inquiries and Competency Reviews shall proceed as follows.

1. There is no presumption of competence or incompetence for Class members.

2. There is no burden of production or persuasion at either the Judicial Competency Inquiry or the Competency Review.  Such inquiries and reviews shall serve as information-gathering hearings, which will inform Immigration Judges' determinations concerning a Class member's competence to represent him- or herself in the proceedings.  Consistent with *Matter of M-A-M-*, 8 U.S.C. § 1229a and its implementing regulations, and the procedures set forth in Section II, *supra*, the parties agree that the ICE Office of the Chief Counsel's interest in presenting evidence and argument is "in the law being observed" and not in a particular result concerning a Class member's competence or incompetence.  *Reid v. INS*, 949 F.2d 287, 288 (9th Cir. 1991).  To the extent the evidence establishes a Class member's incompetence, the ICE Office of the Chief Counsel's presentation of evidence and argument should assist the Immigration Judge in according the appropriate procedural rights or benefits pursuant to the Court's Permanent Injunction [Doc. # 593] or Implementation Plan Order. *See Matter of S-M-J-*, 21 I. & N. Dec. 722, 727 (BIA 1997).

3. The Immigration Judge shall convene a Judicial Competency Inquiry no later than 21 days after receiving the notice pursuant to Section II.B that a detainee is a member of the Main Class.

4. At the beginning of the Judicial Competency Inquiry, the Immigration
   Judge shall advise and question the Class member based on the
   Competency Proceeding Advisal, attached as Appendix B.  The
   Immigration Judge is neither required to ask each and every question
   listed in the Advisal nor prohibited from asking questions not
   otherwise listed therein.

5. Following the Judicial Competency Inquiry, the Immigration Judge
   may make any of the following findings, based on all available
   evidence and any testimony presented:

   a. Class member is competent.  There is no reasonable cause[12] to
      believe that the Class member is suffering from a mental disorder
      that impairs his or her ability to perform the functions listed in the
      definition of competence to represent him- or herself.

   b. Class member is incompetent.  A preponderance of the evidence
      establishes that the Class member is not competent to represent
      him- or herself in the proceedings.

   c. Insufficient evidence to determine if Class member is competent.
      The evidence is not sufficient to support a finding of incompetence
      but the Immigration Judge has reasonable cause to believe that the
      Class member is suffering from a mental disorder that may impair
      his or her ability to represent him- or herself.

6. When, at the conclusion of the Judicial Competency Inquiry, an
   Immigration Judge determines that a Class member is not competent
   to represent him- or herself in the proceedings pursuant to Section

---

[12] The "no reasonable cause to believe" standard is equivalent to a "bona fide doubt" standard and is less onerous than a probable cause standard.

III.B.5.b, *supra*, EOIR shall have 60 days from the date of the determination to arrange for provision of a Qualified Representative.

7. When, at the conclusion of the Judicial Competency Inquiry, an Immigration Judge determines that he or she has insufficient evidence to determine if the Class member is competent pursuant to III.B.5.c, *supra*, the Immigration Judge shall follow the procedures set forth below:

   a. Upon the conclusion of the Judicial Competency Inquiry, the Immigration Judge shall promptly order that a Forensic Competency Evaluation of the Class member be conducted and that the results of the evaluation be provided to the Immigration Judge, the ICE Office of the Chief Counsel, and the Class member.

   b. A Forensic Competency Evaluation ordered by the Immigration Judge shall be completed and a written report provided to the Judge and the parties within 45 days after the date of the order set forth in III.B.7.a, *supra*.

   c. Within 30 days after receiving the report from the Forensic Competency Evaluation, the Immigration Judge shall convene a Competency Review, including further testimony if necessary, and shall make a determination by a preponderance of the evidence as to whether the Class member is mentally competent or incompetent to represent him- or herself.

   d. When, at the conclusion of the Competency Review, an Immigration Judge determines that a Class member is mentally incompetent to represent him- or herself pursuant to Section III.B.5.b, *supra*, EOIR shall have 21 days from the date of the determination to arrange for provision of a Qualified Representative.

8. The Immigration Judge may allow one extension of no more than 30 days for each of the timeframes set forth above for Judicial Competency Inquiries (Section III.B.3), Forensic Competency Evaluations (Section III.B.7.b), and Competency Reviews (Section III.B.7.c). The Immigration Judge may, thereafter, allow for additional extensions of these time frames in exceptional circumstances or where the Immigration Judge otherwise determines that such extensions are necessary to ensure the fundamental fairness of the Class member's proceeding.

C. Forensic Competency Evaluations

As set forth below, defendants shall provide Forensic Competency Evaluations upon the request of Immigration Judges:

1. Forensic Competency Evaluations shall be conducted by a "mental health professional," defined as forensically trained and currently licensed psychiatrists, psychologists, and licensed clinical social workers.

2. Except in very rare exigent circumstances, the Forensic Competency Evaluations conducted at the request of an Immigration Judge will be conducted in person, and not by teleconference, videoconference, or other remote access means. The parties agree that the following are not exigent circumstances that justify deviation from the in-person requirement: a) the unavailability of a trained mental health professional who meets the requisite qualifications and who is willing to travel to the individual's location at the compensation rate requested by Defendants; b) the inconvenience or expense to Defendants associated with obtaining a trained mental health professional at additional cost. The exigent circumstances envisioned by the Parties are circumstances in which the unique characteristics or

social circumstances of the individual to be evaluated are such that the quality of the Forensic Competency Evaluation will be enhanced by the use of remote access technology, even though a qualified clinician is available for an in-person evaluation.

3. Forensic Competency Evaluations must be conducted substantially in accordance with the procedures described in the American Academy of Psychiatry and the Law Practice Guideline for the Forensic Evaluation of Competence to Stand Trial.

D. <u>Additional Procedures</u>

1. Judicial Competency Inquiries and Competency Reviews shall be recorded.  The Immigration Judge shall state on the record the reasoning supporting a finding of competence or incompetence.

2. At or before Judicial Competency Inquiries and Competency Reviews, the ICE Office of the Chief Counsel, the Class member, and third parties (including family members, social service providers, and others) may submit to the Immigration Judge, and the Immigration Judge shall consider, additional mental health information or other information relevant to a detainee's mental competency or incompetency to represent him- or herself in immigration proceedings.

3. "Mental Health Information" includes any information expressly contained in or directly obtained from an Immigration Court's administrative inquiry into mental competence, a portion of a hearing in which mental competence is addressed, a mental health examination of a detainee (including a request for such examination), and a report of such examination.  Except as otherwise noted below, Mental Health Information shall only be used to determine a detainee's mental competency to participate or represent oneself in an

immigration proceeding, and may not be used to establish the truth of allegations or charges against the detainee, or to establish ineligibility for relief.

The paragraph above shall not apply to DHS's use of Mental Health Information if such information is independently submitted by, obtained by, or in the possession of DHS.  If a respondent uses Mental Health Information in any proceeding for any purpose other than to inform his or her mental competency to participate in an immigration proceeding, the paragraph above shall not apply, and disclosure and use of the Mental Health Information shall be governed by rules of evidence and procedures applicable in immigration proceedings.  If the detainee uses a part of a document or report, DHS may request the production of any other portion of that document or report.  Such requests shall be granted at the Immigration Judge's discretion upon consideration of all relevant factors.

4. Either party may appeal the Immigration Judge's determination that a detainee is mentally competent to represent him- or herself in immigration proceedings to the Board.  In the event the ICE Office of the Chief Counsel appeals an Immigration Judge's determination that a detainee is mentally incompetent to represent him- or herself in immigration proceedings to the Board, EOIR shall provide the detainee with a Qualified Representative to represent the detainee in the appeal before the Board and any other proceedings, including bond hearings, to which the detainee may be entitled under the Permanent Injunction unless and until the detainee is otherwise determined to be competent by an Immigration Judge.

5. In the case of an unrepresented immigration detainee with an appeal pending before the Board who has not previously been determined to

be a Class member, when documentary, medical, or other evidence indicating that such individual falls under Section I.A.3.b comes to the Board's attention, the Board shall order a remand to the Immigration Judge with instructions to apply the procedures set forth in Section III.B of this Order.

6. Where an Immigration Judge finds from the record and proceedings before him/her, or from evidence made available to all parties, that there is sufficient reason to believe that the Sub-Class One member is no longer suffering from a mental disorder that renders him incompetent to represent him-or herself, before issuing any finding that the Sub-Class One member has in fact been restored to competency, the Immigration Judge shall employ and follow the procedures set forth in Section III.B.4 for conducting a Judicial Competency Inquiry, including reliance on and application of the Competency Proceeding Advisal attached as Appendix B. No finding of restored competency may be issued unless and until the Immigration Judge has invited the input of the Qualified Representative. The Immigration Judge shall state on the record the reasoning supporting a finding that the Sub-Class One member is now competent to represent him- or herself. Prior to stating such a finding, the Immigration Judge, in his or her discretion, may order that a Forensic Competency Evaluation of the Sub-Class One member be conducted and that the results of the evaluation be provided to the Immigration Judge and the parties, within the time frames set forth in Section III.B7(b) and (c).

7. Absent exceptional circumstances, a Sub-Class One member shall not be found to have knowingly, intelligently and voluntarily waived his right to a Qualified Representative.

## IV.    OTHER MATTERS

### A. EOIR's nationwide policy

Nothing in EOIR's nationwide policy is intended to negate or alter the obligations of EOIR under the orders of the Court in *Franco-Gonzalez v. Holder*.

### B. Released Main Class Members

The procedural protections set forth in the Permanent Injunction and in this Order are limited to individuals who are physically detained in ICE custody, except as provided in Sections IV.B and IV.C, *infra*:

If a Main Class member is released from detention after an Immigration Judge has ordered a Forensic Competency Evaluation but before the Immigration Judge has made a competency determination, the Main Class member continues to be entitled to the procedural protections set forth in the Permanent Injunction and in this Order, including the completion of the Forensic Competency Evaluation, Section III.B.7.a-b, a Competency Review, Section III.B.7.c, and, if the Immigration Judge determines that the individual is not competent to represent him-or herself, the provision of a Qualified Representative, Section III.B.7.d.  The timelines, however, for scheduling a Forensic Competency Evaluation, a Competency Review, and, if applicable, for provision of a Qualified Representative at the conclusion of a Competency Review shall not apply following such Main Class member's release from detention; provided that, the Competency Review shall be scheduled no more than 45 days after the Immigration Court receives the report from the Forensic Competency Evaluation (absent exceptional circumstances or where the Immigration Judge otherwise determines that more time is necessary to ensure the fundamental fairness of the Class member's proceeding).  If such released Main Class member fails to appear at the Forensic Competency Evaluation ordered by the Immigration Judge for an unexcused reason or no reason, he or she may thereby forfeit the right to such an

1  evaluation, and the Immigration Judge may make the competency determination

2  without the aid of that evaluation.

3          If a Main Class member (who is not also a Sub-Class One member) is

4  released from detention after Defendants have carried out the requirements in

5  Section II.B, but before an Immigration Judge has ordered a Forensic Competency

6  Evaluation in the case pursuant to Section III.B.7 or made a competency

7  determination pursuant to Section III.B.5, he or she is not entitled to the procedural

8  protections set forth in the Permanent Injunction and in this Order.  However, if

9  such released Main Class member fails to appear at a scheduled hearing for an

10  unexcused reason or no reason, he or she shall not be ordered removed in absentia,

11  unless or until (1) he or she is represented in his or her immigration proceedings or

12  (2) he or she has been determined mentally competent by the Immigration Judge

13  prior to the failure to appear.  If such released Main Class member fails to appear

14  at a scheduled hearing for an unexcused reason or no reason, he or she may be re-

15  detained by ICE and, for purposes of any subsequent bond hearings, the failure to

16  appear shall constitute clear and convincing evidence that the Main Class member

17  is a flight risk.

18          C.  Released Sub-Class One Members

19          Released Sub-Class One members are entitled to representation by Qualified

20  Representatives pursuant to this Court's Injunction until the conclusion of their

21  immigration proceedings, irrespective of whether their case is transferred to a

22  venue outside of the three states in which this Order applies.

23          D.  Class Definition

24          Pursuant to the Parties' agreement, the Court hereby substitutes the term

25  "immigration proceedings" for "removal proceedings" and "detention and removal

26  proceedings" in the Class definition.  Therefore, the Class and Sub-Class

27  definitions are as follows:

28

*Plaintiff (or "Main") Class:*

All individuals who are or will be in DHS custody for immigration proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a serious mental disorder or defect that may render them incompetent to represent themselves in immigration proceedings, and who presently lack counsel in their immigration proceedings.

*Sub-Class 1:*

Individuals in the above-named Plaintiff Class who have a serious mental disorder or defect that renders them incompetent to represent themselves in immigration proceedings.

*Sub-Class 2:*

Individuals in the above-named Plaintiff Class who have been detained for more than six months.

For purposes of the Class and Sub-Class definitions above, the class certification order [Doc. # 348], permanent injunction order [Doc. # 593], and this implementation plan order, "immigration proceedings" shall mean, and be limited to, proceedings at which Immigration and Customs Enforcement ("ICE") appears on behalf of the Department of Homeland Security ("DHS") before an Immigration Judge or the Board of Immigration Appeals ("BIA" or "Board"):

(1) that occur prior to the entry of a final administrative order of removal, final administrative order of deportation, final administrative order of exclusion, or a final administrative determination pursuant to 8 C.F.R. § 1208.2(c)(3);[13] and

---

[13] Pursuant to 8 C.F.R. § 1208.2(c)(3), in proceedings falling under the jurisdiction of an immigration judge for asylum and withholding of removal only applications under 8 C.F.R. § 1208.2(c)(1)-(2), Defendants shall apply the provisions of Sections I (Screening and Information Gathering), II (Information Sharing), and III (Evaluation System), *supra*, as well as the Permanent Injunction and clarifying minute order [Doc. ## 593, 626].

(2) bond hearings that occur after the entry of a final administrative order of removal, final administrative order of deportation, final administrative order of exclusion, or a final administrative determination pursuant to 8 C.F.R. § 1208.2(c)(3) (collectively, "post-order bond hearings"), except in such cases where the final order is thereafter reopened; provided that, Defendants shall not be bound to apply the provisions of Section I (Screening and Information Gathering) and II (Information Sharing), *supra*.  Instead, in all such post-order bond hearings, the ICE Office of the Chief Counsel shall notify the Immigration Judge whenever the information contained in the file in its possession shows that a detainee was previously identified as a Class or Sub-Class member.  If the information in the file shows that a detainee was previously identified as a Class member, *or* if the Immigration Judge determines that the detainee is a Class member pursuant to Section I.A.b.3(iii), *supra*, then the Immigration Judge shall determine the detainee's competence in compliance with Section III (Evaluation System), *supra*. Notwithstanding the above, if a detainee was previously determined to be a member of Sub-Class One, he or she must be afforded a Qualified Representative in his or her post-order bond hearings, unless a determination has been made that he is competent pursuant to the procedures described in Section III.D.6, *supra*.

E. Implementation of Partial Settlement Agreement, Subject to the Court's Approval

    1. Definition of "Removal Order Class Member."

Subject to the Court's approval of the Parties' Partial Settlement Agreement Regarding Procedures of Notifying and Reopening Cases of *Franco* Class Members who Have Received Final Orders of Removal (the "Agreement")—

For purposes of this Order and Sections IV.E.2, *infra*, the term "Removal Order Class Member(s)" shall have the same meaning and applicability, and be limited to, the definition as set forth in Parties' Agreement. *See* Agreement at Section I.

      2.  Equitable Tolling of Time and Numerical Limitations for Motions to Reopen under the Agreement.

Subject to the Court's approval of the Parties' Agreement, the Court hereby orders that the time and numerical limitations set forth in the Immigration and Nationality Act and its implementing regulations shall be equitably tolled for motions to reopen filed by "Removal Order Class Members" and accepted for adjudication on the merits, as provided under the terms of the Parties' Agreement.

F. Tools

Within 90 days of the entry of this Order, Defendants shall prepare tools to be provided to all Main Class members before the Judicial Competency Inquiry that will have basic information to help individuals prepare for the hearing. Prior to finalizing these tools, Defendants shall provide Plaintiffs with a reasonable opportunity to review Defendants' proposed tools and to provide input.

G. Retention of Jurisdiction

This Court retains jurisdiction to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to enforce the provisions of this Order, or to amend this Order for good cause shown.[14] In addition to the dispute resolution procedures contained in this or further Orders, the

//
//
//
//
//

---

[14] Nothing in this order should be read to suggest that the Court has subject matter jurisdiction to entertain individual challenges to removal orders entered in immigration proceedings brought by or on behalf of Class members.

Parties shall comply with the requirements of Local Rule 7-3 prior to bringing any motion seeking to implement, enforce, or amend this Order.

IT IS SO ORDERED.

DATED:  October 29, 2014

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

# TABLE OF TIMELINES[15]

| Implementation | |
|---|---|
| **DATE** | **ACTION** |
| Within 90 days of the entry of this Order. | Defendants must implement the Screening System (*see* Section I), Information Sharing System Between ICE and EOIR (*see* Section II), and the Evaluation System (*see* Section III). |
| Within 90 days of the entry of this Order. | Defendants shall prepare tools to be provided to all Main Class members before the Judicial Competency Inquiry.  *See* Section IV.F. |
| **Screening Procedures** | |
| **DATE** | **ACTION** |
| Upon a detainee's admission into ICE custody at an immigration detention facility for immigration proceedings in California, Arizona, or Washington. | Absent emergency circumstances related to facility security or the health and safety of staff or detainees, all detainees shall be initially screened for evidence of a "serious mental disorder or condition," in accordance with the applicable ICE national detention standards.  *See* Section I.A.2. |
| Within 14 days of a detainee's admission into ICE custody at an immigration detention facility for immigration proceedings in California, Arizona, or Washington. | Absent emergency circumstances related to facility security or the health and safety of staff or detainees, detainees shall be further screened (or assessed) by a currently and appropriately licensed psychiatrist, physician, physician assistant, psychologist, clinical social worker, licensed nurse practitioner, or |

---

[15] The Table of Timelines is provided for convenience only and is not a part of this Order.  Accordingly, it does not supplement, modify, or in any way alter the contents of this Order.

| | registered nurse. *See* Section I.A.2. |
|---|---|
| As soon as practicable, ordinarily within 14 days after a detainee is identified through the screening process as exhibiting evidence of a serious mental disorder or condition.[16] | Individuals identified as exhibiting evidence of a serious mental disorder or condition shall be referred for a mental health assessment performed by a qualified mental health provider. *See* Section I.A.3.[17] |
| Within seven (7) days of the completion of a mental health assessment. | The qualified mental health provider shall cause the ICE Office of the Chief Counsel to be notified if such mental health assessment or other available information shows that an immigration detainee meets specified Main Class Membership Criteria. *See* Section I.A.5.[18] |
| Within seven (7) days of a toll-free telephone hotline operator's receipt of relevant information regarding detainees with serious mental disorders or conditions. | The Hotline operator shall cause such information to be reported to the ICE Office of the Chief Counsel. *See* Section I.B.3. |
| Within seven (7) calendar days of Plaintiffs' counsel providing Defendants with a written statement describing alleged non-compliance | Counsel for the Parties shall meet and confer in a good faith effort to resolve their dispute informally. *See* Section I.B.4. |

---

[16] As set forth in the Order, whenever ICE or detention facility personnel become aware that an immigration detainee identified through the screening system was previously found incompetent in any court proceedings (including past criminal proceedings) or was hospitalized due to a mental disorder or condition, ICE or detention facility personnel must provide that information, and any related documents in their possession, to the qualified mental health provider performing the mental health assessment. *See* Section I.B.1.

[17] As set forth in the Order, if a detainee was not referred for a mental health assessment upon initial screening, but information and/or records received through third parties indicate that an individual suffers from a serious mental disorder or condition, such individual shall be referred for a mental health assessment for further evaluation. *See* Section I.B.2.

[18] As set forth in the Order, if the mental health assessment has already been completed at the time that ICE or detention facility personnel provide the information or documents referenced in footnote 16 or 17, *supra*, the qualified mental health provider must determine whether the new information affects the determination whether a detainee meets the Class membership criteria, and shall cause the ICE Office of the Chief Counsel to be notified of any change in that determination. *See* Section I.B.1, I.B.2.

| | |
|---|---|
| with the Information Gathering Procedures (i.e., "Notice of Non-Compliance"). | |
| In the event the Parties are unable to resolve the dispute regarding the alleged non-compliance with the Information Gathering Procedures informally within 21 calendar days of the Notice of Non-Compliance. | Plaintiffs may file a motion for enforcement in the United States District Court for the Central District of California.  *See* Section I.B.4. |

**Information Sharing**

| DATE | ACTION |
|---|---|
| Upon notification that a detainee meets the Main Class Membership Criteria, and is therefore a member of the Class. | The ICE Office of the Chief Counsel shall gather relevant documents and information, if in the possession of ICE or the detention facility personnel.  *See* Section II.A. |
| Within 21 days of notification that a detainee meets the Main Class Membership Criteria. | The ICE Office of Chief Counsel shall file a notice with EOIR to notify the Immigration Judge presiding over the detainee's case, or the Board of Immigration Appeals, if applicable, that the detainee – if unrepresented – is a member of the Class.  *See* Section II.B. |

**Evaluation System[19]**

| DATE | ACTION |
|---|---|
| No later than 21 days after receiving the notice that a detainee is a member of the Main Class. | The Immigration Judge shall convene a Judicial Competency Inquiry, following which the Immigration Judge may, based on all available evidence |

---

[19] As set forth in the Order, the Immigration Judge may allow one extension of no more than 30 days for each of the timeframes for Judicial Competency Inquiries, Forensic Competency Evaluations, and Competency Reviews. The Immigration Judge may, thereafter, allow for additional extensions of these time frames in exceptional circumstances or where the Immigration Judge otherwise determines that such extensions are necessary to ensure the fundamental fairness of the Class member's proceeding. *See* Section III.B.8.

| | |
|---|---|
| | and testimony presented, find the Class member competent or not competent, or determine that there is not sufficient evidence to determine if the Class member is competent. *See* Section III.B.3, III.B.5. |
| 60 days from the date an Immigration Judge determines that a Class member is not competent to represent him- or herself in the proceedings (if the determination is made at the conclusion of the Judicial Competency Inquiry). | EOIR shall arrange for the provision of a Qualified Representative. *See* Section III.B.6. |
| Upon the conclusion of the Judicial Competency Inquiry. | The Immigration Judge shall promptly order that a Forensic Competency Evaluation of the Class member be conducted and that the results of the evaluation be provided to the Immigration Judge, the ICE Office of the Chief Counsel, and the Class member. *See* Section III.B.7.a. |
| Within 45 days after the date an Immigration Judge orders a Forensic Competency Evaluation. | The Forensic Competency Evaluation shall be completed and a written report provided to the Immigration Judge and the parties. *See* Section III.B.7.b. |
| Within 30 days after receiving the report from the Forensic Competency Evaluation. | The Immigration Judge shall convene a Competency Review, and shall make a determination by a preponderance of the evidence as to whether the Class member is mentally competent or incompetent to represent him- or herself. *See* Section III.B.7.c. |
| 21 days from the date of an Immigration Judge determines that a Class member is not competent to represent him- or herself (if the determination is made at the conclusion of the Competency Review). | EOIR shall arrange for the provision of a Qualified Representative. *See* Section III.B.7.d. |

31

| Other Matters – Released Main Class Members | |
|---|---|
| DATE | ACTION |
| No more than 45 days after the Immigration Court receives the report from the Forensic Competency Evaluation (if the Main Class member was released from detention after the Immigration Judge ordered a Forensic Competency Evaluation but before the Immigration Judge made a competency determination).[20] | Absent exceptional circumstances or where an Immigration Judge otherwise determines that more time is necessary to ensure the fundamental fairness of the Class member's proceeding, a Competency Review shall be scheduled. *See* Section IV.B. |

---

[20] As set forth in the Order, the timelines for scheduling a Forensic Competency Evaluation, a Competency Review, and, if applicable, for provision of a Qualified Representative at the conclusion of a Competency Review shall not apply following a Main Class member's release from detention. *See* Section IV.B.

Appendix A

# ERO Custody Management Division

## Authorized Facilities in the States of Arizona, California and Washington

Data: Facility Performance Management System (FPMS) database, 10/10/2014.

| DETLOC | FACILITY NAME | CITY | STATE | AOR | FACILITY TYPE | DETENTION STANDARD | IHSC STAFFED? |
|--------|---------------|------|-------|-----|---------------|--------------------|--------------|
| CCADCAZ | CCA CENTRAL ARIZONA DETENTION CENTER | FLORENCE | AZ | PHO | USMS IGA | PBNDS 2008 | NO |
| CCAFLAZ | CCA, FLORENCE CORRECTIONAL CENTER | FLORENCE | AZ | PHO | USMS IGA | PBNDS 2008 | NO |
| EAZ | ELOY FEDERAL CONTRACT FACILITY | ELOY | AZ | PHO | DIGSA | PBNDS 2011 | YES |
| FLO | FLORENCE SERVICE PROCESSING CENTER | FLORENCE | AZ | PHO | SPC | PBNDS 2011 | YES |
| SLRDCAZ | SAN LUIS REGIONAL DETENTION CENTER | SAN LUIS | AZ | PHO | IGSA | NDS | NO |
| ADLNTCA | ADELANTO CORRECTIONAL FACILITY | ADELANTO | CA | LOS | DIGSA | PBNDS 2011 | NO |
| CONWECA | CONTRA COSTA COUNTY JAIL WEST | RICHMOND | CA | SFR | USMS IGA | NDS | NO |
| IRADFCA | IMPERIAL REGIONAL ADULT DETENTION FACILITY | CALEXICO | CA | SND | DIGSA | PBNDS 2011 | NO |
| MUSIKCA | JAMES MUSICK FACILITY | IRVINE | CA | LOS | IGSA | PBNDS 2008 | NO |
| RIOCCCA | SACRAMENTO COUNTY JAIL - RIO COSUMNES CORR. CENTER | ELK GROVE | CA | SFR | IGSA | NDS | NO |
| CCASDCA | SAN DIEGO CONTRACT DETENTION FACILITY - CCA | SAN DIEGO | CA | SND | CDF | PBNDS 2011 | YES |
| SACITCA | SANTA ANA CITY JAIL | SANTA ANA | CA | LOS | IGSA | NDS | NO |
| TLACYCA | THEO LACY FACILITY | ORANGE | CA | LOS | IGSA | PBNDS 2008 | NO |
| YUBAJCA | YUBA COUNTY JAIL | MARYSVILLE | CA | SFR | IGSA | NDS | NO |
| CSCNWWA | NORTHWEST DETENTION CENTER | TACOMA | WA | SEA | CDF | PBNDS 2011 | YES |

Appendix B

# Process for Conducting a Judicial Inquiry

**I. <u>Purpose of the Judicial Inquiry</u>** - The purpose of the judicial inquiry is to determine whether respondent's competence is in issue and a more in-depth competency review is warranted.

**II. <u>Mandatory Advisals</u>** – The judicial inquiry should generally occur after explaining to the respondent the nature and purpose of the proceeding and providing the advisals required in 8 C.F.R. § 1240.10(a).

**III. <u>Suggested Advisal</u>** - The judicial inquiry should begin by explaining to the respondent the purpose and process for conducting the judicial inquiry. A sample advisal follows:

> *I am an Immigration Judge. My job is to decide whether you will be allowed to stay in the United States. I am going to hold a hearing to gather information from you and the representative of the Government to help me decide whether you will be allowed to stay in the United States.*
>
> *It is important that you understand what is happening in court. It is important that you understand what is being said about you. It is also important that you are able to tell your side of the story.*
>
> *To make sure that you are able to understand and tell your story, I am going to ask some questions about you and your case. I will use this information to decide whether you will need any special help in the hearing.*
>
> *Can you explain to me what I just said in your own words?*
>
> *Do you have any questions before we begin today?*

**IV. <u>Suggested Questions</u>**

A. **<u>Areas of Inquiry</u>** - When conducting the judicial inquiry, the Immigration Judge must ask questions to assess respondent's:

1. understanding of the nature and object of the proceeding,
2. understanding of and ability to exercise core rights and privileges,
3. ability to respond to the allegations and charges,
4. ability to present information and respond to questions relevant to eligibility for relief, and
5. cognitive, emotional, and behavioral functioning.

B. **Suggested Questions** – The following list of questions is designed to shed light on the respondent's: 1) cognitive, emotional, and behavioral functioning; and 2) ability to represent him- or herself. This list is not exhaustive. The judge may ask other questions relevant to the respondent's mental health and ability to function as required in the hearing (*e.g.*, ability to communicate, subjective reality, memory, and interest in self). It is important for a judge to observe respondent's non-verbal as well as verbal responses to questions posed.

1. **Cognitive, Emotional, and Behavioral Functioning**
   a. How are you today?
   b. What is your name?
   c. What is today's date (including year)?
   d. What state and country are we in today?
   e. How did you get to the United States?
   f. When did you come to the United States? About how long have you been in the United States?
   g. Do you want to stay in the United States?
   h. Where do you live?
   i. What is the highest level of school that you completed?
   j. Are you seeing a doctor or taking any medications?
      1) If yes, what condition or problems are you being treated for?
      2) If yes, what medications are you taking?
   k. Are you currently being treated for a mental health (psychological/psychiatric) or emotional problem?
      1) If yes, what is the problem for which you are being treated?
      2) If yes, how often do you see the doctor?
      3) If yes, what medications, if any, are you receiving for this problem?
   l. Have you been treated for a mental health (psychological/psychiatric) or emotional problem in the past?
      1) If yes, when and for what problem?

2. **Ability to Respond to the Allegations and Charges**
   a. Why were you arrested? (Why did the immigration officers pick you up?)
   b. Where were you arrested?
   c. When were you arrested? (What was the date and time of your arrest?)
   d. Can you explain to me the immigration charges against you? (Can you explain to me what the government says you did wrong?)
   e. Is there anything important that you think I should know about what they say you did wrong? (Do you agree with what the government is saying about you?)

    f.   What does _____ (*e.g.*, alien smuggling, controlled substance, conviction, firearm) mean?

    g.   How do you plan to proceed in court? (What do you plan to do next?)

    h.   What do you want me to know about you and/or why you are here?

    i.   What do you hope happens in court?

**3.  Understanding and Ability to Exercise Rights and Privileges**

    a.   What are your rights in immigration proceedings?

    b.   What is a legal representative?  What does a legal representative do in court?

    c.   How do you find an attorney or legal representative?

    d.   Is there anyone who can help you with your case?

    e.   What is "evidence"?

    f.   Can you give me an example of "evidence" that may be offered in your proceeding?

    g.   What is an "appeal"?

    h.   Why and how would you file an appeal?

**4.  Ability to Present Information and Respond to Questions Relevant to Relief**

    a.   What does "relief from removal" mean?

    b.   What forms of relief from removal may be available in these proceedings?

    c.   How long have you been in the United States?

    d.   Do you have any family in the United States?

    e.   Have you or your family ever had papers or permission to be in the United States?

    f.   Has someone hurt you or tried to hurt you in your country?

    g.   Are you afraid to go back to your country?  Why?

    h.   What does _____ (*e.g.*, asylum, cancellation of removal, withholding of removal) mean?

    i.   I am going to show you a relief application.  Please take a moment to review the application.  Can you explain to me how you would fill the application out or bring it back to me completed?

    j.   Who do you know who might be able to help you with your case?

**5.  Other appropriate questions**

    a.   Is there anything else you would like to tell me?

    b.   Are there any other questions you would like to ask?