1  AHILAN T. ARULANANTHAM (State Bar No. 237841)
   aarulanantham@aclusocal.org
2  CARMEN IGUINA (State Bar No. 277369)
   ciguina@aclusocal.org
3  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West 8th Street
4  Los Angeles, California 90017
   Telephone: (213) 977-5211
5  Facsimile: (213) 417-2211

6  MICHAEL H. STEINBERG (State Bar No. 134179)
   steinbergm@sullcrom.com
7  SULLIVAN & CROMWELL LLP
   1888 Century Park East, Suite 2100
8  Los Angeles, California 90067-1725
   Telephone: (310) 712-6600
9  Facsimile: (310) 712-8800

10

11 *Attorneys for Plaintiffs-Petitioners*
   (Additional Counsel for Plaintiffs
   on Following Page)

12

13                 **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

16 JOSE ANTONIO FRANCO-          )   Case No. 10-CV-02211 DMG (DTBx)
   GONZALEZ, et al.,             )
17                               )   **MEMORANDUM OF POINTS AND**
        *Plaintiffs-Petitioners,* )   **AUTHORITIES IN SUPPORT OF**
18                               )   **PLAINTIFFS' MOTION FOR**
            v.                   )   **PRELIMINARY APPROVAL OF**
19                               )   **PARTIAL SETTLEMENT**
   ERIC H. HOLDER, Jr., Attorney )   **AGREEMENT**
20 General, et al.,              )
                                 )   Hearing:  March 27, 2015
21      *Defendants-Respondents.*  )   Time:  9:30 a.m.
                                 )   Courtroom: 7
22 _____ )
                                 )   Honorable Dolly M. Gee
23

24

25

26

27

28

JUDY LONDON (State Bar No. 149431)
jlondon@publiccounsel.org
TALIA INLENDER (State Bar No. 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (State Bar No. JR-1214)
JRabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

BARDIS VAKILI (State Bar No. 247783)
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

JAMES PREIS (State Bar No. 82690)
jpreis@mhas-la.org
MENTAL HEALTH ADVOCACY SERVICES
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone: (213) 389-2077
Facsimile: (213) 389-2595

MATT ADAMS (State Bar No. 28287)
matt@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

JAMES LYALL (State Bar No. 330045)
jlyall@acluaz.org
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 773-6001
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs-Petitioners*

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   BACKGROUND TO THE REOPENING SETTLEMENT ............................1

III.  THE TERMS OF THE REOPENING SETTLEMENT. ..................................5

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE REOPENING SETTLEMENT BECAUSE IT MEETS THE STANDARDS OF RULE 23(e). .......................................................................................................9

    A.   The Reopening Settlement Provides the Class with Substantial Benefits and Avoids the Risk and Uncertainty of Litigation. ...................................10

    B.   The Reopening Settlement Is the Product of Arms-Length Negotiations Between Well-Informed and Experienced Counsel. ...................................11

    C.   The Proposed Notice Plan Provides Reasonable Notice to Class Members. .......................................................................................................................12

V.   CONCLUSION ...........................................................................................13

i

# TABLE OF AUTHORITIES

*Chavez v. Netflix, Inc.,*
   162 Cal. App. 4th 43 (2008) ................................................................ 13

*Churchill Vill. v. GE,*
   361 F.3d 566 (9th Cir. 2004) ............................................................. 12

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996) ............................................................ 13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ........................................................... 12

*In re Chambers Dev. Sec. Litig.,*
   912 F. Supp. 822 (W.D. Pa. 1995) ..................................................... 11

*In re Lorazepam & Clorazepate Anittrust Litig.,*
  2003 WL 22037741 (D.D.C. June 16, 2003) ..................................... 11

*In re M.L. Stern Overtime Litig. (JMA),*
   No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ......................................................................................... 9

*Officers for Justice v. Civil Serv. Com.,*
   688 F.2d 615 (9th Cir. 1982) ............................................................... 9

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................. 11

*Rodriguez v. W. Publ'g,*
   563 F.3d 948 (9th Cir. 2009) ............................................................... 9

*Vasquez v. Coast Valley Roofing, Inc.,*
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) .............................................. 9


**State Statutes**

28 C.F.R. § 0.45(k) (2013) ..................................................................... 11

Fed. R. Civ. P. 23(e)(1) .......................................................................... 12

ii

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**

**PARTIAL CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Plaintiffs respectfully request that the Court preliminarily approve the parties' Agreement Regarding Procedures for Notifying and Reopening Cases of *Franco* Class Members Who Have Received Final Orders of Removal ("Reopening Settlement"). Achieved after more than a year of litigation and, then, extensive arms-length negotiations, the Reopening Settlement provides significant relief for numerous Class Members who were ordered removed without the benefit of the *Franco* protections ordered by this Court.

Most importantly for purposes of this Court's assessment of the fairness of the settlement, the Reopening Settlement provides significant relief in contrast to the Government's litigation position that its beneficiaries are entitled to *no* relief. Further, the relief obtained is significantly more protective than the relief recommended by the Special Master. Dkt. 709. The Court should grant Plaintiffs' motion for preliminary approval of the Reopening Settlement.

## II.   BACKGROUND TO THE REOPENING SETTLEMENT

The underlying dispute that this Settlement resolves concerns the fate of hundreds of individuals ordered removed *after* the Court certified the class in November 2011, but *before* the Final Implementation Plan was put into effect in January of this year. The Court issued two preliminary injunctions requiring the provision of Qualified Representatives and holding that family members generally could not serve in that role on December 27, 2010,Dkt. 107, and May 4, 2011, Dkt. 215, respectively. Each of these orders also required Defendants to hold bond hearings for class members detained for longer than six months, as did a third preliminary injunction issued on August 2, 2011 Dkt. 285.

The Court certified a class on November 21, 2011, Dkt. 348, and ordered the parties to utilize certain procedures for identifying class members. Defendants

1

1   argued, unsuccessfully, that the Court's criteria for identifying class members were

2   too broad. Dkt. 455; Dkt. 592 at 29-34. For that reason, and because the Court's

3   certification order did not order class-wide relief, the Government asserted that it

4   had no obligation to apply the rules set forth in the preliminary injunctions to other

5   class members. As a result, from November 2011 until May 2013, Defendants

6   continued to conduct removal proceedings involving class members without

7   providing legal representation to any of them.[1]

8        The Court entered its historic Summary Judgment and Permanent Injunction

9   orders on April 23, 2013. That Permanent Injunction required the Government to

10   provide free legal representation to all Sub-Class One members (*i.e.*, individuals

11   who are not competent to represent themselves in their immigration proceedings).

12   Dkt. 593. That Injunction therefore required Defendants to provide representation

13   for individuals not competent to represent themselves, but did not set forth rules

14   for how to determine whether an individual was not competent.[2]

15        After further briefing on that issue, the Court ordered the parties to develop

16   plans for a competency determination system with the assistance of a Special

17   Master. Defendants implemented certain aspects of a competency determination

18   system on their own (known as the "Phase One Guidance") no sooner than August

19   2013. *See* Dkt. 660 at 13 n.13. While that Guidance included some elements of the

20   system that the Court ultimately adopted, it differed in some respects, including by

21   using a different (and narrower) definition of pro se competency and adopting

22   fewer procedural protections than those the Court ultimately ordered. Thus, during

23   the time period from April 2013 until the Court's Final Implementation Plan order

24   on October 29, 2014, Defendants continued to issue removal orders against

25   _____

    [1]    This dynamic was not lost on the Court. *See* Dkt. 285 at 11 ("Certainly,
26   Defendants' voluntary compliance with the Court's prior orders would have
    promoted judicial economy and efficiency in this case.").
27   [2]    Plaintiffs explicitly asked that the Court address that question at a later date.
    *See* 398-1 at 1 n.1.
28

                                    2

1    numerous class members without providing them the procedural protections that

2    the Court's ruling ultimately required.

3          The Court entered its Implementation Plan order on October 29, 2014. Dkt.

4    786. That order created newly-narrowed criteria for determining class membership.

5    *Id*. at 6. This Court also ordered Defendants to comply fully with the terms of its

6    order within 90 days. *Id.* at 2, 11, 12.

7          As this history reveals, the Government's refusal to voluntarily implement

8    the procedural protections ordered in this Court's trio of preliminary injunctions

9    directly harmed many Class Members who had to litigate their cases prior to this

10   Court's Permanent Injunction. As a direct result, numerous Class Members were

11   ordered removed from this country without having received the process to which

12   they were legally entitled. Some of these Class Members may have been

13   incompetent to represent themselves and thus entitled to legal representation under

14   the Permanent Injunction, but they were ordered removed without that legal

15   representation.

16         Moreover, even after April 23, 2013, many Class Members were ordered

17   removed without the benefit of the competency determination procedures that the

18   Court eventually ordered in its Implementation Plan order. In some cases the

19   immigration courts utilized no consistent competency determination system during

20   that time period. And many Class Members were ordered removed during that

21   period without the protections provide for by the Phase One Guidance. [3]  These

22   Class Members were deprived of relief because the immigration system was not

23   

---

24   [3]      Even though the Phase One Guidance did not contain all the elements the

25   Court ultimately ordered in the implementation plan, the Parties have agreed that
     those Class members who received the protections as provided in the Phase One

26   Guidance are not entitled to the protections provided in the reopening agreement,
     given the difficulty in determining, on a file-by-file basis, whether the procedures

27   utilized in those cases differed materially from those required by the

28   Implementation Plan order.

1    yet in compliance with the Rehabilitation Act.

2          Plaintiffs brought this problem to the Court's attention shortly after the

3    Court entered the Permanent Injunction. However, because the Government took

4    the position that it had no obligation to provide relief to individuals already ordered

5    removed, its initial plan to implement the Permanent Injunction, filed in June 2013,

6    provided no relief whatsoever for Class Members who were unlawfully removed

7    prior to the Permanent Injunction.  Dkt. 611. On June 21, 2013, Plaintiffs objected

8    and filed a Proposed Order requesting that the Court order a "System for

9    Reopening of Proceedings," which would be "designed to remedy any harm caused

10   by the unlawful removal of Class Members prior to entry of this Order." Dkt. 612;

11   Dkt. 612-1, at 2; *id.* at 15-18.

12         In a July 5, 2013 filing, the Government objected to Plaintiff's proposed

13   order and argued that "Plaintiffs' proposed 'system for reopening of proceedings'

14   seeks retrospective relief that is not before this Court and is not justiciable" and

15   "[w]hile these individuals may move the immigration court or Board of

16   Immigration Appeals to reopen their removal proceedings or reconsider orders

17   entered . . . ICE's decision to join in a motion to reopen is a purely discretionary

18   determination that is not subject to judicial review." Dkt. 618 at 27 n.19.

19   Defendants argued that Plaintiffs were "seeking to create a new subclass,

20   'Removal Order Class Members,' that does not fall within their main class

21   definition." *Id.*

22         Since the summer of 2013, the parties have extensively litigated the issue of

23   what remedy—if any—should be afforded to Class Members who had been

24   ordered removed prior to the Court's Permanent Injunction. They have filed a

25   number of briefs to the Court and Special Master on the issue, *see*, *e.g.*, Dkt. 688,

26   689, 698, 703, 705, 708. They have also participated in numerous in-person and

27   telephonic meet and confer and settlement discussions.

28

4

## III.     THE TERMS OF THE REOPENING SETTLEMENT.

Plaintiffs are pleased to report that the parties have now executed the Reopening Settlement,[4] which — if so ordered by this Court — will provide relief for Class Members who were previously ordered removed by requiring the Government to notify eligible Class Members about the relief the Settlement provides, allowing eligible Class Members to reopen their immigration proceedings so that their competency may be assessed under current procedures, and having U.S. Immigration and Customs Enforcement ("ICE") facilitate the return of certain of these individuals.

Plaintiffs' counsel firmly believe that the Reopening Settlement is an exceptional result for the previously removed Class Members, as it provides them the opportunity to reopen their cases and have their cases proceed under this Court's Permanent Injunction, without being subject to difficult-to-satisfy timeliness or numerical limitations built into the usual immigration court reopening procedures. The Reopening Settlement, of course, provides infinitely more relief than what Removal Order Class Members would have received had the Government prevailed in its litigation position as of July 5, 2013, when it opposed this request in its entirety. And as will be described in more detail below, the Reopening Settlement also provides the Class with significantly more relief than the Special Master had recommended to the Court as recently as March 14, 2014.

The Court should preliminarily approve the Reopening Settlement because it represents significant relief for eligible Class Members while avoiding the delay and uncertainty associated with continuing to litigate this issue.

The Reopening Settlement provides relief for a subset of the Class, defined in the Reopening Settlement as "Removal Order Class Members." To qualify as a Removal Order Class Member, individuals must have been identified by the parties

---

[4]     The Reopening Settlement and associated documents are attached as Exhibit 1 to this motion.

5

1    pursuant to their biweekly notices, Dkt. 360, and received a final order of removal

2    between November 21, 2011 (the date of the Class Certification Order, Dkt. 348)

3    and the effective date of the Implementation Plan. *See* Exh. 1 at Sections I.B, I.K.

4        The Reopening Settlement requires Defendants to screen the files of Class

5    Members in order to determine if they are Removal Order Class Members.

6    Reopening Settlement, Sections VI; X.C.1. Subject to certain narrow exceptions,

7    Removal Order Class Members must meet the criteria set forth in the newly-

8    narrowed Class Membership criteria, ordered by the Court in the Implementation

9    Plan Order, in order to qualify for relief. Moreover, to qualify for relief, Removal

10   Order Class Members must meet one of the following additional criteria:

11       (1) remained detained and unrepresented when they received orders of
12       removal before an Immigration Judge without one of the following: (a) the
         safeguards set forth in Section III of the Court's Implementation Plan Order,
13       Dkt. 786, or (b) the procedural safeguards implemented pursuant to
         Defendants' Phase I Guidance, *see* Dkt. 663-4; *or* (2) were released from
14       detention following an Immigration Judge's determination that they were not
         competent to represent themselves (*i.e.*, 'Released Sub-Class One
15       Members') and remained unrepresented when they received orders of
16       removal before an Immigration Judge.

17

18   *Id.* at Section I.B. Finally, the Settlement allows for the parties to separately

19   identify certain individuals to be eligible for relief as Removal Order Class

20   Members, identified in the Settlement as "Private Agreement Removal Order Class

21   Members." *See id.* at Sections I.E, VI.D.[5]

22       The Settlement provides for two different avenues of relief for individuals

23   with final orders of removal: (1) the Joint Motion to Reopen Procedures, *see id.* at

24   _____

25   [5]    Private Agreement individuals are individuals who came to be known to
     Plaintiffs' counsel (whether through discovery or contact from the individuals or
26   their families) who would not have qualified for the joint motion because of the
     timing of their removal order, but who were clearly eligible for relief under this
27   Court's Permanent Injunction, and therefore should not have had to go through the
28   unilateral motion procedures.

1    Section VIII; and (2) the Unilateral Motion to Reopen Procedures, *see id.* at X.

2         The Joint Motion to Reopen procedure is the most favorable available

3    process under the Settlement, insofar as it involves ICE joining in the motion to

4    reopen the case, thus greatly increasing the likelihood that such motion will be

5    granted. Four categories of Removal Order Class Members qualify for the Joint

6    Motion to Reopen Procedures: (1) those Removal Order Class Members who

7    received final orders of removal after April 23, 2013, who were identified as

8    qualifying pursuant to the provisions described *supra*; (2) all Released Sub-Class

9    One Members; (3) all Private Agreement Removal Order Class Members; and (4)

10   all Removal Order Class Members who submit evidence to the Defendants that

11   they were determined to be incompetent by any administrative or judicial tribunal

12   in the United States within the three years preceding the date they had the final

13   order of removal entered in their proceeding. *See id.* at Section VII. Under the Joint

14   Motion to Reopen Procedures, qualifying Removal Order Class Members may

15   request that ICE join in a motion to reopen their immigration proceedings. ICE

16   agrees to favorably exercise its discretion to join in such motion to reopen, unless

17   certain limited national security-related exceptions apply.  *Id.* at Section VIII,

18   VIII.A.

19        The Unilateral Motion to Reopen Procedures still provide significant relief,

20   insofar as they permit qualifying individuals to reopen their proceedings even if

21   they would otherwise be barred from receiving that relief. However, ICE may

22   oppose those motions based on certain specified grounds. That relief applies to the

23   following group:

24

25

26

27

28

7

> Any individual who was detained and unrepresented in Arizona, California,
> and Washington on or after November 21, 2011 (the date the Court certified
> the class in this case), remained detained and unrepresented when they
> received an order of removal before an Immigration Judge, and received
> neither (a) the safeguards set forth in Section III of the Court's
> Implementation Plan Order, Dkt. 786, nor (b) the procedural safeguards
> implemented pursuant to Defendants' Phase I Guidance, *see* Dkt. 663-4 . . . .

*Id.* at Section X. Under the Unilateral Motion to Reopen Procedures, the individual

may file a motion to reopen his or her immigration proceedings, in which he or she

must demonstrate that they meet the current Class Membership criteria, Dkt. 786 at

6-7, and that they were not represented at the time the removal order was entered

before an immigration judge, and must set forth an argument that the individual

has plausible grounds for relief and/or a plausible defense from removal. *See* Exh.

1 at Section X.A-B. ICE may oppose a unilateral motion to reopen filed under this

Settlement on limited grounds, which include that the motion would be futile. *See*

Exh. 1 at Section X.C.

The Reopening Settlement requires, and the Court has already ordered, the

tolling of the time and numerical limitations to motions to reopen found in the

immigration statutes and regulations, such that motions filed pursuant to the

Reopening Settlement are not subject to such limitations, so long as they are filed

within 18 months of a Final Approval Hearing for the Reopening Settlement. *See*

*id.* at Section XII; XV; *see also* Dkt. 786 at 26. Defendant ICE also agrees to

facilitate the return of all Removal Order Class Members whose motions to reopen

pursuant to the Reopening Settlement are granted, and further agrees to pay for the

reasonable travel expenses for certain Removal Order Class Members whose joint

motions to reopen are granted and for up to 100 additional individuals. *See id.* at

Section XVI.

To allow the greatest number of potentially affected Class Members to

receive the benefits of this agreement, the Settlement provides for a comprehensive

Notice Program to all Class Members. Specifically, the Settlement provides for

1    four different types of notices: (1) Summary Class Notice, distributed to all Class

2    Members by US Mail, to Legal Orientation Providers and on Defendants'

3    websites; (2) the Detention Facility Summary Notice, to be posted in detention

4    facilities; (3) the Joint Motion Notice and Instructions and (4) Unilateral Motion

5    Notice and Instructions, both of which will be mailed to eligible Class Members

6    and posted on Defendants' websites.

7    **IV.      THE COURT SHOULD PRELIMINARILY APPROVE THE**

8    **REOPENING SETTLEMENT BECAUSE IT MEETS THE**

9    **STANDARDS OF RULE 23(e).**

10         The Court should preliminarily approve the Reopening Settlement because it

11   easily "falls within the range of possible judicial approval." *In re M.L. Stern*

12   *Overtime Litig.* (JMA), No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS

13   31650, at *9-10 (S.D. Cal. Apr. 13, 2009) (internal quotation marks and citation

14   omitted). When reviewing a settlement for preliminary approval, the court may

15   consider the same factors that it will balance at that Fairness Hearing, *see, e.g.,*

16   *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124-26 (E.D. Cal.

17   2009), which include: (1) "the strength of plaintiffs' case;" (2) "the risk, expense,

18   complexity, and likely duration of further litigation;" (3) "the risk of maintaining

19   class action status throughout the trial;" (4) "the amount offered in settlement;" (5)

20   "the extent of discovery completed, and the stage of the proceedings;" and (6) "the

21   experience and views of counsel." *Officers for Justice v. Civil Serv. Comm'n of*

22   *City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  The Court

23   should presume the fairness of arms'-length settlements reached by experienced

24   counsel. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We

25   put a good deal of stock in the product of an arms-length, non-collusive, negotiated

26   resolution.").

27

28

## A.     The Reopening Settlement Provides the Class with Substantial Benefits and Avoids the Risk and Uncertainty of Litigation.

The Reopening Settlement resolves a substantial and difficult set of disputed questions of law and fact regarding the treatment of vulnerable Class Members who were ordered removed from this country before Plaintiffs had achieved their ultimate victory in this action. The parties have been litigating the scope of the remedy for previously removed Class Members for over 18 months. Removal Order Class Members are people who are at significant risk of never achieving any relief because they have already been ordered removed, and in many instances have already been sent back to their home countries, where they often suffer acutely due to their mental disabilities and lack of support networks. This settlement offers them another opportunity to obtain the rights to which they were entitled by federal law prior to their removal. For Class Members who have already been removed, the Settlement allows such individuals to return to the United States (and, in some cases, at Government expense) for their reopened proceedings, should their motion to reopen be granted.

The settlement guarantees Removal Order Class Members significant benefits, going beyond what the Special Master recommended that this Court adopt as a form of relief for that group in several significant respects. *See* Dkt. 709 at 37. These include the provision of *joint* motions (i.e., where ICE joins the Removal Order Class Member's motion to reopen) for qualifying individuals, individualized notice to Class Members about the availability of this relief, an 18 month (rather than 180 day) window to file motions to reopen, a requirement that Defendants themselves review Class Member files to identify eligible Class Members, and a limitation on the conditions under which the Government can oppose motions to reopen on the ground that reopening would be futile (i.e., on "prejudice" grounds).

The certain benefits of the Reopening Settlement, versus the risks of what further litigation before the Special Master and the Court would yield, strongly

1  support preliminary approval of the Reopening Settlement. *See In re Chambers*

2  *Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) ("A very large bird in the

3  hand in this litigation is surely worth more than whatever birds are lurking in the

4  bushes."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007)

5  ("Absent a settlement, Defendants would have defended [this lawsuit] vigorously,

6  with potential success and no recovery of any kind for Plaintiffs.").

7       **B.      The Reopening Settlement Is the Product of Arms-Length**

8                **Negotiations Between Well-Informed and Experienced Counsel.**

9       Counsel for both parties have extensive experience with similar actions,

10  which further supports preliminary approval of the Reopening Settlement.

11  Plaintiffs' counsel has substantial experience with class actions, civil rights

12  actions, complex litigation and immigration litigation, including litigation on

13  behalf of individuals with mental disabilities. Certainly no one other has more

14  experience defending lawsuits alleging constitutional and statutory violations

15  related to ICE and EOIR than Defendants' counsel at the United States Department

16  of Justice. *See* 28 C.F.R. § 0.45(k).[6] The opinion of the parties' experienced

17  counsel "should be afforded substantial consideration" in reviewing this

18  Settlement. *See In re Lorazepam & Clorazepate Anittrust Litig.*, 2003 WL

19  22037741, at *6 (D.D.C. June 16, 2003).

20       Counsel for both parties were well-informed prior to the settlement.  The

21  parties have engaged in extensive fact discovery, including written discovery, the

22  production of files, transcripts and database information for Class Members, and

23  numerous depositions. The parties have been actively litigating the appropriate

24  remedy to be afforded to Class Members ordered removed since July 2013, and are

25  extremely familiar with the issues.[7] The parties' significant litigation and

26  

_____

27  [6]      *See also* http://www.justice.gov/civil/oil/dcs/oil-dcs.html.

28  [7]      *See* Dkts. 612, 688, 689, 698, 702, 703, 705, 708, 718 at 9-15, 719 at 14-24, 727 at 12-25, 728 at 9-15.

1  negotiation over these issues further supports preliminary approval of the

2  Reopening Settlement.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th

3  Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest

4  that the settlement was negotiated in haste or in the absence of information

5  illuminating the value of plaintiffs' claims").

6      **C.    The Proposed Notice Plan Provides Reasonable Notice to Class**

7          **Members.**

8      Under Federal Rule of Civil Procedure 23(e)(1), the Court must "direct

9  notice in a reasonable manner to all class members who would be bound" by the

10  proposed settlement. Notice is satisfactory if it "generally describes the terms of

11  the settlement in sufficient detail to alert those with adverse viewpoints to

12  investigate and come forward and be heard." *Churchill Vill. v. GE*, 361 F.3d 566,

13  575 (9th Cir. 2004). The Notice Plan in the Reopening Settlement easily fulfills

14  these requirements. *See* Exh. 1 at Section III.

15      *First,* the Summary Class Notice and Detention Facility Summary Notice

16  will be distributed by:  posting the Detention Facility Summary Notice at

17  immigration detention facilities in California, Arizona, and Washington, mailing

18  the Summary Class Notice to all Removal Order Class Members at their last

19  known address (if any); providing the Summary Class Notice to all Legal

20  Orientation Providers with offices in California, Arizona, and Washington, and

21  posting the Summary Class notice on various websites maintained by Defendants

22  and Plaintiffs' organizations. The notices will include information regarding the

23  eligibility requirements and procedures for relief for Removal Order Class

24  Members such that all Class Members will be able to make an informed decision

25  whether to object to the Reopening Settlement. *See* Sub-exhs. 1-B, 1-C. These

26  notices also direct Class Members and Removal Order Class Members to websites

27  containing the full Settlement, should Class Members or Removal Order Class

28  Members require more information to make an informed choice regarding whether

1    to object. "Using a summary notice that direct[s] the class member wanting more

2    information to a Web site containing a more detailed notice, and provide[s]

3    hyperlinks to that Web site, [is] a perfectly acceptable manner of giving notice. . .

4    ." *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 58 (2008).[8]

5            *Second,* the Joint Motion Notice and Instructions and Unilateral Motion

6    Notice and Instructions provide additional notice to the Removal Order Class

7    Members, who are most likely to be impacted by the Settlement, and will also be

8    available on Defendants' websites. These notices provide even more detailed

9    information regarding the two forms of relief available under the Settlement, along

10   with eligibility criteria and precisely how the Removal Order Class Member may

11   avail themselves of the relief. *See* Sub-exhs. 1-D, 1-E.

12   **V.      CONCLUSION**

13           For the foregoing reasons, Plaintiffs respectfully request that the Court

14   enter an Order:

15       A.    Preliminarily approving the Settlement as falling within the range of

16             reasonableness;

17       B.    Preliminarily approving the Proposed Notice Plan, the Summary

18             Notice, Joint Motion Notice and Instructions, and Unilateral Motion

19             Notice and Instructions described in Section III of the Settlement, and

20             attached thereto as Exhibits 1, 1-B, 1-D, 1-E;

21       C.    Setting the Notice Date, *i.e.* the date by which Defendants must

22             comply with the Notice Program, as forty-five (45) days after the

23             "Identification Deadline," as defined in Section I.L of the Agreement;[9]

24

---

25   [8]      California courts frequently rely on federal case law for the procedures and

26   standards for approval of class settlements. *Dunk v. Ford Motor Co.*, 48 Cal. App.
     4th 1794, 1801 n.7 (1996).

27   [9]      The "Identification Deadline" is defined as the date ninety (90) days after

28   the Court grants Preliminary Approval of this Agreement, absent an extension

                                                                      (cont'd)

                                        13

D.  Setting the Objection Date as twenty-one (21) days before the Fairness Hearing;

E.  Setting the date and time of the Fairness Hearing to be held sixty (60) days after the Notice Date, or as soon thereafter as the matter may be heard; and

F.  Granting any further relief the Court deems just and proper.

Respectfully submitted,

Dated:  February 27, 2015            By:   /s/ Ahilan T. Arulanantham
                                         AHILAN T. ARULANANTHAM
                                         aarulanantham@aclusocal.org
                                         Counsel for Plaintiffs

granted by the Court or agreed to by the Parties. (Reopening Settlement, Section I.L)

14