AHILAN T. ARULANANTHAM (State Bar No. 237841)
aarulanantham@aclusocal.org
CARMEN IGUINA (State Bar No. 277369)
ciguina@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5211
Facsimile: (213) 417-2211

MICHAEL H. STEINBERG (State Bar No. 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Plaintiffs-Petitioners*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, et al., <br><br> *Plaintiffs-Petitioners,* <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, et al., <br><br> *Defendants-Respondents.* | Case No. 10-CV-02211 DMG (DTBx) <br><br> **DECLARATION OF JUDY LONDON IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** <br><br> Honorable Dolly M. Gee |

JUDY LONDON (State Bar No. 149431)
jlondon@publiccounsel.org
TALIA INLENDER (State Bar No. 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (State Bar No. JR-1214)
JRabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

BARDIS VAKILI (State Bar No. 247783)
bvakili@aclusandiego.org
DAVID LOY (SBN 229235)
davidloy@aclusandiego.org
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

JAMES PREIS (State Bar No. 82690)
jpreis@mhas-la.org
MENTAL HEALTH ADVOCACY SERVICES
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone: (213) 389-2077
Facsimile: (213) 389-2595

MATT ADAMS (State Bar No. 28287)
matt@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

JAMES LYALL (State Bar No. 330045)
jlyall@acluaz.org
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 773-6001
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs-Petitioner*

# DECLARATION OF JUDY LONDON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

I, Judy London, declare and state as follows:

1. I have personal knowledge of the facts in this Declaration and can competently testify to them if called as a witness.

2. I am employed as a directing attorney by Public Counsel in Los Angeles, California. I am admitted to practice law in the State of California, the United States Central District of California Court, and the United States Court of Appeals for the Ninth Circuit. I am co-counsel for Plaintiffs in this litigation.

3. I received my J.D. from UCLA School of Law in 1990. From 1994 to 1996 I was employed as an attorney with the Central American Resource Center ("CARECEN") in Los Angeles, California, and from 1996-2000 employed as CARECEN's legal director.

4. In my six years at CARECEN, I would estimate that I provided legal representation to more than 120 people seeking relief before the Executive Office for Immigration Review, and assisted hundreds more seeking relief before U.S. Citizenship and Immigration Services and its legacy agency, the Immigration and Naturalization Service. I also supervised a team of attorneys providing direct representation, including an attorney who provided representation to detained immigrants and regularly conducted legal rights presentations to immigrant detainees at detention facilities. I also participated in class action litigation, and had a co-counsel role in *Turcios v. Reno*, which challenged the government's failure to issue employment authorization to asylum seekers as required by law, and *CARECEN v. Reno*, which challenged conditions of immigrant detention in Southern California. Both cases resulted in settlement.

5. From 2000 to 2002, I operated my own law firm, providing legal representation to persons seeking relief from removal before the Executive Office

of Immigration Review. From 2002 to the present, I have been employed as the directing attorney of Public Counsel's Immigrants' Rights Project.

6. In my role as directing attorney, I supervise a staff of 12 full time attorneys and five support staff. All of the attorneys practice immigration law. In addition to supervising staff, I also manage my own caseload, representing clients before U.S. Citizenship and Immigration Services, the Executive Office for Immigration Review, the Board of Immigration Appeals, and the U.S. Court of Appeals for the Ninth Circuit, and train and mentor pro bono lawyers providing legal representation to both detained and non-detained clients in removal proceedings. Since 2007, I have also been employed as an adjunct professor at UCLA School of Law where I teach a clinical immigration law course in which students provide pro bono representation to asylum applicants. Attached as Sub-Exhibit A is a true and correct copy of my resume, which sets forth my experience in greater detail.

7. I have particular expertise in immigration law. My over 20 years of experience representing both detained and non-detained clients in immigration court have allowed me to represent Plaintiffs in an efficient manner. For example, I am very familiar with immigration court rules and procedures, so I already had a strong understanding of what "safeguards" the government had in place for immigrants with serious mental disabilities, such that I did not have to familiarize myself with them for this case. I also knew the legal issues relevant to mandatory detention, so did not need to research and master those rules from scratch for the detention-related claims we raised here.

8. My co-counsel and colleague, Talia Inlender, is also an attorney at Public Counsel in Los Angeles, California. I am her supervisor within the Immigrants' Rights Project at Public Counsel. Ms. Inlender is admitted to practice law in the State of California, the United States Central District of California Court,

the U.S. Court of Appeals for the Ninth Circuit, and the United States Supreme Court. She is co-counsel on behalf of Plaintiffs in this litigation. Ms. Inlender also represented the lead plaintiff, Jose Antonio Franco-Gonzalez, in his removal proceedings before the Immigration Court in Los Angeles, California.

9. Ms. Inlender received her J.D. from Yale Law School in 2007. During her time in law school, she served as a co-director of the Immigration Legal Services Clinic, where she represented immigrants before the Executive Office for Immigration Review as well as before U.S. Citizenship and Immigration Services. She also authored two published papers on immigration law: "The Imperfect Legacy of *Gomez v. I.N.S.*: Using Social Perceptions to Adjudicate Social Group Claims," 20 Geo. Immigr. L. J. 681 (Summer 2006) and "Status Quo or Sixth Ground?: Adjudicating Gender Asylum Claims," in Migrations and Mobilities: Gender, Citizenship, and Borders (Seyla Benhabib & Judith Resnik eds., 2009).

10. From 2007-2008, Ms. Inlender clerked for the Hon. Stephen R. Reinhardt, on the U.S. Court of Appeals for the Ninth Circuit.

11. Following her clerkship in 2008, Ms. Inlender was awarded a two-year Equal Justice Works Fellowship at Public Counsel, where she developed a project to provide and expand access to legal services for detained immigrants in the Los Angeles area. She transitioned to her current staff attorney position at Public Counsel in October 2010. In her time as an attorney at Public Counsel, Ms. Inlender has provided direct representation to more than 30 people and facilitated the representation of more than 120 people by pro bono attorneys, whom she mentors and trains. Ms. Inlender has taught more than 1,500 immigration detainees in her weekly Legal Orientation Program over the years, and has provided pro se help to hundreds of immigration detainees representing themselves in their proceedings. In addition to litigating her own cases, from 2012-2014, Ms. Inlender was responsible for supervising an Equal Justice Works Fellow with her

3

immigration caseload. For the past six years, Ms. Inlender has also supervised law students in the UCLA School of Law on an asylum case each spring semester. Attached hereto as Sub-Exhibit B is a true and correct copy of Ms. Inlender's resume, which sets forth her experience in greater detail.

12. Ms. Inlender has particular expertise in immigration law. Her experience in representing detained clients in immigration cases has made it possible for her to represent Plaintiffs in an efficient manner. Like me, Ms. Inlender was already familiar with immigration court rules and procedures, so she knew what "safeguards" the government arguably had in place for immigrants with serious mental disabilities and did not need to learn these rules afresh. Ms. Inlender was also already familiar with the law surrounding mandatory detention, which made it possible for her to reduce her research and writing time on that topic.

13. While I believe Ms. Inlender would qualify as an attorney with specialized knowledge and skill for purposes of the Equal Access to Justice Act, I have determined that we will not seek enhanced rates for her work in this case, out of an abundance of caution to ensure that the fees we seek are reasonable.

14. As set forth in Plaintiffs' Motion for Attorneys' Fees, the fees in this case are governed by two separate statutes: the Rehabilitation Act and the Equal Access to Justice Act (EAJA). With respect to work performed in this case *prior to* its filing (Period 1: November 2009 – March, 25, 2010), all of Public Counsel's work during this period is compensable under EAJA because the work we did related only to Mr. Franco's detention claim. The methodology for allocating hours worked on this case *since* its date of filing - March 26, 2010 - between the Rehabilitation Act and the EAJA is explained in Sub-Exhibit E to the Declaration of Ahilan Arulanantham in Support of Plaintiffs' Motion for Attorneys' Fees. I utilized that methodology to allocate the hours Public Counsel attorneys spent in this case between the two statutes.

4

15. A summary of the hours, rates, and fees sought for all periods in the case, utilizing the allocation methodology described above, is attached as Sub-Exhibit C. Based on the calculations included therein, the combined fees sought by Public Counsel total: $855,056.05. The combined fees which we have waived in the exercise of billing judgment total: $77,442.49. The individual time entries from which the summary is composed are described below and attached as Sub-Exhibits D, E, F, and G to this declaration.

16. Attached as Sub-Exhibit D to this Declaration are true and correct copies of my itemized time records for legal services in this matter. Attached as Sub-Exhibit E to this Declaration are true and correct copies of Ms. Inlender's itemized time records for legal services in this matter. These records reflect time spent in preparing and filing the initial habeas petition and subsequent complaints, litigating the various motions, and preparing the motion for attorney fees. As is the practice in Public Counsel's office, the itemization is based on records that Ms. Inlender and I kept contemporaneously with the hours we incurred on this case.

17. I have reviewed all entries in Sub-Exhibit D to ensure the accuracy of my records. My total time on this case through June 30, 2015 amounts to 114.9 hours. However, I am subtracting 20.3 hours of my time as reflected in the Billing Judgment Exclusions set out in Sub-Exhibit D. These hours include otherwise compensable time for phone calls in which both my co-counsel, Ms. Inlender, and I participated, as well as media work that was necessary to publicize Plaintiffs' efforts. Therefore, I am seeking 94.6 hours of compensable time for my work on this case over the last five years.

18. I have reviewed all entries in Sub-Exhibit E, as has Ms. Inlender, to ensure their accuracy. Ms. Inlender's total time on this case through June 30, 2015 amounts to 1,644.13 hours. However, she is subtracting 14.6 hours of her time as reflected in the Billing Judgment Exclusions set out in Sub-Exhibit E. These hours

include otherwise compensable time for some of her work on amicus briefs in support of a Named Plaintiff and another class member, as well as media work that was necessary to publicize Plaintiffs' efforts. Therefore, Ms. Inlender is seeking 1,629.53 hours of compensable time for her work on this case over the last five years.

19. In addition to excluding recorded hours despite the fact that they are compensable, both Ms. Inlender and I exercised significant billing judgment by not recording excess time—for example, several client meetings when Ms. Inlender was at the detention center for other purposes as well and calls to other counsel for consultation—so that the billing records are almost entirely related to core litigation tasks. We have also only sought hours for one Public Counsel attorney, Ms. Inlender, on calls in which both Ms. Inlender and I participated, despite the fact that we could have sought fees for both attorneys on these calls. Moreover, we elected to bill for Ms. Inlender's time, despite the fact that her billing rate is lower than mine, in order to maintain the reasonableness of our overall request. The records have also been redacted as necessary to protect attorney-client privilege and/or work product.

20. The standard EAJA fee rates were drawn from the United States Court of Appeals for the Ninth Circuit publicly available website at: http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039. According to that website, the following are the statutory maximum EAJA fee rates for 2010-2015, adjusted for increases in cost of living:
- 2010: $175.06
- 2011: $180.59
- 2012: $184.32
- 2013: $187.02
- 2014: $190.06

6

- 2015 (1ˢᵗ half): $189.68

21. Based on my specialized skill and experience described above, and the necessity of that specialized skill and experience to the positive resolution of this case, I am seeking enhanced rates for my work performed under EAJA. I am informed and believe, based upon the declarations of Carol Sobel and other co-counsel filed herewith, that a reasonable market rate in the Central District of California for an attorney with my experience and qualifications during the years that I performed work on this case are as follows:

- 2010: $600.00
- 2011: $630.00
- 2012: $680.00

22. It is my understanding that both Ms. Inlender and I are entitled to market rates for our work performed under the Rehabilitation Act. I am informed and believe, based upon the declarations of Carol Sobel and other co-counsel filed herewith, that a reasonable market rate in the Central District of California for an attorney with my experience and qualifications in 2015 would be $775, and that a reasonable market rate in the Central District of California for an attorney with Ms. Inlender's experience and qualifications in 2015 would be $535.

23. Based on the calculations contained in Sub-Exhibits C, D, and E, the combined fees for my work on this case with enhanced EAJA rates total: $67,618.43. The combined fees for Ms. Inlender's work on this case total: $730,890.75.

24. I have also reviewed the contemporaneous time records of Thea Bernas, attached as Sub-Exhibit F. Ms. Bernas was a legal fellow at Public Counsel from 2011–2012. Ms. Bernas graduated from law school in 2011. As reflected in her timesheets, Ms. Bernas performed a total of 3.75 hours of work related to this case: 1.5 hours in December 2011 and 2.25 hours between January and March

7

2012. All of this work, including observing and reporting on a class member's immigration hearings, is compensable under the Rehabilitation Act. Nonetheless, pursuant to the allocation methodology that we have adopted for this case, we seek compensation for 81% of her work at the market rate under the Rehabilitation Act, and 19% of her work at the EAJA rate. I am informed and believe, based on the declaration of Carol Sobel and co-counsel filed herewith, that Ms. Bernas' market rate is: $450, while the EAJA rate for 2011 is $180.59, and the EAJA rate for 2012 is $184.32. Based on the calculations contained in Sub-Exhibits C and F, the combined fees for Ms. Bernas's work on this case total: $1,497.14.

25. I have also reviewed the contemporaneous time records of the law clerks and volunteer paralegals who worked with Public Counsel on this case; these records are attached at Sub-Exhibit G. These individuals include Dana Tykocinski, Elizabeth Kelley, Yanira Lemus, Kelly Starcevich, Samir Patel, and Ivan Zogovic. These individuals worked a combined total of 213.85 hours on this matter. Based on the calculations contained in Sub-Exhibits C and G, the combined fees for these individuals total: $55,481.61. Although we are entitled to seek this amount in compensation, in the exercise of billing judgment, we do not do so here.

26. My office incurred $3,689.67 in expenses while litigating this case, including travel expenses for meetings with plaintiffs and class members in detention centers in California and Arizona, depositions in Arizona and Seattle, as well as meetings with the Special Master; postage costs for mailing of litigation materials; and court transcripts related to Mr. Franco's claim. Following is an itemization of those expenses, which are also attached at Sub-Exhibit H:

| Date | Expense | Amount |
| --- | --- | --- |
| 2/25/10 | Plea transcript of Mr. Franco criminal proceedings | $28.00 |
| 6/18/2010 | Travel Expenses (Judy London) – Plaintiff Investigation Trip, Arizona on June 12-15, 2010 | $903.46 |

8

|  |  |  |
|---|---|---|
|  | (Hotel, Car Rental, Plane Flight, Food) |  |
| 6/22/2010 | Travel Expenses (Talia Inlender) – Plaintiff Investigation Trip, Arizona on June 12-15, 2010 (Plane Flight) | $347.70 |
| 09/28/2010 | Travel Expenses (Talia Inlender) – Plaintiff Meeting and Court Observation in Otay Mesa on Sept. 17, 2010 (Mileage/Parking) | $156.00 |
| 11/03/2010 | Travel Expenses (Talia Inlender) – Plaintiff Meeting/Investigation in Mira Loma on October 22, 2010 (Mileage/Parking) | $77.00 |
| 5/4/2011 | Travel Expenses (Talia Inlender) – Plaintiff Meetings in Santa Ana on April 27, 2011 (Mileage/Parking) | $71.13 |
| 05/12/2011 | Court transcript of Mr. Franco's criminal proceedings | $20.00 |
| 07/05/2011 | Travel Expenses (Talia Inlender) – Travel to Arizona for Belous and 30(b)(6) deposition in July 2011 | $387.40 |
| 03/07/2012 | Travel Expenses (Luciane Yeh, volunteer interpreter) – Travel to Class Member Meeting in Theo Lacy on Dec. 6, 2011 and Jan. 5, 2012 (Mileage/Parking) | $65.83 |
| 08/30/2012 | Travel Expenses (Talia Inlender) – Plane Ticket to Seattle for LeCompte Deposition in Oct. 2012 | $377.60 |
| 11/05/2012 | UPS Postage – Shipping re LeCompte Deposition Exhibits | $309.27 |
| 11/15/2012 | Travel Expenses (Talia Inlender) – 2 Hotel Nights, Meals, and Parking for Seattle for LeCompte Deposition on Oct. 24-26, 2012 | $663.51 |
| 12/31/2013 | Travel Expenses (Talia Inlender) – Meeting with Special Master and Government in Otay Mesa on Dec. 17-19, 2013 (Train, Hotel, Meals) | $282.77 |

| TOTAL COSTS | | $3,689.67 |
|---|---|---|

I declare under penalty of perjury that the foregoing is true and correct. Executed on 30th day of July 2015 in Los Angeles, California,

*/s/ Judy London*
JUDY LONDON

10