AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclusocal.org
CARMEN IGUINA (SBN 277369)
ciguina@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5211
Facsimile: (213) 417-2211

MICHAEL H. STEINBERG (SBN 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Attorneys for Plaintiffs-Petitioners*
(Additional Counsel for Plaintiffs on Following Page)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO GONZALEZ, et al., <br><br> *Plaintiffs & Petitioners,* <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, et al., <br><br> *Defendants & Respondents.* <br> _____ | Case No. 10-CV-02211 DMG (DTBx) <br><br> **MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT AGREEMENT** <br><br> Hearing:  September 25, 2015 <br> Time:  10 a.m. <br> Courtroom:  7 <br><br> Honorable Dolly M. Gee |

JUDY LONDON (SBN 149431)
jlondon@publiccounsel.org
TALIA INLENDER (SBN 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (pro hac vice)
JRabinovitz@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

DAVID LOY (SBN 229235)
davidloy@aclusandiego.org
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
Post Office Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

JAMES PREIS (SBN 82690)
jpreis@mhas-la.org
MENTAL HEALTH ADVOCACY SERVICES
3255 Wilshire Boulevard, Suite 902
Los Angeles, California 90010
Telephone: (213) 389-2077
Facsimile: (213) 389-2595

MATT ADAMS (SBN 28287)
matt@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

JAMES LYALL (SBN 330045)
jlyall@acluaz.org
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 773-6001
Facsimile: (602) 650-1376

*Attorneys for Plaintiffs-Petitioners*

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND AND TERMS OF THE REOPENING
       SETTLEMENT AGREEMENT .................................................................. 2

III.   THE PARTIES HAVE SATISFIED THEIR OBLIGATIONS
       UNDER RULE 23(E)(1) ............................................................................ 6

IV.    THE REOPENING SETTLEMENT SHOULD BE APPROVED
       BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE ..................... 9

       A.    The Reopening Settlement Provides the Class with Substantial
             Benefits Immediately and Avoids the Risk and Uncertainty of
             Litigation. ...................................................................................... 11

       B.    The Reopening Settlement is the Product of Arms-Length
             Negotiations Between Well-Informed and Experienced Counsel After
             Extensive Discovery and Litigation……………………………......13

       C.    The Class Has Reacted Favorably to the Reopening Settlement........ 14

V.     PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES
       AND COSTS DOES NOT JUSTIFY REJECTING THE
       REOPENING SETTLEMENT…………………………………………..15

VI.    CONCLUSION .......................................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ..................................................... 12

*Churchill Vill.* v. *GE*,
   361 F.3d 566 (9th Cir. 2004) ............................................................. 7

*Hanlon* v. *Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 14

*Nat'l Rural Telecomm. Coop.* v. *DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................... 14, 15, 16

*Navarro* v. *Servisair*,
   2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 27, 2010) ................. 16

*Officers for Justice* v. *Civil Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) .................................................. 9, 10, 13

*Perez* v. *Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................ 12

*Rodriguez* v. *West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................... 13, 14

*Staton* v. *Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 10

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................... 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................... 16

*Zucker* v. *Occidental Petroleum Corp.*,
   192 F.3d 1323 (9th Cir. 1999) ......................................................... 15

**Other Authorities**

28 C.F.R. § 0.45(k) ........................................................................ 13

Fed. R. Civ. P. 16(a)(5) ................................................................ 10

Fed. R. Civ. P. 23(e) ................................................................. 1, 9

Fed. R. Civ. P. 23(e)(1) ............................................................. 6,7

Fed. R. Civ. P. 23(e)(2) ............................................................... 9

L.R. 16–15 ................................................................................... 10

L.R. 16–2.9 ................................................................................. 10

## MOTION FOR FINAL APPROVAL OF
## PARTIAL SETTLEMENT AGREEMENT

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs respectfully submit this Motion for Final Approval of the Parties' Agreement Regarding Procedures for Notifying and Reopening Cases of *Franco* Class Members Who Have Received Final Orders of Removal ("Reopening Settlement").[1]  The Court already preliminarily approved the Reopening Settlement on March 30, 2015, finding that its terms "fall within the range of reasonableness and merits possible final approval." *See* Dkt. 818.  Plaintiffs have received no objections to the settlement. For that and other reasons, the Court should swiftly and finally approve the Reopening Settlement. *See* Dkt. 807-1.

The Reopening Settlement provides eligible Class Members who were removed after this Court's Class Certification Order but prior to the effective date of the Court's Order Further Implementing This Court's Permanent Injunction ("Implementation Plan Order") with an opportunity to attain the benefits of this Court's orders.  This opportunity creates an important protection for Class Members because many of them were ordered removed while the Government continued to contest the relief they ultimately won.  That Plaintiffs would ultimately obtain relief for Class Members ordered removed during the pendency of this lengthy litigation was never a foregone conclusion.  To the contrary, the Reopening Settlement came after several contested rounds of briefing that pertained directly to the reopening remedy, as well as arms-length negotiations spanning 18 months between experienced advocates with extensive knowledge of the case.

---

[1]    The Parties intended to file a joint motion but were unable to agree on its content.  Defendants do not oppose this motion and intend to file a separate statement of non-opposition.

The Reopening Settlement resolves complex factual and legal questions that arise in the context of Class Members who have received final removal orders and, in some cases, already been removed.  Under the Reopening Settlement, affected Class Members can quickly obtain significantly more relief than that which would have been provided had Defendants prevailed in their prior litigation positions, and significantly more relief than Plaintiffs would have obtained if the Court had adopted the recommendations of the Special Master on this issue.  *See* Dkt. 709.  The Court should grant the Motion for Final Approval of Partial Settlement Agreement.

## II.    BACKGROUND AND TERMS OF THE REOPENING SETTLEMENT AGREEMENT

The relevant procedural history and nature of the underlying dispute that the Reopening Settlement seeks to resolve is set forth in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval of Partial Settlement Agreement.  *See* Dkt. 807 at 1-4.  To summarize briefly, hundreds of Class Members were ordered removed after this Court certified the Class in November 2011, but before the Implementation Plan Order went into effect on January 27, 2015.

The Reopening Settlement provides unprecedented relief to that group of individuals – who have been harmed not due to the merits of their cases, but by the simple fact of the timing of their removal orders, which were entered during the (more than three year) period after the Court certified the Class but before it entered its order to bring the removal hearing system into compliance with the Rehabilitation Act.  Specifically, the Reopening Settlement allows Class Members previously ordered removed to seek to reopen their immigration proceedings so that their competency may be assessed under the current procedures, as defined in the Court's Permanent Injunction, *see* Dkt. 593, and Implementation Plan Order, *see* Dkt. 786.

The terms of the Reopening Settlement are set forth in some detail in the motion for preliminary approval, Dkt. 807 at 5-9, and Plaintiffs will not repeat them at length here.  Most important for present purposes, several features of the Reopening Settlement provide significantly greater protections to Class Members than those otherwise available to individuals seeking to reopen their immigration cases.  These include the requirements that the Government screen the files of potential Removal Order Class Members to determine if they qualify and provide them notice of the possible remedy; court-ordered tolling of difficult-to-satisfy timeliness and numerical limitations built into the usual immigration court reopening procedures; the Government's agreement to facilitate the return of individuals who obtain relief under the Agreement, including by payment of travel costs in some cases; and the Government's agreement to join in the motions to reopen of certain individuals, including individuals who are more likely to have been found unable to represent themselves than other Class members.

The Reopening Settlement implements the relief it provides through two different avenues of relief for individuals with final orders of removal:  (1) the Joint Motion to Reopen Procedures, *see* Dkt. 807-1 at Section VII-VIII; and (2) the Unilateral Motion to Reopen Procedures, *see id*. at Section X.  The Joint Motion to Reopen Procedures represent the most favorable available process under the Settlement, insofar as it involves ICE joining in the motion to reopen the case, thus significantly increasing the likelihood that an immigration judge will grant the motion.  Four categories of Removal Order Class Members qualify for the Joint Motion to Reopen Procedures:  (1) those Removal Order Class Members who received final orders of removal after April 23, 2013, who were identified as qualifying pursuant to the provisions described in Dkt. 807-1 at Section I.B. I.K ; (2) all Released Sub-Class One Members; (3) all Private Agreement Removal

3

Order Class Members;[2] and (4) all Removal Order Class Members who submit evidence to the Defendants that they were determined to be incompetent by any administrative or judicial tribunal in the United States within the three years preceding the date they had the final order of removal entered in their proceeding. *See id.* at Section VII.  Under the Joint Motion to Reopen Procedures, qualifying Removal Order Class Members may request that ICE join in a motion to reopen their immigration proceedings.  ICE has agreed to favorably exercise its discretion to join in such motions to reopen, unless certain limited national security-related exceptions apply, or the Class Member received the safeguards implemented pursuant to Defendants' Phase I Guidance, Dkt. 663-4.  *Id.* at Section VIII, VIII.A, VIII.B.

The Unilateral Motion to Reopen Procedures also provide an avenue for significant relief, insofar as they permit qualifying individuals to reopen their proceedings even if they would otherwise be barred from receiving that relief outside of the Reopening Settlement.  Importantly, the unilateral motion procedures are available to "any individual" who can prove that he or she should have been identified as a Class Member during the relevant time period.  *Id.* at Section X.  Unlike the Joint Motion Procedures, ICE does not join in a unilateral motion, and may oppose it on certain specified grounds.  The Unilateral Motion to Reopen Procedures apply to the following group:

---

[2]     Private Agreement Removal Order Class Members are individuals who came to be known to Plaintiffs' counsel (whether through discovery or contact from the individuals or their families) who either would not have qualified for the joint motion procedures described herein because of the timing of their removal order or who otherwise were identified as meriting expeditious relief.  The Reopening Settlement allowed the Parties to designate certain individuals as Private Agreement Removal Order Class Members in order to make them eligible for the Joint Motion Procedures, and the Parties have done so.  *See id.* at Sections I.E, VI.D.

4

> Any individual who was detained and unrepresented in Arizona, California, and Washington on or after November 21, 2011 (the date the Court certified the class in this case), remained detained and unrepresented when they received an order of removal before an Immigration Judge, and received neither (a) the safeguards set forth in Section III of the Court's Implementation Plan Order, Dkt. 786, nor (b) the procedural safeguards implemented pursuant to Defendants' Phase I Guidance, *see* Dkt. 663-4 . . . .

Dkt. 807-1 at Section X.  Under the Unilateral Motion to Reopen Procedures, individuals may file a motion to reopen their immigration proceedings in which they demonstrate that they meet the current Class Membership criteria, *see* Dkt. 786 at 6-7, show they were not represented at the time the removal order was entered before an immigration judge, and provide an argument that they have plausible grounds for relief and/or a plausible defense from removal.  *See* Dkt. 807-1 at Section X.A-B.  ICE may oppose a unilateral motion to reopen filed under this Settlement on limited grounds, which include that the motion would be futile. *See id.* at Section X.C.

The Reopening Settlement requires, and the Court has already ordered, the tolling of the time and numerical limitations on motions to reopen found in the immigration statutes and regulations, such that both Joint and Unilateral motions filed pursuant to the Reopening Settlement are not subject to such limitations, so long as they are filed within 18 months of a Final Approval Hearing for the Reopening Settlement.  *See id.* at Section XII; XV; *see also* Dkt. 786 at 26.  Defendant ICE also agrees to facilitate the return of all Removal Order Class Members whose motions to reopen pursuant to the Reopening Settlement are granted, and further agrees to pay for the reasonable travel expenses for certain Removal Order Class Members whose joint motions to reopen are granted, as well as for up to at least 100 additional Class Members.  *See* Dkt. 807-1 at Section XVI.

The Parties have also negotiated for early relief prior to this Court's Final Approval Order.  Specifically, the Parties negotiated that early-filed requests for joint motions to reopen submitted to ICE will be acted upon under the settlement terms or held pending final approval of the agreement, and ICE must notify Class Members of their decision whether to join a Class Member's motion to reopen within 30 days of the Court granting final approval of the agreement. *See* Dkt. 820-5.  If early filed unilateral motions are filed with the immigration courts, they may be rejected or denied without consideration of the settlement terms, but also without prejudice to refile after the date of the fairness hearing.  *See* Dkt. 820-6 at 1.  The Court also approved revisions to the notices to notify Class Members of the possibility of early relief.  *See* Dkt. 821.

## III.   THE PARTIES HAVE SATISFIED THEIR OBLIGATIONS UNDER RULE 23(E)(1)

To allow the greatest number of potentially affected Class Members to receive the benefit of the Reopening Settlement, the Settlement provided for a comprehensive Notice Program, which the Court previously approved and the Parties have implemented in all material respects.[3]  Under Rule 23(e)(1), the Court must "direct notice in a reasonable manner to all class members who would be

---

[3]     As the Court is now aware, Defendants neglected to provide the Summary Class Notice to the four Legal Orientation Providers with offices in California, Arizona, and Washington, as required by Section III.A.b. of the Reopening Settlement, until September 11, 2015. The Parties have investigated the issue and determined that this delay, while regrettable, had little if any tangible impact (in part because staff members at two of the LOPs already knew of the Settlement and attorneys at a third knew of the possibility of reopening as a remedy for Class members who had not been identified as such). *See* Dkt. 851, 852. Given that the Parties have fully complied with all other provisions of the Notice Program, and in particular the provisions requiring that notice be mailed to all Removal Order Class Members and posted at all detention facilities in California, Arizona, and Washington, Plaintiffs maintain that the notice provided to the Class was sufficient pursuant to Rule 23(e)(1) and the Due Process Clause.

bound" by the proposed settlement.  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Vill.* v. *GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).  The provisions of the Notice Plan in the Reopening Settlement which have been implemented to date more than fulfill these requirements. *See* Dkt. 807-1 at Section III.

On March 30, 2015, upon application of the Parties, this Court preliminarily approved the proposed Reopening Settlement ("Preliminary Approval Order"), directed the Parties to issue notice to the Class, and approved the form and manner of proposed notice. S*ee* Dkt. 818.  The Court further found that the proposed notice met the requirements of Rule 23(e)(1) and due process. *Id*. at 1.

The Court set the Notice Date as August 17, 2015, *see* Dkt. 818, and later advanced the Notice Date upon the Parties' joint request to July 27, 2015, *see* Dkt. 821.[4]  Pursuant to the Reopening Settlement and the Court's Order the Parties implemented the Notice Program in the following manner:

  a. Defendants posted the Summary Class Notice, Joint Motion Notice and Instructions, and Unilateral Motion Notice and Instructions on websites maintained by Defendants, *see* Dkt. 852, 807;
  b. Defendants mailed the Summary Class Notice to all Removal Order Class Members at their last known address, in both English and Spanish, *see* Dkt. 852, 807;
  c. Defendants mailed the Joint Motion Notice and Instructions and Unilateral Motion Notice and Instructions to eligible Removal Order Class Members, in both English and Spanish, *see* Dkt. 852, 807;

---

[4]     The Court set the same Notice Date for Plaintiffs' Motion to Dismiss their remaining claims and Plaintiffs' Motion for Attorneys' Fees and Costs.  Dkt. 825.

d.  Defendants provided the Summary Class Notice to all Legal Orientation Providers with offices in California, Arizona, and Washington on September 11, 2015, *see* Dkt. 852, 807;[5]

e.  Defendants posted the Detention Facility Summary Notice in detention facilities in California, Arizona, and Washington, in both English and Spanish, *see* Dkt. 852, 807;

f.  Plaintiffs' counsel posted the Summary Class Notice on the websites of the ACLU Immigrants' Rights Project, ACLU of Southern California, the ACLU of San Diego and Imperial Counties, the ACLU of Arizona, Mental Health Advocacy Services, Northwest Immigrant Rights Project, and Public Counsel, in both English and Spanish, *see* Dkt. 848, 807.

The notice provided to the Class includes information regarding the eligibility requirements and procedures for relief for Removal Order Class Members.  The notices also direct Class Members and Removal Order Class Members to websites containing the full Reopening Settlement.  Finally, Removal Order Class Members, who are most likely to be affected by the Settlement, received an additional notice with more detailed information regarding the two forms of relief available, including eligibility criteria and instructions on how to avail themselves of the relief.

The Notices also informed Class Members that Plaintiffs intended to file a motion seeking up to $15 million in attorneys' fees and costs, which Plaintiff subsequently filed on July 31, 2015, seeking a total of $11,714,128 in attorneys' fees and costs for their work in the course of this litigation spanning more than five years.  Dkts. 827, 843.[6]  Finally, the Notices informed the Class that Plaintiffs

---

[5]  After hearing from the parties regarding Defendants' failure to comply with this provision of the Notice Program as of the originally-required date, the Court excused Defendants' failure to send the Summary Class Notice to all Legal Orientation providers by the Notice Date and extended the objection period to the date of the hearing itself.

[6]  The Parties were unable to settle Plaintiffs' claims for attorneys' fees and costs; thus, the settlement presented to the Court for approval does not include a settlement of any claims for fees or costs.  The Motion also does not seek fees for

1    would voluntarily dismiss their remaining claims because Plaintiffs believe that the

2    Court has granted virtually all of the relief requested by the Plaintiff Class, and all

3    of the relief that could be obtained through further pursuit of the remaining claims.

4    *See, e.g.*, Dkt. 807-2.  Plaintiffs moved to dismiss their remaining claims on July

5    31, 2015, and Defendants filed a Notice of Non-Opposition on August 21, 2015.

6              The Court set September 4, 2015 as the Objection Date for the

7    Reopening Settlement, Plaintiffs' Motion for Attorneys' Fees and Costs, and

8    Plaintiffs' Motion to Dismiss.  *See* Dkts. 821, 825.  As noted previously, it

9    extended that date in light of Defendants' failure to comply with one aspect of the

10   Notice Program to the date of the hearing.

11             Class Counsel has received no objections from the Class as of the date

12   of this filing.

13

14   **IV.    THE REOPENING SETTLEMENT SHOULD BE APPROVED
            BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE**

15             Rule 23(e) provides that the "claims, issues, or defenses of a certified

16   class may be settled, voluntarily dismissed, or compromised only with the court's

17   approval."  Fed. R. Civ. P. 23(e).  A settlement may be approved "after a hearing

18   and on finding that it is fair, adequate and reasonable."  Fed. R. Civ. P. 23(e)(2);

19   *see also Officers for Justice* v. *Civil Serv. Comm'n of City & Cnty. of S.F.*, 688

20   F.2d 615, 625 (9th Cir. 1982) (noting that this is the "universally applied

21   standard").  Further, "[i]t is the settlement taken as a whole, rather than the

22   individual component parts, that must be examined for overall fairness."  *Id*. at

23   628.  The Ninth Circuit has repeatedly emphasized that "[t]here is a strong judicial

24   policy that favors settlement, particularly where complex class action litigation is

25   concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)

26   (citation omitted); *see also Officers for Justice*, 688 F.2d at 625 ("[I]t must not be

27   ————————————

28   work done after June 30, 2015, such that the ultimate fee amount sought will be
     somewhat higher, although still substantially less than $15 million.

1   overlooked that voluntary conciliation and settlement are the preferred means of

2   dispute resolution.").[7]

3       In determining whether to approve a settlement, a district court will

4   balance a list of non-exhaustive factors:  (1) "the strength of plaintiffs' case;"

5   (2) "the risk, expense, complexity, and likely duration of further litigation;"

6   (3) "the risk of maintaining class action status throughout the trial;" (4) "the

7   amount offered in settlement;" (5) "the extent of discovery completed, and the

8   stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the

9   presence of a governmental participant;" and (8) the reaction of the class members

10  to the proposed settlement." *Staton* v. *Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

11  2003) (citation omitted).  The weight given to each factor depends upon "the

12  nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts

13  and circumstances presented by each individual case." *Officers for Justice*, 688

14  F.2d at 625.

15      On March 30, 2015, the Court ruled that the "[Reopening Settlement]

16  and its terms fall within the range of reasonableness and merits possible final

17  approval." *See* Dkt. 818 at 2.  An assessment of the relevant factors above,

18  coupled with the absence of any objections, confirms that the Court should grant

19  Plaintiffs' Motion for Final Approval of Partial Settlement Agreement.

20

21

22

23

---

24  [7]     This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California,

25  which strongly encourage the settlement of cases.  *See* Fed. R. Civ. P. 16(a)(5)

26  (one of the five purposes of a pretrial conference is to facilitate settlement); L.R. 16–2.9 (requiring parties to "exhaust all possibilities of settlement"); L.R. 16–15 to

27  15.9 (setting forth policies and procedures for settlement including encouraging

28  disposition of civil litigation by settlement by any reasonable means).

**A.      The Reopening Settlement Provides the Class with Substantial Benefits Immediately and Avoids the Risk and Uncertainty of Litigation.**

The Reopening Settlement resolves a substantial and difficult set of disputed questions of law and fact regarding the treatment of Class Members who were ordered removed from this country before this Court ordered legal representation and competency determination procedures.  At the time of the Reopening Settlement, the Parties' significant disagreements regarding previously removed Class Members included disputes about whether Removal Order Class Members were actually part of the Class, whether the Court had jurisdiction to order relief for Removal Order Class Members, whether the relief that Plaintiffs sought for them was impermissibly retroactive, and whether the procedures afforded to Removal Order Class Members were adequate under the Court's Orders.

Although Plaintiffs strongly believed that Removal Order Class Members were part of the Class, had been deprived of important rights, and were entitled to the full benefits of the Permanent Injunction, at the time that Plaintiffs agreed upon the Reopening Settlement, they could not have been sure that the Special Master or the Court would agree that Removal Order Class Members would receive any remedy, let alone what that remedy should be.  In fact, the Special Master's March 12, 2014 Report and Recommendation recommended that Removal Order Class Members receive some relief, but significantly less than the Parties ultimately agreed upon in the Reopening Settlement.  *See* Dkt. 709 at 37. The Special Master's recommended relief did not include the provisions regarding joint motions (*i.e.*, when ICE joins the Removal Order Class Member's motion to reopen) for qualifying individuals or individualized notice to Class Members about the availability of relief.  Further the Special Master did not recommend an 18 month window to file motions to reopen (he recommended only 180 days), did not include a requirement that Defendants themselves review Class Member files to

11

identify eligible Class Members, provided no relief for the subgroup of Private Agreement Removal Order Class Members, and included no limitation on the conditions under which the Government could oppose motions to reopen.

The Reopening Settlement is, put simply, an excellent result for eligible Class Members. It offers Class Members who had been seriously harmed by the Government's conduct an opportunity to obtain the rights to which they were entitled by federal law prior to their removal, including allowing certain Class Members who have already been removed to return to the United States (and, in some cases, at the Government's expense) for their reopened proceedings, should their motion to reopen be granted. The Reopening Settlement achieves these benefits and provides immediate relief while avoiding the uncertainty of lengthy litigation with no guarantee of success.

The risk of continuing a perpetual cycle of litigation at the expense of an immediate and tangible benefit for Removal Order Class Members provides ample justification for final approval of the Reopening Settlement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) ("A very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."); *Perez* v. *Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("Absent a settlement, Defendants would have defended [this lawsuit] vigorously, with potential success and no recovery of any kind for Plaintiffs."); 4 Newberg on Class Actions § 11:50 at 155 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Given the complex factual issues raised by Class Members who have already been removed from the United States, and who become increasingly more difficult to locate as time passes, prompt relief is particularly critical in this case.

**B.  The Reopening Settlement is the Product of Arms-Length Negotiations Between Well-Informed and Experienced Counsel After Extensive Discovery and Litigation.**

Leaving aside the substantive provisions of the Reopening Settlement itself, the Court should also approve the Parties' agreement because it is the product of extensive and well-informed arms-length negotiations between experienced counsel who vigorously represented their clients' interests.  The Ninth Circuit puts great weight on "the product of an arms-length, non-collusive, negotiated resolution" of class actions.  *Rodriguez* v. *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citations omitted).  Courts afford substantial consideration to the opinions of experienced counsel.  *Id.*  ("This circuit has long deferred to the private consensual decision of the parties."); *Officers for Justice*, 688 F.2d at 625 ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.")

Here, the Reopening Settlement was presented to the Court after lengthy negotiations between the Parties, whose counsel have extensive experience with similar actions, which further supports final approval of the Reopening Settlement.  Plaintiffs' counsel has substantial experience with class actions, civil rights actions, complex litigation, immigration litigation, and litigation on behalf of individuals with mental disabilities.  And certainly no one else has more experience defending lawsuits alleging constitutional and statutory violations related to ICE and EOIR than Defendants' counsel at the United States Department of Justice.  *See* 28 C.F.R. § 0.45(k).[8]

---

[8]      *See also* http://www.justice.gov/civil/oil/dcs/oil-dcs.html.

Besides being experienced, counsel for both Parties also were well-informed prior to the settlement.  Discovery is relevant for the Court's assessment as to whether the Parties have sufficient information to make an informed decision about the settlement.  *See, e.g.*, *Rodriguez*, 563 F.3d at 967 ("Extensive Discovery had been conducted, and the parties had gone through one round of summary judgment proceedings.  From this the district court could find that counsel had a good grasp on the merits of their case before settlement talks began.").  As this Court is aware, the Parties engaged in significant fact discovery, including written discovery, the production of Class Member files, transcripts of proceedings, and database information for Class Members, as well as numerous depositions.

The Parties have also been actively litigating the appropriate remedy to be afforded to Class Members ordered removed since at least July 2013, including obtaining a Report and Recommendation from the Special Master.[9]  The Parties' significant litigation and negotiation over these issues, including obtaining the views of the Special Master, further supports final approval of the Reopening Settlement.  *See Hanlon* v. *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").

## C.   The Class Has Reacted Favorably to the Reopening Settlement.

The Class's favorable reaction further supports final approval of the Reopening Settlement.  A low number of objections relative to the class size is a factor that supports settlement approval.  *See Nat'l Rural Telecomm. Coop.* v. *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises

---

[9]    *See* Dkts. 612, 688, 689, 698, 702, 703, 705, 708, 718 at 9-15, 719 at 14-24, 727 at 12-25, 728 at 9-15.

1    a strong presumption that the terms of a proposed class settlement action are

2    favorable to the class members.").  As described above, the Parties have engaged

3    in a multi-faceted Notice Program designed to provide all Class Members with

4    notice of the Reopening Settlement.  The original Objection Date has passed and

5    no Class Members have objected to the Reopening Settlement as of today

6    (September 18, 2015).  Moreover, pursuant to Defendants' agreement to receive or

7    process appropriate motions to reopen in some cases before Final Approval, some

8    Removal Order Class Members are already taking advantage of the intended

9    benefits of the Reopening Settlement.  The Class's favorable overall reaction to the

10   Reopening Settlement further confirms that that the Reopening Settlement should

11   be approved.  *See id.* ("The complete absence of Class Member objections to the

12   Proposed Settlement speaks volumes with respect to the overwhelming degree of

13   support for the Proposed Settlement among the Class Members.").

14
15   **V.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS
             DOES NOT JUSTIFY REJECTING THE REOPENING
16           SETTLEMENT**

17           The Ninth Circuit has held that "whether the attorneys' fees come

18   from a common fund or are otherwise paid, the district court must exercise its

19   inherent authority to assure that the amount and mode of payment . . . are fair and

20   proper."  *Zucker* v. *Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir.

21   1999).  Here, as described above, Plaintiffs filed a Motion for Attorneys' Fees and

22   Costs.  *See* Dkt. 827.  That Motion includes fees associated with work on the

23   Reopening Settlement, although the bulk of the requested fees come from work

24   done for the rest of this litigation.[10]  The Court will hear Plaintiffs' motion on

25   October 30, 2015.  Nothing about Plaintiffs' fee request would justify rejection of

26   the Reopening Settlement, for several reasons.

27   _____
     [10]    As described above, the Reopening Settlement does not include a settlement
28   on attorneys' fees or costs.

*First,* no Plaintiff has objected to Plaintiffs' application for fees.  *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (favorable reaction and failure to object supports fairness).  The Class has been provided with notice and an opportunity to object to Plaintiffs' Motion for Attorneys' Fees and Costs, and the Court set a Fairness Hearing concerning Plaintiffs' Motion for Attorneys' Fees and Costs for September 25, 2015.  Plaintiffs' Motion for Attorneys' Fees and Costs seeks substantially less fees and costs than the amount included in the Notice to the Class.  Certainly, there can be no basis to find that the Class has objected to any of the fee request.

*Second*, there is no conflict between Plaintiffs' counsel and the Class, as Plaintiffs' counsel is not seeking fees for themselves out of a class-wide monetary recovery.  Nor did the Class seek any monetary relief.  *Cf. In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) (noting that relationship between Class and Class Counsel may turn "adversarial" in common fund situations).

Although Defendants will likely dispute the amount of fees and costs to which Plaintiffs' counsel are entitled, there can be no dispute that Plaintiffs did not put their interests in obtaining fees and costs over the interests of the Class.  If the history of this litigation establishes anything, it is that the Parties did not collude with each other about *anything*, including for the purpose of providing Plaintiffs with a high fee award but no relief for the Class. *Cf. Navarro* v. *Servisair*, 2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 27, 2010) (discussing collusive class action settlements with a low recovery but high fee reward).

16

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the Reopening Settlement.

Respectfully submitted,

Dated:  September 18, 2015       By:    s/ Ahilan T. Arulanantham
                                        AHILAN T. ARULANANTHAM
                                        Counsel for Plaintiffs