1 | AHILAN T. ARULANANTHAM (SBN 237841)
aarulanantham@aclusocal.org
2 | JESSICA KARP BANSAL (SBN 277347)
jbansal@aclusocal.org
3 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
4 | Los Angeles, California 90017
Telephone:  (213) 977-5211
5 | Facsimile:   (213) 417-2211

6 | MICHAEL H. STEINBERG (SBN 134179)
steinbergm@sullcrom.com
7 | SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
8 | Los Angeles, California 90067-1725
Telephone:  (310) 712-6600
9 | Facsimile:   (310) 712-8800
*Attorneys for Plaintiffs-Petitioners*
10 | (Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ANTONIO FRANCO GONZALEZ, *et al.*, <br><br> *Plaintiffs-Petitioners*, <br><br> v. <br><br> WILLIAM BARR, Attorney General, *et al.*, <br><br> *Defendants-Respondents*. | Case No. 10-CV-02211 DMG (DTBx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REOPEN LIMITED DISCOVERY TO ESTABLISH NON-COMPLIANCE WITH COURT ORDERS** <br><br> **REDACTED** <br><br> Honorable Dolly M. Gee <br><br> Date:  December 13, 2019 <br><br> Time:  11:00 a.m. |

JUDY LONDON (SBN 149431)
jlondon@publiccounsel.org
TALIA INLENDER (SBN 253796)
tinlender@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385 2977
Facsimile: (213) 385-9089

JUDY RABINOVITZ (*pro hac vice*)
JRabinovitz@aclu.org
STEPHEN KANG (SBN 292280)
skang@aclu.org
ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004-2400
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

DAVID LOY (SBN 229235)
davidloy@aclusandiego.org
ACLU OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California 92138
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

MATT ADAMS (SBN 28287)
matt@nwirp.org
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, Washington 98104-2244
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

*Attorneys for Plaintiffs-Petitioners*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

RELEVANT BACKGROUND ........................................................................................ 2

ARGUMENT .................................................................................................................... 9

    I.    Discovery is Warranted Because Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders ............................................................................................. 9

        A.    Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders to Timely Identify and Evaluate Class Members ........................ 10

        B.    Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders to Accurately Identify Main Class Members………………....... 13

        C.    An Order Re-Opening Discovery for the Purpose of Evaluating Compliance with This Court's Orders is Appropriate ................................................................................... 14

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Blackberry Ltd. v. Typo Prod. LLC*,
   2014 WL 4136586 (N.D. Cal. Aug. 21, 2014) ...................................... 10, 11, 14

*California Dep't of Soc. Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008) ......................................................... 2, 10, 12, 14

*Rutherford v. Baca*,
   2009 WL 10653011 (C.D. Cal. Aug. 4, 2009), *clarified on other grounds on denial of reconsideration,* 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009) ............................................................................... 10, 14

# INTRODUCTION

Over five years ago, this Court entered a comprehensive Implementation Plan Order to protect the rights of vulnerable, *pro se* individuals in immigration detention who are suffering from serious mental disorders or defects. The Court also ordered formal monitoring of Defendants' compliance, which concluded in April 2018. In recent months, Plaintiffs have received disturbing reports of non-compliance with this Court's orders that, if unchecked, could jeopardize the relief this Court ordered in its Permanent Injunction and Implementation Plan Order. Dkt. 592, 786. Based on the information received by Plaintiffs, there appears to be a pattern of repeated violations, not merely one-off errors.

These reports have given Plaintiffs serious concerns that Defendants are not complying with the letter or spirit of this Court's historic orders in certain important respects. For example:

- ▓▓▓▓▓▓▓▓▓▓ who was diagnosed with schizophrenia and held in a psychiatric hospital immediately before entering ICE custody, was recently ordered removed without ever receiving a Judicial Competency Inquiry.
- ▓▓▓▓▓▓▓▓▓▓ was not identified as a Class Member until someone submitted for him a "*pro se*" motion for a competency hearing, despite being diagnosed with schizophrenia, placed on suicide watch, reporting hearing voices, and taking antipsychotic medication while in ICE custody.
- ▓▓▓▓▓▓▓▓▓▓ was detained for over *two years* before being identified as a Class member, despite attempting suicide in detention, being diagnosed with an anxiety disorder, and reporting hearing voices.

These are but a few of the disturbing examples Plaintiffs have identified.

This Court retains jurisdiction to ensure on-going compliance with the

1

Permanent Injunction and Implementation Plan Order. Dkt. 786 at IV.G. Under well-established case law, this Court can order discovery where "significant questions" have been raised as to a party's compliance with a court order. *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008). For the reasons set forth below, Plaintiffs have amply met this standard and therefore seek limited discovery to determine whether a full-blown motion for compliance is warranted.

## RELEVANT BACKGROUND

On November 21, 2011, this Court certified a Main Class of immigration detainees in Arizona, California, and Washington "who have been identified by or to medical personnel, DHS, or an Immigration Judge as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings." Dkt. 348. The Court also certified a subclass (Subclass One) comprised of Main Class members "who have a serious mental disorder or defect that renders them incompetent to represent themselves in immigration proceedings." *Id.*

On April 23, 2013, the Court granted Plaintiffs' Motion for Partial Summary Judgment and entered a Permanent Injunction. Dkt. 592, 593. The Court found for Plaintiffs on their claim that the Rehabilitation Act requires the government to provide free legal representation to all Subclass One members. *Id.* The Court ordered the parties to design a system to identify members of the Main Class and Subclass One and appointed a Special Master to facilitate that process. Dkt. 662. The Court subsequently entered a detailed order laying out an implementation plan for the Permanent Injunction. Dkt. 786. The Court also appointed a Monitor to ensure compliance with the Permanent Injunction and the Implementation Plan Order for a period of twenty-five months. Dkt. 810.

During the Monitoring Term, the Monitor had regular access to documents

and statistics relevant to evaluate Defendants' compliance with the Permanent Injunction and Implementation Plan Order. Dkt. 810. She also submitted regular reports and provided recommendations, which Defendants at times resisted. *See, e.g.,* Dkt. 948; Dkt. 965. The Monitoring Term was flexible, with an extension available to meet the "goals of the monitoring," which included "ensuring Defendants' ongoing compliance with the Implementation Documents, and that such compliance will continue without the presence of a Monitor." Dkt. 810 at n.2. After a one-year extension, the Monitoring Term ended in April 2018. Dkt. 951; Dkt. 996.

After the Monitoring Term ended, Plaintiffs' counsel remained vigilant in ensuring Defendants continued to comply with the Court's orders. Plaintiffs raised several individual cases with Defendants during this time period. In addition, in the summer of 2018, Plaintiffs determined that Defendants were not complying with the Injunction and Implementation Plan Order in a systemic fashion insofar as they refused to apply *Franco*'s protections to non-citizens they had incarcerated at federal prisons under color of the immigration law. After litigation, Defendants complied. *See* Dkt. 1008 at 2-4, 11; *see also* Dkt. 1031 (unopposed motion regarding fees to Plaintiffs).

Unfortunately, starting in the Spring of 2019, Plaintiffs again began to receive an increasing number of disturbing reports from legal service providers about apparent systemic violations of this Court's Orders, suggesting that the "goals of the monitoring" (Dkt. 810 at n. 2) were not being met. These reports revealed several disturbing cases. For example:

███████████████, who previously reported auditory hallucinations and had attempted suicide, did not receive a Judicial Competency inquiry during his nearly 36-month detention (and would never have received one, if the Ninth Circuit had not ruled in his favor). ███████ has been detained in Arizona at the Eloy Detention Center and the La Palma Correctional Center since on or around

3

1   August 2016. *See* Declaration of Laura St. John [hereinafter St. John Decl.] ¶ 4. He
2   has been unrepresented since December 2016. *Id.* As early as August 2016,
3   medical staff observed him exhibiting manic symptoms and diagnosed him with
4   adjustment disorder with mixed disturbance of emotions and conduct. *Id* ¶ 5.
5   Beginning in November 2016 and continuing through September 2018 and beyond,
6   he reported active auditory hallucinations. *Id.* ¶ 6; Dkt. 786 at 7 (class criteria
7   include "exhibiting . . . active hallucinations"). In August 2017, he attempted
8   suicide. *See* St. John Decl. ¶ 7; Dkt. 786 at 7 (class criteria include "exhibiting . . .
9   suicidal ideation and/or behavior"). In December 2018, he was diagnosed with
10  Adjustment Disorder with Mixed Anxiety and Depressed Mood. *See* St. John Decl.
11  ¶ 8; Dkt. 786 at 7 (class criteria include "exhibiting . . . marked anxiety").
12  Throughout all this time, ICE never notified EOIR that he was a class member. *See*
13  St. John Decl. ¶ 9. It was not until the Ninth Circuit remanded the case with
14  instructions to conduct a Judicial Competency Inquiry (JCI) that a JCI was finally
15  held in July 2019. *Id.*

16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ entered ICE custody on or around March 2019 and
17  was not identified as a *Franco* Class member until a third-party legal services
18  provider raised concerns, despite numerous factors suggesting the obvious
19  conclusion that he was a Class member well before that time.[1] *See* St. John Decl.
20  ¶¶ 11-20. In May 2019, he apparently experienced a psychotic break. *Id.* ¶ 12.
21  Medical records indicated that he was found in the yard of the Eloy detention
22  center in a fetal position, shaking, tearful, and paranoid. *Id.* He reported hearing
23  voices telling him to throw himself off the housing unit. *Id.*; Dkt. 786 at 7 (class
24  criteria include "exhibiting . . . active hallucinations"). He was placed on suicide
25  watch and diagnosed with "psychotic disorder." *Id*; Dkt 786 at 7 (class criteria
26  include "exhibiting suicidal ideation/behavior" and "demonstrating significant

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓ was initially in expedited removal proceedings, but was issued a Notice to Appear on or around June 11, 2019.

symptoms of . . . Psychotic Disorder"). In June, he attempted suicide by hanging. *Id.* ¶ 14. His reports of hallucinations, documented in medical reports, became almost constant and did not improve with medication. *Id.* ¶ 15. In July, a non-profit legal services provider met with ▉▉▉▉▉▉▉ and became concerned about his mental condition. *Id.* ¶ 16. On July 17, 2019, after a file review showed that no *Franco* notice had been filed, an attorney emailed DHS counsel to alert them of a pro se detainee with a serious mental disorder who had not been identified as a Class Member. *Id.* No response was received. *Id.* ▉▉▉▉▉▉▉ subsequently attempted suicide again. *Id.* ¶ 17.

On August 1, the non-profit legal services provider filed a Third-Party Notification of Indicia of Incompetency with the Immigration Court. *Id.* ¶ 18. Only after that intervention, on August 5, was ▉▉▉▉▉▉▉ finally scheduled for a Judicial Competency Inquiry. *Id.* ¶ 19. However, the JCI was rescheduled because ▉▉▉▉▉▉▉ was transferred out of Eloy for medical treatment. *Id.* The JCI went forward on September 18, 2019 and the Immigration Judge found ▉▉▉▉▉▉▉ incompetent to represent himself. *Id.* ¶ 20.

▉▉▉▉▉▉▉ only received a competency hearing after he requested one *pro se*, despite diagnoses and symptoms that clearly establish his Class membership. ▉▉▉▉▉▉▉ who suffers from schizophrenia, was detained at the Central Arizona Florence Correctional Complex. See St. John Decl. ¶¶ 22-23; Dkt. 786 at 7 (class criteria include "demonstrating significant symptoms of . . schizophrenia"). He was placed on suicide watch because he had been engaging in self-harm, banging his head against a wall and scratching himself, while complaining of auditory hallucinations. See St. John Decl. ¶ 24; Dkt. 786 at 7 (class criteria include "suicidal ideation and/or behavior"). He reports hearing voices and is on antipsychotic medication. See St. John Decl. ¶ 25; Dkt. 786 at 7 (class criteria include "exhibiting . . . active hallucinations" and "demonstrating significant symptoms of . . . [p]sychosis"). He also suffers from cerebral palsy. *See*

St. John Decl. ¶ 26.

Despite all this, ▮▮▮▮▮ was not identified as a Main Class member by ICE or the immigration judge until a non-profit legal services provider helped him submit a *pro se* motion to the immigration court. *See id.* ¶ 27-29.

▮▮▮▮▮ similarly had to file a pro se request for a competency hearing despite clearly meeting the Class criteria. ▮▮▮▮▮ came into ICE custody on or around October 3, 2018. *See* St. John Decl. ¶ 31. She was detained at the Eloy detention center. She had been receiving medications for bi-polar disorder in criminal custody immediately prior to coming into ICE custody. *Id.*; Dkt. 786 at 7 (class criteria include "demonstrating significant symptoms of . . . Bipolar Disorder"). On October 4 and 5, ICE medical providers diagnosed her with bi-polar disorder, prescribed lithium and other medications, and noted that she had experienced two prior hospitalizations for "mood swings." *See* St. John Decl. ¶ 32. She had her first master calendar hearing, *pro se*, on October 30. *Id.* ¶ 33. The Immigration Judge advised her to find an attorney and continued the hearing to November 8. *Id.* ¶ 33. ▮▮▮▮▮ subsequently appeared *pro se* at four more Master Calendar hearings between November 8 and December 4. *Id.* ¶ 33. On November 20, with the assistance of a pro bono legal services provider, she filed a *pro se* motion for a judicial competency inquiry, attaching evidence about her prior diagnoses and a letter from her mother explaining that she had been "in Mental Health Hospitals over the years for suicide attempts and other mental issues due to her Bi Polar Disorder and other diagnoses" and also "has severe learning disabilities." *Id.* ¶ 35; Dkt. 786 at 7 (class criteria include having a "mental disorder that is causing serious limitations in communication, memory, or general mental and/or intellectual functioning"). The Immigration Judge failed to address her motion at the November 20 hearing and granted another continuance, which DHS opposed. *Id.* ¶ 36. It was not until December 13 that ICE filed a notice of Class membership. *Id.* ¶ 37. A Judicial Competency Inquiry was finally conducted

on January 8, 2019, and ▇▇▇▇ was found incompetent and appointed a qualified representative. *Id.* ¶ 38.

▇▇▇▇ waited *seven months* before being identified as a Class member, despite reporting a history of schizophrenia with auditory and visual hallucinations. *See* St. John Decl. ¶¶ 40-47; Dkt. 786 at 7 (class criteria include "exhibiting . . . active hallucinations" and "demonstrating significant symptoms of . . . [s]chizophrenia"). ▇▇▇▇ was detained in ICE custody in the Florence Detention Center and the Central Arizona Florence Correctional Complex from in or around April 2018 to in or around March 2019. *Id.* ¶ 40. ICE did not identify him as a Main Class member until November 2018. *Id.* ¶ 46.

▇▇▇▇ waited over fourth months before being identified as a Main Class member, and then only because she filed a *pro se* motion raising competency concerns. She was detained at the Eloy Detention Center from in or about June 2018 to in or about February 2019. *See* St. John Decl. ¶ 49. She has a history of psychosis, including auditory hallucinations. *Id.* ¶ 50; Dkt. 786 at 7 (class criteria include "exhibiting . . . active hallucinations" or "significant symptoms of Psychosis"). She has been previously hospitalized twice in psychiatric facilities for suicidality. St. John Decl. ¶ 50; Dkt. 786 at 7 (class critiera include "exhibiting . . . suicidal ideation and/or behavior"). She takes psychotropic medication. St. John Decl. ¶ 50. Nonetheless, she was not identified as a Main Class member until a non-profit legal services provider helped her file a *pro se* indicia of incompetency with the Immigration Court. *Id.* ¶ 51.

▇▇▇▇ was ordered removed without ever receiving a Judicial Competency Inquiry despite having been diagnosed with schizophrenia and completing his criminal sentence in a psychiatric hospital immediately before coming into ICE custody sometime in or shortly before June 2019. *See* St. John Decl. ¶¶ 53-55; Dkt. 786 at 7 (class criteria include "demonstrating significant symptoms of . . . [s]chizophrenia"). He was never identified as a Class member. St.

7

1  John Decl. ¶ 55.

2  ▇▇▇▇▇▇ was never identified as a class member despite his prior history of institutionalization and reports of active hallucinations. ▇▇▇▇ came into ICE custody on or around March 19, 2019 and was detained at the Mesa Verde Detention Center in Bakersfield. *See* Declaration of Valerie Zukin [hereinafter Zukin Decl.] ¶ 5. He had been on psychiatric medications since 2010. *Id.* ¶ 6. He was previously institutionalized in a mental hospital. *Id.* While in immigration detention, he reported that he was hearing voices in his head. *Id.* ¶ 7 Dkt. 786 at 7 (class criteria include "exhibiting . . . active hallucinations"). Nevertheless, ▇▇▇▇ ▇▇ was never identified as a Class member. Zukin Decl. ¶ 9. ▇▇▇▇▇▇ was ordered removed on June 7, 2019. *Id.* ¶ 10.

▇▇▇▇▇▇▇▇▇▇▇▇ had provided evidence to DHS of his cognitive disorder in connection with a naturalization application before coming into ICE custody on or around February 2019, but DHS never filed a *Franco* notice. *See* St. John Decl. ¶ 57, 59; Dkt. 786 at 7 (class criteria include having a "mental disorder that is causing serious limitations in communication, memory or general mental and/or intellectual functioning"). Evidence of his disorder would have been readily available in his Alien File. Moreover, his intake screening from the La Palma Correctional Center noted a past "accident/head injury w/ LOC (loss of consciousness). St. John Decl. ¶ 58. He struggled with his memory after he fell and hit his head, losing consciousness, in or around 2016. *Id.* ¶ 59. Nonetheless, DHS never identified him as a Class member. Instead, the Immigration Judge conducted a JCI only after a pro bono legal services provider helped him request on pro se. *See id.* ¶ 61.

▇▇▇▇▇▇▇▇▇▇▇▇ testified at his individual merits hearing that he was afraid to return to Mexico because he believed the Sacramento police, his public defender, and the judge from his previous criminal case would follow him there to kill him. Declaration of Kathleen Kavanagh [hereinafter Kavanagh Decl.] ¶ 6.

8

Nonetheless, the Immigration Judge declined to re-assess his previous finding that ▓▓▓▓▓ was competent to represent himself. *Id.* ¶ 7. ▓▓▓▓▓▓▓▓▓▓ later obtained representation on appeal, and the Board of Immigration Appeals reversed the removal order and remanded the case for, *inter alia*, a competency determination under *Franco*. As a result, he was jailed for at least five additional months due to the Immigration Judge's failure to conduct a proper competency assessment. *Id.* ¶ 8.

As a result of these disturbing reports, in July 2019 counsel for Plaintiffs initiated an extensive meet and confer process with counsel for Defendants. Through that process, Defendants agreed to address some but by no means all of Plaintiffs' concerns. Specifically, Defendants agreed to provide additional *Franco* training to certain Immigration Judges who had a documented pattern of *Franco* violations and to cease conducting Judicial Competency Inquiries by video conference for individuals detained at the La Palma Correctional Center in Arizona.

Defendants disputed that other apparent violations raised by Plaintiffs, including those described below, reflect systemic violations of this Court's orders. In addition, Defendants refused Plaintiffs' request for specific discovery relevant to the apparent violations, thereby preventing Plaintiffs from obtaining additional information regarding these issues. Despite Plaintiffs' diligent efforts to resolve the issues informally, this Motion became necessary to ensure that Plaintiffs have sufficient information to fairly evaluate Defendants' noncompliance in light of the serious concerns raised by service providers.

## ARGUMENT

**I. Discovery is Warranted Because Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders**

This Court retained "jurisdiction to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to enforce the provisions of this Order, or to amend this Order for good cause shown." Dkt. 786,

at IV.G. That reservation of authority comports with district courts' inherent power to enforce their judgments, including by granting discovery to determine compliance. *See California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008). "[A] district court should give careful attention to a request for discovery to establish noncompliance with one of its judgments." *Id.* at 1033.

"When considering whether to permit discovery prior to resolution of . . . a motion [to enforce a judgment], the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id.* at 1034; *see also Rutherford v. Baca*, No. CV 75-04111 DDP, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009), *clarified on other grounds on denial of reconsideration,* No. CV 75-04111 DDP, 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009) (granting post-judgment compliance discovery and explaining that motion for compliance discovery "is analogous to a Rule 56(f) [2] request . . . and requires '[v]ery little proof of noncompliance'") (quoting Rutter Group Practice Guide: Federal Trials and Evidence ¶ 20:438.3) (alteration in original); *Blackberry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 4136586, at *2 (N.D. Cal. Aug. 21, 2014) (ordering compliance discovery in light of "significant questions of whether [Defendant] has violated the preliminary injunction").

Plaintiffs have easily met this standard here. The Court should order the requested discovery.

### A. Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders to Timely Identify and Evaluate Class Members

Plaintiffs have uncovered significant questions as to Defendants' compliance

---

[2] After the court's decision in *Rutherford,* Rule 56 was amended to move the relevant provision from subsection (f) to subsection (d).

with the provisions of the Implementation Plan Order requiring timely identification and evaluation of class members. To ensure timely identification of Main Class and Subclass One members, this Court established a procedure for screening and evaluating all immigration detainees. Detainees must be initially screened for evidence of a "serious mental disorder or condition" upon admission into ICE custody. Dkt. 786 at 4. A further screening must occur within 14 days. *Id.* Individuals identified as exhibiting evidence of a serious mental disorder or condition must be referred for a mental health assessment, to be completed "as soon as practicable" and ordinarily within no more than 14 days of referral. *Id.* at 6. Within seven days of the assessment, the qualified mental health provider must notify ICE Office of Chief Counsel (OCC) of any individuals who meet the class criteria. *Id.* OCC then has 21 days to gather information relevant to competency and provide the information, along with a notice of class membership, to EOIR. *Id.* at 12. Upon receipt of the notice of class membership, the IJ must convene a Judicial Competency Inquiry within 21 days. *Id.* at 15. Adding up the days for each step, the entire process should be completed within no more than 77 days—and less if a serious mental disorder or condition is revealed upon initial screening.

In the case of an individual who was not originally identified as exhibiting a serious mental disorder or condition, if ICE receives new information that indicates the individual may be suffering from such disorder or condition, ICE must refer the individual for a mental health assessment and/or provide the new information to the qualified mental health provider to reassess whether the individual meets the class criteria. Dkt. 786 at 9. Following the mental health assessment or re-assessment, notice to OCC and EOIR must proceed on the time-line described above.

Reports received by Plaintiffs indicate that, despite this Court's clear timeline, Defendants have delayed by months or even years the identification of *pro se* immigration detainees as Main Class members even though they suffered

from serious mental disorders. As described above, these include ▬▬▬▬ who waited over two years for a JCI despite attempting suicide and reporting hearing voices; ▬▬▬▬ who did not receive a JCI until a third-party legal services provider raised concerns, despite experiencing a psychotic break in detention, attempting suicide, and being diagnosed with "psychotic disorder;" ▬▬▬▬, who had to file a *pro se* motion for a competency hearing despite suffering from schizophrenia and taking antipsychotic medication; ▬▬▬▬, who was immediately identified by ICE as suffering from bi-polar disorder but still was not identified as a Class member for months; ▬▬▬▬, who waited seven months to be identified as a Class member despite a history of schizophrenia with auditory and visual hallucinations; and ▬▬▬▬, who waited four months before receiving a Franco notice despite two previous psychiatric hospitalizations and a history of psychosis, including auditory hallucinations. *See supra* at 3-9.

These examples raise, at the very least, "significant questions regarding noncompliance" with this Court's orders. *Leavitt*, 523 F.3d at 1034. To be clear, Plaintiffs are *not* seeking to challenge particular decisions by competency evaluators or immigration judges, or to obtain individual immigration relief for the individuals described here. Rather, these examples raise very serious questions as to whether Defendants, including agency actors at all levels, are in fact complying with this Court's orders. In too many instances, it appears Class members are languishing in detention for months or even years without receiving the protections this Court ordered. In particular, it seems that many individuals receive *Franco*'s protections, if at all, only because of the intervention of third-party legal service providers.

### B. Significant Questions Have Been Raised Regarding Defendants' Compliance with This Court's Orders to Accurately Identify Main Class Members

This Court has made clear that an individual's history of mental illness, treatment, and hospitalization is relevant to determining Class membership. For example, screening must "seek to identify whether the individual has a history of mental illness, has previously taken medication for mental illness or received mental health services, [or] has been hospitalized for psychiatric condition(s) . . . ." Dkt. 786 at 5 n.6. In addition, "[w]henever ICE or detention facility personnel become aware that an immigration detainee identified through the screening system . . . was hospitalized due to a mental disorder or condition, ICE or detention facility personnel must provide that information, and any related documents in their possession, to the qualified mental health provider . . . ." Dkt. 786 at 8. Further, "ICE and detention facility personnel shall . . . notify the ICE Office of the Chief Counsel . . . when they are aware that, in the last five years, a detainee has been housed in a medical unit or cell due to a mental disorder, has been placed in segregation due to a mental disorder, has displayed an intent to commit suicide or self-harm due to a mental disorder, or has been hospitalized due to a mental disorder." Dkt. 786 at 13.

However, in apparent violation of this Court's orders, Plaintiffs' counsel have received numerous reports of *pro se* immigration detainees who were not identified as Main Class members despite having been diagnosed with, hospitalized, or treated for serious mental disorders *immediately prior* to entering ICE custody. In some instances, this has resulted in tragic consequences, with Class Members being ordered removed without ever receiving the benefits of this Court's orders.

For example, as described above, ▌▌▌▌▌▌▌▌▌▌▌▌ was diagnosed with schizophrenia and completed his criminal sentence in a psychiatric hospital immediately before coming into ICE custody, but was never identified as a Class

13

Member. An Immigration Judge ordered him removed without ever conducting even a JCI. *See supra* at 7-8 ███████ had been on psychiatric medications for nearly a decade before being detained by ICE, and had been previously institutionalized in a mental hospital, but was also ordered removed without ever being identified as a Class member. *See supra* at 8. ███████ provided DHS with evidence of a prior cognitive disorder in connection with his naturalization application years before he was detained, but it went unnoticed until *pro bono* counsel requested a competency hearing. *See supra* at 8. Defendants similarly failed or delayed in identifying ███████, ███████ and ███████ as Class members despite each individual's extensive history of mental health disorders prior to coming into ICE custody. *See supra* at 6-7.

These cases indicate that Defendants are failing to properly consider previous history of mental illness and hospitalizations in identifying Class members, with the result that Class members are unable to secure the protections of this Court's orders. They provide significant "evidence of noncompliance" with this Court's orders. *Leavitt*, 523 F.3d at 1034.

### C. An Order Re-Opening Discovery for the Purpose of Evaluating Compliance with This Court's Orders is Appropriate

In light of the significant evidence of non-compliance described above and Defendants' unwillingness to provide discovery, an order reopening discovery into Defendants' compliance with the Permanent Injunction and Implementation Plan Order is appropriate. *See Rutherford*, 2009 WL 10653011, at *3 (granting motion to reopen discovery into medical care and mental health issues in jails where plaintiffs provided evidence of medical care and mental health conditions in jail that may have violated court's orders); *Blackberry Ltd.*, 2014 WL 4136586, at *2 (granting discovery into compliance with preliminary injunction in light of "serious questions" regarding possible violations).

Plaintiffs seek the Court's permission to serve a set of discovery requests seeking information concerning Defendant's compliance with this Court's orders, including information about the incidents described above and the practices that led to them and information related generally to Defendants' compliance with this Court's orders in the period after the Monitoring Term.

For example, to determine the scale of ongoing violations of this Court's orders and identify the specific points in the screening and evaluation process where delays in identification of Class members are taking place, Plaintiffs would seek a subset of the information Defendants previously provided to the Monitor: (1) a sample of Main Class Member Statistics and (2) Main Class Member File Sampling Protocol documents for a sample of Class members, to include those individuals described above. *See* Dkt. 810 at 7-11 (describing Main Class Member Statistics), 14-15 describing (Main Class Member File Sampling Protocol documents). The Monitor used this same type of information to great effect to assess Defendants' compliance.

In addition, to determine how often and why individuals with previous histories of mental illness and hospitalization are not being identified as Class members, Plaintiffs would seek screening forms, mental health assessments, and relevant medical documents for unrepresented, pro se immigration detainees who, while in ICE custody, were receiving anti-psychotic or other medication to treat a symptom or disorder identified at Pt. I.A.3.b of this Court's Order Further Implementing the Permanent Injunction, Dkt. 786, or were identified in the screening form as having previously been diagnosed with a symptom or disorder identified at Pt. I.A.3.b of the Order Further Implementing the Permanent Injunction, but for whom ICE never filed a notice of Class membership. Plaintiffs would also seek information sufficient to determine whether such individuals were identified as Class members only upon the intervention of a third-party legal service provider.

1 | Plaintiffs also would seek to take one deposition under Rule 30(b)(6) to
2 | provide insight into Defendants' practices and procedures in such cases.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court re-open discovery to evaluate compliance with this Court's orders.

Respectfully submitted,

Dated:  November 8, 2019        /s/ Ahilan T. Arulanantham
                                AHILAN T. ARULANANTHAM
                                Counsel for Plaintiffs-Petitioners