JOSEPH H. HUNT
Assistant Attorney General
U.S. Department of Justice
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Deputy Director
450 5th Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-1246
Facsimile: (202) 305-7000
Attorneys for Defendants-Respondents

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO-GONZALEZ, *et al.*,<br><br>*Plaintiffs-Petitioners*,<br><br>v.<br><br>CHAD WOLF, Acting Secretary, Department of Homeland Security, *et al.*,<br><br>*Defendants- Respondents*, | Case No. 10-CV-02211 DMG (DTBx)<br><br>**DEFENDANTS' SUR-REPLY RE: PLAINTIFFS' DISCOVERY MOTION**<br><br>Honorable Dolly M. Gee |

Case 2:10-cv-02211-DMG-AGR   Document 1070   Filed 01/06/20   Page 2 of 16   Page ID
#:38929

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

Introduction .............................................................................................................. 1

Argument ................................................................................................................. 1

I.      Plaintiffs' Additional Arguments and Record Citations Fail to Support Significant Questions Regarding Defendants' Compliance with the Implementation Plan Order ............................................................................ 1

         A. Discussion Regarding XXX-XXX-402 ....................................................... 3

         B. Discussion Regarding XXX-XXX-683 ....................................................... 7

         C. Discussion Regarding XXX-XXX-524 ....................................................... 8

         D. Discussion Regarding XXX-XXX-529 ....................................................... 9

         E. Discussion Regarding XXX-XXX-110 ..................................................... 10

         F. Discussion Regarding XXX-XXX-689 ..................................................... 12

         G. Discussion Regarding XXX-XXX-536 ..................................................... 13

         H. Discussion Regarding XXX-XXX-664 ..................................................... 13

II.     The Wells Declaration Fails to Support Plaintiffs' Argument that there is a Change in ICE's Compliance with the Implementation Plan Order. ............ 13

## INTRODUCTION

On November 8, 2019, Plaintiffs moved to reopen discovery to establish noncompliance with the Court's orders. ECF Dkt. No. 1050. Defendants responded in opposition on December 4, 2019, attaching over 6,000 pages of medical records, records of immigration court proceedings and transcripts from those proceedings. ECF Dkt. No. 1057. Plaintiffs replied on December 11, 2019. ECF Dkt. No. 1061. Plaintiffs' reply relies on new evidence in the form of the declaration of Kelly Wells, ECF Dkt. No. 1064, and new argument, consisting of several pages of legal argument based on the records filed along with Defendants' opposition. A hearing on Plaintiffs' motion was noticed for December 20, 2019, but the Court took the hearing off calendar on December 18, 2019. On December 30, 2019, the Court granted Defendants' ex parte application to file a sur-reply to respond to "new materials raised for the first time in Plaintiff's reply." ECF Dkt. 1069.

The Court should deny Plaintiffs' motion. First, Plaintiffs' citations to the records: (1) improperly question the decisions and diagnoses of the same qualified mental health providers that the Implementation Plan Order entrusts with class identification, (2) improperly deem as conclusive to class membership past diagnoses of mental health conditions – although no such criteria is in the Implementation Plan Order, and (3) improperly reinterprets class triggering language requiring the exhibition of active symptoms with reports of those symptoms. Second, Plaintiffs' reliance on the newly filed declaration of Ms. Wells simply fails to support Plaintiffs' argument that anything has changed with regard to ICE's compliance with the Implementation Plan Order.

## ARGUMENT

**II. PLAINTIFFS' ADDITIONAL ARGUMENTS AND RECORD CITATIONS FAIL TO SUPPORT SIGNIFICANT QUESTIONS REGARDING DEFENDANTS' COMPLIANCE WITH THE IMPLEMENTATION PLAN ORDER.**

In their reply, Plaintiffs selectively cite to the mental health records filed by Defendants in an attempt to meet their burden that there are significant questions

1

about Defendants' compliance with the Court's orders. Plaintiffs' new citations and arguments fail, and they are undermined by the fact that Plaintiffs must reinterpret key provisions of the Implementation Plan Order and challenge the professional judgments of Qualified Mental Health Providers ("QMHP") to support their allegations of noncompliance.

Contrary to these arguments, Defendants respond that first, a mere diagnosis of one of the six enumerated conditions is insufficient to support class membership because the Implementation Plan Order requires that a QMHP "diagnose[] the detainee as demonstrating *significant symptoms* of one of the following . . . ." ECF Dkt. No. 786 at 7 (emphasis added). Second, an individual is a class member if they "exhibit[] . . . *active* psychiatric symptoms or behavior," including "active hallucinations" and "suicidal ideation and/or behavior." ECF Dkt. No. 786 at 7 (emphasis added). U.S. Immigration and Customs Enforcement ("ICE") does not argue that a QMHP must observe the patient exhibiting an auditory hallucination during an evaluation in order for the QMHP to identify the patient is exhibiting active hallucinations. Instead, due to the transient nature of auditory hallucinations, a QMHP may require multiple Mental Health Assessments ("MHAs") to assess the patient before being able to determine that a patient is actually exhibiting active hallucinations in a manner that would meet the definition of a serious mental class membership definition. This is consistent with Dr. Piasecki's conclusions, *see* ECF Dkt. No. 905-3 at 9 ("mental health assessment requires a combination of direct questioning and behavioral observation to obtain complete and accurate data about an individual's mental and emotional state."), and Defendants' previous responses to the same line of argument. *See, e.g.*, ECF Dkt. No. 948 at 12-13 & n.17; ECF Dkt. No. 940-9 at 5. Further, given the fluidity of mental competency and the nuanced nature of suicidal ideation and behavior, a QMHP may require multiple MHA sessions assessing the patient before being able to determine that a patient is actually exhibiting suicidal ideation and/or behavior that would meet the medical definition

of the class definition. Plaintiffs do not assert that the screening procedures required by the Implementation Plan Order were not followed; instead, they appear to be improperly questioning the professional clinical impressions and diagnoses of the very same qualified mental health providers that the Implementation Plan Order entrusts with class identification. Such "second guessing" by laypeople has never been the purpose of the Implementation Plan Order.

As Defendants demonstrate in the following case-specific discussions, Plaintiffs omit key facts and findings from individual mental health records that are fatal to Plaintiffs' allegations of noncompliance. The Court should therefore deny Plaintiffs' motion to reopen discovery.

**A. Discussion Regarding XXX-XXX-402.**

Despite a long history of reporting auditory hallucinations, ICE screeners and QMHPs have diligently followed up on those reports and consistently found this individual to be oriented and not to meet the class criteria.

Plaintiffs' reply relies on Defendants' medical records to argue that this individual arguably met the class criteria because he reported hallucinations and voices on May 5, 2017. *See* ECF Dkt. No. 1060-4 at 386. Plaintiffs omit that during the May 5, 2017, screening, the QMHP that he was oriented, and that both his attention level and thought process were within normal limits. *Id*. at 387. When a QMHP followed up with the individual two days later based on the individual's reports of suicidal ideations and possible auditory hallucinations, the QMHP noted that "[h]e denies current AH but relates hearing voices two days ago," *id*. at 232. The QMHP found him to be oriented, his thought process to be logical and presented in an orderly fashion, and his thought content to be not paranoid, and found as a result that the detainee did not meet the SMI criteria and did not present any active symptoms. *See id*. at 231-32.

Plaintiffs cite to this individual's June 15, 2017 assessment to reference that the "QMHP reported that Pt. does endorse hearing voices occasionally . . . . Notably,

3

he appeared to be constantly looking around the room." *Id*. at 218. Plaintiffs omit the QMHP's notations that it was unclear whether this is related to hypervigilance or responding to internal stimuli, that the patient denied current auditory hallucinations or command auditory hallucinations that "despite issues, pt. was able to calm self and left interview in no acute distress," and that the patient appeared to be oriented and noted "no issues" with his thought process. *See id*. At a June 16, 2017 follow-up, the QMHP found that the patient did not meet the SMI criteria and did not have acute symptoms. *See id*. at 213. In the Mental Status Exam, the QMHP found the patient to be oriented, his thought content to be "not paranoid" and his through process to be logical and presented in an organized fashion. *See id*.

Plaintiffs cite to this individual's August 19, 2017 assessment to question how the QMHP could note that he had not experienced auditory hallucinations in three days, stated that three days ago he kept hearing people arguing, but ultimately reported that the individual has no auditory or visual hallucinations. *See id*. at 166-67. Plaintiffs omit that the QMHP concluded that the patient was alert and oriented, did not observe any auditory or visual hallucinations, and that the individual's thought content was without suicidal ideation or delusion. *See id*. at 167. Further, in subsequent visits, a QMHP found the individual to be oriented, with no perceptual disorders or hallucinations observed or reported, with no suicidal ideation or behavior observed or reported and with an appropriate thought content and process. *Id*. at 159-61 (8/20/17); 149-51 (8/21/17); 140-42 (8/22/17); 133-35 (8/30/17).

Plaintiffs cite to this individual's October 19, 2017 screening for the proposition that an initial screening recorded that "Patient admits to hearing voices. Last heard these voices last night. Patient states the voices are arguing." *Id*. at 370. Plaintiffs omit that the screener referred the individual to a mental health provider and observed that the patient was oriented, not agitated and was able to focus and concentrate. *See id*. at 370-71.

Plaintiffs cite to this individual's June 14, 2018 assessment for a QMHP's report that the individual reported that he hears voices "ever since my friend was killed," around 2005. *Id*. at 95. Plaintiffs omit that the individual did not know what the voices were saying and was referred for a mental health follow-up. *See id*. at 95, 97. Further, in the Mental Status Exam, the QMHP also observed that the individual was oriented as to place, month, and year, and was aware that his immigration case was on appeal. *See id*. at 96. The QMHP also noted while the individual was initially inattentive with infrequent eye contact; however, he was more attentive with more consistent eye contact as the session progressed. *See id*. at 97. At a prior mental health session, the QMHP found no perceptual disorders and found the patient alert and oriented, with significant improvement in his ADHD due to his medication. *See id*. at 98-99 (5/17/18). At a later session, the QMHP noted that the patient reports occasional auditory hallucinations, but that "[t]here was no overt evidence of current AH." *Id*. at 92-94 (7/5/18).

Plaintiffs cite to this individual's September 19, 2018 examination for the proposition that the individual "[s]tates that he has been hearing voices in last 3 wks, occurring at night, several times during the day and when alone." *Id*. at 351. Plaintiffs omit that the screener referred the individual for a mental health follow up. *See id*. at 355. The screener also observed that the individual's "cognitive function intact, cooperative with exam, good eye contact, judgement and insight good, mood/affect full range, no auditory or visual hallucinations, speech clear, thought content without suicidal ideation, delusions." *Id*. at 354.

Plaintiffs cite to this individual's November 23, 2018 assessment for the proposition that a QMHP noted "[s]till reports of intermittent AH, last was 3 days ago. States he often hears multiple voices, both male and female when he is sleeping. He tried to talk to these voices but they will not answer him back." *Id*. at 57. Plaintiffs omit that the individual was referred for a mental health follow up and was seen immediately the same day. *See id*. at 54-56. During the mental health follow up, the

5

1   QMHP noted that the patient denied suicidal ideation, intent or plan, denied
2   perceptual distortions, that he was alert and oriented and that his thought process
3   was linear. *See id.* at 55. The QMHP noted that the patient exhibits increased
4   hyperactivity, poor impulse, agitation, and inattention since being off his prior
5   medication. As a result, the QMHP resumed the medication. *See id.*

6   Finally, Plaintiffs argue that ICE's failure "to identify an individual who
7   attempted suicide the day before as exhibiting active suicidal ideation or behavior
8   simply because he is not actively experiencing suicidal thoughts at the exact moment
9   of the QMHP encounter makes a mockery of the class criteria. That is not and cannot
10  be the standard." ECF Dkt. Nos. 1063 at 5-6. Plaintiffs omit, however, that it was
11  the individual who himself reported that he ingested 10-15 unknown white-egg-
12  shaped pills that he found on the walk when he was at the pill window. *See* ECF Dkt.
13  No. 1060-4 at 176. ICE disputes the truth of that allegation. But, ICE's follow-up
14  following the individual's placement on constant watch shows that the individual
15  denied any suicidal thoughts or plans at present, and that the individual told the
16  QMHP that he was upset after receiving a letter from ICE stating that he will be
17  deported to Mexico. *See id.* at 172. The QMHP found that the individual showed no
18  current thoughts of suicidal, suicidal intent or suicidal plan, although he noted
19  feelings of hopelessness and helplessness and fear. *See id.* at 173. However, the
20  QMHP also found protective factors in place, such as reasons for living, denial of
21  suicidal ideations presently, future orientation, supportive family relationships and
22  willingness to engage in mental health treatment. *See id.* The QMHP also found the
23  individual to be in control, oriented, attentive, with fair insight, judgment, and "fair"
24  anger control. *See id.* at 173. The individual was evaluated again by a QMHP on
25  August 20, 2017, and he denied any suicidal thoughts or plans and stated that he
26  wanted to go back to his prior room. *See id.* at 159. The QMHP found he was
27  oriented, had a controlled affect, stable, with fair insight and judgment and
28  appropriate thought process/content. *See id.* at 160. The QMHP assessed the

individual on August 22, 2017. *See id*. at 140-41. He again denied suicidal thoughts, intent or plan. *See id*. at 140. He denied feelings of hopelessness/helplessness. *See id*. at 141. The QMHP found him to be oriented, cooperative but irritated attitude, with fair insight and judgment and no current suicidality. *See id*.

**B. Discussion Regarding XXX-XXX-683.**

Contrary to Plaintiffs' allegations, neither a prior schizophrenia diagnosis nor a current diagnosis alone meet the *Franco* criteria for a serious mental health condition/disorder, and while the medical records cited by Plaintiffs indicate that the patient reported or endorsed auditory hallucinations in the past, there is no evidence that the QMHP determined in the QMHP's professional judgment that the patient was exhibiting active hallucinations. Notably, given the fluidity of mental competency and the nuanced nature of suicidal ideation and behavior, a QMHP may require multiple MHA sessions assessing the patient before being able to determine that a patient is actually exhibiting suicidal ideation and/or behavior that would meet the medical definition of the class definition.

Plaintiffs' reply relies on Defendants' medical records to argue that this individual's class identification was delayed because he told a QMHP on March 31, 2019 that, "I have schizophrenia and need to get back on my medications," explained that he had been diagnosed with schizophrenia two months earlier while in criminal custody and reported actively hearing voices on at least four occasions. *See* ECF Dkt. No. 1060-32 at 73, 70, 72, 65, 64, 63. Plaintiffs also cite to this individual's record for the proposition that he reported constant thoughts of harming himself, and that he was placed on constant watch on March 31, 2019 after a QMHP found that he was experiencing "current suicidal ideations." *See id*. at 73.

Plaintiffs omit that while the individual was referred for a mental health assessment after reporting having heard voices in the past, *see* ECF Dkt. No. 1060-35 at 1-2, the individual did not report nor did the QMHP find that he was exhibiting active hallucinations. *See* ECF Dkt. No. 1060-32 at 76-77. Plaintiffs also omit that

7

on April 1, 2019, the QMHP found that the individual was alert and oriented, his thought process was goal-oriented and demonstrated the appropriate insight. *See id*. at 69-70. Again on April 2, 2019, the individual denied any current auditory hallucinations or suicidal thoughts and the QMHP observed he was alert and oriented, was cooperative with the interview and had a goal-directed thought process. *See id*. at 66-68. The QMHP found no evidence of internal stimuli or symptoms of psychosis, and that he was free of self-injurious behaviors. *See id*. The QMHP concluded there was no evidence that he suffered from a major mental illness at that time. *See id*. The QMHPs continued to evaluate the patient on multiple occasions to confirm a diagnosis during the first three weeks of April 2019. During this time, the patient was briefly subjected to mental health observation after reporting auditory hallucinations "telling him to harm his cellies." *See id*. at 64. However, during these evaluations, the QMPHs did not determine that the patient was experiencing active auditory hallucinations or significant symptoms of psychosis. *See id*. at 66-74. On April 17, 2019, the QMHP diagnosed him with psychosis, atypical and prescribed Risperdal for treatment of auditory hallucinations. *See id*. at 55-60.

Finally, Plaintiffs assert that ICE did not file a Franco notice until May 7, 2019 after the individual filed a pro se motion for a judicial competency inquiry. However, ICE timely filed a Franco notice on May 7, 2019 after the Immigration Judge decided to set the case for a JCI on May 6, 2019 in immigration court. *See* ECF Dkt. No. 1060-37, at 6-73.

**C. Discussion Regarding XXX-XXX-524.**

Contrary to Plaintiffs' allegations, even a QMHP's own diagnosis alone is not sufficient for class membership. Plaintiffs' reply relies on Defendants' medical records to show that the QMHP diagnosed this individual with bipolar disorder and observed that she was displaying "a depressed and anxious mood," ECF Dkt. No. 1060-5 at 85-86, and noted that the individual had been admitted to psychiatric

8

hospitals twice, had three suicide attempts, and was worried to be off her meds, *see id*. at 84-85. However, neither a prior nor a current schizophrenia diagnosis alone meet the *Franco* criteria for a serious mental health condition/ disorder.

Plaintiffs rely on a screener's response of "yes" to the question "Is the patient exhibiting symptoms of a serious mental disorder or symptom of cognitive impairment?" at the individual's October 17, 2018 screening, to argue that she should have been identified as a class member then. *See id*. at 80. However, Plaintiffs omit that subsequent mental health assessments fail to establish that a QMHP found anything other than the individual displayed a "depressed and anxious" mood. Indeed, other than the yes response at screening, there is no evidence that a QMHP determined she was suffering "marked anxiety" or "severe depressive symptoms" or that her "depressed and anxious" mood rose to the level of "significant symptoms of her alleged bipolar disorder," to qualify as a class member under the Implementation Plan Order. *See* ECF Dkt. No. 786 at 7. Similarly, although a screener also found on October 17, 2018, that a head injury at age 8 left the individual unable to "read and write and comprehend the written language," ECF 1060-5 at 79, there is no indication determined that the individual had either a mental disorder that is causing serious limitations in communication, memory or general mental and/or intellectual functioning (*e.g.*, communicating, reasoning, conducting activities of daily living, social skills); or a severe medical condition(s) (*e.g.*, traumatic brain injury or dementia) that is significantly impairing mental function. *See* ECF Dkt. No. 786 at 7.

**D. Discussion Regarding XXX-XXX-259.**

Plaintiffs' reply alleges that this individual should have been identified as a class member when, on June 27, 2018, and July 11, 2018, a QMHP found that he was "currently exhibiting symptoms of a serious mental disorder or condition," diagnosed him with schizophrenia, and found that he was hearing voices. *See* ECF Dkt. Nos. 1060-34 at 1-2 and 1060-31 at 41.

9

First, neither a history nor a current diagnosis of schizophrenia alone constitute a serious mental disorder or condition for class membership. *See* ECF Dkt. No. 786 at 7. Rather, the applicable section of the Implementation Plan Order requires that a QMHP "diagnose[] the detainee as demonstrating *significant symptoms* of (3) schizophrenia," to qualify as a class member. Second, as in the prior case, that an initial or 14-day screening results in a "yes" response to the question whether the detainee is currently exhibiting symptoms of a serious mental disorder or condition, is not itself determinative of class membership. Nor is reporting that an individual is hearing voices automatically considered a significant symptom of schizophrenia sufficient to trigger class membership. Notably, Plaintiff omits that although the QMHP reported on June 27, 2018, that the patient continued to hear voices "although not at the point in time" and that he heard voices last week, and heard voices last week, *see* ECF Dkt. No. 1060-34 at 1-2, there is no indication that the QMHP determined, in his or her professional opinion, that the individual was experiencing active hallucinations. *See id*. Moreover, while a licensed clinical social worker marked "yes" to the question, "Is the detainee currently exhibiting symptoms of serious mental disorder or condition?" another QMHP conducting his 14-day screening the same day determined that the individual was not. *See id*. at 1-2, 3-5. Third, while a QMHP noted on July 11, 2018, that the individual reported "hearing voices from time to time" there is no evidence that the QMHP determined that the individual was exhibiting active hallucinations. The QHMP further found on July 11, 2018, that the individual was oriented, found his thought content was orderly and goal-directed and he did not express any delusional thought content. *See* ECF Dkt. No. 1060-31 at 41.

### E. Discussion Regarding XXX-XXX-110.

Plaintiffs' reply alleges that this individual should have been identified as a class member when, as early as June 29, 2018, a QMHP noted that she was "currently exhibiting symptoms of a serious mental disorder or condition" and that

she had "borderline intellectual functioning" level of intelligence. *See* ECF Dkt. No. 1060-3 at 49. At that screening, the QMHP found that this individual "could not coherently explain her immigration status," and "presents in a confusing and self-contradictory manner that continues the difficulty of understanding her history and current circumstances." *Id*. at 47.

Plaintiffs omit, however, that "borderline intellectual functioning," does not necessarily meet the medical criteria for class membership, and that the QMHP assessed this individual as having only mild intellectual disabilities. *Id*. at 49. This does not meet the medical criteria for class membership because it is not moderate, severe or profound in nature, or other criteria because there is no support for finding that the individual has a mental disorder that "is causing serious limitations in communication, memory or general mental and/or intellectual functioning." *See* ECF Dkt. No. 786 at 7. As previously discussed, that an initial or 14-day screening results in a "yes" response to the question "Is the patient exhibiting symptoms of a serious mental disorder or symptom of cognitive impairment?" does not mean the QMHP found that the individual met the criteria for class membership. Similarly, while the QMHP found that the individual "could not coherently explain her immigration status," and "presents in a confusing and self-contradictory manner than continues the difficulty of understanding her history and current circumstances," *see* ECF Dkt. No. 1060-3 at 47, the QMHP is not charged with conducting a forensic competency evaluation or determining competency. While these findings may be relevant to an individual's diagnosis and treatment, there is no evidence that the QMHP determined that the patient met the definition for a serious mental disorder or condition, or other grounds for class membership. Finally, evidence of prior diagnoses, psychiatric hospitalization, and prescriptions, while relevant to assessing an individual's current condition and treatment, *see id*. at 44, do not on their own form a basis for class membership.

**F. Discussion Regarding XXX-XXX-689.**

Plaintiffs' reply contends that this individual met the definition of a serious mental disorder or condition because the QMHP observed on June 3, 2019, that he reported pressure in his head and efforts to "determine what is the voice of God and what is not." *See* ECF Dkt. No. 1060-2 at 10-11. Plaintiffs assert that these symptoms alone establish class membership because they constitute "active hallucinations or delusions." Plaintiffs then openly question that the QMHP diagnosed him only with anxiety disorder and scheduled a follow up to "rule out" schizophrenia. *Id*. at 10-11. Plaintiffs omit that at the initial screening on June 3, 2019, the QMHP did not definitively determine that the individual was exhibiting active hallucinations, and instead observed him to be oriented, to have good attention, with a thought content within normal limits and "possible" voices, requiring further follow-up. *See id*. at 11. The QMHP also answered "no" to the question of whether the patient currently is experiencing symptoms of serious mental disorder or condition. *See id*. The QMHP diagnosed him with anxiety disorder unspecified and referred him for a follow-up mental health assessment in 3-4 weeks. *See id*.

Plaintiffs' reply also contends that this individual reported at his second screening, on June 11, 2019, that the "voices are present all the time," *id*. at 5, and argue that "the injunction requires a mental health assessment within 14 days after a screening has found indicia of class membership." *See* ECF Dkt. Nos. 1063 & 66 at 10. Plaintiffs omit, however that the individual reported that he learned a process and prays to god and knows that the voices are not real. *See* ECF Dkt. No. 1060-2 at 5. Further, the QMHP observed that the individual was not disoriented, was not responding to internal stimuli, did not appear to be restless or distracted, manifested any delayed or non-response to questions and did not exhibit disorganized thoughts or behaviors. *See id*. at 7. The QMHP also answered "no" to the question of whether the patient is currently experiencing symptoms of a serious mental disorder or condition. *See id*. at 5. Finally, contrary to Plaintiffs' assertions, the mental health

assessment was timely performed on June 3, 2019 – prior to the fourteen-day screening. *See id*. at 9. Thus, again, this appears to be a case in which Plaintiffs are second-guessing the professional clinical judgment of the QMHPs, which is not contemplated by the Implementation Plan Order.

**G. Discussion Regarding XXX-XXX-536.**

Plaintiffs' reply alleges that this individual should have be identified as a class member based on a diagnosis of schizophrenia and his reports of auditory and visual hallucinations. See ECF Dkt. No. 1060-39 at 11. As discussed previously, a diagnoses alone is not enough to establish class membership, rather, it must be accompanied by significant symptoms, and reports of hallucinations may not be sufficient to support a QMHP's finding that an individual is experiencing active hallucinations. Indeed, Plaintiffs' omit that, while this individual reported hearing voices in the past, a QMHP never determined that he was exhibiting active hallucinations or otherwise met the class definition. *See* ECF Dkt. No. 1060-39 at 21, 23, 25, 28, 31, 33, 36, 37, 38. Rather, QMHPs in multiple assessments observed that the individual did not respond to internal stimuli and/or was not observed experiencing hallucinations or delusions during the interview, *see id*. at 7, 17, 20, 26, 29, 31, 34, 37, 39, and that he was oriented, *see id*. at 15, 23, 25, 28, 29, 31, 34. 37, 39.

**H. Discussion Regarding XXX-XXX-664.**

As Plaintiffs' reply includes no new arguments or factual analysis, regarding this individual, Defendants rely on their prior arguments.

**II. THE WELLS DECLARATION FAILS TO SUPPORT PLAINTIFFS' ARGUMENT THAT THERE IS A CHANGE IN ICE'S COMPLIANCE WITH THE IMPLEMENTATION PLAN ORDER.**

Plaintiffs rely on the newly filed declaration of Ms. Wells for her personal opinion that "something has changed," in how Defendants are approaching the *Franco* injunction. *See* ECF Dkt. No. 1064 ¶ 9. The Court should give Ms. Wells'

13

declaration little weight. She is not a qualified mental health provider, and her declaration is based on her personal perceptions of nine cases over a three-year period, suggesting that the four more recent cases have had different results with regard to class membership determinations than five older cases. Defendants are unable to provide specific responses to Ms. Wells' allegations given the lack of identifying information. But even assuming her factual allegations to be true, the fact that class identification in four recent cases is different than five previous cases cannot support a conclusion that there are significant questions regarding Defendants' compliance. Indeed, ICE has confirmed that there have been no changes to the processes described at paragraph four of Ms. Wells' declaration, and ICE's Office of the Principal Legal Advisor (OPLA) in San Francisco uses a standard third-party information email address that they forward to the ICE facility when they receive information from a third-party. Notably, ICE OPLA does not determine whether someone should be identified as a Franco class member based on this information from a third party. Instead, as required by the Implementation Plan Order, ICE OPLA provides those third-party documents to the Immigration Judge if it is relevant and in their possession, and an Immigration Judge determines if a bona fide doubt finding is required. ICE notes, however, that pro bono organizations and attorneys usually provide those documents directly to the immigration court in some capacity, including as "friends of the court."

Dated: January 6, 2020　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey S. Robins*
　　　　　　　　　　　　　　　　　　　　JEFFREY S. ROBINS
　　　　　　　　　　　　　　　　　　　　Deputy Director
　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　Office of Immigration Litigation
　　　　　　　　　　　　　　　　　　　　District Court Section

　　　　　　　　　　　　　　　　　　　　Attorney for Defendants-Respondents

14