UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 1 of 6 |

Present: The Honorable  DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff(s)        Attorneys Present for Defendant(s)

**Proceedings: IN CHAMBERS - ORDER RE PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY TO ESTABLISH NON-COMPLIANCE WITH COURT ORDER [1042] AND PLAINTIFFS'** *EX PARTE* **APPLICATION FOR LEAVE TO FILE A SURREPLY [1071]**

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed a Motion for Leave to Conduct Limited Discovery to Establish Non-Compliance with Court Order ("Motion") on November 8, 2019. [Doc. # 1042.] They claim that they have received reports that Defendants have been ignoring or avoiding their responsibilities to comply with the Court's Permanent Injunction [Doc. # 592] and Implementation Plan Order [Doc. # 786]. Motion at 1. Plaintiffs cite to evidence that they claim shows that Defendants have failed to: (1) timely identify detainees who qualify as members of the Main Class or Sub-Class (as defined in Doc. # 592); (2) timely notify the Immigration and Customs Enforcement ("ICE") Office of Chief Counsel ("OCC") when detainees meet the Main Class or Sub-Class definitions; (3) or notify the Executive Office of Immigration Review ("EOIR") that the Immigration Judge ("IJ") overseeing the detainee's immigration proceedings must conduct timely Judicial Competency Inquiry ("JCI"). *Id.* at 10-11. Due to these alleged failures to comply with the Court's instructions, Plaintiffs request that the Court permit them to take one Rule 30(b)(6) deposition and serve various discovery requests into "the incidents described [in the Motion] and the practices that led to them and information related generally to Defendants' compliance with this Court's orders." *Id.* at 15-16.

The Motion has now been fully briefed. Opp. [Doc. # 1060]; Reply [Doc. # 1066]; Surreply [Doc. # 1070].[1]

---

[1] Plaintiffs have also filed an *Ex Parte* Request for Leave to File a Surreply in response to Defendants' Surreply. [Doc. # 1071.] Given the Court's ruling on the Motion, further briefing is unnecessary. Plaintiffs' *Ex Parte* Application is therefore **DENIED as moot.**

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 2 of 6 |

## II.
## DISCUSSION

The parties do not dispute that the Court's previous Orders provide the authority to grant Plaintiffs leave to conduct further discovery. Implementation Plan Order at 26 ("This Court retains jurisdiction to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to enforce the provisions of this Order, or to amend this Order for good cause shown."); Opp. at 1 ("Defendants do not dispute Plaintiffs' summary of the applicable terms of the implementation plan order"). Nor do they dispute the legal standard that controls this inquiry. In the Ninth Circuit, "the kind and amount of evidence . . . required to justify discovery" into potential noncompliance with a court order is, "necessarily, considerably less than that needed to show actual noncompliance." *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008). If movants raise "significant questions regarding noncompliance," courts should grant "appropriate discovery." *Id.*

Plaintiffs claim that evidence pertaining to the processing, treatment, and diagnosis of several detainees in Defendants' custody is enough to, at the least, raise "significant questions regarding noncompliance." The Implementation Plan Order requires that Defendants initially screen all detainees "for evidence of a serious mental disorder or condition upon their admission into ICE custody at an immigration detention facility." Implementation Plan Order at 4 (internal quotations omitted). Defendants must then provide all detainees a further screening "by a currently and appropriately licensed psychiatrist, physician, physician assistant, psychologist, clinical social worker, licensed nurse practitioner, or registered nurse within 14 days of their admission into ICE custody at an immigration detention facility." *Id.* Defendants must refer any detainees that exhibit "evidence of a serious mental disorder or condition" during the screening process, or "at any later stage," for a "mental health assessment." *Id.* at 5 (such referral should "ordinarily" happen within 14 days after the detainee is identified as exhibiting a serious mental disorder or condition). Then, "[b]ased on the results of the mental health assessment and any other available information, the qualified mental health provider [("QMHP")] will determine whether an unrepresented detainee meets the criteria" for class membership." *Id.* at 5-6.

Detainees qualify as class members if:

> (i) a qualified mental health provider determines the detainee meets one or both of the following criteria:
>
>> (1) has a mental disorder that is causing serious limitations in communication, memory or general mental and/or intellectual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 3 of 6 |

    functioning (e.g., communicating, reasoning, conducting activities of daily living, social skills); or a severe medical condition(s) (e.g., traumatic brain injury or dementia) that is significantly impairing mental function; or

    (2) is exhibiting one or more of the following active psychiatric symptoms or behavior: severe disorganization, active hallucinations or delusions, mania, catatonia, severe depressive symptoms, suicidal ideation and/or behavior, marked anxiety or impulsivity

(ii) a qualified mental health provider otherwise diagnoses the detainee as demonstrating significant symptoms of one of the following:

    (1) Psychosis or Psychotic Disorder;
    (2) Bipolar Disorder;
    (3) Schizophrenia or Schizoaffective Disorder;
    (4) Major Depressive Disorder with Psychotic Features;
    (5) Dementia and/or a Neurocognitive Disorder; or
    (6) Intellectual Development Disorder (moderate, severe or profound).

*Id.* at 6-7.

**A.**     **Serious Questions Regarding Potential Noncompliance Exist**

    The record before the Court is more than adequate to raise serious questions about potential ongoing noncompliance with the mandatory procedures outlined above. While Plaintiffs set out many examples, the following detainees' experiences are enough to justify discovery into potential ongoing noncompliance with the Court's Orders. To avoid disclosing sensitive medical and identifying information, the Court will refer to the detainees by their initials only.

    Detainee C.M.L. has been in Defendants' custody since August 2016 and has been unrepresented by counsel since December 2016. St. John Decl. at ¶ 4 [Doc. # 1053]. A QMHP diagnosed him with "Mixed Anxiety and Depressed Mood" on August 21, 2017. Robbins Decl. [Doc. # 1058], Ex. 1-C at 105. According to records submitted by Defendants, C.M.L. then appeared at the health clinic on August 18, 2018 after ingesting pills in an attempt to commit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 4 of 6 |

suicide.[2] The QMHP noted that C.M.L. "told staff that he swallowed 16-18 pills and wanted to die" and ordered that C.M.L. be placed on "[c]onstant [w]atch." *Id.* at 173. Since a determination by a QMHP that a detainee is exhibiting "marked anxiety" or "suicidal ideation and/or behavior" triggers that QMHP's obligation under the Implementation Plan Order to notify ICE OCC that the detainee meets the class definition, the QMHP should have done so within seven days. C.M.L. should have received a JCI within 42 days of such notification. Instead, C.M.L. did not receive a JCI until July 2019, when the Ninth Circuit and BIA remanded his case with instructions for the IJ to conduct a JCI. St. John Decl. at ¶ 9.

Detainee J.B.C. entered Defendants' custody in March 2019. *Id.* at ¶ 11. In May 2019, he was found "sitting in the fetal position with his head on his arms" in the "rec area" of the detention facility in which he was housed. St. John Decl., Ex. B at 16. He was "visibly shaking" and stated that he was hearing voices that told him, among other things, to "throw [him]self over the stairs so that [he] can be with his mom." *Id.* An QMHP diagnosed him with psychotic disorder and schizophrenia. *Id.* at 17. Several days later an QMHP noted that J.B.C. reported that the voices in his head were "present all the time." *Id.* at 15. In June 2019, J.B.C. attempted suicide by hanging in his cell. *Id.* at 13. Thereafter, an QMHP once again reported that he has "one or more active psychiatric symptoms" and was "still presenting active moderate to severe symptoms." *Id.* at 9. J.B.C. attempted suicide again in July 2019. *Id.* at 4-5. Despite these events, ICE admits that it did not timely notify EOIR of J.B.C.'s class membership. Opp. at 8. J.B.C. did not receive a JCI until September 18, 2019. St. John Decl. at ¶ 20.

Detainee L.S. came into Defendants' custody on October 3, 2018. *Id.* at ¶ 31. She received a timely screening and was referred to a QMHP for an assessment on October 4, 2018. Robbins Decl., Ex. 1-D at 85 [Doc. # 1058-6]. The next day, the QMHP diagnosed her with "other bipolar disorder." *Id.* at 87. Later, a QMHP noted that L.S. was "exhibiting symptoms of a serious mental disorder or symptoms of cognitive impairment." *Id*. at 80. The bipolar disorder diagnosis and subsequent notation should have triggered the QMHP's obligation to notify ICE OCC about her class membership, and she should have received a JCI within 49 days. Instead, her JCI did not happen until January 8, 2019, after L.S. filed a *pro se* motion for a JCI with the help of a third-party *pro bono* attorney. St. John Decl. at ¶¶ 35-38.

---

[2] The full passage from the records is as follows. "Patient presented to the clinic c/o vomiting and nausea. Patient states that he ingested 10-15 unknown white, egg-shaped pills that he found on the walk when he was at the pill window. The detainee was asked if he was trying to intentionally harm himself by ingesting the unknown pills and stated, "I don't want to be here anymore. I'm tired of being here. I'm getting deported." 6 witnessed episodes of vomiting while with medical staff. Pain level rated 10/10 in stomach and head. Per telephone order from A. Grijaldo, NP send to Banner Casa Grande Medical Center for further evaluation and treatment via van. Consulted with Dr. Sebastian at approximately 2315 PM and detainee is to be placed on suicide watch upon his return from the hospital until he can be evaluated by a MH provider on 8/19/17." Robbins Decl., Ex. 1-C at 177.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
|---|---|---|---|
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 5 of 6 |

Detainee D.G.D. came into Defendants' custody in April 2018. *Id.* at ¶ 40. On June 27, 2018, a QMHP determined that he was "currently exhibiting symptoms of [a] serious mental disorder or condition" and diagnosed him with "other schizophrenia." Robbins Decl., Ex. 16A at 2-3 [Doc. # 35]. The diagnosis and observation should have triggered the reporting and notice procedures, but ICE admits that it did not identify D.G.D. to EOIR as a class member until November 8, 2018. Opp. at 20-21.

Defendants' arguments that these events do not raise serious questions about their noncompliance are unpersuasive. In response to Plaintiffs' arguments that the QMHP's diagnoses of the detainees with one or more of the mental disorders enumerated in the Implementation Plan Order should have resulted in a timely JCI, Defendants contend that a diagnosis "alone is not enough to establish class membership, rather, it must be accompanied by significant symptoms." Surreply at 15. But in each of the cases described above involving a diagnosis of psychotic disorder or schizophrenia, the medical records that Defendants submitted contain information about the detainees' significant symptoms that gave rise to the diagnosis. Indeed, in several cases, QMHPs explicitly found that detainees were "exhibiting symptoms of a serious mental disorder or symptoms of cognitive impairment." *See, e.g.,* Robbins Decl., Ex. 1-D at 80. Defendants also argue throughout their briefing that detainees' reports to QMHPs of recent and ongoing auditory or visual hallucinations are not enough to trigger the reporting and notice procedures because such symptoms do not require the treating QMHP to take any action unless he observes the detainee experiencing hallucinations or delusions *in his presence during the mental health assessment*. *See* Opp. at 16. Even assuming the Implementation Plan Order supports such a cabined reading of the term "active hallucinations or delusions," the cases outlined above are sufficient to raise serious questions about compliance under *Leavitt* even without relying on the reports of hallucinations throughout the medical records Defendants submit.

**B.      The Scope of Appropriate Discovery**

*Leavitt* instructs courts to permit "appropriate discovery" if warranted. *Leavitt*, 523 F.3d at 1034. Plaintiffs request that the Court permit it to make discovery requests for statistical information similar to that which Defendants previously provided to the independent monitor in this action. *See* Motion at 19; Doc. # 810 at 7-11, 14-15. They also wish to obtain: (1) screening forms, mental health assessments, and relevant medical documents for unrepresented, *pro se* immigration detainees who, while in ICE custody, were receiving anti-psychotic or other medication to treat a symptom or disorder" described in the Implementation Plan Order "or were identified in the screening form as having previously been diagnosed with a symptom or disorder" described in the Implementation Plan Order, "but for whom ICE never filed a notice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 10-2211-DMG (DTBx)** | Date | January 10, 2020 |
| Title | *Jose Antonio Franco-Gonzalez, et al. v. Chad Wolf, et al.* | Page | 6 of 6 |

Class membership"; (2) "information sufficient to determine whether such individuals were identified as Class members only upon the intervention of a third-party legal service provider"; and (3) leave to conduct one Rule 30(b)(6) deposition. Motion at 19-20. Defendants do not oppose any particular aspect of this request—they instead simply describe the entire request as impermissibly broad without further substantive explanation. Absent any specific concerns about the discovery that Plaintiffs describe, the Court determines that it is appropriate under the circumstances.

### III.
### CONCLUSION

In light of the foregoing, Plaintiffs' Motion is **GRANTED**. By no later than **January 24, 2020**, the parties shall meet and confer and file a joint status report to propose a timeline for the completion of the requested discovery.

**IT IS SO ORDERED.**