# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO FRANCO GONZALEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, Attorney General, *et al.*, <br><br> Defendants. | Case No.: 10-CV-02211 DMG (AGRx) <br><br> DISCOVERY MATTER <br><br> JOINT ELECTRONIC DISCOVERY ORDER ORDER <br><br> Honorable Dolly M. Gee |

## I.    DEFINITIONS:

A.    The "Litigation" means the case captioned above.

B.    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a).

C.    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes, ESI, Hard Copy Discovery and tangible things.

D.    "Format" means the internal structure of a file, which defines the way it is stored and used.

E.    "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

F.    "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container, such as an enterprise system or database.

G.    "Producing Party" means a Party that produces documents.

H.    "Receiving Party" means a Party to whom documents are produced.

I.    "Responsive Document" means any document that the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

J.    "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper,

electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

K. "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

L. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

M. "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text.

N. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

O. "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

**II.  PURPOSE AND LIMITATIONS**

A. In February and March 2020, the parties met and conferred on the ESI to be searched in response to Plaintiffs' February 20, 2020 amended Requests for Production (RFP) numbers 5 and 6. *See* ECF No. 1077, Joint Status Report

Regarding Compliance Discovery (March 24, 2020) ("JSR"). Defendants have now identified the unrepresented immigration detainees whose documents are to be produced in response to RFP 5 and, pursuant to paragraphs 4.c and 5 of the JSR, will endeavor to produce responsive ESI for both RFP 5 and 6 within six months, with an initial production within three months of the filing of the ESI protocol. The JSR also embodies the parties' agreement to meet and confer regarding the status of the review and to determine an ESI production schedule if Defendants determine that production may not be completed within six months. This Order is thus limited to the collection, review, and production of ESI in response to RFPs 5 and 6 as described in the March 24, 2020 JSR.

      B.    This Order supplements all other discovery rules and orders. Nothing in this order shall be construed (1) to prohibit the undersigned Parties from agreeing to modify any provision of this Order or seeking relief from the Court; (2) as a waiver of any Party's rights under the Federal Rules of Civil Procedure; or (3) to waive any objections as to the production, discoverability, or confidentiality of ESI.

      C.    This Order may be modified for good cause by a Stipulated Order of the Parties or by the Court. Plaintiffs and Defendants (collectively, "the Parties") shall meet and confer in an attempt to resolve any proposed modifications in good faith. If the Parties cannot resolve this dispute, they may proceed under the Federal and Local Rules of Civil Procedure addressing discovery disputes, including Fed. R. Civ. P. 37 and Local Rule 37.

**III.    SEQUENCE AND PROCEDURE OF ESI DISCOVERY**

      **A.    ESI of Limited Accessibility.**

If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI. If the parties believe that there is

3

video, voicemail and/or mobile device data that may be responsive in this Action, they agree to engage in discussion regarding production of such discrete data, which production will not be unreasonably withheld.

### B. Privilege Logs.

**1.** The Parties shall confer regarding the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged. A Producing Party shall produce such privilege logs no more than one month following each document production.

**2.** The parties have separately stipulated to a Protective Order regarding discovery in this matter, ECF No. 507, as well as a Clawback Agreement and Federal of Evidence 502(d) Order, ECF No. 1081, to govern the standards and procedures for addressing claims of privilege over inadvertently disclosed materials in this litigation.

## IV. ESI FORMAT

The Parties will produce electronic documents in the following format:

### A. ESI.

ESI and paper documents that are produced as scanned images should be produced in Standard Group IV Black and White single page TIFF images at a minimum of 300 DPI, 1 bit with the following exceptions: (1) documents that are in color such as those containing images of marks and/or advertising should be produced as single page color jpegs (.JPG); and (2) certain documents identified in B., below, may be produced in native format. If after reviewing any black and white document, a Receiving Party believes that color is critical to a document, the parties agree to engage in discussion regarding production of documents in color, which production will not be unreasonably withheld. The Producing Party shall provide

4

image load files in Concordance (.OPT) format so as to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata should be provided in a Concordance .DAT format, or other standard, compatible file format and extension as the receiving party specifies, and the searchable text (OCR) for non-native or non-searchable native files will be provided as multi-page text (.txt) files or other standard, compatible file format as specified by the receiving party.

The Producing Party shall reproduce documents subject to the Parties' Clawback Agreement in the same manner/format in which they were originally produced.

**B.     Native Format.**

Parties may produce agreed-upon ESI in native format, such as spreadsheets (e.g., excel, google sheets, OpenOffice, CSV, TSV, etc.) and other files that cannot be converted to TIFF (such as audio, video, XML files, and JPEGs). Native files should contain the Bates number and confidentiality designation of the file in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number, any confidentiality designation and text indicating "FILE PRODUCED NATIVELY" displayed on the page. Wherever feasible, the Producing Party shall include accompanying metadata in the load file. Documents with privileged information will not be produced in native format, unless the party maintains a tool that permits the redaction of privileged information in native format. Additionally, if after reviewing production of other ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

**C.   Metadata Fields**

The Parties will work in good faith to produce the following metadata fields as part of one data load file (.dat) per production, to the extent such metadata exists (and is relevant to the file type at issue), and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operations of such software:

| Field Name | Description |
|---|---|
| BegBates | Unique ID (Bates Number) listed on the first page of a document |
| EndBates | Unique ID (Bates Number) listed on the last page of a document |
| BEGATTACH | Unique ID (Bates Number) for the first page of the Parent-Child Relationships for each document within the family |
| ENDATTACH | Unique ID (Bates Number) for the last page of a parent child relationship for each document within the family |
| ATTACH_COUNT | Count of attachments (any level child document) associated with a parent document. |
| CUSTODIAN | Name of the custodian from whom the document was collected |
| DUPE CUSTODIANS | Name(s) of all custodians who had the document before de-duplication |
| AUTHOR | Name of the creator of an electronic document, where available |
| FROM | Email address and alias/display name of the Sender of an email. |
| TO | Email address and alias/display name of the Recipient of an email. |
| CC | Email address and alias/display name of the Carbon Copy Recipients of an email. |

| Field | Description |
|---|---|
| BCC | Email address and alias/display name of the Blind Carbon Copy Recipients of an email. |
| SUBJECT | Email Subject line |
| DATE TIME SENT | Email sent date and email sent time (from time zone at place of collection) |
| FILEEXTENSION | File extension |
| FILENAME | Filename of electronic document |
| MODIFYDATE | Date and time electronic file was last modified or edited |
| CONFIDENTIALITY | Confidentiality designation for each document, if any |
| REDACTED | Indicates whether redactions have been applied to the document |
| NATIVE_PROD | Location of native file in production volume |
| TEXT_PATH | Path to document-level text files |
| MD5HASH | MD5HASH value for all file types |
| PARENTDATE | For parent emails, this field will be populated with the DateSent<br><br>For e-attachments, this field will be populated with the DateSent of their parent email<br><br>For other electronic documents, this field will be populated with the DateLastModified. |
| PARENTID | Contains the Begdoc# value of an attachment's parent |

**D. Hard Copy Documents.** The parties agree to use reasonable efforts to ensure that hard copy (paper) documents shall be scanned, logically unitized, and produced electronically as specified in the form of production above. This provision does not obligate any party to produce documents in a manner other than in which those documents were kept in the ordinary course of business such that hard copy documents that are not scanned into electronic form prior to the date of production

may be produced in the same manner in which they are maintained (e.g., hard copies). Copies of such hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party.

### E. Parent-Child Relationships.

Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

### F. Document Unitization.

If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.

### G. Duplicates.

Where a Party has more than one identical copy of an electronic document (*i.e.*, the documents have the same hash values), the Producing Party need only produce a single copy of that document, provided that the ALL CUSTODIANS (or DUPLICATE CUSTODIAN) field contains the names of the custodians of the de-duplicated documents.

### H. DeNIST.

All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Government. All available metadata from files withheld from delivery due to the

deNISTing process will be available upon request.

### I. Email Thread Analysis.

Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

### J. Redacted Documents.

Documents that contain redactions will be produced in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Paragraph IV(C) to the extent that such metadata fields are not part of the redaction, with the exception that if a party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. Documents that require redaction will be noted as "Redacted" in the DAT file. Documents that require redaction to any of the metadata fields will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

### K. Production Media.

A Producing Party shall produce the responsive documents in an encrypted electronic form via Secure File Transfer or on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Information that shall be identified on the physical Production Media shall include: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained

9

on the Production Media, and, where not practicable to do so, may be provided in an accompanying letter.

### L. Embedded Objects.

Non-image files embedded within documents, such as spreadsheets within a Power Point, will be extracted as separate documents and treated like attachments to the document in which they were embedded. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds shall not be extracted as separate documents.

### M. Compressed Files.

Compression file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element result in individual files. The container file itself shall not be produced.

### N. Other ESI that is Impractical to Produce in Traditional Formats (also known as Structured Data).

The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production in native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (*e.g.*, Excel, CSV or SQL format).

**O.     Production of Other Electronic Documents.**

The Parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

Dated:  November 5, 2020            _____
                                    Honorable Alicia G. Rosenberg
                                    United States Magistrate Judge